**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION

MDL No. 1775

**<u>FIRST CONSOLIDATED AMENDED
COMPLAINT</u>**

**<u>JURY TRIAL DEMANDED</u>**

# TABLE OF CONTENTS

Page

DEFINITIONS ..................................................................................................... 1

NATURE OF THE ACTION ................................................................................. 3

DEFENDANT PARTIES ...................................................................................... 6

UNNAMED CO-CONSPIRATORS ...................................................................... 15

AGENTS ............................................................................................................... 16

PLAINTIFF PARTIES ......................................................................................... 16

FACTUAL ALLEGATIONS ................................................................................ 16

    Interstate and International Trade and Commerce ........................................... 16

    Defendants' Price-Fixing Scheme .................................................................. 17

    Fuel Surcharge ............................................................................................... 17

    Security Surcharge ......................................................................................... 20

    War Risk Surcharge ....................................................................................... 21

    U.S. Customs Surcharge ................................................................................ 21

    Defendants' Concerted Refusal to Discount .................................................. 22

    Defendants' Concerted Increases in Yields ................................................... 22

    Defendants' Allocation of Customers ............................................................ 22

    Defendants' Intent .......................................................................................... 23

    Fraudulent Concealment ................................................................................ 23

AMNESTY RECIPIENT ...................................................................................... 28

COUNT I - VIOLATION OF THE SHERMAN ACT
(ON BEHALF OF DOMESTIC DIRECT PURCHASERS) ................................. 29

    U.S. Direct Purchaser Plaintiffs ................................................................... 29

    Defendants ...................................................................................................... 31

    Jurisdiction and Venue ................................................................................... 32

    Class Action Allegations ............................................................................... 32

    Injury to the U.S. Direct Purchaser Plaintiffs and U.S. Direct Purchaser
        Class ........................................................................................................ 36

    Violation Alleged ........................................................................................... 37

COUNT II - VIOLATION OF FEDERAL AND STATE ANTITRUST AND
UNFAIR COMPETITION LAWS AND STATE COMMON LAW
(FOUR SUBCOUNTS BROUGHT ON BEHALF OF DOMESTIC INDIRECT
PURCHASERS) ................................................................................................... 38

# TABLE OF CONTENTS
(continued)

Page

U.S. Indirect Purchaser Plaintiffs and U.S. Indirect Purchaser Subclass Plaintiffs .................................................................................................. 38

Defendants ...................................................................................................... 40

Jurisdiction and Venue .................................................................................... 40

Class Action Allegations ................................................................................. 41

Injury to the U.S. Indirect Purchaser Plaintiffs and Class ............................. 46

Violations Alleged .......................................................................................... 47

Subcount I:  Violation of the Sherman Act: .................................................. 47

Subcount II: Violations of State Antitrust Statutes And Common Law ......... 49

Subcount III: Violations of State Consumer Protection and Unfair Competition Statutes .............................................................................. 50

Subcount IV:  Unjust Enrichment .................................................................. 52

COUNT III - VIOLATION OF THE SHERMAN ACT
(ON BEHALF OF U.S. DIRECT FOREIGN PURCHASERS) .................................... 53

U.S. Direct Foreign Plaintiffs ........................................................................ 53

Defendants ...................................................................................................... 54

Jurisdiction and Venue .................................................................................... 54

Class Action Allegations ................................................................................. 56

Injury to the U.S. Direct Foreign Plaintiffs and U.S. Direct Foreign Subclass ................................................................................................... 59

Violation Alleged ............................................................................................ 61

COUNT IV - VIOLATION OF THE SHERMAN ACT AND E.U. LAW
(ON BEHALF OF E.U. DIRECT FOREIGN PURCHASERS) .................................... 63

E.U. Direct Foreign Plaintiffs ........................................................................ 63

Defendants ...................................................................................................... 64

Jurisdiction and Venue .................................................................................... 64

Class Action Allegations ................................................................................. 67

Injury, Loss, and Damage to the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass ......................................................................... 71

Violations Alleged .......................................................................................... 73

COUNT V - VIOLATION OF THE SHERMAN ACT AND E.U. LAW
(ON BEHALF OF E.U. INDIRECT FOREIGN PURCHASERS) ............................... 76

# TABLE OF CONTENTS
## (continued)

Page

E.U. Indirect Foreign Plaintiffs ........................................................................ 77

Defendants .......................................................................................................... 78

Jurisdiction and Venue ...................................................................................... 78

Class Action Allegations .................................................................................... 81

Injury, Loss and Damage to the E.U. Indirect Foreign Plaintiffs
and E.U. Indirect Foreign Subclass .................................................................. 84

Violations Alleged .............................................................................................. 86

COUNT VI - VIOLATIONS OF E.U. LAW
(ON BEHALF OF MIXED U.S.-E.U. FOREIGN PURCHASERS) ............................. 90

Mixed U.S.-E.U. Foreign Plaintiffs .................................................................. 90

Defendants .......................................................................................................... 92

Jurisdiction and Venue ...................................................................................... 92

Class Action Allegations .................................................................................... 94

Loss and Damage to the Mixed U.S.-E.U. Foreign Plaintiffs
and Mixed U.S.-E.U. Foreign Subclass ............................................................ 97

Violation Alleged ............................................................................................... 98

COUNT VII - VIOLATIONS OF E.U. LAW
(ON BEHALF OF E.U. FOREIGN PURCHASERS) ................................................. 99

E.U. Foreign Plaintiffs ...................................................................................... 100

Defendants .......................................................................................................... 101

Jurisdiction and Venue ...................................................................................... 101

Class Action Allegations .................................................................................... 102

E.U. Loss and Damage to the E.U. Foreign Plaintiffs
and E.U. Foreign Subclass ................................................................................. 106

E.U. Law Infringements Alleged ...................................................................... 106

PRAYER FOR RELIEF ........................................................................................... 108

JURY TRIAL DEMAND ......................................................................................... 112

Plaintiffs, by and through their undersigned counsel, complain and allege upon information and belief except as to those paragraphs applicable to the named Plaintiffs, which are based on personal knowledge, as follows.

## DEFINITIONS

1.      "Airfreight Carrier" means any airline acting as an Airfreight Shipping Services provider.

2.       "Airfreight Customer" means any person or entity purchasing Airfreight Shipping Services, excluding Defendants or any predecessor, subsidiary or affiliate of each.

3.      "Airfreight Shipping Services" means paid, private air transport of freight or other cargo by Airfreight Carriers.

4.      "Cartel" means the combination of Airfreight Carriers named herein that conspired to fix, raise, maintain, or stabilize the prices of Airfreight Shipping Services.

5.      "Class Period" refers to the period from January 1, 2000 to the present.

6.      "EC Treaty" means Article 81 of the Treaty on European Union and Consolidated Version of the Treaty Establishing the European Community, Maastricht, Rome, and Amsterdam, 7 February 1992, 25 March 1957, 2 October, 1996 (36 I.L.M. 56 (1998)).

7.      "EFTA/EEA State" means Norway, Iceland, and/or Liechtenstein.

8.      "EEA Agreement" means Article 53 of the Agreement Creating the European Economic Area, 1 January 2004.

9.      "E.U." means the European Union.

10.      "E.U. Member State" means any of the 27 nations belonging to the E.U.

11.     "E.U. Law" means the EC Treaty and the EEA Agreement, individually and collectively.

12.     "Fuel Surcharge" means a Surcharge levied by an Airfreight Carrier upon Airfreight Customers purportedly to compensate the Airfreight Carrier for costs of fuel.

13.     "Regulation 1/2003" means Article 6 of the Council Regulation (EC) No. 1/2003 of 16 December 2002.

14.     "Security Surcharge" means a Surcharge levied by an Airfreight Carrier upon an Airfreight Customer purportedly to compensate the Airfreight Carrier for costs associated with security measures implemented after the terrorist attacks in the United States on September 11, 2001 (hereinafter "September 11 attacks").

15.     "War Risk Surcharge" means a Surcharge levied by an Airfreight Carrier upon an Airfreight Customer purportedly to compensate the Airfreight Carrier for costs of war-risk insurance premiums and flight rerouting necessary in conjunction with the outbreak of war in Iraq in 2003.

16.     "U.S. Customs Surcharge" means a Surcharge levied by an Airfreight Carrier upon an Airfreight Customer purportedly to compensate the Airfreight Carrier for costs associated with preparation of and electronic submission to U.S. Customs of a manifest of the freight that the Airfreight Carrier will offload in the United States.

17.     "Surcharge" means a fee charged to an Airfreight Customer, in addition to Airfreight Shipping Services base rates, purportedly to compensate the Airfreight Carrier for certain external costs.

18.     "Undertaking" shall have the meaning ascribed to it by the EC Treaty, i.e., any entity engaged in an economic activity, which is an activity consisting of offering

goods or services on a given market, regardless of the entity's legal status and the way in which it is financed.

## NATURE OF THE ACTION

19.     This action arises from Defendants' massive, global conspiracy to fix, raise, maintain, or stabilize prices of Airfreight Shipping Services through a number of mechanisms, including, *inter alia*, concertedly levying inflated surcharges, jointly agreeing to eliminate or prevent discounting of Airfreight Shipping Services prices, agreeing on yields and allocating customers.

20.     Defendants and their co-conspirators acted in concert pursuant to a single, overarching conspiracy to artificially inflate the prices of Airfreight Shipping Services.

21.     Plaintiffs bring this action:

a.   to recover treble damages and injunctive relief for violations of Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1 pursuant to Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15, 26;

b.   to recover injunctive relief for violations of the Sherman Act and to recover damages and/or restitution as allowed by law for violations of the applicable State antitrust, consumer protection and unfair competition laws, and under common law for unjust enrichment;

c.   to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, for infringements of Article 81 of the EC Treaty pursuant to Regulation 1/2003; and

d.   insofar as the infringements affected trade between any E.U.

Member State and any EFTA/EEA State, to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, for infringements of the EEA Agreement pursuant to Regulation 1/2003.

22.    Plaintiffs bring this action on behalf of the following classes: the U.S. Direct Purchaser Class; the U.S. Indirect Purchaser Class; and the Foreign Purchaser Class (collectively, the "Classes").  The Classes are defined as follows:

a.  **U.S. DIRECT PURCHASER CLASS:**

All persons and entities in the United States that purchased Airfreight Shipping Services for shipments within, to, or from the United States directly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

b.  **U.S. INDIRECT PURCHASER CLASS:**

All persons and entities in the United States that purchased Airfreight Shipping Services for shipments within, to, or from the United States indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

The U.S. Indirect Purchaser Class also includes:

**U.S. INDIRECT PURCHASER SUBCLASS:**

All persons and entities in the States of Alabama, Alaska, Arizona, Arkansas, California, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and Wyoming, and within the District of Columbia that purchased Airfreight Shipping Services for shipments within, to or from the United States indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

4

c.   **FOREIGN PURCHASER CLASS.**  The Foreign Purchaser Class

consists of the following five Subclasses:

### U.S. DIRECT FOREIGN SUBCLASS:

All persons, Undertakings, and other entities outside the United States that purchased Airfreight Shipping Services for shipments between the U.S. and the rest of the world, excluding any European Union Member State, directly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

### E.U. DIRECT FOREIGN SUBCLASS:

All persons, Undertakings, and other entities outside the United States that purchased Airfreight Shipping Services for shipments solely between the U.S. and any European Union Member State directly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

### E.U. INDIRECT FOREIGN SUBCLASS:

All persons, Undertakings, and other entities outside the United States that purchased Airfreight Shipping Services for shipments solely between the U.S. and any European Union Member State indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

**MIXED U.S.-E.U. FOREIGN SUBCLASS:**

All persons, Undertakings, and other entities outside the United States that purchased Airfreight Shipping Services for shipments between the U.S. and any European Union Member State, and also purchased Airfreight Shipping Services for shipments within, to, from, or between any European Union Member State, (excluding shipments to or from the U.S.), directly or indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present;

and

**E.U. FOREIGN SUBCLASS:**

All persons, Undertakings, and other entities that purchased Airfreight Shipping Services for shipments within, to, from, or between any European Union Member State, (excluding shipments to or from the U.S.), directly or indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

All of the foregoing Classes and Subclasses exclude all federal, state, governmental and national entities and Defendants and their respective predecessors, subsidiaries, affiliates, and business partners.

**DEFENDANT PARTIES**

23.     Defendant Air Canada is a foreign company with its headquarters located at 5100 de Maisonneuve Boulevard West, Montreal, Quebec H4A 3T2, Canada.  Air Canada conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

24.     Defendant AC Cargo LP ("AC Cargo") is a foreign company with its headquarters located at 5100 de Maisonneuve Boulevard West, Montreal, Quebec H4A 3T2, Canada.  AC Cargo conducts Airfreight Shipping Services throughout the world,

including in the U.S. and this district.  At all relevant times, Air Canada owned, dominated and controlled the businesses of AC Cargo.

25.     Defendants identified paragraphs 23 through 24 are collectively referred to herein as the "Air Canada Defendants" or "Air Canada."

26.     Defendant Société Air France ("Air France") is a foreign company with its headquarters located at 45, rue de Paris 95747 Roissy-CDG Cedex, France.  Air France conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

27.     Defendant Koninklijke Luchtvaart Maatschappij N.V. ("KLM Royal Dutch Airlines" or "KLM") is a foreign company with its headquarters located at 45, rue de Paris 95747 Roissy-CDG Cedex, France.  KLM conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

28.     Defendants identified in paragraphs 26 through 27 are collectively referred to herein as the "Air France Defendants."

29.     Defendant Aerolíneas Brasileiras S.A. d/b/a ABSA Cargo Airline ("ABSA") is a foreign company with its headquarters located at Aeroporto Internacional de Viracopos, Rodovia Santos Dumont, Km 66 - Sistema Viário Principal s/nº, 13051-970 Campinas São Paulo, Brazil.  ABSA conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  ABSA has a strategic alliance with Defendant LAN Cargo S.A. (LAN Airlines S.A. owns 73 percent of ABSA) and maintains a code-share agreement with Defendant Lufthansa Cargo to and from Frankfurt.

30.     Defendant Air Mauritius Ltd. ("Air Mauritius") is a foreign company with its headquarters located at Air Mauritius Centre, 19th Fl., President John Kennedy Street, Port Louis, Mauritius.  Air Mauritius conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

31.     Defendant Alitalia Linee Aeree Italiane S.p.A. ("Alitalia") is a foreign company with its headquarters located at Viale Alessandro Marchetti, 11100148 Rome, Italy.  Alitalia conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

32.     Defendant All Nippon Airways Co., Ltd. ("ANA") is a foreign company with its headquarters located at Shiodome City Center, 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo 105-7133, Japan.  ANA conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  Until 2005 ANA owned at least 25% of Defendant Nippon Cargo Airlines.

33.     Defendant Asiana Airlines Inc. ("Asiana Airlines") is a foreign company with its headquarters located at Asiana Twon Kangseo, P.O. Box 98 #47, Osae-Dong, Kangseo-Ku, Seoul, South Korea.  Asiana conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

34.     Defendant British Airways PLC ("British Airways" or "British") is a foreign company with its headquarters located at Waterside, UB7 GB Harmondsworth, Middlesex, England.  British Airways conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  British Airways' cargo division is named British Airways World Cargo.

35.     Defendant Cargolux Airlines International S.A. ("Cargolux") is a foreign company with its headquarters located at Luxembourg Airport L-2990, Luxembourg, Grand Duchy of Luxembourg.  Cargolux conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

36.     Defendant Cathay Pacific Airways Ltd. ("Cathay Pacific") is a foreign company with its headquarters located at Hong Kong International Airport, 7/F North Tower, 8 Scenic Road, Cathay City, Lantau, Hong Kong.  Cathay Pacific conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

37.     Defendant Air China Limited d/b/a Air China ("Air China") is a foreign company with its headquarters located at 46 Xiaoyun Road, Beijing 100027, People's Republic of China.  Air China conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

38.     Defendant Air China Cargo Company Limited d/b/a Air China Cargo ("Air China Cargo") is a foreign company with its headquarters located at 46 Xiaoyun Road, Beijing 100027, People's Republic of China, and a subsidiary of Air China.  Air China Cargo conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  Air China is the majority shareholder in Air China Cargo, and, at all relevant times, Air China owned, dominated and controlled the business of Air China Cargo.

39.     Defendants identified in paragraphs 37 through 38 are collectively referred to herein as "Air China."

40.     Defendant DAS Air Ltd. d/b/a DAS Air Cargo ("DAS") is a foreign company with its headquarters located at Unit 1 Tilgate Forest Business Centre, Elm Park

Court, Brighton Road, Crawley, West Sussex RH11 9BP, United Kingdom.  DAS conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

41.     Defendant Deutsche Lufthansa AG ("Lufthansa AG") is a foreign company with its headquarters located at Von-Gablenz-Strasse 2-6, 50679 Köln, Germany.  Lufthansa AG conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

42.     Defendant Lufthansa Cargo AG ("Lufthansa Cargo") is a foreign company with its headquarters located at Von-Gablenz-Strasse 2-6, 50679 Köln, Germany. Lufthansa Cargo conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  Lufthansa Cargo is a subsidiary of Lufthansa AG.  At all relevant times, Lufthansa AG owned, dominated and controlled the business of Lufthansa Cargo.

43.     Defendant Swiss International Air Lines Ltd. ("Swiss International") is a foreign company and is a wholly-owned subsidiary of Lufthansa AG, with its headquarters located at Aeschenvorstadt 4, CH-4051 Basel, Switzerland.  Swiss International conducts Airfreight Shipping Services throughout the world, including into the United States and this district.

44.     Defendants identified in paragraphs 41 through 43 are collectively referred to herein as the "Lufthansa Defendants," or "Lufthansa."

45.     Defendant El Al Israel Airlines, Ltd. ("El Al") is a foreign company with its headquarters located at Ben Gurion Intenational Airport, P.O. Box 41, Lod 70100,

Israel.  El Al conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

46.     Defendant Emirates Airlines d/b/a Emirates ("Emirates") is a foreign company with its headquarters located at Ground Floor, Dubai Airline Centre Building, Dubai, United Arab Emirates.  Emirates conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

47.     Defendant Ethiopian Airlines Corp. ("Ethiopian") is a foreign company with its headquarters located at Bole International Airport, Addis Ababa, Ethiopia. Ethiopian conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

48.     Defendant Japan Airlines International Company Ltd. ("JAL") is a foreign company with its headquarters located at 4-11, Higashi-shinagawa 2-chome, Shinagawa-ku, Tokyo 140-8637, Japan.  JAL conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  JAL's cargo division is named JAL Cargo.

49.     Defendant Kenya Airways Limited ("Kenya") is a foreign company with its headquarters located at Airport North Road, Nairobi, Kenya.  Kenya conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

50.     Defendant Korean Air Company, Ltd. ("Korean Air") is a foreign company with its headquarters located at 1370 Gonghang-Dong, Gangso-Gu, Seoul, Korea.  Korean Air conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

51.     Defendant LAN Airlines S.A. ("LAN") is a foreign company with its headquarters located at Presidente Riesco 5711 Piso 20, Las Condes, Santiago, Chile.

