**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE | Master File 06-MD-1775 (JG) (VVP) |
| AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION | THIS DOCUMENT RELATES TO: All Actions |
| MDL No. 1775 | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

I.      **INTRODUCTION**

After nearly a year's worth of hard fought, arm's length negotiations by highly

experienced, capable counsel, Defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and

Swiss International Air Lines Ltd. (collectively, "Lufthansa") and Plaintiffs (together "the

Settling Parties") reached a Settlement Agreement resolving the claims of a proposed Settlement

Class of plaintiffs who purchased airfreight cargo shipping services for shipments within, to, or

from the United States ("Airfreight Shipping Services").  The Settlement Agreement reached

between the Settling Parties secures for the Settlement Class an $85 million cash payment, which

has already been paid by Lufthansa into an interest-bearing escrow account, as well as

substantial cooperation terms that are extremely beneficial to the Settlement Class.

Cohen, Milstein, Hausfeld, & Toll, PLLC ("CMHT"), on behalf of the putative

Settlement Class, and Lufthansa initially executed the Settlement Agreement on September 11,

2006, after over five months of intense negotiations.  On December 4, 2006, Magistrate Judge

Pohorelsky appointed as "Co-Lead Counsel" Michael Hausfeld, from CMHT, as well as Robert

Kaplan from Kaplan, Fox & Kilsheimer, LLP; Howard Sedran from Levin, Fishbein, Sedran &

Berman; and Barbara Hart from Labaton, Sucharow & Rudoff, LLP.  On January 4, 2007,

following review of the Settlement Agreement by the three newly-appointed Co-Lead Counsel,

which included a proffer from Lufthansa, meetings with Lufthansa's counsel, and a review of the

economic analyses conducted by the Settling Parties' experts, the new Co-Lead Counsel signed

the Settlement Agreement on behalf of the direct purchaser class.  After filing a Consolidated

Amended Complaint, Co-Lead Counsel proposed to the Court, without objection, four additional

"U.S. Indirect Purchaser Counsel" to represent the interests of the indirect purchaser class

members.  On February 22, 2007, after conducting their own investigation of the legal and

factual basis of the Settlement Agreement, the four U.S. Indirect Purchaser Counsel agreed to the

1

terms negotiated by the Settling Parties, and added their signatures to the Settlement Agreement.

Thus, each counsel appointed by the Court to represent the various elements of the putative

plaintiff classes has approved and ratified the Settlement Agreement reached between Plaintiffs

and Lufthansa.[1]

      The settlement agreed to by all counsel resolves the claims in the litigation against

Lufthansa involving Airfreight Shipping Services within, to, or from the United States in

exchange for an $85 million payment by Lufthansa, which has already been transferred into an

escrow account, and substantial cooperation in pursuit of the litigation against the non-settling

Defendants.  This monetary sum alone represents significant compensation for the Settlement

Class.  The Settlement Agreement also provides members of the Settlement Class with

Lufthansa's early and comprehensive cooperation in the form of, *inter alia*, depositions,

interviews, documents, and attorney proffers related to air cargo shipments within, to, or from

the United States.  Indeed, Lufthansa has already begun providing such cooperation, which even

at this early stage has proved of benefit to Plaintiffs in the prosecution of their claims against

additional Defendants.

      The fairness and adequacy of the settlement has been reviewed by an independent neutral

– Magistrate Judge Edward A. Infante, a retired federal magistrate judge from the Northern

District of California and current member of JAMS – to whom the original parties who

negotiated the original Settlement Agreement submitted it.  After interviewing the counsel who

negotiated the Settlement Agreement and considering its terms, the supporting evidence and all

---

[1]    In the Court's Practice and Procedure Order No. 4 of March 6, 2007, ordering the
organization of counsel as proposed by Co-Lead Counsel, the Court also appointed CMHT Co-
Lead Counsel principally responsible for foreign claims.  Thus, counsel for those foreign
Plaintiffs whose claims are included in the Settlement Agreement has approved the Settlement
Agreement on their behalf.

other materials considered by the Parties in reaching the agreement, Judge Infante concluded that the Settlement Agreement resulted from "fair and informed" arm's length negotiations; exhibits no indicia of collusion; and contains terms that "are fair, reasonable, and adequate to the settling class members." *See* Declaration of Magistrate Judge Edward A. Infante (Ret.) (hereinafter "Infante Declaration"), attached hereto as Exhibit 1, ¶¶ 17, 25.[2]

Because the Settlement Agreement is fair, reasonable, and adequate, it should be preliminarily approved by this Court under Rule 23(e).   In addition, because the proposed Settlement Class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and the proposed Notice Plan would provide the best notice practicable under the circumstances, this Court should conditionally certify the Settlement Class and approve the dissemination of notice in the manner and form proposed herein.

## II.   BACKGROUND

### A.   The Litigation

Plaintiffs filed over ninety complaints in this litigation, alleging claims against various Defendants and involving various Airfreight Shipping Services routes, individually and on behalf of various classes of persons and entities who purchased, either directly or indirectly, Airfreight Shipping Services from Lufthansa or the dozens of other Defendant airfreight carriers named in the complaints.  Plaintiffs alleged that Defendants conspired to unlawfully fix prices of Airfreight Shipping Services worldwide, including within, to, or from the United States, by,

---

[2]     Judge Infante's Declaration is being submitted on behalf of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as Co-Lead Counsel and Co-Lead Counsel principally responsible for foreign claims and on behalf of all Indirect Purchaser Counsel.  The remaining three Co-Lead Counsel do not endorse Judge Infante's Declaration in its entirety, particularly those portions dealing with the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat. 665 (June 22, 2004), 15 U.S.C. § 1 (note) ("ACPERA").

among other things, concertedly levying agreed-upon, inflated surcharges thereon, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1890).

On June 20, 2006, the Judicial Panel on Multidistrict Litigation consolidated the actions filed by Settlement Class Counsel and other Plaintiffs' counsel and transferred them to this Court for pretrial proceedings.  On December 4, 2006, the Court appointed four Co-Lead Counsel. Based in large part on information obtained from Lufthansa as a result of its cooperation under the Settlement Agreement, on February 8, 2007,  Plaintiffs filed a detailed, nearly 130-page Consolidated Amended Complaint that asserts claims under both U.S. antitrust law and E.U. competition law on behalf of both U.S. and foreign purchasers.  Lufthansa's cooperation provided essential support for Counts I-V of the Complaint, asserting claims arising from shipments within, to, or from the United States (the claims Lufthansa has settled in the proposed Settlement Agreement).  In total, the claims in the Consolidated Amended Complaint are asserted on behalf of eight classes and subclasses in seven Counts.

