# Linklaters

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9000
Facsimile (+1) 212 903 9100
Direct Line (1) 212 903 9028
jim.warnot@linklaters.com

Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court for the Eastern
District of New York
225 Cadman Plaza East
Brooklyn, NY 11201-1818

**By Electronic Case Filing**                                        February 1, 2008

Re:   In Re Air Cargo Shipping Services Antitrust Litigation, 06-MD-1775 (JG) (VVP)

Dear Magistrate Judge Pohorelsky:

The defendants listed on Schedule A respectfully submit this response to plaintiffs' four page January 18, 2008 letter addressing certain discovery issues and respectfully request that the Court accept this four page response. While at the January 23, 2008 conference one of plaintiffs' co-lead counsel suggested that plaintiffs do not seek a general lifting of the discovery stay, plaintiffs' letter plainly seeks to lift the stay in its entirety. Accordingly, defendants address herein the stay generally and also the more narrow issue of whether plaintiffs should obtain immediate discovery of the Statement of Objections (the "SO") issued by the European Commission (the "EC").

I.    **The Stay Should Remain In Place Until Defendants' Motion To Dismiss Has Been Decided**

The Court has already ruled – twice – that a stay of discovery is appropriate. The first time was on July 26, 2007, following briefing and oral argument. The Court re-affirmed its position on September 21, 2007 after plaintiffs brought certain guilty pleas to the Court's attention. The matters cited by plaintiffs in their letter should not change that result, and plaintiffs should not be permitted yet another bite of the apple. Thus, for all the reasons that the Court previously stayed discovery, the stay should remain in place.

The fundamental problem with permitting discovery now is that the scope will vary greatly depending upon the outcome of the motion. The geographic scope – even assuming that some claims survive – could vary from concerning shipments "within or from" the U.S. to shipments "within, to or from" the U.S. and shipments "within, to, from or between" EU member states. This will be determined by the outcome of the portions of defendants' motion concerning the Foreign Law Claims and the FTAIA. Likewise, the subject matter scope of discovery could be surcharges only, or surcharges, refusal to discount, increased yields and customer allocation. Finally, whether the indirect purchaser claims are in the case will also impact the scope of discovery.

Starting discovery before these threshold issues are decided would be a wasteful exercise. The Court should adhere to its previous rulings.

## II. The Court Should Reject The Premature Attempt to Obtain Discovery Of The SO

Plaintiffs' request to obtain a copy of the EC's confidential SO is procedurally defective and premature given the pendency of the motion to dismiss. It is also in acute conflict with important international comity considerations. Indeed, as other courts have ruled in denying similar discovery requests, it would work a direct intrusion on the sovereign interests of a foreign jurisdiction. This is so because the EC emphatically objects to disclosure of the SO in U.S. civil litigation, emphasizing that such disclosure would directly override and undermine the EC's own considered judgments and policies with respect to antitrust enforcement in Europe – including compromising its most effective enforcement tool, its "leniency programme".

First, plaintiffs' request for immediate production of the SO is procedurally flawed – indeed in effect an effort to circumvent the Federal Rules of Civil Procedure and the rules of this Court. Plaintiffs have not served a document request seeking the SO,[1] defendants have not had an opportunity to prepare and serve their responses and objections,[2] and the parties have not met and conferred.

Second, even if plaintiffs had served a proper request and complied with applicable rules, the Court should at a minimum stay resolution of the dispute over the SO until after the motion to dismiss is decided (as explained more fully above). Importantly, plaintiffs can complain of no prejudice because, as the Court pointed out at the last hearing, the SO is irrelevant to defendants' *facial* challenge to the complaint. And even if the motion to dismiss were a factual challenge (which it is not), the SO simply is not evidence, contrary to the suggestion of plaintiffs' counsel at the January 23 conference. As plaintiffs' own letter of January 18, 2008 acknowledges, the SO is nothing more than the rough equivalent of a sealed administrative complaint provided on a restricted and confidential basis to allow the respondents thereto to exercise their rights of defense under EU law and to contest the SO's allegations. *See, e.g.*, *Submission to the Antitrust Modernization Commission*, April 4, 2006, at 4 (included in Exhibit A) (hereinafter "EC AMC Submission"). The SO does not constitute a finding of guilt or liability, nor are all parties who receive an SO invariably found to have violated EU law. *Id.* As such, the SO lacks intrinsic evidentiary value.

