# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | ) | 06-MD-1775 (JG) (VVP) |
|  | ) |  |
| **AIR CARGO SHIPPING SERVICES** | ) |  |
| **ANTITRUST LITIGATION** | ) |  |
|  | ) |  |
| **MDL No. 1775** | ) |  |
|  | ) |  |
| **THIS DOCUMENT RELATES TO:** | ) |  |
|  | ) |  |
| **ALL CASES** | ) |  |
|  | ) |  |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND EXPENSES AS RECOMMENDED BY SETTLEMENT MASTER <u>JUDGE DANIEL H. WEINSTEIN</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I.   INTRODUCTION ......................................................................................... 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................ 2

III. ARGUMENT ................................................................................................ 6

  A. The Court Should Award the Requested Attorneys' Fees and Expenses ......... 6

    1.   Under A Percentage of the Fund Approach, the Requested
         Fees Are Fair And Reasonable. ................................................................8

      (a)   The Court Should Employ a Percentage of the Fund
            Analysis in Determining Whether the Requested Fees are
            Fair and Reasonable. ......................................................................8

      (b)   Under A Percentage of the Fund Analysis, the Requested
            Attorneys' Fees Are Fair and Reasonable. ....................................12

        (i)    Counsel's Time and Labor......................................................12

        (ii)   Litigation's Complexities and Magnitude ...........................13

        (iii)  Litigation Risks .....................................................................14

        (iv)   Quality of Representation .....................................................16

        (v)    Relationship Between the Requested Fees and the
               Settlement ..............................................................................19

        (vi)   Public Policy Considerations ................................................20

    2.   The Requested Fee is also Reasonable Under the Lodestar
         "Cross Check"........................................................................................21

    3.   The Expenses Requested are also Reasonable and Should Be
         Reimbursed. ...........................................................................................22

IV.  CONCLUSION............................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Adair v. Bristol Tech. Sys., Inc.*, No. 97 Civ. 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999) ...................................................................................19

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc*. 481 F.2d 1045, 1050 (2d Cir. 1973) ..20

*Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002 ...............................................................8

*Berchin v. Gen. Dynamics Corp.,* No. 93 Civ. 1325, 1996 WL 465752, at *2 (S.D.N.Y. Aug. 14, 1996) ...........................................................................19

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)..........................................7

*Breiterman v. Roper Corp.,* No. 88 Civ. 2138, 1990 WL 15535, at *3 (S.D.N.Y. Jan. 12, 1990) ............................................................................................9

*Cromer Finance Ltd. v. Berger*, No. 00 Civ. 2284, 2003 WL 203197, at *1 (S.D.N.Y. Jan. 29, 2003)............................................................................7

*Dubin v. The E.F. Hutton Group, Inc.,* 878 F. Supp. 616, 621 (S.D.N.Y. 1995) .............10

*Duffy v. Modern Concrete Corp.*, No. 07-CV-962, 2008 WL 822111, at *5 (E.D.N.Y. Mar. 25, 2008)........................................................................................22

*Fears v. Wilhelmina Model Agency, Inc.,* No. 02-CIV-4911, 2005 WL 1041134, at *8 (S.D.N.Y. May 5, 2005)...............................................................16

*Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990)........................................10

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47  (2d Cir. 2000)................................7

*Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000)............................1

*Gwozdsinnsky v. Sandler Assoc.,* 159 F.3d 1346 (2d Cir. 1998) .......................................19

*In re Agent Orange Prod. Liab. Litig.,* 611 F. Supp. 1296, 1313 (E.D.N.Y. 1985) ..........16

*In re Allstar Inns Sec. Litig.*, No. 88 Civ. 9282, 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) ............................................................................20

*In re Arakis Energy Corp. Sec. Litig.,* No. 95 CV 3431, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001) ....................................................................22

*In re Ashanti Goldfields*, No. 00-CV-717, 2005 WL 3050284, at *4 (E.D.N.Y. Nov. 15, 2005) .....................................................................................16

*In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) ............................................................................................19

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) .........................11

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001) ........................................................22

*In re Elan Sec. Litig.,* 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) ....................................15

*In re Fine Host Corp. Sec. Litig.,* No. MDL 1241, 3:97-CV-2619, 2000 WL 33116538, at *6 (D. Conn. Nov. 8, 2000) ....................................................................23

*In re Gilat Satellite Networks, Ltd.,* No. 02-CIV-1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007) .................................................................................................20

*In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ......17

*In re Global Crossing Sec. Litig.,* No. 02 Civ. 910, 2005 WL 1668532, at *1 (S.D.N.Y. July 12, 2005) ......................................................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 142 F.R.D. 588, 597 (S.D.N.Y. 1992) ....20

*In re Holocaust Victim Assets Litig.,* 2007 WL 805768, at *48 ........................................19

*In re Holocaust Victim Assets Litig.,* Nos. CV 06-0983, CV 96-4849, CV 97-0461, CV 99-5161, 2007 WL 805768, at *47 (E.D.N.Y. Mar. 15, 2007) ...............................14

*In re Linerboard Antitrust Litig.,* 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003)....................13

*In re Linerboard Antitrust Litig.,* No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004)....................................................................................................................20

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.,* No. 02-MDL-1484, 2007 WL 4526593, at *13 (S.D.N.Y. Dec. 20 2007) .............................................................8

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02MDL1484, 2007 WL 313474, at *21 (S.D.N.Y. Feb. 1, 2007)...................................................................20

*In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329 (N.D. Ga. 2000) ...................................................................................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483 (S.D.N.Y. 1998).....8

*In re Presidential Life Sec.,* 857 F. Supp. 331, 334 (S.D.N.Y. 1994)................................10

*In re RJR Nabisco, Inc. Sec. Litig.,* No. MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .................................................................................22

*In re Sapiens Sec. Litig.,* No. 94 Civ. 3315, 1996 WL 689360, at **1, 8 (S.D.N.Y. Nov. 27, 1996) .................................................................................................................7

*In re Shopping Carts Antitrust Litig.,* MDL No. 451-CLBM-21-29, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) .........................................................................................13

