UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | 06-MD-1775 (JG) (VVP) |

_____

**DECLARATION OF DANIEL H. WEINSTEIN IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

_____

I, DANIEL H. WEINSTEIN, declare as follows:

## I.     INTRODUCTION AND BACKGROUND

1.     I am a retired Judge from the San Francisco Superior court (1982-1988). My current practice involves mediating complex civil disputes with JAMS, primarily in San Francisco, Los Angeles, and New York. A summary of my background is attached hereto as Exhibit A. During my tenure as a mediator, I have been involved in the settlement of numerous cases. I am submitting this Declaration regarding my involvement as the mediator and, with the consent of counsel representing the various groups of Plaintiffs in this action, arbitrator in my role as Settlement Master under Rule 53 of the Federal Rules of Civil Procedure for the purposes of recommending to the Court an allocation of the Settlement Fund under the Lufthansa Settlement Agreement

among the claimants thereto and an allocation from the Settlement Fund of attorneys' fees, expenses and costs. The information contained herein is based on my own personal knowledge, and I could competently testify to the matters set forth herein. I stand ready to provide whatever information or assistance this Court may need in evaluating any aspect of the recommendations I have made in this action, including my recommendation herein regarding interim payment of attorneys' fees and reimbursement of expenses.

2. I have been retained as a mediator and arbitrator to fulfill three roles in this action relevant to the distribution of the Lufthansa Settlement Fund.

(a) First, I was retained by Settlement Class Counsel to attempt to mediate, and if necessary arbitrate, an appropriate allocation of the Lufthansa Settlement Fund among the various groups of purchasers (domestic direct and indirect and foreign direct and indirect) in the Settlement Class. This process, which is set forth in detail in prior submissions to the Court, involved a series of presentations by counsel and mediation efforts among counsel representing the various interests, after which I reviewed all of the applicable evidence and legal argument submitted to me and made a recommendation to this Court regarding the proper allocation of the Settlement Fund among the various groups of purchasers.

(b) Second, I was retained by Settlement Class Counsel to review the terms of the Lufthansa Settlement and the circumstances and history of its negotiation, as well as the work done and expenses incurred by counsel through February 2008 and to then make a recommendation to this Court regarding the amount of the attorneys' fees and expenses that this Court should award from the Lufthansa Settlement Fund. This Court confirmed my authority as Settlement Master to make such a recommendation in

its Memorandum dated January 18, 2008. This Declaration addresses this aspect of my assignment.

(c) Third, once the Court has determined a proper attorneys' fee award, I have been retained by Settlement Class Counsel to mediate and, if necessary, conduct a binding arbitration to determine the proper allocation of any fee awarded by this Court among Plaintiffs' Counsel. I intend to complete this assignment after the Court has determined an appropriate aggregate award of attorneys' fees to be awarded to Plaintiffs' Counsel.

3. This Declaration sets forth my recommendation to the Court regarding the amount of attorneys' fees to be awarded. Before making this recommendation, I have reviewed confidential written submissions from the various Settlement Class Counsel regarding the proper amount of attorneys' fees that should be awarded, and have heard lengthy and detailed oral argument from Settlement Class Counsel regarding the proper amount of fees. These written and oral submissions included detailed discussions of the work completed by each counsel, as well as descriptions of the purported value of the work performed. I have received submissions, both oral and written, concerning the ingenuity, risk, value, and quality of the work performed by the various counsel. I also have spoken with counsel for Lufthansa regarding the value to the class of the Lufthansa Settlement, and the role of various Settlement Class Counsel in obtaining the Settlement. In addition, through an independent expert I retained for this assignment, I have received reports from counsel regarding the amount of time and expenses expended by them on work performed for the benefit of the class. Finally, I have reviewed some of the relevant case law in the Second Circuit and across the country, including prior decisions of this

Court, regarding an appropriate amount of attorneys' fees to be awarded in cases similar to this one.

