**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:  AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775 | 06-MD-1775 (JG)(VVP) |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF SETTLEMENT WITH LUFTHANSA**

Dated:  November 12, 2008

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (i)

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Proceedings and Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   The Settlement Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        *1.*   *The Settlement Fund* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        *2.*   *The Cooperation Provisions* . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        *3.*   *Allocation of the Settlement Fund* . . . . . . . . . . . . . . . . . . . . . 11

        *4.*   *Other Provisions Benefiting the Settlement Class* . . . . . . . . . . . . . . 11

        *5.*   *The Release* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.  **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.   The Settlement Is "Fair, Reasonable and
        Adequate" and Should Be Approved . . . . . . . . . . . . . . . . . . . . . . . . . 13

        *1.*   *The Settlement Is Procedurally Fair* . . . . . . . . . . . . . . . . . . . . 15

        *2.*   *The Settlement Is Substantively Fair* . . . . . . . . . . . . . . . . . . . . 19

            *a.*   *Complexity, Expense and Likely Duration of the Litigation*
                *(Grinnell Factor 1)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            *b.*   *Reaction of the Class to the Settlement*
                *(Grinnell Factor 2)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

            *c.*   *Stage of the Proceedings and Amount of Discovery Completed*
                *(Grinnell Factor 3)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

            *d.*   *The Risks of Establishing Liability, Damages, and in*
                *Maintaining the Class Action through the Trial*
                *(Grinnell Factors 4, 5 & 6)* . . . . . . . . . . . . . . . . . . . . . . 22

            *e.*   *The Ability to Withstand A Greater Judgment*
                *(Grinnell Factor 7)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    *f.* **The Range of Reasonableness In Light of the Risks of Litigation (Grinnell Factors 8 & 9)** ...................... 25

 **B.** **The Settlement Class Should be Certified as Final Pursuant to Rule 23** ......................................... 27

   *1.* ***The Settlement Class Meets the Requirements of Rule 23(a)*** ....... 28

    *a.* **The Settlement Class Is So Numerous That it Is Impracticable to Bring All Class Members Before the Court** ......................................... 28

    *b.* **Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.** ............................... 29

    *c.* **Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.** ...................... 31

    *d.* **Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.** ......................................... 32

   *2.* ***The Settlement Class Meets the Requirements of Rule 23(b)(3).*** ..... 33

    *a.* **Common Questions of Law and Fact Predominate.** ........ 34

    *b.* **A Class Action Is the Superior Method to Adjudicate These Claims.** ...................................... 35

 **C.** **The Class Notice Satisfies Due Process** ........................... 36

**III.** **CONCLUSION** ...................................................... 39

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007) . . . . . . . . . . . . . . . . . 36

*Antibiotic Antitrust Actions*, 410 F. Supp. 659 667 (D. Minn. 1974) . . . . . . . . . . . . . . . . . . . . . 16

*Bano v. Union Carbide Corp*, 273 F.3d 120 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Barone v. Safeway Steel Prods., Inc.*, No. CV-03-4258, 2005 WL 2009882
    (E.D.N.Y. Aug. 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Blank v. Talley Indus., Inc.*, 64 F.R.D. 125 132 (S.D.N.Y. 1974) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345 354 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . 14

*Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209 212 (S.D.N.Y. 1992) . . . . . . . . . . . 16

*Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y.*,
    198 F.R.D. 41 46 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d
    935 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Denny v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*D'Alauro v. GC Servs. Ltd. Partnership*, 168 F.R.D. 451 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . 29

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . 26

*Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) . . . . . . . . . . . . . . 26

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**(i)**

*Gross v. Washington Mut. Bank*, F.A., 02 CV 4135, 2006 WL 318814
    (E.D.N.Y. Feb. 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Alcoholic Beverages Litig.*, 95 F.R.D. 321 (E.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . 31, 35

*In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004
    WL 1068807 (E.D. Pa. May 11, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Baldwin United Corp.*, 105 F.R.D. 475 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Buspirone Patent Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Chicken Antitrust Litig.*, 669 F.2d 228 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex.
    June 4, 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 33

*In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117 (S.D. Tex. 1982) . . . . . . . . . . . 25

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) . . . . . . . . . . . . . . . . 32

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2001 WL 709262 (S.D.N.Y. 2001) . . . . . . 16

*In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004) . . . . . . . . . passim

*In re Independent Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476 (S.D.N.Y. 2002) . . . . . . . 28

*In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996) . . . . . . . . . . . . . . 31

*In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473 (E.D.N.Y. 1995) . . . . . . . . . . . . . . 16

*In re Linerboard Antitrust Litig.*, 2004 WL 870685 (E.D. Pa. April 21, 2004) . . . . . . . . . . . . . 26

*In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . 19

*In re MetLife Demutualization Litig.*, 229 F.R.D. 369 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . 32

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) . . . . . . . . . . . . . 26

*In re Minolta Camera Prods. Antitrust Litig.*, 668 F. Supp. 456 (D. Md. 1987) . . . . . . . . . . . . 16

*In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329 (N.D. Ga. 2000) . . . . . . 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) . . . . . . . . 30, 31

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) . . . . . 15, 23, 24

*In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297 (E.D.N.Y. 2006) . . . . . . . . . . . 35

*In re Paine Webber Partnerships Litig.*, 171 F.R.D. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    No. 05-MD-1720, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) . . . . . . . . . . . . . . . . . . . . 39

*In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . passim

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d
    283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Salomon Inc. Sec. Litig.*, 91 Civ. 5442, 1994 WL 265917 (S.D.N.Y. June 16, 1994) . . . . 16

*In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983
    WL 1950 (S.D.N.Y. Nov. 18, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480 (E.D.N.Y. 2002) . . . . . . . . . . . . . 16

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . 16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . 33

*International Murex Techs Corp. Secs Litig.*, No. 93 CV 336(JG), 1996
    WL 1088899 (E.D.N.Y. Dec. 4, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kapps v. Wing*, 283 F. Supp. 2d 866 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . 33

*Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*,
    938 F. Supp. 1131 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**(iii)**

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) . . . . . . 28, 29

*Robertson v. Nat'l Basketball Ass'n*, 72 F.R.D. 64 (S.D.N.Y. 1976) . . . . . . . . . . . . . . . . . . . . . . 22

*Ross v. A.H. Robins Co., Inc.*, 700 F. Supp. 682 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . 16

*Snapp v. The Topps Co., Inc.*, No. 93-CV-0347, 1997
    WL 1068687 (E.D.N.Y. Feb. 12, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Soberal-Perez v. Heckler*, 717 F.2d 36 (2d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Teachers' Retirement Sys. of La. v. A.C.L.N., Ltd.*, No. 011-CV-11814, 2004
    WL 1087261 (S.D.N.Y. May 14, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States Football League v. National Football League*, 644 F. Supp.
    1040 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 CV 8698, 2005 WL 106895
    (S.D.N.Y. Jan. 19, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Visa Check/Master Money Antitrust Litig.*, 297 F. Supp. 2d 503
    (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) . . . . . . . . . . . . . . . passim

*Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . 29

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713 (E.D.N.Y. 1989) . . . . . . . . . . . . . . . . . 19

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub.L. No. 108-237,
    tit. II, § 201 *et. seq.*, at § 213(a) & (b), 118 Stat. 661 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Class Action Fairness Act of 2005, 28 U.S.C. §1711, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . 37

## FEDERAL RULES

Federal Rule of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## I.   INTRODUCTION

### A.   Proceedings and Background

After nearly a year's worth of hard fought, arm's-length negotiations by highly experienced, capable counsel, Defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (collectively, "Lufthansa") and Plaintiffs (together, "the Settling Parties") executed a "Settlement Agreement" resolving the claims of a Settlement Class of plaintiffs who purchased airfreight cargo shipping services for shipments within, to, or from the United States ("Airfreight Shipping Services").[1]  The Settlement Agreement reached between the Settling Parties secures for the Settlement Class an $85 million cash payment, which was paid by Lufthansa into an interest-bearing escrow account on September 11, 2006, and has grown to over $90 million since then, as well as substantial cooperation terms that are extremely beneficial to the Settlement Class.

Cohen, Milstein, Hausfeld, & Toll, PLLC[2] ("CMHT"), on behalf of Plaintiffs and the Settlement Class, and Lufthansa initially executed the Settlement Agreement on September 11, 2006, after over five months of intense negotiations.  On December 4, 2006, Magistrate Judge Pohorelsky appointed as "Co-Lead Counsel" Michael Hausfeld, from CMHT[3], as well as Robert Kaplan from Kaplan Fox & Kilsheimer LLP; Howard Sedran from Levin, Fishbein, Sedran &

---

[1]      The Settlement Agreement consists of the written agreement executed on September 11, 2006 along with amendments dated October 6, 2006, January 4, 2007, February 22, 2007, and April 27, 2007.  The Settlement Agreement was submitted to the Court as Exhibit 2 to the Declaration of Andrea L. Hertzfeld, dated July 13, 2007 (the "Hertzfeld Declaration")(Docket No. 493).

