**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775 | Master File 06-MD-1775 (CBA) (VVP)<br><br>THIS DOCUMENT RELATES TO All Actions<br><br>**DECLARATION OF JEANNE C. FINEGAN, APR** |

**DECLARATION OF JEANNE C. FINEGAN, APR**

I, Jeanne C. Finegan, declare as follows:

1. I am a Senior Vice President of The Garden City Group, Inc. ("GCG"), with oversight responsibility for GCG Communications, a division of GCG. This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising, media and communications. My background and credentials as an internationally recognized notice expert along with judicial comments were previously filed with the Court in the Declaration of Jeanne C. Finegan, APR, dated July 5, 2007 ("First Finegan Declaration").

2. GCG was retained to develop and implement a legal notice program ("Notice Program") in the United States and other countries worldwide. The Notice Program was designed to provide notice of the proposed class action settlement between air cargo Plaintiffs in the above-captioned action and Defendants Deutsche Lufthansa AG, Lufthansa

Cargo AG, and Swiss International Air Lines Ltd. (the "Settlement"). In its Order Certifying Settlement Class, Preliminarily Approving Proposed Settlement, Scheduling Hearing for Final Approval Thereof, and Approving the Proposed Notice to the Class dated April 4, 2008 ("Preliminary Approval Order"), GCG was appointed by the Court as the Claims Administrator. Among its duties, GCG was directed to disseminate Notice to the Settlement Class.

3. The purpose of this Declaration is to report to the Court that the Notice Program as approved was successfully implemented and to fully describe the elements of the implementation of this multifaceted Program. Importantly, as set forth in the First Finegan Declaration and approved by the Court, this worldwide, comprehensive Notice Program provided the best notice practicable under the circumstances of this case, was reasonably calculated to reach the target audience, the Settlement Class, and is consistent with other similar court-approved notice programs. Additionally, to my knowledge, this Notice Program is the largest scale, country-specific international reach-based notice effort ever conducted in a class action settlement.

## IMPLEMENTATION OF NOTICE PROGRAM

4. I am able to report to the Court that the Notice Program was successfully implemented as designed and set forth in the First Finegan Declaration resulting in notice in 140 countries worldwide through a combination of direct mail and publication notice.

5. The Notice Program commenced on June 3, 2008 and was substantially completed on September 12, 2008. As set forth in detail in the First Finegan Declaration, the audience for this Notice Program was specifically targeted, with an emphasis on the business-to-business

model reflected in industry research and the customer list data provided by Lufthansa, non-settling Defendants, and IATA. The scope and estimated reach of the media in the Notice Program was consistent with other court-approved programs, including those within the international context. The Notice Program as designed properly reached the intended target, the Settlement Class, defined as:

> All persons and entities that purchased airfreight cargo shipping services for shipments within, to, or from the United States (hereinafter "Airfreight Shipping Services"), including those persons and entities that purchased Airfreight Shipping Services through freight forwarders, from any air cargo carrier (including, without limitation, those defendants named in the Actions, and specifically including Lufthansa[1]) and/or any named or unnamed co-conspirators (collectively "Defendants") during the period from January 1, 2000 to the Execution Date of this Settlement Agreement.[2] Excluded from the Settlement Class are Defendants, their respective parents, employees, subsidiaries, and affiliates, and all governmental entities. ("Settlement Class Members").

## ELEMENTS OF THE NOTICE PROGRAM

6. As set forth in the First Finegan Declaration, the elements in this multifaceted and comprehensive Notice Program included: (1) notice by direct mail; (2) notice by publication; (3) notice by Internet advertising; (4) notice by media outreach; (5) third-party outreach to trade organizations; (6) Settlement website; and (7) toll-free information telephone numbers, as well as additional telephone support.

///

///

[1] Lufthansa is defined in Paragraph 16 of the Settlement Agreement as Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd., individually and collectively, and their respective subsidiaries, predecessors, successors, and affiliates. Where used in this Declaration, "Lufthansa" refers to Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd.

[2] The Execution Date of the Settlement Agreement was September 11, 2006.

## MAILED NOTICE

7. In accordance with the timeline established by the Preliminary Approval Order, within 60 days thereafter, on June 3, 2008, GCG commenced mailing of the Notice of the Proposed Class Action Settlement, substantially in the form of Exhibit A to Plaintiffs' Letter to the Court of February 25, 2008, to each potential Settlement Class Member whose address had been obtained from any Defendant or from IATA. Notices were mailed postage paid, by U.S. first-class mail, or for international addresses, appropriately designated for delivery on a priority basis within the mail system of the recipient country. Pursuant to the Preliminary Approval Order, Lufthansa identified from its records the names and addresses of tens of thousands of potential customers, who were mailed Notice.

