United States District Court
Eastern District of New York

| | |
|---|---|
| In re:<br><br>Air Cargo Shipping Services<br>Antitrust Litigation<br><br>MDL No. 1775 | 06-MD-1775 (JG) (VVP) |
| This Document Relates To:<br><br>All Cases | |

**Plaintiffs' Opposition to Defendants' Motion
for Certification for Interlocutory Appeal**

## Table of Contents

Table of Authorities ....................................................................................ii

I.      Introduction ...................................................................................... 1

II.     Background .........................................................................................1

III.    Argument ........................................................................................... 5

        A.    There Is No Substantial Ground for Difference of Opinion................... 6

        B.    An Immediate Appeal Would Not Materially Advance the Ultimate
              Termination of the Litigation ............................................................ 11

        C.    The Court Should Exercise Its Discretion to Deny Certification ......... 15

IV.     Conclusion ........................................................................................ 17

# Table of Authorities

**Page(s)**

**Cases**

*Aspen Ford, Inc. v. Ford Motor Co.,*
   No. CV-01-4677, 2008 WL 163695 (E.D.N.Y. Jan. 15, 2008)................................. 9

*Assoc. Gen. Contractors v. Cal. State Council of Carpenters,*
   459 U.S. 519 (1983) .......................................................................................... 11

*BHP New Zealand Ltd. v. UCAR Int'l, Inc.,*
   106 Fed. Appx. 138 (3d Cir. Aug. 9, 2004) ........................................................... 16

*BHP New Zealand, Ltd. v. UCAR Int'l, Inc.,*
   Civ. A. No. 99-4772 (E.D. Pa. July 25, 2001)........................................................ 16

*Carpet Group Int'l v. Oriental Rug Importers Ass'n,*
   227 F.3d 62 (3d Cir. 2000) ............................................................................... 4, 8

*Celauro v. Citibank, N.A.,*
   No. 97-8022 (2d Cir. Oct. 8, 1997)...................................................................... 16

*City of New York v. Milhelm Attea & Bros., Inc.,*
   No. 06-CV-3620, 2009 WL 701005 (E.D.N.Y. Mar. 11, 2009) ............................... 11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
   502 F.3d 91 (2d Cir. 2007) ................................................................................. 10

*E.E.O.C. v. Maggie's Paratransit Corp.,*
   351 F. Supp. 2d 51 (E.D.N.Y. 2005) .................................................................... 11

*Executive Software N. Am., Inc. v. U.S. Dist. Ct.,*
   24 F.3d 1545 (9th Cir.1994) ................................................................................. 6

*Gen. Elec. Co. v. Latin Am. Imports, S.A.,*
   Civ. A. No. 99-92, 2002 WL 1832030 (W.D. Ky. Feb. 14, 2002)............................ 17

*German v. Fed. Home Loan Mortg. Corp.,*
   896 F. Supp. 1385 (S.D.N.Y. 1995) ........................................................... 6, 8, 9, 12

*Gottesman v. Gen. Motors Corp.,*
   268 F.2d 194 (2d Cir. 1959)................................................................................. 14

*Holsey Corp. v. Waldon Street Book Co.,*
   No. 05-CV-4210, 2006 WL 2506592 (E.D.N.Y. Aug. 21, 2006) ......................... 6, 12

ii

*In re Agent Orange Prod. Liab. Litig.*,
   534 F. Supp. 1046 (E.D.N.Y. 1982) ...................................................... 12

*In re Air Crash Near Nantucket Islands, Mass. on October 31, 1999*,
   No. 00-MDL-1344, 2004 WL 2269675 (E.D.N.Y. Oct. 8, 2004) ........................... 11

*In re Flor*,
   79 F.3d 281 (2d Cir. 1996) .............................................................. 9

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ........................... 16

*In re Microsoft Antitrust Litig.*,
   127 F. Supp. 2d 702 (D. Md. 2001) ...................................................... 17

*In re NASDAQ Market Makers Antitrust Litig.*,
   938 F. Supp. 232 (S.D.N.Y. 1996) .................................................. 12, 16

