

Kaplan Fox & Kilsheimer LLP
850 Third Avenue
New York, NY 10022
phone 212.687.1980
fax 212.687.7714
email mail@kaplanfox.com
www.kaplanfox.com

January 5, 2010

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201-1818

***Re: In re Air Cargo Shipping Services Antitrust Litigation MD-06-1775***

Dear Magistrate Judge Pohorelsky:

Plaintiffs respectfully move to compel defendant Société Air France ("Air France"), which has pled guilty to criminal charges brought by the DOJ, to produce documents responsive to Plaintiffs' First Set of Requests for Production to Société Air France served on December 14, 2009 (the "Document Requests" attached as Exhibit 1). Air France served responses and objections on December 21, 2009, and Amended Responses and Objections of Société Air France to Plaintiffs' First Set of Requests for Production of Documents on December 22, 2009 (the "Amended Response" attached as Exhibit 2). The Amended Response relies on the "French Act 68-678 of July 26, 1968, as amended by French Act 80-538 of July 16, 1980 (*i.e.*, the French blocking statute)," as the ground for resisting production of the documents sought. However, the Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 544 n.29 (1987) ("*Aerospatiale*"), has rejected the French blocking statute as a basis for preventing disclosure in an American court of documents from a French party subject to the American court's jurisdiction, such as Air France here. Plaintiffs therefore request that this Court order production under Rule 37(a) of the Federal Rules of Civil Procedure.

## I. Background

In accordance with the Stipulated Discovery and Class Certification Briefing Schedule approved November 18, 2009, plaintiffs and Air France entered into a letter agreement, dated December 2, 2009 (the "Letter Agreement" attached as Exhibit 3), requiring certain disclosures by Air France concerning its production of documents to the United States Department of Justice (the "DOJ") and giving plaintiffs the opportunity to accept Air France's production to the DOJ.

On December 4, 2009, in compliance with the Letter Agreement, Air France provided plaintiffs with certain disclosures concerning its production to the DOJ. Consistent with the provisions for follow-up questions in the Letter Agreement, plaintiffs and Air France then conferred by telephone on December 9, 10, 11 and 14. During these discussions, Air France disclosed that it had produced certain documents to the DOJ which it would produce if accepted by plaintiffs under the Letter Agreement. However, it also disclosed that it had indirectly produced five boxes of documents to the DOJ. The DOJ had obtained these five boxes of documents from French authorities through the Treaty between the Government of the United States of America and the Government of France on Mutual Legal Assistance in Criminal





Matters (Treaty 106-17), and the French authorities had obtained these documents in France from Air France in cooperation with Air France and the DOJ. Air France concedes that these documents are highly relevant to this litigation, having called them "key documents."

Air France informed plaintiffs that, due to the French blocking statute, Air France would not produce to plaintiffs the five boxes of documents nor would it agree that the DOJ could produce the documents to plaintiffs.[1] Instead, Air France and plaintiffs agreed that plaintiffs would serve the Document Requests,[2] Air France would expeditiously serve its Response, and the parties would promptly seek a resolution on an expedited basis from this Court as to whether the French blocking statute prevented disclosure, which would be the only objection presented to this Court. *See* the letter of December 15, 2009, from Robert N. Kaplan to James R. Warnot and Thomas A. McGrath (attached as Exhibit 4). Subject to this agreement, plaintiffs accepted Air France's production under the Letter Agreement. *See* the second letter of December 15, 2009, fro Robert N. Kaplan to James R. Warnot and Thomas A. McGrath (attached as Exhibit 5).

## II. The Supreme Court Has Ruled That the French Blocking Statute Does Not Usurp a Federal Court's Power To Order Production Pursuant to the Federal Rules of Civil Procedure of Documents Located in France

In *Aerospatiale*, the Supreme Court held that the French blocking statute "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Id.*, 482 U.S. at 544 n.29. The Supreme Court has specifically stated that American courts are not required to enforce a rule requiring a first resort to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), 23 U.S.T. 2555, T.I.A.S. No. 7444 (1970). *See id.* Instead, and at most, American courts undertake a comity analysis under section 442 of the

---

[1] In translation, Article 1A of the French blocking statute provides:

> Subject to treaties or international agreements and applicable laws and regulations, it is prohibited for any party to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith.

