# Linklaters

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9000
Facsimile (+1) 212 903 9100
Direct Line: (+1) 212 903 9028
james.warnot@linklaters.com

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201-1818

**By Electronic Case Filing**                                                                                                    January 15, 2010

**Re:  In re Air Cargo Shipping Services Antitrust Litigation MD-06-1775 (JG) (VVP)**

Dear Magistrate Judge Pohorelsky:

Defendant Société Air France ("Air France") respectfully submits this opposition to Plaintiffs' January 5, 2010 letter motion seeking to compel the production of documents located in France ("Motion to Compel") and obtained by the Antitrust Division of the United States Department of Justice (the "DOJ") from the French Government pursuant to the Mutual Legal Assistance Treaty between the United States and France (the "MLAT Documents").

The Motion to Compel, in effect, seeks this Court to order Air France to violate a French criminal statute, namely the French Act 68-678 of July 26, 1968, as amended by French Act 80-538 of July 16, 1980 (the "Blocking Statute").  The Blocking Statute prohibits conventional discovery procedures with respect to documents located in France and instead permits production only under international treaties.  Those are the Treaty between the Government of the United States of America and the Government of France on Mutual Legal Assistance in Criminal Matters (Treaty 106-17) (the "MLAT") or the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), 23 U.S.T. 2555, T.I.A.S. No. 7444 (1970).  The DOJ used the MLAT and the Hague Convention is available to Plaintiffs.  The DOJ obviously concluded that as a matter of international comity, it should utilize the MLAT process rather than seeking to enforce its grand jury subpoena.  Had the DOJ obtained an order requiring production, Air France would have faced a Hobson's choice of complying with the order and violating the Blocking Statute or complying with French law and incurring a potential contempt of court order in the United States.  This Court should reach the same conclusion and deny Plaintiffs' Motion to Compel.

Linklaters LLP is a multinational limited liability partnership registered in England and Wales with registered number OC326345 including solicitors of the Senior Courts of England and Wales, members of the New York Bar and foreign legal consultants in New York. It is a law firm regulated by the Solicitors Regulation Authority. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ, England or on www.linklaters.com.

Please refer to www.linklaters.com/regulation for important information on our regulatory position.

# Linklaters

**I.     Background**

Plaintiffs and Air France entered into a letter agreement on December 2, 2009 (the "Letter Agreement") concerning the production of documents that Air France either produced to the DOJ in response to grand jury subpoenas served on Air France or that were seized as part of the DOJ's investigation. In accordance with the Letter Agreement and the parties' stipulated scheduling order, which was so-ordered by the Court on November 16, 2009 (the "Scheduling Order"), Air France provided written disclosures to Plaintiffs regarding the nature and volume of documents produced and/or seized in connection with the DOJ's investigation, on December 4, 2009. On December 31, 2009, Air France made a voluminous production to Plaintiffs of the discovery materials contemplated by the Letter Agreement – all documents produced by Air France to the DOJ or seized from Air France by the DOJ in the United States in connection with the DOJ investigation. The only materials not produced to Plaintiffs were certain documents located in France that the DOJ obtained pursuant to an MLAT request to the French Government after Air France had objected to producing those documents on account of the Blocking Statute.

On December 9, 2009, Air France conferred with Plaintiffs, who requested that Air France produce the MLAT Documents. Air France advised Plaintiffs that, under the Blocking Statute, it could not agree to produce the material in question and that Plaintiffs should seek alternate means of obtaining the materials as the DOJ had done, such as proceeding under the Hague Convention. However, in the spirit of the Letter Agreement and in the interest of moving forward with discovery as contemplated in the Scheduling Order, Air France agreed to an expedited procedure whereby the matter would be submitted to the Court. The parties agreed that Plaintiffs would serve Air France with formal requests for documents that were produced by French authorities to the DOJ, and Air France agreed to provide its responses and objections to the requests on an expedited basis, rather than waiting the customary 30 days before responding. On December 14, 2009, Plaintiffs served their document requests. On December 21, 2009, Air France served responses and objections to the document requests.[1] On January 5, 2010, Plaintiffs filed their Motion to Compel.

**II.     French Law Prohibits Air France's Production of the Discovery Sought by Plaintiffs**

Under the Blocking Statute, Air France is prohibited from disclosing in foreign judicial proceedings any "economic, commercial, industrial, financial or technical documents or information the transmission of which is of such a nature as to infringe the sovereignty, national security or essential economic interests of France or violate public policy," unless pursuant to an enforceable international treaty or agreement. *See* Exhibit A, Translation of the Blocking Statute at 2.

