UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IN RE

                                        06-MD-1775

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION                    **ALL CASES**

M.D.L. No. 1775
--------------------------------------------------------x

**OPINION AND ORDER**

      The plaintiffs have moved to compel the defendant Société Air France to produce documents that the defendant has withheld on the ground that their production is prohibited by French law. The documents in question consist of five boxes of Air France documents that the Department of Justice ("DOJ") obtained in the course of its criminal antitrust investigation into the same activities that form the basis of the civil antitrust claims in this action. The French law that provides the basis for the defendant's refusal to produce the documents is the now-familiar French "blocking statute," which prohibits parties from producing documents or information for use as evidence in foreign judicial or administrative proceedings other than pursuant to treaties such as the Hague Convention or Treaty between the Government of the United States of America and the Government of France on Mutual Legal Assistance in Criminal Matters ("MLAT").[1]

---

[1]Translated, Article 1A of the statute provides,

> Subject to the international treaties or agreements and the laws and regulations in effect, it is prohibited for any person to request, seek or transmit, in writing, orally or in any other form, economic, commercial, industrial, financial or technical documents or information intending to serve as evidence in

The parties do not dispute that the documents in issue are relevant to this litigation. Nor do they dispute that production of the documents by Air France would constitute a violation of the blocking statute and thus expose Air France to potential criminal sanctions. The dispute here centers entirely on whether the plaintiffs should be required to resort to the Hague Convention to obtain the documents. Because Air France had also rested on the blocking statute in declining to produce the documents when they were sought by DOJ during the criminal investigation, DOJ obtained the documents by means of an MLAT request to French authorities. As a result, their production to DOJ did not run afoul of the blocking statute and did not expose Air France to sanctions. Air France thus argues that the plaintiffs here should also be made to resort to means permitted by the blocking statute, namely, by making a request pursuant to the Hague Convention.

In *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522 (1987), the Supreme Court offered considerable guidance concerning the resolution of the precise issue before the court. The Court there held that resort to the Hague Convention to obtain evidence subject to the French blocking statute was not required, and that parties properly before United States courts could be required to

---

preparation for foreign legal or administrative proceedings or within the framework of such proceedings.

Law No. 80-538 of July 16, 1980, Journal Officiel de la Republique Française, July 17, 1980, p. 1799. The blocking statute goes on to prescribe sanctions for violations of the statute. *See In re Global Power Equipment Group Inc.*, 418 B.R. 833, 839 (Bankr. D. Del. 2009).

produce documents subject to the statute even if that might subject them to sanctions. At the same time, however, the Court directed federal courts to employ a case-by-case analysis to determine whether use of the Hague Convention might be the more appropriate tool for obtaining evidence in a given case. *See id.*, 482 U.S. at 544-47. The concept of international comity is at the heart of that analysis, and the Court cited a tentative draft of the *Restatement of Foreign Relations Law of the United States* in identifying a list of some of the concerns that should inform a court's decisionmaking. Those concerns are now articulated in section 442 of the *Restatement (Third) of The Foreign Relations Law of the United States* (1987) (the "*Restatement*"):

> In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency in the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Restatement* § 442(1)(c). Courts in this circuit have also considered two additional factors when undertaking this analysis, the hardship of compliance on the party from whom discovery is sought, and the good faith of the party resisting discovery. *See e.g., Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 439 (E.D.N.Y. 2008); *Reino De Espana v. American Bureau of Shipping*, No. 03 Civ. 3573, 2005 WL 1813017, at *3 (S.D.N.Y. Aug.1,

2005); *In re Auction Houses Antitrust Litigation*, 196 F.R.D. 444, 446 (S.D.N.Y. 2000); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 529-30 (S.D.N.Y. 1987).

Several of the above factors clearly favor the plaintiffs, while others clearly favor the defendant. Although the defendant disputes the plaintiffs' characterization that the documents in question are "key" to the litigation, Air France concedes that the documents in question fall within the scope of relevant discovery. Moreover, because they are among the documents examined by the Department of Justice in the course of an investigation that has led to a plea of guilty by Air France to antitrust violations, there is a substantial likelihood that the documents will prove to be important to the prosecution of the plaintiffs' claims. The specificity of the request is also not seriously disputed since it identifies precisely the group of documents sought.

On the other hand, it is equally undisputed that the information originated in France; it would not be subject to the blocking statute if it had not. In addition, although the plaintiffs suggest otherwise,[2] there is scant evidence to suggest that the defendant's assertion of the blocking statute lacks good faith. The statute clearly applies to the documents in issue, and the defendant has consistently asserted the statute's bar. This is not a case where the defendant has rested on the statute to block

---

[2]The plaintiffs argue that the defendant is acting in bad faith because they have already pleaded guilty to a criminal antitrust violation and are therefore seeking merely to delay discovery. The argument overlooks the fact that the defendant (1) has lodged no objection to producing, and has already produced, all of the documents produced to DOJ that were not subject to the blocking statute, (2) agreed to an expedited process for presenting this issue to the court, and (3) have asserted that they will not seek to obstruct the plaintiffs' efforts to obtain the documents under the Hague Convention.

discovery in one instance, while ignoring the statute in another when it served the defendant's interests to do so. *Compare, e.g., Remington Prods., Inc. v. North Am. Philips Corp.*, 107 F.R.D. 642, 652-56 (D. Conn. 1985); *see generally Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. at 455-56.

