# LEVIN, FISHBEIN, SEDRAN & BERMAN
*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER *
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN
MICHAEL M. WEINKOWITZ * †
CHARLES C. SWEEDLER *
MATTHEW C. GAUGHAN * †
KEITH J. VERRIER *

\* also admitted in New Jersey
† also admitted in New York

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697
www.lfsblaw.com

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

June 15, 2010

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201-1818

Re:   **Air Cargo Shipping Services Antitrust Litigation, 06-MD-1775**

Dear Magistrate Judge Pohorelsky:

Plaintiffs move to compel certain Defendants[1] to provide full and complete responses to Plaintiffs' First Set of Interrogatories Nos. 1, 2, 3, 4, 5, 6 and 8 (attached hereto as Exhibit "A"). These interrogatories were served on or about January 14, 2010 and Plaintiffs have not received meaningful or complete answers from these Defendants. Plaintiffs' interrogatories are standard fare in horizontal price-fixing cases, narrowly drafted to elicit the most relevant information to prove their claims arising from the Defendants' global conspiracy to fix, raise, maintain, or stabilize prices of Airfreight Shipping Services. *See* First Cons. Am. Compl. ("Compl."), ¶ 19. Interrogatory Nos. 1 through 6 seek the identification of Meetings, Communications, Agreements and Understandings ("Communications") among Defendants concerning Fuel Surcharges, Rates and Yields and Communications concerning whether to pay Freight Forwarders commissions on Fuel and Security Surcharges. Interrogatory No. 8 seeks the identification of witnesses with knowledge of such Communications. These interrogatories go to the heart of Plaintiffs' claims. Defendants' responses are little more than a parade of meritless, boilerplate objections that provide virtually no responsive information.[2] *See* Defendants' Resp. & Objs. attached hereto as Exhibits "B" through "E."   This motion is brought against LAN/ABSA only with respect to their response to Interrogatory No. 3.

---

[1]   "Defendants" refers to Air New Zealand, Ltd. ("Air New Zealand"); Korean Airlines Co., Ltd. ("Korean Air"); Lan Cargo S.A., Lan Airlines S.A., Aeorlinhas Brasileiras, S.A. (collectively "LAN/ABSA"); and Qantas Airways Limited ("Qantas").

[2]   Plaintiffs reserve their rights with respect to Interrogatory Nos. 7 and 9 and against all other Defendants against whom they have not currently moved to compel.

Levin, Fishbein, Sedran & Berman

### A. Interrogatory Nos. 1 Through 6 Seek Basic Information Regarding Defendants' Meetings, Communications, Agreements and Understandings

Courts in other antitrust cases have consistently compelled answers to interrogatories virtually identical to those propounded by Plaintiffs. *See, e.g., In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307 (S.D.N.Y. 1982). Interrogatories seeking "the identification of meetings or communications involving another defendant or a competitor discussing prices and price related items," and seeking information relating to price discussions such as the "date, means of communication, place, participants, subject matter, substance, actions taken as a result, and documents relating thereto," are standard. *See id.*; *see also In re Vitamins Antitrust Litig.*, 217 F.R.D. 229, 232-33 (D.D.C. 2002) (compelling responses to interrogatories regarding inter-defendant meetings); *In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749, 753, 757 (E.D. Pa. 1995) (compelling responses to interrogatories regarding meetings and communications with competitors); *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 408-09 & nn. 5-6 (D. Minn. 1995); *Casson Construction Co. v. Armco Steel Corp.*, 91 F.R.D. 376, 380-81 (D.Kan. 1980); *In re Anthracite Coal Antitrust Litig.*, 81 F.R.D. 516, 518 (M.D. Pa. 1979); *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 417, 418-19 (N.D. Ill. 1977); *City of Philadelphia v. Westinghouse Elec. Corp.*, 205 F.Supp. 830 (E.D.Pa. 1962).