LAN conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

52.     Defendant LAN Cargo S.A. ("LAN Cargo") is a foreign company with its headquarters located at Presidente Riesco 5711 Piso 20, Las Condes, Santiago, Chile. LAN Cargo conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.   LAN Cargo is a wholly owned subsidiary of LAN.  At all relevant times, LAN owned, dominated and controlled the business of LAN Cargo.

53.     Defendants identified in paragraphs 51 through 52 are collectively referred to herein as the "LAN Defendants."

54.     Defendant Martinair Holland N.V. ("Martinair") is a foreign company with its headquarters located at Martinair Bldg., Schiphol Airport, 1118 ZG Amsterdam, The Netherlands.  Martinair conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  Defendant KLM owns 50 percent of Martinair.

55.     Defendant Airways Corporation of New Zealand Limited d/b/a Airways New Zealand ("New Zealand Air") is a foreign company with its headquarters located at 44-48 Willis Street, Wellington, New Zealand.  Air New Zealand conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

56.     Defendant Nippon Cargo Airlines Co., Ltd. ("NCA") is a foreign company with its headquarters located at Shiodome City Center 8F 5-2, Higashi-Shinbashi, 1-Chome, Minato-Ku, Tokyo 105-7108, Japan.  NCA conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

57.     Defendant Atlas Air Worldwide Holdings, Inc. ("Atlas") is a domestic U.S. company with its headquarters located at 2000 Westchester Avenue, Purchase, New

York 10577. Atlas conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

58.    Defendant Polar Air Cargo, Inc. ("Polar Air") is a domestic U.S. company with its headquarters located at 2000 Westchester Avenue, Purchase, New York 10577. Polar Air conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district. Polar Air is a wholly owned subsidiary of Atlas. At all relevant times, Atlas owned, dominated and controlled the business of Polar Air.

59.    Defendants identified in paragraphs 57 through 58 are collectively referred to herein as the "Polar Air Defendants."

60.    Defendant Qantas Airways Limited ("Qantas") is a foreign company with its headquarters located at Qantas Centre, 203 Coward Street, Mascot New South Wales 2020. Qantas conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

61.    Defendant Saudi Arabian Airlines, Ltd. ("Arabian") is a foreign company with its headquarters located at P.O. Box 167, Jeddah 21231, Kingdom of Saudi Arabia. Arabian conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

62.    Defendant Scandinavian Airlines System ("SAS") is a foreign company with its headquarters located at Frösundaviks Allé 1, 195 87 Stockholm, Sweden. SAS conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

63.    Defendant Singapore Airlines Limited ("Singapore Airlines") is a foreign company with its headquarters located at Airline House, 25 Airline Road, Singapore

819829.  Singapore Airlines conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

64.     Defendant Singapore Airlines Cargo Pte Ltd ("SIA Cargo") is a foreign with its headquarters located at 5th floor core L, SATS Airfreight Terminal 5, Superhub 1, 30 Airline Road, Singapore 819830.  SIA Cargo conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.  SIA Cargo is a wholly owned subsidiary of Singapore Airlines.  At all relevant times, Singapore Airlines owned, dominated and controlled the business of SIA Cargo.

65.     Defendants identified in paragraphs 63 through 64 are collectively referred to herein as the "Singapore Air Defendants."

66.     Defendant South African Airways (Proprietary) Limited ("SAA") is a foreign company with its headquarters located at Airway Park, Jones Road, Johannesburg International Airport, Kempton Park Johannesburg, 1627, South Africa.  SAA conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

67.     Defendant Thai Airways International Public Co., Ltd. ("Thai") is a foreign company with its headquarters located at 89 Vibhavadi-Rangsit Rd. Bangkok, 10900, Thailand.  Thai conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

68.     Defendant Viação Aérea Rio-Grandense, S.A. ("VARIG") is a foreign company with its headquarters located at Rua 18 de Novembro No. 800, São João, 90240-040 Porto Alegre, Rio Grande do Sul, Brazil.  VARIG conducts Airfreight Shipping Services throughout the world, including in the U.S. and this district.

14

69.     At all relevant times hereto, Defendants were Airfreight Carriers that charged Airfreight Shipping Services base rates, Surcharges and other fees to Airfreight Customers in the United States and throughout the world.

70.     As further alleged herein, during at least the Class Period, Defendants agreed, combined, and conspired with each other to fix, raise, maintain, or stabilize the prices of Airfreight Shipping Services by, *inter alia*, levying concerted and artificially inflated Surcharges, jointly agreeing to eliminate or prevent discounting of prices of Airfreight Shipping Services, agreeing on yields, and allocating customers, routes, or territories.  As a result of Defendants' unlawful conduct and conspiracy, Plaintiffs and the other members of the Classes paid artificially high prices for Airfreight Shipping Services and have been damaged thereby.

71.     All Defendants are parties to all Counts alleged herein.

### UNNAMED CO-CONSPIRATORS

72.     At all relevant times, other Airfreight Carriers, trade groups, or other entities, referred to herein as John Does, as well as various other persons, companies, and corporations, the identities of which are presently unknown, willingly conspired with Defendants in their unlawful restraint of trade.

73.     The acts alleged herein that were done by each of the co-conspirators were fully authorized by each of those co-conspirators, or ordered, or done by duly authorized officers, managers, agents, employees, or representatives of each co-conspirator while actively engaged in the management, direction, or control of its affairs.

74.     All averments herein against any named Defendant are also averred against these unnamed co-conspirators as though set forth at length.

### AGENTS

75.     The acts alleged to have been done by any Defendant were authorized, ordered or done by its directors, officers, managers, agents, employees, or representatives while actively engaged in the management of that Defendant's affairs.

### PLAINTIFF PARTIES

76.     All Plaintiffs are identified in Counts I through VII below, according to the respective claims asserted.

### FACTUAL ALLEGATIONS

### Interstate and International Trade and Commerce

77.     The global Airfreight Shipping Services industry involved $50 billion of business in 2005.  Approximately $19 billion of this commerce involved shipments to and from North America and approximately $10 billion involved shipments to and from Europe.  Shipments between North America and Europe constituted approximately $741 million of Airfreight Shipping Service commerce.  Airfreight Shipping Services is a business that has exhibited substantial traffic volume growth, averaging 6.3% per annum from 2002 through 2005.

78.     Airfreight Shipping Services are a fungible, commodity product such that Airfreight Shipping Services provided by any one Airfreight Carrier are readily substitutable for the Airfreight Shipping Services provided by any other Airfreight Carrier.  As a result, price is the primary factor driving customer choice between Airfreight Carriers.

79.     Throughout the Class Period, there was a continuous and uninterrupted flow of transactions and shipments in Airfreight Shipping Services in interstate and international commerce throughout the United States and throughout the world, including

between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States, affecting trade therein.

80.     Defendants' unlawful activities, as described herein, took place within and affected the flow of interstate commerce to Airfreight Customers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce.

## Defendants' Price-Fixing Scheme

81.     Beginning no later than January 1, 2000 and continuing through the present, Defendants engaged in an ongoing conspiracy to fix, raise, maintain and/or stabilize prices of Airfreight Shipping Services.

82.      Defendants fixed, raised, maintained and/or stabilized the prices of Airfreight Shipping Services through a number of mechanisms, including concertedly levying inflated Surcharges, jointly agreeing to eliminate or prevent discounting of Airfreight Shipping Services prices, agreeing on yields, and allocating customers, routes, or territories.

83.     The surcharge mechanisms, including Fuel Surcharges, Security Surcharges, War Risk Surcharges, and U.S. Customs Surcharges, were used by Defendants to collusively increase prices.

## Fuel Surcharge

84.     Beginning in at least late December 1999, Defendants exchanged information regarding a variety of Surcharges, including the Fuel Surcharge, in

furtherance of their agreement to act in concert with one another to fix the overall prices of Airfreight Shipping Services.

85.     Generally, Surcharges are part of the price of Airfreight Shipping Services, whereby Airfreight Carriers such as Defendants charge extra fees to their customers, above and beyond basic freight charges typically priced by weight or volume, with the purported intent of defraying certain external costs of the Airfreight Carriers, but with the intended overall effect of increasing Airfreight Shipping prices.

86.     At the time the conspiracy commenced, many airlines had similar Fuel Surcharge pricing systems in place  -- some of which were published -- which, if independently implemented in a competitive market, would have been the foundation for the timing and amount of upward or downward pricing movements triggered by multiple factors, including spot fuel prices.

87.     To eliminate competition in setting the Fuel Surcharge portion of Airfreight Shipping Services prices, Defendants combined and conspired, through secret meetings and communications, to jointly agree on the factors triggering each pricing system, the resulting price change to be implemented upon the occurrence of those factors, and the timing of that change.  These meetings, communications, and agreements ensured that Defendants would jointly act upon those triggering factors and identify and correct deviations from the terms and timing on which they collusively agreed.

88.     Among other things, Defendants agreed on harmonization of the Fuel Surcharge; implementation of the Fuel Surcharge; extensions of the Fuel Surcharge; currency issues; capping the Fuel Surcharge (by shipment or by weight); and refusing to discount the Fuel Surcharge to freight forwarders.

89.     Defendants also implemented their agreement by privately exchanging price and cost information for the purpose of monitoring and enforcing any agreed-upon Fuel Surcharge levels and publicly announcing agreed-upon Fuel Surcharge increases in advance of their implementation in order to ensure coordination among Defendants on the Fuel Surcharge levels.

90.     In 2002, Defendants jointly agreed to and initiated a four-step Fuel Surcharge increase program, where increase factors would trigger only one step per period, at $.05 increase per step, capped at the fourth step.

91.     By the end of 2003 or beginning of 2004, these increase factors triggered the fourth and final step of Defendants' four-step program.  Defendants met to jointly agree on additional steps to implement price increases in concert beyond the original four-step program.

92.     As a result, Defendants jointly imposed additional, multiple-step price increases, all at identical amounts per step.  All additional steps were preceded by multiple meetings, communications, and agreements among Defendants concerning such increases.

93.     As the conspiracy progressed, Defendants intensified their joint meetings, communications, and agreements regarding price increases.  Secret meetings and communications included discussions at the highest levels of the respective companies and occurred in various venues, including Europe, the United States, South America and Asia.  These contacts often were initiated when one Defendant's methodology suggested an increase.  At such times, the initiating Defendant would contact the other Defendants to seek reassurances that all Defendants would adopt the same increase.  Defendants also

sought reassurances to apply the Fuel Surcharge increases consistently throughout all world regions.

94.     Where the Fuel Surcharges were not being applied consistently, Defendants often undertook corrective action in order to ensure consistent application.

95.     During this period, Defendants concertedly policed one another's compliance with their joint price agreements and, among other things, secretly met and communicated about compliance with their agreements.

### Security Surcharge

96.     In addition to increasing prices of Airfreight Shipping Services through Fuel Surcharges, Defendants agreed to and did jointly increase prices through a Security Surcharge.

97.     Following the September 11 attacks, Defendants met and communicated and jointly agreed to impose the Security Surcharge upon their Airfreight Customers, which remained in effect thereafter.  Secret meetings and communications included discussions at the highest levels of the respective companies and occurred in various venues, including Europe, the United States, and Africa.

98.     Defendants jointly acted in order to facilitate agreements regarding exceptions, discounting, and caps relating to the Security Surcharge.

99.     Defendants, with few exceptions, jointly implemented the agreed upon Security Surcharge worldwide.

100.     The Security Surcharge imposed by Defendants bore little or no relationship to external costs.  As of December 5, 2005, for example, the prevailing Security Surcharges were set at a uniform $0.15, regardless of differences in actual security costs for different localities.

## War Risk Surcharge

101.     Following the outbreak of the war in Iraq in 2003, Defendants again met, communicated, and jointly agreed to further increase prices of Airfreight Shipping Services by imposing on their Airfreight Customers another Surcharge, the War Risk Surcharge.

102.     Secret joint meetings, communications, and agreements specifically addressed individual Defendants' agreements concerning, and implementation of, the War Risk Surcharge.

103.     The War Risk Surcharge was terminated by Defendants approximately one month after its implementation.

## U.S. Customs Surcharge

104.     Beginning around late 2003, Defendants met, communicated and jointly agreed to further increase prices of Airfreight Shipping Services through a U.S. Customs Surcharge.

105.     Since 2003, Airfreight Carriers have been required to prepare and submit to U.S. Customs a manifest of all goods that the carrier will offload in the United States. This manifest, originating from the Airfreight Customer, must be received by the Airfreight Carrier and then submitted electronically to U.S. Customs by the Airfreight Carrier before its airplane enters United States airspace.

106.     During this period, Defendants secretly met, communicated and jointly agreed to charge uniform flat fees to Airfreight Customers for each Defendant's preparation and submission of these manifests. These secret meetings and discussions occurred in Europe, Asia and elsewhere. Defendants concertedly agreed that they would charge Airfreight Customers a flat fee of 8 Euros per manifest received from the

Airfreight Customer in a manual or paper format, and 2 Euros per manifest received in electronic format.

107.     These U.S. Customs Surcharges were jointly implemented by Defendants beginning in August 2004 and continued thereafter.

**Defendants' Concerted Refusal to Discount**

108.     Airfreight Carriers historically and typically allow freight forwarders a discount on Airfreight Shipping Services secured by the freight forwarder.

109.     During the Class Period, Defendants met, communicated and jointly agreed to increase Airfreight Shipping Services prices by concertedly refusing to pay certain discounts to freight forwarders with respect to Airfreight Shipping Services.

110.     As a result of these secret meetings and communications, Defendants collusively agreed to refuse to provide discounts to freight forwarders with respect to the Surcharges on Airfreight Shipping Services.

**Defendants' Concerted Increases in Yields**

111.     Data available to all Airfreight Carriers show yields for the industry as a whole.

112.     In furtherance of their Agreement, Defendants privately exchanged individual Airfreight Carriers' yields.

113.     During the Class Period, Defendants met, discussed and jointly agreed to concertedly increase their yields on Airfreight Shipping Services.

**Defendants' Allocation of Customers**

114.     During the Class Period, Defendants met, communicated and jointly agreed to increase, maintain or stabilize Airfreight Shipping Services prices by allocating

their Airfreight Customers where necessary in order to minimize a customers' ability to access competitive rates.

115.     In furtherance of their conspiracy to increase Air Shipping Services prices during the Class Period, Defendants, at times, jointly and secretly agreed to and did refrain from pursuing and/or acquiring each others' customers.

## Defendants' Intent

116.     All Defendants' wrongful acts complained of herein were done knowingly, intentionally, purposefully, and willfully, and were carried out with knowledge of and willful disregard of the rights of Plaintiffs and the Classes they represent, in a calculating fashion and/or with the expectation of profiting therefrom in an amount exceeding the amounts payable by them to Plaintiffs and the Classes as a result of such wrongful actions.

## Fraudulent Concealment

117.     Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiffs and the Classes.

118.     Plaintiffs and members of the Classes did not discover and could not have discovered, through the exercise of reasonable diligence, which they in fact exercised, the existence of the conspiracy alleged herein until February 2006, when the investigations by the U.S. Department of Justice and other foreign antitrust regulators became public, because Defendants and their co-conspirators actively and fraudulently concealed the existence of their conspiracy.

119.     Because Defendants' conspiracy was actively concealed until February 2006, Plaintiffs and members of all Classes were unaware of Defendants' unlawful

conduct alleged herein and did not know that they were paying artificially high prices for Airfreight Shipping Services.

120.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

121.    Defendants agreed among themselves not to discuss publicly or otherwise reveal the nature and substance of the acts and communications in furtherance of their illegal conspiracy.

122.    Defendants met and communicated secretly concerning the pricing and marketing of Airfreight Shipping Services so as to avoid detection.

123.    By its very nature, Defendants' price-fixing conspiracy was inherently self-concealing.

124.    Defendants gave false and pretextual reasons for their Surcharges during the Class Period.

125.    Each of Defendants' Surcharge announcements during the Class Period constituted implicit statements that the Surcharges in question were legitimate and the result of legitimate competitive market forces.  Surcharges for Airfreight Shipping Services before the Class Period had occurred and were publicly reported in press releases, news wire services, trade publications, and newspapers.  Plaintiffs were thus conditioned by experience in dealing with Defendants in what Plaintiffs believed to be a competitive industry to expect such Surcharges from time to time.  However, any Surcharge that was openly collusive would not have been tolerated by Plaintiffs.

126.    The Surcharges in question announced by Defendants and reported in public sources were consistently ascribed by Defendants and others to normal market forces and considerations, including increases in costs.  Plaintiffs and members of the Classes also did not have and could not have had contemporaneous access to sufficient information regarding Defendants' costs and thus had to rely on the truthfulness of Defendants' purported cost justifications.

127.    As an example, JAL Cargo posted on its website an explanation of Fuel Surcharges and Security Surcharges (what it called "Insurance Surcharges") that attributed them solely to rising costs and did not disclose that they were set collusively. The current version of this web page is found at <http://www.jal.co.jp/en/other/info2006_0714.html>.

128.    Similarly, Cargolux's website has a page tying fuel Surcharges to upward or downward fuel costs, which does not disclose the conspiratorial nature of the mechanism for setting the Surcharges.  The current version of this web page is found at <http://www.cargolux.com/services/surcharges_details.php>.

129.    Likewise, SAS Cargo attributed Security Surcharges primarily to cost factors without identifying the conspiracy relating to it.  The current version of its website devoted to this topic is found at <http://www.sascargo.com/default.asp?NavID=2272>.

130.    At its website, British Airways has also attributed Fuel Surcharges to cost factors, with no reference to its collusive activities.  The current web page on this topic is found at <http://www.baworldcargo.com/surcharges/>.

131.    KLM and Air France have issued press releases during the Class Period announcing Fuel Surcharge increases purportedly on the basis of rising costs; in none of these was the collusive mechanism used to set those Surcharges disclosed.  Examples can be found at

http://www.klmcargo.com/tds/frameset.jsp?http&&&www.klmcargo.com/tds//newspage/ news/KLMCargoadaptsfuelsurchargemechanismandincreasesfuelsurchargetoEuro035.jsp ?ComponentID=58583&SourcePageID=9062>, <http:// www.airfranceklm-finance.com/sysmodules/RBS_fichier/admin/forceddownload.php?id=375 - >, and <www.af-klm.com/cargo/b2b/cargo_en/images/FSC%20AFKL%20-%200,50%20English_060131_tcm230-41568.pdf >.

132.    Similar pretextual announcements have been made during the Class Period by Defendants, including Singapore Airlines (<http://www.findarticles.com/p/articles/mi_m0CWU/is_2005_July_8/ai_n14729796>), Alitalia (<http://www.rte.ie/business/2005/0711/altalia.html>), ANA (<http://www.finanznachrichten.de/nachrichten-2006-09/artikel-6927521.asp>), and Lufthansa (<http://findarticles.com/p/articles/mi_m0CWU/is_2005_Sept_16/ai_n15397423>). These are only a few examples among many.  Other Defendants made misleading announcements of the same type during the Class Period.

133.    These false or misleading explanations for Surcharges lulled Plaintiffs into believing that increases were the normal result of competitive market forces rather than the product of collusive efforts.  Defendants' statements to the media, to customers, and to analysts about the reasons for such Surcharges were designed to, and did, put Plaintiffs

and members of the Classes off guard and cause them to accept the increases without undertaking further inquiry.  Even had such inquiry been undertaken, it would have proven futile, because Plaintiffs and members of the Classes did not have access to contemporaneous information that would have allowed them to evaluate whether each Defendant's claimed justifications for Surcharges were valid.