**B.      Lufthansa's Acceptance Into the U.S. Department of Justice Antitrust Division's Corporate Leniency Program**

Before this litigation began, Lufthansa was conditionally accepted into the U.S. Department of Justice ("DOJ") Antitrust Division's leniency program, which has "a policy of according leniency to corporations reporting their illegal antitrust activity at an early stage, if they meet certain conditions."  Department of Justice Corporate Leniency Policy, http://www.usdoj.gov/atr/public/guidelines/lencorp.htm (last visited May 25, 2007).  Subject to Lufthansa's agreement to, among other things, provide full, continuing, and complete cooperation in the government's investigation of the air cargo industry, the DOJ has conditionally accepted Lufthansa into its Corporate Leniency Program and has agreed not to bring any criminal action against Lufthansa and its employees related to the cartel's activities.

As part of its cooperation with the DOJ, counsel for Lufthansa has interviewed over fifty employees, collected millions of pages of electronic and hard-copy documents, and reviewed and produced documents responsive to the government's requests.

### C.   The Settlement Agreement

The Settlement Agreement, together with amendments dated October 6, 2006, January 4, 2007, February 22, 2007, and April 27, 2007, which make certain amendments to the original Agreement, is attached hereto as Exhibit 2 and includes the following material terms:

#### 1.   The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

> All persons and entities that purchased airfreight cargo shipping services for shipments within, to or from the United States (hereinafter "Airfreight Shipping Services"), including those persons and entities that purchased Airfreight Shipping Services through freight forwarders, from any air cargo carrier (including, without limitation, those defendants named in the Actions, and specifically including Lufthansa) and/or any named or unnamed co-conspirators (collectively, "Defendants") during the period from January 1, 2000 to the Execution Date of this Settlement Agreement [September 11, 2006].

Settlement Agreement ¶¶ 1, 27. Excluded from the Settlement Class are Defendants, their respective parents, employees, subsidiaries and affiliates and all government entities.

#### 2.   The Settlement Fund

Pursuant to the terms of the Settlement Agreement, on September 12, 2006, Lufthansa paid the full Settlement Amount of $85 million into the Settlement Fund.  *See* Settlement Agreement ¶ 40.  The Settlement Fund has been established as an interest-bearing escrow account at SunTrust Banks, Inc., and is invested in guaranteed United States and foreign investment vehicles.  *Id.* ¶¶ 43-44.  All interest earned on the Settlement Fund shall become and remain part of the Settlement Fund.  *Id.* ¶ 44.  To date, the Settlement Fund has earned nearly $3 million in interest.

Based on the review of Lufthansa's transactional data by an expert hired by Plaintiffs, Plaintiffs determined that approximately 60% of Lufthansa's commerce affected by the cartel was commerce involving shipments inbound to the United States, while approximately 40% of the affected commerce involved shipments outbound from the United States. Accordingly, since a majority of the Plaintiffs with inbound shipments are likely foreign, Plaintiffs enrolled approximately 60% of the Settlement Fund, all $85 million of which was paid in U.S. dollars, in a currency hedging program to protect that portion of the Settlement Fund that may be paid in foreign currencies from currency fluctuations.

Further, the Settlement Agreement provides that Lufthansa shall bear the costs of providing notice to the Settlement Class and for the costs of administering, investing, and distributing the Settlement Fund. *Id.* ¶ 47. The notice and administration costs are currently estimated to be upwards of $6-8 million.

Finally, Settlement Class Counsel Counsel, after consultation with Lufthansa, will propose a procedure for allocating the Settlement Fund among members of the Settlement Class. *Id.* ¶ 76; Jan. 4 Amendment ¶ 76. Once the Court approves the Plan of Allocation, Settlement Class Counsel will submit a Plan of Distribution of the allocated Settlement Fund, and upon final approval of the Settlement Agreement, the Settlement Fund will be distributed according to the Plan of Distribution. *Id.* ¶¶ 45, 51, 76.

For any member of the Settlement Class that validly excludes itself from the Settlement Class, Lufthansa has the right to a refund from the Settlement Fund of the amount equaling the recovery that the Class member would otherwise have been paid under the Plan of Distribution. *Id.* ¶ 46.

### 3.      The Cooperation Provisions

Lufthansa also has agreed to provide extensive cooperation to the Settlement Class that will immensely aid in the prosecution of antitrust claims against the remaining Defendants.  The full extent of this cooperation, set forth in more detail in Paragraph 54 of the Settlement Agreement, can be summarized as follows:

(a)      Lufthansa has agreed to provide to Settlement Class Counsel and/or their experts access, without subpoena, for the purpose of interviews, depositions, affidavits, and trial testimony, all Lufthansa current and former directors, officers, and employees interviewed by the U.S. Department of Justice, the European Commission, or any other national competition authority investigating anticompetitive behavior affecting air cargo commerce within, to, or from the United States.  In addition, Lufthansa has agreed to provide five additional directors, officers, and employees whom Settlement Class Counsel reasonably believe to have knowledge regarding Plaintiffs' claims, and any additional directors, officers, and employees, provided that such interviews, depositions, affidavits, and/or trial testimony are reasonably necessary to Plaintiffs' case.  Settlement Agreement ¶ 54(a)-(e).

(b)      Beginning within five days of preliminary approval and after entry of a protective order, Lufthansa will produce the following categories of documents:  (i) transaction data in electronic format for all of Lufthansa's sales of Airfreight Shipping Services for shipments worldwide from January 1, 1993, until the date of the Settlement Agreement; (ii) all price announcements for Airfreight Shipping Services, and/or surcharges related thereto, for shipments worldwide beginning January 1, 1993; (iii) all documents relating to or reflecting actual or potential communications between two or more Defendants regarding the prices for and customers to whom Airfreight Shipping Services had been sold for shipments within, to, or from the United States; (iv) all documents produced to the U.S. Department of Justice, the European

Commission, or any other national competition authority investigating the Airfreight Shipping Services industry; and (v) upon reasonable and specific requests, any other documents relevant to the claims in the litigation.  Settlement Agreement ¶ 54(g).

(c)      Lufthansa has agreed to, and already has, provided attorney proffers detailing the times, places, and corporate participants involved in the anticompetitive conduct alleged by Plaintiffs.  Lufthansa also has agreed that, within five days of receiving preliminary approval of the settlement, its counsel will meet with Settlement Class Counsel as often as is reasonable and necessary in order to support Plaintiffs' prosecution of the litigation, by, for instance, identifying relevant documents and providing updated information as to the culpability of non-settling Defendants.  Settlement Agreement ¶ 54(j).  Indeed, many such discussions, both by telephone and in person, have already occurred between Lufthansa and Settlement Class Counsel.

(d)       Lufthansa has agreed to produce all factual work product obtained during the course of its own internal investigation of the air cargo industry, as well as additional factual work product if Plaintiffs have a substantial need for the factual information contained in such work product and that information is not otherwise obtainable from Lufthansa without undue hardship.  Settlement Agreement ¶ 55.  Lufthansa has also agreed to help Plaintiffs authenticate its internal documents and, to the extent possible, documents produced by other Defendants.  *Id.* ¶ 54(i).