Third, vital international comity considerations compel careful examination of discovery requests that threaten to invade the law enforcement prerogatives of foreign sovereigns. This Court has wide discretion to limit discovery in reliance on such comity concerns, which strongly counsel against permitting discovery of the SO in this case. *See, e.g., Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 544, 546 (1987) ("*Aerospatiale*"); *In re: Rubber Chemicals Antitrust Litig.,* 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007) (Exhibit B) (hereinafter *"Rubber Chemicals"*); *In re: Methionine Antitrust Litig.*, MDL No. 00-1311 CRB, 2002 U.S. Dist. LEXIS 27122 (N.D. Cal. July 17, 2002) (Exhibit C) (hereinafter "*Methionine*").

---

[1] Since the SO postdates plaintiffs' document requests, it is unsurprising that it is not encompassed by those requests. While plaintiffs make reference to specific requests (Ex. 3 to plaintiffs' letter), these call for underlying business records, which the SO is not. The request (no. 24) concerning "Foreign Antitrust Authorit[ies]" – a request unmentioned in plaintiffs' letter -- seeks only documents "submitted to, or seized by" such authorities, not documents prepared by such authorities.

[2] Formal responses and objections would identify a host of important issues, including rights under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *See* Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, Chap. 1, 23 U.S.T. 2555, 847 UNTS 231. In submitting this letter, defendants do not waive and respectfully reserve all rights to state fully their objections and resist objectionable discovery pursuant to all applicable treaties, laws and rules.

Indeed the Supreme Court has "long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation" and has emphasized that "American Courts should therefore take care to demonstrate due respect for any special problem confronted by . . . any sovereign interest expressed by a foreign state." *Aerospatiale*, 482 U.S. at 546; *see also Intel Corp. v. AMD, Inc.*, 542 U.S. 241, 262 (2004) ("comity and parity concerns" apply to regulate discovery disputes in antitrust cases); *Nissan Fire & Marine Ins. Co. v. Fortress, re Inc.*, No. M8-85, 2002 WL 1870084, *5 (S.D.N.Y. Aug. 14, 2002) (relying on "prudential, international comity-based considerations" to deny discovery).  It is thus no surprise that other courts have declined to grant U.S. civil litigation plaintiffs access to materials prepared solely for purposes of enforcement proceedings arising out of the EC's leniency program.  *See Rubber Chemicals*, 486 F. Supp.2d at 1084 (denying discovery of confidential communications with the EC, including the SO); *Methionine* at 13 (preventing disclosure of communications from a defendant to the EC).  In particular, the court in *Rubber Chemicals* evaluated – and denied based upon international comity considerations – a discovery demand that included a request for the relevant SO. 486 F. Supp. 2d at 1083-84.

Evaluating considerations of international comity requires this Court to balance the interests of the foreign sovereign against the plaintiffs' interests in seeking the discovery in question.  "[T]he balance tips strongly in favor of the interests of the [EC]," particularly if "[s]triking the balance in favor of comity [] does little harm to the[] plaintiffs."  *Methionine* at 13; *see also Rubber Chemicals*, 486 F. Supp. 2d at 1082-83 (noting that "courts are less inclined to ignore a foreign state's concerns where the outcome of the litigation 'does not stand or fall on the present discovery order,'" questioning the importance in a U.S. proceeding of EC documents, and observing that the importance and relevance is "even less clear for documents generated by the Commission") (internal citations omitted).  There can be no doubt that the EC emphatically objects to interference with its investigatory and adjudicatory process through forced disclosure of confidential legal materials.  This is unambiguously clear from the EC's leniency policy,[3] speeches by its senior officials,[4] its submissions to U.S. commissions[5] and courts.[6]  Indeed, the EC has policies directed at penalizing parties and their counsel who breach its confidentiality rules.[7]  On the other hand, as noted above, plaintiffs here will not be prejudiced by a denial of access to a provisional filing issued confidentially by the EC for law enforcement purposes.

---

[3]  *See, e.g.*, Commission Notice on Immunity from fines and reduction of fines in cartel cases, 298/17 O.J.  ¶ 40 (August 12, 2006) (hereinafter "2006 Notice") (disclosure of documents prepared for purpose of the leniency program would undermine public or private interests, even after the EC investigation is concluded and a decision has been taken), *available at* http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:C:2006:298:0017:0022:EN:PDF.

[4]  *See, e.g.*, Philip Lowe, Director-General, DG Competition, European Comm'n, What's the Future for Cartel Enforcement?, Address at the Conference: Understanding Global Cartel Enforcement, at 4 (Feb. 11, 2003)*, available at* http://ec.europa.eu/comm/competition/speeches/text/ sp2003_044_en.pdf ("while the Commission certainly does not want to hinder civil litigation, neither does it believe that plaintiffs in civil litigation should gratuitously benefit from the entirely unrelated and autonomous procedure of the Commission's leniency program, thereby undermining the latter program in the process").