*In re Sterling Foster & Co., Inc. Sec. Litig.,* 238 F. Supp. 2d 480, 483 (E.D.N.Y. 2002) ....................................................................................................................................7

*In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ...................9, 19

*In re Synthroid Mktg. Litig.,* 325 F.3d 974, 979 (7th Cir. 2003) .......................................11

*In re Towers Fin. Corp. Noteholders Litig.,* No. 93 Civ. 0810, 1996 WL 393213, at *2 (S.D.N.Y. Feb. 28, 1996) ...........................................................................................7

*In re Visa Check/MasterMoney Antitrust Litig.,* 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) .................................................................................................................................9, 22

*In re Vitamins Antitrust Litig.*, No. Misc. 99-197, MDL 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) .................................................................................20

*In re WorldCom Inc. Sec. Litig.*, 2004 WL 2591402, at *21 ...............................11

*In re WorldCom*, 2004 WL 2591402, at **17, 20 ...............................................22

*In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) .................20

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) .........................................................................7

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007) ...............21

*Reidman v. Bonsignore, Brignati & Massotta, P.C,* 818 F.2d 278, 283 (2d Cir. 1987)....22

*Roberts v. Texaco,* 979 F. Supp. 185, 185 (S.D.N.Y. 1997)...............................22

*Savoie v. Merchants Bank,* 166 F.3d 456, 461 n.4 (2d Cir.1999)..........................11

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) ....................................................................8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) ..................20

*Vladimir v. Deloitte & Touche, LLP,* No. 95 Civ. 10319 (S.D.N.Y. Sept. 18, 1998)........19

*Wallace v. Fox,* 7 F. Supp. 2d 132, 142 (D. Conn. 1998)..................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ..................8

## Other Authorities

*Court Awarded Attorney Fees*: *Report of the Third Circuit Task Force*, 108 F.R.D. 237, 246-59 (1985)....................................................................10

*Manual for Complex Litigation, Fourth* § 14.121 (2004)..................................21

I.      **INTRODUCTION**

Just over two years ago, Defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (collectively, "Lufthansa") and Plaintiffs (together "the Settling Parties") reached a settlement (the "Settlement Agreement") resolving the claims of a proposed Settlement Class of purchasers of airfreight shipping services for shipments within, to, or from the United States between January 1, 2000 and September 11, 2006 ("Airfreight Shipping Services").   The Settlement Agreement required Lufthansa to pay $85 million into a fund for the benefit of the Settlement Class (the "Settlement Fund") and to provide extensive, forward-leaning cooperation to Plaintiffs to assist in their prosecution of claims for purchases to, from and within the United States against the more than thirty remaining Defendants.

On October 30, 2007, pursuant to Rule 53 of the Federal Rules of Civil Procedure, this Court appointed Judge Daniel H. Weinstein, former Judge of the Superior Court, San Francisco County, as Settlement Master, among other things, to recommend an allocation from the Settlement Fund of attorneys' fees, expenses and costs. Declaration of Daniel H. Weinstein in Support of Request for Attorneys' Fees and Reimbursement of Litigation Expenses, dated November 12, 2008 ("Weinstein Decl."), ¶ 1.  Having thoroughly examined the results achieved and the work undertaken in the context of the standards articulated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), Judge Weinstein recommends that Plaintiffs be awarded attorneys' fees of 25% of the Lufthansa Settlement Fund and be reimbursed $2,455,088.80 in expenses incurred to date.  *See* Weinstein Decl., ¶¶ 3-27.

Judge Weinstein recognized that Plaintiffs' counsel have spent nearly three years' time and millions of dollars investigating this case, negotiating the Settlement with

Lufthansa, implementing the cooperation provisions therein, providing worldwide notice the class and seeking Court approval of the Settlement Agreement while, at the same time, working to advance the litigation generally.

While members of the Settlement Class were informed in the class notice distributed worldwide that counsel for Plaintiffs would seek attorneys' fees of up to 30% of the Settlement Fund, Plaintiffs' counsel are seeking approval of Judge Weinstein's recommendation of an attorneys' fee award totaling 25% of the value of the Lufthansa Settlement Fund, less than Plaintiffs' counsel's lodestar through February 29, 2008. Given the intensive work invested and expense of advancing this litigation and the excellent result counsel for Plaintiffs achieved for the Class in reaching the Lufthansa settlement, a fee award of 25% of the Settlement Fund is fair and reasonable. Accordingly, for the reasons set forth in detail below, counsel for Plaintiffs respectfully move the Court for an award of the attorneys' fees of 25% of the Settlement Fund and reimbursement of expenses incurred in the amount of $2,455,088.80.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation commenced when plaintiffs around the country filed over one hundred related complaints alleging claims against various Defendants, individually and on behalf of various classes of persons and entities who purchased, either directly or indirectly, Airfreight Shipping Services from Lufthansa or other Defendant airfreight carriers named in the Complaint.   Plaintiffs alleged that Defendants conspired to unlawfully fix prices of Airfreight Shipping Services worldwide, including within, to, or from the United States, by, among other things, concertedly levying agreed-upon, inflated surcharges, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1890). Declaration of W. Joseph Bruckner, Craig C. Corbitt, Robert N. Kaplan, Christopher

Lovell, Hollis L. Salzman, Howard J. Sedran, Charles E. Tompkins, and Steven N. Williams in Support of Final Approval of the Settlement Agreement between Plaintiffs and Lufthansa, Plaintiffs' Application for Attorneys' Fees and Reimbursement of Expenses, and the Plan of Allocation, dated November 12, 2008 ("Joint Decl."), ¶¶ 8-9.