4. Based on all of the information I have reviewed and my review of the applicable case law, it is my recommendation that the Court award an attorneys' fee of 25% of the Lufthansa Settlement Fund, and reimbursement of $2,455,088.80 in expenses incurred in the prosecution of this action. I am aware that Settlement Class Counsel included in the notice sent to Class Members a statement that they would seek "up to" 30% of the fund as attorneys' fees. My review of the information submitted to me and the applicable case law indicate that at this juncture a 25% award is fair and reasonable under all of the circumstances. Settlement Class Counsel have endorsed this recommendation, and it is my understanding that they are requesting an award of 25% of the Lufthansa Settlement Fund plus a reimbursement of $2,455,088.80 in expenses.

5. The reasons for my recommendation, both legal and factual, are set forth in greater detail below.

## **OVERVIEW OF APPLICABLE LEGAL AUTHORITY REGARDING THE AWARD OF ATTORNEYS' FEES**

6. I begin with the premise that by creating the Lufthansa Settlement Fund at the outset of this action and extracting from Lufthansa the extremely detailed and forward-leaning cooperation it has provided, Settlement Class Counsel in this action have created a substantial benefit for the class that justifies an award of attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

7. The Second Circuit favors an application of the percentage of the fund approach to determine whether an attorneys' fee award in a common fund case is fair and

reasonable. *See e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting the Court's trend toward a percentage of the fund approach in determining attorneys' fee awards in common fund cases.); *Sheppard v. Consol. Edison Co. of N.Y.*, No. 94-CV-0403 (JG), 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) ("[t]he trend . . . in the Second Circuit appears to be the utilization of the percentage method" (quoting *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, 96 Civ. 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)). *See also In re Merrill Lynch & Co. Inc. Research Reports Secs. Litig.*, No. 02-MDL-1484, 2007 WL 4526593, at *13 (S.D.N.Y. Dec. 20, 2007) ("[T]he trend in the Second Circuit has been to express the attorneys' fees as a percentage of the total settlement."). The percentage of the fund approach is in accord with the weight of authority across the country. *See In re Sumitomo Copper Litigation,* 74 F.Supp.2d 393, 398 (S.D.N.Y. 1999). ("at least eight other circuits—the First, Third, Sixth, Seventh, Ninth, Tenth, Eleventh and District of Columbia Circuits—have affirmatively approved the percentage-of-recovery method as an appropriate method for determining attorneys' fees.")

8.     The percentage of the fund method requires the Court to "set some percentage of the recovery as a fee." *Wal-Mart Stores, Inc.*, 396 F.3d at 121.

9.     The Second Circuit's acceptance of the percentage of the fund approach reflects several problems potentially associated with using lodestar as the primary mechanism for awarding attorneys' fees. First, it "spares the court and the parties the 'cumbersome, enervating, and often surrealistic process' of lodestar computation." *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (Gleeson, J.) (quoting *Goldberger*, 209 F.3d at 50)  *See In re WorldCom*, 2004 WL

2591402, at *21 (citing *Savoie v. Merchants Bank,* 166 F.3d 456, 461 n. 4 (2d Cir.1999)) ("[O]ne of the benefits of using the percentage-based method for assessing an award of attorney's fees is that it relieves a court of the need to undertake a mind-numbing detailed review of time records and removes some of the incentive to pad those records."). *See also In re NASDAQ Market-Makers Antitrust Litigation,* 187 F.R.D. 465, 483 (S.D.N.Y. 1998) (noting that a judicial task force "found that [the lodestar method] unnecessarily tasked the judicial system, created an illusory sense of mathematical precision leading to disparate results, was easily manipulated by judges, and created disincentives to an early settlement.") (citing *Court Awarded Attorney Fees*: *Report of the Third Circuit Task Force*, 108 F.R.D. 237, 246-59 (1985)).