[2]      Now Cohen, Milstein, Sellers & Toll, PLLC.

[3]      Mr. Hausfeld has recently separated from CMHT.  Together with the lawyers at the firm handling this litigation on a day-to-day basis, Mr. Hausfeld, who was appointed Co-Lead Counsel, has moved to a new firm, Hausfeld, LLP.  Hausfeld LLP has, accordingly, filed a notice of change of firm affiliation advising the Court of the change.

Berman; and Barbara Hart from what is now Labaton Sucharow LLP.[3]  Following review of the

Settlement Agreement by the three additional Co-Lead Counsel, a proffer from Lufthansa,

meetings with Lufthansa's counsel, and a review of the economic analyses conducted by the

Settling Parties' experts, the new Co-Lead Counsel signed the Settlement Agreement on behalf

of the direct purchaser class on January 4, 2007, with certain amendments.

On February 8, 2007, a motion was filed seeking to appoint four additional "U.S. Indirect

Purchaser Counsel" to represent the interests of indirect purchasers – W. Joseph Bruckner, from

Lockridge Grindal Nauen P.L.L.P.; Michael Lehmann from Furth Lehmann & Grant LLP;[4]

Christopher Lovell from Lovell Stewart Halebian LLP; and Steven N. Williams from Cotchett,

Pitre & McCarthy.  That Motion was granted in Practice and Procedure Order Number 4, dated

March 6, 2007.

On February 22, 2007, after conducting their own investigation of the legal and factual

basis of the Settlement Agreement, the four U.S. Indirect Purchaser Counsel agreed to the terms

negotiated by the Settling Parties, and added their signatures to the Settlement Agreement.  Thus,

each counsel appointed by the Court to represent the various elements of the putative plaintiff

---

[3]     On May 13, 2008, Magistrate Judge Pohorelsky approved the substitution of Hollis Salzman for Ms. Hart.

[4]     Mr. Lehmann subsequently left The Furth Firm and on August 20, 2007, Magistrate Judge Pohorelsky approved the substitution of Henry Cirillo for Mr. Lehmann.  In May, 2008, pursuant to an agreement with Zelle, Hofmann, Voelbel, Mason & Gette, LLP, The Furth Firm transferred certain of its assets (including its interest in the instant action) and certain of its personnel to Zelle Hofmann.  On July 18, 2008, the Court entered Practice and Procedure Order Number 7, allowing Craig C. Corbitt of Zelle Hoffman to be substituted for Mr. Cirillo as one of the U.S. Indirect Purchaser Counsel.

-2-

classes has approved and ratified the Settlement Agreement reached between Plaintiffs and Lufthansa.

The Settlement Agreement resolves all of the claims in the litigation against Lufthansa involving Airfreight Shipping Services within, to, or from the United States in exchange for an $85 million payment by Lufthansa, which more than two years ago was transferred into an escrow account (the "Settlement Fund"), and substantial cooperation in pursuit of the litigation against the non-settling Defendants.  While the Settlement Fund alone represents significant compensation for the Settlement Class, Lufthansa's early and comprehensive cooperation, by providing depositions, interviews, documents, and attorney proffers related to air cargo shipments within, to, or from the United States, is also highly beneficial.

The fairness and adequacy of the settlement has also been reviewed by an independent neutral – Magistrate Judge Edward A. Infante, a retired federal magistrate judge from the Northern District of California and current member of JAMS – to whom the original parties who negotiated the Settlement Agreement submitted it.  After interviewing the counsel who negotiated the Settlement Agreement and considering its terms, the supporting evidence, and all other materials considered in reaching the agreement, Magistrate Judge Infante concluded that the Settlement Agreement: resulted from "fair and informed" arm's-length negotiations; exhibited no indicia of collusion; and contained terms that "are fair, reasonable, and adequate to the settling class members."  *See* Declaration of Magistrate Judge Edward A. Infante (Ret.) (hereinafter "Infante Declaration"), attached as Exhibit 1 to the Hertzfeld Declaration.

On July 13, 2007, Plaintiffs submitted the Settlement Agreement to Magistrate Judge

-3-

Pohorelsky for preliminary approval, to certify the Settlement Class, and to obtain authorization to provide notice through mailing and publication to Settlement Class members.

On October 16, 2007, Magistrate Judge Pohorelsky issued a 21 page Report and Recommendation that recommended: (1) certification of the proposed Class for settlement purposes (the "Settlement Class"); (2) preliminary approval of the proposed terms of the Settlement Agreement; and (3) terms of sending of notice to the certified Settlement Class. Magistrate Judge Pohorelsky recommended that the motion be granted only after a conference to resolve some issues about the Settlement Class notice.

In accordance with Magistrate Judge Pohorelsky's recommendation, a conference was held on October 30, 2007 to discuss the Magistrate Judge's comments about some of the language in the Settlement Class notice.  At the conference, Magistrate Judge Pohorelsky also ruled that to allow for dissemination of the Settlement Class notice, the non-settling Defendants had to provide Plaintiffs with lists of customers who shipped goods within, to, or from the United States during the relevant period, unless they made a showing that production of such lists was too burdensome.  The non-settling Defendants were also directed to submit a report setting forth each Defendant's claim of burden.

On January 10, 2008, Judge Gleeson modified and adopted the October 16, 2007 Report and Recommendation, adding language to the preliminary approval order that made it clear that the Court's certification of the Settlement Class was without prejudice to the rights of the non-settling Defendants.

On January 23, 2008, a conference was held at which Magistrate Judge Pohorelsky found that the agreements between Plaintiffs and the various non-settling Defendants regarding

-4-

disclosure of customer names and addresses by the non-settling Defendants, coupled with information from the International Air Transport Association ("IATA"),[5] would suffice to provide enough Settlement Class members' names and addresses so that individual notice could be sent to the Settlement Class members who could be identified through reasonable effort. However, Plaintiffs were also directed to submit a revised proposed order containing more specifics regarding publication notice.

On February 25, 2008, Plaintiffs filed with the Court a revised notice, claim form, proposed Report and Recommendation, and proposed order for preliminary approval of the Settlement Agreement. Following a conference on March 11, 2008, Magistrate Judge Pohorelsky entered a Report and Recommendation, recommending preliminary approval of the Settlement Agreement. Judge Gleeson entered an Order preliminarily approving the Settlement Agreement on April 4, 2008.

Judge Gleeson's April 4, 2008 Order directed that, within 60 days, Plaintiffs were to cause notice of the settlement to be mailed to each potential Settlement Class member whose address had been obtained from any Defendant or from IATA and to be posted on a website. Judge Gleeson also ordered that publication notice commence no later than 30 days after commencement of the mailing and be completed at least 30 days prior to the fairness hearing. In addition, Judge Gleeson ordered that a summary notice be published in numerous publications.

Thereafter, notice was disseminated to Settlement Class members in the United States and throughout the world in an extensive notice program calculated to reach Settlement Class

---

[5]     IATA is a global trade organization comprised of some 230 airlines who represent approximately 93% of scheduled international air traffic.

members to the extent reasonably practicable.[6]  As of November 11, 2008, no objections have

been filed out of a class of hundreds of thousands of Settlement Class members.  The deadline

for the filing of objections is November 12, 2008.  To the extent that objections are filed,

Settlement Class Counsel will address any such objections in a subsequent filing.

     As set forth below, the Settlement Agreement is fair, reasonable and adequate and should

receive final approval by the Court.  The Settlement Agreement more than satisfies the nine

*Grinnell* factors.  The Settlement Agreement provides Settlement Class members with important

cooperation from a company that is not only the leniency applicant in numerous jurisdictions

around the world, but one of the industry's largest and most international participants.  It also

allows Settlement Class members to receive a meaningful cash distribution early in the litigation.

The conditionally certified Settlement Class, which the Court has already found satisfies the

requirements of Rule 23, should be certified as final.

     Plaintiffs hereby seek Orders from the Court that: provide final approval of the Settlement

Agreement as fair, reasonable, and adequate; provide final certification of the conditionally

certified Settlement Class; provide final approval of the Allocation Plan for distribution of the

---

    [6]     The notice program, paid for by Lufthansa, was carried out by the Garden City Group, the Court–approved Claims Administrator.  Details of the notice program are set out in the Declaration of Jeanne C. Finegan, APR, Senior Vice President of the Garden City Group ("Finnegan Dec."), submitted herewith as Exhibit "A."  The long-form notice and summary notice were translated into 36 languages in addition to English and over 310,000 notices had been mailed as of September 4, 2008. *Id.* at ¶¶ 10 & 14.  Summary notice was published in the international edition of several broadly distributed publications and in 31 key international and domestic trade publications targeting air cargo shipping professionals.  *Id.* at ¶¶ 28 & 29.