8. The complete mailed notice packet ("Notice Packet") contained the English language long-form Notice, the Claim Form, a list of toll and toll-free phone numbers by country, and an insert in multiple languages indicating where the reader could obtain additional information in languages other than English. It also contained the long-form Notice for the Canadian Settlements. A true and correct copy of the Notice Packet is attached hereto as Exhibit A. In accordance with the Preliminary Approval Order, both the Notice and supporting materials directed Settlement Class Members to the Settlement website described in further detail below, and provided telephone numbers and the mailing address that Settlement Class Members could call or write to request information or order mailed copies of relevant forms. The Notice also advised Settlement Class Members of their right to exclude themselves from the Settlement Class and the procedures for exclusion.[3] As further

[3] A separate declaration will be filed with the Court by Jennifer M. Keough of GCG, which details the timely and potentially valid requests for exclusion received by GCG in this matter.

instructed by the Preliminary Approval Order, the Notice included the date, time and location of the Fairness Hearing, and provided detailed information about the right to appear at the Fairness Hearing in person or by counsel. The Claim Form included in the Notice Packet was substantially in the same form as Exhibit B to Plaintiffs' letter to the Court of February 25, 2008, and included instructions for submitting claims.

9. In accordance with the Court's Preliminary Approval Order, GCG completed mailing of the Notice Packets prior to the November 12, 2008 date established and more than thirty days before the Fairness Hearing. For the purpose of mailing Notice Packets, in addition to the data that was initially received from Lufthansa, 28 non-Settling Defendants and IATA also provided lists of potential Settlement Class Members to GCG for the purpose of mailed Notice. Prior to mailing Notice Packets to the records that GCG was able to utilize, domestic and Canadian addresses were updated by using the National Change of Address database available through the United States Postal Service and the Canadian National Change of Address database available through the Canadian Postal Service. In addition, prior to mailing Notice Packets to addresses outside the United States, a review against the Office of Foreign Asset Control ("OFAC") was performed. In addition, GCG mailed a copy of the Notice Packet to any person or entity who requested it by telephone, email or in writing. Ongoing fulfillment of requests and any re-mailing to updated addresses received by GCG continues.

10. An initial mailing of more than 176,000 Notice Packets was completed as of July 6, 2008, including more than 90,000 Notice Packets that were mailed on June 3, 2008. From combined sources of Lufthansa data, data from other entities, and requests to the Claims Administrator, a total of more than 310,000 Notice Packets were mailed as of September 4,

2008.[4] Lufthansa's data alone resulted in more than 75,000 Notice Packets mailed to potential Settlement Class Members.

## NOTICE BY PUBLICATION

11. The Notice Program was implemented following the media strategy and methodology set forth in detail in the First Finegan Declaration. In order to create a best practicable notice, which is reasonably calculated under the circumstances to reach the targeted class, the Notice Program utilized a tiered approach, as described in the First Finegan Declaration, which was implemented as approved by the Court.

## SUMMARY NOTICE

12. The Court's Preliminary Approval Order directed that notice by publication was to begin no later than 30 days after mailed Notice commenced, concluding at least 30 days prior to the Fairness Hearing; both of these requirements have been accomplished. As required, the Publication Notice (referred to herein as Summary Notice) was published substantially in the form of Attachment B to the Settling Parties' November 20, 2007 Submission to the Court. The Preliminary Approval Order provided that the Summary Notice direct Settlement Class Members to the website and provide telephone numbers that Settlement Class Members may call to request more information or order mailed copies of relevant forms, advise Settlement Class Members of their right to exclude themselves in summary form, and provide the date, time and location of the Fairness Hearing. As set forth in further detail below, the Summary Notice was timely published in accordance with these instructions.

[4] On July 20, 2007, GCG provided notice by mail of the First Consolidated Amended Complaint, the proposed Settlement, the Class Notice, and other materials, all as required under the Class Action Fairness Act, 28 U.S.C. §1715(b), to appropriate state and federal attorneys general.