*In re New York City Mun. Sec. Litig.*,
   87 F.R.D. 572 (S.D.N.Y. 1980) .......................................................... 16

*Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*,
   804 F.2d 24 (2d Cir. 1986) ......................................................... 13, 14

*James v. Gonzales*,
   464 F.3d 505 (5th Cir. 2006) ........................................................... 8

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir.1990) .............................................................. 5

*Kloth v. Microsoft Corp.*,
   No. 01-656 (4th Cir. June 27, 2001) .................................................... 17

*Kruman v. Christie's Int'l PLC*,
   284 F.3d 384 (2d Cir. 2002) ..................................................... 3, 4, 7, 8

*Max Daetwyler Corp. v. Meyer*,
   575 F. Supp. 280 (E.D. Pa. 1983) ....................................................... 9

*Mayers v. New York Community Bancorp, Inc.*,
   No. CV-03-5837, 2006 WL 2013734 (E.D.N.Y. July 18, 2006)............................... 11

*McNeil v. Aguilos*,
   820 F. Supp. 77 (S.D.N.Y. 1993) ........................................................ 5

*MM Global Servs., Inc. v. Dow Chem. Co.*,
   Civ. No. 3:02cv1107 (D. Conn. June 11, 2004) ...................................................... 17

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   71 F. Supp. 2d 139 (E.D.N.Y. 1999) .................................................... 5, 15

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
   281 F.3d 629 (7th Cir. 2002) ............................................................... 13

*Permanent Mission of India to the United Nations v. City of New York*,
   551 U.S. 193 (1997) ......................................................................... 7

*Primavera Familienstifung v. Askin*,
   139 F. Supp. 2d 567 (S.D.N.Y. 2001) ............................................... 9, 14

*Riverkeeper, Inc. v. United States E.P.A.*,
   No. 06 Civ. 12987 (S.D.N.Y. Nov. 26, 2007) ....................................... 10

*Ryan, Beck & Co., LLC v. Fakih*,
   275 F. Supp. 2d 393 (E.D.N.Y. 2003) ............................................... 8, 10

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .......................................................................... 8

*Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*,
   290 F. Supp. 122 (S.D. Tex. 1968).................................................... 15

*Turicentro, S.A. v. Am. Airlines Inc.*,
   303 F.3d 293 (3d Cir. 2002)............................................................ 7, 8

*Wausau Business Ins. Co. v. Turner Const. Co.*,
   151 F.Supp.2d 488 (S.D.N.Y. 2001) ................................................... 6

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*,
   964 F.2d 85 (2d Cir.1992)................................................................. 5

*Williston v. Eggleston*,
   410 F. Supp. 2d 274 (S.D.N.Y. 2006) ................................................. 6

**Statutes**

28 U.S.C. § 1291..................................................................................... 15

28 U.S.C. § 1292(b) .........................................................................passim

Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a ..................... 1, 3

## I.    Introduction

This Court correctly held that Plaintiffs' claims relating to shipments to the United States are not barred by the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a, and that Plaintiffs have standing to bring these claims. Although Defendants are disappointed by this ruling, there is no substantial doubt regarding its correctness. For this reason, and because an immediate appeal would not materially advance the ultimate termination of the litigation but rather would result in needless delay, the Court should deny Defendants' motion to certify its August 21, 2009 order for appeal under 28 U.S.C. § 1292(b).

## II.    Background

Plaintiffs allege that Defendants engaged in a worldwide conspiracy to fix the prices of air cargo shipments, including shipments to and from the United States. Fifteen of the Defendants have now entered guilty pleas admitting their participation in the conspiracy, and three other defendants have sought leniency from the Department of Justice ("DOJ"). All but three of the fifteen convicted Defendants pled guilty to criminal informations brought by the DOJ charging them with fixing prices to and from the United States. *See generally* Docket No. 959, Exs. 2-14.[1] And most of the convicted Defendants admitted in their plea agreements that

---

[1] The criminal informations charging Defendants Japan Airlines International Co., Ltd. ("JAL"), Nippon Cargo Airlines Co., Ltd. ("NCA"), and Qantas Airways Limited ("Qantas") refer to cargo rates charged to customers in the United States and elsewhere without specifically stating that the shipments were to and from the United States. *See* Docket No. 959, Exs. 7, 11, 12.

they and their co-conspirators fixed prices to and from the United States. *See generally* Docket No. 946, Ex. A.[2] Indeed, the plea agreement of Defendant Cathay Pacific Airways Limited refers ***only*** to shipments to (not from) the United States. *See id.*, Ex. A at 62.