The French blocking statute prescribes sanctions for French nationals or corporations that search for or provide discovery in foreign judicial proceedings without using Hague Convention procedures. *See In re Global Power Equip. Group Inc.*, No. CIV. A. 06-11045, 2009 WL 3464212, at *5 (Bankr. D. Del. Oct. 28, 2009).

[2] The Document Requests encompass two requests. The first seeks, "[a]ll documents and ESI from locations outside of the United States concerning Air France, which were produced to the United States Department of Justice ("DOJ") in connection with its investigation of anticompetitive practices in the Air Cargo Shipping Industry." The second seeks "[a]ll documents and ESI concerning Air France requested by the DOJ from French Authorities in connection with the DOJ's investigation of anticompetitive practices in the Air Cargo shipping industry and which documents were produced: (a) from the files of Air France and the files of representatives, executives or employees of Air France located outside of the united States; and (b) by French Authorities to the DOJ."





Restatement (Third) of the Foreign Relations Law of the United States (1987) to determine whether to require resort to the Hague Convention. *See Aerospatiale* at 544 n.28; *Linde v. Arab Bank, Plc*, 463 F. Supp. 2d 310, 314 (E.D.N.Y. 2006).

If enforced, the French blocking statute would "give extraordinary and unfair advantage" to French litigants in judicial proceedings in the United States. *See Adidas (Canada) Limited, v. SS Seatrain Bennington*, Nos. 80 Civ. 1911 (PNL), 82 Civ. 0375, 1984 WL 423, at *3 (S.D.N.Y. May 30, 1984). French litigants would be provided with the range of discovery available under the Federal Rules of Civil Procedure, while American litigants seeking discovery in France would be limited by the complicated, time-consuming and expensive procedures of the Hague Convention and the smaller range of discovery options available under the Hague Convention. *See id.*; *see also Valois of Am., Inc. v. Risdon Corp.*, 183 F.R.D. 344, 349 (D. Conn. 1997). Recognizing this inequity, the Supreme Court held in *Aerospatiale* that American courts are not required to "adhere blindly" to such a statute that provides nationals of a country "a preferred status in our courts." 482 U.S. at 544 n.29.

United States federal courts have consistently ordered both parties and non-parties to produce documents located in France under the Federal Rules of Civil Procedure despite the existence of the French blocking statute. For example, in *Bodner v. Banque Paribas*, 202 F.R.D. 370, 377 (E.D.N.Y. 2000), the court found that the Federal Rules of Civil Procedure were the most effective method of discovery and denied defendants' motion for a protective order. Motions for a protective order were also denied in *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 456 (E.D.N.Y. 2008); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 CIV 5571 RJH HBP, 2006 WL 3378115, at *4 (S.D.N.Y. Nov. 16, 2006); and *Valois*, 183 F.R.D. at 349.

## III. Federal Courts Have Found That the Possibility of Prosecution in France Under the Blocking Statute Is Insufficient To Displace the Federal Rules of Civil Procedure

Air France will likely argue that developments in France since *Aerospatiale*, especially the decision by the Paris Court of Appeals affirmed by the French Supreme Court in *In re Avocat Christopher X*, have made the analysis of *Aerospatiale* obsolete.[3] However, such an argument has been rejected by the court in *Strauss*, 249 F.R.D. at 450-51.

In *Strauss*, plaintiffs sought production of documents concerning the defendant bank's account records and correspondence regarding its former customer that was alleged to be part of the fund-raising infrastructure for Hamas, the Islamic Resistance Movement. *Id.* at 430, 432-35. Defendant Credit Lyonnais sought a protective order, claiming the records were protected from disclosure under the French blocking statute and French bank secrecy laws. *Id.* at 431.

[3] The initial decision in *Christopher X* was in the Cour de Cassation, Chambre Criminelle, Paris, on December 12, 2007, in No. 07-83.228.





In support of its motion for a protective order, Credit Lyonnais attached a letter that it had received from the French Ministry of Justice and the opinions of the Paris Court of Appeals and French Supreme Court in *Christopher X* (referenced in *Strauss* as *In re Christopher A*). *Id.* at 435-36. In *Christopher X*, a French attorney was sentenced to pay a fine of €10,000 for disclosing "economic, commercial, industrial, financial or technical documents or information that are to constitute evidence for a foreign proceeding." *Id.* at 436.