The Plaintiffs' document requests, which seek documents that "were produced . . . by French Authorities to the DOJ" fall squarely within the Blocking Statute, a fact that Plaintiffs do not dispute. *See* Motion to Compel at 2. However, unlike Plaintiffs, the DOJ did not seek to force Air France to violate the Blocking Statute in order to obtain Air France documents in France. The DOJ proceeded under the MLAT's procedures rather than seeking to compel the enforcement of the grand jury subpoena for documents located outside of the United States.

---

[1] Due to the expedited process involved in bringing this matter to the Court's attention, Air France has not yet had the opportunity to notify the French authorities of Plaintiffs' document requests in this case or to seek the opinion of the French authorities with respect to Plaintiffs' requests.

# Linklaters

Because the MLAT procedure cannot be utilized in private civil litigation, the only treaty under which Air France can produce the documents in question is the Hague Convention. Any disclosure of covered materials outside of the Hague Convention or other agreement with French authorities by French companies or nationals is a violation of the Blocking Statute and is punishable by six months of imprisonment (in the case of individual persons who produce documents in violation of the Blocking Statute) and/or a criminal fine for any individual or entity violating the Blocking Statute. *See* Exhibit B, Translation of *In re Avocat Christopher X*, Cour de Cassation, Chambre Criminelle (French Superior Court of Appeals, Criminal Division), Dec. 12, 2007 Bull. Crim. ("*Christopher X*").

The punitive nature of the French criminal law triggered by the Plaintiffs' requests is underscored by the decision in the Paris Court of Appeals that was affirmed by the French Supreme Court in *Christopher X*. *See* Exhibit B at 4. In *Christopher X*, a French attorney was fined €10,000 for violation of the Blocking Statute for seeking information from a French citizen relating to a lawsuit filed in the United States. *See* Exhibit B at 1. Plaintiffs attempt to distinguish the *Christopher X* case on the grounds that it involved oral evidence rather than the production of documents. *See* Motion to Compel at 3-4. This distinction is, however, wholly artificial, as the attorney in that case was prosecuted criminally based on his "seeking to obtain economic, industrial, financial, or technical information in order to establish evidence in a foreign legal proceeding." *See* Exhibit B at 1. By its plain terms, the ruling of the French Supreme Court applies to the documents that Plaintiffs seek and places Air France and its representatives in clear criminal jeopardy should they defy its holding and comply with Plaintiffs' requests.

The *Christopher X* decision makes clear that individuals or companies who violate the Blocking Statute are at a real risk of criminal liability.[2] Nonetheless, Plaintiffs rely heavily on the decision in *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429 (E.D.N.Y. 2008), for their contention that the *Christopher X* decision represents a minimal increase in risk to Air France. *See* Motion to Compel at 3-4. However, the *Strauss* case is distinguishable because *Strauss* involved allegations concerning the funding of international terrorism. All nations share a common interest in fighting global terrorism, and the information sought by the *Strauss* plaintiffs concerned HAMAS, the well-know Palestinian organization with the status of Specially Designated Global Terrorist organization. *See Strauss*, 249 F.R.D. at 451. The plaintiffs in *Strauss*, who were survivors of a terrorism attack in Israel, were seeking banking information concerning an affiliate of HAMAS. *See id.* at 431-433. Credit Lyonnais, a French bank, opposed the production of the requested information on the grounds that sharing the information would cause it to violate the Blocking Statute. *Id.* The court applied the international comity standards, which are discussed below, to the conflict and determined that the mutual interests of the United States and France in combating global terrorism outweighed the French interest in abiding by the terms of the Blocking Statute. *Id.* at 438-39, 451. In any event, the *Strauss* court determined that the French authorities were not likely to enforce the Blocking Statute for the production of information related to deterring terrorism. *Id.* at 451. No such extenuating circumstances are remotely present here. If Air France were to produce the French documents sought by Plaintiffs, Air France or its

---

[2] Plaintiffs cite to decisions in *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-CV-5571, 2006 WL 3378115 (S.D.N.Y. Nov. 16, 2006); *Bodner v. Banque Paribas*, 202 F.R.D. 370 (E.D.N.Y. 2000); and *Adidas (Canada) Ltd. v. SS Seatrain Bennington*, Nos. 80-CV-1911, 82-CV-0375, 1984 WL 423 (S.D.N.Y. May 30, 1984), for the proposition that the Blocking Statute has not been enforced against any violator and cannot be treated as an expression of sovereign interest by the Republic of France or an actual danger for French companies or nationals. *See* Motion to Compel at 4-5. However, each of those cases was decided prior to the French Supreme Court's decision affirming the conviction in *Christopher X*, and therefore they are inapposite here.