Analysis of the remaining factors is a bit more complicated. Although there is no dispute that the Hague Convention affords an alternative means for securing the information, the outcome of a request pursuant to the Convention is by no means certain, and making the request will undeniably result in delays of unknown, and perhaps considerable, duration. Thus, the mere fact that the Hague Convention provides an alternative method for obtaining the documents is not proof that it is necessarily an effective, or efficient, method for doing so in this case.

As to the hardship of compliance, the defendant cites the prospect of criminal sanctions, which appear at first blush to place this factor solidly on the defendant's side of the ledger. As the Supreme Court has observed, "fear of criminal prosecution constitutes a weighty excuse for nonproduction." *Société Internationale*, 357 U.S. at 211. But a number of courts have discounted this hardship when considering the French blocking statute. *See, e.g., Strauss*, 249 F.R.D. at 454-55; *Compagnie Française d'Assurance Pour le Commerce Extérieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 30 (S.D.N.Y. 1984); *Bodner v. Banque Paribas*, 202 F.R.D. 370, 375 (E.D.N.Y. 2000) ("As held by numerous courts, the French Blocking Statute does not subject defendants to a realistic risk of prosecution, and cannot be construed as a law intended to universally govern the

conduct of litigation within the jurisdiction of a United States court."). Rather, the "legislative history of the statute gives strong indications that it was never expected or intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts." *Adidas (Canada) Ltd. v. SS Seatrain Bennington*, Nos. 80 Civ. 1911, 82 Civ. 0375, 1984 WL 423, at *3 (S.D.N.Y. May 30, 1984) (Leval, J.). The Second Circuit has shared this view: "The French statute . . . is apparently intended to protect French businesses from excessive discovery in hostile foreign litigation." *United States v. Gonzalez*, 748 F.2d 74, 78 (2d Cir. 1984).

To counter these persuasive observations, the defendant points to but one prosecution that has ever been brought for violation of the blocking statute, involving a defendant and circumstances readily distinguishable from those before this court. The prosecution, as reported in an opinion by the Criminal Division of the French Superior Court of Appeals, involved a French attorney who sought to obtain testimonial evidence for a case pending in a California court by making false statements to a potential witness in France. The attorney was fined €10,000. *See In re Christopher X,* Appeal No. 07-83228 (Cour de Cassation, Chambre Criminelle Dec. 12, 2007), annexed as Ex. B to Warnot Ltr., Jan. 15, 2010 (Doc. No. 1063). Notably, the case did not involve discovery responsive to any requests made by the parties in the California case or ordered by the court there. It thus furnishes little proof that the defendant here, who unlike the prosecuted attorney above has not sought to circumvent the blocking statute

through deceptive means, would be prosecuted for complying with a court order compelling disclosure of the documents at issue. That the documents at issue have already been disclosed in American proceedings pursuant to the MLAT request further undercuts any reason to believe that French authorities would seek to prosecute Air France for disclosing the same documents here. The court thus discounts significantly the hardship posed by the prospect of criminal sanctions.

Finally, in weighing the factor considered most important by several courts confronting the issue – the balance of national interests at play – the court finds that several strong national interests of the United States are implicated. First, this is a case involving violations of antitrust laws whose enforcement is essential to the country's interests in a competitive economy. *E.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634-35 (1985); *Minpeco, S.A.*, 116 F.R.D. at 523. Moreover, enforcement through private civil actions such as this one is a critical tool for encouraging compliance with the country's antitrust laws. *See Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972). The interest in prohibiting price-fixing of the type alleged here is shared by France, given its membership in the European Economic Community which has also adopted prohibitions against price-fixing. *See* Treaty Establishing the European Community, Art. 81, Nov. 10, 1997, 1997 O.J. (C 340) 3; *see generally Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 250 (2004). Second, "the United States has a substantial interest in fully and fairly adjudicating matters before its courts." *Compagnie Française d'Assurance*, 105 F.R.D. at 30; *Reino De Espana*, 2005 WL

1813017, at *4.  That interest is only realized if the parties have access to relevant discovery.

In contrast, the only French interest is a sovereign interest in controlling access to information within its borders, fueled at least in part by a desire to afford its citizens protections against discovery in foreign litigation.  Without necessarily denigrating that interest, it is eroded in this case because the information sought here has already been disclosed outside France's borders with France's consent.  Thus, at least implicitly, France has already made the judgment that its interest in combating anticompetitive behavior outweighs its desire to limit access to information about its citizens.  The court has little difficulty concluding that France's relatively weak national interest in prohibiting disclosure of the information sought by the plaintiffs is outweighed by the more substantial United States interests articulated above.

The court thus concludes that interests of comity do not weigh against entry of the order compelling production sought by the plaintiffs.  The court has considered whether the plaintiffs should nevertheless be required to resort first to a Hague Convention request.  As the Supreme Court noted, undertaking that step would not prevent the court from thereafter compelling disclosure if French authorities declined to authorize it.  *See Société Nationale*, 482 U.S. at 542.  But that process would necessarily introduce delay in a case that is already well into its fourth year, and given France's prior review of the materials and conclusion that their disclosure does not offend France's interests, further delay seems to be pointless.

For the foregoing reasons, the plaintiffs' motion is granted. The documents that are the subject of the motion are to be produced within fourteen days.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:   Brooklyn, New York
         March 29, 2010