More recently, in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F.Supp.2d 141, 149-52, 163 (D. Conn. 2009), interrogatories substantially similar to those at issue here were instrumental in defeating a summary judgment motion. The interrogatory answers in that case provided an over-arching timeline of contacts between competitors, including a description of meetings, discussions and agreements prior to, during and after the Class Period. *Id.* at 150.

The information sought by Plaintiffs' interrogatories herein will narrow the issues and streamline the proceedings by providing core information concerning Defendants' conspiracy.

### B. Defendants Must Provide Facts Available to Them, Including Through Their Counsel

Defendants are trying several tactics to avoid disclosing relevant and responsive information in their possession. First, Defendants assert the work product doctrine and attorney-client privilege as a basis for withholding factual information from their answers. However, a party may not refuse to disclose relevant facts simply because these facts were communicated to its attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1980). Similarly, "a party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney." *Hickman v. Taylor*, 329 U.S. 495, 504 (1947); *see also Bowne of N.Y. City, Inc. v. Ambase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (the work product rule "does not protect from disclosure the underlying facts known to the party or his counsel, even if acquired in anticipation of litigation."); *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, No. 90-cv-7811, 1994 WL 510043, at *5 (S.D.N.Y. Sept. 16, 1994). Defendants' position that facts or information obtained through its, or its attorneys', investigation are protected from disclosure by the work product doctrine or attorney-client privilege is simply contrary to well-established law. *See In re Shopping Carts Antitrust Litig.*,

LEVIN, FISHBEIN, SEDRAN & BERMAN

95 F.R.D. at 305; *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 630, 635-37 (N.D. Okla. 2009); *Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 108 (D. Mass 1996); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210-11 (8th Cir. 1973).

A corporation is required to respond to interrogatories by providing facts and information reasonably available to it and is required to inquire of its employees and agents to determine if the information sought is available. *See Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*, No. 01-3016C, 2002 WL 1835439, at *3 (S.D.N.Y. Aug. 8, 2002) (summarizing law on scope of party's duty to respond to interrogatories). While the work product doctrine generally protects documents prepared by an attorney in anticipation of litigation and counsel's mental impressions from disclosure through a request for production, it does not entitle a party to withhold underlying facts contained in those documents in responding to interrogatories or depositions. *See, e.g., Weiss v. Nat'l Westminster Bank*, 242 F.R.D. 33, 61 (E.D.N.Y. 2007) ("Work product protection typically applies only to 'documents and tangible things,' and not to facts within the documents" (citing *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 47-48 (N.D. N.Y. 1997)); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 230 (E.D. N.Y. 2007); *Atl. Richfield Co. v. Current Controls, Inc.*, No. 93-cv-950E(H), 1997 WL 538876, at *3 (W.D. N.Y. June 4, 1977).

In addition, at least one Defendant, Korean Air, has stated that it will withhold relevant information in its possession because of confidentiality obligations imposed by the European Commission ("EC"). Even though any confidentiality obligations imposed by the EC should not stand as an impediment to Defendants responding fully to Plaintiffs' interrogatories, Plaintiffs are willing, at this time, to accept answers that withhold only information obtained solely from access to non-Korean Air documents and witness statements in the investigative files of the EC so long as Defendants state in writing that they are withholding information on that basis. *But see In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, February 12, 2010 Order, Civil Action No. 05-md-01720 (E.D.N.Y.) (Gleeson, J.), attached hereto as Exhibit "F" (international comity did not require the plaintiffs to "forego information [the Statement of Objections and EC Hearing Transcript] to which they would otherwise be entitled").

### C. *Defendants Must Provide Narrative Answers*

None of the Defendants has provided meaningful or narrative answers to Interrogatories Nos. 1, 2, 3, 4, 5, or 6.[3]

Here, Defendants have made several half-hearted attempts to invoke Rule 33(d) in an effort to avoid providing narrative answers. Fully responsive narrative answers to interrogatories are required unless the strict standards of Rule 33(d) are satisfied. *See generally Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16,

---

[3]   Plaintiffs have narrowed their Definition 9 regarding Identification of Communications to only identifying the date, participants and substance (including all material terms) of the communication.