134.    At the time, Plaintiffs considered Defendants' articulated reasons for their Surcharges during the Class Period to be both normal and legitimate.  Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' Surcharges.

135.    Plaintiffs and members of the Classes could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, conspiracy or combination.  The conspiracy as herein alleged was fraudulently concealed by Defendants by various means and methods, including, but not limited to, secret meetings, misrepresentations to customers concerning the reason for price increases and surreptitious communications among Defendants by the use of the telephone or in-person meetings at trade association gatherings (and elsewhere) in order to prevent the existence of written records.

136.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators until February of 2006, Plaintiffs and the members of the Classes had no knowledge of the alleged conspiracy, or of any facts

27

or information which would have caused a reasonably diligent person to investigate whether a conspiracy existed.

137.    None of the facts or information available to Plaintiffs and members of the Classes prior to February of 2006, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to February of 2006.

138.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statue of limitations has been tolled with respect to any claims of Plaintiffs and members of the Classes as a result of the anticompetitive conduct alleged in this Complaint.

## AMNESTY RECIPIENT

139.    On or before December 31, 2005, Deutsche Lufthansa AG and Lufthansa Cargo AG approached the U.S. Department of Justice ("DOJ"), which has "a policy of according leniency to corporations reporting their illegal antitrust activity at an early stage, if they meet certain conditions."

140.    Lufthansa made an application under the DOJ's Corporate Leniency Policy on behalf of Deutsche Lufthansa AG, Lufthansa Cargo AG, Swiss International Air Lines Ltd., and any subsidiaries, to report price-fixing activity and/or other conduct potentially violative of Section 1 of the Sherman Act, 15 U.S.C. § 1, in the air cargo industry in the United States and elsewhere.

141.    Based on their report to the DOJ and consistent with and pursuant to the DOJ leniency policy, Lufthansa was accepted into the leniency program and extended full federal government immunity for the reported price fixing activities.

## COUNT I
## VIOLATION OF THE SHERMAN ACT
## (ON BEHALF OF DOMESTIC DIRECT PURCHASERS)

142.    The Domestic Direct Purchaser Plaintiffs described in this count incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 141 of this Complaint.

### U.S. Direct Purchaser Plaintiffs

143.    Plaintiff Benchmark Export Services ("Benchmark") has its principal place of business at 108 A Erickson Ave., Essington, Pennsylvania 19029.  Benchmark has been at all relevant times a freight forwarder in the U.S. and an Airfreight Customer. During the Class Period, Benchmark purchased Airfreight Shipping Services directly from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

144.    Plaintiff Fleurchem, Inc. ("Fleurchem"), has its principal place of business at 33 Sprague Ave., Middletown, New York 10940.  Fleurchem has been at all relevant times a chemical additive supply company in the U.S. and an Airfreight Customer. During the Class Period, Fleurchem purchased Airfreight Shipping Services directly from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

145.    Plaintiff FTS International Express, Inc. ("FTS") has its principal place of business at 400 Country Club Drive, Bensenville, Illinois 60106.  FTS has been at all relevant times a freight forwarder and consolidator in the U.S. and an Airfreight Customer. During the Class Period, purchased Airfreight Shipping Services directly from

one or more Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

146.    Plaintiff JSNP, Inc. ("JSNP") has its principal place of business at 1012 North Avenue 57, Los Angeles, California 90042.  JSNP was at all relevant times a worldwide pet transporter in the U.S. and an Airfreight Customer.  During the Class Period, JSNP purchased Airfreight Shipping Services for shipments within, to, or from the United States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

147.    Plaintiff Ralph Olarte d/b/a Olarte Transport Services ("Olarte") has its principal place of business at 738 East 9th Street, Unit #8, Los Angeles, CA 90021.  Olarte was at all relevant times a freight forwarder in the U.S. and an Airfreight Customer.  During the Class Period, Olarte purchased Airfreight Shipping Services for shipments within, to, or from the United States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

148.    Plaintiff R.I.M. Logistics, Ltd. ("R.I.M.") has its principal place of business at 1325 Mittel Boulevard, Wood Dale, Illinois 60191.  R.I.M. has been at all relevant times a freight forwarder in the U.S. and an Airfreight Customer.  During the Class Period, R.I.M.  purchased Airfreight Shipping Services for shipments within, to, or from the United States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

149.    Plaintiff S.A.T. Sea & Air Transport, Inc. ("S.A.T.") is headquartered at 1200 South 192nd, Suite 200, Seattle, Washington 98148.  S.A.T. was at all relevant times an Airfreight Customer.  During the Class Period, S.A.T. purchased Airfreight Shipping

Services for shipments within, to, or from the United States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

150.    Plaintiff Sul-American Export, Inc. ("Sul-American") has its principal place of business at 147-41st Street, Brooklyn, New York 11432.  Sul-American has been at all relevant times an importer in the U.S. and an Airfreight Customer.  During the Class Period, purchased Airfreight Shipping Services directly from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

151.    Plaintiff TNT Freight Management USA, Inc. ("TNT USA") is headquartered at 270 Terminal Avenue, Clark, New Jersey 07066.  TNT USA, a mail and package delivery service in the U.S., was at all relevant times an Airfreight Customer.  During the Class Period, TNT USA purchased Airfreight Shipping Services for shipments within, to, or from the United States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

152.    The Plaintiffs named in paragraphs 143 through 151 are referred to herein as the "U.S. Direct Purchaser Plaintiffs."

153.    During the Class Period, the U.S. Direct Purchaser Plaintiffs and the U.S. Direct Purchaser Class paid for Airfreight Shipping Services directly to Defendants (or their agents, subsidiaries, and/or controlled affiliates).

**Defendants**

154.    Defendants include those parties alleged in paragraphs 23 through 68 of this Complaint.

31

**Jurisdiction and Venue**

155.    The claims of the U.S. Direct Purchaser Plaintiffs and the members of the U.S. Direct Purchaser Class for injuries sustained by reason of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, are brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees.

156.    This Court has original federal question jurisdiction over the Sherman Act claims asserted in this Count, pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

157.    Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

158.    Venue is also proper because this action has been transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  Thus, no other forum would be more convenient for the parties and witnesses to litigate this case.

**Class Action Allegations**

159.    U.S. Direct Purchaser Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons and entities (excluding governmental entities,
> Defendants, and Defendants' respective predecessors, subsidiaries,
> affiliates, and business partners) in the United States that
> purchased Airfreight Shipping Services for shipments within, to, or
> from the United States directly from any of the Defendants or any
> predecessor, subsidiary, or affiliate of each, at any time during the
> period from no later than January 1, 2000 to the present.

160.   Because such information is in the exclusive control of Defendants, U.S. Direct Purchaser Plaintiffs do not know the exact number of the members of the U.S. Direct Purchaser Class.  Due to the nature of the trade and commerce involved, however, U.S. Direct Purchaser Plaintiffs believe that the members of the U.S. Direct Purchaser Class number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all members of the U.S. Direct Purchaser Class is impracticable.

161.   There are questions of law or fact common to the U.S. Direct Purchaser Class which will predominate over any questions that may affect only individual members, including:

a.   whether Defendants engaged in a combination or conspiracy to fix, raise, maintain, and/or stabilize Airfreight Shipping Services prices charged in the United States and throughout the world;

b.   whether Defendants violated Section 1 of the Sherman Act;

c.   the duration of the conspiracy alleged in this Complaint;

d.   the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

e.      whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of U.S. Direct Purchaser Plaintiffs and the members of the U.S. Direct Purchaser Class;

f.      the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged in the United States and throughout the world during the Class Period;

g.      whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

h.      whether damages can be shown on a class-wide basis;

i.      the appropriate measure of damages sustained by U.S. Direct Purchaser Plaintiffs and members of the U.S. Direct Purchaser Class; and

j.      whether the U.S. Direct Purchaser Class is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

162.    The U.S. Direct Purchaser Plaintiffs Benchmark, Fleurchem, FTS, JSNP, Olarte, R.I.M., S.A.T., Sul-American, and TNT USA are members of the U.S. Direct Purchaser Class, having directly purchased Airfreight Shipping Services from one or more of the Defendants.

163.    The prosecution of separate actions by individual members of the U.S. Direct Purchaser Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

164.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.   The U.S. Direct Purchaser Class is readily definable and one for which records should exist in the files of Defendants.

b.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.   Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

d.   Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

e.   This class action presents no difficulties of management that would preclude its maintenance as a class action.

165.   The U.S. Direct Purchaser Plaintiffs' claims are typical of the claims of other U.S. Direct Purchaser Class members.

166.   The U.S. Direct Purchaser Plaintiffs are represented by counsel competent and experienced in the prosecution of antitrust and class action litigation and who will fairly and adequately protect the interests of the members of the U.S. Direct Purchaser Class.

167.   The U.S. Direct Purchaser Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the U.S. Direct Purchaser Class with respect to the subject matter of this litigation.

35

## Injury to the U.S. Direct Purchaser Plaintiffs and U.S. Direct Purchaser Class

168.    The combination and conspiracy alleged herein had the following effects, among others:

a.   The prices charged by Defendants to, and paid by, U.S. Direct Purchaser Plaintiffs and members of the U.S. Direct Purchaser Class for Airfreight Shipping Services were fixed, raised, maintained or stabilized at artificially high and non-competitive levels;

b.   U.S. Direct Purchaser Plaintiffs and members of the U.S. Direct Purchaser Class have been deprived of free and open competition in the purchase of Airfreight Shipping Services in the United States and worldwide;

c.   U.S. Direct Purchaser Plaintiffs and members of the U.S. Direct Purchaser Class were required to pay more for Airfreight Shipping Services in the United States and worldwide than they would have paid in an competitive marketplace absent Defendants' price-fixing conspiracy; and

d.   Competition in the sale of Airfreight Shipping Services has been restrained, suppressed or eliminated.

169.    During the Class Period, Defendants' Airfreight Shipping Services conspiracy as described herein caused U.S. Direct Purchaser Plaintiffs and the members of the U.S. Direct Purchaser Class to pay artificially inflated prices for Airfreight Shipping Services they would not have paid absent such violations.  As a result, U.S. Direct Purchaser Plaintiffs and the members of the U.S. Direct Purchaser Class have been injured and damaged in their business and property in an amount to be determined according to proof.

170.    As a direct and proximate result of Defendants' illegal conspiracy, U.S. Direct Purchaser Plaintiffs and the members of the U.S. Direct Purchaser Class have been injured and financially damaged in their respective businesses and property, in that they have paid artificially inflated prices during the Class Period that they would not have paid in the absence of the illegal conspiracy.

### Violation Alleged

171.    During the Class Period, the exact dates being unknown to the U.S. Direct Purchaser Plaintiffs, Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize the prices of Airfreight Shipping Services and to allocate customers, in the United States and throughout the world through the means described in this Complaint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

172.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, or stabilize the prices of Airfreight Shipping Services.

173.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce.  Defendants received payment for such products across state and national boundaries.  Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States and foreign commerce.

174.    Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

175.     Defendants' anticompetitive activities both inside the United States and in foreign nations have caused injury to the U.S. Direct Purchaser Plaintiffs and the U.S. Direct Purchaser Class.

176.     U.S. Direct Purchaser Plaintiffs and the U.S. Direct Purchaser Class seek treble damages for their injuries, injunctive relief, and any such other relief that the Court deems necessary and appropriate.

### COUNT II
### VIOLATION OF FEDERAL AND STATE ANTITRUST AND UNFAIR COMPETITION LAWS AND STATE COMMON LAW (FOUR SUBCOUNTS BROUGHT ON BEHALF OF DOMESTIC INDIRECT PURCHASERS)

177.     The U.S. Indirect Purchaser Plaintiffs and U.S. Indirect Purchaser Subclass Plaintiffs described in this Count incorporate by reference as if fully set forth in this Count and the four Subcounts herein the allegations contained in paragraphs 1 through of this Complaint.

### U.S. Indirect Purchaser Plaintiffs and U.S. Indirect Purchaser Subclass Plaintiffs

178.     Plaintiff Sangean American, Inc. ("Sangean American") is a California corporation with its principal place of business in South El Monte, California.  During the Class Period, Sangean American indirectly purchased Airfreight Shipping Services from one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

179.     Plaintiff JCK Industries, Inc. ("JCK") is an Ohio corporation with its principal place of business in Huron, Ohio.  During the Class Period, JCK indirectly purchased Airfreight Shipping Services from one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

38

180.    Plaintiff Leis by Ron, Inc. ("Leis by Ron") is a Hawaii corporation with its principal place of business in Honolulu, Hawaii.  During the Class Period, Leis by Ron indirectly purchased Airfreight Shipping Services from one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

181.    Plaintiff Alluvion, Inc. ("Alluvion") is a Hawaii corporation with its principal place of business in Haleiwa, Hawaii.  During the Class Period, Alluvion indirectly purchased Airfreight Shipping Services from one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

182.    Plaintiff Maria's Collections, Inc. ("MCI") is a Michigan corporation. During the Class Period, MCI indirectly purchased Airfreight Shipping Services from one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

183.    Plaintiff Printing Technologies, Inc. ("PTI") is a California corporation with its principal place of business in Chatsworth, California.  During the Class Period, PTI indirectly purchased Airfreight Shipping Services from one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

184.    Plaintiff Paradiso, Inc. ("Paradiso") is a Californian corporation with its principal place of business at 85 Liberty Ship Way, Suite 114, Sausalito, CA 94965. During the Class Period, Paradiso indirectly purchased Airfreight Shipping Services from

one or more of the Defendants for shipments within or to or from the United States, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

185.   The Plaintiffs named in paragraphs 178 through 184 are referred to herein collectively as the "U.S. Indirect Purchaser Plaintiffs" and the Plaintiffs named in those paragraphs other than JCK are referred to herein collectively, as the "U.S. Indirect Purchaser Subclass Plaintiffs."

186.   During the Class Period, the U.S. Indirect Purchaser Plaintiffs and the U.S. Indirect Purchaser Class paid for Airfreight Shipping Services indirectly to Defendants (or their agents, subsidiaries, and/or controlled affiliates).

## Defendants

187.   Defendants include those parties alleged in paragraphs 23 through 68 of this Complaint.

## Jurisdiction and Venue

188.   The claims brought on behalf of the U.S. Indirect Purchaser Class and the U.S. Indirect Purchaser Subclass for injuries sustained by members of the U.S. Indirect Purchaser Class and members of the U.S. Indirect Purchaser Subclass by reason of Defendants' violations of the Sherman Act (Subcount I) and applicable State antitrust, consumer protection and unfair competition laws (Subcounts II and III), and under common law for unjust enrichment (Subcount IV), are brought pursuant to: (a) 28 U.S.C. § 1332(d)(2)(B) to recover all damages recoverable under those laws; and (b) Sections 4 and 16 of the Clayton Act, (15 U.S.C. §§ 15 and 26), 28 U.S.C. § 1337 (commerce and antitrust regulation) and 28 U.S.C. § 1331 (federal question) to obtain injunctive relief under the Sherman Act.

189.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all state law claims asserted by the U.S. Indirect Purchaser Subclass because they arise from the same nucleus of operative facts alleged in this Complaint, and are so related to the Sherman Act claims of the U.S. Indirect Purchaser Class and the U.S. Direct Purchaser Class over which this Court has original jurisdiction that they form part of the same case or controversy.

190.     Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to U.S. Indirect Purchaser Plaintiffs' and U.S. Indirect Purchaser Subclass Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

191.     Venue is also proper because this action has been transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  Thus no other forum would be more convenient for the parties and witnesses to litigate this case.

### Class Action Allegations

192.     The U.S. Indirect Purchaser Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Class:

### U.S. INDIRECT PURCHASER CLASS:

All persons and entities in the United States that purchased Airfreight Shipping Services for shipments within, to, or from the United States indirectly from any of the Defendants or any

predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

193.    The U.S. Indirect Purchaser Class also includes the following Subclass, which seeks damages under various state statutes as follows:

### U.S. INDIRECT PURCHASER SUBCLASS:

All persons and entities (excluding governmental entities, Defendants, and Defendants' respective predecessors, subsidiaries, affiliates, and business partners) within the States of Alabama, Alaska, Arizona, Arkansas, California, Florida, Hawaii, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin, and Wyoming, and within the District of Columbia that purchased Airfreight Shipping Services for shipments within, to or from the United States indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

194.    Because such information is in the exclusive control of Defendants, U.S. Indirect Purchaser Plaintiffs and U.S. Indirect Purchaser Subclass Plaintiffs do not know the exact number of members of the U.S. Indirect Purchaser Class or the U.S. Indirect Purchaser Subclass.  Due to the nature of the trade and commerce involved, however, U.S. Indirect Purchaser Plaintiffs and the U.S. Indirect Purchaser Subclass Plaintiffs believe that the members of the U.S. Indirect Purchaser Class and the U.S. Indirect Purchaser  Subclass number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all members of the U.S. Indirect Purchaser Class and the U.S. Indirect Purchaser Subclass, respectively, is impracticable.

195.    There are questions of law or fact common to the U.S. Indirect Purchaser Class and the U.S. Indirect Purchaser Subclass which will predominate over any questions that may affect only individual members, including:

a.    whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize Airfreight Shipping Services prices charged in the United States and throughout the world;

b.    whether Defendants violated Section 1 of the Sherman Act;

c.    whether Defendants violated various state antitrust laws;

d.    whether Defendants violated various state consumer protection laws;

e.    whether Defendants violated various state unfair competition laws;

f.    the duration of the conspiracy alleged in this Complaint;

g.    the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

h.    whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of U.S. Indirect Purchaser Plaintiffs, the U.S. Indirect Purchaser Subclass Plaintiffs, and the other members of the U.S. Indirect Purchaser Class and the U.S. Indirect Purchaser Subclass;

i.    the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged in the United States and throughout the world during the Class Period;

j.    whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

> k.     whether damages can be shown on a class-wide basis;
>
> l.     the appropriate measure of damages sustained by the U.S. Indirect

Purchaser Subclass Plaintiffs and the other members of the U.S. Indirect Purchaser

Subclass;

> m.     whether Defendants were unjustly enriched; and
>
> n.     whether the U.S. Indirect Purchaser Class is entitled to injunctive

relief to prevent the continuation or furtherance of the violations of Section 1 of the

Sherman Act alleged.

196.     The U.S. Indirect Purchaser Plaintiffs are members of the U.S. Indirect

Purchaser Class, having indirectly purchased Airfreight Shipping Services from one or

more of the Defendants.

197.     The U.S. Indirect Purchaser Subclass Plaintiffs are members of the U.S.

Indirect Purchaser Subclass, being located in one or more of the States of Alabama,

Alaska, Arizona, Arkansas, California, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana,

Maine, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada,

New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode

Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia,

Wisconsin, or Wyoming, and the District of Columbia and having indirectly purchased

Airfreight Shipping Services from one or more of the Defendants.

198.     The prosecution of separate actions by individual members of the U.S.

Indirect Purchaser Class or the U.S. Indirect Purchaser Subclass would create a risk of

inconsistent or varying adjudications, establishing incompatible standards of conduct for

Defendants.