(e)      All rights of any Settlement Class Member are reserved against any former officer, employee or director Lufthansa who is determined by the arbitrator pursuant to the terms of the Settlement Agreement to have refused to cooperate with reasonable requests for cooperation by Settlement Class Counsel.  *See* Jan. 4 Amendment ¶ 20.

### 4.      The Release

In exchange for the monetary and other consideration paid by Lufthansa, Settlement Class members have agreed to release and discharge Lufthansa from any and all claims against Lufthansa arising from or in any way related to Airfreight Shipping Services provided by Lufthansa or any other carrier for shipments within, to, or from the United States (and specifically including, without limitation, claims in any way related to cargo rates, fuel surcharges, security surcharges, United States Customs surcharges, war risk surcharges, commissions, incentives, rebates, credits, yields, or any other element of the price or compensation related to Airfreight Shipping Services). *See* Settlement Agreement ¶ 35. This release covers all claims that have been or could have been asserted by Plaintiffs, relating to airfreight cargo shipments within, to, or from the United States whether arising under U.S. federal or state law, or any law of any foreign jurisdiction. However, the release does not include any individual claims based upon negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods, or similar claims relating to Airfreight Shipping Services. *See* Jan. 4 Amendment ¶ 35.

### 5.      Other Provisions Benefiting The Settlement Class

A number of other provisions in the Settlement Agreement benefit the Settlement Class, including: 1) Lufthansa's agreement that it will make a supplemental payment to the Settlement Fund should they settle separately with an opt-out in a monetary amount exceeding that amount which that person or entity would have received under the Plan of Distribution;[3] 2) the

---

[3]      In addition, a limited Most Favored Nations provision set forth in paragraph 66 of the Settlement Agreement provides that should Plaintiffs, Settlement Class Members, or Settlement Class Counsel enter into settlements with other Defendants under certain circumstances involving a lower settlement ratio than that paid by Lufthansa, then Lufthansa shall be entitled to receive a payment from that settlement to reduce its own settlement ratio. This limited Most

reservation of Settlement Class Members' rights to recover from any non-settling Defendant for Lufthansa's sales of Airfreight Shipping Services during the relevant time period, which shall remain in the case as a potential basis for damage claims against non-settling Defendants and shall be part of any joint and several liability claims against these Defendants; and 3) Plaintiffs' right to ask the Court to void or modify the release in the Settlement Agreement in the event Lufthansa's leniency is withdrawn, revoked, or modified by a final court order.  Settlement Agreement ¶¶ 64, 65(c), 39.

---

Favored Nations provision, in effect, works to set a floor in future settlement negotiations with other Defendants, thereby benefiting the class in future negotiations with other Defendants.

III.   **ARGUMENT**

The Settlement Agreement reached by the Settling Parties is not only a fair, reasonable and adequate product resulting from extensive, arm's length negotiations by experienced counsel, but also a thoughtfully conceived resolution of the Settlement Class' claims that maximizes their recovery and guarantees early, significant cooperation by Lufthansa in the prosecution of Plaintiffs' claims involving shipments within, to, or from the United States.  All counsel appointed by the Court to represent the classes in the litigation have now had the opportunity to engage in a thorough analysis of the Settlement Agreement's terms, the evidence underlying those terms, and the process by which CMHT and Lufthansa initially negotiated those terms.  Any of the prior concerns held by the three Co-Lead Counsel not involved in the original settlement negotiations, which concerns were expressed prior to their investigation of the facts and evidence underlying the settlement, have now been resolved and all counsel appointed by the Court have signed the Settlement Agreement as Settlement Class Counsel.  The Settlement Agreement agreed to by all the Parties and endorsed by Judge Infante is fair, reasonable and adequate.  The conclusion of this Court should be no different.

A.   **Preliminary Approval Should Be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval**

It is well established in the Second Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions.  *See Bano v. Union Carbide Corp*, 273 F.3d 120, 129-30 (2d Cir. 2001); *see also Bourlas v. Davis Law Associates,* --- F.R.D.---, 2006 WL 2513021, at *7 (E.D.N.Y. 2006) (When assessing the merits of a settlement, "the court is guided by the Second Circuit's recognition that public policy favors the settlement of class actions.");  *In re Global Crossing Sec. R. ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004)

("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.").  In fact, "settlement should be facilitated at as early a stage of the litigation as possible."  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also Manual For Complex Litigation* (Fourth) § 13.12 (2004) ("settlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps.  First, the Court grants preliminary approval to the settlement and conditionally certifies a settlement class.  Second, after notice of the settlement is provided to the class and the Court conducts a fairness hearing, the Court may grant final approval to the settlement.  *See Manual For Complex Litigation* (Fourth) § 21.63 (2004); *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) *("NASDAQ I").*

In considering preliminary approval, the sole issue before a court is whether the proposed settlement falls within the range of possible approval.  *NASDAQ I,* 176 F.R.D. at 102.  A court determines whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *Id.* at 102 (citations omitted).  In conducting this inquiry, a court considers both the negotiating process leading up to the settlement and the settlement's substantive terms.  *Global Crossing*, 225 F.R.D. at 455.

Preliminary approval should be granted "if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees."  *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580 at *6 (E.D.N.Y. Dec. 26, 1997) (citing *NASDAQ I*, 176 F.R.D. 99, *and Manual for Complex*

*Litigation,* Third 3d § 30.14).  In evaluating a settlement's substantive terms, courts often

consider:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).[4]

As will be demonstrated in detail at the fairness hearing, and as set forth in detail below,

a weighing of these factors and consideration of the independent assessment of the Settlement

Agreement provided by Judge Infante in the accompanying Declaration, favor the Court's

granting preliminary approval to the settlement.

## 1. The Proposed Settlement Is the Result of Arduous, Arm's Length Negotiations Conducted by Highly Experienced Counsel.

A class action settlement is entitled to a presumption of fairness when it is the product of

arm's length negotiations between experienced, capable counsel.[5]  *See In re NASDAQ Mkt.-*

---

[4]    As this Court has recognized, at the preliminarily approval stage, some of these factors, such as the reaction of the class, do not yet come into play.  *See Bourlas v. Davis Law Assocs.*, No. CV 05-4548, 2006 WL 2513021, at *7 n.7 (E.D.N.Y. Aug. 30, 2006) ("[I]t is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process.").  Nonetheless, because they provide a useful guide in the ultimate assessment of the settlement's fairness, Plaintiffs have employed them as a reference herein.