[5]  See EC AMC Submission at 1-2, 5-10.

[6]  *See, e.g.,* April 17, 2007 Letter of Kirtikumar Mehta, Director, Competition Directorate General, EC (attached as Exhibit D) (hereinafter "EC Rubber Chemicals Letter") (objecting to production of confidential communications with the EC, including the SO); *Methionine* at 6-9 (summarizing letter from EC objecting to production of defendant's submissions to the EC).

[7]  *See* Commission Notice on the rules for access to the EC file, Articles 53.54, O.J. 325 ¶ 48 (Dec. 22, 2005) (supplementing leniency policy with protective rules about how information accessed by parties to its proceedings may not be used outside those proceedings, including a threat to notify bar associations of lawyers who violate its rules); *see also* EC AMC Submission at 4-5.

The EC's deliberate policy judgment is clear: Forcing parties to produce confidential documents created for purposes of EC legal proceedings creates significant disincentives for firms to report illegal cartel behavior, thereby undermining the EC's enforcement efforts.[8] The EC, in exercising its sovereign prerogatives in crafting an antitrust enforcement policy for the EU, has determined that confidentiality related to communications between itself and those it is investigating, especially cooperating leniency applicants, is important to its Leniency Programme – a program that "is by far the most important enforcement tool" at its disposal. EC AMC Submission at 3.

This policy judgment applies with particular force to the SO because, as the EC explained to the court in *Rubber Chemicals*, "Statements of Objections constitute Commission documents that are provided to the parties to allow them to exercise their rights of defence *within the sphere of the Commission's proceedings*." EC Rubber Chemicals Letter at 2 (emphasis added). Because an SO discloses investigatory strategies and reveals provisional (*i.e.*, non-final) allegations that, for the EC's enforcement policy to be effective, must not be expropriated for other purposes, "[t]hese documents are not made public and *warrant specific protection*." *Id.* (emphasis added).

As the court recognized in *Rubber Chemicals*, the SO is created by a foreign sovereign for use "only in Europe and in conjunction with the European enforcement proceedings." 486 F. Supp. 2d at 1083. Plaintiffs, who presently are tasked only with defending a facial challenge to their complaint in the U.S., have no need for access to a foreign jurisdiction's restricted and confidential materials. Even if there were a plausible claim of some need for this discovery, important international comity principles present a firm bar with respect to confidential EC materials.

Defendants respectfully submit that the Court should reject plaintiffs request for discovery of the SO and that discovery generally should remain stayed until the scope of the Court's subject matter jurisdiction and other threshold issues are resolved.

Respectfully submitted,


*/s/ James R. Warnot Jr.*
James R. Warnot, Jr.


cc:   All Counsel Of Record (by ECF)

---

[8] *See, e.g.*, Neelie Kroes, EC Competition Commissioner, Address at the International Forum on European Competition Law: The First Hundred Days: 40th Anniversary of the Studienvereinigung Kartellrecht 1965-2005 (Apr. 7, 2005), *available at* http://europa.eu/rapid/pressReleasesAction.do?reference=SPEECH/05/205&format=HTML&aged=0&language=EN&guiLanguage=en (discovery of information provided to EC "threatens the credibility of the European [leniency] programme and limits the willingness of undertakings to come forward").

**SCHEDULE A**

Aerolíneas Brasileiras S.A. d/b/a ABSA Cargo Airline

Air Canada

AC Cargo LP

Air China Ltd.

Air China Cargo Co., Ltd.

Air Mauritius Ltd.

Air New Zeland

Alitalia Linee Aeree Italiane, S.p.A.

All Nippon Airways Co., Ltd.

Asiana Airlines, Inc.

Atlas Air Worldwide Holdings, Inc.

British Airways, Plc

Cargolux Airlines International S.A.

Cathay Pacific Airways, Ltd.

El Al Israel Airlines Ltd.

Emirates

Ethiopian Airlines Enterprise

Japan Airlines International Co., Ltd.

Kenya Airways Limited

KLM Royal Dutch Airlines

Korean Airlines Co., Ltd.

LAN Airlines S.A.

LAN Cargo S.A.

Martinair Holland N.V.

Nippon Cargo Airlines Co., Ltd.

Polar Air Cargo LLC

Qantas Airways Ltd.

Saudi Arabian Airlines, Ltd.

Scandinavian Airlines System

Singapore Airlines Cargo Pte Ltd.

Singapore Airlines Limited

Société Air France

South African Airways Limited

Thai Airways International Public Company Ltd.