On June 20, 2006, the Judicial Panel on Multidistrict Litigation consolidated the actions filed by Plaintiffs and transferred them to this Court for pretrial proceedings. *Id.* ¶ 10.  On December 4, 2006, in Practice and Procedure Order Number 2, the Court appointed four Co-Lead Counsel:  Michael Hausfeld, formerly of Cohen, Milstein, Hausfeld & Toll, PLLC ("Cohen Milstein") and now at Hausfeld, LLP;[1]  Barbara Hart at Labaton, Sucharow & Rudoff, LLP, now named Labaton Sucharow LLP, who has now been replaced by Hollis Salzman of the same firm; Howard Sedran of Levin, Fishbein, Sedran & Berman; and Robert Kaplan of Kaplan, Fox & Kilsheimer.  Joint Decl., ¶ 13. In addition, in Practice and Procedure Order Number 4, the Court subsequently appointed four U.S. Indirect Purchaser Counsel: Steven N. Williams of Cotchett, Pitre & McCarthy; Christopher Lovell of Lovell Stewart Halebian LLP;  W. Joseph Bruckner of Lockridge Grindal Nauen P.L.L.P.; and Michael P. Lehmann of Furth Lehmann & Grant LLP, who has since been replaced by Craig C. Corbitt of Zelle, Hofmann, Voelbel, Mason & Gette, and appointed Cohen Milstein Counsel Principally Responsible for Foreign Purchasers. Joint Decl., ¶ 16.

During the time that the cases were being consolidated and transferred, a group of plaintiffs represented by Mr. Hausfeld, together with a small number of other counsel,

---

[1]    Mr. Hausfeld has recently separated from Cohen Milstein.  Together with the lawyers at the firm handling this litigation on a day-to-day basis, Mr. Hausfeld, who was appointed Co-Lead Counsel, has moved to a new firm, Hausfeld LLP.  Hausfeld LLP has, accordingly, filed a notice of change of firm affiliation advising the Court of the change.

and Lufthansa, the amnesty applicant under the Department of Justice leniency program, entered into negotiations in an attempt to reach an early settlement in the case.   On September 11, 2006, a the Settlement Agreement was executed by Michael Hausfeld for Plaintiffs and counsel for Lufthansa resolving Lufthansa's liability under the Sherman Act for shipments to, from and within the United States.   The Settlement Agreement reached between the Settling Parties secured for the Settlement Class an $85 million cash payment, which has already been paid by Lufthansa into an interest-bearing escrow account.   As a result of the interest earned on the Settlement Fund and the currency hedging program in which 60% of the Fund was enrolled to protect against currency fluctuations, the value of the Settlement Fund on November 6, 2008, was $90,474,823.63.

The Lufthansa Settlement provides not only significant monetary compensation to the Class, but also provides members of the Settlement Class with Lufthansa's early and comprehensive cooperation in the form of, *inter alia*, depositions, interviews, documents, and attorney proffers related to air cargo shipments within, to, or from the United States. The substantial cooperation terms are extremely beneficial to the Settlement Class. Indeed, an independent neutral, Judge Edward A. Infante (Ret.), who has positively evaluated the fairness and reasonableness of the Lufthansa Settlement found that a substantial benefit of the timing of the Settlement's cooperation provisions is that they "define[] the scope of the Parties' cooperation obligations" and that, therefore, the settlement "creates certainty for the class by defining the scope of cooperation…."  Decl. of Judge Infante at 10 (attached hereto as Exhibit A).   Indeed, Lufthansa has already begun providing such cooperation, which even at this early stage has proved of benefit to

Plaintiffs in the prosecution of their claims against additional Defendants, including in the drafting of Plaintiffs' amended complaint.

While Mr. Hausfeld initially negotiated and executed the Settlement Agreement with Lufthansa on September 11, 2006, the other counsel appointed by the Court in late 2006 and early 2007 conducted their own independent investigation, after which they proposed several modifications to the agreement. The Settlement Agreement with those amendments was then executed by all Parties. The amendments to the Settlement Agreement included provisions naming all eight Co-Lead Counsel and U.S. Indirect Purchaser Counsel as Settlement Class Counsel. *See* Amendments of January 4, 2007 and February 22, 2007.

Based in large part on information obtained from Lufthansa as a result of the initial cooperation it provided pursuant to the Settlement Agreement, on February 8, 2007, Plaintiffs filed a detailed, nearly 130-page First Consolidated Amended Complaint ("Complaint") asserting claims under both U.S. antitrust law and E.U. competition law on behalf of both U.S. and foreign purchasers. Lufthansa's cooperation provided important support for Counts I-V of the Complaint, asserting claims arising from shipments within, to, or from the United States. In total, the claims in the Consolidated Amended Complaint are asserted on behalf of eight classes and subclasses of purchasers in seven Counts. The facts and claims alleged in the Complaint were the product of hours of investigation and research by counsel for Plaintiffs.

After a pre-motion conference preceded by letter briefs, Defendants filed hundreds of pages of motions to dismiss the Complaint. Various Defendants argued, *inter alia,* that the Complaint was insufficiently pled under Rule 8, that the Court did not

have subject matter jurisdiction over the claims alleged or personal jurisdiction over some of the Defendants, that the state law claims were preempted, and that a number of the Defendants were immunized against the claims.  After months of extensive briefing requiring hundreds of hours of work by counsel for Plaintiffs and extensive argument on the motions, on September 26, 2008, the Magistrate Judge issued a Report and Recommendation regarding the motions, which is currently the subject of ongoing litigation before the Judge Gleeson.

During the course of the litigation regarding the motions to dismiss and various other issues affecting the litigation as a whole, including the appropriate time for commencement of discovery, Plaintiffs proceeded in advancing the Lufthansa Settlement, spending a significant amount of time working with consultants to construct a program by which to provide notice of the settlement internationally to Settlement Class members located around the world.  Plaintiffs submitted the Lufthansa Settlement to the Court for preliminary approval, which was granted on April 4, 2008.  In addition, in order to fully develop their case against the remaining non-settling Defendants, Plaintiffs have been continuously engaged with Lufthansa to begin securing the cooperation provided for by the Settlement Agreement, and have obtained substantial additional information about the conspiracy since that time.

Between the time that the cases comprising this Action were filed and the end of February 2008, counsel for Plaintiffs have incurred $24,884,914.26 in lodestar and to date they have incurred $2,455,088.80 in expenses in the prosecution of their claims.