10. Second, use of the lodestar method may, in some instances, reward counsel for simply performing a large number of tasks rather than performing them in an efficient manner that redounds to the greatest benefit of the class. *See In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. at 483. *See also Dubin, et al. v. The E.F. Hutton Group, Inc.,* 878 F.Supp.616, 621 (S.D.N.Y. 1995) (recognizing that the lodestar method "focuses on the extent of counsel's work rather than on its effect on the beneficiaries" and does not provide an adequate incentive "to settle the case rather than to litigate it fully in order to increase the lodestar."); *Sumitomo,* 74 F.Supp.2d at 398 ("it is not "just to make a fee depend solely on the reasonable amount of time expended.").

11. The percentage of the fund approach, on the other hand, "tends to align the interests of the attorneys with those of the class [as it] is uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys." *Sumitomo.* at 397. Thus, it permits the court to "serv[e] as a proxy for the

market" and make its fee decision align with "what a sophisticated fee-paying client would have agreed to pay (on a contingent basis) had [individual] negotiations been possible." *Id.,* citing *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992).

12. I have determined that the percentage of the fund approach is especially appropriate in this case for several of the reasons set forth in the cases above. For example, the widespread publicity surrounding the commencement of investigations into potential anticompetitive activity in the air freight shipping industry led to the filing of well over a hundred complaints by entities represented by scores of lawyers across the country. As a result, counsel in this action submitted literally hundreds of pages of records in response to my request that counsel submit their summary time records to my independent expert. These records presumably are supported by thousands of pages of detailed daily time reports created by each firm. The administrative difficulty and burden on the Court associated with an exhaustive (or even cursory) review of the individual time records submitted by all of these law firms in this action counsels against the use of lodestar as a primary method of awarding a fee in this action.[1] In contrast, as set forth above, use of the percentage of the fund approach aligns the incentives of counsel and the class, mimics the market for contingency legal services, and avoids the burden of a detailed review of thousands of pages of time records.

13. Further support for the use of the percentage of the fund approach is provided by the opinions of the class representatives in this action, which include large

---

[1] Through my expert, we have conducted a review of the time records submitted by counsel, and a further review of those time records is anticipated as an aspect of my third assignment in this action, *i.e.*, the allocation of any awarded attorneys' fees among the various counsel in this action. This allocation will be based on a variety of factors agreed upon by counsel, including the actual benefit to the class of the various tasks performed by the various counsel, as well as the efficiency with which those tasks were performed.

multinational corporations that are sophisticated purchasers of legal services. These entities, which include Geodis Wilson (one of the largest freight forwarding companies in the world), Volvo and IKEA, all have indicated that they have agreed with their counsel, Michael D. Hausfeld, that a percentage of the fund approach is appropriate compensation for the work their counsel have been providing on a contingency basis in this action, and that a 25% fee is reasonable based on their oversight of the legal work performed to date.

14. Although I have concluded that the percentage of the fund approach is appropriate in a case of this nature, I also have, based on the time submissions provided to me by counsel, conducted a "lodestar cross check" that is sometimes performed by this Court and others in this Circuit. As set forth in detail below, the lodestar cross check provides additional support for the conclusion that an attorneys' fee of 25% is fair and reasonable under the circumstances.

**THE LUFTHANSA SETTLEMENT**

15. In this case, my review of the Lufthansa Settlement and the materials submitted regarding the Settlement have demonstrated to me that the Settlement is a truly groundbreaking achievement that addresses many novel and uncertain issues in an ingenious fashion and that provides significant compensation to the members of the settlement class, both in terms of the money obtained for the class and the substantial cooperation by Lufthansa to advance the litigation as a whole against the remaining Defendants. Moreover, the timing of the Settlement, which enabled the class to obtain the benefits of Lufthansa's cooperation at an early stage in the litigation, was a game-changing development in the litigation that provided significant value to the class and

should be rewarded.  As a result, it is my opinion that a percentage award on the higher end of those approved by Courts in cases such as this one is appropriate.

### **APPLICATION OF THE GOLDBERGER FACTORS TO THE LUFTHANSA SETTLEMENT**

16. The reasonableness of a common fund fee award in this Circuit is governed by the following factors:

> (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy.