Lufthansa Settlement Fund to Settlement Class members that submitted valid claim forms;[7] find

that the notice program satisfied Due Process requirements; and enter Final Judgment on behalf

of Lufthansa under the terms of the Settlement Agreement.

**B.      The Settlement Agreement**

The Settlement Class is defined as:

> All persons and entities that purchased airfreight cargo shipping
> services for shipments within, to, or from the United States
> (hereinafter "Airfreight Shipping Services"), including those
> persons and entities that purchased Airfreight Shipping Services
> through freight forwarders, from any air cargo carrier (including,
> without limitation, those defendants named in the Actions, and
> specifically including Lufthansa) and/or any named or unnamed
> co-conspirators (collectively, "Defendants") during the period from
> January 1, 2000 to the Execution Date of this Settlement
> Agreement [September 11, 2006]. Excluded from the Settlement
> Class are Defendants, their respective parents, employees,
> subsidiaries, and affiliates, and all government entities.

Settlement Agreement ¶¶ 1, 27.

The Settlement Agreement provides that Plaintiffs will release their antitrust claims

against Lufthansa for airfreight shipments within, to, or from the United States in return for

Lufthansa paying $85 million and providing Plaintiffs with ongoing cooperation concerning their

claims against the remaining Defendants.

---

[7]      A memorandum seeking final approval of the Plan of Allocation is being
submitted separately.

### 1.   *The Settlement Fund*

Pursuant to the terms of the Settlement Agreement, on September 12, 2006, Lufthansa

paid the full Settlement Amount of $85,000,000 into the Settlement Fund. *See* Settlement

Agreement ¶ 40.  The Settlement Fund has been established as an interest-bearing escrow

account at SunTrust Banks, Inc., invested in guaranteed United States and foreign investment

vehicles.  Id. ¶¶ 43-44.  The Class also benefits as the Settlement Fund accrues interest because

interest earned on the Settlement Fund becomes and remains part of the Settlement Fund.  Id. ¶

44.[8]  Because approximately 60% of Lufthansa's commerce affected by the cartel was commerce

involving shipments inbound to the United States, Plaintiffs enrolled approximately 60% of the

Settlement Fund into a currency hedging program to protect that portion of the Settlement Fund

that may be paid in foreign currencies from currency fluctuations.  Thus, the Settlement Fund as

of November 6, 2008, including interest, was $90,474,823.63.

### 2.   *The Cooperation Provisions*

Lufthansa also agreed to provide extensive cooperation to the Settlement Class that will

substantially aid in the prosecution of the class antitrust claims against the remaining Defendants.

Under the Settlement Agreement, prior to preliminary approval Lufthansa's counsel provided the

Settlement Class Counsel with a general description of the times, places and corporate

participants relating to the conduct at issue.  After the Court preliminarily approved the proposed

settlement, in accordance with its cooperation obligations, Lufthansa made an additional detailed

factual proffer and provided Plaintiffs with access to important documents.  The information will

---

[8]     The Settlement Agreement also provides that Lufthansa must bear the costs of
providing notice to the Settlement Class and the costs of administering, investing, and
distributing the Settlement Fund. *Id.* ¶ 47.

be of tremendous value in prosecuting the claims against the non-settling Defendants. If required, Plaintiffs will use information from the materials provided under the cooperation provision to prepare a Second Amended Complaint.

The full extent of Lufthansa's cooperation obligations, set forth in more detail in Paragraph 54 of the Settlement Agreement, can be summarized as follows:

(a)     Lufthansa agreed to provide to Settlement Class Counsel and/or their experts access, without subpoena, for the purpose of interviews, depositions, affidavits, and trial testimony, all Lufthansa current and former directors, officers, and employees interviewed by the U.S. Department of Justice, the European Commission, or any other national competition authority investigating anticompetitive behavior affecting air cargo commerce within, to, or from the United States.  In addition, Lufthansa agreed to provide five additional directors, officers, and employees whom Settlement Class Counsel reasonably believe to have knowledge regarding Plaintiffs' claims, and any additional directors, officers, and employees, provided that such interviews, depositions, affidavits, and/or trial testimony are reasonably necessary to Plaintiffs' case.  Settlement Agreement ¶ 54(a)-(e).

(b)     Beginning within five days of preliminary approval, Lufthansa was obligated to produce the following categories of documents:  (i) transaction data in electronic format for all of Lufthansa's sales of Airfreight Shipping Services for shipments worldwide from January 1, 1993, until September 11, 2006 (the execution date of the Settlement Agreement); (ii) all price announcements for Airfreight Shipping Services, and/or surcharges related thereto, for shipments worldwide beginning January 1, 1993; (iii) all documents relating to or reflecting actual or potential communications between two or more Defendants regarding the prices for which, and

-9-

customers to whom, Airfreight Shipping Services had been sold for shipments within, to, or from the United States; (iv) all documents produced to the U.S. Department of Justice, the European Commission, or any other national competition authority investigating the Airfreight Shipping Services industry; and (v) upon reasonable and specific requests, any other documents relevant to the claims in the litigation.  Settlement Agreement ¶ 54(g).

       (c)      Lufthansa agreed to, and already has, provided attorney proffers detailing the times, places, and corporate participants involved in the anticompetitive conduct alleged by Plaintiffs.  Lufthansa also agreed that, within five days of receiving preliminary approval of the settlement, its counsel will meet with Settlement Class Counsel as often as is reasonable and necessary in order to support Plaintiffs' prosecution of the litigation, by, for instance, identifying relevant documents and providing updated information as to the culpability of non-settling Defendants.  Settlement Agreement ¶ 54(j).  Indeed, many such discussions, both by telephone and in person, have already occurred between Lufthansa and Settlement Class Counsel.

       (d)      Lufthansa agreed to produce all factual work product obtained during the course of its own internal investigation of the air cargo industry, as well as additional factual work product if Plaintiffs have a substantial need for the factual information contained in such work product and that information is not otherwise obtainable from Lufthansa without undue hardship.  Settlement Agreement ¶ 55.  Lufthansa also agreed to help Plaintiffs authenticate its internal documents and, to the extent possible, documents produced by other Defendants.  Id. ¶ 54(i).

### 3.   *Allocation of the Settlement Fund*

The Settlement Agreement also provided for a procedure for allocating the Settlement Fund among members of the Settlement Class (the "Plan of Allocation"). Id. ¶ 76. In accordance with this requirement, on October 24, 2007, Settlement Class Counsel submitted for Court approval an agreement (dated October 15, 2007) appointing the Honorable Daniel H. Weinstein, former Judge of the Superior Court of the County of San Francisco, State of California and current member of JAMS, as Settlement Master for the purpose of devising a Plan of Allocation. The Court entered an Order on October 30, 2007, approving Settlement Class Counsel's proposed procedure for allocating the Settlement Fund.

Plaintiffs have submitted a separate motion that describes the allocation recommended by Judge Weinstein and seeks approval of the plan to distribute the Settlement Fund at a later date after the claims have been audited. Approval of the Plan of Allocation, as amended, was recommended by Magistrate Judge Pohorelsky in a Report and Recommendation on March 14, 2008, and then approved in the April 4, 2008 Order of Judge Gleeson, preliminarily approving the Settlement Agreement.

### 4.   *Other Provisions Benefiting the Settlement Class*

A number of other provisions in the Settlement Agreement benefit the Settlement Class, including: 1) Lufthansa's agreement that it will make a supplemental payment to the Settlement Fund should Lufthansa settle separately with an opt-out for a monetary amount exceeding the amount that person or entity would have received under the Plan of Distribution;[9] 2) the

---

[9]      The Settlement Agreement also contains a limited Most Favored Nations provision (Settlement Agreement ¶66), providing that should Plaintiffs, Settlement Class Members, or Settlement Class Counsel enter into settlements with certain other Defendants

(continued...)

reservation of Settlement Class members' rights to recover from any non-settling Defendant for

Lufthansa's sales of Airfreight Shipping Services during the relevant time period, which shall

remain in the case as a potential basis for damage claims against non-settling Defendants and

shall be part of any joint and several liability claims against these Defendants; 3) Plaintiffs' right

to ask the Court to void or modify the release in the Settlement Agreement in the event

Lufthansa's leniency is withdrawn, revoked, or modified by a final court order; and 4) the

revocation of the release of any person who refuses, by the invocation of the Fifth Amendment or

otherwise, to comply with a reasonable request by Plaintiffs for cooperation.  Settlement

Agreement ¶¶ 64, 65(c), 39; January 4, 2007 Amendment, ¶ 7.

### 5.    *The Release*

The terms of the Release and Discharge are fully set forth in the Settlement Agreement.