13. The Summary Notice for publication was written in a plain language style, using the translation conventions appropriate for the target audience language in each country. Plain language is simply a more conversational form of communication, which is used, for example, when reporting the news. The concept, now integrated into Legal Notice practice, is one that has received note from various national and international authorities and organizations including the Federal Judicial Center in the United States, the Plain Language Association International, the CBA Plain Language Committee of the Canadian Bar Association and Plain English Campaign in the United Kingdom, among others. As guided by these authorities, the Summary Notice, as well as the full Notice of Proposed Settlement, were written in clear, concise, and understandable language. A copy of the Summary Notice in English is attached hereto as Exhibit B. A copy of the Summary Notice in each of the 36 languages is attached hereto as Exhibit C.

**TRANSLATION**

14. The Summary Notice, long-form Notice, Claim Form, website and other important documents or information were translated into 36 languages in addition to English. A list of those languages along with a certificate of translation certification from Merrill Brink International ("MBI") is attached hereto as Exhibit D. MBI has informed me that native-speaking linguists did the translation, editing and proofreading, from English into the 36 respective languages for all portions of this project. GCG's translation protocol for this matter was to require that each linguist possessed the level of legal or technical knowledge and experience necessary to translate the Summary Notice into a culturally appropriate and technically accurate manner.

///

15. I have been informed that MBI followed a project management protocol specific to GCG, including multiple levels of quality control. Understanding that the text could not be translated literally, certain translation conventions within the target languages were established, so that the original language nuances and tone remained intact.

## PROGRAM AS IMPLEMENTED

16. As set forth in the First Finegan Declaration, this Notice Program was based on a scientific methodology that is used throughout the advertising industry and which has been embraced by courts in the United States. As implemented, the media portion of the Notice Program had an impressive estimated reach of 84 percent on average of the targeted Settlement Class in countries of emphasis, which is described in detail in the following paragraphs.[5]

## TIER I

17. For the paid media component of the Notice Program as implemented, Tier I included 15 countries: Australia, Canada, China, France, Germany, India, Italy, Japan, Malaysia, Spain, South Korea, Switzerland, Taiwan, the United Kingdom, and the United States. The countries in Tier I received primacy in the Notice Program due to the fact that (1) the United States is the site of this filed action, and the country within, to or from which air cargo was shipped pursuant to the class definition, and (2) they represent a majority of air cargo

[5] As is commonplace and anticipated in the course of implementing a Notice Program of this scope and complexity, modifications were made, all of which maintained and enhanced the overall integrity of the Program. Such modifications included substitutions of suitable replacement publications and minor adjustments in Summary Notice content, with agreement of the parties, to accommodate legal requirements of governments or publications. Together with the types of changes that are to be anticipated in any notice program of this scope, our review of additional data provided to GCG by 28 non-Settling Defendants and IATA resulted in the addition of publications in 24 countries, further enhancing the Notice Program. The worldwide edition of one business newspaper was also added. In India, based on updated research survey reports, the newspaper program was adjusted, while achieving the same Reach.

business globally with a nexus to the United States. Since my previous Declaration was filed, based on additional information provided by IATA and non-settling Defendants, two countries, Spain and Australia, were moved into a primacy Tier I position from Tier II and Tier III, respectively.

18. GCG utilized nationally syndicated media research to quantify the percentage of both air cargo shippers and the adult population reached by this Notice Program. That research is identified more fully in the footnote below.[6] To that end, the Notice Program employed appropriate nationally circulated magazines, leading national and local newspapers and newspaper supplements, business press and trade press, a media relations effort and the Internet.

19. As fully described in my previous Declaration, the most useful analysis of media performance for legal notice is the Reach and Frequency model. Reach refers to the estimated percentage of the unduplicated audience exposed to the campaign. Frequency, in turn, refers to how many times, on average, a target audience had the opportunity to see the message.

///

///

///

[6] **Australia-** Roy Morgan Single Source Australia Oct. 2006-Sept. 2007. **Canada –** PMB 2007 Two-Year Readership Database**. China** – CNRS (China National Readership Survey) Jan – Sept. 2006. **France** – Ipsos FCA 2006. **Germany**- European Business Readership Survey (EBRS) 2006; Media Analyse (MA) 2007 Presse I. **India** - Indian Readership Survey (IRS) 2007. **Italy** – EBRS 2006; Audipresse 2006/02. **Japan –** Japan Business Readership Survey (JBRS) 2006; J-READ 2006. **Malaysia** – Asian Business Readership Survey (ABRS) 2006; PAX (Fall 2006). **South Korea** – ABRS 2006; PAX (Fall 2006). **Spain** – EGM 2007; Estudios Directivos 2007. **Switzerland** - MACH Basic 2007-1; MA Leader 2007. **Taiwan** – ABRS 2006; PAX (Fall 2006). **United Kingdom** – British Business Survey (BBS) 2005; National Readership Survey (NRS) 2007. **United States** - Mediamark Research & Intelligence, LLC (MRI) Doublebase and Doublebase Business-to-Business Surveys 2006.