Plaintiffs and the members of the proposed class are direct purchasers of air cargo shipping services to, from, or within the United States, and they allege that they were overcharged as a result of Defendants' unlawful conduct. Defendants moved to dismiss Plaintiffs' claims relating to inbound shipments (including claims of U.S.-based purchasers that arranged for shipments to the United States), arguing that they were barred by the FTAIA and asserting that Plaintiffs lacked standing to bring these claims. In his September 26, 2008 Report and Recommendation, Magistrate Judge Pohorelsky recommended denying Defendants' motion, noting that the FTAIA expressly provides that the antitrust laws apply to conduct involving import trade or import commerce. *See* R&R at 24. Under the FTAIA:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (***other than import trade or import commerce***) with foreign nations unless—
>
> (1)  such conduct has a direct, substantial, and reasonably foreseeable effect—

[2] The plea agreements of Defendants JAL, NCA, Qantas, Korean Air Lines Co., Ltd., and Martinair Holland N.V. do not specifically refer to shipments to and from the United States. The plea agreements of Defendants Société Air France and Koninklijke Luchtvaart Maatschappij N.V., Asiana Airlines, Inc., British Airways Plc, Cargolux Airlines International S.A., El Al Israel Airlines Ltd., Lan Cargo S.A. and Aerolinhas Brasileiras S.A., and SAS Cargo Group A/S specifically refer to shipments to and from the United States. *See generally* Docket No. 946, Ex. A.

(A) on trade or commerce which is not trade or commerce
with foreign nations, or on import trade or import
commerce with foreign nations; or

(B) on export trade or export commerce with foreign
nations, of a person engaged in such trade or
commerce in the United States; and

(2) such effect gives rise to a claim under the provisions of
sections 1 to 7 of this title, other than this section.

15 U.S.C. § 6a (emphasis added).

Citing *Kruman v. Christie's International PLC*, 284 F.3d 384 (2d Cir. 2002),

Magistrate Judge Pohorelsky observed that the "relevant inquiry" was the conduct

of Defendants rather than Plaintiffs and that the "conduct" at issue could not be

narrowly limited to Defendants' charging supracompetitive prices; the focus instead

must be on Defendants' agreement to fix prices for services "performed along entire

transportation routes, touching both the country of origin and the country of

destination." *Id.* at 25-26 (citing *Kruman*, 284 F.3d at 395, 398).

Then, through "[r]ather straightforward analysis," Magistrate Judge

Pohorelsky concluded that Plaintiffs' claims arise out of conduct involving import

commerce:

> The conspiracy alleged targeted the transportation of
> goods by airfreight, a primary vehicle of modern import
> commerce. Airfreight, in the global economy, transports
> large amounts of the goods that travel from abroad into
> the United States, as alleged in the plaintiffs' complaint.
> (Compl. ¶¶ 77-79.) Transportation to the United States is
> of course essential to the commerce in those imported
> goods; the commerce obviously could not occur unless the
> goods are transported from their country of origin to the

3

> United States. It follows that conduct directed at fixing
> the cost of airfreight ***necessarily affects*** the commerce in
> the goods transported by airfreight. The inseparable
> connection between the airfreight and the commerce in
> imported goods is sufficient to draw the conclusion that
> the defendants' price-fixing conduct targeting such a
> primary channel of import trade and commerce "involves
> 'import trade or import commerce'" within the meaning of
> the FTAIA.

*Id.* at 27 (emphasis added) (quoting *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)). Magistrate Judge Pohorelsky also distinguished the facts of several cases cited by Defendants. *See id.* at 28-29. Finally, he determined that because Plaintiffs' claims arising from shipments to the United States were legally sufficient, they had properly alleged an antitrust injury and were the appropriate parties to pursue their claims. *See id.* at 29-30.