As the *Strauss* court described it, the circumstances in *Christopher X* did not involve standard discovery requests "against a party within the confines of the Federal Rules of Civil Procedure or pursuant to any court order." *See id.* at 451. Instead, the French attorney sanctioned in *Christopher X* had contacted a potential witness directly to try to obtain information and had "made false statements in order to discover the truth." *Id.* (quoting the Paris Court of Appeals at 4). Direct contact with a potential witness in France is quite different from discovery under the Federal Rules of Civil Procedure from a defendant subject to the jurisdiction of this Court, which discovery is ordered by a U.S. court.

The *Strauss* court contrasted the situation in *Christopher X* with the circumstances of Credit Lyonnais, which was not likely to face any prosecution or sanctions for complying with discovery required by an American court, particularly since the French Ministry of Justice letter submitted to the *Strauss* court did not state that Credit Lyonnais would face prosecution or sanctions and did not object to any of plaintiffs' specific requests for documents or information. *Id.* at 436, 455. Thus, Credit Lyonnais was ordered to produce all documents responsive to plaintiffs' document requests, respond to plaintiffs' requests for admissions and interrogatories, and designate one or more corporate representatives to testify under Rule 30(b)(6). *Id.* at 456.

The French blocking statute was adopted with the intent of creating a "judicial weapon" that would provide French nationals with a legal excuse to avoid producing documents in foreign litigations. *See Adidas*, 1984 WL 423 at *4 n.4. Thus, courts characterize the French blocking statute as an attempt to protect French businesses from foreign discovery and "a manifestation of French displeasure with American pretrial discovery procedures." *See Vivendi*, 2006 WL 3378115 at *3. Nonetheless, courts in the Second Circuit have found that there is "little likelihood" that any threat of criminal or civil prosecution pursuant to the French blocking statute would ever be carried out. *See, e.g.*, *Vivendi*, 2006 WL 3378115 at *4; *Bodner*, 202 F.R.D. at 375. Courts in the Second Circuit have ruled that "[t]his speculative possibility of prosecution is insufficient to displace the Federal Rules of Civil Procedure," *see Vivendi*, 2006 WL 3378115 at *4; *Strauss*, 249 F.R.D. at 437, 455, and that should be especially true where the documents have already been produced to a U.S. government entity.

In *Vivendi*, plaintiffs moved to compel a non-party to produce documents concerning business services located in France. *Vivendi*, 2006 WL 3378115 at *1. The non-party witness moved for a protective order, claiming that the discovery of documents located in France should be conducted pursuant to the Hague Convention. *Id.* Although the witness had been threatened with prosecution by two French agencies, the Southern District of New York compelled





production of the documents located in France under the Federal Rules of Civil Procedure. *Id.* at *4.

There is no evidence here, only mere speculation, that Air France might face any possibility of prosecution under the French blocking statute. Moreover, even if French authorities had threatened Air France here with prosecution, Air France would be obligated to produce documents responsive to the Document Requests under the Federal Rules of Civil Procedure. *See Vivendi,* 2006 WL 3378115 at *3*; Strauss*, 249 F.R.D. at 456*; Bodner*, 202 F.R.D. at 375.

## IV. International Comity Favors Compelling Air France To Produce the Documents

In *Aerospatiale*, the Supreme Court set forth five factors derived from the then draft of § 437(1)(c) of the Restatement of Foreign Relations Law of the United States (now § 442(1)(c) of the Restatement (Third) of the Foreign Relations Law of the United States) as relevant to a comity analysis in determining whether an American court should order foreign discovery in the face of objections by foreign states. These were:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

482 U.S. at 544 n.28; *see Linde*, 463 F. Supp. 2d at 314. Courts in the Second Circuit have also considered two additional factors: "the hardship of compliance on the party or witness from whom discovery is sought [and] the good faith of the party resisting discovery." *Strauss*, 249 F.R.D. at 439 (quoting *Minpeco S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987)). Air France bears the burden of showing that it is more appropriate for this Court to follow the French blocking statute than the Federal Rules of Civil Procedure. *See Vivendi*, 2006 WL 3378115 at *2.