Linklaters

individual employees would be vulnerable to criminal prosecution, regardless of whether the production was made in compliance with an order by this Court.

### III. The Court Should Defer to the Blocking Statute as a Matter of International Comity

The essence of the question before the Court is whether Air France should be forced into a criminal violation in its home country or, alternatively, whether Plaintiffs should be required to utilize the valid and alternative procedures under the Hague Convention.  Plaintiffs incorrectly argue that the Supreme Court's decision in *Société Nationale Industrielle Aérospatiale v. United States District Court*, 482 U.S. 522 (1987), represented the "reject[ion of] the Blocking Statute as a basis for preventing disclosure in an American court of documents from a French party."   Motion to Compel at 1.  Rather, the Court affirmed that the Hague Convention remains available in United States courts as a means of obtaining evidence located in France and elsewhere, and that a comity analysis is required to determine whether in a particular case the Blocking Statute requires that discovery should proceed under the Hague Convention in lieu of the Federal Rules of Civil Procedure (the "Federal Rules").  *Aérospatiale*, 482 U.S. at 544.

Courts in the Second Circuit have looked to the Restatement (Third) of Foreign Relations Law of the United States § 442(1)(c) (the "Restatement") to describe the relevant comity factors.  *British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*, No. 90-CV-2370, 2000 WL 713057, at *8-9 (S.D.N.Y. June 2, 2000) (citing *Aérospatiale*, 482 U.S. at 544 n.28).  The relevant factors include:

> (1) the importance to the ... litigation of the documents or other information requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located.

Courts in the Second Circuit also consider "the hardship of compliance on the party or witness from whom discovery is sought [and] the good faith of the party resisting discovery." *Minpeco S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987); *Reino De Espana v. Am. Bureau of Shipping*, No. 03-CV-3573, 2005 WL 1813017, at *3 (S.D.N.Y. Aug. 1, 2005).  In applying these factors, courts have found that considerations of international comity can weigh strongly in favor of utilizing the Hague Convention procedures in lieu of discovery procedures of the Federal Rules in obtaining evidence abroad in certain circumstances.[3]  *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 353-54 (D. Conn. 1991) (holding that plaintiffs were required to proceed under the Hague

---

[3]   Plaintiffs cite to *Adidas* to bolster their claim that this Court should ignore the Blocking Statute and compel production of documents located in France.  *See* Motion to Compel at 3.  However, *Adidas* was decided prior to the Supreme Court's ruling in *Aérospatiale*, which explicitly recognized the need to consider international comity when deciding whether foreign law can prohibit discovery in the United States.  Plaintiffs cite *Valois of Amer., Inc. v. Risdon Corp.*, 183 F.R.D. 344 (D. Conn. 1997), for a similar proposition.  *See* Motion to Compel at 3.  However, in that case, the court recognized that Blocking Statute was an important consideration and ultimately reserved decision on whether the procedures under the Hague Convention or the Federal Rules would apply to the foreign discovery in order to permit the parties to reach an out-of-court resolution.  *See Valois*, 183 F.R.D. at 349.

Linklaters

Convention in pursuing discovery of materials or information located in France from a French corporation); *Hudson v. Pfauter GmbH*, 117 F.R.D. 33, 36 (N.D.N.Y. 1987) (holding that plaintiffs were required to seek discovery under the Hague Convention of materials located in Germany). As set forth below, the above factors favor denying Plaintiffs' Motion to Compel.

### A.   Importance of the Documents Sought

Plaintiffs cite to nothing in support of their contention that Air France has conceded that the French documents are the "key documents" in the case. *See* Motion to Compel at 2, 5. Rather, Air France has advised Plaintiffs' counsel that the documents in question were documents seized by or provided to the European Commission as part of its investigation and that the DOJ clearly considered the documents to be of sufficient interest that it was willing to use the appropriate international channels under the MLAT to obtain those documents. Plaintiffs have drawn their own inferences regarding the importance of the documents from the these facts, and while Air France does not dispute that the documents sought are relevant to this litigation, the availability of an alternative means of obtaining the requested materials through the Hague Convention negates giving undue importance to this factor.