LEVIN, FISHBEIN, SEDRAN & BERMAN

43 (S.D.N.Y. 1984) (no reference to documents "if an interrogatory can be responded to more readily and conveniently by written answer"); *see also Covermat Corp. v. St. Paul Fire & Marine Ins. Co.*, No. 06-cv-1045-JFB-AKT, 2007 WL 2743696, at *6 (E.D.N.Y. Sept. 18, 2007) (same); *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 108 F.R.D. 304, 307 (D.P.R. 1985) (conditions must be met to produce business records in lieu of "narrative answers").

Defendants' reliance on Rule 33(d) to avoid giving narrative responses fails for several reasons. First, there are undoubtedly responsive Communications that are not reflected in documents that have to be disclosed. Second, where Defendants reference documents, the designations are not specific. Third, the burden of finding the responsive information from the documents is not substantially the same for Plaintiffs and Defendants.

The ability to reference documents in a Rule 33(d) response only arises when the "answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records." In this case, there are numerous Communications that are not reflected in documents, and those Communications must be disclosed in narrative responses. Also, if documents referenced in a Rule 33(d) response are not fully responsive, Defendants must supplement their answer with the remaining responsive information in narrative form. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 326-27 (N.D. Ill. 2005) (party must supplement reference to business records with remaining information sought or state clearly that the business records are the complete response); *see also Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *7 (D. Kan. Mar. 26, 2007).

In addition, references to documents pursuant to Rule 33(d) have to be specific. General references to lists of documents, references to an incomplete list of documents and references to documents to be produced at some point in the future are insufficient to satisfy the specificity requirement of Rule 33(d). *See Compagnie Francaise*, 105 F.R.D. at 44 (responding party may not "foist a mass of records on his interrogator when their deciphering is feasible only for one familiar with the records"); *see also Pulsecard, Inc. v. Discover Card Serv., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996) (responding with the phrase "included among these documents" not adequate). These are precisely the type of inadequate Rule 33(d) responses provided by Defendants. Defendants Air New Zealand and Qantas simply cross-referenced a number of document control numbers and stated that the referenced documents numbers are illustrative of responsive Communications. *See* Exhs. B, C. Korean Air did not even go that far, instead only stating that it "produced hundreds of thousands of pages of internal documents, including thousands of emails and other communications" and basically telling Plaintiffs to go look through them to get the answers. *See* Exh. D. These are insufficient responses.

Importantly, for a party to invoke Rule 33(d), the burden of obtaining the answer from a party's business records must be substantially the same for both parties. Here it is not. To the extent that Defendants are aware of responsive Communications, then a narrative answer must be provided rather than requiring Plaintiffs to comb through the records to figure out who was speaking to whom, on what subjects, and when. *See Compagnie Francaise*, 105 F.R.D. at 44.

LEVIN, FISHBEIN, SEDRAN & BERMAN

Defendants have an obligation to make inquiry of all persons reasonably likely to have responsive facts and information and provide the responsive information they possess in a narrative form.[4] To the extent the Defendants, either themselves or through their attorneys, have already conducted that inquiry and compiled chronologies of meetings, communications, agreements and understandings between air carrier competitors, that information must be provided in narrative interrogatory answers.[5] *See Compagnie Francaise*, 105 F.R.D. at 44; *Daiflon, Inc.*, 534 F.2d at 226); *Covermat Corp.*, 2007 WL 2743696, at *6. That is because courts have found that, if the responding party has already searched its records and has the information sought in summary form, it may not provide a Rule 33(d) response **because the burden of ascertaining the information is no longer the same**. *See Englund v. Los Angeles County*, 235 F.R.D. 675, 680 (E.D. Cal. 2006). Simply put, "if an answer is readily available in a more convenient form, [Rule 33(d)] should not be used to avoid giving the ready information to the serving party." *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 226 (10th Cir. 1976); *see also Compagnie Francaise*, 105 F.R.D. at 44 ("[Rule 33(d)] is not an available alternative if an interrogatory can be responded to more readily and conveniently by written answer"); *Covermat Corp.*, 2007 WL 2743696, at *6.