199.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

      a.    The U.S. Indirect Purchaser Class is readily definable and one for which records should exist in the files of Defendants.

      b.    The U.S. Indirect Purchaser Subclass is readily definable and one for which records should exist in the files of Defendants.

      c.    Prosecution as a class action will eliminate the possibility of repetitious litigation.

      d.    Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

      e.    Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

      f.    This class action presents no difficulties of management that would preclude its maintenance as a class action.

200.    The U.S. Indirect Purchaser Plaintiffs' claims are typical of the claims of other U.S. Indirect Purchaser Class members.

201.    The U.S. Indirect Purchaser Subclass Plaintiffs' claims are typical of the claims of other U.S. Indirect Purchaser Subclass members.

202.    The U.S. Indirect Purchaser Plaintiffs and the U.S. Indirect Purchaser Subclass Plaintiffs are represented by counsel competent and experienced in the

prosecution of antitrust and class action litigation, and who will fairly and adequately protect the interests of the members of the U.S. Indirect Purchaser Class and the U.S. Indirect Purchaser Subclass.

203.    The U.S. Indirect Purchaser Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the U.S. Indirect Purchaser Class with respect to the subject matter of this litigation.

204.    The U.S. Indirect Purchaser Subclass Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the U.S. Indirect Purchaser Subclass as well as those of all members of the U.S. Indirect Purchaser Class with respect to the subject matter of this litigation.

### **Injury to the U.S. Indirect Purchaser Plaintiffs and Class**

205.    The combination and conspiracy alleged herein had the following effects, among others:

> a.   The prices charged by Defendants to, and paid by, U.S. Indirect Purchaser Plaintiffs and members of the U.S. Indirect Purchaser Class for Airfreight Shipping Services were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

> b.   U.S. Indirect Purchaser Plaintiffs and members of the U.S. Indirect Purchaser Class have been deprived of free and open competition in the purchase of Airfreight Shipping Services in the United States and worldwide;

> c.   U.S. Indirect Purchaser Plaintiffs and members of the U.S. Indirect Purchaser Class were required to pay more for Airfreight Shipping Services in the United States and worldwide than they would have paid in an competitive marketplace absent Defendants' price-fixing conspiracy; and

      d.  Competition in the sale of Airfreight Shipping Services has been restrained, suppressed or eliminated.

206.    During the Class Period, Defendants' Airfreight Shipping Services cartel as described herein directly and proximately caused U.S. Indirect Purchaser Plaintiffs and the members of the U.S. Indirect Purchaser Class to pay supra-competitive prices for Airfreight Shipping Services they would not have paid absent such violations.  As a result, U.S. Indirect Purchaser Plaintiffs and the members of the U.S. Indirect Purchaser Class have been injured and damaged in their business and property in an amount to be determined according to proof.

## Violations Alleged

207.    Defendants' intentional and purposeful anti-competitive acts described in this Complaint directly and proximately caused, and were intended to cause, the U.S. Indirect Purchaser Plaintiffs, and the U.S. Indirect Purchaser Class, to pay supra-competitive prices for Airfreight Shipping Services during the Class Period.  These acts give rise to the causes of action in the four Subcounts that follow.

**Subcount I:**  **Violation of the Sherman Act:**

208.    During the Class Period, the exact dates being unknown to the U.S. Indirect Purchaser Plaintiffs, Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services and to allocate customers in the United States and throughout the world through the means described in this Complaint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

209.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect of

which were to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services.

210.    Defendants' illegal combination and conspiracy alleged herein has had the following effects, among others:

a.    price competition in the charging of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

b.    price competition in the contracting of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

c.    prices charged by Defendants for Airfreight Shipping Services have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

d.    prices paid by U.S. Indirect Purchaser Plaintiffs and the members of the U.S. Indirect Purchaser Class have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels; and

e.    members of the U.S. Indirect Purchaser Class have been deprived of the benefit of free and open competition.

211.    Defendants' anticompetitive activities both inside the United States and in foreign nations have caused injury to the U.S. Indirect Purchaser Plaintiffs and the U.S. Indirect Purchaser Class.

212.    U.S. Indirect Purchaser Plaintiffs and the U.S. Indirect Purchaser Class seek injunctive relief against Defendants, preventing and restraining the violations alleged herein and have no alternative remedy under federal law.

**Subcount II:  Violations of State Antitrust Statutes And Common Law**

213.   Defendants' anti-competitive actions in restraint of trade described in this Complaint are in violation of the following state (or District of Columbia) antitrust statutes or common law:

> a.   Alabama Code §§ 8-10-1 *et seq.*;
>
> b.   Arizona Revised Stat. §§ 44-1401 *et seq.*;
>
> c.   California Bus. & Prof. Code §§ 16700 *et seq.* and California Bus. & Prof. Code §§ 17200 *et seq.*;
>
> d.   District of Columbia Code §§ 28-5403 *et seq.*;
>
> e.    Iowa Code §§ 553.1 *et seq.*;
>
> f.   Kansas Stat. Ann. §§ 50-101 *et seq.*;
>
> g.   Maine Rev. Stat. Ann. Title 10, §§ 1101 *et seq.*;
>
> h.    Michigan Comp. Laws §§ 445.773 *et seq.*;
>
> i.   Minnesota Stat. §§ 325D.52 *et seq.*;
>
> j.   Mississippi Code Ann. §§ 75-21-1 *et seq.*;
>
> k.    Nebraska Rev. Stat. §§ 59-801 *et seq.*;
>
> l.   Nevada Rev. Stat. Ann. §§ 598A *et seq.*;
>
> m.   New Mexico Stat. Ann. §§ 57-1-1 *et seq.*;
>
> n.   North Carolina Gen. Stat. §§ 75-1 *et seq.*;
>
> o.    North Dakota Cent. Code §§ 51-08.1-01 *et seq.*;
>
> p.   Pennsylvania common law;
>
> q.    South Dakota Codified Laws §§ 37-1 *et seq.*;
>
> r.   Tennessee Code Ann. §§ 47-25-101 *et seq.*;
>
> s.   Vermont Stat. Ann. Title 9, §§ 2453 *et seq.*;

    t. West Virginia §§ 47-18-1 *et seq.*; and

    u. Wisconsin Stat. §§ 133.01 *et seq.*

  214. As a direct and proximate result of Defendants' unlawful conduct, the U.S. Indirect Purchaser Subclass Plaintiffs, and the members of the U.S. Indirect Purchaser Subclass in each of the states listed above and in the District of Columbia, have been injured in their business and property in that they paid more for Airfreight Shipping Services than they otherwise would have paid in the absence of Defendants' unlawful conduct.

  215. The U.S. Indirect Purchaser Subclass Plaintiffs and the members of the U.S. Indirect Purchaser Subclass seek damages and/or monetary recoveries permitted under the laws of the aforementioned states for these injuries.

  216. The U.S. Indirect Purchaser Subclass Plaintiffs and the members of the U.S. Indirect Purchaser Subclass seek injunctive relief under the aforementioned laws, and any such other relief that the Court deems necessary and appropriate.

**<u>Subcount III:</u>** **<u>Violations of State Consumer Protection and Unfair Competition Statutes</u>**

  217. Defendants' unfair, unconscionable, deceptive or fraudulent acts and practices described in this Complaint directly and proximately caused and were intended to cause the U.S. Indirect Purchaser Subclass Plaintiffs and members of the U.S. Indirect Purchaser Subclass to pay supra-competitive prices for Airfreight Shipping Services during the Class Period.

  218. Defendants' unfair, unconscionable, deceptive or fraudulent acts and practices described in this Complaint are in violation of the following state (or District of Columbia) consumer protection and unfair competition statutes**:**

a.   Alaska Stat. §§ 45.50.471 *et seq.*;

b.   Alabama Code §§ 8-19-15 *et seq.*;

c.   Arkansas Code §§ 4-88-101 *et seq. ;*

c.   California Bus. & Prof. Code §§ 17200 *et seq.*;

d.   District of Columbia Code §§ 28-3901 *et seq.*;

e.   Florida Stat. § 501.201 *et seq.*;

f.   In this Complaint, the U.S. Indirect Purchaser Plaintiffs are
     not alleging a violation of Hawaii Rev. Stat. §§ 480 *et seq.*
     at this time, but will be doing so once they have complied
     with the procedural requirements set forth in Hawaii Rev.
     Stat. § 480-13.3;

g.   Idaho Code §§ 48-601 *et seq.*;

h.   Kansas Stat. Ann. §§ 50-623 *et seq.*;

i.   Louisiana Rev. Stat. §§ 51:1401  *et seq.*;

j.   Maine Rev. Stat. Ann. Title 5, §§ 207 *et seq.*;

k.   Mass. General Law Ch. 93A§§ 1 *et seq.* ;

l.   Montana Code §§ 30-14-101 *et seq.*;

m.   Nebraska Rev. Stat. §§ 59-1601 *et seq.*;

n.   Nevada Rev. Stat. Ann. §§ 598.0903 *et seq.*;

o.   New Hampshire Rev. Stat. §§ 358-A:1, *et seq.*;

p.   New Mexico Stat. Ann. §§ 57-12-1 *et seq.*;

q.   New York Gen. Bus. Law §§ 349 *et seq.*;

r.   North Carolina Gen. Stat. §§ 75-1.1 *et seq.*;

s.   Oregon Rev. Stat. §§ 646.605 *et seq.*;

t.   Rhode Island Gen. Laws §§ 6-13.1-1 *et seq.*;

u.   South Carolina Code Laws §§ 39-5-10 *et seq.*;

v.   Utah Code. §§ 13-11-1 *et seq.*;

w.   Vermont Stat. Ann. Title 9, §§ 2451 *et seq.*;

x.   West Virginia §§ 46A-6-101 *et seq.*; and

y.   Wyoming Stat. §§ 40-12-105.

219.   The U.S. Indirect Purchaser Subclass Plaintiffs and the U.S. Indirect Purchaser Subclass members in the states listed above paid supra-competitive, artificially inflated prices for Airfreight Shipping Services.  As a direct and proximate result of Defendants' unlawful conduct, the U.S. Indirect Purchaser Plaintiffs and the U.S. Indirect Purchaser Class have been injured in their business and property in that they paid more for Airfreight Shipping Services than they otherwise would have paid in the absence of Defendants' unlawful conduct.

220.   The U.S. Indirect Purchaser Subclass Plaintiffs and the members of the U.S. Indirect Purchaser Subclass seek damages and/or monetary recoveries permitted under the laws of the aforementioned states for these injuries.

221.   The U.S. Indirect Purchaser Subclass Plaintiffs and the members of the U.S. Indirect Purchaser Subclass seek injunctive relief, and any such other relief that the Court deems necessary and appropriate.

**Subcount IV:  Unjust Enrichment**

222.   Defendants have been unjustly enriched through overpayments by the U.S. Indirect Purchaser Plaintiffs and members of the U.S. Indirect Purchaser Class made as a result of the conspiracy.

223.    It would be inequitable for Defendants to retain the benefit of these overpayments that were conferred by the U.S. Indirect Purchaser Plaintiffs and members of the U.S. Indirect Purchaser Class.

224.    The U.S. Indirect Purchaser Subclass Plaintiffs and members of the U.S. Indirect Purchaser Subclass seek restitution with respect to, and/or disgorgement of all profits resulting from, such overpayments, and are entitled to return of these overpayments caused by the willful acts of Defendants either as damages or restitution.

## COUNT III
## VIOLATION OF THE SHERMAN ACT
## (ON BEHALF OF U.S. DIRECT FOREIGN PURCHASERS)

225.    The U.S. Direct Foreign Plaintiffs described in this Count incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 141 of this Complaint.

### U.S. Direct Foreign Plaintiffs

226.    Plaintiff TNT Freight Management (Singapore) Pte Ltd. ("TNT Singapore") is headquartered at 7 Airline Road #05-09, Cargo Agents Building E, Changi Airfreight Centre, Singapore 918102.  TNT Singapore, a mail and package delivery service in Singapore, was at all relevant times an Airfreight Customer.  During the Class Period, TNT Singapore purchased Airfreight Shipping Services for shipments between the U.S. and the rest of the world, excluding any E.U. Member State, directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

227.    Plaintiff TNT Freight Management (Australia) Pty Ltd. ("TNT Australia") is headquartered at 1 Millennium Court, Matraville, New South Wales, Australia.  TNT Australia, a mail and package delivery service in Australia, was at all relevant times an

Airfreight Customer.  During the Class Period, TNT Australia purchased Airfreight

Shipping Services for shipments between the U.S. and the rest of the world, excluding

any European Union Member State, directly from one or more of Defendants, and has

suffered pecuniary injury as a result of the antitrust violations alleged herein.

228.    Plaintiff TNT Freight Management (Hong Kong) Limited ("TNT Hong

Kong") is headquartered at 3/F Two Harbourfront,18-22 Tak Fung Street, Hung Hom,

Hong Kong.  TNT Hong Kong, a mail and package delivery service in Australia, was at

all relevant times an Airfreight Customer.  During the Class Period, TNT Hong Kong

purchased Airfreight Shipping Services for shipments between the U.S. and the rest of

the world, excluding any European Union Member State, directly from one or more of

Defendants, and has suffered pecuniary injury as a result of the antitrust violations

alleged herein.

229.    The Plaintiffs named in paragraphs 226 through 228 of this Complaint are

referred to herein as the "U.S. Direct Foreign Plaintiffs."

230.    During the Class Period, the U.S. Direct Foreign Plaintiffs and the

members of the U.S. Direct Foreign Subclass paid for Airfreight Shipping Services

directly to Defendants (or their agents, subsidiaries, and/or controlled affiliates).

**Defendants**

231.     Defendants include those parties alleged in paragraphs 23 through 68 of

this Complaint.

**Jurisdiction and Venue**

232.    The claims of the U.S. Direct Foreign Plaintiffs and the members of the

U.S. Direct Foreign Subclass for injuries sustained by reason of Defendants' violations of

Section 1 of the Sherman Act, 15 U.S.C. § 1, are brought pursuant to Sections 4 and 16 of

the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages, or the present value of actual damages sustained by them, with appropriate interest, and the costs of this suit, including reasonable attorneys' fees.

233.    This Court has original federal question jurisdiction over all Sherman Act claims asserted in this Count, pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

234.    This Court has original diversity jurisdiction over all claims brought in this Count pursuant to 28 U.S.C. § 1332(d)(2)(B) because the amount in controversy in this action exceeds the sum of $5 million, exclusive of interests and costs, and at least one member of the Class of Plaintiffs is a citizen of a foreign state, and at least one Defendant is a citizen of a State.

235.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all claims asserted herein by the U.S. Direct Foreign Plaintiffs and the U.S. Direct Foreign Subclass because they arise from the same nucleus of operative facts alleged in this Complaint, and are so related to the Sherman Act claims of the U.S. Direct Purchaser Class over which this Court has original jurisdiction that they form part of the same case or controversy.

236.    Defendants engaged in conduct both inside and outside of the U.S. that caused direct, substantial and reasonably foreseeable anticompetitive effects upon interstate commerce within the U.S. and upon foreign commerce, giving rise to the claims of the U.S. Direct Foreign Plaintiffs and the members of U.S. Direct Foreign Subclass. The adverse effects of this anticompetitive conduct in the U.S. are interdependent with, and are linked directly to, the adverse effects outside the U.S. and gave rise to the injuries

of the U.S. Direct Foreign Plaintiffs and the members of U.S. Direct Foreign Subclass. Defendants could not have maintained their international price-fixing arrangement for Airfreight Shipping Services that caused foreign injury to the U.S. Direct Foreign Plaintiffs and the members of U.S. Direct Foreign Subclass without impacting adversely the prices of Airfreight Shipping Services to, from, and within the U.S.

237.    Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

238.    Venue is also proper because this action has been transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  Thus no other forum would be more convenient for the parties and witnesses to litigate this case.

## Class Action Allegations

239.    U.S. Direct Foreign Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Subclass:

> All persons, Undertakings, and other entities (excluding governmental entities, Defendants, and Defendants' respective predecessors, subsidiaries, affiliates, and business partners) outside the United States that purchased Airfreight Shipping Services for shipments between the U.S. and the rest of the world, excluding any European Union Member State, directly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

240.    Because such information is in the exclusive control of Defendants, U.S. Direct Foreign Plaintiffs do not know the exact number of members of the U.S. Direct Foreign Subclass.  Due to the nature of the trade and commerce involved, however, U.S. Direct Foreign Plaintiffs believe that the members of the U.S. Direct Foreign Subclass number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States and the world so that joinder of all members of the U.S. Direct Foreign Subclass is impracticable.

241.    There are questions of law or fact common to the U.S. Direct Foreign Subclass which will predominate over any questions that may affect only individual members, including:

a.    whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize Airfreight Shipping Services prices charged in the United States and throughout the world;

b.    whether Defendants violated Section 1 of the Sherman Act;

c.    the duration of the conspiracy alleged in this Complaint;

d.    the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

e.    whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of U.S. Direct Foreign Plaintiffs and the other members of the U.S. Direct Foreign Subclass;

f.    the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged in the United States and throughout the world during the Class Period;

g.      whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

h.      whether damages can be shown on a class-wide basis;

i.      the appropriate measure of damages sustained by U.S. Direct Foreign Plaintiffs and other members of the U.S. Direct Foreign Subclass; and

j.      whether the U.S. Direct Foreign Subclass is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

242.     The U.S. Direct Foreign Plaintiffs, TNT Singapore, TNT Australia, TNT Hong Kong, and Sangean Hong Kong are members of the U.S. Direct Foreign Subclass, having directly purchased Airfreight Shipping Services from one or more of the Defendants.

243.     The prosecution of separate actions by individual members of the U.S. Direct Foreign Subclass would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

244.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.   The U.S. Direct Foreign Subclass is readily definable and one for which records should exist in the files of Defendants.

b.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.   Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously,

efficiently and without the duplication of effort and expense that numerous individual actions would engender.

        d.  Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

        e.  This class action presents no difficulties of management that would preclude its maintenance as a class action.

      245.    The U.S. Direct Foreign Plaintiffs' claims are typical of the claims of other U.S. Direct Foreign Subclass members.

      246.    The U.S. Direct Foreign Plaintiffs are represented by counsel competent and experienced in the prosecution of antitrust and class action litigation, and who will fairly and adequately protect the interests of the members of the Foreign Class and the U.S. Direct Foreign Subclass.

      247.    The U.S. Direct Foreign Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Foreign Class and the U.S. Direct Foreign Subclass with respect to the subject matter of this litigation.

### Injury to the U.S. Direct Foreign Plaintiffs and U.S. Direct Foreign Subclass

      248.    The combination and conspiracy alleged herein had the following direct, substantial, and reasonably foreseeable anticompetitive effects, among others, upon commerce in the U.S. and upon foreign commerce:

        a.  The prices charged by Defendants to, and paid by, U.S. Direct Foreign Plaintiffs and members of the U.S. Direct Foreign Subclass for Airfreight Shipping Services were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

b.  U.S. Direct Foreign Plaintiffs and members of the U.S. Direct Foreign Subclass have been deprived of free and open competition in the purchase of Airfreight Shipping Services in the United States and worldwide;

c.  U.S. Direct Foreign Plaintiffs and members of the U.S. Direct Foreign Subclass were required to pay more for Airfreight Shipping Services in the United States and worldwide than they would have paid in an competitive marketplace absent Defendants' price-fixing conspiracy; and

d.  Competition in the sale of Airfreight Shipping Services has been restrained, suppressed or eliminated.