[5]    There is no doubt that the counsel who negotiated the Settlement Agreement on behalf of both Parties are highly experienced and capable.  *See* Resumes of David W. Ogden and Michael D. Hausfeld, available at http://www.wilmerhale.com and http://www.cmht.com, respectively. *See also* Legal 500: Mass Tort and Class Action Recommendations—Antitrust, available at http://www.legal500.com/index.php?option=com_content&task=view&id=1136&l5country_cod e=usv3_mt&l5directory=us500&Itemid=639 (ranking CMHT as the leading antitrust mass tort

*Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement."); *see also In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.,* 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.,* 878 F. Supp. 473, 567 (E.D.N.Y. 1995); 4 Herbert Newberg  & Alba Conte, *Newberg on Class Actions* § 11.41, at 87-89 (4th ed. 2002).  Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See Joint E.*, 878 F. Supp. at 567 ("A substantial factor in determining the fairness of a settlement is the opinion of counsel involved in the settlement" (citations omitted)); *In re PaineWebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating that "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).[6]

---

and class action firm in the United States and finding that it "has set the bar for plaintiffs' firms around the country.").  The additional Co-Lead Counsel who later signed off on the Settlement Agreement after modification are also experienced counsel. *See, e.g.,* resume of Robert Kaplan, available at www.kaplanfox.com; resume of Howard J. Sedran, available at www. http://www.lfsblaw.com; and resume of Barbara Hart, available at www.Labaton.com.  The same is true of the Indirect Purchaser Counsel.  *See* resume of Michael P. Lehmann, available at http://www.furth.com/; resume of W. Joseph Bruckner, available at http://www.locklaw.com; resume of Christopher Lovell, available at http://www.lshllp.com; and resume of Steven N. Williams, available at http://www.cpsmlaw.com/. Mr. Ogden is a former Assistant Attorney General for the Civil Division of the United States Department of Justice.

[6]    *See also In re Salomon Inc. Sec. Litig.*, 91 Civ. 5442, 1994 WL 265917 at *13 (S.D.N.Y. June 16, 1994) (stating that the judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); *Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992); *Ross v. A.H. Robins Co., Inc.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 n.14 (4th Cir. 1975); *In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456, 459 (D. Md. 1987); *Blank v. Talley Indus., Inc.,* 64 F.R.D. 125, 132 (S.D.N.Y. 1974) (a factor "entitled to substantial weight, is that [the settlement] bears the imprimatur of seasoned and experienced counsel . . ."); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

The Settling Parties' proposed Settlement Agreement is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The Settlement Agreement, in its initial form, was negotiated over a period of more than five months by CMHT in a process that involved more than a dozen in-person meetings with counsel for Lufthansa.  In preparation for such negotiations, CMHT undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists.  Both parties frequently consulted with their own and one another's economists in their efforts to reach agreement.  Thus, CMHT was well-informed as to the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated.  *See In re Global Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Indeed, Judge Infante specifically concluded:

> The Settlement Agreement is the product of lengthy arm's-length negotiations, which occurred over a five-month period.  We are informed that the parties met in person no fewer than fifteen times and met many more times by telephone.  Neither the conduct of the negotiations, nor the terms of the resulting settlement agreement, exhibit any indicia of collusion.  Counsel alternatively described the negotiations as "long and arduous," "extremely contentious" and "highly adversarial."  The history of offers and counter-offers, relayed to us by opposing counsel, supports that view.  Moreover, the length and complexity of the Agreement itself, including the carefully crafted provisions that preserve the benefits of the settlement for class members, show no signs of collusive negotiation.

Infante Declaration ¶ 17.

Moreover, despite any initial concerns originally raised by the other Co-Lead Counsel, all counsel appointed by the Court to represent the direct and indirect purchasers in the litigation,

after a thorough and lengthy investigation of their own, have now agreed that the settlement is

reasonable, fair, and in the best interests of the Settlement Class.  Judge Infante has confirmed

that the arm's length negotiation process engaged in by the Parties yielded a better result for the

Settlement Class than might otherwise have been achieved:

> Further, our investigation did not uncover any signs that early
> settlement negotiation damaged the class members' interests or
> resulted in a less favorable settlement.  To the contrary, class
> counsel arguably had better and potentially more reliable
> information with which to negotiate a settlement than might
> otherwise have been made available through discovery.  The
> settlement negotiations with Lufthansa occurred within the broad
> disclosure of key transactional data and analyses by Lufthansa.
> Substantial transactional data and econometric analyses were
> produced by Lufthansa and were reviewed Class Counsel [sic] and
> its experts.  Class Counsel also received numerous proffers setting
> forth the detailed workings of the price fixing cartel that is at issue.

*Id.* ¶ 18.

Such findings, among others, specifically address any "suspicions" expressed by the

Court in its November 15, 2006 Order appointing Co-Lead Counsel, which in turn reflected

concerns advanced by certain members of the Co-Lead Counsel group before they conducted

their own investigation of the facts and history behind the Settlement Agreement initially

reached between CMHT and Lufthansa. (Nov. 15, 2006 Order at 3). As mentioned above, each

of these firms, as well as the firms appointed to represent the indirect purchaser class members,

has since conducted its own investigation and negotiations, and each has endorsed the Settlement

Agreement following discussions with counsel for Lufthansa.

In light of their prior experience in complex antitrust class actions, their knowledge of the

strengths and weaknesses of their case, the expert analysis of the relevant data, and their

assessment of the class's likely recovery following trial and appeal, Settlement Class Counsel

have concluded and Judge Infante has agreed that the proposed Settlement Agreement is fair,

reasonable, and adequate, and in the best interests of the Settlement Class.  Infante Declaration ¶ 25.  There is nothing in the course of the negotiations or the substance of the Settlement that "disclose[s] grounds to doubt its fairness."  *Manual for Complex Litigation* (Fourth) § 30.41 (2004).

  **2.**  **The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation**

  Antitrust class actions are "notoriously complex, protracted, and bitterly fought." *Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 719 (E.D.N.Y. 1989).  Continuing this litigation against Lufthansa would entail a lengthy and highly expensive legal battle, involving complex legal and factual issues.[7]  Motions would be vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.[8]  Additionally, Lufthansa would assert various defenses,[9] and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both Parties.  *See NASDAQ II*, 187 F.R.D. at 475-76 ("Antitrust litigation in general, and class action litigation in particular, is unpredictable.  … [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages,

---

[7]  *See, e.g.,* Letters to the Court requesting a pre-motion conference from James Warnot, David W. Ogden, Sumeet Sondhi, Gregory F. Hritz, and others, April 16, 2007 through May 3, 2007.