## III.   ARGUMENT

### A.   The Court Should Award the Requested Attorneys' Fees and Expenses

Plaintiffs' counsel have created a substantial benefit for members of the

settlement class, and are therefore entitled to recover reasonable attorneys' fees.  The Supreme Court, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *See also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47  (2d Cir. 2000) (noting that the common fund approach – the exception to the general rule that litigants are expected to pay their own expenses and attorneys' fees – entitles attorneys whose efforts create a settlement fund to a reasonable fee to be taken from that fund).  Having achieved an excellent settlement with Lufthansa that provides significant compensation to the members of the settlement class and that requires substantial cooperation by Lufthansa to advance the litigation as a whole against the remaining Defendants, counsel for Plaintiffs submit that they are entitled to an award of attorneys' fees equal to 25% of the value of the Lufthansa Settlement Fund as recommended by the Settlement Master and to the reimbursement of all expenses incurred in the litigation to date.[2]

---

[2]    An interim award of attorneys' fees and expenses is especially warranted in this case where, even though the litigation is still in its earliest stages, counsel for Plaintiffs have already invested almost three years of time and effort into advancement of the case.  *See In re Sterling Foster & Co., Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 483 (E.D.N.Y. 2002) (attorneys' fees awarded based on a partial settlement that resolved claims only with respect to certain defendants while claims against non-settling defendants remained); *Cromer Finance Ltd. v. Berger*, No. 00 Civ. 2284, 2003 WL 203197, at *1 (S.D.N.Y. Jan. 29, 2003) (attorneys' fees awarded even though "the litigation continues" with respect to other, non-settling defendants); *see also In re Global Crossing Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1668532, at *1 (S.D.N.Y. July 12, 2005) (approving request for attorneys' fees and expenses even though "the case still remains pending against other defendants" and the "settlement is a partial settlement, not intended to accomplish full satisfaction of plaintiffs' claimed damages"); *In re Sapiens Sec. Litig.*, No. 94 Civ. 3315, 1996 WL 689360, at **1, 8 (S.D.N.Y. Nov. 27, 1996) (awarding attorneys' fees, expert fees and attorney expenses based on settlement only with certain defendants).

Expenses incurred to date also should be reimbursed at this time.  *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (explicitly rejecting argument that expenses should be divided after certain defendants settle because it "would be virtually impossible to segregate the expenses incurred . . . in prosecuting this action and to eliminate those unconnected to [the] case against the [settling] Defendants"); *In re Towers Fin. Corp. Noteholders Litig.*, No. 93 Civ. 0810, 1996 WL 393213, at *2 (S.D.N.Y. Feb. 28, 1996) (finding that, where the costs were incurred for prosecution of the action as a whole, costs need not be apportioned when awarding an interim reimbursement for expenses).

An attorneys' fee award equal to 25% of the value of the Settlement Fund is fair and reasonable under the law of the Second Circuit, which favors an application of the percentage of the fund approach to determine whether an attorneys' fee award in a common fund case is fair and reasonable. *See e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting the Court's trend toward a percentage of the fund approach in determining attorneys' fee awards in common fund cases.)  Indeed, as set forth below, a 25% fee award in this case is fair and reasonable based on all six of the factors set forth by the Second Circuit in *Goldberger*, 209 F.3d at 43.

**1.    Under A Percentage of the Fund Approach, the Requested Fees Are Fair And Reasonable.**

**(a)    The Court Should Employ a Percentage of the Fund Analysis in Determining Whether the Requested Fees are Fair and Reasonable.**

To determine whether requested attorneys' fees in a common fund case are reasonable, the favored method in the Second Circuit has been a percentage method, whereby the court "sets some percentage of the recovery as a fee." *See e.g., Wal-Mart Stores, Inc.*, 396 F.3d at 121 ("[t]he trend in this Circuit is toward the percentage method."); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-CV-0403, 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) ("'[t]he trend . . . in the Second Circuit appears to be the utilization of the percentage method'" (quoting *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002))); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, No. 02-MDL-1484, 2007 WL 4526593, at *13 (S.D.N.Y. Dec. 20 2007) ("[T]he trend in the Second Circuit has been to express the attorneys' fees as a percentage of the total settlement."); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483 (S.D.N.Y. 1998) (noting

that "the judicial tide appears to be turning in favor of the percentage method" for determining attorneys' fees); *Bragger v. Trinity Capital Enter. Corp.,* No. 92 Civ. 2124, 1993 WL 287626, at *4 (S.D.N.Y. July 23, 1993) ("[t]he percentage—as opposed to the lodestar—method of determining fees in class actions is increasingly accepted as preferable in the federal courts in general, and in this District in particular.").

The Second Circuit has also recognized a lodestar method for determining the fairness and reasonableness of the fees requested by counsel in a common fund case, whereby the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate," *Goldberger*, 209 F.3d at 47. However, since *Goldberger*, courts in this Circuit have come to recognize that the inefficiency and cumbersomeness associated with the lodestar method weigh in favor of the percentage of the fund approach as the more appropriate means of determining whether counsel's requested fees are fair and reasonable. *See e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (Gleeson, J.) (the percentage of the fund approach "spares the court and the parties the 'cumbersome, enervating, and often surrealistic process' of lodestar computation" (quoting *Goldberger*, 209 F.3d at 50)); *Breiterman v. Roper Corp.,* No. 88 Civ. 2138, 1990 WL 15535, at *3 (S.D.N.Y. Jan. 12, 1990) ("This Court favors the percentage approach, and agrees with critics of the lodestar method that lodestar awards promote inefficiency and impose unnecessary burdens on the court.'); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ("Courts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation.") .

Indeed, the *Sumitomo* Court recognized that:

> Support for the lodestar/multiplier approach in common fund cases has eroded, and there has been a 'ground swell of support for *mandating* a percentage-of-the-fund approach' in common fund cases.

*Id.,* quoting *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir. 1990) (emphasis original); *See also In re Presidential Life Sec.,* 857 F. Supp. 331, 334 (S.D.N.Y. 1994) ("Problems encountered in evaluation of fees utilizing the lodestar approach have led to rejection of that method in common fund cases and express approval of the percentage method as an acceptable alternative.") (citations omitted).