*Goldberger*, 209 F.3d at 121.  In this case, it is my recommendation that an award of 25% of the fund as attorneys' fees is amply supported by all six factors.  I have reviewed Plaintiffs' memorandum of law in support of the request for attorneys' fees and expenses in this action, including their analysis of the *Goldberger* factors.  I agree with their analysis and adopt it as if set forth here.  Below I simply highlight some aspects of the analysis and discuss the factors that have led me to reach this conclusion.

<u>Counsel's Time and Labor</u>

17. My review of the history and facts of this case demonstrates that this factor strongly supports the requested 25% fee award.  Plaintiffs' counsel have worked extremely diligently on this litigation, both in crafting a favorable settlement that addressed a variety of complicated jurisdictional and foreign-law issues attendant to a global conspiracy causing injury in multiple jurisdictions, and in subsequent, hard fought litigation against some of the most experienced and prominent antitrust defense counsel in the world over issues large and small.  This time and labor by counsel for Plaintiffs has and will continue to inure to the benefit of the class in the prosecution of its claims against the remaining Defendants.

Litigation's Complexities and Magnitude

18. In my view this factor strongly supports the requested 25% fee. As Plaintiffs discuss in detail, courts have noted that antitrust class actions are "arguably the most complex action to prosecute. . . . [T]he legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (quoting *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329 (N.D. Ga. 2000). After my extensive review of the history of this litigation, it is my settled view that this case is no exception. In fact, given the number of defendants, the duration of the conspiracy and the global nature of the cartel at issue, this case is far more complex than even most antitrust class actions. This factor thus strongly supports the 25% requested fee.

Litigation Risks

19. Although the publicly-available information makes it obvious that the core allegation of this action that there long has been a global conspiracy in the airfreight shipping services industry is correct, there remain significant risks attendant in the pursuit of this litigation. Many of these risks have been amply demonstrated by the Defendants' motions to dismiss, about which Magistrate Judge Pohorelsky on September 26, 2008, issued a Report and Recommendation recommending dismissal of several aspects of the claims asserted. The Lufthansa settlement includes payments for foreign purchases of inbound cargo to the United States, which the Defendants have vigorously contested are outside the Court's jurisdiction, and includes payment for the claims of domestic and foreign indirect purchasers, which Magistrate Pohorelsky recommended be dismissed.[2]

---

[2] I have not studied and express no opinion as to whether the Magistrate Judge's recommendations are correct.

Settlement Class Counsel thus obtained relief from Lufthansa for several groups of purchasers whose claims have been challenged by the Defendants, against two of which Defendants have been successful. This demonstrates risks, which must be measured at the time that the settlement was entered into, well before the Magistrate's Report and Recommendation on the motions to dismiss, that were mitigated by the Lufthansa Settlement, as well as the prescience of counsel in reaching an early settlement before litigation of the motions to dismiss.

20. Nor are these the only risks Plaintiffs will face. I have extensively reviewed various damages models in this case during the course of my oversight of the allocation process, and, while it is my strong view the conspiracy caused significant damages, it is clear that the quantum of damages will be a hotly litigated issue that creates risk. In addition, although I have not studied the issue and cannot opine upon it, my expectation is that class certification in this case also will be contested. Of course, there are also substantial risks attendant in any complex litigation with experienced counsel on both sides. The risk thus amply justifies a 25% fee award.

Quality of Representation.

21. Both my extensive involvement in this action and my review of the history of this case prior to my involvement, including my interviews with Plaintiffs' and Lufthansa's counsel, have thoroughly convinced me that the outstanding quality of representation provided during the negotiation of the Lufthansa Settlement and the conduct of this litigation justifies an award at this time of at least 25% of the Lufthansa Settlement to Plaintiffs' Counsel. It is clear that the litigation has been hard fought from its inception. The Defendants have elected to litigate a variety of issues, from a variety of

discovery disputes to multiple and complex motions to dismiss brought on a variety of grounds. Magistrate Judge Pohorelsky already has noted the high quality of representation on both sides, and I wholly agree with his assessment. The quality of representation thus amply justifies a fee award of 25%.