*See* Settlement Agreement ¶¶ 35-39 and Amendment of January 4, 2007 to Settlement

Agreement ¶ 7 (setting forth the full terms of the Release and Discharge).  However, the release

can be summarized as follows: in exchange for the monetary and other consideration paid by

Lufthansa, Settlement Class members who do not exclude themselves release and discharge

Lufthansa from any and all claims against Lufthansa arising from, or in any way related to,

Airfreight Shipping Services provided by Lufthansa or any other carrier for shipments within, to,

───────────────────

(...continued)
under certain circumstances involving a lower settlement ratio of the settlement amount to sales
than that paid by Lufthansa, then Lufthansa shall be entitled to receive a payment from that
settlement to reduce its own settlement ratio.

Additionally, under the Settlement Agreement, ¶¶ 15, 17 and 46, with respect to persons
who validly exclude themselves from the Settlement Class, Lufthansa is entitled to a refund from
the Settlement Fund in an amount equaling such person's Imputed Recovery. Settlement
Agreement ¶ 15.

or from the United States (and specifically including, without limitation, claims in any way

related to cargo rates, fuel surcharges, security surcharges, United States Customs surcharges,

war risk surcharges, commissions, incentives, rebates, credits, yields, or any other element of the

price or compensation related to Airfreight Shipping Services). *Id.* The release covers all claims

that have been or could have been asserted by Plaintiffs, relating to airfreight cargo shipments

within, to, or from the United States whether arising under U.S. federal or state law, or any law

of any foreign jurisdiction, *id.,* excluding claims based upon negligence, breach of contract,

bailment, failure to deliver, lost goods, damaged or destroyed goods, or similar claims. *See*

January 4 Amendment, ¶ 4.

## II.   ARGUMENT

### A.   The Settlement Is "Fair, Reasonable and Adequate" and Should Be Approved

Plaintiffs seek final approval of the Settlement Agreement on behalf of the conditionally

certified Settlement Class, defined as:

> All persons and entities that purchased airfreight cargo shipping services for
> shipments within, to, or from the United States (hereinafter "Airfreight Shipping
> Services"), including those persons and entities that purchased Airfreight
> Shipping Services through freight forwarders, from any air cargo carrier
> (including, without limitation, those defendants named in the Actions, and
> specifically including Lufthansa) and/or any named or unnamed co-conspirators
> (collectively, "Defendants") during the period from January 1, 2000 to September
> 11, 2006. Excluded from the Settlement Class are Defendants, their respective
> parents, employees, subsidiaries, and affiliates, and all government entities.

Federal Rule of Civil Procedure 23(e) states that any settlement of a class action requires

court approval. *See Visa Check/Master Money Antitrust Litig.,* 297 F. Supp. 2d 503, 509

(E.D.N.Y. 2003), *aff'd sub nom Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir.

-13-

2005). The decision to grant or deny settlement approval lies within the discretion of the trial court, but "that discretion should be exercised in light of the general policy favoring settlement." *Id.* (citing *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982)). When considering whether to approve a settlement, the Court "must assure itself that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *Id.* (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000); *see also Weinberger,* 698 F.2d at 73; *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). More particularly, the Court considers both "the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *see also Visa Check,* 297 F. Supp. 2d at 509 (citing *In re Holocaust Victim Assets Litig.,* 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000)). However, although the Court should not merely "rubber stamp" the settlement, it should not "engage in 'the detailed and thorough investigation that it would undertake if it were actually trying the case.'" *Visa Check,* 297 F. Supp. 2d at 509 (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974)).

It is well established in the Second Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Bano v. Union Carbide Corp,* 273 F.3d 120, 129-30 (2d Cir. 2001); *see also Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354 (E.D.N.Y. 2006) (When assessing the merits of a settlement, "the court is guided by the Second Circuit's recognition that public policy favors the settlement of class actions"); *In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources."). In fact, "settlement should be facilitated at as early a

-14-

stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice

& Procedure §1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also*

Manual For Complex Litigation (Fourth) § 13.12 (2004) ("settlement should be explored early in

the case.").

### 1.    *The Settlement Is Procedurally Fair*

The Court begins its review process by considering the "procedural integrity" of the

settlement, assuring itself that "coercion or collusion" did not mar the negotiations themselves.

*Visa Check,* 267 F. Supp. 2d at 510.  If this threshold criteria is met, then the "proposed class

action settlement enjoys a strong presumption that it is fair, reasonable, and adequate."

*Teachers' Retirement Sys. of La. v. A.C.L.N., Ltd.,* No. 011-CV-11814, 2004 WL 1087261, at *1

(S.D.N.Y. May 14, 2004).

The settlement with Lufthansa resulted from arm's-length settlement negotiations.  The

initial negotiations with Lufthansa were informed by use of independent expert analysis and

subsequently, the original settlement was vetted and approved, after amendment, by additional

counsel.  Counsel for both the Plaintiffs and Lufthansa are qualified and experienced attorneys

who made the decision to settle based on their familiarity with the underlying facts of this

litigation. *See In re Paine Webber Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd,*

117 F.3d 721 (2d Cir. 1997) ("'[G]reat weight' is accorded to the recommendations of counsel,

who are most closely acquainted with the facts of the underlying litigation.") (citation omitted).

A class action settlement is entitled to a presumption of fairness when it is the product of

arm's-length negotiations between experienced, capable counsel.[10] *See In re NASDAQ Market-*

---

[10]    The counsel who negotiated the Settlement Agreement on behalf of both
(continued...)

-15-

*Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arm's length negotiation process is preserved ... a strong initial presumption of fairness attaches to the proposed settlement."); *see also In re Sterling Foster & Co. Sec. Litig.,* 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.,* 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.,* 878 F. Supp. 473, 567 (E.D.N.Y. 1995); 4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 87-89 (4th ed. 2002). Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See Joint E. & S. Dists. Asbestos,* 878 F. Supp. at 567 ("A substantial factor in determining the fairness of a settlement is the opinion of counsel involved in the settlement."); *PaineWebber,* 171 F.R.D. at 125 (stating that "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).[11]

The Settling Parties' proposed Settlement Agreement is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action

---

(...continued)
Parties are highly experienced and capable.  Resumes of Lufthansa's and Plaintiffs' Counsel were previously provided to the Court.

[11]    *See also In re Dreyfus Aggressive Growth Mut. Fund Litig.,* 2001 WL 709262, at *3 (S.D.N.Y. 2001) (strong presumption of fairness attaches to a proposed settlement negotiated at arm's-length)*; In re Salomon Inc. Sec. Litig.,* 91 Civ. 5442, 1994 WL 265917 at *13 (S.D.N.Y. June 16, 1994) (stating that the judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); *Chatelain v. Prudential-Bache Sec. Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992); *Ross v. A.H. Robins Co., Inc.,* 700 F. Supp. 682, 683 (S.D.N.Y. 1988); *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 n.14 (4th Cir. 1975); *In re Minolta Camera Prods. Antitrust Litig.,* 668 F. Supp. 456, 459 (D. Md. 1987); *Blank v. Talley Indus., Inc.,* 64 F.R.D. 125, 132 (S.D.N.Y. 1974) (a factor "entitled to substantial weight, is that [the settlement] bears the imprimatur of seasoned and experienced counsel . . . "); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

litigation. The Settlement Agreement, in its initial form, was negotiated over a period of more

than five months by CMHT in a process that involved more than a dozen in-person meetings

with counsel for Lufthansa.  In preparation for such negotiations, CMHT undertook a diligent

and thorough investigation of the legal and factual issues posed by this litigation and consulted

with experienced economists.  Both parties frequently consulted with their own and one

another's economists in their efforts to reach agreement.  Thus, CMHT was well-informed as to

the facts of the case and the strength of the claims asserted when the terms of the Settlement

Agreement were initially negotiated.  *See Global Crossing*, 225 F.R.D. at 458 ("Formal

discovery is not a prerequisite; the question is whether the parties had adequate information

about their claims.").

> Indeed, Judge Infante specifically concluded:

> > The Settlement Agreement is the product of lengthy arm's-length
> > negotiations, which occurred over a five-month period.  We are
> > informed that the parties met in person no fewer than fifteen times
> > and met many more times by telephone.  Neither the conduct of the
> > negotiations, nor the terms of the resulting settlement agreement,
> > exhibit any indicia of collusion.  Counsel alternatively described
> > the negotiations as "long and arduous," "extremely contentious"
> > and "highly adversarial."  The history of offers and counter-offers,
> > relayed to us by opposing counsel, supports that view.  Moreover,
> > the length and complexity of the Agreement itself, including the
> > carefully crafted provisions that preserve the benefits of the
> > settlement for class members, show no signs of collusive
> > negotiation.

Infante Declaration ¶ 16.