20. Applying the analysis model to the Notice Program yielded the following estimated Reach and Frequency for the Tier I business cargo professional target and the adult target.[7]

| Country | Target | Reach | Average Frequency |
|---|---|---|---|
| Australia | Business/Cargo | 73% | 2.5 |
| | Adults | 63% | 2.3 |
| Canada | Business/Cargo | 80% | 3.9 |
| | Adults | 71% | 3.5 |
| China | Business/Cargo | 69% | 2.4 |
| | Adults | 56% | 2.3 |
| France | Business/Cargo | 70% | 3.2 |
| | Adults | 69% | 3.1 |
| Germany | Business/Cargo | 78% | 2.6 |
| | Adults | 71% | 1.9 |
| India[8] | Mumbai Adults | 70% | 2.9 |
| | Delhi Adults | 73% | 2.2 |
| Italy | Business/Cargo | 96% | 3.4 |
| | Adults | 64% | 1.8 |
| Japan | Business/Cargo | 94% | 1.6 |
| | Adults | 73% | 1.2 |
| Malaysia | Business/Cargo | 97% | 1.9 |
| | Adults in Kuala Lumpur | 76% | 1.5 |
| South Korea | Business/Cargo | 96% | 5.2 |
| | Adults in Seoul | 69% | 2.9 |
| Spain | Business/Cargo | 80% | 3.8 |
| | Adults | 65% | 3.1 |
| Switzerland | Business/Cargo | 83% | 2.4 |
| | Adults | 71% | 1.9 |
| Taiwan | Business/Cargo | 94% | 3.2 |
| | Adults in Taipei | 70% | 2.8 |
| United Kingdom | Business/Cargo | 80% | 4.0 |
| | Adults | 68% | 2.8 |
| United States | Business/Cargo | 81% | 2.1 |
| | Adults | 74% | 2.0 |

///

///

[7] It should be noted that specific definitions of the business cargo target varied slightly from country to country. Moreover, there is limited media research available for Tier II countries; however, our consistent approach would lead to the reasonable assumption that we have achieved similar results in those countries. In China, India, Malaysia, South Korea and Taiwan, Reach and Frequency are regionalized to follow manufacturing/trade centers and business populations. Some publications in China and Italy refused to publish legal notices; therefore reasonable substitutions were made in those countries.

[8] Although India is a Tier I country, it was measured against adults only because there is no business survey information available.

## TIER II

21. Tier II of the Notice Program encompassed 21 countries: Austria, Belgium, Brazil, Chile, Colombia, Egypt, Finland, Hong Kong[9], Ireland, Israel, Madagascar, Mexico, Netherlands, Peru, Portugal, Russia, Singapore, South Africa, Sweden, Thailand and Turkey. In Tier II, the Notice Program uses leading newspapers and or magazines per country (on average multiple insertions of between three to seven). In Tier II countries, as well as in Tier III and IV countries, the Notice Program relies upon available readership studies in order to select the most appropriate publications along with circulation and readership analysis. Although limited survey data is available for Tier II countries, EBRS[10] data in six of these Tier II countries show the reach for the business/cargo target to meet or exceed 84 percent. We have applied a consistent media strategy in all priority countries, and therefore, one can reasonably extrapolate similar results from country to country.

22. As set forth in the First Finegan Declaration, trade data provided from USA Trade Online ("USA-T") (the official source of U.S. export and import statistics) and Airports Council International ("ACI") (a worldwide association created to represent the mutual interest of airport operators) was utilized as one factor in determining the tiers. As implemented, the Notice Program included 36 countries in Tiers I and II, which accounted for approximately 86 percent of all U.S. air cargo imports by weight according to USA-T data. Additionally, the countries selected for Tiers I and II also account for approximately 86 percent of worldwide air cargo by tonnage, based on ACI data.