Defendants objected to the Report and Recommendation, claiming that Magistrate Judge Pohorelsky interpreted the term "involves" in the FTAIA to mean "affects" and arguing that it should be read instead as "constitutes." Docket No. 799, at 9. In response, Plaintiffs explained that Magistrate Judge Pohorelsky defined "involved" not as "affects" but as "***necessarily*** affects" and that this is a standard dictionary definition of the term. Docket No. 867, at 11. Plaintiffs also noted that the ruling was consistent with the Second Circuit's holding that import commerce is "the trade in ***and subsequent movement of***" goods, *id.* at 13 (quoting *Kruman*, 284 F.3d at 395 (emphasis added)), and that the DOJ agrees with Plaintiffs that the Sherman Act applies to Defendants' shipments to the United States, *id.* at 20-21.

4

On August 21, 2009, this Court adopted the Report and Recommendation on the FTAIA and standing issues and denied Defendants' motion to dismiss on these grounds. Specifically, it found "the objections to the R&R to be without merit" and that it could not "improve upon Judge Pohorelsky's skillful analyses of the issues." Docket No. 938, at 2. Defendants then moved for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

## III.   Argument

A district court may certify an interlocutory order for appeal only if it "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation…." 28 U.S.C. § 1292(b). "These three prerequisites create a significant hurdle to certification, and the barrier is elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990)).

For this reason, district courts must "exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir.1992). And even if the three statutory criteria are met, a district court has "independent and 'unreviewable' authority to deny certification." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 146

5

(E.D.N.Y. 1999) (quoting *Executive Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1550 (9th Cir.1994)).

Assuming for purposes of this motion that the order involves a controlling question of law, (a) there is no substantial ground for difference of opinion and (b) an immediate appeal from the order would not materially advance the ultimate termination of the litigation. For these reasons, and because the delay that would result from an interlocutory appeal would not be in the interests of justice, this case does not present one of the "rare exceptions to the general rule against piecemeal appeals." *Holsey Corp. v. Waldon Street Book Co.*, No. 05-CV-4210, 2006 WL 2506592, at *2 (E.D.N.Y. Aug. 21, 2006) (Gleeson, J.). The Court should deny Defendants' motion.

## A.    There Is No Substantial Ground for Difference of Opinion

As this Court has explained, Defendants bear the burden of demonstrating "substantial doubt" regarding the correctness of the order from which appeal is sought. *See Holsey*, 2006 WL 2506592, at *2 (quoting *Williston v. Eggleston*, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006)). They cannot meet this burden merely by asserting that the ruling was incorrect or that the question is difficult or close. *See Wausau Business Ins. Co. v. Turner Const. Co.*, 151 F.Supp.2d 488, 491 (S.D.N.Y. 2001); *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1399 (S.D.N.Y. 1995).

There is no "substantial doubt" that the Court's order was correct. Under Second Circuit precedent, the issue is whether Defendants' conduct in conspiring to

fix prices for air cargo shipments to the United States – not the payment of supracompetitive prices by particular Plaintiffs in particular locations – "involves" import commerce. *Kruman*, 284 F.3d at 395, 398. And under the same Second Circuit precedent, import commerce is "the trade in ***and subsequent movement of***" goods. *Id.* at 395 (emphasis added).

      The Court's ruling is further supported by *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293 (3d Cir. 2002), in which the Third Circuit held that whether conduct involves import commerce depends on whether "items or services were brought into the United States by the payments alone." *Id.* at 304. Here, the payments to Defendants – whether made inside or outside the United States – were for a service that brought air cargo into the United States. Thus, under any sensible definition, Defendants' conspiracy to increase the price to deliver goods to the United States from abroad plainly involves "import trade or import commerce."