Six of the seven factors in the comity analysis weigh in favor of compelling Air France to produce the documents under the Federal Rules of Civil Procedure.

- Air France has conceded that the documents are key documents in the litigation and were produced to the DOJ in cooperation with it.

- The Document Requests are specific, narrow and are not burdensome. They are directed only at five boxes of documents that Air France has already identified and produced to the French Ministry of Justice for transmittal to the DOJ. Further, Air France is not asserting any objection here as to the scope or relevance of the Document Requests.





- The third factor is the only factor that does not weigh in favor of production under the Federal Rules of Civil Procedure, as the documents resided in France not in the United States. However, Air France has already arranged for the production of the documents in the United States to the DOJ. In addition, Air France would have produced these documents without objection had they originated from a location within the United States and has already agreed under the Letter Agreement to produce the documents it produced to the DOJ in connection with its air cargo investigation. These documents were in effect produced by Air France to the DOJ indirectly as part of its cooperation with the DOJ.

- The only alternative means of securing the documents is through the probably lengthy and uncertain process under the Hague Convention. *See Strauss*, 249 F.R.D. at 442 (Credit Lyonnais "acknowledges that certain discovery would not be granted under the Hague Convention"); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 54 (D.C. Cir. 2000) ("[a]fter . . . the Court's own experience with the Hague procedures, the Court finds . . . that Hague would be extremely unlikely to provide efficient and effective discovery").

- There is a strong public policy in the United States encouraging private civil enforcement of the antitrust laws. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262, 266 (1972) ("Every violation of the antitrust laws is a blow to the free-enterprise system envisaged by Congress. . . . By offering potential litigants the prospect of recovery of three times the amount of their damages, Congress encouraged these persons to serve as 'private attorneys general.'" ). Moreover, France through the European Commission (the "EC") recognizes antitrust violations for price-fixing. *See* Article 81(1) of the Treaty Establishing the European Community, Nov. 10, 1997, 1997 O.J. (C 340) 3. Thus, discovery in support of civil enforcement of the antitrust laws here will not offend any interests under French law and in fact supports the policies of the EC prohibiting price fixing.

- There is little hardship on Air France in producing the documents sought. Air France has already produced the documents in five boxes, which have been transmitted to the DOJ. If there is any claimed hardship, that hardship can be obviated merely by authorizing the DOJ to allow plaintiffs to copy the five boxes of documents the DOJ possesses.

- There is a question about Air France's good faith. It has already pled guilty in the United States to violating the antitrust laws for the conspiracy alleged in this action. *See* Plea Agreement ¶¶ 4(a), 4(b) (attached Exhibit 6). That plea was based in part on the very documents it now seeks to withhold and which it concedes are key documents. It appears that Air France is merely seeking to delay or avoid liability to the victims of conduct that it has already conceded was illegal.

The comity factors overwhelmingly favor following American law and not enforcing the French blocking statute.





**V. Conclusion**

Plaintiffs respectfully request that this Court compel Air France to produce documents responsive to plaintiffs' Document Requests pursuant to the Federal Rules of Civil Procedure.

Respectfully Submitted,

Robert N. Kaplan (RK-3100)
Gregory K. Arenson (GA-2426)
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980

Gary L. Specks (GS-8767)
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585

By: *\/s/ Robert N. Kaplan*

Michael D. Hausfeld
William P. Butterfield
Brent W. Landau
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
(202) 540-7200

By: */s/ Michael D. Hausfeld*

Hollis L. Salzman (HS-5994)
Jay L. Himes (JLH-7714)
Gregory S. Asciolla, Esq. (GA-2222)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700

By: */s/ Hollis L. Salzman*

Howard J. Sedran, Esq.
Austin Cohen, Esq.
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500

By: */s/ Howard J. Sedran*

**CERTIFICATE OF SERVICE**

I, Gregory K. Arenson, declare that, on January 5, 2010, I caused true and correct copies of the foregoing letter to the Honorable Viktor V. Pohorelsky with Exhibits 1-4 to be delivered via the Court's ECF system to all counsel of record.

*/s/ Gregory K. Arenson*
Gregory K. Arenson