### B.   Degree of Specificity

Plaintiffs attempt to create the illusion of specificity by arguing that they seek the same materials that were obtained by the DOJ. However, the DOJ recognized the need to pursue those documents in accordance with the MLAT procedure, and not by resort to the U.S. federal courts. In any event, the specificity of the document request has no bearing on the Blocking Statute or Air France's potential criminal liability thereunder.

### C.   Origin of the Documents Outside of the United States

As Plaintiffs acknowledge, the documents they are seeking originate from outside the United States. However, Plaintiffs attempt to obscure the analysis by equating the DOJ's acquisition of French documents from the French authorities by means of the MLAT procedure to a production in the United States by Air France. In doing so, Plaintiffs misapprehend the MLAT procedure. Air France has never produced the documents to the DOJ. Rather, pursuant to the MLAT procedure, the DOJ directed its requests for French documents to the French Ministry of Justice (the "French Ministry"). The French Ministry reviewed the requests and determined whether such requests were appropriate under the MLAT procedure and French law. The French Ministry in turn requested documents from Air France via local law enforcement. Air France responded to the French authorities by producing documents to the responsible French law enforcement agency. Air France was not a party to any of the communications between the French Ministry and the DOJ, nor was Air France made aware of the manner or timing in which the information was ultimately shared between the French Ministry and the DOJ.

### D.   Alternative Means of Obtaining Discovery

As discussed above, the Hague Convention represents a legitimate alternative means of securing the information that Plaintiffs seek. *See Perrier*, 138 F.R.D. at 353-54; *Hudson,* 117 F.R.D. at 35-36. Utilizing the Hague Convention would both permit Plaintiffs to obtain Air France's documents that are located overseas, and allow Air France to avoid potential criminal liability. Plaintiffs assert that they should not be required to pursue discovery under the Hague Convention because the process for doing so is "probably lengthy and uncertain." Motion to Compel at 6. Yet Plaintiffs provide no support for their position, and Air France is unaware of any reason why Plaintiffs' requests could not proceed

# Linklaters

expeditiously under the Hague Convention. *Cf. Aérospatiale*, 482 U.S. at 562 ("[e]xperience with the [Hague] Convention suggests [that] contracting parties have honored their obligations to execute letters of request expeditiously and to use compulsion if necessary") (Blackmun, J., concurring in part). Finally, Air France will not in any way seek to obstruct Plaintiffs' efforts should they seek to obtain the MLAT Documents via the Hague Convention.

### E. Balancing of Interests

The French government has stated unequivocally through its enactment of the French Blocking Statute and its enforcement in the *Christopher X* case that discovery outside of the procedures of the Hague Convention or without the consent of the relevant French authorities would undermine France's sovereign interests. These interests outweigh the concerns of inefficiency and "probabl[e]" delay that Plaintiffs cite. *See Perrier*, 138 F.R.D. at 355 (noting that "inconveniences" such as costs or delay "alone pale beside the importance of respecting France's sovereign interests, and the Court's concern for fairness to foreign litigants"). Indeed, as the *Perrier* court noted,

> [France's] sovereign interests are implicated, if at all, in seeking discovery from citizens of the foreign state, within the boundaries of that state, without the permission of that state. . . . [T]he appropriate inquiry on this issue is the "host" country's amenability to the manner of discovery sought to be utilized by the plaintiffs. Although not all civil-law countries have expressed their disfavor of private litigants' use of the Federal Rules' procedures within its borders, of those which have, France has been among the most emphatic. . . . France has even amended its civil and penal codes to incorporate the Hague Evidence Convention, and proscribe foreign litigants' use of alternative, unauthorized procedures. . . . The simple fact that, in joining the Convention, France has consented to its procedures is an expression of France's sovereign interests and weighs heavily in favor of the use of those procedures.

*Id.* (quoting *Aérospatiale*, 482 U.S. at 557-58 (Blackmun, J., concurring in part)); *Hudson*, 117 F.R.D. at 38.