In addition, there are certain documents (*e.g.* telephone records, expense reports and foreign language documents) where the responsive information is not readily apparent or ascertainable from the documents yet the producing party obviously has knowledge of the document's significance. The burden of ascertaining the relevant information from those documents is simply not the same for Plaintiffs and Defendants.

Narrative answers should also be provided for Interrogatory No. 8 which seeks the identification of persons with knowledge of Communications concerning coordination of surcharges, rates or yields and the underlying facts of Defendants' guilty pleas. This is basic discovery of the type required in a party's initial disclosures pursuant to Federal Rule of Civil Procedure 26. Defendants' answers are incomplete or, in the case of Air New Zealand, non-existent. Plaintiffs at this time do not move to compel the identity of persons who provided

---

[4] Plaintiffs have advised Defendants that they should make inquiry of the following persons: (1) the individuals identified in response to Interrogatory No. 8; (2) those persons reasonably expected to have knowledge of the information sought; (3) percipient witnesses to the underlying facts regarding Defendants' guilty pleas; (4) those persons who had responsibilities with respect to recommending, determining the amount and timing of surcharges or rates; and (5) those persons in attendance at the meetings identified by Plaintiffs in Interrogatory No. 5 (excluding IATA). *See In re Vitamins Antitrust Litig.*, No. 99-cv-197-TFH, 2001 WL 1049433, at *6-7 (D.D.C. June 20, 2001) (defining appropriate scope of inquiry). If the prior inquiry was thorough, Defendants do not need to repeat this inquiry.

[5] Defendants that plead guilty certainly should provide narrative answers concerning the underlying facts related to their pleas. Korean Air, Qantas and LAN/ABSA pled guilty in the United States to charges that they participated in a combination and conspiracy to fix air cargo rates charged to customers in the United States and elsewhere for international air cargo shipments and paid substantial fines.

LEVIN, FISHBEIN, SEDRAN & BERMAN

information to the DOJ or foreign competition authorities.[6] *C.f., In re Shopping Carts Antitrust Litigation*, 95 F.R.D. at 301.

### D. Defendants' Relevance Objections Are Unfounded

#### 1. Plaintiffs Have Alleged a Global Conspiracy and Are Entitled to Discovery to Prove the Allegation

Defendants have objected to providing answers other than information that concerns shipments to, from or within the United States. Defendants seek to narrowly limit Plaintiffs' discovery despite the fact that Plaintiffs have alleged a global overarching conspiracy and the DOJ investigation and guilty pleas similarly pertain to "a single global conspiracy to fix cargo prices."[7] *See* Asiana Plea Hearing Tr. at 37:2-6 attached as Exhibit "G" (DOJ attorney discussing the global scope of Defendants' conspiracy). The discovery Plaintiffs' seek is relevant to show the breadth and scope of the alleged conspiracy. Defendants should answer these interrogatories with respect to all responsive Communications including those that do not directly relate to shipments to, from or within the U.S. *See Continental Ore Corp. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (in antitrust conspiracy cases, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components..."; *see also EPDM*, 681 F.Supp.2d at 160-63 (in denying summary judgment motion court considered evidence of foreign conduct where plaintiffs alleged a global conspiracy). *United States v. Andreas,* 216 F.3d 645, 665 (7th Cir. 2000) (at trial, jury should hear all evidence about formation of conspiracy to get "complete story of the crime"). Where

---

[6] Korean Air has provided names of individuals who provided information to the DOJ. It should also be required to identify all persons with knowledge of relevant and responsive information to the extent such persons are not included in Korean Air's list of individual who provided information to the DOJ.