249.   The conduct alleged herein significantly and adversely affected consumers worldwide, including the U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass.  The adverse effects of Defendants' conduct in the United States and the adverse effects outside the United States were interdependent and inextricably bound.

250.   During the Class Period, Defendants' anticompetitive conduct as described herein directly and proximately caused U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass to pay artificially inflated prices for Airfreight Shipping Services they would not have paid absent such violations.  As a result, U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass have been injured and damaged in their business and property in an amount to be determined according to proof.

251.   As a direct and proximate result of the illegal cartel, U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass have been injured and

financially damaged in their respective businesses and property, in that they have paid artificially inflated prices during the Class Period they would not have paid in the absence of the illegal conspiracy.

## **Violation Alleged**

252.    During the Class Period, the exact dates being unknown to the U.S. Direct Foreign Plaintiffs, Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services, in the United States and throughout the world through the means described in this Complaint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

253.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services.

254.    Defendants' illegal combination and conspiracy alleged herein has had the following effects, among others:

a.    price competition in the charging of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

b.    price competition in the contracting of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

c.    prices charged by Defendants for Airfreight Shipping Services have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

       d.      prices paid by members of the U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels; and

       e.      U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass have been deprived of the benefit of free and open competition.

255.    Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

256.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such products across state and national boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States and foreign commerce.

257.    Defendants' anticompetitive activities both inside the United States and in foreign nations have caused injury to the U.S. Direct Foreign Plaintiffs and the members of the U.S. Direct Foreign Subclass.

258.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such products across state and national boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a direct, substantial, and reasonably foreseeable anticompetitive effect upon, interstate commerce within the United States and upon foreign commerce.

259.     Defendants' anticompetitive activities and their U.S. effects are interdependent with their foreign effects and have proximately caused injury to the U.S. Direct Foreign Plaintiffs and U.S. Direct Foreign Subclass both inside the United States and in foreign nations.

260.     The U.S. Direct Foreign Plaintiffs and U.S. Direct Foreign Subclass seek injunctive relief, and treble damages or the present value of actual damages sustained by them, with appropriate interest, and any such other relief that the Court deems necessary and appropriate.

## COUNT IV
## VIOLATIONS OF THE SHERMAN ACT AND E.U. LAW
## (ON BEHALF OF E.U. DIRECT FOREIGN PURCHASERS)

261.     The E.U. Direct Foreign Plaintiffs described in this count incorporate by reference as if fully set forth herein the allegations contained paragraphs 1 through 141 of this Complaint.

### E.U. Direct Foreign Plaintiffs

262.     Plaintiff TNT Freight Management (Denmark) A/S ("TNT Denmark") is headquartered at Oliefabriksvej 29-43, 2770 Kastrup, Denmark.  TNT Denmark, a mail and package delivery service in Denmark, was at all relevant times an Airfreight Customer.  During the Class Period, TNT Denmark purchased Airfreight Shipping Services for shipments solely between the U.S. and various E.U. Member States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

263.     Deutscher Speditions und Logistikverband e.V. ("DSLV"), the German freight shippers association is headquartered at Weberstraße 77 53113 Bonn, Germany.

63

Members of DSLV agreed to assign to DSLV their claims for damages and other relief arising from Defendants acts as complained of herein.  With regard to the purchases by certain DSLV members underlying the claims assigned to DSLV, those members have been injured in their business or property by reason of the antitrust violations alleged herein.  DSLV seeks to recover on the claim assigned to it by those members.  DSLV was at all relevant times an Airfreight Customer.  During the Class Period, DSLV purchased Airfreight Shipping Services for shipments solely between the U.S. and various E.U. Member States directly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

264.    The Plaintiffs named in paragraphs 262 through 263 are referred to herein as the E.U. Direct Purchaser Plaintiffs.

265.    During the Class Period, the E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass paid for Airfreight Shipping Services directly to Defendants (or their agents, subsidiaries, and/or controlled affiliates).

## Defendants

266.     Defendants include those parties alleged in paragraphs 23 through 68 of this Complaint.

## Jurisdiction and Venue

267.    The claims of the E.U. Direct Foreign Plaintiffs and the members of the E.U. Direct Foreign Subclass for injuries sustained by reason of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, are brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages or the present value of actual damages sustained by them and aggravated or

exemplary damages, with appropriate interest, as well as the costs of this suit, including reasonable attorneys' fees.

268.    This Court has original federal question jurisdiction over all Sherman Act claims asserted in this Count, pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

269.    This Court has original diversity jurisdiction over all claims brought in this Count pursuant to 28 U.S.C. § 1332(d)(2)(B) because the amount in controversy in this action exceeds the sum of $5 million, exclusive of interests and costs, and at least one member of the Class of Plaintiffs is a citizen of a foreign state, and at least one Defendant is a citizen of a State.

270.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Sherman Act claims asserted in this Count by the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass because they arise from the same nucleus of operative facts alleged in this Complaint, and are so related to the Sherman Act claims of the U.S. Direct Purchaser Class over which this Court has original jurisdiction that they form part of the same case or controversy.

271.    Defendants engaged in conduct both inside and outside of the U.S. that caused direct, substantial and reasonably foreseeable anticompetitive effects upon interstate commerce within the U.S. and upon foreign commerce, giving rise to the claims of E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass.  The adverse effects of this anticompetitive conduct in the U.S. are interdependent with the adverse effects outside the U.S. and gave rise to the injuries of the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass.  Defendants could not have maintained their international

price-fixing arrangement for Airfreight Shipping Services that caused foreign injury to the E.U. Direct Foreign Plaintiffs and the members of E.U. Direct Foreign Subclass without impacting adversely the prices of Airfreight Shipping Services to, from, and within the U.S.

272.    The claims in this Complaint for the injuries sustained by the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass, by reason of Defendants' violations of Article 81 of the EC Treaty, and, in so far as the infringements affected trade between the European Community and Norway, Iceland, or Liechtenstein, the Defendants' violations of Article 53 of the EEA Agreement, are brought pursuant to Article 6 of Regulation 1/2003, and 28 U.S.C. § 1367(a) to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, for infringements of E.U. Law.

273.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the E.U. Law claims asserted in this Count by the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass because they arise from the same nucleus of operative facts alleged in this Complaint and are so related to the Sherman Act claims of the U.S. Direct Purchaser Class, over which this Court has original jurisdiction, that they form part of the same case or controversy.  The E.U. Law claims asserted in this Count are also supplemental to the Sherman Act claims of the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass for the same reason.

274.    Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were

found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

275.    Venue is also proper because this action has been transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  Thus no other forum would be more convenient for the parties and witnesses to litigate this case.

## Class Action Allegations

276.    E.U. Direct Foreign Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Subclass:

> All persons, Undertakings, and other entities (excluding governmental entities, Defendants, and Defendants' respective predecessors, subsidiaries, affiliates, and business partners) outside the United States that purchased Airfreight Shipping Services for shipments solely between the U.S. and any European Union Member State directly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

277.    Because such information is in the exclusive control of Defendants, E.U. Direct Foreign Plaintiffs do not know the exact number of members of the E.U. Direct Foreign Subclass.  Due to the nature of the trade and commerce involved, however, E.U. Direct Foreign Plaintiffs believe that the members of the E.U. Direct Foreign Subclass number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the world so that joinder of all members of the E.U. Direct Foreign Subclass is impracticable.

278.     There are questions of law or fact common to the E.U. Direct Foreign Subclass which will predominate over any questions that may affect only individual members, including:

a.      whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize Airfreight Shipping Services prices charged in the United States and throughout the world;

b.      whether Defendants violated Section 1 of the Sherman Act;

c.      whether Defendants violated Article 81 of the EC Treaty;

d.      whether Defendants violated Article 53 of the EEA Agreement;

e.      whether Defendants agreed to and engaged in concerted practices which affected trade between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States, which had as their object or effect the prevention, restriction, or distortion of competition within the common market;

f.      whether Defendants directly or indirectly fixed selling prices of Airfreight Shipping Services;

g.      the duration of the conspiracy alleged in this Complaint;

h.      the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

i.      whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of E.U. Direct Foreign Plaintiffs and the other members of the E.U. Direct Foreign Subclass;

j.      the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged in the United States, the E.U., and throughout the world during the Class Period;

k.      whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

l.      whether damages can be shown on a class-wide basis;

m.      the appropriate measure of damages sustained by E.U. Direct Foreign Plaintiffs and other members of the E.U. Direct Foreign Subclass;

n.      whether E.U. Direct Foreign Plaintiffs and the E.U. Direct Foreign Subclass are entitled to aggravated and exemplary damages; and

o.      whether the U.S. Direct Foreign Class is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

279.    The E.U. Direct Foreign Plaintiffs TNT Denmark and DSLV are members of the E.U. Direct Foreign Subclass, having directly purchased Airfreight Shipping Services from one or more of the Defendants.

280.    The prosecution of separate actions by individual members of the E.U. Direct Foreign Subclass would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

281.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.    The E.U. Direct Foreign Subclass is readily definable and one for which records should exist in the files of Defendants.

b.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.   Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

d.   Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

e.   This class action presents no difficulties of management that would preclude its maintenance as a class action.

282.    The E.U. Direct Foreign Plaintiffs' claims are typical of the claims of other E.U. Direct Foreign Subclass members.

283.    The E.U. Direct Foreign Plaintiffs are represented by counsel competent and experienced in the prosecution of antitrust and class action litigation, and who will fairly and adequately protect the interests of the members of the Foreign Class.

284.    The E.U. Direct Foreign Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Foreign Class with respect to the subject matter of this litigation.

70

### Injury, Loss, and Damage to the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass

### Sherman Act Injury:

285.     The combination and conspiracy alleged herein had the following direct, substantial, and reasonably foreseeable anticompetitive effects, among others, upon commerce in the U.S. and upon foreign commerce:

a.   The prices charged by Defendants to, and paid by E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass for Airfreight Shipping Services were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

b.   E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass have been deprived of free and open competition in the purchase of Airfreight Shipping Services in the United States and worldwide;

c.   E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass were required to pay more for Airfreight Shipping Services than they would have paid in a competitive marketplace absent Defendants' price-fixing scheme; and

d.   Competition in the sale of Airfreight Shipping Services has been restrained, suppressed or eliminated.

286.     The conduct alleged herein significantly and adversely affected consumers worldwide, including the E.U. Direct Foreign Plaintiffs and the members of the E.U. Direct Foreign Subclass.  The adverse effects of Defendants' conduct in the United States and the adverse effects outside the United States were interdependent and inextricably bound.

287.    During the Class Period, Defendants' anticompetitive conduct as described herein directly and proximately caused E.U. Direct Foreign Plaintiffs and the members of the E.U. Direct Foreign Subclass to pay artificially inflated prices for Airfreight Shipping Services they would not have paid absent such violations.  As a result, E.U. Direct Foreign Plaintiffs and the members of the E.U. Direct Foreign Subclass have been injured and damaged in their business and property in an amount to be determined according to proof.

### E.U. Law Loss and Damage:

288.    During the Class Period, the E.U. Direct Foreign Plaintiffs and the members of the E.U. Direct Foreign Subclass purchased Airfreight Shipping Services from Defendants solely between the U.S. and any E.U. Member State.

289.    Defendants' agreements and concerted practices, as complained of herein, had the following effects, among others:

a.    The selling prices of Airfreight Shipping Services were directly or indirectly fixed by Defendants at supra-competitive levels; and

b.   Competition within the common market has been prevented, restricted, or distorted.

290.    If the Airfreight Shipping Services cartel had not been implemented and/or given effect, the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass would have been able to buy Airfreight Shipping Services at lower prices.

291.    By reason of these breaches, E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass have suffered loss and damage.

## Violations Alleged

### Sherman Act Violation:

292.    During the Class Period, the exact dates being unknown to the E.U. Direct Foreign Plaintiffs, Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services, in the United States and throughout the world through the means described in this Complaint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

293.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services.

294.    Defendants' illegal combination and conspiracy alleged herein has had the following effects, among others:

　　　a.    price competition in the charging of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

　　　b.    price competition in the contracting of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

　　　c.    prices charged by Defendants for Airfreight Shipping Services have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

　　　d.    prices paid by E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels; and

e.      E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass have been deprived of the benefit of free and open competition.

295.    Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

296.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce.  Defendants received payment for such products across state and national boundaries.  Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States and foreign commerce.

297.    Defendants' anticompetitive activities both inside the United States and in foreign nations have caused injury to the E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass.

298.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce.  Defendants received payment for such products across state and national boundaries.  Defendants' activities, and the sale of their services, have both taken place within, and have had a direct, substantial, and reasonably foreseeable anticompetitive effect upon, interstate commerce within the United States and upon foreign commerce.

299.    Defendants' anticompetitive activities and their U.S. effects are interdependent with their foreign effects and have proximately caused injury to the E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass both inside the United States and in foreign nations.

300.    The E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass seek injunctive relief, and treble damages or the present value of actual damages sustained by them, with appropriate interest, and any such other relief that the Court deems necessary and appropriate.

**E.U. Law Infringements:**

301.    During the Class Period, Defendants sold Airfreight Shipping Services and received payment for such services between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States.

302.    Defendants agreed to and engaged in concerted practices which appreciably and foreseeably affected trade between Member States, and prejudiced the realization of a market between Member States.  These concerted practices had as their object and effect the prevention, restriction and distortion of competition within the common market and were conducted in a manner incompatible with the common market.

303.    Through the agreements and concerted practices complained of herein, Defendants, directly or indirectly fixed selling prices of Airfreight Shipping Services, in breach of Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement.

304.    Defendants' agreements and concerted practices as complained of herein were not indispensable to the attainment of improved production or distribution of goods or the promotion of technical or economic progress, and did not allow consumers a fair share of any resulting benefit.

305.    These agreements and concerted practices introduced the possibility of eliminating competition in respect of Airfreight Shipping Services.

306.    Defendants' wrongful actions were carried out with knowledge of and willful disregard of the rights of the E.U. Direct Foreign Plaintiffs and E.U. Direct

Foreign Subclass, in a calculating fashion and/or with the expectation of profiting therefrom by exceeding the amounts payable by them to the E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass as a result of such wrongful actions, warranting aggravated and exemplary damages accordingly.

307.     By reason of their implementation of and/or giving effect to the Airfreight Shipping Services cartel, Defendants acted in breach of:

        a.   a statutory duty imposed under Section 2(1) of the European Communities Act 1972 not to infringe Article 81(1) of the EC Treaty or Article 53(1) of the EEA Agreement; and/or

        b.   a statutory duty imposed under Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement.

308.     Defendants conduct described herein does not meet the exceptions set forth in Article 81(3) of the EC Treaty.

309.     Defendants' anticompetitive agreements and practices and their foreign effects have caused injury to the E.U. Direct Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass, in the E.U. Member States and in the U.S.  The E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass seek injunctive relief, and to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, and any other such relief that the Court deems necessary and appropriate.

**COUNT V**
**VIOLATION OF THE SHERMAN ACT AND E.U. LAW**
**(ON BEHALF OF E.U. INDIRECT FOREIGN PURCHASERS)**

310.     The E.U. Indirect Foreign Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 141 of this Complaint.

**E.U. Indirect Foreign Plaintiffs**

311.    Plaintiff TNT Freight Management (Sweden) AB ("TNT Sweden") is headquartered at Masthuggstorget 3A, 402 32 Gothenburg, Sweden.  TNT Sweden, a mail and package delivery service in Sweden, was at all relevant times an Airfreight Customer.  During the Class Period, TNT Sweden purchased Airfreight Shipping Services for shipments solely between the U.S. and various E.U. Member States indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

312.    Plaintiff Association des Utilisateurs du Transport de Fret ("AUTF"), the French freight shippers association, is headquartered at 91 rue du Faubourg Saint-Honoré, 75008 Paris, France.  Members of AUTF, agreed to assign to AUTF their claims for damages and other relief arising from Defendants acts as complained of herein.  With regard to the purchases by certain AUTF members underlying the claims assigned to AUTF, those members have been injured in their business or property by reason of the antitrust violations alleged herein.  AUTF seeks to recover on the claim assigned to it by those members.  AUTF was at all relevant times an Airfreight Customer.  During the Class Period, AUTF purchased Airfreight Shipping Services for shipments solely between the U.S. and various E.U. Member States indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

313.    Deutscher Speditions und Logistikverband e.V. ("DSLV"), the German freight shippers association, is headquartered at Weberstraße 77 53113 Bonn, Germany.  Members of DSLV agreed to assign to DSLV their claims for damages and other relief arising from Defendants acts as complained of herein.  With regard to the purchases by

certain DSLV members underlying the claims assigned to DSLV, those members have been injured in their business or property by reason of the antitrust violations alleged herein.  DSLV seeks to recover on the claim assigned to it by those members.  DSLV was at all relevant times an Airfreight Customer.  During the Class Period, DSLV purchased Airfreight Shipping Services for shipments solely between the U.S. and various E.U. Member States indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

314.    The Plaintiffs named in paragraphs 311 through 313 are referred to herein as the E.U. Indirect Purchaser Plaintiffs.

315.    During the Class Period, the E.U. Indirect Foreign Plaintiffs and members of the E.U. Direct Foreign Subclass paid for Airfreight Shipping Services directly to Defendants (or their agents, subsidiaries, and/or controlled affiliates).

## Defendants

316.     Defendants include those parties alleged in paragraphs 23 through 68 of this Complaint.

## Jurisdiction and Venue

317.    The claims of the E.U. Indirect Foreign Plaintiffs and the members of the E.U. Indirect Foreign Subclass for injuries sustained by reason of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, are brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief.

318.    This Court has original federal question jurisdiction over all Sherman Act claims asserted in this Count, pursuant to 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

319.     This Court has original diversity jurisdiction over all claims brought in this Count pursuant to 28 U.S.C. § 1332(d)(2)(B) because the amount in controversy in this action exceeds the sum of $5 million, exclusive of interests and costs, and at least one member of the Class of Plaintiffs is a citizen of a foreign state, and at least one Defendant is a citizen of a State.

320.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Sherman Act claims asserted in this Count by the E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass because they arise from the same nucleus of operative facts alleged in this Complaint, and are so related to the Sherman Act claims of the U.S. Direct Purchaser Class and the E.U. Direct Purchaser Class over which this Court has original jurisdiction that they form part of the same case or controversy.

321.     Defendants engaged in conduct both inside and outside of the U.S. that caused direct, substantial and reasonably foreseeable anticompetitive effects upon interstate commerce within the U.S. and upon foreign commerce, giving rise to the claims of E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass.  The adverse effects of this anticompetitive conduct in the U.S. are interdependent with the adverse effects outside the U.S. and gave rise to the injuries of the E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass.  Defendants could not have maintained their international price-fixing arrangement for Airfreight Shipping Services that caused foreign injury to the E.U. Indirect Foreign Plaintiffs and the members of E.U. Indirect Foreign Subclass without impacting adversely the prices of Airfreight Shipping Services to, from, and within the U.S.