[8]  Because Settlement Class Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

[9]  In particular, if this case proceeded to trial, ACPERA would potentially limit Lufthansa's damages to single damages with no joint and several liability.  It bears noting that even when a defendant elects to proceed under ACPERA, nothing in the statute precludes that defendant from contesting certain key issues of law and fact, such as the extent of damages.

or only negligible damages, at trial, or on appeal."); *id.* at 476 (observing that "[d]amages at trial inevitably would involve a 'battle of the experts'" and noting that it is "'difficult to predict with any certainty which testimony would be credited'").[10]  Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and citing a case where a multimillion dollar judgment was reversed).  Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the Settlement Class.  Lufthansa's $85 million all-cash payment provides for significant compensation to the Settlement Class that will be available earlier—perhaps years earlier—than would be the case if litigation against Lufthansa continued through trial and appeal.   In addition, as Judge Infante points out, the Settlement Agreement provides the class with the benefit of the "immediate" deposit of the $85 million Settlement Fund into a "currency-hedging fund at Suntrust Bank accruing interest for the benefit of the class."  Infante Declaration ¶ 22.  This is beneficial to the Settlement Class because it "protect[s] the class against currency devaluation during the pendency of the settlement approval process." *Id.*

Considering the "complexity, expense and likely duration of the litigation," the "risks of establishing liability … [and] damages," and the "reasonableness of the settlement fund" in light

---

[10]    *See also W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

of all the attendant risks of litigation, the $85 million all-cash settlement amount itself brings the Settlement Agreement within the possible range of approval as a "fair, reasonable, and adequate" settlement of the Settlement Class's claims.[11]   *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).  *See also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (approval granted where "[d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait [for] years for any recovery, further reducing its value").[12]

In addition to a significant cash payment, the Settlement Agreement also benefits the Settlement Class by securing Lufthansa's immediate and substantial cooperation in prosecuting the Settlement Class members' claims against the non-settling Defendants.  Under the Settlement Agreement, Lufthansa is obligated to provide immediate and diligent cooperation to Plaintiffs' counsel by providing factual proffers, interviews, documents, depositions, and trial testimony, as well as to meet with Plaintiffs' counsel as necessary to identify relevant avenues of discovery. While Plaintiffs would certainly argue that, were the claims against Lufthansa fully litigated,

---

[11]   A court must also find that the plan for distributing the settlement fund is reasonable.  It is well settled that it is appropriate to defer the submission of such a plan until after a court has approved the adequacy of the overall settlement.  *See In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case.  This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement.  The formulation of the plan in a case such as this is a difficult, time-consuming process."); *NASDAQ II,* 187 F.R.D. at 480 (noting that "it is appropriate, and often prudent, in massive class actions" to defer the plan of distribution); *Newberg on Class Actions* § 12:35, at 342.

[12]   *See also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (fact that the class faced a long trial and the additional time it would take to exhaust all appeals "weigh[ed] heavily in favor of approving the Settlements"); *New York v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 681 (S.D.N.Y. 1991) (approving settlement and noting that "[i]f the litigation proceeds to trial, it no doubt will be complex, protracted and costly.  Even if [plaintiffs] ultimately prevail, it could be years before consumers received any meaningful resolution.").

Lufthansa, as the amnesty applicant, would be obligated to provide such immediate and complete cooperation, Lufthansa would argue otherwise.  The certainty that the Settlement Agreement provides as to the timing and scope of Lufthansa's cooperation is thus a benefit to the class. Lufthansa has, in fact, already begun fulfilling its cooperation obligations under the Settlement Agreement to the benefit of all Plaintiffs.   In addition, any disputes that may arise with regard to Lufthansa's cooperation will be resolved expeditiously through arbitration, thus avoiding the delay and consumption of judicial resources that characterize discovery disputes in cases of this size and complexity.

Finally, because liability under the Sherman Act is joint and several, this early settlement in no way prejudices the Class's ability to recover its full treble damages attributable to the entire alleged conspiracy.  *See* Infante Declaration ¶ 23 (the Settlement Agreement "correctly recognizes that to the extent that Plaintiffs' settlement with Lufthansa may ultimately be adjudicated to be less than the full amount of damages attributable to Lufthansa's actions, Plaintiffs may pursue the remainder of their damages from non-settling defendants.").  In fact, if approved, the settlement with Lufthansa could hasten the Class's recovery by providing Plaintiffs early access to information that might otherwise be obtainable only through protracted discovery.  *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case against [a non-settling defendant] will prove invaluable to the plaintiffs").

### B.     The Proposed Settlement Class Should Be Conditionally Certified Pursuant to Rule 23

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also In*

*re Global Crossing*, 225 F.R.D. 451 (S.D.N.Y. 2004).  A court may grant conditional

certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule

23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three

subsections of Rule 23(b).  *See id.; see also Medicare Beneficiaries' Defense Fund v. Empire*

*Blue Cross Blue Shield*, 938 F. Supp. 1131, 1140 (E.D.N.Y. 1996).[13]

**1.      The Proposed Settlement Class Meets the Requirements of
            Rule 23(a)**

***a.   The Class is So Numerous That it is Impracticable to Bring All Class
         Members Before the Court***

First, Rule 23(a) requires that the class be so numerous that joinder of all members would

be "impracticable."  Fed. R. Civ. P. 23(a)(1).  No magic number exists for satisfying the

numerosity requirement, nor must the plaintiff allege the exact number or identity of class

members.  *Gross v. Wash. Mut. Bank, F.A.,* 02 CV 4135, 2006 WL 318814 at *2 (E.D.N.Y. Feb.

9, 2006) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  Courts generally

consider the estimated number of parties in the proposed class, the expediency of joinder, and the

practicality of multiple lawsuits when determining whether the numerosity requirement is met.

*See Mascol v. E&L Transp., Inc.,* CV-03-3343, 2005 U.S. Dist. LEXIS 32634, at *12 (E.D.N.Y.

June 30, 2005).

Here, the proposed Settlement Class consists of persons and entities both in the United

States and around the globe who purchased Airfreight Shipping Services from the Defendants

during the period from January 1, 2000 to September 11, 2006.  Since 2000, it is beyond dispute

that hundreds of thousands of airfreight shipments have been made to, from, and within the

---

[13]      Lufthansa retains the right to challenge class certification in the event the Settlement
Agreement is not finally approved by this Court.  In addition, the Court's certification of this
Settlement Class is without prejudice to the rights of the non-settling Defendants to contest class
certification of the claims asserted against them.

United States by the Defendants, and there are no doubt tens of thousands of persons and entities

that fall within the Settlement Class definition.  Joinder of these parties is not just impracticable

but virtually impossible.