Not only have courts in the Second Circuit come to favor the percentage of the fund approach over the lodestar method, but, as the *Sumitomo* court pointed out, "[a]t least eight other circuits—the First, Third, Sixth, Seventh, Ninth, Tenth, Eleventh and District of Columbia Circuits—have affirmatively approved the percentage-of-recovery method as an appropriate method for determining attorneys' fees. *Sumitomo*, at 397.

Support for the percentage of the fund method over the lodestar approach reflects courts' understanding that the lodestar approach is less optimal for a number of reasons. *See NASDAQ,* 187 F.R.D. at 483 (noting that a judicial task force "found that [the lodestar method] unnecessarily tasked the judicial system, created an illusory sense of mathematical precision leading to disparate results, was easily manipulated by judges, and created disincentives to an early settlement.") (citing *Court Awarded Attorney Fees*: *Report of the Third Circuit Task Force*, 108 F.R.D. 237, 246-59 (1985)).  *See also Dubin v. The E.F. Hutton Group, Inc.,* 878 F. Supp. 616, 621 (S.D.N.Y. 1995) (recognizing that the lodestar method "focuses on the extent of counsel's work rather than on its effect on the beneficiaries" and does not provide an adequate incentive "to settle the case rather

than to litigate it fully in order to increase the lodestar."); *Sumitomo,* 74 F. Supp. 2d at 398 ("Nor, . . . is it just to make a fee depend solely on the reasonable amount of time expended."); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003) (recognizing that when the lodestar method is used, "using too many hours to achieve a given result is a problem with hourly billing.").

The percentage of the fund approach, conversely, has many benefits, including that it "tends to align the interests of the attorneys with those of the class [as it] is uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys." *Sumitomo,* at 397. Thus, it permits the court to "serv[e] as a proxy for the market" and make its fee decision align with "what a sophisticated fee-paying client would have agreed to pay (on a contingent basis) had [individual] negotiations been possible." *Id.,* citing *in re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). *See also In re Synthroid Mktg. Litig.*, 325 F.3d 974 (approving a fee award to class counsel of 22% of the settlement fund based on an analysis of what the fee percentage would have been if it was determined in the market).

In addition, "one of the benefits of using the percentage-based method for assessing an award of attorney's fees is that it relieves a court of the need to undertake a mind-numbing detailed review of time records and removes some of the incentive to pad those records." *In re WorldCom Inc. Sec. Litig.*, 2004 WL 2591402, at *21 (citing *Savoie v. Merchants Bank,* 166 F.3d 456, 461 n.4 (2d Cir.1999)). Indeed, "[t]he advantages of the percentage of the fund method over the lodestar method include ease of administration, permitting the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts' rather than collateral disputes over

billing [which] better respects the Supreme Court's admonition that '[a] request for attorney's fees should not result in a second major litigation." *NASDAQ*, 187 F.R.D. at 485 (internal citations omitted).

Accordingly, consistent with the favored approach of the Second Circuit, Judge Weinstein employed the percentage of the fund approach and conducted a lodestar cross-check in assessing whether the fees requested are fair and reasonable. *See* Weinstein Decl., ¶ 12, 14.

> **(b)    Under A Percentage of the Fund Analysis, the Requested Attorneys' Fees Are Fair and Reasonable.**

Using the percentage of the fund analysis, the fees requested by counsel are fair and reasonable. The reasonableness of a common fund fee award is governed by the following factors:

> (1) time and labor expended by counsel; (2) magnitude and complexities of litigation; (3) risk of the litigation; (4) quality of representation; (5) requested fee in relation to settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 43. The fees requested in this case are fair and reasonable based on all six factors.

> (i)      Counsel's Time and Labor

As detailed in the Joint Decl., Plaintiffs' counsel spent significant time in prosecuting this litigation through February 29, 2008, including arm's-length settlement negotiations that led to the Lufthansa Settlement Agreement; establishing and engaging in a mediation/arbitration procedure to allocate the Settlement Fund among groups of claimants; preparing an extensive program to provide notice to potential claimants from the Lufthansa Settlement Fund; preparing the Complaint; participating in a Rule 26(f) conference; initiating discovery; negotiating confidentiality and preservation stipulations;

briefing and arguing defendants' motions to stay discovery; briefing motions to dismiss; and appearing at court conferences.. Through February 29, 2008, Plaintiffs' counsel have spent 55,285.93 hours creating a lodestar of $24,884,914.26 and incurring expenses to date of $24,884,914.26. The lodestar exceeds the fee recommended by Judge Weinstein.

      (ii)      <u>Litigation's Complexities and Magnitude</u>

Courts have noted that antitrust class actions are "arguably the most complex action to prosecute. . . . [T]he legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (quoting *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329 (N.D. Ga. 2000); *see also Wal-Mart Stores*, 396 F.3d at 122 (affirming district court's fee because, *inter alia*, "antitrust cases, by their nature, are highly complex"); *In re Shopping Carts Antitrust Litig.*, MDL No. 451-CLBM-21-29, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) ("antitrust price fixing actions are generally complex, expensive and lengthy"). This case is no exception. In fact, given the number of defendants, the duration of the conspiracy and the global nature of the cartel at issue, and the myriad jurisdictional and regulatory issues that are implicated by the nature of the cartel, this case is far more complex even than most antitrust class actions.

The claims at issue in this case have been alleged against more than 30 international airfreight carriers alleged to have conspired for a period of approximately six years on a world-wide basis. Because the conspiracy involved the transportation of goods around the world, it implicated the competition laws of multiple countries and, therefore, presented complicated jurisdictional issues that had to be addressed by Plaintiffs' counsel both for purposes of reaching the Lufthansa settlement and for advancing the litigation as a whole. Indeed, one of the most hotly contested issues that

has arisen in this litigation thus far—whether the Court has jurisdiction over claims based on purchases abroad of shipments inbound to the United States, an issue that to date remains unresolved vis-à-vis the non-settling Defendants—was directly implicated by the Settlement and dealt with by Plaintiffs' counsel for purposes of achieving the Lufthansa Settlement Agreement.