### Relationship Between the Requested Fees and the Settlement

22. The fifth *Goldberger* factor also supports the settlement. As Plaintiffs set forth at length in their filing, 25% is well within a percentages routinely awarded by Courts in the Circuit. As set forth by Plaintiffs in their memorandum of law, there are many comparable cases where the attorneys' fee awarded by the Court as a percentage of the fund exceeded 25%.

### Public Policy Considerations

23. As Plaintiffs' Counsel discuss, public policy concerns favor the award of reasonable attorneys' fees in antitrust class actions. This case represents a paradigmatic case where an award of substantial attorneys' fees is appropriate. The cartel behavior in this case represents a violation of core principles of antitrust law and significantly damaged the world economy and the members of the class. Indeed, there have been guilty pleas by nine Defendants admitting their participation in the cartel. Public policy thus strongly supports the pursuit of this litigation. Nevertheless, Plaintiffs' Counsel's pursuit of a remedy for the class already is proving extraordinarily time consuming and expensive, and almost certainly will continue to require enormous expenditures -- made on a contingency basis -- given the size of this litigation and the resources available to defendants in this action. An interim award of 25% is thus necessary to provide counsel an appropriate incentive to pursue a case of this size and complexity.

### The Requested Fee is also Reasonable Under the Lodestar "Cross Check"

24. The fees requested here are reasonable when checked against counsel's submitted lodestar. Indeed, the lodestar cross check indicates that, based just on the amount of total lodestar submitted, counsel in this case are requesting far *less* in fees than is typically awarded by courts in this Circuit for cases of this significance, complexity, and risk.

25. The Second Circuit has found a multiplier as high as 3.5, meaning that the attorneys' fees awarded equal approximately 3.5 times the amount the attorneys would receive based strictly on billable hours, to be deemed reasonable in analogous circumstances. *See Wal-Mart*, 396 F.3d at 123. In fact, "multipliers of between 3 and 4.5 have become common" in the Second Circuit. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (internal quotation omitted) (awarding a multiplier of 3.97); *see also Visa Check*, 297 F. Supp. 2d at 524 (awarding a 3.5 multiplier); *Roberts v. Texaco,* 979 F. Supp. 185 (1997) (awarding 5.5 multiplier); *In re RJR Nabisco, Inc. Secs. Litigation,* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984 (S.D.N.Y.1992) (awarding a percentage-based fee representing 6 times lodestar).

26. In this case, if the Court awards 25% of the settlement as attorneys' fees, as I have recommended, the award would be less than Plaintiffs' Counsel's submitted lodestar of more than $24 million that had been generated through February 2008, resulting in a deflator. This is well under the range of lodestar multipliers which have been awarded in some cases in this Circuit. Even if the lodestar were discounted 5% - 10%, as sometimes occurs, the lodestar as a cross-check would still amply justify a 25% fee.

### The Expenses Requested are also Reasonable.

27.     Plaintiffs' counsel have submitted their expenses to an independent expert retained by me to evaluate the attorneys' fee and expense request by counsel in this action.  After review of the expenses, it is my opinion that they are reasonable. Plaintiffs' counsel have incurred significant expert witness expenses associated with the economic analyses required for the Lufthansa Settlement negotiations, as well as reasonable expenses incurred in the process of the allocation of the settlement, which was conducted with the highest levels of advocacy on all sides.  In addition, there have been significant costs associated with factual investigations and compliance with the rules regarding retention of electronically stored information, including significant travel costs that are to be expected in an action of international scope such as this one.  It is my opinion that these costs should be reimbursed at this time.

I declare under penalty of perjury that the foregoing is true and correct.

The Hon. Daniel H. Weinstein (ret.) [3]

Executed this 12th day of November, 2008 at San Francisco, California.

---

[3] See attached Exhibit B, which will temporarily substitute as Judge Weinstein's signature.