> Moreover, despite any concerns originally raised by the other Co-Lead Counsel, all

counsel appointed by the Court to represent the direct and indirect purchasers in the litigation,

after a thorough and lengthy investigation of their own, have since agreed that the settlement is

reasonable, fair, and in the best interests of the Settlement Class.  Judge Infante has confirmed

that the arm's-length negotiation process engaged in by the Parties yielded a better result for the

Settlement Class than might otherwise have been achieved:

> Further, our investigation did not uncover any signs that early
> settlement negotiation damaged the class members' interests or
> resulted in a less favorable settlement.  To the contrary, class
> counsel arguably had better and potentially more reliable
> information with which to negotiate a settlement than might
> otherwise have been made available through discovery.  The
> settlement negotiations with Lufthansa occurred within the broad
> disclosure of key transactional data and analyses by Lufthansa.
> Substantial transactional data and econometric analyses were
> produced by Lufthansa and were reviewed Class Counsel [sic] and
> its experts.  Class Counsel also received numerous proffers setting
> forth the detailed workings of the price fixing cartel that is at issue.

Id. ¶ 17.

In light of their prior experience in complex antitrust class actions, their knowledge of the

strengths and weaknesses of their case, the expert analysis of the relevant data, and their

assessment of the class's likely recovery following trial and appeal, Settlement Class Counsel

have concluded and Judge Infante has agreed that the proposed Settlement Agreement is fair,

reasonable, and adequate, and in the best interests of the Settlement Class.  *See* Infante

Declaration ¶ 24.  There is nothing in the course of the negotiations or the substance of the

settlement that "disclose[s] grounds to doubt its fairness."  Manual for Complex Litigation

(Fourth) § 30.41 (2004).

Accordingly, the procedural integrity of the settlement process creates a strong

presumption that the settlement is fair, reasonable and adequate.

### 2.    *The Settlement Is Substantively Fair*

To determine the "substantive fairness" of a settlement, the Second Circuit has set out

nine factors (the *"Grinnell"* factors) that the Court should consider:

> (1) the complexity, expense and likely duration of the litigation; (2)
> the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*Visa Check*, 267 F. Supp. 2d at 510 (quoting *Grinnell*, 495 F.2d at 463 (citations omitted)); *see*

*also Wal-Mart*, 396 F.3d at 117 (approving the use of the *Grinnell* factors to determine the

fairness of a class action settlement).

Applying the nine *Grinnell* factors, as set out in more detail below, Plaintiffs submit that

the proposed settlement with Lufthansa should be approved as fair, reasonable, and adequate.

### a.    *Complexity, Expense and Likely Duration of the Litigation (Grinnell Factor 1)*

The complexity of federal antitrust cases is well known. *See Visa Check,* 267 F. Supp. 2d

at 510. "'An antitrust class action is arguably the most complex action to prosecute.' . . . 'The

legal and factual issues involved are always numerous and uncertain in outcome.' This litigation

is no exception." *In re Linerboard Antitrust Litig.,* 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003)

(quoting *In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1337 (N.D. Ga.

2000); *see also Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 719 (E.D.N.Y. 1989)

(antitrust class actions "are notoriously complex, protracted, and bitterly fought"); *In re Shopping*

*Carts Antitrust Litig.,* MDL No. 451, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) ("antitrust price fixing actions are generally complex, expensive and lengthy.").

This antitrust litigation clearly qualifies as complex based on the nature and size of the alleged conspiracy. While this case is certainly manageable and falls within the type of cases that plaintiffs are usually successful in prosecuting, the complexities include, for example, the fact that Plaintiffs will have to analyze the operations and pricing of over 30 foreign defendant air carriers for purposes of establishing liability and damages.

Also, there can be no doubt that this case, as with most antitrust cases, will be expensive to prosecute. This litigation is already almost three years old and is likely to take many years to reach conclusion after all appeals are exhausted. Absent Lufthansa's cooperation, developing the case against Lufthansa would require an enormous amount of time and expense, sifting through their documents and e-mails and plodding through depositions of their employees.

Thus, the Settlement Agreement, by eliminating Lufthansa as an adverse party and providing for valuable cooperation, will likely make this litigation less complex, less expensive and less time-consuming. Accordingly, the first *Grinnell* factor strongly favors approval of the Lufthansa settlement.

### b.    *Reaction of the Class to the Settlement (Grinnell Factor 2)*

The second factor is the class members' reaction to the proposed settlement. As noted earlier, the objector deadline is November 12, 2008. As of November 11th, no objections from Settlement Class members have been filed. To the extent any objections are subsequently received, Plaintiffs' Counsel will address those objections in a supplemental filing. Even a few

objectors out of a large settlement class would be an indication that a proposed settlement is fair.
*See Snapp v. The Topps Co., Inc.,* No. 93-CV-0347, 1997 WL 1068687, *2 (E.D.N.Y. Feb. 12,
1997); *see also Wal-Mart,* 396 F.3d at 118-19.

> ### c.   Stage of the Proceedings and Amount of Discovery Completed (Grinnell Factor 3)

The third *Grinnell* factor is designed to "assure the Court that the counsel for plaintiffs
have weighed their position based on a full consideration of the possibilities facing them."
*Global Crossing,* 225 F.R.D. at 458. "[F]ull discovery is not a prerequisite for approval as long
as the court is assured that the parties had sufficient information about the claims to evaluate
intelligently the desirability of settlement." *International Murex Techs Corp. Secs Litig.,* No. 93
CV 336(JG), 1996 WL 1088899, at *4 (E.D.N.Y. Dec. 4, 1996); *see also Global Crossing,* 225
F.R.D. at 458.

The Lufthansa settlement was concluded early in the litigation process, but not before
Plaintiffs' Counsel had taken steps to evaluate the adequacy of the settlement.  First, as noted
above, prior to reaching a settlement, counsel for Lufthansa made a proffer of facts.
Additionally, Plaintiffs' Counsel were aware that Lufthansa had entered into the Antitrust
Corporate Leniency Program administered by the Department of Justice.  Therefore, Plaintiffs'
Counsel were operating under the premise that Lufthansa was a guilty conspirator and
accordingly no discount was provided to it for any lack of culpability.[12]

---

[12]   However, the Antitrust Criminal Penalty Enhancement and Reform Act of 2004
("ACPERA") provides that the damages recoverable from a defendant who meets certain
cooperation requirements shall not exceed the damages actually caused by that defendant. *See*
Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub.L. No. 108-237, tit. II, §
201 *et. seq.,* at § 213(a) & (b), 118 Stat. 661, 665-669.  Accordingly, although Plaintiffs did not
discount their calculation of Lufthansa's potential liability to reflect a possible lack of culpability,
(continued...)

Moreover, Plaintiffs retained an economist who thoroughly analyzed the economics of the air cargo market, creating a model of the Airfreight Shipping Services market and estimating the potential damages attributable to Lufthansa. *See* Infante Declaration, ¶¶ 18 and 21 (noting that the information and analysis Plaintiffs had on hand was more than enough to competently negotiate the settlement); *see also Robertson v. Nat'l Basketball Ass'n*, 72 F.R.D. 64, 69 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 682 (2d Cir. 1977) ("By the time negotiations for settlement began, each side had a clear grasp of all the facts supportive of the opposing side's contentions."). Armed with the above information and drawing upon their extensive antitrust litigation experience, Plaintiffs' Counsel were in a position to examine thoroughly the facts of the case and to make fully informed assessments of the strengths and weaknesses of their claims and the value of settling with Lufthansa. On that basis, Plaintiffs' Counsel engaged in hard fought, arm's-length negotiations before arriving at the presently proposed settlement.

This factor also supports approval of the Settlement Agreement.

> **d.   *The Risks of Establishing Liability, Damages, and in Maintaining the Class Action through the Trial (Grinnell Factors 4, 5 & 6)***

Plaintiffs are continuing to litigate against the non-settling Defendants. Accordingly, it is not realistic to expect counsel to highlight in great detail potential weaknesses or to emphasize any particularly vulnerable points in their case. Still, it is a basic fact of litigation that no outcome is guaranteed, and there are risks inherent in even the strongest case.

---

[12](...continued)
Plaintiffs valuation of damages attributable to Lufthansa had to be tempered by ACPERA's limitation of liability.

Here, as in every case, Plaintiffs face the general risk that they may lose at trial, since no one can predict the way in which a jury will resolve disputed issues. As one court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) (citing cases in which settlements were disapproved and plaintiffs subsequently lost at trial); *In re Baldwin United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1985) (comparing advantages of immediate cash payments with risks involved in long and uncertain litigation).

Notwithstanding Lufthansa's leniency application under ACPERA, it has not admitted liability. The settlement eliminates the need to obtain a judgment against Lufthansa. *NASDAQ Market-Makers*, 187 F.R.D. at 475; *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999). Even though Plaintiffs believe they have a strong case, the risk of establishing liability is a risk that cannot be ignored.