[9] Although Hong Kong is not a separate country, for purposes of the tier analysis, it is broken out separately in light of the manner in which trade and other data is reported.

[10] EBRS - European Business Readership Survey 2006.

## TIER III

23. Tier III of the Notice Program included another 32 countries, which were selected and prioritized based on the identified criteria for the tier system. The 32 countries comprising Tier III of the Notice Program are: Argentina, Bahrain, Cambodia, Czech Republic, Denmark, Ecuador, Ethiopia, Fiji, Greece, Guatemala, Hungary, Indonesia, Kenya, Luxembourg, Mauritius, New Caledonia, New Zealand, Nicaragua, Nigeria, Norway, Pakistan, Panama, Philippines, Poland, Qatar, Romania, Saudi Arabia, Sri Lanka, Uganda, United Arab Emirates, Venezuela, and Vietnam.[11]

## TIER IV

24. Tier IV countries were reached through international publications, international trade press, a globally distributed press release, and the Internet.

## TIERS I-IV

25. A list of the publications together with proof of each publication in which the Summary Notice was published in all Tiers is attached hereto as Exhibit E.

26. All Tiers of the Notice Program incorporated trade press, a comprehensive media outreach effort, international newspapers and magazines, and the Internet.

## INTERNET ADVERTISING

27. As set forth in the First Finegan Declaration, in addition to print media, the Notice Program was enhanced by the use of Internet advertising on trade websites such as Quick Caller Online (an online reference for regional air cargo directories for North America) and

[11] While publishers in Ecuador and Venezuela declined to publish the legal notice, a situation that occurs on occasion with international in-country publications, broader international publications still published the legal notice, which covered these countries as well.

The International Air Cargo Association as well as broad-reaching sites such as AOL and Weather.com. The banner advertisements linked directly to the Settlement website where potential Settlement Class Members could find more information and file a Claim Form. While the Internet impressions are not included in the total Reach and Frequency numbers mentioned above, they helped to increase the total visibility of the program through increased visits to the official website. A list of the websites on which advertisements appeared is attached hereto as Exhibit F.

**GLOBAL PUBLICATIONS**

28. As set forth in the First Finegan Declaration, the Notice Program was further strengthened by the use of global media, which included publication of the Summary Notice in well respected and broadly distributed international editions of publications such as *The Wall Street Journal*, *The Financial Times*, *Time Magazine*, *Newsweek Magazine*, *The New York Times*, *The International Herald Tribune, The Economist* and *USA Today*. A comprehensive list of global publications, including circulation and the date of publication, in which the Summary Notice was published, is attached hereto as Exhibit G.

**TRADE PUBLICATIONS**

29. As set forth in the First Finegan Declaration, the Notice Program included publication of the Summary Notice in 31 key international and domestic trade publications targeting air cargo shipping professionals, including *Air Cargo World*, *Air Cargo Week*, *Air Cargo News*, *Inbound Logistics*, *Global Logistics*, *Cargo News Asia-Pacific* and *Logistics Management*, among others. A comprehensive list of trade publications, including circulation and date of publication, in which the Summary Notice was published is attached hereto as Exhibit H.

## GLOBAL MEDIA OUTREACH

30. As set forth in the First Finegan Declaration, in addition to print and Internet advertising, the Notice Program was further enhanced by the use of a global media relations effort. On June 26, 2008 a press release in the 36 languages plus English was issued through PRNewswire's Premiere Global Network. A copy of the press release in English is attached hereto as Exhibit I.

31. The media relations component of the Notice Program increased the opportunity for potential Settlement Class Members to see this Notice as evidenced by more than 235 articles, blog mentions and web postings within the U.S. and internationally. A full report of the articles, blog mentions and web postings, which were tracked by my staff is attached hereto as Exhibit J.

## ADDITIONAL OUTREACH EFFORTS

32. **Third-Party Outreach.** As set forth in the First Finegan Declaration, to enhance the already robust outreach efforts, the Notice Program also included third-party mailings and/or faxes of the Summary Notice to over 300 key trade associations and freight forwarders such as Airports Council International, Canadian International Freight Forwarders Association and the National Customs Brokers and Forwarders Association of America, among others. GCG included a cover letter along with the Summary Notice. The letter provided a recap of the information found in the Summary Notice along with a request that the recipients of the letter further distribute the information to their membership through newsletters, web postings or additional mailings. A copy of the cover letter is attached hereto as Exhibit K.