      Indeed, this is precisely the position taken by the DOJ in the related criminal proceedings. As described above, nearly all of the criminal informations, and most of the plea agreements themselves, refer to a conspiracy affecting inbound shipments. The DOJ "contends that the defendant's cargo shipments on routes into the United States during the charged conspiracy period...violated the U.S. antitrust laws." *E.g.*, Docket No. 946, Ex. A at 9. The DOJ's view should be deemed persuasive by this Court. *See Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 204 (1997) (recognizing that "well-reasoned opinions of the Executive

Branch about matters within its expertise" may have the "power to persuade") (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Defendants' argument ignores all of this authority and effectively reads the term "involves" out of the FTAIA entirely. In contrast, the Court's ruling respects precedent, gives effect to all parts of the statute, and is consistent with the standard dictionary definition of "involves" and case law interpreting it in other contexts. *See, e.g.*, *James v. Gonzales*, 464 F.3d 505, 508 (5th Cir. 2006) ("Whether an offense 'involves' fraud is a broader question than whether it constitutes fraud.").

As cases such as *Kruman*, *Turicentro*, and *Carpet Group* illustrate, other courts have addressed the FTAIA's application to import commerce. Defendants rely on the argument that no prior case has presented facts identical to those here. *See* Defs.' Mem. at 6. But rarely do two cases involve the same facts, and the Court properly applied the governing law to the facts of this case. While Defendants believe that those facts are more analogous to certain cases than to others, this Court found otherwise and distinguished Defendants' cases on their facts. *See* Defs.' Mem. at 8. Disagreement between the parties as to "the interpretation of persuasive authority" does not "constitute a 'difference of opinion' sufficient to warrant certification." *German*, 896 F. Supp. at 1398; *see also Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 397 (E.D.N.Y. 2003) (holding that there was no substantial ground for difference of opinion when the party seeking to appeal relied on distinguishable cases from outside this Circuit).

Indeed, one of the cases on which Defendants themselves rely, *Aspen Ford, Inc. v. Ford Motor Co.*, No. CV-01-4677, 2008 WL 163695 (E.D.N.Y. Jan. 15, 2008), illustrates why certification should be denied here. In *Aspen Ford*, as in this case, the party seeking to appeal disagreed with the way in which the court distinguished another case and argued that the court's interpretation of a statute was incorrect. *See id.* at *3. The court held that neither argument "suffice[d] to establish a substantial ground for a difference in opinion" and denied the § 1292(b) motion. *Id.* Or, in the words of the court in another of Defendants' cases, even if there were "intellectually challenging issues arising in a difficult and complex litigation," this still would not be "a situation warranting certification of an interlocutory appeal under § 1292(b)." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 574 (S.D.N.Y. 2001).

Even if this Court were writing on a blank slate – which it is not – "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). "Rather, '[i]t is the duty of the district judge…to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Id.* (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983)); *see also German*, 896 F. Supp. at 1398 ("Certification…is not intended as a vehicle to provide early review of difficult rulings in hard cases….Simply because a question of law has not been

9

authoritatively addressed…does not make the question grounds for a substantial difference of opinion.").

It cannot be enough, as Defendants contend, *see* Defs.' Mem. at 8, for a party merely to offer a "plausible" statutory interpretation in order to take an interlocutory appeal, as that would "open the floodgates" to such appeals, contrary to the purpose of § 1292(b). *Ryan,* 275 F. Supp. at 395 (citations omitted). Notably, in the sole case cited by Defendants for this proposition, no party actually sought appellate review following the district court's *sua sponte* certification, and the Second Circuit did not have an opportunity to opine on whether an interlocutory appeal would have been appropriate. *See Riverkeeper, Inc. v. United States E.P.A.*, No. 06 Civ. 12987, Memorandum and Order on Stay Application, at 2 (S.D.N.Y. Nov. 26, 2007) (Declaration of Brent W. Landau ("Landau Decl."), Ex. 1). And in any event, as Plaintiffs have shown, Defendants' interpretation is far from "plausible."

Regarding the standing issue, Defendants do not even attempt to identify a substantial ground for difference of opinion other than to refer to their FTAIA arguments and to ask that standing "be separately analyzed by the Court." Defs.' Mem. at 9 & n.4. But Plaintiffs clearly suffered an antitrust injury when they paid supracompetitive prices for air cargo shipping services. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107 & n.12 (2d Cir. 2007). And because the FTAIA provides for jurisdiction over claims relating to shipments to the United States, Plaintiffs – as the "immediate victims" of Defendants'

conspiracy – are the most appropriate persons to pursue these claims. *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 541 (1983).