While the United States maintains a generalized interest in providing the availability of discovery to litigating parties, respecting the French Blocking Statute here would in no way undermine that interest. The discovery procedures of the Hague Convention are recognized in the United States, and adhering to them in this case does not undermine Plaintiffs' access to discovery or remove oversight of the discovery process from this Court. *See Aérospatiale*, 482 U.S. at 533 ("both the discovery rules set forth in the Federal Rules of Civil Procedure and the Hague Convention *are the law of the United States*") (emphasis supplied). Indeed, the vast majority of DOJ materials have already been supplied to Plaintiffs in accordance with the Letter Agreement and the Court's Scheduling Order. Plaintiffs cannot reasonably claim that they will suffer any prejudice if required to proceed through the Hague Convention. Discovery has commenced just weeks ago, and, under the Scheduling Order, is expected to continue through as late as August 2011. Class certification briefing is not expected to occur until January 2011. Accordingly, Plaintiffs will not be prejudiced by proceeding via proper channels, under the Hague Convention.

Moreover, U.S. interests in enforcing the antitrust laws are amply demonstrated by the DOJ's conduct in this case. The DOJ has made prosecution of international price fixing a priority and has brought several prosecutions in the air cargo industry. However, when it came to balancing those enforcement interests against the sovereign interests of France, the DOJ deferred, and proceeded by MLAT. As Plaintiffs have pointed out in this case, courts frequently look to the DOJ for persuasive guidance on

# Linklaters

how to apply the antitrust laws.  *See* Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Sherman Act Claims Pursuant to the Foreign Trade Antitrust Improvement Act and for Lack of Standing, Docket No. 637, October 24, 2007, at 28-30.  The DOJ's guidance in this instance favors denying Plaintiffs' Motion to Compel and directing them to utilize the discovery procedures of the Hague Convention.

### F.  Hardship to Air France

Despite Plaintiffs' contrary suggestion, the hardship Air France faces has nothing to do with photocopying documents or physically transporting them to the United States.  What Plaintiffs ignore in their Motion to Compel is the significant hardship in the form of potential criminal prosecution for the company or its employees if it were forced to produce the MLAT Documents or somehow procure the production of the French documents from the DOJ.  This hardship is undeniable in the face of the plain language of the Blocking Statute and the affirmation by the French Supreme Court in *Christopher X* of the criminal conviction for violating the Blocking Statute.

### G.  Air France's Good Faith

Although Plaintiffs suggest otherwise, there is no question about Air France's good faith in this matter.  As Plaintiffs are aware, the DOJ's consideration regarding the applicability of the Blocking Statute resulted in the utilization of the MLAT Procedure rather than an attempt to enforce a subpoena in the United States – for the very same documents that Plaintiffs now seek.  Although Plaintiffs grossly understate the gravity of the matter, Air France is in the untenable position of determining how to comply with the discovery rules of this Court, while at the same time abiding by the laws of its home country.  Air France has complied in all respects with its discovery obligations to date, and has produced millions of pages of documents to the Plaintiffs in accordance with their Letter Agreement and the Scheduling Order.  With respect to the French documents, Air France raised the issue of the Blocking Statute with Plaintiffs at the earliest opportunity and has agreed to an expedited process to bring the issue before the Court.

The international comity factors weigh strongly in favor of the Court's deferring to the Blocking Statute and requiring Plaintiffs to use the discovery procedures of the Hague Convention.  It would be unreasonable to subject Air France to criminal liability, even if that liability is not 100% certain, where the Hague Convention process is readily available and the discovery phase of this case is just beginning.  The DOJ presumably made the same analysis and decided to utilize the MLAT discovery process, and there is no reason that the result should be any different with private plaintiffs.  Plaintiffs have plenty of work to keep them occupied in reviewing the voluminous productions made by Air France and the other defendants, and requiring them to utilize the Hague Convention should not impose a delay that would impact the schedule in this case.

Linklaters

**IV.     Conclusion**

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel.

                            Respectfully submitted,

By:  /s/ *James R. Warnot, Jr.*
      James R. Warnot, Jr.
      Thomas A. McGrath
      LINKLATERS LLP
      1345 Avenue of the Americas
      New York, New York
      (212) 903-9000

*Counsel for Société Air France*

## CERTIFICATE OF SERVICE

      I, Aaron M. DeLong, declare that on January 15, 2010, I caused true and correct copies of the foregoing letter to Magistrate Judge Viktor V. Pohorelsky with Exhibits A and B to be delivered to all counsel of record via the Court's ECF system.

                                               /s/ *Aaron M. DeLong*
                                               Aaron M. DeLong