[7] As explained in detail in paragraphs 3-38 of the ACCC Statement of Claim Against Korean Air, Exh. K, Defendants operate in a global market for air cargo shipping services. Carriers capable of flying from ports outside of the U.S. to ports inside the U.S., directly or indirectly, or though interline and/or block space agreements with other carriers or through charter flights compete or potentially compete with all other carriers capable of doing the same. *See* Exh. K, ¶ 19. Looking beyond the allegations in Plaintiffs' Complaint and the statements of the DOJ attorney, competition authorities around the world, including the European Commission, Australia, Japan, Korea, Canada and New Zealand have similar investigations into this global conspiracy underway. *See, e.g.,* Asiana Plea Hearing Tr., Exh. "G," at 37:17-25; *see also* Joinder Application of The Commerce Commission of New Zealand against Air New Zealand Ltd. & ORS attached hereto as Exhibit "H" (seeking to join Salvatore Sanfilippo to the pending action in New Zealand). Most recently, the Korean competition authority has fined 19 air cargo carriers and warned 2 others to stop the unfair trade practices. *See* Kyong-Ae Choi, South Korea Fines Airlines, Wall Street Journal Online, May 27, 2010, http://online.wsj.com/article/SB10001424052748704269204575269732587692318.html, and South Korea Fines 19 Airlines for Cargo Price Fixing, Warns Two, Bloomberg Businessweek, May 27, 2010, http://www.businessweek.com/news/2010-05-26/south-korea-fines-19-airlines-for-cargo-price-fixing-warns-two.html attached hereto as Exhibit "I."

the allegations charge a global conspiracy, courts have readily allowed the type of discovery sought here. *See In re Vitamins Antitrust Litig.*, 2001 WL 1049433, at *11; *see also In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *14; *In re Urethane Antitrust Litig.*, 261 F.R.D. at 573; *In re Aspartame Antitrust Litig.*, 2008 WL 2275531, at *1; *In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. at 429-30.

Qantas takes an even more narrow view attempting to avoid disclosure of facts and information even when it involves commerce to or from the United States. Its position is illustrated by the detailed claims of the ACCC brought against several air cargo carriers. *See, e.g.,* ACCC Statement of Claim Against Air New Zealand Limited attached hereto as Exhibit "J"; ACCC Statement of Claim Against Korean Air Lines Co. Ltd. attached hereto as Exhibit "K." For example, all major airlines carrying freight from Singapore were members of an industry association of air cargo carriers called the "Singapore BAR-CSC." *See* Exh. J, ¶ 65; *see also* Exh. K, ¶ 81 (discussing similar allegations with respect to the Air Cargo Representative Board – Indonesia ("ACRB – Indonesia")). The Singapore BAR-CSC included as its members, among others, Air New Zealand, Qantas, Cargolux, and Korean Air. *See* Exh. J, ¶ 65; *see also* Exh. K, ¶ 81 (discussing ACRB – Indonesia). At meetings of the Singapore BAR-CSC, the air carriers coordinated and fixed fuel charges, on multiple occasions, from Singapore to areas around the world including "IATA Tariff Conference Area 1 ("TC1")" which is expressly designated as the Americas. *See* Exh. J, ¶¶ 77.1, 77.1.1.; *see also* Exh. K, ¶¶ 89, 89.1 (fixing surcharges from Indonesia to the Americas and other destinations).

Qantas asserts that the Communications and Agreements reached at Singapore BAR-CSC meetings and similar meetings in other countries do not have to be identified because Qantas does not fly between Singapore and the U.S., even though Qantas was involved in and a percipient witness to direct Communications that related to U.S. commerce.

Also, many Defendants impose global surcharges, so that when they coordinated surcharges in Switzerland, for example, agreements reached there effectively imposed surcharges on cargo shipments from Switzerland to points throughout the world including the United States. Defendants should not be permitted to block such plainly relevant discovery.