322.     The claims in this Complaint for the injuries sustained by the E.U. Indirect

Foreign Plaintiffs and E.U. Indirect Foreign Subclass, by reason of Defendants'

violations of Article 81 of the EC Treaty, and, in so far as the infringements affected

trade between the European Community and Norway, Iceland, or Liechtenstein,

Defendants' violations of Article 53 of the EEA Agreement, are brought pursuant to

Article 6 of Regulation 1/2003, and 28 U.S.C. § 1367(a) to recover the present value of

actual damages sustained by them, including aggravated and exemplary damages, with

appropriate interest, for infringements of E.U. Law.

323.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over

the E.U. Law claims asserted in this Count by the E.U. Indirect Foreign Plaintiffs and

E.U. Indirect Foreign Subclass because they arise from the same nucleus of operative

facts alleged in this Complaint and are so related to the Sherman Act claims of the U.S.

Direct Purchaser Class, the E.U. Direct Foreign Subclass, and the E.U. Indirect Foreign

Subclass over which this Court has original jurisdiction that they form part of the same

case or controversy.

324.     Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of

the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because

during the Class Period one or more of the Defendants resided, transacted business, were

found, or had agents in this district, and a substantial part of the events giving rise to

Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and

commerce described below, has been carried out, in this district.

325.     Venue is also proper because this action has been transferred to this

district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial

proceedings pursuant to 28 U.S.C. § 1407(a).  Thus no other forum would be more

convenient for the parties and witnesses to litigate this case.

### Class Action Allegations

326.   E.U. Indirect Foreign Plaintiffs bring this action on their own behalf and

as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and

23(b)(3) on behalf of the following Subclass:

> All persons, Undertakings, and other entities (excluding governmental
> entities, Defendants, and Defendants' respective predecessors,
> subsidiaries, affiliates, and business partners) outside the United States
> that purchased Airfreight Shipping Services for shipments solely between
> the U.S. and any European Union Member State indirectly from any of the
> Defendants or any predecessor, subsidiary, or affiliate of each, at any time
> during the period from no later than January 1, 2000 to the present.

327.   Because such information is in the exclusive control of Defendants, E.U.

Indirect Foreign Plaintiffs do not know the exact number of members of the E.U. Indirect

Foreign Subclass.  Due to the nature of the trade and commerce involved, however, E.U.

Indirect Foreign Plaintiffs believe that the members of the E.U. Indirect Foreign Subclass

number at least in the thousands and are sufficiently numerous and geographically

dispersed throughout the world so that joinder of all members of the E.U. Indirect

Foreign Subclass is impracticable.

328.   There are questions of law or fact common to the E.U. Indirect Foreign

Subclass which will predominate over any questions that may affect only individual

members, including:

> a.      whether Defendants violated the Sherman Act;
>
> b.      whether Defendants violated Article 81 of the EC Treaty;
>
> c.      whether Defendants violated Article 53 of the EEA Agreement;

d.      whether Defendants agreed to and engaged in concerted practices which affected trade between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States, which had as their object or effect the prevention, restriction, or distortion of competition within the common market;

e.      whether Defendants directly or indirectly fixed selling prices of Airfreight Shipping Services;

f.      the duration of the conspiracy alleged in this Complaint;

g.      the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

h.      the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged within the E.U. and throughout the world during the Class Period;

i.      whether Defendants fraudulently concealed the alleged conspiracy so as to equitably toll any applicable statute of limitations;

j.      whether damages can be shown on a class-wide basis;

k.      the appropriate measure of damages sustained by E.U. Indirect Foreign Plaintiffs and other members of the E.U. Indirect Foreign Subclass;

l.      whether E.U. Indirect Foreign Plaintiffs and the E.U. Indirect Foreign Subclass are entitled to aggravated and exemplary damages; and

m.      whether the U.S. Indirect Foreign Class is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

329.    The E.U. Indirect Foreign Plaintiffs TNT Sweden, AUTF and DSLV are members of the E.U. Indirect Foreign Subclass, having indirectly purchased Airfreight Shipping Services from one or more of the Defendants.

330.    The prosecution of separate actions by individual members of the E.U. Indirect Foreign Subclass would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

331.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.    The E.U. Indirect Foreign Subclass is readily definable and one for which records should exist in the files of Defendants.

b.    Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.    Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

d.    Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

e.    This class action presents no difficulties of management that would preclude its maintenance as a class action.

332.    The E.U. Indirect Foreign Plaintiffs' claims are typical of the claims of other E.U. Indirect Foreign Subclass members.

333.   The E.U. Indirect Foreign Plaintiffs are represented by counsel competent and experienced in the prosecution of antitrust and class action litigation, and who will fairly and adequately protect the interests of the members of the Foreign Class.

334.   The E.U. Indirect Foreign Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Foreign Class with respect to the subject matter of this litigation.

### Injury, Loss and Damage to the E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass

**Sherman Act Injury:**

335.   The combination and conspiracy alleged herein had the following direct, substantial, and reasonably foreseeable anticompetitive effects, among others, upon commerce in the U.S. and upon foreign commerce:

a.   The prices charged by Defendants to, and paid by E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass for Airfreight Shipping Services were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

b.   E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass have been deprived of free and open competition in the purchase of Airfreight Shipping Services in the United States and worldwide;

c.   E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass were required to pay more for Airfreight Shipping Services than they would have paid in a competitive marketplace absent Defendants' price-fixing scheme; and

d.   Competition in the sale of Airfreight Shipping Services has been

restrained, suppressed or eliminated.

336. The conduct alleged herein significantly and adversely affected consumers worldwide, including the E.U. Indirect Foreign Plaintiffs and the members of the E.U. Indirect Foreign Subclass. The adverse effects of Defendants' conduct in the United States and the adverse effects outside the United States were interdependent and inextricably bound.

337. During the Class Period, Defendants' anticompetitive conduct as described herein directly and proximately caused E.U. Indirect Foreign Plaintiffs and the members of the E.U. Indirect Foreign Subclass to pay artificially inflated prices for Airfreight Shipping Services they would not have paid absent such violations. As a result, E.U. Indirect Foreign Plaintiffs and the members of the E.U. Indirect Foreign Subclass have been injured and damaged in their business and property in an amount to be determined according to proof.

**E.U. Law Loss and Damage**

338. During the Class Period, the E.U. Indirect Foreign Plaintiffs and the members of the E.U. Indirect Foreign Subclass purchased Airfreight Shipping Services from Defendants between the U.S. and E.U. Member States.

339. Defendants' agreements and concerted practices, as complained of herein, had the following effects, among others:

a. The selling prices of Airfreight Shipping Services were directly or indirectly fixed by Defendants at supra-competitive levels; and

b. Competition within the common market has been prevented, restricted, or distorted.

340.    If the Airfreight Shipping Services cartel had not been implemented and/or given effect, the E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass would have been able to buy Airfreight Shipping Services at lower prices.

341.    By reason of these breaches, E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass have suffered loss and damage.

### Violations Alleged

### Sherman Act Violation:

342.    During the Class Period, the exact dates being unknown to the E.U. Indirect Foreign Plaintiffs, Defendants engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services, in the United States and throughout the world through the means described in this Complaint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

343.    In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of Airfreight Shipping Services.

344.    Defendants' illegal combination and conspiracy alleged herein has had the following effects, among others:

a.    price competition in the charging of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

b.    price competition in the contracting of Airfreight Shipping Services has been restrained, suppressed, and/or eliminated;

       c.      prices charged by Defendants for Airfreight Shipping Services have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

       d.      prices paid by E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels; and

       e.      E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass have been deprived of the benefit of free and open competition.

345.    Defendants' anticompetitive activities and their effects are in violation of the Sherman Act.

346.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such products across state and national boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the United States and foreign commerce.

347.    Defendants' anticompetitive activities both inside the United States and in foreign nations have caused injury to the E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass.

348.    During the Class Period, Defendants sold Airfreight Shipping Services in a continuous and uninterrupted flow of interstate and foreign commerce. Defendants received payment for such products across state and national boundaries. Defendants' activities, and the sale of their services, have both taken place within, and have had a

direct, substantial, and reasonably foreseeable anticompetitive effect upon, interstate commerce within the United States and upon foreign commerce.

349.    Defendants' anticompetitive activities and their U.S. effects are interdependent with their foreign effects and have proximately caused injury to the E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass both inside the United States and in foreign nations.

350.    The E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass seek injunctive relief against Defendants, preventing and restraining the violations alleged herein and have no alternative remedy under federal law.

**E.U. Law Infringements:**

351.    During the Class Period, Defendants sold Airfreight Shipping Services and received payment for such services between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States.

352.    Defendants agreed to and engaged in concerted practices which appreciably and foreseeably affected trade between Member States, and prejudiced the realization of a market between Member States.  These concerted practices had as their object and effect the prevention, restriction and distortion of competition within the common market and were conducted in a manner incompatible with the common market.

353.    Through the agreements and concerted practices complained of herein, Defendants directly or indirectly fixed selling prices of Airfreight Shipping Services, in breach of Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement.

354.    Defendants' agreements and concerted practices as complained of herein were not indispensable to the attainment of improved production or distribution of goods

or the promotion of technical or economic progress, and did not allow consumers a fair share of any resulting benefit.

355.    These agreements and concerted practices introduced the possibility of eliminating competition in respect of Airfreight Shipping Services.

356.    Defendants' wrongful actions were carried out with knowledge of and willful disregard of the rights of the E.U. Indirect Foreign Plaintiffs and members of the E.U. Indirect Foreign Subclass, in a calculating fashion and/or with the expectation of profiting therefrom by exceeding the amounts payable by them to the E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass as a result of such wrongful actions, warranting aggravated and exemplary damages accordingly.

357.    By reason of their implementation of and/or giving effect to the Airfreight Shipping Services cartel, Defendants acted in breach of:

    a.   a statutory duty imposed under Section 2(1) of the European Communities Act 1972 not to infringe Article 81(1) of the EC Treaty or Article 53(1) of the EEA Agreement; and/or

    b.   a statutory duty imposed under Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement

358.    Defendants conduct described herein does not meet the exceptions set forth in Article 81(3) of the EC Treaty.

359.    Defendants' anticompetitive agreements and practices and their foreign effects have caused injury to the E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass, in the EC Member States and in the U.S.  The E.U. Indirect Foreign Plaintiffs and E.U. Indirect Foreign Subclass seek injunctive relief, and to recover the

89

present value of actual damages sustained by them, including aggravated and exemplary

damages, with appropriate interest, and any other such relief that the Court deems

necessary and appropriate.

## COUNT VI
## VIOLATIONS OF E.U. LAW
## (ON BEHALF OF MIXED U.S.-E.U. FOREIGN PURCHASERS)

360.    The Mixed U.S.-E.U. Foreign Plaintiffs described in this Count

incorporate by reference as if fully set forth herein the allegations contained in the

paragraphs 1 through 116 and 139 through 141 of this Complaint.

### Mixed U.S.-E.U. Foreign Plaintiffs

361.    Plaintiff TNT Freight Management (Finland) Oy ("TNT Finland") is

headquartered at Juvan Teollisuuskatu 25 Bldg 3, 02921 Espoo, Finland.  TNT Finland, a

mail and package delivery service in Finland, was at all relevant times an Airfreight

Customer.  During the Class Period, TNT Finland purchased Airfreight Shipping

Services for shipments between the U.S. and various E.U. Member States, and also

purchased Airfreight Shipping Services for shipments within, to, from, or between

various E.U. Member States, (excluding shipments to or from the U.S.), directly and

indirectly from one or more of Defendants, and has suffered pecuniary injury as a result

of the antitrust violations alleged herein.

362.    Plaintiff H&M Hennes & Mauritz AB ("H&M") is headquartered at

Regeringsgatan 48, 106 38 Stockholm, Sweden.  H&M, an apparel manufacturer and

retailer in Sweden, was at all relevant times an Airfreight Customer.  During the Class

Period, H&M purchased Airfreight Shipping Services for shipments between the U.S.

and various E.U. Member States, and also purchased Airfreight Shipping Services for

shipments within, to, from, or between various E.U. Member States, (excluding

shipments to or from the U.S.), directly and indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

363.    Plaintiff IKEA Services AB ("IKEA") is headquartered at Sjögatan 1, 251 06 Helsingborg, Sweden.  IKEA, the advisory management company within and for the IKEA Group worldwide, was at all relevant times an Airfreight Customer.  During the Class Period, IKEA purchased Airfreight Shipping Services for shipments between the U.S. and various E.U. Member States, and also purchased Airfreight Shipping Services for shipments within, to, from, or between various E.U. Member States, (excluding shipments to or from the U.S.), directly and indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

364.    Plaintiff Volvo Logistics AB ("Volvo Logistics") is headquartered at 405 08 Göteborg, Sweden.  Volvo Logistics, the logistics branch of the Volvo Group, automobile and truck manufacturers, and provides, among other things, delivery of finished Volvo Group vehicles.  Volvo Logistics' subsidiary companies, on whose behalf Volvo Logistics also brings this claim, include Volvo Logistics North America, Inc.; Volvo Logistics Europe (Belgium); Volvo Logistics Europe (France); Volvo Logistics (UK) Ltd.; and Volvo Logistics Scandinavia & Overseas (Brazil).  Volvo Logistics was at all relevant times an Airfreight Customer.  During the Class Period, Volvo Logistics purchased Airfreight Shipping Services for shipments between the U.S. and various E.U. Member States, and also purchased Airfreight Shipping Services for shipments within, to, from, or between various E.U. Member States, (excluding shipments to or from the U.S.), directly and indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

365.     Plaintiff Volvo Parts AB Services AB ("Volvo Parts") is headquartered at 405 08 Göteborg, Sweden.  Volvo Parts, the vehicle and engine parts branch of the Volvo Group, automobile and truck manufacturers, produces and transports, among other things, parts for six business areas within the Volvo Group: Volvo Trucks; Renault Trucks; Mack Trucks; Volvo Penta (boats); Volvo Buses; and Volvo Construction Equipment. Volvo Parts was at all relevant times an Airfreight Customer.  During the Class Period, Volvo Parts purchased Airfreight Shipping Services for shipments between the U.S. and various E.U. Member States, and also purchased Airfreight Shipping Services for shipments within, to, from, or between various E.U. Member States, (excluding shipments to or from the U.S.), directly and indirectly from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

366.     The Plaintiffs named in paragraphs 361 through 365 are referred to herein as the Mixed U.S.-E.U. Foreign Plaintiffs.

367.     During the Class Period, Defendants sold Airfreight Shipping Services and received payment for such services between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States.

## Defendants

368.     Defendants include those parties alleged in paragraphs 23 through 68 of this Complaint.

## Jurisdiction and Venue

369.     This Court has original diversity jurisdiction over all claims brought in this Count pursuant to 28 U.S.C. § 1332(d)(2)(B) because the amount in controversy in this action exceeds the sum of $5 million, exclusive of interests and costs, and at least one

member of the Class of Plaintiffs is a citizen of a foreign state, and at least one Defendant is a citizen of a State.

370.    The claims in this Complaint for the injuries sustained by the Mixed U.S.-E.U. Foreign Subclass by reason of Defendants' violations of Article 81 of the EC Treaty, and, in so far as the infringements affected trade between the European Community and Norway, Iceland, or Liechtenstein, Defendants' violations of Article 53 of the EEA Agreement, are brought pursuant to Article 6 of Regulation 1/2003, and 28 U.S.C. § 1367(a) to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, for infringements of E.U. Law.

371.    This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the E.U. Law claims asserted in this Count by the Mixed U.S.-E.U. Foreign Plaintiffs and Mixed U.S.-E.U. Foreign Subclass because they arise from the same nucleus of operative facts alleged in this Complaint, and are so related to the Sherman Act claims of the U.S. Direct Purchaser Class and the E.U. Direct Foreign Subclass over which this Court has original jurisdiction that they form part of the same case or controversy.

372.    Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

373.     Venue is also proper because this action has been transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  Thus no other forum would be more convenient for the parties and witnesses to litigate this case.

### Class Action Allegations

374.     Mixed U.S.-E.U. Foreign Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Subclass:

> All persons, Undertakings, and other entities (excluding governmental entities, Defendants, and Defendants' respective predecessors, subsidiaries, affiliates, and business partners) outside the United States that purchased Airfreight Shipping Services for shipments between the U.S. and any European Union Member State, and also purchased Airfreight Shipping Services for shipments within, to, from, or between any European Union Member State, (excluding shipments to or from the U.S.), directly or indirectly from any of the Defendants or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

375.     Because such information is in the exclusive control of Defendants, Mixed U.S.-E.U. Foreign Plaintiffs do not know the exact number of members of the Mixed U.S.-E.U. Foreign Subclass.  Due to the nature of the trade and commerce involved, however, Mixed U.S.-E.U. Foreign Plaintiffs believe that the members of the Mixed U.S.-E.U. Foreign Subclass number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the world so that joinder of all members of the Mixed U.S.-E.U. Foreign Subclass is impracticable.

376.     There are questions of law or fact common to the Mixed U.S.-E.U. Foreign Subclass which will predominate over any questions that may affect only individual members, including:

a.      whether Defendants violated Article 81 of the EC Treaty;

b.      whether Defendants violated Article 53 of the EEA Agreement;

c.      whether Defendants agreed to and engaged in concerted practices which affected trade between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States, which had as their object or effect the prevention, restriction, or distortion of competition within the common market;

d.      whether Defendants directly or indirectly fixed selling prices of Airfreight Shipping Services;

e.      the duration of the conspiracy alleged in this Complaint;

f.      the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

g.      whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of Mixed U.S.-E.U. Foreign Plaintiffs and the other members of the Mixed U.S.-E.U. Foreign Subclass;

h.      the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged in the E.U. and throughout the world during the Class Period;

i.      whether damages can be shown on a class-wide basis;

j.      the appropriate measure of damages sustained by Mixed U.S.-E.U. Foreign Plaintiffs and other members of the Mixed U.S.-E.U. Foreign Subclass;

k.      whether Mixed U.S.-E.U. Foreign Plaintiffs and the Mixed U.S.-E.U. Foreign Subclass are entitled to aggravated and exemplary damages; and

l.      whether the Mixed U.S.-E.U. Foreign Subclass is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

377.    The Mixed U.S.-E.U. Foreign Plaintiffs TNT Finland, IKEA, H&M, Volvo Logistics, and Volvo Parts are members of the Mixed U.S.-E.U. Foreign Subclass, having directly or indirectly purchased Airfreight Shipping Services from one or more of the Defendants.

378.    The prosecution of separate actions by individual members of the Mixed U.S.-E.U. Foreign Subclass would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

379.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.   The Mixed U.S.-E.U. Foreign Subclass is readily definable and one for which records should exist in the files of Defendants.

b.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.   Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

d.   Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

e.   This class action presents no difficulties of management that would preclude its maintenance as a class action.

380.   The Mixed U.S.-E.U. Foreign Plaintiffs' claims are typical of the claims of other Mixed U.S.-E.U. Foreign Subclass members.

381.   The Mixed U.S.-E.U. Foreign Plaintiffs are represented by counsel competent and experienced in the prosecution of antitrust and class action litigation, and who will fairly and adequately protect the interests of the members of the Foreign Class.