**b.**     ***Plaintiff and the Class Share Common Legal and Factual Questions.***

Second, Rule 23(a) requires the existence of questions of law or fact common to the

class.  Fed. R. Civ. P. 23(a)(2).  The Third Circuit has found that commonality "does not require

an identity of claims or facts among class members; instead, [t]he commonality requirement will

be satisfied if the named plaintiffs share at least one question of fact or law with the grievances

of the prospective class."  *In re Global Crossing*, 225 F.R.D. at 451 (citations omitted); *see also*

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Weil v. Long Island Sav.*

*Bank, FSB*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("[A] single common issue of law will satisfy

the commonality requirement.") (citation omitted); *Fox v. Cheminova, Inc.,* 213 F.R.D. 113, 126

(E.D.N.Y. 2003).

Here, Plaintiffs' allegations raise questions of law and facts common to the proposed

Classes, including, for example:

(i)     Whether Defendants engaged in a combination or conspiracy among

themselves to fix, raise, maintain, and/or stabilize prices of airfreight cargo shipping

services for shipments to, from, or within the United States;

(ii)     The duration of the conspiracy alleged in the Complaint and the nature and

character of the acts performed by Defendants in furtherance of the conspiracy;

(iii)     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

and

(iv)     The effect of Defendants' alleged conspiracy on the price of airfreight

cargo shipping services, and whether the alleged conspiracy caused injury to the

businesses or property of Plaintiffs and the other members of the Class.

The overarching allegation in the Consolidated Amended Complaint is that Defendants

have engaged in an illegal cartel designed and intended to fix the prices of Airfreight Shipping

Services.  Proof of this unlawful cartel is common to all members of the Class.  *See D'Alauro v.*

*GC Servs. Ltd.,* 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (stating that where the question of law

involves "'standardized conduct of the defendant . . . , a common nucleus of operative fact is

typically presented and the commonality requirement . . . is usually met'") (citation omitted).

     **c.**     ***Plaintiffs' Claims Are Typical of the Claims of the Members of the***
           ***Class.***

Third, Rule 23(a) requires typicality of the class representatives' claims.  *See*  Fed. R.

Civ. P. 23(a)(3).  The typicality requirement is satisfied where, as here, the claims of the

representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the

other Class members, and the claims are based on the same legal theories.  *See In re Playmobil*

*Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998); *In re Alcoholic Beverages Litig.*, 95

F.R.D. 321, 324 (E.D.N.Y. 1982); *see also NASDAQ II*, 169 F.R.D. at 510.  "Indeed, when 'the

same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the

class sought to be represented, the typicality requirement is usually met irrespective of minor

variations in the fact patterns underlying individual claims.'"  *In re Global Crossing,* 225 F.R.D.

at 452 (citation omitted); *see also In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 379

(S.D.N.Y. 1996).

Here, the claims of the representative Plaintiffs, which include both domestic direct and

indirect and foreign purchasers, are typical when compared to those held by the members of the

Settlement Class.  Plaintiffs have alleged that the Defendants created and maintained an illegal

cartel in the Airfreight Shipping Services industry, which artificially raised the prices of

Airfreight Shipping Services.  Such claims of the representative Plaintiffs, like those of the

members of the Settlement Class, arise out of the same alleged illegal anticompetitive conduct by

the same Defendants and are based on the same legal theories.

> **d.**     ***Settlement Class Counsel and Representative Plaintiffs
> Will Fairly and Adequately Protect the Interests of the
> Class.***

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent

the interests of the class.  Fed. R. Civ. P. 23(a)(4).  As the Second Circuit has stated, "adequacy

of representation is measured by two standards.  First, class counsel must be 'qualified,

experienced and generally able' to conduct the litigation.  Second, the class members must not

have interests that are 'antagonistic' to one another."  *In re Drexel Burnham Lambert Group,*

*Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *see also In re MetLife Demutualization Litig.,* 229 F.R.D.

369, 376 (E.D.N.Y. 2005) (citing *Fox*, 213 F.R.D. at 130).

Both requirements are satisfied here.  Settlement Class Counsel is qualified, experienced,

and thoroughly familiar with antitrust class action litigation.  They have successfully litigated

many significant antitrust actions and have prosecuted and will continue to vigorously prosecute

this lawsuit.  Moreover, in reaching this Settlement Agreement, the interests of the Class

members were adequately protected and were not in conflict.  *See Kapps v. Wing*, 283 F. Supp.

2d 866, 873 (E.D.N.Y. 2003), (*vacated in part on other grounds,* 404 F.3d 105 (2d Cir. 2005)).

All class members share an overriding interest in obtaining the largest monetary recovery

possible from Lufthansa.  *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class

and finding that "[t]here is no conflict between the class representatives and the other class

members.  All share the common goal of maximizing recovery."); *In re Corrugated Container*

*Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "'so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes'"). The class members also share a common interest in obtaining Lufthansa's early and substantial cooperation in prosecuting the claims against the non-settling Defendants.

Finally, the independent representation by separate counsel of direct and indirect purchaser class members and the designation of counsel principally responsible for protecting the interests of foreign plaintiffs ensures that each constituency's unique interests are adequately protected. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 533 (3rd Cir. 2004) ("The existence of separate counsel, as well as the operation of the Executive Committee, provided adequate 'structural protections to assure that differently situated plaintiffs negotiate for their own unique interests.'") (citation omitted); *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 236-237 (5th Cir. 1982) (finding settlement and allocation of damages fair and reasonable where separate counsel represented the interests of direct and indirect purchasers).

### 2.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the four prerequisites of Rule 23(a) are met, as in this case, Plaintiffs must also show that the proposed settlement class satisfies the requirements of either Rule 23(b)(2) or Rule 23(b)(3). *See, e.g., Larsen v. JBC Legal Group, P.C.,* 235 F.R.D. 191, 196 (E.D.N.Y. 2006). Under Rule 23(b)(3), Plaintiff must first demonstrate that "questions of law or fact common to the class predominate over questions affecting individual members." *Barone v. Safway Steel Prods., Inc.*, No. CV-03-4258, 2005 WL 2009882 at *15 (E.D.N.Y. Aug. 23, 2005) (quoting Rule 23(b)(3)). Second, Plaintiff must show that a "class action is superior to other available

methods for the fair and efficient adjudication of the controversy." *Id.*. With respect to both requirements, the court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

### a.   *Common Questions of Law and Fact Predominate.*

Because Plaintiffs' claims regarding U.S. shipments allege a single global conspiracy from which all Plaintiffs' injuries arise, issues common to the class members—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants, the market impact of Defendants' conspiracy, and the aggregate amount of damage suffered by the class as a result of an alleged violation of Section 1 of the Sherman Act—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem,* 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Playmobil*, 35 F. Supp. 2d at 247 (finding predominance where case involved allegations of "pricing structure to regulate prices . . . , to maintain prices at artificially high levels, and to hinder price competition"); *In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (citing *Amchem*) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs").