In addition, because the airline industry is heavily regulated, issues regarding immunity of certain Defendants and the interplay of the regulations governing the industry and immunization of particular alliances with antitrust laws presented Settlement Class Counsel with even greater legal complexities that had to be addressed. Settlement Class Counsel was also required to marshal an understanding of economic considerations specific to the market for airfreight shipping services. Months of investigation and research went into Settlement Class Counsel's gaining an understanding of these complicated issues such that they could adequately determine an appropriate bargaining position and reach resolution with Lufthansa, file the Complaint, and anticipate and defend motions to dismiss. As such, Plaintiffs' counsel here are entitled to a fee award that accounts for their undertaking of tasks associated with the Settlement and the prosecution of the litigation that are "extraordinary in both complexity and scope." *In re Holocaust Victim Assets Litig.*, Nos. CV 06-0983, CV 96-4849, CV 97-0461, CV 99-5161, 2007 WL 805768, at *47 (E.D.N.Y. Mar. 15, 2007) (finding lead settlement counsel efforts satisfied second *Goldberger* factor where he dealt with unique and complicated issues while facilitating settlement).

    (iii)    <u>Litigation Risks</u>

Courts of this Circuit have recognized the risk of litigation to be "perhaps the foremost factor to be considered in determining" the award of appropriate attorneys' fees.

*In re Elan Sec. Litig.,* 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) (citation omitted).  "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger,* 209 F.3d at 55.

 While Plaintiffs' counsel believe that they could prevail at trial against Lufthansa with respect to the claims encompassed within the Settlement Agreement, at the time the cases consolidated in this action were filed, there were significant risks faced by counsel in pursuing the claims alleged.  Complex class action antitrust cases have inherent risks, including risks associated with class certification, proof of class-wide damages and, where the cartel at issue is global in scope, the ability to obtain evidence located on several continents in countries with varying discovery rules.  In addition, where, as here, the violation occurs internationally, complicated jurisdictional questions are implicated that are often not the subject of well-settled law.

 The most significant risks faced to date by counsel are those that were associated with taking the risk of settling with Lufthansa to provide to the class an early benefit while the issues that have proven most controversial in the litigation have yet to be resolved.  Indeed, the inclusion of claims resulting from inbound commerce to the United States and claims of indirect purchasers, both of which have been the subject of motions to dismiss that are still being litigated, was a significant risk taken in order to provide an early monetary benefit to the class and to obtain cooperation from Lufthansa necessary to further the litigation.

 In addition, the industry at issue in this litigation presents further inherent risks, as it is one known to be experiencing financial difficulties that may well affect the long-term viability of some the Defendants.  Indeed, six of the defendants were in bankruptcy

proceedings during some portion of the time during which the conspiracy is alleged to have occurred or have filed such proceedings since.  Joint Decl. ¶¶ 61, 63.  Where, as here, the pursuit of their claims have already taken and may continue to take years, Plaintiffs face additional financial risks associated with the investment of millions of dollars to pursue litigation against Defendants in an industry whose financial condition is potentially uncertain when, given the current state of the global economy, the continuing financial viability of any company cannot be taken for granted.

(iv)     Quality of Representation

"The 'quality of representation' factor is designed to reward 'particularly resourceful' legal work that 'secures a substantial benefit . . . with a minimum of time invested . . ..'"  *Fears v. Wilhelmina Model Agency, Inc.,* No. 02-CIV-4911, 2005 WL 1041134, at *8 (S.D.N.Y. May 5, 2005) (citing *In re Agent Orange Prod. Liab. Litig.,* 611 F. Supp. 1296, 1313 (E.D.N.Y. 1985)); *In re Ashanti Goldfields*, No. 00-CV-717, 2005 WL 3050284, at *4 (E.D.N.Y. Nov. 15, 2005).  Settlement Class Counsel are highly experienced practitioners in complex litigation generally and antitrust litigation in particular.  Only after vigorous, arms'-length negotiations was the Lufthansa Settlement Agreement reached.  After oral argument on the motions to dismiss, Magistrate Judge Pohorelsky commented, "I do want to just make the point that the advocacy has really been remarkable both on the papers and in the arguments today[.]  I really appreciate it.  It's been a pleasure to hear so many good litigators advocate their positions.  So thank you."  Joint Decl., ¶ 91.  Thus, counsel's competence, experience and willingness to pursue innovative issues were significant factors in obtaining the current settlement and pursuing this litigation.  *See, e.g., In re Global Crossing Sec. and ERISA Litig.*, 225

16

F.R.D. 436, 467 (S.D.N.Y. 2004) (noting the relationship between the quality of counsel and the recovery obtained in an analysis of the fourth *Goldberger* factor).

The Lufthansa Settlement was the product of a hard-fought, arm's length negotiation that lasted over a period of nearly a year, involving dozens of in-person meetings between counsel for Plaintiffs and Lufthansa.  In crafting the provisions of the agreement, the parties together worked through each paragraph to carefully invent and draft the language.  In preparation for such intense negotiations, Plaintiffs' counsel undertook a diligent and thorough investigation of the legal and factual issues posed by the litigation, including extensive research into the nature of the market for airfreight shipping services and analyses of the complicated jurisdictional issues attendant to a global conspiracy causing injury in multiple jurisdictions.  Plaintiffs' counsel's specialized expertise in foreign law issues and representation of large foreign purchaser clients allowed them to obtain a settlement for claims on behalf of both domestic and foreign purchasers of air cargo shipments, including those inbound to the United States over which there continues to be litigation with other defendants regarding the application of U.S. law.

The terms on which Plaintiffs' counsel spent significant time included innovative cooperation provisions that were the first of their kind in an early settlement with an amnesty applicant since the passage of the Antitrust Criminal Penalties Enhancement and Reform Act of 2004.  Recognizing the unique opportunities that early settlement with an amnesty applicant could present for obtaining useful cooperation that could facilitate the litigation against all remaining Defendants, Plaintiffs' counsel spent an extraordinary amount of time and effort in crafting a settlement with Lufthansa that maximized the

availability of cooperation for the benefit of the Class as a whole.  As a result of that time and labor investment, the early and comprehensive cooperation by Lufthansa in the form of depositions, interviews, documents, and attorney proffers related to cargo shipments within, to, or from the U.S. provided for in the Settlement Agreement have set the standard and served as a model for other settlement agreements that subsequently have been reached early in litigation with amnesty.