Additionally, damages are always hotly contested and regularly break down into a "battle of the experts." While Plaintiffs believe that proof of impact and damages will be established at trial, they bear the burden of proving both, so there is risk to the class of recovering nothing (or little) from Lufthansa (and the non-settling Defendants) after a trial. *Wal-Mart*, 396 F.3d at 118 ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."); *NASDAQ Market Makers*, 187 F.R.D. at 476 (same); *United States Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) (jury finds NFL liable but awards only nominal damages). By settling for an amount

certain, Plaintiffs have eliminated the risk of proving damages as to Lufthansa, and, more importantly, the cooperation that Lufthansa is obligated to provide under the terms of the settlement enhances the ability of Plaintiffs to prove liability and damages against the non-settling Defendants.

Turning to class certification, Plaintiffs believe that this horizontal price-fixing case would be certified absent this settlement and the certification would be maintained through the trial. *NASDAQ Market Makers*, 187 F.R.D. at 476; *Wal-Mart*, 391 F.3d at 118, n. 24. Accordingly, Plaintiffs do not consider the risk of maintaining class certification through trial as a factor weighing in favor or against approval of the Lufthansa settlement.

In sum, the certainty of settlement with Lufthansa combined with the valuable cooperation that Lufthansa has already begun to provide under the terms of the proposed settlement weigh strongly in favor of approval. Thus, the above *Grinnell* factors also support approval of the settlement.

### e.   *The Ability to Withstand A Greater Judgment (Grinnell Factor 7)*

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment. While it is possible Lufthansa could withstand a judgment greater than $85 million, there can be no question that the settlement represented a significant commitment by Lufthansa. Moreover, it is worth noting that the airline industry (including Lufthansa) are currently under significant financial stresses in light of the world-wide economic slow-down and recent fuel cost increases. *See* http://www.economist.com/business/displayStory.cfm?story_ id=11484142&

source=features_box_main (article from The Economist discussing poor future outlook for airline industry). Accordingly, this factor also weighs in support of approval of the settlement.

### f.    The Range of Reasonableness In Light of the Risks of Litigation (Grinnell Factors 8 & 9)

The eighth and ninth factors – the range of reasonableness considering the best possible recovery and the risks of litigation – also support approval of the settlement. The determination of a "reasonable" settlement is not susceptible to a simple mathematical equation yielding a particular sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972).

Lufthansa has deposited $85 million cash into an escrow account to resolve this Action. When considering the reasonableness of Lufthansa's settlement, it is important to remember, as noted above, that as a cooperating ACPERA applicant, Lufthansa would not face joint and several liability. *See* ACPERA, § 213(b); *see also In re Corrugated Container Antitrust Litig., 556 F. Supp. 1117, 1154 (S.D. Tex. 1982)* (noting that even without ACPERA, "a defendant's potential liability for damages caused by a co-conspirator's sales need not be considered in considering an offer of settlement").  Accordingly, Lufthansa's exposure is measured by considering its settlement as a measure of its own sales without regard to the entire air cargo industry.[13]  By this standard, the $85 million settlement equals approximately 10.5% of Lufthansa' surcharges during the Settlement Class period (January 1, 2000 to September 11,

---

[13]    Moreover, although the antitrust law allows for treble damages, settlement agreements are usually evaluated with respect to actual damages only. *See Corrugated Container*, 643 F.2d at 213-16 (analyzing actual damages only).

2006). This result compares favorably with the range of other settlements reached in price-fixing antitrust class actions. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (recovery "represented approximately 2% of sales); *In re Linerboard Antitrust Litig.*, 2004 WL 870685, at *4 (E.D. Pa. April 21, 2004) (recovery represented 1.62% of sales); *In re Plastic Tableware Antitrust Litigation*, 1995-2 Trade Cas. (CCH) 71, 184 at 75, 737 (E.D. Pa. Oct. 25, 1995) (recovery represented 3.5% of sales); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) (recovery represented 2.4% of sales); *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recovery represented 0.2% of sales); *Axelrod v. Saks & Co.*, 1980-81 Trade Cas. (CCH) 63, 861 at 78, 563 (E.D. Pa. 1981) (recovery represented 3.7% of sales). Accordingly, this settlement represents an excellent result.

Furthermore, as described above, the Settlement Agreement obligates Lufthansa to cooperate with Plaintiffs in connection with the continued prosecution of this action. *See* Settlement Agreement ¶54. This cooperation, which goes beyond the ACPERA requirements in terms of both timing and scope, will materially benefit the class in its continued litigation against the non-settling Defendants. *See Automotive Refinishing Paint*, 2004 WL 1068807, at *2 (discussing benefit of settling defendants' cooperation in pursuing litigation); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) ("the commitment [the] Distributor defendants have made to cooperate with plaintiffs will certainly benefit the classes, and is an important factor for a court to consider in approving a settlement"); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322, 1329 (5th Cir. 1981) ("The settlement agreements provided for cooperation from the settling

defendants that constituted a substantial benefit to the class.  Those provisions were intended to save plaintiffs time and expense in the continuing litigation . . . [and] made certain information and expertise available to the class which might not have been available through normal discovery").

In sum, an analysis of the foregoing factors demonstrates that the settlement with Lufthansa is "fair, reasonable and adequate" to the Settlement Class.  Thus, the settlement should be granted final approval by the Court.

### B.     The Settlement Class Should be Certified as Final Pursuant to Rule 23

In the Settlement Agreement, Plaintiffs and Lufthansa stipulated, for settlement purposes, to the certification of the Settlement Class, as set out above.  In the Memorandum supporting preliminary approval of the settlement, Plaintiffs addressed in detail how the proposed Settlement Class satisfies the requirements for certification set forth in Rule 23(a) (numerosity, commonality, typicality, and adequacy) and Rule 23(b)(3) (predominance and superiority).  *See* Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Settlement dated July 13, 2007,  at 20-27.  In the Preliminary Approval Order, Magistrate Judge Pohorelsky undertook a rigorous analysis of the applicable certification standards and recommended conditional certification of the proposed Settlement Class.  Judge Gleeson confirmed the recommendation and certified the Settlement Class.  All the facts that supported conditional certification remain true, and as set out below, the conditionally certified Settlement Class should be endorsed as final in the Final Approval Order.

-27-

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger*, 698 F.2d at 73; *see also Global Crossing*, 225 F.R.D. at 451 (S.D.N.Y. 2004). A court may certify a settlement class where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See Denny v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997)); *see also Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,* 938 F. Supp. 1131, 1140 (E.D.N.Y. 1996).

### 1. *The Settlement Class Meets the Requirements of Rule 23(a)*

#### a. *The Settlement Class Is So Numerous That it Is Impracticable to Bring All Class Members Before the Court*

First, Rule 23(a) requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability" in this context means "difficulty or inconvenience of joinder" rather than "impossibility of joinder." *In re Independent Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). No magic number exists for satisfying the numerosity requirement, nor must the plaintiff allege the exact number or identity of class members. *Gross v. Washington Mut. Bank, F.A.*, 02 CV 4135, 2006 WL 318814 at *2 (E.D.N.Y. Feb. 9, 2006) (citing *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993)). Nonetheless, courts in the Second Circuit "generally 'find a class sufficiently numerous when it comprises forty or more members.'" *See* Preliminary Approval Order, at 5 (quoting *Independent Energy*, 210 F.R.D. at 479).

-28-

Here, the proposed Settlement Class consists of persons and entities both in the United States and around the globe who purchased Airfreight Shipping Services from the Defendants during the period from January 1, 2000, to September 11, 2006. Since 2000, it is beyond dispute that hundreds of thousands of airfreight shipments have been made within, to, or from the United States by the Defendants, and there are no doubt tens of thousands of persons and entities that fall within the Settlement Class definition. In fact, the Claims Administrator has mailed out over 310,000 notices to prospective class members. *See* Finegan Dec, ¶ 10. Accordingly, there is little question that the proposed Settlement Class is so numerous as to satisfy the Rule 23(a)(1) numerosity requirement. *See* Preliminary Approval Order, p. 6.

### b. *Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.*

Second, Rule 23(a) requires the existence of questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). Commonality may be found when "injuries derive from a unitary course of conduct by a single system." *Reade-Alvarez,* 237 F.R.D. at 32 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). However, Rule 23(a)(2) "does not require that all questions of law or fact raised be common." *D'Alauro v. GC Servs. Ltd. Partnership,* 168 F.R.D. 451, 456 (E.D.N.Y. 1996). In fact, commonality may be possible even where only "a single common question" exists. *Velez v. Majik Cleaning Serv., Inc.*, No. 03 CV 8698, 2005 WL 106895, at *2 (S.D.N.Y. Jan. 19, 2005); *see also Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("[A] single common issue of law will satisfy the commonality requirement.").