///

33. **Website.** Pursuant to the Preliminary Approval Order, Notice was published on a website established for the purposes of this Settlement within 60 days of the date of the Preliminary Approval Order. The official Settlement website, www.aircargosettlement.com, went live on June 3, 2008. In accordance with the Preliminary Approval Order, the website contained the Notice as well as other detailed information about the Settlement. The website continues to be maintained by GCG as a worldwide information hub, where potential claimants and interested parties can obtain detailed information about the Settlement. The website's homepage displays flags for each applicable country with information provided in 36 languages in addition to English. On the website, visitors may obtain information about the Settlement, including native language translations of the long-form Notice, and the Claim Form. The website includes an email address that Settlement Class Members can use to communicate directly with GCG. In accordance with the Preliminary Approval Order, Settlement Class Members can access complete information on the Settlement process, including the right to exclude themselves and the required procedures for submitting a request for exclusion and can download relevant documents and forms, or can contact the Claims Administrator via email to request forms be mailed. The website includes a complete list by country of toll and toll-free numbers Settlement Class Members can call to contact the Claims Administrator. The web address, www.aircargosettlement.com, was prominently displayed in the published Summary Notice and mailed Notice and in the trade association cover letter.

34. The web traffic to the Settlement website further supports the successful results of this global outreach effort. As of November 9, 2008, the website has received over 54,000 visitors from 135 countries, resulting in more than 365,000 pages viewed. A graphical

illustration with detail of visitors by country of origin is attached hereto as Exhibit L. One metric of engagement with web content is to measure the duration of a visit. On average visitors spent approximately six minutes on the site.

35. As set forth in the First Finegan Declaration, to optimize search engine indexing and search result rankings for the official site, GCG incorporated Meta and Title tags throughout the website. Utilizing these tags helps search engines find and index the website and increases its ability to be found in a search. The Meta description included was "If you purchased air cargo shipping services within, to or from either the United States or Canada from January 1, 2000 to September 11, 2006, your rights could be affected by one or more proposed class action settlements." The Meta keywords included: air cargo, air cargo shipping, air cargo shipping settlement, air cargo settlement, Lufthansa settlement, www.aircargosettlement.com, air cargo shipping services settlement, Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd., airfreight cargo shipping services settlement, international air cargo settlement, Lufthansa Cargo AG settlement, and Lufthansa air cargo settlement. The Title tag included was "Air Cargo Settlement website."

36. **Toll-Free Telephone.** As described in the First Finegan Declaration, GCG established and maintains a comprehensive multi-language telephone interactive voice response ("IVR") system dedicated to this case to accommodate telephone inquiries from Settlement Class Members worldwide, which went live on June 3, 2008. The system is accessible toll-free from countries where the notice was published in an in-country publication wherever toll-free service is available. For global publications, an international number was provided. Toll numbers were established for countries in which the Summary Notice was published where toll-free service could not be established. In addition, all toll-

free and toll telephone numbers are posted on the website. Callers are able to select from a total of 36 languages in addition to English language options. For each country's phone number, whether toll or toll-free, language options appropriate to the country were available. As of November 9, 2008, the IVR has received more than 3,900 calls, resulting in over 9,800 IVR minutes. The IVR provides an option where callers who have additional questions or need further information can leave a message and receive a return call from GCG's live operators or staff. As of November 9, 2008, 577 callers have left messages, and GCG has returned all calls in multiple languages.

## CONCLUSION

37. Based on the detailed analysis provided in my previous Declaration and as described above, and my experience, in my opinion, this Notice Program was reasonably calculated, using tools and methodologies accepted within the advertising industry, to provide the best notice practicable under the circumstances in this case. The massive, multifaceted Notice Program reached Settlement Class Members through the combination of a variety of communications vehicles, including direct mail, a robust and wide-reaching publication notice campaign, a comprehensive global media relations program, Internet banner advertising, a multi-language Settlement website, and information available from a comprehensive multi-language telephone support system comprised of toll-free and toll telephone numbers. In my opinion, this international Notice Program readily met the standard for providing legal notice to Settlement Class Members and more than adequately satisfied due process considerations.

///

38. I declare under penalty of perjury under the laws of the State of Oregon that the foregoing to the best of my knowledge and as reported to me is true and correct.

Executed on Nov. 11, 2008 at Lake Oswego, Oregon.

Jeanne C Finegan

JEANNE C. FINEGAN, APR