There is no substantial ground for difference of opinion. The Court should therefore deny Defendants' motion for certification of an interlocutory appeal.

### B.    An Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Litigation

Even if Defendants could establish a substantial ground for difference of opinion – which they cannot do – an immediate appeal would not materially advance the ultimate termination of the litigation. To the contrary, the only result would be needless delay. *See City of New York v. Milhelm Attea & Bros., Inc.*, No. 06-CV-3620, 2009 WL 701005, at *8 (E.D.N.Y. Mar. 11, 2009) (holding that affirmance of the district court's ruling "could result in substantial delay, with the parties finding themselves back in this same position many months from now"); *Mayers v. New York Community Bancorp, Inc.*, No. CV-03-5837, 2006 WL 2013734, at *11 (E.D.N.Y. July 18, 2006) (holding that "ultimate termination of the litigation would be materially delayed, given the time it takes a case to make its way through appeal," if the order were ultimately affirmed). This is especially true because, for the reasons outlined above, "the odds are against" Defendants' success on appeal. *See E.E.O.C. v. Maggie's Paratransit Corp.*, 351 F. Supp. 2d 51, 54 (E.D.N.Y. 2005) (holding that an appeal would therefore "only serve to delay resolution of the case").

This multidistrict litigation will continue regardless of whether Plaintiffs' claims relating to inbound shipments remain in the case. *See In re Air Crash Near*

11

*Nantucket Islands, Mass. on October 31, 1999*, No. 00-MDL-1344, 2004 WL 2269675, at *2 (E.D.N.Y. Oct. 8, 2004) (denying certification when "multi-district litigation also encompasse[d] claims brought by parties who were not subject to the Court's Order," noting that the same issue would need to be litigated for claims of others "over which this Court unquestionably has jurisdiction"); *In re NASDAQ Market Makers Antitrust Litig.*, 938 F. Supp. 232, 234 (S.D.N.Y. 1996) ("Immediate appellate resolution of this question will not materially advance the termination of the multidistrict litigation of which this action is a part."); *German*, 896 F. Supp. at 1399 (denying § 1292(b) motion when an appeal "would only resolve one piece of this litigation").

　　This will surely not be the last significant ruling in the case, and piecemeal appeals would only slow ultimate resolution of the issues. *See In re Agent Orange Product Liability Litigation*, 534 F. Supp. 1046, 1051 (E.D.N.Y. 1982) ("Nearly every issue decided in this massive litigation will impact on numerous parties, and a different resolution of many of the issues could have significant ramifications on other steps in the action. However, the litigation cannot proceed on an issue-appeal, issue-appeal basis; otherwise, it might never end."). As this Court explained in *Holsey* when an immediate appeal could at most have resulted in dismissal of one of the plaintiff's claims, "[w]eighing the advance that would be made in the litigation if the defendants were to prevail against the inefficiency of having multiple appeals, I do not believe that judicial economy would be served by an interlocutory appeal in this instance." *Holsey*, 2006 WL 2506592, at *3.

12

Tellingly, Defendants do not explain how "[d]iscovery would be much narrower in scope both substantively and geographically." Defs.' Mem. at 9. In fact, with or without claims relating to shipments *to* the United States, discovery will encompass Defendants' entire global conspiracy, as that is the same conspiracy that affected shipments *from* the United States. With the exception of additional transactional and cost data regarding inbound shipments – production of which would not impose a significant incremental burden on Defendants – discovery would likely be identical regardless of the outcome of any appeal. *See Isra Fruit Ltd. v. Agrexco Agr. Export Co. Ltd.*, 804 F.2d 24, 26 (2d Cir. 1986) (denying leave to appeal when some claims would be unaffected by the appeal and "discovery on all of the claims appears likely to overlap to a considerable extent").