### 2.   *Pre-Conspiracy Discovery is Appropriate*

The interrogatories seek answers for the period January 1, 1997 to December 31, 2006. The Consolidated Complaint alleges that the conspiracy began no later than January 1, 2000, (¶81) and that in *at least* December 1999 Defendants exchanged information about Surcharges (¶84). The Class Period ends on September 11, 2006. *See* Benchmark Compl., Civil Action No. 10-cv-0639 (E.D.N.Y.), Docket Entry No. 1, ¶ 195. Courts regularly allow discovery before and after the Class period. *See In re Shopping Carts Antitrust Litig.*, No. M-21-29-CLB, 1982 WL 1817, at *1 (S.D.N.Y. Mar. 11, 1982); *see also Quonset Real Estate Corp. v. Paramount Film Distributing Corp.*, 50 F.R.D. 240, 241-42 (S.D.N.Y. 1970).

Here, discovery before the Class Period is relevant to proving the origins and formation of the conspiracy. Although the requested discovery period begins on January 1, 1997, as a

LEVIN, FISHBEIN, SEDRAN & BERMAN

compromise, Plaintiffs are willing to accept answers for the period January 1, 1999 through December 31, 2006.

### E.   *Defendants' Objection to Interrogatory No. 3 Is Misplaced*

All Defendants refuse to answer Interrogatory No. 3 (commissions to freight forwarders re: surcharges) claiming it is not part of Plaintiffs' case. Plaintiffs have advised all Defendants that this claim is pled in paragraphs 108-110 of the Consolidated Complaint under the heading *Defendants' Concerted Refusal to Discount*. In this industry, freight forwarders are generally not paid commissions with a check from the airlines. Instead, they obtain the commissions in the form of a discounted price from the air cargo carrier. Because the freight forwarder pays a discounted price to the air cargo carrier on the freight they facilitate shipping, the discount is the commission. Based upon this industry practice, paragraphs 108-110 refer to Defendants' concerted refusal to provide discounts (i.e. pay commissions) to freight forwarders on surcharges. Indeed, many documents produced by Defendants reflect Communications concerning whether to pay such commissions to freight forwarders on Surcharges. *See, e.g.,* Documents attached as Exhibit "L." This claim is part of Plaintiffs' case. The information sought is relevant, and Interrogatory No. 3 should be answered.

### F.   *DOT Immunity and Other Immunity Claims*

Plaintiffs have agreed that where the United States Department of Transportation has provided defendants with an express grant of antitrust immunity, those immune Communications do not have to be identified, except where carriers without express immunity were parties or privy to the Communications.

Notwithstanding the foregoing, Defendants claim that other unspecified Communications do not have to be identified because their actions were supervised by foreign regulatory regimes and are thus immune. Plaintiffs' position is that these Communications are not immune and should be identified. Defendants are relying, as a basis for non-disclosure, upon affirmative defenses on which they bear the burden of proof. The Court need not address such immunity issues now on an undeveloped record. At a later time, once all relevant evidence is developed, Defendants' purported defenses can be addressed, if necessary.

### G.   *Foreign Laws and International Comity*

Defendants object to providing responsive information based upon vague and ambiguous references to unspecified laws of foreign countries and also argue that production of information in the face of these laws would violate principles of international comity. Instead of relying upon unidentified laws that may be violated, Defendants must specify the actual laws at issue and explain why disclosure of the information sought by these interrogatories would violate these laws. Korean Air identifies two so-called "privacy" statutes, but even a cursory review of the statutes in question reveal that they do not preclude disclosure of the information sought by Plaintiffs' interrogatories. The type of information sought by these interrogatories is not the type

LEVIN, FISHBEIN, SEDRAN & BERMAN

of information that implicates personal privacy. General objections based on unspecified should be deemed waived or otherwise overruled.