382.   The Mixed U.S.-E.U. Foreign Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Foreign Class with respect to the subject matter of this litigation.

### Loss and Damage to the Mixed U.S.-E.U. Foreign Plaintiffs and Mixed U.S.-E.U. Foreign Subclass

383.   During the Class Period, the Mixed U.S.-E.U. Foreign Plaintiffs and the members of the Mixed U.S.-E.U. Foreign Subclass purchased Airfreight Shipping Services from Defendants for shipments between the U.S. and any E.U. Member State, and also purchased Airfreight Shipping Services for shipments within, to, from, or between any E.U. Member State, (excluding shipments to or from the U.S.).

384.   Defendants' agreements and concerted practices, as complained of herein, had the following effects, among others:

a.   The selling prices of Airfreight Shipping Services were directly or indirectly fixed by Defendants at supra-competitive levels; and

b.   Competition within the common market has been prevented, restricted, or distorted.

385. If the Airfreight Shipping Services cartel had not been implemented and/or given effect, the Mixed U.S.-E.U. Foreign Plaintiffs and Mixed U.S.-E.U. Foreign Subclass would have been able to buy Airfreight Shipping Services at lower prices.

386. By reason of these breaches, Mixed U.S.-E.U. Foreign Plaintiffs and Mixed U.S.-E.U. Foreign Subclass have suffered loss and damage.

## Violation Alleged

387. Defendants agreed to and engaged in concerted practices which appreciably and foreseeably affected trade between Member States, and prejudiced the realization of a market between Member States. These concerted practices had as their object and effect the prevention, restriction and distortion of competition within the common market and were conducted in a manner incompatible with the common market.

388. Through the agreements and concerted practices complained of herein, Defendants, directly or indirectly fixed selling prices of Airfreight Shipping Services, in breach of Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement.

389. Defendants' agreements and concerted practices as complained of herein were not indispensable to the attainment of improved production or distribution of goods or the promotion of technical or economic progress, and did not allow consumers a fair share of any resulting benefit.

390. These agreements and concerted practices introduced the possibility of eliminating competition in respect of Airfreight Shipping Services.

391. Defendants' wrongful actions were carried out with knowledge of and willful disregard of the rights of the Mixed U.S.-E.U. Foreign Plaintiffs and Mixed U.S.-E.U. Foreign Subclass, in a calculating fashion and/or with the expectation of profiting

therefrom by exceeding the amounts payable by them to the Mixed U.S.-E.U. Foreign

Plaintiffs and Mixed U.S.-E.U. Foreign Subclass as a result of such wrongful actions,

warranting aggravated and exemplary damages accordingly.

392.    By reason of their implementation of and/or giving effect to the Airfreight

Shipping Services cartel, Defendants acted in breach of:

a.   a statutory duty imposed under Section 2(1) of the European

Communities Act 1972 not to infringe Article 81(1) of the EC Treaty or Article 53(1) of

the EEA Agreement; and/or

b.   a statutory duty imposed under Article 81(1) of the EC Treaty and

Article 53(1) of the EEA Agreement

393.    Defendants conduct described herein does not meet the exceptions set

forth in Article 81(3) of the EC Treaty.

394.    Defendants' anticompetitive agreements and practices have caused injury

to the Mixed U.S.-E.U. Foreign and Mixed U.S.-E.U. Foreign Subclass, in the EC

Member States and in the U.S.  The Mixed U.S.-E.U. Foreign Plaintiffs and Mixed U.S.-

E.U. Foreign Subclass seek injunctive relief, and to recover the present value of actual

damages sustained by them, including aggravated and exemplary damages, with

appropriate interest, and any other such relief that the Court deems necessary and

appropriate.

**COUNT VII**
**VIOLATION OF E.U. LAW**
**(ON BEHALF OF E.U. FOREIGN PURCHASERS)**

395.    The E.U. Foreign Plaintiffs incorporate by reference as if fully set forth

herein the allegations contained in paragraphs 1 through 116 and 139 through 141 of this

Complaint.

99

**E.U. Foreign Plaintiffs**

396.     Plaintiff AB Lindex ("Lindex") is headquartered at Nils Ericsonsplatsen 3, 401 23 Göteborg, Sweden.  Lindex, an apparel and cosmetics manufacturer and retailer in Sweden, was at all relevant times an Airfreight Customer.  During the Class Period, Lindex purchased Airfreight Shipping Services for shipments within, to, from, or between any E.U. Member State, (excluding shipments to or from the U.S.), from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

397.     Plaintiff KappAhl AB ("KappAhl") is headquartered at Idrottsvägen14, 431 24 Mölndal, Sweden.  Lindex, an apparel and cosmetics manufacturer and retailer in Sweden, was at all relevant times an Airfreight Customer.  During the Class Period, Lindex purchased Airfreight Shipping Services for shipments within, to, from, or between any E.U. Member State, (excluding shipments to or from the U.S.), from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

398.     Plaintiff Sangean Hong Kong ("Sangean Hong Kong") is headquartered at Rm. 925,9/F Metro Centre II, 21 Lam Hing Street, Kowloon Bay, Kowloon, Hong Kong..  Sangean Hong Kong, a subsidiary of Sangean American, was at all relevant times an Airfreight Customer.  During the Class Period, Sangean Hong Kong purchased Airfreight Shipping Services for shipments between the U.S. and the rest of the world, excluding any European Union Member State, from one or more of Defendants, and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

399.    The Plaintiffs named in paragraphs 396 through 398 are referred to herein as the E.U. Foreign Plaintiffs.

400.    During the Class Period, Defendants sold Airfreight Shipping Services and received payment for such services between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States.

**Defendants**

401.     Defendants include those parties alleged in paragraphs 23 through 68 of this Complaint.

**Jurisdiction and Venue**

402.    The claims in this Complaint for the injuries sustained by the E.U. Foreign Plaintiffs and E.U. Foreign Subclass, by reason of Defendants' violations of Article 81 of the EC Treaty, and, in so far as the infringements affected trade between the European Community and Norway, Iceland, or Liechtenstein, Defendants' violations of Article 53 of the EEA Agreement, are brought pursuant to Article 6 of Regulation 1/2003, and 28 U.S.C. § 1367(a) to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, for infringements of E.U. Law.

403.    This Court has original diversity jurisdiction over all claims brought in this Count pursuant to 28 U.S.C. § 1332(d)(2)(B) because the amount in controversy in this action exceeds the sum of $5 million, exclusive of interests and costs, and at least one member of the Class of Plaintiffs is a citizen of a foreign state, and at least one Defendant is a citizen of a State.

404.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the E.U. Law claims asserted in this Count by the E.U. Foreign Plaintiffs and E.U. Foreign Subclass because they arise from the same nucleus of operative facts alleged in this Complaint and are so related to the Sherman Act claims of the U.S. Foreign and E.U. Direct Purchaser Classes, over which this Court has original jurisdiction that they form part of the same case or controversy.  The E.U. Law claims asserted in this Count are also supplemental to the Sherman Act claims of the E.U. Direct Foreign Plaintiffs and E.U. Direct Foreign Subclass.

405.     Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this district, and a substantial part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this district.

406.     Venue is also proper because this action has been transferred to this district by the Judicial Panel on Multidistrict Litigation for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).  Thus no other forum would be more convenient for the parties and witnesses to litigate this case.

## Class Action Allegations

407.     E.U. Foreign Plaintiffs bring this action on their own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) on behalf of the following Subclass:

> All persons, Undertakings, and other entities (excluding governmental entities, Defendants, and Defendants' respective predecessors,

subsidiaries, affiliates, and business partners) that purchased Airfreight Shipping Services for shipments within, to, from, or between any European Union Member State, (excluding shipments to or from the U.S.), directly or indirectly from any of the Defendants or their co-conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 1, 2000 to the present.

408.   Because such information is in the exclusive control of Defendants, E.U. Foreign Plaintiffs do not know the exact number of members of the E.U. Foreign Subclass.  Due to the nature of the trade and commerce involved, however, E.U. Foreign Plaintiffs believe that the members of the E.U. Foreign Subclass number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States and the world so that joinder of all members of the E.U. Foreign Subclass is impracticable.

409.   There are questions of law or fact common to the E.U. Foreign Subclass which will predominate over any questions that may affect only individual members, including:

a.      whether Defendants violated Article 81 of the EC Treaty;

b.      whether Defendants violated Article 53 of the EEA Agreement;

c.      whether Defendants agreed to and engaged in concerted practices which affected trade between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States, which had as their object or effect the prevention, restriction, or distortion of competition within the common market;

d.      whether Defendants agreed to and engaged in concerted practices which affected trade between and among E.U. Member States, non-member States, the EFTA/EEA States, and non-EFTA/EEA States, which had as their object or effect the prevention, restriction, or distortion of competition within the common market;

e.      whether Defendants directly or indirectly fixed selling prices of Airfreight Shipping Services;

f.      the duration of the conspiracy alleged in this Complaint;

g.      the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

h.      the effect of Defendants' conspiracy on Airfreight Shipping Services prices charged within the E.U. and throughout the world during the Class Period;

i.      whether damages can be shown on a class-wide basis;

j.      the appropriate measure of damages sustained by E.U. Foreign Plaintiffs and other members of the E.U. Foreign Subclass;

k.      whether E.U. Foreign Plaintiffs and the E.U. Foreign Subclass are entitled to aggravated and exemplary damages; and

l.      whether the E.U. Foreign Sublass is entitled to injunctive relief to prevent the continuation or furtherance of the violations of Section 1 of the Sherman Act alleged.

410.    The E.U. Foreign Plaintiffs Lindex and KappAhl are members of the E.U. Foreign Subclass, having directly or indirectly purchased Airfreight Shipping Services from one or more of the Defendants.

411.    The prosecution of separate actions by individual members of the E.U. Foreign Subclass would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

412.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

a.   The E.U. Foreign Subclass is readily definable and one for which records should exist in the files of Defendants.

b.   Prosecution as a class action will eliminate the possibility of repetitious litigation.

c.   Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

d.   Class treatment will permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint on an individual basis.

e.   This class action presents no difficulties of management that would preclude its maintenance as a class action.

413.    The E.U. Foreign Plaintiffs' claims are typical of the claims of other E.U. Foreign Subclass members.

414.    The E.U. Foreign Plaintiffs are represented by counsel competent and experienced in the prosecution of antitrust and class action litigation, and who will fairly and adequately protect the interests of the members of the Foreign Class.

415.    The E.U. Foreign Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Foreign Class with respect to the subject matter of this litigation.

## E.U. Loss and Damage to the E.U. Foreign Plaintiffs
## and E.U. Foreign Subclass

416.    During the Class Period, the E.U. Foreign Plaintiffs and the members of

the E.U. Foreign Subclass purchased Airfreight Shipping Services from Defendants for

shipments within, to, from, or between any E.U. Member State, excluding shipments to

or from the U.S.

417.    Defendants' agreements and concerted practices, as complained of herein,

had the following effects, among others:

         a.    The selling prices of Airfreight Shipping Services were directly or

indirectly fixed by Defendants at supra-competitive levels; and

         b.    Competition within the common market has been prevented,

restricted, or distorted.

418.    If the Airfreight Shipping Services cartel had not been implemented and/or

given effect, the E.U. Foreign Plaintiffs and E.U. Foreign Subclass would have been able

to buy Airfreight Shipping Services at lower prices.

419.    By reason of these breaches, E.U. Foreign Plaintiffs and E.U. Foreign

Subclass have suffered loss and damage.

## E.U. Law Infringements Alleged

420.    Defendants agreed to and engaged in concerted practices which

appreciably and foreseeably affected trade between Member States, and prejudiced the

realization of a market between Member States.  These concerted practices had as their

object and effect the prevention, restriction and distortion of competition within the

common market and were conducted in a manner incompatible with the common market.

421.     Through the agreements and concerted practices complained of herein, Defendants, directly or indirectly fixed selling prices of Airfreight Shipping Services, in breach of Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement.

422.     Defendants' agreements and concerted practices as complained of herein were not indispensable to the attainment of improved production or distribution of goods or the promotion of technical or economic progress, and did not allow consumers a fair share of any resulting benefit.

423.     These agreements and concerted practices introduced the possibility of eliminating competition in respect of Airfreight Shipping Services.

424.     Defendants' wrongful actions were carried out with knowledge of and willful disregard of the rights of the E.U. Foreign Plaintiffs and E.U. Foreign Subclass, in a calculating fashion and/or with the expectation of profiting therefrom by exceeding the amounts payable by them to the E.U. Foreign Plaintiffs and E.U. Foreign Subclass as a result of such wrongful actions, warranting aggravated and exemplary damages accordingly.

425.     By reason of their implementation of and/or giving effect to the Airfreight Shipping Services cartel, Defendants acted in breach of:

a.   a statutory duty imposed under Section 2(1) of the European Communities Act 1972 not to infringe Article 81(1) of the EC Treaty or Article 53(1) of the EEA Agreement; and/or

b.   a statutory duty imposed under Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement

426.     Defendants conduct described herein does not meet the exceptions set forth in Article 81(3) of the EC Treaty.

427.     Defendants' anticompetitive agreements and practices and their foreign effects have caused injury to the E.U. Foreign Plaintiffs and E.U. Foreign Subclass, in the E.U. Member States and in the U.S.  The E.U. Foreign Plaintiffs and E.U. Foreign Subclass seek injunctive relief, and to recover the present value of actual damages sustained by them, including aggravated and exemplary damages, with appropriate interest, and any other such relief that the Court deems necessary and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

**For all Counts:**

A.     The Court determine that this action may be maintained as a class action under Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given members of the Classes and Subclasses identified herein;

B.     Each of the Defendants, Undertakings, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or effect in restraining competition;

C.     The Court award all Plaintiffs, Classes, and Subclasses attorneys' fees and costs, and pre-judgment and post-judgment interest as permitted by U.S. and/or E.U. Law; and

D.     The Court award Plaintiffs, Classes, and Subclasses such other and further relief as may be deemed necessary and appropriate;

**For Counts I, III, IV, and VI:**

E.     The Court adjudge and decree that the contract, combination and conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

F.     Judgment be entered against Defendants, jointly and severally, in favor of Plaintiffs, the Classes, and Subclasses alleged in Counts I, III, IV, and VI, for treble damages determined to have been sustained by them by virtue of Defendants' violations of the Sherman Act, as allowed by law;

**For Count II:**

G.     The Court adjudge and decree that the contract, combination and conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Act and grant injunctive relief accordingly (Subcount I);

H.     The Court adjudge and decree that Defendants' Airfreight Shipping Services cartel alleged herein violates various state antitrust, consumer protection, and unfair competition laws (Subcounts II and III) and that Defendants have been unjustly enriched by their conduct at the expense of the U.S. Indirect Purchaser Class (Subcount IV);

I.     Judgment be entered for the U.S. Indirect Purchaser Subclass Plaintiffs and members of the U.S. Indirect Purchaser Subclass against Defendants, jointly and

severally, for the amount of damages sustained by the U.S. Indirect Purchaser Subclass

Plaintiffs and the U.S. Indirect Purchaser Subclass, as allowed by law, by virtue of

Defendants' violations of state antitrust, consumer protection and unfair competition

laws;

      J.      The Court award U.S. Indirect Purchaser Subclass Plaintiffs and members

of the U.S. Indirect Purchaser Subclass the return of overpayments made by them to

Defendants;

**For Count V:**

      K.      The Court adjudge and decree that the contract, combination and

conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of

Section 1 of the Sherman Act and grant injunctive relief accordingly;

**For Counts IV through VII:**

      L.      The Court adjudge and decree that the implementation and effect of the

cartel alleged herein constitutes a breach of Defendants' statutory duty imposed under

Section 2(1) of the European Communities Act 1972 not to infringe Article 81(1) of the

EC Treaty or Article 53(1) of the EEA Agreement;

      M.      The Court adjudge and decree that the implementation and effect of

Defendants' Airfreight Shipping Services cartel alleged herein constitutes a breach of

Article 81(1) of the EC Treaty and Article 53(1) of the EEA Agreement;

      N.      The Court adjudge and decree Defendants' wrongful acts complained of

herein were done intentionally, purposefully, willfully and were carried out in the

knowledge of and willful disregard of the rights of Plaintiffs and the Classes they

represent, in a calculating fashion and/or with the expectation of profiting therefrom in an

amount exceeding the amounts payable by them to Plaintiffs and the Classes as a result of such wrongful actions; and

O.      Judgment be entered against Defendants, and in favor of Plaintiffs and the Classes and Subclasses alleged in Counts IV through VII, for the present value of actual damages determined to have been sustained by them by virtue of Defendants' infringements of E.U. Law, and for aggravated and exemplary damages, with appropriate interest, as allowed by law.