### b.   *A Class Action Is The Superior Method to Adjudicate These Claims.*

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication. *In re Nig. Charter Flights Contract Litig.,* 233 F.R.D. 297, 301 (E.D.N.Y. 2006). *See* Fed. R. Civ. P. 23(b)(3) (listing four

considerations relevant to this determination).  Here, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Tens of thousands of persons and entities purchased Airfreight Shipping Services during the class period; settling these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery.  *See Fox,* 213 F.R.D. at 130 (stating that "the larger the class, the more judicial resources would be saved by proceeding as a class action"); *In re Playmobil*, 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources").

### C.   <u>Notice to the Class</u>

Rule 23 requires that notice be given in a reasonable manner to all class members who would be bound by a proposed settlement prior to final approval of the settlement.  *See* Fed. R. Civ. P. 23.  Where, as here, notice of certification of the Settlement Class and notice of a proposed settlement are combined, the more detailed provisions contained in Rule 23(c)(2)(B) apply: "The Court must direct to the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B); *see also Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (citing 5 H. Newberg and A. Conte, *Newberg on Class Actions* §§ 8.04, 8.21 (3d ed. 1992)); *Manual for Complex Litigation* (Fourth) § 21.31 (2004) (when a judge simultaneously certifies a class action and preliminarily approves a class-wide settlement, notice is commonly combined).  In particular, notice of a proposed settlement:

> must concisely and clearly state in plain, easily understood
> language: the nature of the action, the definition of the class
> certified, the class claims, issues, or defenses, that a class member
> may enter an appearance through counsel if the member so desires,
> that the court will exclude from the class any member who

> requests exclusion, stating when and how members may elect to be
> excluded, and the binding effect of a class judgment on class
> members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," and it can "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005) (internal quotation marks and citation omitted); *In re WorldCom Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005).

The notice program proposed by the Settling Parties was designed by The Garden City Group, a class-action administrative firm well known for devising international notice plans to apprise class members of their rights, including in cases such as *Western Union Money Transfer Litigation* (advertisements appeared in more than 150 publications, in 119 countries and in more than 20 languages), *Royal Ahold Securities Litigation* (entailing one of the largest mailed notice plans in history and around-the-clock dedicated toll-free numbers for 24 countries)*, and the *Visa Check/Mastermoney Antitrust Litigation* (mailing over 8 million notices and processing 750,000 claims), which is currently pending before this Court.   (A complete description of Jeanne Finegan, APR's experience in the administration of class action notice is attached as Exhibit A to the Affidavit of Jeanne C. Finegan ("Finegan Aff."), attached hereto as Exhibit 3.)

The proposed notice includes all of the features required by Rule 23 and due process, including: (i) the case caption; (ii) a description of the Class; (iii) a description of the Settlement Agreement, including the monetary consideration and cooperation provided to the Settlement

Class; (iv) a description of the release provided by the Settlement Class, replicated verbatim from the Settlement Agreement; (v) the names of Settlement Class Counsel; (vi) the Fairness Hearing date; (vii) information about the Fairness Hearing; (viii) information about the deadline for filing objections to the Settlement Agreement; (ix) a statement of the deadline for filing requests for exclusion from the Settlement Class; (x) the consequences of exclusion; (xi) the consequences of remaining in the Settlement Class; and (xii) the manner in which to obtain further information about the proposed Settlement Agreement.

Settlement Class Counsel and Lufthansa have retained an expert, Jeanne C. Finegan of The Garden City Group, who in her attached Affidavit explains in detail the settling parties' notice plan and attests to the adequacy of the notice contemplated by it.  (See Finegan Aff.) Ms. Finegan has been recognized as an expert in legal notice programs in both federal and state courts in the United States and has lectured, published and been cited extensively on various aspects of legal notice.  Ms. Finegan has designed, implemented, or consulted on many of the largest and highest profile legal notice communication programs nationally and internationally for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, asbestos, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, securities, banking, insurance, and bankruptcy.  Cases in which Ms. Finegan has personally provided expert services include *In Re Nortel I & II Securities Litig.*, Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y.) (2006) (class action settlement notice program approved in the United States and Canada); *SEC v. Vivendi Universal*, *S.A., et al.*, Case No. 03-CV-10195-PKC (S.D.N.Y.) (including publication notice in eleven countries and eight languages); *In re Microsoft Antitrust Litigation* (multiple state courts) (global notice program utilized in more than twenty state

lawsuits).  Courts consistently have approved notices in the form proposed by the Settling Parties

in this case.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 496

(D.N.J. 1997).  *See also Manual on Complex Litigation* (Fourth) § 21.633 (2004) (notice

designed to provide class members an opportunity to present their views and to hear arguments

and evidence for and against the proposed settlement).  This notice plan is comprehensive in

scope, providing individual and publication notice to potential class members within the United

States and around the world.  Pursuant to the Settlement Agreement, Lufthansa shall pay all costs

associated with the notice program, which, again, at present are estimated as high as $6-8

million.  Settlement Agreement, ¶ 47.  Specifically, the plan contemplates providing individual

notice, in the form of the Notice attached hereto as Exhibit 4, via first-class mail, to each

potential class member whose address is reasonably ascertainable and to any purchaser of

airfreight shipping services who requests a copy of the Notice.  To this end, Lufthansa has agreed

in the Settlement Agreement to provide, in electronic format, customer names and addresses.

Accordingly, Lufthansa has provided The Garden City Group with the names and addresses of

some 19,000 direct customers, as well as an additional 62,000 individual shippers and

consignees.[14]

---

[14]        In addition, Plaintiffs intend to file a separate motion asking the Court to compel the non-
settling Defendants to produce their customer information to Plaintiffs or, alternatively, directly
to The Garden City Group under whatever conditions the Court deems appropriate to ensure the
confidentiality of that information, within 30 days of the entry of an Order preliminarily
approving the Settlement.  To be clear, and as pointed out in Ms. Finegan's affidavit, the notice
plan created by The Garden City Group satisfies the requirements of Rule 23 and due process
whether or not the non-settling Defendants produce their customer lists.  *See* Finegan Aff..
However, in light of Rule 23's preference for direct mail notice, *see* Fed. R. Civ. P. 23(c)(2)(B),
the Settling Parties believe that those customer lists will be a useful supplement to the notice plan
to the extent they are produced within the time frame established by the notice plan.  Consistent
with this approach, the Settling Parties propose that publication notice and direct mail notice to
Lufthansa customers go forward as set forth in the notice plan, and, should the Court ultimately
grant Plaintiffs' subsequent motion to compel the non-Settling Defendants to produce their

In addition to individual notice, the program proposed by the Settling Parties includes publication of a summary notice ("Publication Notice") in the publications listed on the Schedule of Publications[15] attached as Exhibit C to the Finegan Aff.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950) (publication is an acceptable means of providing adequate notice for those whose names and addresses cannot be determined through reasonable efforts) (quoted in *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1090 (2d Cir. 1971)). The Publication Notice also will be published on a website established for the purpose of this settlement, www.aircargosettlement.com.