The quality of the representation, though, is best measured by the results achieved.  *Goldberger,* 209 F.3d at 55.  Here, the result achieved by Settlement Class Counsel is a thoughtfully conceived resolution of the Settlement Class' claims that maximizes its recovery and guarantees early, significant cooperation by Lufthansa in the prosecution of Plaintiffs' claims involving shipments within, to, or from the United States.  Not only did Settlement Class Counsel obtain significant monetary compensation for the settlement class, but they also obtained extensive, forward-leaning cooperation by Lufthansa that will provide evidence crucial to the prosecution of the claims of class members against the remaining Defendants.

Another indication of the quality of the result achieved is the fact that the class will receive compensation from the settlement expeditiously.  *In re Global Crossing*, 225 F.R.D. at 467.  Absent the Settlement Agreement, protracted litigation with Lufthansa, requiring large expenditures of time and money, would delay the class recovery indefinitely.  This is particularly true given the complicated legal issues that need be resolved in this case before resolution is likely and the extensive amounts of discovery that are likely to take place given the magnitude and duration of the conspiracy and the number of participants.  The possibility of the delay in recovery is evidenced by the fact

that, two full years after Settlement Class Counsel obtained the settlement with Lufthansa, none of the remaining Defendants in this action have yet resolved their liability, but rather have engaged Plaintiffs in litigation on various issues including the sufficiency of the complaint and the Court's jurisdiction over the claims that are still, to date, not finally resolved.  The fact that Settlement Class Counsel was able to obtain a resolution with Lufthansa without extensive litigation of those issues and despite the fact that, to date, the likely lengthy discovery stage has yet to commence, provides value to the Settlement Class otherwise unobtainable at this stage of the litigation and should be rewarded with the attorneys' fees recommended by the Settlement Master.  *See In re Holocaust Victim Assets Litig.*, 2007 WL 805768, at *48 (finding that the quality of counsel "warrants significant compensation.").

(v)      <u>Relationship Between the Requested Fees and the Settlement</u>

Counsel here request of the Court a fee equal to 25% of the total value of the recovery.  Courts in the Second Circuit often award fees in the 25% to 35% range in class actions, and have previously awarded fees equal to or exceeding 30% on numerous occasions.  *See, e.g., Gwozdsinnsky v. Sandler Assoc.,* 159 F.3d 1346 (2d Cir. 1998) (affirming an award of attorneys' fees equaling 25% of the common fund recovery); *In re Blech Sec. Litig.*, No. 94 Civ. 7696, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (awarding 30% of settlement fund); *Sumitomo*, 74 F. Supp. 2d 393 (awarding a fee equal to 27.5% of the recovery); *Adair v. Bristol Tech. Sys., Inc.*, No. 97 Civ. 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999) (awarding 33% of settlement fund); *Berchin v. Gen. Dynamics Corp.,* No. 93 Civ. 1325, 1996 WL 465752, at *2 (S.D.N.Y. Aug. 14, 1996) (awarding 33% of first $3,000,000); *Vladimir v. Deloitte & Touche, LLP,* No. 95 Civ. 10319 (S.D.N.Y. Sept. 18, 1998) (order granting final judgment and order of

19

dismissal w/prejudice) (awarding 33%); *In re Allstar Inns Sec. Litig.*, No. 88 Civ. 9282, 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) (awarding 35%).[3]   In fact, awards of up to 30% of the settlement have been called "eminently reasonable."  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992); *accord In re Gilat Satellite Networks, Ltd.,* No. 02-CIV-1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007) ("I am not concerned that a 30% fee would constitute a windfall for counsel.").  Accordingly, the Settlement Master's recommendation here of a fee of 25% is a reasonable percentage of the fund to award.

(vi)     Public Policy Considerations

Public policy concerns favor the award of reasonable attorneys' fees in antitrust class actions.  As the Second Circuit has noted, "[i]n the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced, since the claims of individual litigants, when taken separately, often hardly justify the expense of litigation." *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.* 481 F.2d 1045, 1050 (2d Cir. 1973); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02MDL1484, 2007 WL 313474, at *21 (S.D.N.Y. Feb. 1, 2007); *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Visa Check.,* 297 F. Supp. 2d at 524 ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."); *see also*

---

[3]     Awards of fees of more than 25% of settlements are common in other circuits.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (28% of settlement fund); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (30% of settlement fund); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197, MDL 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001).

*Manual for Complex Litigation, Fourth* § 14.121 (2004) (noting that sizable percentage fee awards are justified in part because they "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation").

Here, as described above, Plaintiffs' counsel have expended years of effort and advanced millions of dollars of their own funds in achieving the Lufthansa settlement and in furthering the litigation as a result of the cooperation provided for in that Settlement. A case requiring attorney time and expense of the magnitude that has been required here is a paradigmatic example where individual litigation would be nearly impossible. Without an adequate fee award incentivizing experienced counsel to undertake the risks and expense of a litigation of this size, this case almost certainly would not be brought and the thousands of victims of this cartel would remain uncompensated. Accordingly, an attorneys' fee award of 25% of the Settlement Fund is appropriate.