-29-

The overarching allegation in the First Consolidated Amended Complaint is that Defendants have engaged in an illegal cartel designed and intended to fix the prices of Airfreight Shipping Services. Proof of this unlawful cartel is common to all members of the Settlement Class. *See In re Playmobil Antitrust Litig.,* 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998) ("class actions are particularly appropriate for antitrust litigation concerning price-fixing schemes because price-fixing presumably subjects purchasers in the market to common harm"); *In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 509-10 (S.D.N.Y. 1996).

Plaintiffs' allegations also raise additional specific questions of law and facts common to the proposed Settlement Class, including, for example:

(i)     Whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize prices of Airfreight Cargo Shipping Services for shipments within, to, or from the United States;

(ii)     The duration of the alleged conspiracy and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

(iii)     Whether the alleged conspiracy violated Section 1 of the Sherman Act; and

(iv)     The effect of Defendants' alleged conspiracy on the price of Airfreight Shipping Services, and whether the alleged conspiracy caused injury to the businesses or property of Plaintiffs and the other members of the Settlement Class.

Accordingly, as the Court previously found, "[t]he class proposed here readily satisfies the commonality requirement." Preliminary Approval Order, p. 6.

-30-

              *c.*       **Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.**

Third, Rule 23(a) requires typicality of the class representatives' claims.  See  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied where, as here, the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, and the claims are based on the same legal theories. *See Playmobil* , 35 F. Supp. 2d at 241; *In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y. 1982); *NASDAQ Market-Maker*, 169 F.R.D. at 510.  "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'" *Global Crossing,* 225 F.R.D. at 452 (citation omitted); *see also In re Industrial Diamonds Antitrust Litig.,* 167 F.R.D. 374, 379 (S.D.N.Y. 1996).

Here, the claims of the representative Plaintiffs, which include both domestic direct and indirect and foreign purchasers, are typical when compared to those held by the members of the Settlement Class.  Plaintiffs have alleged that the Defendants created and maintained an illegal cartel in the Airfreight Shipping Services industry, which artificially raised the prices of Airfreight Shipping Services.  Such claims of the representative Plaintiffs, like those of the members of the Settlement Class, arise out of the same alleged illegal anticompetitive conduct by the same Defendants and are based on the same legal theories.  Thus, as this Court previously noted, the claims of the named Plaintiffs, like the claims of every member of the proposed Settlement Class "all arise out of a common course of events, and rest on essentially identical

legal theories." Preliminary Approval Order, p. 8.  Accordingly "Rule 23(a)(3)'s typicality

requirement is satisfied." Id.

> ### d. Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent

the interests of the class. Fed. R. Civ. P. 23(a)(4).  As the Second Circuit has stated, "adequacy

of representation is measured by two standards.  First, class counsel must be 'qualified,

experienced and generally able' to conduct the litigation.  Second, the class members must not

have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group,*

*Inc.,* 960 F.2d 285, 291 (2d Cir. 1992) (citation omitted); *see also In re MetLife Demutualization*

*Litig.,* 229 F.R.D. 369, 376 (E.D.N.Y. 2005) (citing *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 130

(E.D.N.Y. 2003)).

Both requirements are satisfied here.  First, Settlement Class Counsel is qualified,

experienced, and thoroughly familiar with antitrust class action litigation.  They have

successfully litigated many significant antitrust actions and have prosecuted and will continue to

vigorously prosecute this lawsuit.  *See* Preliminary Approval Order, p. 9 (Court noted it "has

already conducted an inquiry into the qualifications of counsel when addressing the appointment

of interim class counsel").  Moreover, in reaching this Settlement Agreement, the interests of the

Settlement Class members were adequately protected.  *See Kapps v. Wing,* 283 F. Supp. 2d 866,

873 (E.D.N.Y. 2003), *vacated in part on other grounds*, 404 F.3d 105 (2d Cir. 2005).  In

particular, all Settlement Class members share an overriding interest in obtaining the largest

monetary recovery possible from Lufthansa. *See Global Crossing*, 225 F.R.D. at 453 (certifying

settlement class and finding that "[t]here is no conflict between the class representatives and the

other class members. All share the common goal of maximizing recovery."); *Corrugated Container*, 643 F.2d at 208 (certifying settlement class and holding that "'so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes'"). The Settlement Class members also share a common interest in obtaining Lufthansa's early and substantial cooperation in prosecuting the claims against the non-settling Defendants. *See also* Preliminary Approval Order, p. 9-10 (holding that "interests of potential class members are not antagonistic to each other or to the representative plaintiffs").

Finally, the independent representation by separate counsel of direct and U.S. indirect purchaser class members and the designation of specific counsel to represent differing interests for purposes of allocating the Settlement Fund among different groups of claimants ensured that each constituency's interests were adequately protected. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3rd Cir. 2004) ("The existence of separate counsel, as well as the operation of the Executive Committee, provided adequate 'structural protections to assure that differently situated plaintiffs negotiate for their own unique interests.'") (citation omitted); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 236-237 (5th Cir. 1982) (finding settlement and allocation of damages fair and reasonable where separate counsel represented the interests of direct and indirect purchasers).

### 2.    *The Settlement Class Meets the Requirements of Rule 23(b)(3).*

Once the four prerequisites of Rule 23(a) are met, as in this case, Plaintiffs must also show that the proposed settlement class satisfies the requirements of either Rule 23(b)(2) or Rule 23(b)(3). *See, e.g., Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006).

-33-

Under Rule 23(b)(3), Plaintiffs must first demonstrate that "questions of law or fact common to the class predominate over questions affecting individual members." *Barone v. Safway Steel Prods., Inc.,* No. CV-03-4258, 2005 WL 2009882 at *15 (E.D.N.Y. Aug. 23, 2005) (quoting Rule 23(b)(3)). Second, Plaintiffs must show that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* With respect to both requirements, the court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620.

### a.   *Common Questions of Law and Fact Predominate.*

Because Plaintiffs' claims regarding shipments within, to, or from the United States allege a single global conspiracy from which all Plaintiffs' injuries arise, issues common to the Settlement Class members—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants, the market impact of Defendants' conspiracy, and the aggregate amount of damage suffered by the Settlement Class as a result of an alleged violation of Section 1 of the Sherman Act—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Playmobil,* 35 F. Supp. 2d at 247 (finding predominance where case involved allegations of "pricing structure to regulate prices . . . , to maintain prices at artificially high levels, and to hinder price competition"); *In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs") (citing *Amchem,* 521 U.S. at 625); *Continental*

-34-

*Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y.*, 198 F.R.D. 41, 46 (E.D.N.Y.

2000) ("in cases involving allegations of a pure price-fixing conspiracy, common questions of

law and fact generally predominate on all issues"); *Alcoholic Beverages*, 95 F.R.D. at 326 ("As a

general rule in antitrust price-fixing cases, questions common to the members of the class

predominate over questions affecting only individual members.").

      Accordingly, as this Court previously noted, the predominance requirement "is easily

satisfied here" since "there is little question that all of the class members will resort to common

proof to establish the existence of the conspiracy and its impact on all members of the class."

*See* Preliminary Approval Order, p. 12 (citations omitted).

### b.    A Class Action Is the Superior Method to Adjudicate These Claims.

      The Court must balance, in terms of fairness and efficiency, the advantages of class action

treatment against alternative available methods of adjudication. *See In re Nigeria Charter Flights

Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006); Fed. R. Civ. P. 23(b)(3) (listing four

considerations relevant to this determination). Here, the interests of Settlement Class members

in individually controlling the prosecution of separate claims are outweighed by the efficiency of

the class mechanism. Tens of thousands of persons and entities purchased Airfreight Shipping

Services during the Class Period. Settling these claims in the context of a class action would

conserve both judicial and private resources and would hasten the Settlement Class members'

recovery. *See Fox*, 213 F.R.D. at 130 (stating that "the larger the class, the more judicial

resources would be saved by proceeding as a class action"); *Playmobil*, 35 F. Supp. 2d at 249

(certifying a class because "proceeding forward as a class action for liability is superior and

would avoid duplication, unnecessary costs and a wasting of judicial resources"); *See also*

Preliminary Approval Order, p. 12-13 (holding that superiority requirements met).

For all the reasons set forth above, the Settlement Class should now be certified as final.

## C.   The Class Notice Satisfies Due Process

Due process requires that class members be given notice of, and an opportunity to be heard

regarding, a settlement.  As the Second Circuit recently explained:

> The standard for the adequacy of a settlement notice in a class
> action under either the Due Process Clause or the Federal Rules is
> measured by reasonableness.  *See Soberal-Perez v. Heckler*, 717
> F.2d 36, 43 (2d Cir.1983); Fed. R. Civ. P. 23(e).  There are no rigid
> rules to determine whether a settlement notice to the class satisfies
> constitutional or Rule 23(e) requirements; the settlement notice
> must "fairly apprise the prospective members of the class of the
> terms of the proposed settlement and of the options that are open to
> them in connection with the proceedings." *Weinberger v. Kendrick*,
> 698 F.2d 61, 70 (2d Cir.1982) (internal quotation marks and
> brackets omitted).  Notice is "adequate if it may be understood by
> the average class member." [4 Alba Conte & Herbert B. Newberg,
> *Newberg on Class Actions*], §11:53, at 167.