Moreover, even if this Court's ruling were reversed on appeal, and even if some of the defendants did not provide any shipments from the United States (though Plaintiffs do not believe this to be true), those defendants would still remain parties in the case. *See, e.g.*, *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) (holding that even co-conspirators that did not sell to the plaintiffs were jointly and severally liable for the cartel's entire overcharge). Therefore, an immediate appeal could affect only which class members could pursue damages, not which of the defendants would be liable or would need to produce discovery.

There is also no reason to believe that proceedings on class certification would be "much less cumbersome and time consuming" without the inclusion of

13

inbound shipments. Defs.' Mem. at 9. Foreign purchasers that paid for outbound
shipments would be part of class certification proceedings in any event. And even if
several additional class representatives need to provide discovery regarding
shipments to the United States, litigation of the class certification issues can and
should proceed on the same schedule. *Cf. Gottesman v. Gen. Motors Corp.*, 268 F.2d
194, 197-98 (2d Cir. 1959) (holding that an appeal that would affect "not whether
this action should be stopped, but merely who ought most properly to press it
forward….can only prolong, rather than shorten, this litigation.") (citations
omitted); *Primavera*, 139 F. Supp. 2d at 572 ("The elimination of a small number of
plaintiffs…does not satisfy the standard of materially advancing the ultimate
termination of this litigation."). Indeed, it would be far less efficient to litigate class
certification twice – for one group of plaintiffs while the appeal is pending and for
another group of plaintiffs after the appeal has been decided – as could occur if
Defendants are allowed to appeal but Plaintiffs ultimately prevail.

     Nor is there a basis to conclude that the "time needed to try the case would be
significantly reduced with fewer fact issues to try and far fewer witnesses to
testify." Defs.' Mem. at 9. As discussed above, proof of the conspiracy will involve
the same witnesses regardless of which shipments are included. *See Isra*, 804 F.2d
at 25-26 (holding that even if some claims "were eliminated at this stage of the
litigation, there is scant basis for believing that trial of the [remaining] claims
would be concluded with any appreciable saving of time"). And while Plaintiffs will
need to show the impact of Defendants' conspiracy on prices for both inbound and

outbound shipments, this evidence would likely be presented by the same expert or experts who would have testified anyway.

Because an immediate appeal would delay, rather than materially advance, this litigation, the Court should deny Defendants' motion.

## C.   The Court Should Exercise Its Discretion to Deny Certification

Even if Defendants had satisfied all three statutory requirements – which they have not – the Court, in its discretion, should still deny certification of this request for interlocutory appeal. *See Nat'l Asbestos*, 71 F. Supp. 2d at 146. This case has been pending for nearly four years. Now that the motions to dismiss have been decided, discovery is finally beginning. If Defendants are allowed to take an immediate appeal, they will undoubtedly seek to delay discovery, further prolonging this litigation.

Such delay would not be in the interests of justice. *Cf. id.* at 167 ("It is hardly an exaggeration to compare discovery in mass tort cases such as these to a moving oil tanker. To start both must overcome significant inertia, but once underway neither is amenable to sudden stops or changes in direction. Suspending discovery for many months while appeals are taken would constitute a significant burden on the timely and efficient disposition of the cases."); *see also Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*, 290 F. Supp. 122, 130 (S.D. Tex. 1968) (declining to certify because an interlocutory appeal "would more likely tend to delay rather than advance termination of the litigation" and stating that "[t]he parties would be better advised to expend their energies completing discovery rather than taking appeals").

Defendants insist that this case warrants certification because it is "big." Defs.' Mem. at 10. "The enactment of 28 U.S.C. § 1292(b) did not, however, exempt 'big cases' from the final judgment rule of 28 U.S.C. § 1291 so as to permit interlocutory appeals as of right in such cases." *In re New York City Mun. Sec. Litig.*, 87 F.R.D. 572, 575 (S.D.N.Y. 1980). Indeed, because this multidistrict litigation encompasses multiple parties and claims, many of which will be unaffected by resolution of this issue, an interlocutory appeal is even less appropriate. *See NASDAQ*, 938 F. Supp. at 234 ("Here, the NASDAQ litigation will continue before this Court whether or not these particular named Plaintiffs succeed on appeal."). Significantly, in one of the cases cited by Defendants in support of their argument that "big" cases should be certified for appeal, *In re Lloyd's American Trust Fund Litigation*, No. 96 Civ. 1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997), the Second Circuit ***disagreed*** with the district court and denied permission to appeal. *See Celauro v. Citibank, N.A.*, No. 97-8022, Order (2d Cir. Oct. 8, 1997) (Landau Decl., Ex. 2) (docket sheet).