### H.  Objections to Certain Definitions

Defendants object to certain definitions, most notably the definitions of "Agreement" and "Understanding." Defendants claim that the definition of "Agreement" and "Understanding" requires them to reach a legal conclusion – whether there was a "meeting of the minds" or a "contract." As a preliminary matter, Plaintiffs' definition of "Agreement" was taken directly from the DOJ subpoena to which Defendants have responded. *See* relevant portions of DOJ Subpoena attached hereto as Exhibit "M." Second, the terms "Agreement" and "Understanding" are words in the English language that are well understood by lay people. If the Defendants make inquiry of individuals with relevant information for the purposes of responding to these interrogatories, those individuals will know if they believe they reached an "Agreement" or an "Understanding" with another party without resort to formalistic legal definitions.

Korean Air objects to the definition of employee to the extent the definition includes agents. Korean Air claims that it would be unduly burdensome to determine which of its contractors met the legal definition of agent. This is a hypertechnical objection designed to avoid disclosure of relevant facts. If Korean Air employees, agents or representatives participated in the requested Communications, they should be identified. Korean Air should not be permitted to withhold responsive facts or information in the possession of its attorneys under the guise of this definition objection.

Qantas objects to the definition of "you" because it also includes agents rendering the definition, in Qantas's words, "vague and ambiguous and renders any interrogatory using such definition overly broad and unduly burdensome." As set forth in footnote 4, Plaintiffs have reasonably defined the group of persons to be queried to obtain responsive information. Accordingly, Qantas's objection should be rejected.

### I.  Issues Regarding Individual Defendants' Responses

#### 1.  Air New Zealand

Air New Zealand objects to Interrogatory No. 4 that seeks Communications regarding "avoidance of competition" and "allocation of customers, routes or territories" claiming that these terms are "vague and undefined" and "call for legal conclusions." There is nothing vague about these terms nor do the terms reflect legal conclusions. If employees or agents acting on Air New Zealand's behalf attended meetings with other air cargo carriers in which ways to avoid competing with one another were discussed, those Communications must be disclosed. Dividing territories or agreeing not to provide air cargo service across certain routes or to certain customers are plainly ways to avoid competition and are commonly understood as such by laymen, including Air New Zealand representatives who would have been involved in such Communications.

LEVIN, FISHBEIN, SEDRAN & BERMAN

Air New Zealand has provided no answer to Interrogatory No. 8 which seeks the identification of persons with knowledge. Instead, it has made numerous objections that are not applicable to the basic information sought. To the extent Air New Zealand did not enter a guilty plea with the DOJ or other competition authorities, its answer to the second part of the Interrogatory would be "none." As it relates to the remainder of the interrogatory, Air New Zealand should provide the names of persons with knowledge.

Air New Zealand also has refused to answer Interrogatory No. 6 which asks for the identification of Communications at alliance meetings where the intentions of non-members concerning surcharges, rates or yields or airfreight shipping services were discussed.

### 2. *Qantas*

Qantas objects on the basis of unrealistic word games pretending not to understand terms that are commonly used in the industry and others that are commonly understood in the English language. Qantas objects to Interrogatory No. 7, seeking, in part, an explanation of the "methodology, if any, used to calculate the Surcharge" because, in part, it allegedly does not understand the term "methodology" even though all of the Defendants are likely well aware of the Lufthansa methodology for calculating fuel surcharges and the term "methodology" is a commonly used and well-understood term in the English language. *See* Exh. I, ¶ 57.2 (discussing Lufthansa methodology).

Qantas also objects to Interrogatory No. 8, seeking the identity of employees with knowledge of relevant Communications, in part because the term "with knowledge" allegedly renders the interrogatory "vague and ambiguous and not subject to reasonable interpretation" and if read literally "would require Qantas to identify virtually every employee in its Freight Division." This position is untenable.