## <u>JURY TRIAL DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:  February 8, 2007

By:  /s/ Michael Hausfeld
Michael D. Hausfeld
Charles E. Tompkins
Andrew B. Bullion
Hilary K. Ratway
Andrea L. Hertzfeld
**COHEN, MILSTEIN, HAUSFELD &**
 **TOLL, P.L.L.C.**
1100 New York Avenue N.W.
Washington, D.C. 20005
(202) 408-4600

*Co-Lead Counsel and Co-Lead Counsel*
*Principally Responsible for the Foreign Claims*

By:  /s/ Robert N. Kaplan
Robert N. Kaplan (RK-3100)
Gregory K. Arenson (GA-2426)
**KAPLAN FOX & KILSHEIMER LLP**
805 Third Avenue, 22nd Floor
New York, NY 10022
(212) 687-1980

Gary L. Specks (GS-8767)
**KAPLAN FOX & KILSHEIMER LLP**
423 Sumac Road
Highland Park, Illinois 60035
(847) 831-1585

*Co-Lead Counsel*

By:  /s/ Michael P. Lehman
Michael P. Lehmann
Thomas P. Dove
**FURTH LEHMANN & GRANT LLP**
225 Bush Street, 15th Floor
San Francisco, CA  94104-4249
(415) 433-2070

*U.S. Indirect Purchaser Class and*
*Subclass Counsel*

By:  /s/ Christopher Lovell
Christopher Lovell (CL-2595)
Jody Krisiloff (JK-1453)
Peggy J. Wedgworth (PW-7371)
Imtiaz A. Siddiqui (IS-4090)
**LOVELL STEWART**
**HALEBIAN LLP**
500 Fifth Avenue, Suite 58
New York, NY 10110
(212) 608-1900

*U.S. Indirect Purchaser Class and*
*Subclass Counsel*

By:  /s/ W. Joseph Bruckner
W. Joseph Bruckner
**LOCKRIDGE GRINDAL**
**NAUEN P.L.L.P.**
100 Washington Avenue South
Minneapolis, MN 55401
(612) 339-6900

*U.S. Indirect Purchaser Class and*
*Subclass Counsel*

By:  /s/ Barbara J. Hart
Barbara J. Hart (BH-3231)
Hollis L. Salzman (HS-5994)
Craig L. Briskin (CB-1285)
Kellie Lerner
**LABATON SUCHAROW & RUDOFF LLP**
100 Park Avenue
New York, New York 10017-5563
(212) 907-0700

*Co-Lead Counsel*


By:  /s/ Howard J. Sedran
Howard J. Sedran
Austin Cohen
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500

*Co-Lead Counsel*

By:  /s/ Joseph W. Cotchett
Joseph W. Cotchett
Steve N. Williams
**COTCHETT, PITRE & MCCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000

*U.S. Indirect Purchaser Class and Subclass Counsel*

**ADDITIONAL COUNSEL:**

Bruce L. Simon
**Law Offices of Bruce L. Simon**
44 Montgomery Street, Suite 1200
San Francisco, CA 94104-4610
Telephone: (415) 433-9000

Francis O. Scarpulla
Craig C. Corbitt
**Zelle, Hofmann, Voelbel, Mason & Gette LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700

Jill S. Abrams
Paul O. Paradis
Gina Marie Tufaro
**Abbey Spanier Rodd Abrams & Paradis, LLP**
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191

Ann D. White
**Ann D. White Law Offices**
One Pitcairn Place, Ste 2400
165 Township Line Road
Jenkintown, PA 19046
Telephone: (215) 481-0275
Facsimile: (215) 481-0271

Arthur N. Bailey
**Arthur N. Bailey & Associates**
111 West Second Street, Suite 4500
Jamestown, New York 14701
Telephone: (716) 664-2967
Facsimile: (716) 664-2983

Ben Barnow
Sharon Harris
**Barnow and Associates, P.C.**
One North LaSalle Street, Suite 4600
Chicago Illinois 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

Gerald J. Rodos
Daniel E. Bacine
Jeffrey B. Gittleman
**Barrack, Rodos & Bacine**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600

H. Laddie Montague, Jr.
Merrill Davidoff
Eric L. Cramer
Charles P. Goodwin
**Berger & Montague**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

Sutton Keany (SK-7292)
**Berger & Webb, LLP**
1633 Broadway, 46th Floor
New York, NY 10019
Telephone: (212) 319-1900
Facsimile: (212) 319-2017

R. Scott Palmer
Manuel J. Dominguez
**Berman Devalerio Pease Tabacco Burt & Pucillo**
222 Lakeview Avenue
Suite 900
West Palm Beach, FL 33401
Telephone: (561) 835-9400
Facsimile: (561) 835-0322

Ronald J. Aranoff
**Bernstein Liebhard & Lifshitz, LLP**
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

Roger Bernstein
**Bernstein Nackman & Feinberg**
331 Madison Avenue, 15th Floor
New York, NY 10017
Telephone: (212) 338-9188
Facsimile: (212) 338-9102

Anthony J. Bolognese
Joshua H. Grabar
**Bolognese & Associates, LLC**
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103
Telephone: (215) 814-6750
Facsimile: (215) 814-6764

Jill Levine Betts
**Brian Berry Law Offices**
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067
Telephone: (310) 788-0831

Anthony F. Fata
**Cafferty Faucher, LLP**
30 N. LaSalle St. Ste 3200
Chicago, IL 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

Michael J. Flannery
**Carey & Danis LLC**
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Facsimile: (314) 721-0905

Kathleen C. Chavez
**Chavez Law Firm, P.C.**
416 S. Second Street
Geneva, IL 60134
Telephone: (630) 232-4480

Karl L. Cambronne
Brian N. Toder
Jeffrey D. Bores
**Chestnut & Cambronne, P.A.**
3700 Campbell Mithun Tower
222 South Ninth Street
Minneapolis, MN 55402
Telephone: (612) 339-7300
Facsimilie: (612) 336-2940

Michael D. Gottsch
**Chimicles & Tikellis, LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

Ilan Chorowsky
**Chorowsky Law Offices**
1130 N. Dearborn St., Suite 3110
Chicago, IL 60610
Telephone: (312) 643-5893

John A Cochrane
**Cochrane and Bresnahan, P.A.**
24 East 4th Street
St. Paul, MN 55101-1099
Telephone: (612) 298-1950
Facsimile: (612) 298-0089

Daniel Cohen
**Cuneo Gilbert & LaDuca, L.L.P.**
507 C Street N.E.
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813

Daniel E. Becnel, Jr.
**Matthew B. Moreland**
106 West 7th Street
P.O. Drawer H
Reserve, LA 70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445

David Marko
Miguel de la O
**De la O, Marko, Magolnick and Leyton**
3001 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-2000

Jon P. Axelrod
Todd E. Palmer
**Dewitt Ross & Stevens S.C.**
2 East Mifflin Street, Suite 600
Madison, WI 53703
Telephone: (608) 255-8891
Facsimile: (608) 252-9243

Jonathan P. Whitcomb (JW-3245)
**Diserio Martin O'Connor & Castiglioni LLP**
One Atlantic Street
Stamford, CT 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321

Ted Donner
**Donner & Company Law Offices LLC**
1131 Wheaton Oaks Court
Wheaton, IL 60187
Telephone: (630) 588-1131
Facsimile: (630) 682-1131

Marc H. Edelson
**Edelson & Associates, LLC**
45 West Court Street
Doylestown, PA 18901
Telephone: (215) 230-8043
Facsimile: (215) 230-8735

Roberta D. Liebenberg
Donald L. Perelman
**Fine, Kaplan and Black, R.P.C.**
28th Floor, 1835 Market Street
Philadelphia, PA 19103
Telephone: (215) 567-6565

Mila Bartos
Richard M. Volin
Michael G. McLellan
**Finkelstein, Thompson & Loughran**
1050 30th St. NW
Washington, DC 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

Robert M. Foote
**Foote, Meyers, Mielke & Flowers, L.L.C.**
406 S. Second Street
Geneva, IL 60134
Telephone: (630) 232-6333
Facsimile: (630) 845-8982

Joseph Goldberg
Matthew L. Garcia
**Freedman Boyd Daniels Hollander & Goldberg, P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960
Facsimile: (505) 842-0761

Gary B. Friedman
Noah Shube
**Friedman & Shube**
155 Spring Street
New York, NY 10012
Telephone: (212) 680-5150
Facsimile: (212) 219-6446

Ronald L. Futterman
**Futterman & Howard Chtd.**
122 S. Michigan, Suite 1850
Chicago, IL 60603
Telephone: (312) 427-3600

Stephen M. Garcia
**Garcia Law Firm**
One World Trade Center, Suite 1950
Long Beach, CA 90831
Telephone: (562) 216-5270

Daniel D'Angelo
**Gilman and Pastor, LLP**
225 Franklin Street
16th Floor
Boston, MA 02110

Michael Goldberg
**Glancy Binkow & Goldberg LLP**
1801 Avenue of the Stars, #311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Paul F. Bennett
Steven O. Sidener
Joseph M. Barton
**Gold Bennett Cera & Sidener LLP**
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189

Mark S. Goldman
**Goldman Scarlato & Karon**
101 W. Elm St., Ste 360
Conshocken, PA 19428
Telephone: (484) 342-0700
Facsimile: (484) 342-0701

Terry Gross
Adam C. Belsky
Monique Alonso
**Gross & Belsky LLP**
180 Montgomery Street, Suite 2200
San Francisco, CA 94104
Telephone: (415) 544-0200
Facsimile: (415) 544-0201

Daniel E. Gustafson
Daniel C. Hedlund
**Gustafson Gluek PLLC**
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622

Kevin B. Love
**Hanzman Criden & Love, P.A.**
7301 S.W. 57th Court, Suite 515
Coral Gables, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050

Lance A. Harke
Howard M. Bushman
**Harke & Clasby LLP**
155 South Miami Avenue, Suite 600
Miami, FL 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

Samuel D. Heins
Vincent J. Esades
**Heins Mills & Olson**
3550 So. Eighth St.
Minneapolis, MN 55402
Telephone: (612) 338-4605
Facsimile: (612) 338-4692

Dennis Stewart
Stephanie L. Dieringer
**Hulett Harper Stewart LLP**
550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139

W. Timothy Needham
**Janssen, Malloy, Needham, Morrison,**
**Reinholtsen & Crowley, LLP**
730 5th Street
P.O. Drawer 1288
Eureka, CA 95502
Telephone: (707) 445-2071
Facsimile: (707) 445-8305

David Jaroslawicz
**Jaroslawicz & Jaros**
115 William Street, 19th Floor
New York, NY 10038
Telephone: (212) 227-2780
Facsimile: (212) 592-4663

Steven M. Pavsner
**Joseph, Greenwald & Laake, P.A.**
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Telephone: (301) 220-2200
Facsimile: (301) 220-1214

Richard L. Creighton, Jr.
**Keating, Muething & Klekamp,**
**P.L.L.**
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202
Telephone: (513) 579-6400

Brooks Cutter
**Kershaw, Cutter & Ratinoff, LLP**
980 9th Street, 19th Floor
Sacramento, CA 95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

David E. Kovel
**Kirby McInerney Squire LLP**
830 Third Avenue
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

Jeffrey A. Klafter (JK-0953)
**Klafter & Olsen LLP**
1311 Mamaroneck Avenue
Suite 220
White Plains, NY 10605
Telephone: (914) 997-5656
Facsimile: (914) 997-2444

Joseph C. Kohn
William E. Hoese
Steven M. Steingard
**Kohn, Swift & Graf, P.C.**
One So. Broad St. Ste 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968

Ronald B. Kowalczyk
**Kowalczyk & Bell**
215 Campbell St.
Geneva, IL 60134
Telephone: (630) 232-2224
Facsimile: (630) 232-2221

Harley S. Tropin, Florida Bar No.
241253
Adam M. Moskowitz, Florida Bar No.
984280
**Kozyak Tropin & Throckmorton,**
**P.A.**
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

Clinton A. Krislov
W. Joel Vander Vliet
**Krislov & Associates, Ltd.**
20 North Wacker Drive, Suite 1350
Chicago, IL 60606
Telephone: (312) 606-0500
Facsimile: (312) 606-0207

**Lance C. Young**
43311 Joy Road #244
Canton, MI 48187
Telephone: (734) 446-6932

Larry D. Drury
**Larry D. Drury, Ltd.**
205 W. Randolph St., Suite 1430
Chicago, IL 60610
Telephone: (312) 346-7950

Eric B. Castelblanco
**Law Office of Eric B. Castelblanco**
8383 Wilshire Blvd., Suite 302
Beverly Hills, CA 90211
Telephone: (323) 951-0180
Facsimile: (323) 951-0183

G. Martin Meyers
**Law Offices of G. Martin Meyers, P.C.**
35 W. Main Street, Suite 106
Denville, NJ 07834
Telephone: (973) 625-0838
Facsimile: (973) 625-5350

Joshua P. Davis
**Law Offices of Joshua P. Davis**
437 Valley Street
San Francisco, CA 94131
Telephone: (415) 422-6223
Facsimile: (415) 422-6433

Mel Urbach
**Law Offices of Mel Urbach**
One Exchange Plaza, Suite 1000
Jersey City, NJ 07302
Telephone: (201) 395-4709
Facsimile: (201) 382-0020

Randy Renick
**Law Offices of Randy Renick**
128 N. Fair Oaks Avenue
Pasadena, CA 91103

Tracey Kitzman
**Law Offices of Tracey Kitzman**
7 East 8th Street, #206
New York, NY 10003
Telephone: (917) 270-1023

Steven D. Irwin
**Leech, Tishman, Fuscaldo & Lampl**
Citizens Bank Bldg, 30th Floor
525 William Penn Place
Pittsburgh, PA 15219
Telephone: (412) 261-1600
Facsimile: (412) 227-5551

Robert G. Eisler
David S. Stellings
**Lieff, Cabraser, Heimann & Bernstein, LLP**
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Allyn Z. Lite
Joseph J. DePalma
Alberto Rivas
**Lite Depalma Greenberg & Rivas LLC**
Two Gateway Center, 12th Floor
Newark, NY 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

Jayne A. Goldstein
Lee Albert
Bruce D. Parke
**Mager & Goldstein**
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: (954) 515-0123
Facsimile: (954) 515-0124

**Maria Tancredi**
One South Broad Street
Suite 1670
Philadelphia, PA 19103-7599
Telephone: (215) 564-6446

**Marvin Srulowitz**
16 E. 34th Street, 16th Floor
New York, NY 10016-4328
Telephone: (212) 686-1224
Facsimile: (212) 532-3206

Patrick McNicholas
Sarina M. Hinson
**McNicholas & McNicholas**
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024-4338
Telephone: (310) 474-1582

Steven J. Greenfogel
**Meredith Cohen Greenfogel & Skirnick**
117 South Seventeenth Street
Suite 1103
Philadelphia, PA 19103
Telephone: (215) 564-5182
Facsimile: (215) 269-0958

Andrew Morganti
**Milberg Weiss Bershad & Schulman**
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

Marvin Miller
**Miller Law LLC**
101 N. Wacker St., Suite 2010
Chicago, IL 60606
Telephone: (312) 525-8320
Facsimile: (312) 525-8321

Steven A. Kanner
William H. London
Douglas A. Millen
**Much Shelist Freed Denenberg Ament & Rubenstein**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 521-2000
Facsimile: (312) 521-2100

John T. Murray
**Murray & Murray**
111 East Shoreline Drive
Sandusky, OH 44871
Telephone: (419) 624-3000
Facsimile: (419) 624-0707

Brian P. Murray
**Murray Frank & Sailer, LLP**
275 Madison Avenue
New York, NY 10016
Telephone: (212) 682-1818

Richard Arsenault
**Neblett, Beard and Arsenault**
2200 Bonaventure Court
P.O. Box 1190
Alexandria, LA 71309-1190
Telephone: (318) 487-9874
Facsimile: (318) 561-2592

Gary M. Osen
**Osen & Associates**
700 Kindermack Road
Oradell, NJ 07649
Telephone: (201) 265-6400
Facsimile: (201) 265-0303

Philippe Bonnevie
**Pardo Boulanger & Associés**
74 Avenue de Wagram
75017 Paris
France

Clifford H. Pearson
Gary S. Soter
**Pearson, Soter, Warshaw & Penny
LLP**
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

James B. Sloan
**Pedersen & Houpt**
161 North Clark Street, Suite 3100
Chicago, IL 60601
Telephone: (312) 261-2138
Facsimile: (315) 261-1138

Stanley M. Grossman (SG-4544)
Marc L. Gross (MG-8496)
Fei-Lu Qian
**Pomerantz Haudek Block Grossman
& Gross**
100 Park Avenue
New York, NY 10017-5516
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

Gregory P. Hansel
Michael Kaplan
Randall B. Weill
**Preti, Flaherty, Beliveau, Pachios &
Haley**
One City Center
P.O. Box 9546
Portland, ME 04112
Telephone: (207) 791-3000
Facsimile: (207) 791-3111

Noah M. Golden-Krasner
**Progressive Law Group, LCC**
354 W. Main Street
Madison, WI 53703
Telephone: (608) 441-8924

Edgar D. Gankendorff
**Provosty, Sadler, deLaunay, Fiorenza
& Sobel, P.C.**
Poydras Center
650 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504) 410-2795
Facsimile: (504) 410-2796

Mark Reinhardt (MR-0527)
Mark Wendorf (MW-6778)
Garrett O. Blanchfield, Jr. (GB9801)
**Reinhardt Wendorf & Blanchfield**
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101

**Richard Vita**
77 Franklin Street, 3rd Floor
Boston, MA 02110
Telephone: (617) 426-6566

Michael L. Roberts
**Roberts Law Firm, P.A.**
P.O. Box 241790
20 Rahling Circle
Little Rock, AR 72223-1790
Telephone: (501) 821-5575
Facsimile: (501) 821-4474

Dianne M. Nast
**RodaNast P.C.**
801 Estelle Drive
Lancaster, PA 17601
Telephone: (717) 892-3000
Facsimile: (717) 892-1200

Andrew Sacks
John Weston
**Sacks & Weston**
114 Old York Road
Jenkintown, PA 19046
Telephone: (215) 925-8200

Guido Saveri
Rick Saveri
Cadio Zirpoli
**Saveri & Saveri**
111 Pine Street. Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

Kendall S. Zylstra
Stephen E. Connolly
**Schiffrin & Barroway LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

David A. Pordy
**Schulman, Rogers, Gandal, Pordy & Ecker, P.A.**
1921 Rockville Pike
Rockville, MD 20852
Telephone: (301) 230-5200
Facsimile: (301) 230-2891

Natalie Finkelman Bennett
**Shepherd, Finkelman, Miller & Shah, LLC**
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

Jeffrey J. Corrigan
William G. Caldes
**Spector Roseman & Kodroff**
1818 Market Street. Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300

Paul Slater
**Sperling & Slater**
55 West Monroe Street
Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Fax: (312) 641-6492

Allan Steyer
**Steyer Lowenthal Boodrookas Alvarez & Smith**
One California Street, Third Floor
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234

Timothy D. Battin
David Boies
**Straus & Boies, LLP**
4041 University Drive, Fifth Floor
Fairfax, VA 22030
Telephone: (703) 764-8700
Facsimile: (612) 339-6622

J. Preston Strom, Jr. (Fed. I.D. No. 4354)
Mario A. Pacella (Fed. I.D. No. 7538)
**Strom Law Firm, LLC**
2110 Beltline Boulevard, Suite A
Columbia, SC 29204
Telephone: (803) 252-4800
Facsimile: (803) 252-4801

William Miller
**The William Miller Group, PLLC**
3050 K Street NW, Ste 400
Washington, DC 20007
Telephone: (202) 342-8416

Kim D. Stephens
**Tousley Brain Stephens, LLP**
1700 Seventh Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992

Ira Neil Richards
**Trujillo Rodriguez & Richards**
The Penthouse
226 West Rittenhouse Square
Philadelphia, PA 19103
Telephone: (215) 731-9004
Facsimile: (215) 731-9044

Joseph M. Vanek
**Vanek, Vickers & Masini P.C.**
111 S. Wacker
Suite 4050
Chicago, IL 60606
Telephone: (312) 224-1500
Fax: (312) 224-1510

Steven A. Asher
Robert S. Kitchenoff
Mindee J. Reuben
**Weinstein Kitchenoff & Asher LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103

Kenneth A. Wexler
Edward A. Wallace
**Wexler Toriseva Wallace LLP**
One N. LaSalle St., Ste 2000
Chicago, IL 60602
Telephone: (312) 346-2222
Facsimile: (312) 346-0022

Richard P. Rouco
**Whatley Drake**
2323 Second Avenue North
P.O. Box 10647
Birmingham, AL 35202-0647
Telephone: (205) 328-9576
Facsimile: (205) 328-9669

**William T. Gotfryd**
Two First National Plaza
Suite 600
Chicago, IL 60603
Telephone: (312) 346-3466
Facsimile: (312) 346-2829

Marc A. Wites
**Wites & Kapetan**
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 428-3929

Mary Jane Fait
**Wolf, Haldenstein, Adler, Freeman & Herz**
55 West Monroe Street
Suite 1111
Chicago, IL 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001

**Patricia M. Wyrod**
2339 Third Street, Studio 54
San Francisco, CA 94107
Telephone: (415) 505-3134
Facsimile: (415) 680-1662

## <u>CERTIFICATE OF SERVICE</u>

I, Andrea L. Hertzfeld, hereby certify that a true and correct copy of the First

Consolidated Amended Complaint was served via the Court's ECF system upon all

counsel registered for ECF in this case and on defense counsel via Defendants' Liaison

Counsel.


/s/ Andrea L. Hertzfeld
Andrea L. Hertzfeld