Settlement Class Members may also request a copy of the Notice and a Registration Form, substantially in the form attached hereto as Exhibit 5, by writing to Settlement Class Counsel or by dialing a toll-free number, which will be provided substantially in the form attached hereto as Exhibit 6.  Notice materials may also be viewed and downloaded from the website described above.  In the Publication Notice, Settlement Class Members will be instructed that in order to receive further information regarding the allocation and distribution of the Settlement Funds, they must register an email address or mailing address with the Notice Administrator.  Those Settlement Class Members who receive Notice by first-class mail will automatically be registered and need not register an email address or mailing address to receive additional information.  All further communication with the class will take place through direct notice to registered Settlement Class members.  The notice will be translated into the numerous languages set forth in the mailing insert attached hereto as Exhibit 7.

---

customer lists, that the Settling Parties provide direct notice to the customers on any non-settling Defendant's list within thirty days after receipt of those lists.

[15]     The Settling Parties may request permission to amend the Schedule of Publications as necessary to effectuate the most comprehensive and cost-efficient Notice.

Finally, once the Court approves the Plan of Allocation of the Settlement Fund and the Plan of Distribution, the Settling Parties will notify those Settlement Class Members who either received the first notice by mail or who registered with the Notice Administrator, and those Settlement Class Members will be given a second opportunity to opt-out of the Settlement Class.

As established by the Affidavit submitted by Ms. Finegan, the notice plan proposed by the Parties meets and exceeds the requirements of Rule 23, comports with due process, and will fairly apprise potential Settlement Class Members of the existence of the Settlement Agreement and their options under it.  Because the proposed program would provide the best notice practicable under the circumstances, this Court should certify the Settlement Class and approve the dissemination of notice in the manner and form proposed herein.

## IV.  <u>PRELIMINARY APPROVAL ORDER</u>

Plaintiffs respectfully submit that the proposed Settlement Agreement with Lufthansa falls well within the range of possible approval; that conditional certification of a settlement class is appropriate; and that the proposed notice satisfies the requirements of Rule 23 and due process.  Plaintiffs therefore request that the Court:

1.  Preliminarily approve the Settlement Agreement, including a preliminary finding that it was negotiated at arm's length, that its terms are sufficiently fair, reasonable, adequate and in the best interests of the Class as a whole, and that its terms satisfy Federal Rule of Civil Procedure 23(e) and due process requirements;

2.  Conditionally certify the Settlement Class as defined in the Settlement Agreement, for purposes of settlement only pursuant to Federal Rule of Civil Procedure 23(c), and authorize Plaintiffs to represent the Settlement Class;

3.  Order the production of customer lists by Lufthansa as provided for in ¶ 30 of the Settlement Agreement;

4.  Order Settlement Class Counsel: (a) to mail or cause to be mailed the Notice of Settlement of Class Action ("Notice") (substantially in the form of Exhibit 4 attached hereto) to each person whose address is reasonably ascertainable from Lufthansa's customer information; (b) to cause the Summary Notice (substantially in the form attached hereto as Exhibit B to Finegan Aff.) to be published in accordance with the terms of the accompanying affidavit of Jeanne C. Finegan, APR; and (c) to cause the Summary Notice to be published on a website established for purposes of this settlement, www.aircargosettlement.com, within 60 days after the entry of the Court's preliminary approval Order;

5.  Order Settlement Class Counsel to, upon Court approval of a Plan of Allocation and a Plan of Distribution, cause copies of a second Notice ("Second Notice") to commence to be either (a) mailed by first class mail, postage prepaid, or (b) emailed to those Settlement Class Members who provided e-mail addresses during the Registration process, to those Settlement Class Members who were mailed the Notice or to those Settlement Class Members who registered, which Second Notice shall include the Plan of Allocation and Claim Form, along with information describing the Plan and explaining how to submit a claim.

6.      Determine, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, that the giving of notice as provided herein will constitute the best notice practicable of this proposed settlement, the fairness hearing, and the rights of the members of the Settlement Class with respect thereto, and that such notice thus satisfies the requirements of due process;

7.      Approve the proposed notice plan as described herein;

8.      Approve The Garden City Group as Administrator of the Settlement, and SunTrust Banks, Inc. as Escrow Agent pursuant to the Escrow Agreement attached hereto as Exhibit 8;

9.      Schedule a Fairness Hearing to determine the reasonableness, adequacy and fairness of the Settlement and whether it should be finally approved by the Court;

10.     Authorize Settlement Class Counsel to file, or cause to be filed, an affidavit with the Court certifying that notice was provided as approved by the Court; and

11.     Preliminarily enjoin Plaintiffs and all members of the Class from instituting, commencing or prosecuting any action against Lufthansa based upon or relating to the claims released in Paragraph 35 of the Settlement Agreement.

## V.      <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Approval, certify the Settlement Class, and approve the Notice Plan and authorize the dissemination of notice, by entering the Proposed Order attached hereto as Exhibit 9.

_____ /s/ _____

David W. Ogden
Wilmer Cutler Pickering
  Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
*Counsel for Lufthansa AG,*
*Lufthansa Cargo AG,*
*and Swiss International Air Lines Ltd.*

Date: _____ July 13, 2007 _____

_____ /s/ _____

Michael D. Hausfeld
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005
*Co-Lead Counsel and Counsel Principally*
*Responsible for Foreign Claims*

Date: _____ July 13, 2007 _____

_____ /s/ _____

Barbara J. Hart
Labaton Sucharow & Rudoff LLP
100 Park Avenue
New York, NY 10017
*Co-Lead Counsel*

Date: _____ July 13, 2007 _____

_____ /s/ _____

Robert N. Kaplan (RK-3100)
Kaplan Fox & Kilsheimer LLP
805 Third Avenue
New York, NY 10022
*Co-Lead Counsel*

Date: _____ July 13, 2007 _____

_____ /s/ _____

Howard J. Sedran
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
*Co-Lead Counsel*

Date: _____ July 13, 2007 _____

_____ /s/ _____

Michael P. Lehmann
Furth Lehmann & Grant LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
*U.S. Indirect Purchaser Counsel*

Date: _____ July 13, 2007 _____

_____/s/_____

Steven N. Williams (SW-6198)
Cotchett, Pitre & McCarthy
840 Malcolm Road, Suite 200
Burlingame, CA 94010
*U.S. Indirect Purchaser Counsel*

Date: _July 13, 2007_____

_____/s/_____

Christopher Lovell
Lovell Stewart Halebian LLP
500 Fifth Avenue, Suite 58
New York, NY 10110
*U.S. Indirect Purchaser Counsel*

Date: _July 13, 2007_____

_____/s/_____

W. Joseph Bruckner
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
*U.S. Indirect Purchaser Counsel*

Date: _July 13, 2007_____