### 2. The Requested Fee is also Reasonable Under the Lodestar "Cross Check"

While, as set forth above, Plaintiffs believe that the Court should examine the reasonableness of the fee request based on a percentage of the fund analysis given the increasing dominance of that approach, Plaintiffs recognize that some courts using the percentage of the fund method still use the lodestar method "'as a 'cross check' on the reasonableness of the requested percentage.'" *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (quoting *Goldberger*, 209 F.3d at 49-50); *see also VisaCheck,* 297 F. Supp. 2d at 521 (recognizing use of the lodestar cross check). In the event that the Court does use lodestar as a "cross check," the lodestar incurred in this case from inception through February 29, 2008— justifies the attorneys' fee recommended by the settlement Master. Twenty-five percent of a Settlement Fund of approximately $90

million is about $22.5 million.  Thus, the recommended fee represents a deflator, not a multiplier.[4]

### 3.    The Expenses Requested are also Reasonable and Should Be Reimbursed.

As Judge Weinstein recommends, Plaintiffs respectfully request reimbursement of all litigation costs and expenses incurred to date in this litigation, which currently total $2,455,088.80. These expenses were reasonable and necessary in this litigation, and have been expended for the direct benefit of the Class.  "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."  *In re Arakis Energy Corp. Sec. Litig.,* No. 95 CV 3431, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001), *cited in Visa Check*, 297 F. Supp. 2d at 525; *see, e.g., Duffy v. Modern Concrete Corp.*, No. 07-CV-962, 2008 WL 822111, at *5 (E.D.N.Y. Mar. 25, 2008) (noting that courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients") (quoting *Reidman v. Bonsignore, Brignati & Massotta, P.C*, 818 F.2d 278, 283 (2d Cir. 1987)); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001) (granting expenses in a securities class action in a one sentence statement); *Wallace v. Fox,* 7 F. Supp. 2d 132, 142 (D. Conn. 1998) (granting costs summarily); *In re*

---

[4] The Second Circuit has found a multiplier as high as 3.5 on the hours billed to be deemed reasonable in analogous circumstances.  *See, e.g., Wal-Mart*, 396 F.3d at 123.  In fact, "'multipliers of between 3 and 4.5 have become common'" in the Second Circuit.  *NASDAQ,* 187 F.R.D. at 489 (awarding a multiplier of 3.97).  *See also In re WorldCom*, 2004 WL 2591402, at **17, 20 (approving 2.46 multiplier); *Visa Check*, 297 F. Supp. 2d at 524 (awarding 3.5 multiplier); *Sumitomo*, 74 F. Supp. 2d at 399 (finding that a multiple of 2.5 "would be reasonable"); *Roberts v. Texaco,* 979 F. Supp. 185, 185 (S.D.N.Y. 1997) (awarding 5.5 multiplier); *In re RJR Nabisco, Inc. Sec. Litig.,* No. MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992 (awarding a percentage-based fee representing 6 times lodestar).  The recommended attorneys' fee as a deflator is well under the range of lodestar multiples deemed to be fair and reasonable in this Circuit.

*Fine Host Corp. Sec. Litig.,* No. MDL 1241, 3:97-CV-2619, 2000 WL 33116538, at *6 (D. Conn. Nov. 8, 2000) (same).

## IV.   CONCLUSION

For the reasons set forth herein, the attorneys' fees and expenses recommended to be paid by the Settlement Master are fair and reasonable.  All six *Goldberger* factors weigh in favor of approving the fees, particularly in light of the novel and complicated nature of this action and the outstanding result obtained by Settlement Class Counsel on behalf of the Settlement Class.  Plaintiffs therefore respectfully request that the Court approve the recommendation of Judge Weinstein and grant Plaintiffs' application for attorneys' fees of 25% of the Lufthansa Settlement Fund and reimbursement of expenses of $2,455,088.80.


Dated:   November 12, 2008                    Respectfully Submitted,


___/s/ *Michael D. Hausfeld*_____          ___/s/ *Hollis Salzman*_____

Michael D. Hausfeld                              Hollis Salzman (HS-5994)
Charles E. Tompkins (CT-1438)                    Gregory Asciolla (GA-2222)
Andrea L. Hertzfeld                              Labaton Sucharow LLP
Hausfeld, LLP                                    140 Broadway
1146 19th Street NW                              New York, NY 10005
5th Floor                                        *Co-Lead Counsel*
Washington, D.C. 20036
*Co-Lead Counsel and Counsel Principally*
*Responsible for Foreign Claims*[5]

---

[5]   Michael D. Hausfeld was personally appointed Co-Lead Counsel by the Court while at his prior firm, Cohen, Milstein, Hausfeld & Toll, PLLC ("CMHT").  Each of the attorneys with primary responsibility for litigating this case, including Mr. Hausfeld, are now at Hausfeld LLP.  A Notice of Change Affiliation and Motion to Amend the Court's November 15, 2006 Decision and Order and Pretrial Orders No. 3 and 4 to reflect this change of firm affiliation is currently pending before the Court.  All representative plaintiffs that had retained Michael Hausfeld in this matter, including Volvo, H&M, Geodis Wilson (formerly TNT), KappAhl, AB Lindex, Association des Utilisateurs du Transport de Fret ("AUTF"), IKEA and Olarte, have been apprised of this change of firm affiliation, have been given the choice of being represented by Michael Hausfeld or by CMT, and support Michael Hausfeld's continuing

23

__/s/ Howard J. Sedran_____

Howard J. Sedran
Austin Cohen
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
*Co-Lead Counsel*

___/s/ Robert N. Kaplan_____

Robert N. Kaplan (RK-3100)
Gregory Arenson (GA-2426)
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022

Gary L. Specks
Kaplan, Fox & Kilsheimer LLP
1655 Lake Circle Road
Suite 139
Highland Park, IL 26003
*Co-Lead Counsel*

___/s/ W. Joseph Bruckner_____

W. Joseph Bruckner
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
*U.S. Indirect Purchaser Counsel*

___/s/ Craig Cortbitt_____

Craig Corbitt
 Zelle, Hofmann, Voelbel, Mason & Gette
44 Montgomery Street
Suite 3400
San Francisco, CA 94104
*U.S. Indirect Purchaser Counsel*

___/s/ Steven N. Williams_____

Steven N. Williams (SW-6918)
Cotchett, Pitre & McCarthy
840 Malcolm Road, Suite 200
Burlingame, CA 94010
*U.S. Indirect Purchaser Counsel*

___/s/ Christopher Lovell_____

Christopher Lovell (CL-2595)
Lovell Stewart Halebian LLP
500 Fifth Avenue, Suite 58
New York, NY 10110
*U.S. Indirect Purchaser Counsel*

in his Court appointed positions.   Nevertheless, Hausfeld LLP has agreed with the other Co-Lead Counsel
to allow Cohen, Milstein, Sellers and Toll to be placed on the signature block pending entry of an order on
Hausfeld LLP's Motion so that these papers can be timely filed.