*Wal-Mart*, 396 F.3d at 113-14.  *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173-74

(1974) (discussing elements notice program must meet to satisfy due process requirements);

*Adams v. S. Farm Bureau Life Ins. Co.,* 493 F.3d 1276, 1286-877 (11th Cir. 2007) (discussing

elements of notice plan that satisfied due process and Rule 23 requirements); *DeJulius v. New*

*England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (due process

does not require actual notice to every party.  Focus is on providing best notice practicable under

the circumstances); *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,* 148 F.3d

283, 326-28 (3d Cir. 1998) (discussing constitutional adequacy of notice program).

Here, in accordance with the Preliminary Approval Order, a comprehensive Notice Program was implemented, resulting in notice in 140 countries worldwide through a combination of direct mail and publication notice. *See* Finegan Dec., ¶ 4. The Finegan Declaration provides a thorough review of the notice program, which incorporated 7 elements: (1) notice by direct mail; (2) notice by publication; (3) notice by Internet advertising; (4) notice by media outreach; (5) third-party outreach to trade organizations; (6) a Settlement website (www.aircargosettlement.com); and (7) toll-free information telephone support. *Id.* ¶ 6. The Summary Notice, long-form Notice, Claim Form, website and other relevant documents were translated into 36 languages in addition to English. *Id.* ¶ 14.

The long-form Notice and Proof of Claim form were mailed to over 310,000 prospective Settlement Class members who reasonably could be identified. *See* Finegan Dec., ¶ 10. The notice program provided for broad publication of the approved Summary Notice. The Summary Notice was published in broadly distributed international editions of publications such as *The Wall Street Journal, The Financial Times, Time Magazine, Newsweek Magazine, The New York Times, The International Herald Tribune, The Economist* and *USA Today. Id.* ¶ 28. The summary notice was also published in 31 key internal and domestic trade publications targeting the air cargo shipping professional. *Id.* ¶ 29.[14]

The long-form Notice (13 pages) provides detailed information in plain English about the proposed settlement, including a summary of the monetary terms, the allocation percentages, the requested attorneys' fees and litigation costs, and detailed information on the terms of the release.

---

[14]    The long-form Notice and other materials were also sent to the appropriate federal and state Attorneys General as required under the Class Action Fairness Act of 2005, 28 U.S.C. §1711, *et seq. See* Finegan Declaration, ¶ 10 n.4.

In addition, the long-form Notice provides information about the fairness hearing date, Settlement Class members' right to enter an appearance through their own attorney, and Settlement Class members' rights to object or opt out (including related deadlines and procedures). Finally, the long-form Notice provided information about obtaining and completing a Claim Form.

The Summary Notice provides abbreviated information regarding the proposed settlement, including the monetary terms, the rights of prospective Settlement Class members to speak to their own attorney at their own expense, and to object or opt out by no later than November 12, 2008. The Summary Notice also advised Settlement Class members that they could obtain complete settlement information by visiting the settlement website, calling the toll free telephone numbers (both national and international numbers are provided), or calling the Claims Administrator.

The settlement website contains relevant information, including a "frequently asked questions" section and allows prospective Settlement Class members to immediately download copies of the long form Notice, the Claim Form, the Preliminary Approval Order, and the Settlement Agreement. Finally, the toll free telephone numbers (both national and international) were conspicuously advertised in the long-form Notice, in the Summary Notice, and on the settlement website.

Accordingly, for the reasons set out above and more fully in the Finegan Declaration, the Notice Program clearly satisfies the Due Process requirements and constitutes the best notice practicable under the circumstances. *Wal-Mart Stores,* 396 F.3d at 113-14 ("There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or rule 23(e) requirement: the settlement notice must 'fairly apprise the prospective members of the class of the

-38-

terms of the proposed settlement and of their options that are open to them in connection with the proceedings.'") (citing *Weinberger,* 698 F.2d at 70 (internal quotation marks and brackets omitted)); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.,* No. 05-MD-1720, 2008 WL 115104, *15 (E.D.N.Y. Jan. 8, 2008) (describing requirements of constitutionally adequate notice).

## III.   CONCLUSION

For all of the foregoing reasons, the Plaintiffs respectfully request that the Court: (a) grant final approval of the settlement with Lufthansa; (b) certify the conditionally certified Settlement Class as final; and (c) find that the Class Notice as disseminated satisfies the requirements of Due Process.

DATED:   November 12, 2008

Respectfully submitted,

| | |
|---|---|
| BY: */s/ Michael D. Hausfeld* [15]<br>Michael D. Hausfeld<br>Charles E. Tompkins<br>Andrea L. Hertzfeld<br>HAUSFELD LLP<br>1146 19th Street N.W., 5th Floor<br>Washington, D.C. 20036<br>(202) 579-1089<br><br>*Co-Lead Counsel and Co-Lead Counsel*<br>*Principally Responsible for the Claims of the*<br>*Foreign Purchasers* | BY: */s/ Hollis L. Salzman*<br>Hollis L. Salzman (HS-5994)<br>Gregory S. Asciolla (GA-2222)<br>LABATON SUCHAROW LLP<br>140 Broadway<br>New York, NY 10005<br>(212) 907-0700<br><br>*Co-Lead Counsel* |

---

[15] Michael D. Hausfeld was personally appointed Co-Lead Counsel by the Court while at his prior firm, Cohen, Milstein, Hausfeld & Toll, PLLC ("CMHT"). Each of the attorneys with primary responsibility for litigating this case, including Mr. Hausfeld, are now at Hausfeld LLP. A Notice of Change Affiliation and Motion to Amend the Court's November 15, 2006 Decision and Order and Pretrial Orders No. 3 and 4 to reflect this change of firm affiliation is currently pending before the Court. All representative plaintiffs that had retained Michael Hausfeld in this matter, including Volvo, H&M, Geodis Wilson (formerly TNT), KappAhl, AB Lindex, Association des Utilisateurs du Transport de Fret ("AUTF"), IKEA and Olarte, have been apprised of this change of firm affiliation, have been given the choice of being represented by Michael Hausfeld or by Cohen, Milstein, Sellers and Toll (CMST), and support Michael Hausfeld's continuing in his Court appointed positions. Nevertheless, Hausfeld LLP and the other Co-Lead Counsel have agreed to allow CMST to remain on the signature block pending entry of an order on Hausfeld LLP's Motion so that these papers can be timely filed.

| | |
|---|---|
| BY: */s/ Howard J. Sedran*<br>Howard J. Sedran<br>Austin B. Cohen<br>LEVIN, FISHBEIN, SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>(215) 592-1500<br><br>*Co-Lead Counsel* | BY: */s/ Robert N. Kaplan*<br>Robert N. Kaplan (RK-3100)<br>Gregory K. Arenson (GA-2426)<br>KAPLAN, FOX & KILSHEIMER, LLP<br>850 Third Avenue, 14th Floor<br>New York, NY 10022<br>(212) 687-1980<br><br>*Co-Lead Counsel* |
| BY: */s/ Steven N. Williams*<br>Joseph W. Cotchett<br>Steven N. Williams<br>COTCHETT, PITRE & MCCARTHY<br>840 Malcolm Road, Suite 200<br>Burlingame, CA 94010<br>(650) 697-6000<br><br>*U.S. Indirect Purchaser Class and Subclass Counsel* | BY: */s/ Craig Corbitt*<br>Craig Corbitt<br>ZELLE, HOFMANN, VOELBEL, MASON & GETTE<br>44 Montgomery Street, Suite 3400<br>San Francisco, CA 94104<br>(415) 693-0700<br><br>*U.S. Indirect Purchaser Class and Subclass Counsel* |
| BY: */s/ Joseph Bruckner*<br>W. Joseph Bruckner<br>LOCKRIDGE GRINDAL NAUEN, PLLP<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>(612) 339-6900<br><br>*U.S. Indirect Purchaser Class and Subclass Counsel* | BY: */s/ Christopher Lovell*<br>Christopher Lovell<br>Imtiaz A. Siddiqui<br>LOVELL, STEWART, HALEBIAN, LLP<br>500 Fifth Avenue, Suite 58<br>New York, NY 10110<br>(212) 608-1900<br><br>*U.S. Indirect Purchaser Class and Subclass Counsel* |
| COHEN, MILSTEIN, SELLERS & TOLL, PLLC<br>1100 New York Avenue NW<br>West Tower, Suite 500<br>Washington, DC 20005<br>(202) 408-2600 | |

-40-