Nor does the fact that the order involves "foreign" (as well as domestic) purchases make it particularly deserving of certification. Defendants cite just two cases (both from outside the Second Circuit) in support of this argument, but fail to disclose important details about each of them. In *BHP New Zealand Ltd. v. UCAR International, Inc.*, 106 Fed. Appx. 138 (3d Cir. Aug. 9, 2004), the parties ***agreed*** to certification and the district court did not need to decide a contested § 1292(b) motion. *See BHP New Zealand, Ltd. v. UCAR Int'l, Inc.*, Civ. A. No. 99-4772, Order

16

(E.D. Pa. July 25, 2001) (Landau Decl., Ex. 3). And following the district court's

certification in *In re Microsoft Antitrust Litigation*, 127 F. Supp. 2d 702 (D. Md.

2001), the Fourth Circuit **denied** permission to appeal. *See Kloth v. Microsoft Corp.*,

No. 01-656, Order (4th Cir. June 27, 2001) (Landau Decl., Ex. 4).

Moreover, in a case from within this Circuit that Defendants do not cite, a

district court refused to certify its order denying Defendants' motion to dismiss on

FTAIA grounds. *See MM Global Servs., Inc. v. Dow Chem. Co.*, Civ. No. 3:02cv1107,

Order Denying Motion for Leave to Certify for Appeal (D. Conn. June 11, 2004)

(Landau Decl., Ex. 5); *see also Gen. Elec. Co. v. Latin Am. Imports, S.A.*, Civ. A. No.

99-92, 2002 WL 1832030, at *1 (W.D. Ky. Feb. 14, 2002) (refusing to certify order

denying motion to dismiss two counts of counterclaim on FTAIA grounds).

Therefore, not only have Defendants failed to establish the grounds for

certification under § 1292(b), but discretionary factors likewise weigh against

allowing an immediate appeal.

## IV.   Conclusion

For the foregoing reasons, the Court should deny Defendants' motion for

certification of an interlocutory appeal.

Dated:  September 25, 2009

By:  */s/ Michael D. Hausfeld*                By: */s/ Robert N. Kaplan*
Michael D. Hausfeld                          Robert N. Kaplan (RK-3100)
William P. Butterfield                       Gregory K. Arenson (GA-2426)
**HAUSFELD LLP**                             **KAPLAN FOX & KILSHEIMER LLP**
1700 K Street, Suite 650                     850 Third Avenue, 14th Floor
Washington, D.C. 20006                       New York, NY 10022
(202) 540-7200                               (212) 687-1980

17

Brent W. Landau
**HAUSFELD LLP**
1604 Locust Street, 2nd Floor
Philadelphia, PA 19103
(215) 985-3273


By: */s/ Hollis L. Salzman*
Hollis L. Salzman (HS-5994)
Jay L. Himes (JH-7714)
Gregory S. Asciolla (GA-2222)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
(212) 907-0700

Gary L. Specks (GS-8767)
**KAPLAN FOX & KILSHEIMER LLP**
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585


By: */s/ Howard J. Sedran*
Howard J. Sedran
Austin B. Cohen
Charles C. Sweedler
**LEVIN, FISHBEIN, SEDRAN**
 **& BERMAN**
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500

18

**Certificate of Service**

I, Brent W. Landau, hereby certify that, on September 25, 2009, true and correct copies of Plaintiffs' Opposition to Defendants' Motion for Certification for Interlocutory Appeal and the Declaration of Brent W. Landau, dated September 25, 2009, with exhibits, were served via the Court's ECF system upon all counsel registered for ECF in this case.

*/s/ Brent W. Landau*
Brent W. Landau