Qantas also refuses to make inquiry of the persons identified in footnote 4 above. It advises that it will only make inquiry of persons reasonably expected to have knowledge, but will not agree to describe who those people are.

### 3. *Korean Air*

Korean Air proposes limiting its inquiry for responsive conspiratorial Communications solely to current employees located at four (but not all) of its regional headquarters' offices and at its world headquarters' office in Seoul.[8] The narrow inquiry Korean Air proposes is unacceptable because it is carefully crafted to avoid disclosure of numerous price-fixing Communications to which Korean Air was a party.

---

[8] Korean Air proposes inquiring of personnel in its regional headquarters for "the Americas," "Korea," "China," and "Japan." Under its proposal, Korean Air eliminates from the scope of its inquiry, its regional headquarters for "Europe & Middle East," for "Southeast Asia," and for "CIS." It also eliminates from the scope of its inquiry all regional offices in all regions other than the four regional headquarters it has selected.

Many of the collusive surcharges on air cargo shipments to or from the United States were the product of meetings and communications in which Korean Air participated through employees and agents who were not stationed in the four regional headquarters or world headquarters.

Korean Air participated in numerous meetings and communications with other air cargo carriers regarding surcharges under the cover of air carrier organizations such as the Air Cargo Representative Board – Indonesia ("ACRB – Indonesia"), the Board of Airline Representatives – Hong Kong, the India BAR-CSC, the Singapore BAR-CSC, the Airline Cargo Council of Switzerland and other airfreight carrier groups. *See, e.g.,* Exh. K, ¶¶ 81-122.3, 123-249 (ACCC Statement of Claim against Korean Air addressing ACRB-Indonesia and Board of Airline Representatives – Hong Kong). The surcharges coordinated and agreed upon through these organizations applied to cargo shipments to the United States as well as numerous other countries. Korean Air representatives who were stationed in Korean Air's regional offices located in the countries or cities where these carrier organizations were based attended these meetings and participated in these communications. However, they were not the employees stationed in the four Korean Air regional headquarters and world headquarters of which Korean Air proposes making inquiry. During the relevant period, Korean Air maintained regional offices in Indonesia, Hong Kong, Singapore, India and Switzerland where each of the foregoing carrier organizations were based. The persons with first-hand knowledge of what actually transpired during and in connection with meetings of these organizations are usually the Korean Air representatives who were stationed at the regional offices in the countries and/or cities where the organizations were located. In short, under the search Korean Air proposes, most, if not all, of the Korean Air participants in numerous relevant conspiracy Communications and meetings will never even be asked if they have facts or information responsive to Plaintiffs' interrogatories.

### *J.*   **Conclusion**

Plaintiffs' Motion to Compel should be granted in all respects. Defendants should be required to provide full and complete answers within twenty-one (21) days.

                                                                Respectfully Submitted,

| | |
|---|---|
| Howard J. Sedran | Michael D. Hausfeld |
| Austin Cohen | William Butterfield |
| Keith J. Verrier | Brent Landau |
| LEVIN, FISHBEIN, SEDRAN & BERMAN | HAUSFELD LLP |
| 510 Walnut Street | 1700 K Street, N.W., Suite 650 |
| Philadelphia, PA 19106 | Washington, DC 20006 |
| (215) 592-1500 | (202) 540-7200 |
| | |
| By: */s/ Howard J. Sedran* | By: */s/ Michael D. Hausfeld* |

LEVIN, FISHBEIN, SEDRAN & BERMAN

Robert N. Kaplan (RK-3100)
Gregory K. Arenson (GA-2426)
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980

Gary L. Specks (GS-8767)
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585

By:   /s/ Robert N. Kaplan

Hollis L. Salzman (HS-5994)
Jay L. Himes (JLH-7714)
Gregory S. Asciolla, Esq. (GA-2222)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700

By:   /s/ Hollis L. Salzman

cc:   Plaintiffs' Co-Lead Counsel