UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x   ECF Case
IN RE

AIR CARGO SHIPPING SERVICES                   06-MD-1775 (JG) (VVP)
ANTITRUST LITIGATION

MDL NO. 1775
----------------------------------------------------------x
BENCHMARK EXPORT SERVICES, *et al.*,

        *Plaintiffs,*

v.                                                                      1:10-cv-0639 (JG)(VVP)

CHINA AIRLINES, *et al.*,                             MDL: 1:06-mdl-01775 (JG)(VVP)

        *Defendants.*
----------------------------------------------------------x
BENCHMARK EXPORT SERVICES, *et al.*,

        *Plaintiffs,*

v.                                                                      1:10-cv-01374 (JG)(VVP)

SALVATORE SANFILIPPO,                         MDL: 1:06-mdl-01755 (JG) (VVP)

        *Defendant.*
----------------------------------------------------------x

# REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANT SALVATORE SANFILIPPO

**GARVEY SCHUBERT BARER**
Benjamin J. Lambiotte, *Pro Hac Vice*
Paul S. Hoff, *Pro Hac Vice*
Richard D. Gluck, *Pro Hac Vice*
1000 Potomac Street NW, Fifth Floor
Washington, DC 20007-3501
(202) 965 7880
blambiotte@gsblaw.com

*Attorneys for Defendant Salvatore Sanfilippo*

# TABLE OF CONTENTS

*Page*

A. *Sanfilippo's Motion to Dismiss the Complaint in Civil Action 1:10-cv-01374 Should be Deemed Granted By Default Pursuant to Local Rule 7.1, In Light of Plaintiffs' Failure to File A Memorandum in Opposition* ...................................................................2

B. *The Complaints Lack Sufficient Non-Conclusory Allegations Plausibly Suggesting that Mr. Sanfilippo Joined the Alleged Conspiracy Among Air Cargo Carriers* ..................................................................3

1. *The* Stare Decisis *Doctrine has No Application To Mr. Sanfilippo's Motions to Dismiss* ..................................................................4

2. *Plaintiffs' Allegations Against Mr. Sanfilippo AreEntirely Conclusory, and Entitled to No Credit Under the First Prong of the* Iqbal *Test* ......................5

3. *Plaintiffs May Not Rely on General Allegations Common to All Alleged Co-Conspirators, or Specific Allegations of the Acts of Other Defendants, to Substitute for a Lacuna of Well-Pleaded Factual Allegations Tying Mr. Sanfilippo to the Alleged Conspiracy* ..............7

C. *Conclusion and Prayer for Relief* ...................................................................15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
IN RE                                                   ECF Case

AIR CARGO SHIPPING SERVICES                             06-MD-1775 (JG) (VVP)
ANTITRUST LITIGATION

MDL NO. 1775
---------------------------------------------------------x
BENCHMARK EXPORT SERVICES, *et al.*,

                *Plaintiffs,*

v.                                                      1:10-cv-0639 (JG)(VVP)

CHINA AIRLINES, *et al.*,                               MDL: 1:06-mdl-01775 (JG)(VVP)

                *Defendants.*
---------------------------------------------------------x
BENCHMARK EXPORT SERVICES, *et al.*,

                *Plaintiffs,*

v.                                                      1:10-cv-01374 (JG)(VVP)

SALVATORE SANFILIPPO,                                   MDL: 1:06-mdl-01755 (JG) (VVP)

                *Defendant*
---------------------------------------------------------x

**REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTIONS
TO DISMISS OF DEFENDANT SALVATORE SANFILIPPO**

      Pursuant to Local Rules of Civil Procedure 6.1, 7.1 and 11.1, Defendant Salvatore Sanfilippo, by and through his undersigned counsel, hereby respectfully submits the following Reply to the Memorandum in Opposition to his Motion to Dismiss, filed by the Plaintiffs on June 4, 2010 [Doc. No. 1171] ("Opposition"). For the following reasons, Plaintiffs' Opposition does not controvert Mr. Sanfilippo's arguments in our opening briefs that the allegations of Plaintiffs'

Complaints, in both the captioned actions,[1] fail to state adequately a claim against Mr. Sanfilippo, when measured by the standards of *Bell Atlantic* v. *Twombly* 550 U.S. 544 (2007) and *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009), as applied in this Circuit.

A.  *Sanfilippo's Motion to Dismiss the Complaint in Civil Action 1:10-cv-01374 Should be Deemed Granted By Default Pursuant to Local Rule <u>7.1, In Light of Plaintiffs' Failure to File A Memorandum in Opposition</u>*

At the outset, Mr. Sanfilippo alerts the Court to the fact that Plaintiffs addressed his Motions to Dismiss only in their consolidated opposition to the motions filed by him and Defendants Air India, China Airlines Ltd., EVA Airway Corporation, and Malaysia Airlines, in individual action No. 1:10-cv-0639, which named multiple defendants. *See* Caption, Cover Page to Opposition. Plaintiffs filed no opposition memorandum in individual action No. 1:10-cv-01374, which named only Mr. Sanfilippo as defendant. In light of their attendance at the April 30, 2010, Scheduling Conference before Magistrate Judge Pohorelsky, and receipt of the scheduling order governing briefing of motions to dismiss issued thereafter [Doc. No. 1137], Plaintiff's failure to file a memorandum in opposition to Mr. Sanfilippo's Motion to Dismiss in Civil Action 1:10-cv-01374 can only be regarded as willful. Under Local Rule 7.1, Plaintiffs' failure to file such a memorandum is sufficient cause to grant Mr. Sanfilippo's Motion to Dismiss in that individual action by default. *See* Local Rule of Civil Procedure 7.1 ("Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default."). In any event, the two complaints and their supporting allegations are nearly identical (except for named defendants), and are identical with respect to

---

[1] Defendant Sanfilippo timely filed Motions to Dismiss both the Complaint in Civil Action 1:10-cv-0639 [Doc. No. 62], originally commenced in this Court (which named multiple Defendants), and Civil Action 1:10-cv-01374 [Doc. No. 54], originally commenced in California, which named only Mr. Sanfilippo as the sole Defendant. Both were consolidated into this MDL case. Because Plaintiffs filed no memorandum opposing Mr. Sanfilippo's Motion to Dismiss in Civil Action 1:10-cv-01374, and for the sake of efficiency, Mr. Sanfilippo files this single consolidated Reply in both actions.

allegations against Mr. Sanfilippo. Mr. Sanfilippo respectfully requests that the Court dismiss Civil Action 1:10-cv-01374, forthwith, with prejudice as requested in our unopposed Motion to Dismiss, to cleanse this already overburdened MDL docket of that entirely redundant individual action.

B.  *The Complaints Lack Sufficient Non-Conclusory Allegations Plausibly Suggesting that Mr. Sanfilippo Joined the Alleged Conspiracy Among Air Cargo Carriers*

Plaintiffs elected to file a single consolidated brief in opposition to the Motions to Dismiss filed by four corporate defendants and Mr. Sanfilippo, all of whom were first joined to this action via complaints filed in February 2010. The motions of the four corporate defendants raise multiple grounds of dismissal, among which is failure to state a claim under *Twombly/Iqbal*. Plaintiffs do not address separately the *Twombly/Iqbal* arguments raised by Mr. Sanfilippo in his separate motions. Instead, Plaintiffs' Opposition lumps all the corporate defendants and Mr. Sanfilippo together, and emphasizes that Judge Gleeson previously concluded that a preceding complaint in the MDL case (to which Mr. Sanfilippo was not named as a party nor mentioned in any allegation) has already been found to adequately allege the existence of a price-fixing conspiracy among international cargo air carrier defendants (albeit other than the additional defendants named in the present complaints). They contend that the present complaints contain all the allegations of the previous complaint, and more, and that the pleading standard does not require detailed defendant-by-defendant allegations of the wrongful acts of each participant in a conspiracy, relying on authorities that rest their conclusions on the principle that a single overt act by one conspirator is enough to sustain a conspiracy claim against other conspirators. *See* Opposition, at 19-25. For this reason, they contend, their allegations are sufficient to survive all the *Twombly*-based Motions to Dismiss, including Mr. Sanfilippo's.

3

As we demonstrate below, as to Mr. Sanfilippo, the Plaintiffs' Opposition fails to address, much less overcome, Mr. Sanfilippo's contention that the allegations of the complaint purporting to tie him to the conspiracy are entirely conclusory, not entitled to be taken as true for purposes of these motions, and unsupported by sufficient well-pleaded factual allegations plausibly suggesting that he is liable as a co-conspirator who knowingly participated in the alleged unlawful scheme.

### 1. The Stare Decisis *Doctrine has No Application To Mr. Sanfilippo's Motions to Dismiss*

Plaintiffs argue that Judge Gleeson's ruling that the previous amended complaint in the master MDL action, the allegations of which are substantially incorporated into the complaints at issue here, satisfied pleading standards somehow bars the instant motions to dismiss by operation of *stare decisis*. This is a red herring, diverting attention away from the true nature of Mr. Sanfilppo's assault on the complaint. As we noted in our opening brief, Mr. Sanfilippo's challenge is fundamentally different than the consolidated motion to dismiss in the master MDL action that resulted in Judge Gleeson's ruling. Mr. Sanfilippo does not challenge whether the complaints at issue here adequately allege the existence of global conspiracy to fix prices among air cargo carriers, as Judge Gleeson concluded. Rather, we contend that the complaints at issue do not set forth well-pleaded allegations sufficient to state a plausible claim that Mr. Sanfilippo, personally, is liable for violating Section 1 of the Sherman Act as a knowing participant who joined the conspiracy. It simply does not follow that, because the Court previously concluded that a complaint against certain air carrier defendants adequately alleged the existence of a plausible price-fixing conspiracy among those carriers, other complaints including the same allegations, but naming additional defendants, must perforce be deemed adequate to plead that Mr. Sanfilippo joined and became part of the conspiracy. Consideration of these motions does

not require the Court to re-examine, much less disturb, Judge Gleeson's prior ruling. The doctrine of *stare decisis* has no application here.

> 2. *Plaintiffs' Allegations Against Mr. Sanfilippo Are Entirely Conclusory, and Entitled to No Credit Under the First Prong of the* **Iqbal** *Test*

Plaintiffs' Opposition conveniently ignores the two-part analysis governing determination of Rule 12(b)(6) motions, announced in *Iqbal,* applied in this Circuit in *Starr v. Sony Music Corp.,* 592 F.3d 314 (2d. Cir. 2010) and *Harris v. Mills,* 572 F.3d 66 (2d. Cir. 2009) and by this Court in cases including *LaFlamme v. Societe Air France,* 2010 U.S. Dist. LEXIS 33480 (E.D.N.Y, April 5, 2010) and *Day v. Distinctive Personnel, Inc.,* 656 F.Supp.2d 331 (E.D.N.Y. 2009). The first part of this test requires the Court to weed out allegations in the nature of bare labels and conclusions, and formulaic recitations of the elements of a cause of action, which are not entitled to be credited as true. The second part of the test requires the court to examine the balance of the non-conclusory allegations to determine if they contain sufficient factual matter to suggest more than the mere possibility of misconduct. *Iqbal,* 129 S.Ct. at 1950. The test is to be applied with reference to the elements of liability under applicable substantive law.

As we showed in our opening brief, authorities are in accord that, in order to plead a Section 1 conspiracy claim against an individual, the Plaintiff must allege, through well-pleaded, non-conclusory factual allegations, that the individual had actual knowledge of and knowingly participated in the illegal scheme. *See Memorandum of Law in Support of Motion to Dismiss of Salvatore Sanfilippo,* ("Sanfilippo Memo."), at 7-8, and authorities cited therein. *Accord Hinds County v. Wachovia Bank,* 2010 U.S. Dist. LEXIS 43204 *53 (S.D.N.Y., April 26, 2010) ("*Hinds III*") ("As described above, to state a viable § 1 claim, Plaintiffs must allege a factual connection between each Defendant and the alleged conspiracy, and may not rely solely on

5

government investigations and conclusory allegations."); *West Penn Allegheny Health Sys.* v. *UPMC,* 2009 U.S. Dist. LEXIS 100935 *80 (W.D. Pa., Oct. 29, 2009) ("Plaintiff has not alleged any facts which evidence a concerted action, a 'meeting of the minds' or a 'conscious commitment to a common scheme.' Rather, plaintiff's allegations lack specificity and speak in more general terms of a conspiracy.").

As we demonstrated in our opening brief, when measured by this test, the complaints fail as to Mr. Sanfilippo. The only allegations leveled against Mr. Sanfilippo are that he: "had knowledge of the actions of Air New Zealand set forth below, approved of them, and participated in them;" and that he engaged in "collusive discussions and communications" and "agreed upon" fuel surcharges on U.S. routes with four airlines, at some unidentified point between March 2001 and February 2006. Complaint, at ¶ 43. As noted in our opening brief, these allegations are even less substantial than allegations rejected as conclusory and insufficiently specific in *Twombly* and *Iqbal* themselves, and in *LaFlamme*. Sanfilippo Memo., at 9-11.

As we showed in detail in our opening brief, taking the complaint as whole, including examining the specific factual allegations detailing "the acts of Air New Zealand," and the meetings and discussions in which the four other airlines mentioned in Paragraph 43 and their individual agents participated, the Court will find simply no allegations that Mr. Sanfilippo participated in, or even knew about, those acts, meetings and discussions. Accordingly, apart from Paragraph 43's entirely conclusory allegations of Mr. Sanfilippo's knowledge, participation, discussion and assent to unspecified acts and agreements, which are not entitled to be taken as true for purposes of Rule 12(b)(6) under the first prong of the *Iqbal* test, there are no well-pleaded factual allegations plausibly suggesting that he knowingly participated in the

conspiracy alleged in the complaint. Plaintiffs' opposition brief simply fails to address, much less to overcome, this fundamental point.

>    3.   *Plaintiffs May Not Rely on General Allegations Common to All Alleged Co-Conspirators, or Specific Allegations of the Acts of Other Defendants, to Substitute for a Lacuna of Well-Pleaded Factual Allegations Tying Mr. Sanfilippo to the Alleged Conspiracy*

Instead, Plaintiffs argue that detailed allegations against other specific defendants and a vast sea of non-particularized allegations applicable to all 40+ "Co-Conspirators" generally, somehow obviate the necessity of well-pleaded factual allegations specifying the participation and knowledge of Mr. Sanfilippo. They rely on a distorted view of the rule that "because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim on the merits," and because they have pleaded sufficient allegations to support the existence of a conspiracy among air cargo carriers, their entirely conclusory allegations that Mr. Sanfilippo knowingly participated in the alleged conspiracy are sufficient, and they need not allege any level of detail as to Mr. Sanfilippo's role. Opposition, at 22.

But the authorities upon which they rely for this proposition simply do not support it, or were decided in completely different factual contexts, or before the import of *Twombly* was clarified in *Iqbal* and subsequent cases. *See, e.g.,* Opposition, at 22 n. 8, citing *In re Flash Memory Antitrust Litig.,* 2009 WL 1096602 *5 (N.D. Cal., Mar. 31, 2009) (pre-*Iqbal*) (factual allegations sufficiently specific as to defendants' participation); *In re NASDAQ Market Makers Litig.,* 894 F.Supp. 703, 712 (S.D.N.Y 1995) and *Beltz Travel Serv. v. Int'l Air Transport Ass'n,* 620 F.2d 1360, 1367 (9th Cir. 1980) (both pre-*Twombly* and pre-*Iqbal*).

*Iqbal* teaches that measuring the level of specificity of the allegations of a complaint required is a context specific task. 129 S. Ct. 1950. Current decisions, including those discussed below, reflect the analytical method suggested by *Twombly, Iqbal, Starr,* and *Harris,* in which

7

the type of threadbare conclusions and rote recitations of elements of liability upon which Plaintiffs here attempt to pin participation in the conspiracy on Mr. Sanfilippo are first culled, and not credited as true. Even in cases upon which Plaintiffs principally rely, as well as the ones they endeavor to distinguish, the courts engaged in a searching analysis of the allegations against each defendant, cognizant of the context and particular position each defendant occupied in connection with the controversy.

For example, Plaintiffs cite the August 2007 decision of the U.S. District Court for the Western District of Pennsylvania, in *OSB Antitrust Litigation,* decided less than three months after the Supreme Court's ruling in *Twombly*, for the proposition that "[a]ntitrust allegations need not be detailed defendant by defendant . . . . Rather an antitrust complaint should be viewed as a whole, and the plaintiff must allege that each defendant joined the conspiracy and played some role in it." 2007 WL 2253419 * 5 (E.D. Pa., August 3, 2007). In turn, the *OSB* court relied on pre-*Twombly* cases stating a plaintiff must plead an individual defendant participated in some way in the conspiracy, but need not set forth each overt act committed by each defendant. *Id.*

In fact, the Court in *OSB* denied the motion to dismiss of Grant Forest Products, only after a careful analysis of the factual allegations and context of the case. Grant was one of the nine OSB manufacturers named in the complaint, whose particular role was described in one paragraph of the complaint. 2007 WL 2253419 *5. However, the context of the matter in which the *OSB* Court measured the allegations against Grant Forest Products bears no resemblance to the situation of Mr. Sanfilippo here. First, Grant Forest Products was, like the other defendants, a corporate manufacturer of OSB products, and itself a horizontal competitor just like the others, not an individual mid-level employee like Mr. Sanfilippo. *Id.* *3. The OSB complaint also alleged that Grant, and the other eight major OSB manufacturers that were the defendants in the

8

case, together controlled 95% of the OSB market in North America; and that on or about June 1, 2002, the defendants together tacitly agreed to raise OSB prices. *Id.* It detailed how the conspiracy operated, including coordination of plant closures among the defendants, and identified the mechanism by which defendants allegedly fixed OSB prices: the use of a twice-weekly published price list in an industry periodical. Both of these specific factual allegations against the defendants necessarily applied to Grant as it was a defendant and one of only nine companies in the industry alleged to be part of the conspiracy. *Id.* \*\*3-4. Viewed in context, it is easy to understand why the OSB court found Grant's participation in the alleged conspiracy plausible.

In a more recent decision, the same Western District of Pennsylvania federal court that issued the *OSB* opinion granted the motions to dismiss of a hospital charged with participation in conspiracies to fix price and monopolize in violation of the Sherman Act. *West Penn Allegheny Health Sys.,* 2009 U.S. Dist. LEXIS 100935 (W.D. Pa., Oct. 29, 2009). In so doing, the Court emphasized its "gatekeeper" function, and the *Iqbal* two-part test:

> Antitrust discovery is expensive and protracted. That is why the Supreme Court, in both *Bell Atlantic Corp.* v. *Twombly* . . . and *Ashcroft* v. *Iqbal* . . . expressly affirmed the district courts' responsibility to analyze a plaintiff's complaint rigorously. . . first, the Court should identify pleadings that "because they are no more than conclusions, are not entitled to the assumption of truth;" and, second, if the factual allegations are not conclusory, the Court should "determine whether [the allegations] plausibly give rise to an entitlement to relief."

*Id.* \*\*57-58.

The court rejected the core allegations of the complaint upon which plaintiffs relied to join defendant UPMC as merely conclusory:

> While the Amended Complaint is long on innuendo and frequently repeats the buzz word that defendants "conspired" and acted in concert to violate Section 1 (and Section 2) of the Sherman Act, the Complaint falls short on any plausible facts to support its bald allegations. Plaintiff has not alleged any facts which evidence a

9

concerted action, a "meeting of the minds" or a "conscious commitment to a common scheme." Rather, plaintiff's allegations lack specificity and speak in more general terms of a conspiracy that was allegedly hatched in 2002 when the new contract between Highmark and UPMC was negotiated and went into effect.

*Id.* *80.

Plaintiffs also rely on the recent decision in *Hinds County Miss. v. Wachovia Bank N.A.*, 2010 WL 1244765 (S.D.N.Y., Mar. 25, 2010) (*"Hinds II"*) in which the Court denied a Rule 12(b)(6) motion by Morgan Stanley, finding that the complaint contained sufficient factual allegations, taken as true, to support a plausible inference that Morgan Stanley had participated in the alleged conspiracy involving bid-rigging, kickback, collusive pricing, and market manipulation in connection with municipal derivatives transactions, and that plaintiff need not provide additional details of the conduct undertaken by Morgan Stanley in furtherance of the conspiracy. Opposition, at 26. Plaintiff's complaint contained details of a taped conversation between two of the alleged co-conspirators in which one of these co-conspirators indicated it had given Morgan Stanley "the opportunity to lower its bid on a transaction through …a 'last look.'" *Hinds II*, 2010 WL 1244765 *11. The Court concluded that, in addition to other matters of which it took notice, this factual allegation:

> makes it plausible that Morgan Stanley participated in the alleged conspiracy. In reaching this conclusion, the Court also takes judicial notice of the first amended complaint filed on September 15, 2009 in *City of Los Angeles v. Bank of America*, 08 Civ. 2516 (S.D.N.Y.) (the "L.A. Complaint"), a related action also before this Court as part of the MDL. . . . The L.A. Complaint contains a specific allegation connecting Morgan Stanley to bid-rigging in a Rhode Island municipal derivatives transaction. Accordingly, the Court finds Morgan Stanley's participation in the alleged conspiracy to be "above the speculative level" . . . .

*Id.*

Though the Plaintiffs rely on *Hinds II*, the Court in that case credited as true factual allegations far more specific, and relied on other matters more suggestive, than the empty labels "knowledge," "participation," "discussion," and "agreement" upon which Plaintiffs' here attempt

10

to link Mr. Sanfilippo to the alleged air cargo conspiracy. Furthermore, while the Court cited authority that "'an overt an act need not be pleaded against each defendant,'" it nevertheless made it clear that "for pleading purposes, a plaintiff must 'make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy.'" *Id.* (citations omitted). Thus, the case does not support Plaintiffs' argument that the Court need not analyze the sufficiency of the allegations of the complaint on a defendant-by-defendant basis, as to whether the complaint adequately pleads knowing participation of each defendant.

Also, in relying upon *Hinds II*, Plaintiffs overlook Judge Marrero's decision a month later, ruling on Rule 12(b)(6) motions attacking separate complaints filed by certain California municipalities, which were similar to the amended complaints addressed in *Hinds II*. *Hinds III*, 2010 U.S. Dist. LEXIS 43204 (S.D.N.Y., April 26, 2010). In this related case, motions were filed by the same defendants as filed motions to dismiss in *Hinds II*. Motions were also filed in *Hinds III* by certain additional non-class defendants, newly joined in those complaints. Like Mr. Sanfilippo here, these additional defendants were not defendants in the similar class complaints previously addressed in *Hinds II* by the Court. *Id.* *35.

In *Hinds III* the California complaints supplemented the prior class action complaints "with averments specific to California municipalities," *Hinds III,* *37, but otherwise pleaded the same municipal derivative bid-rigging, kickback, collusive pricing, and market manipulation allegations as the prior class complaints. *Hinds III,* **31-36. Unsurprisingly, *in Hinds III,* Judge Marrero denied the motions to dismiss of the defendants previously named in the *Hinds II* class action, for the same reasons set out in his March 25, 2010 ruling. But, as to the arguments of the new additional defendants that the complaints "failed to allege facts connecting them to the conspiracy," *id.* *39, the Court again engaged in exactly the type of searching defendant-by-

defendant analysis of the allegations pleaded against each of them that Plaintiffs here suggest is not required as to Mr. Sanfilippo. After this analysis, the Court concluded, as to some of the new defendants, that the pleadings were sufficient, noting, for example, specific allegations of conduct contrary to the defendants' economic interests, and similar pricing offers on one of the transactions affected by the alleged conspiracy. But as to certain other additional defendants, the *Hinds III* Court found the California complaints deficient, in part because they rested on bare conclusory allegations of participation in the municipal securities market and mere presence at industry meetings:

> Plaintiffs again attempt to bolster their allegations by alleging that XL received a subpoena from DOJ Antitrust in 2006, and that XL had the opportunity to conspire with other Defendants at industry meetings. In addition, Plaintiffs allege that XL fits the definition of a "financial institution that was a branch or agency of a foreign bank within the meaning of Title 18, United States Code, Section 20," as defined in the October 2009 CDR Indictment, and is thus implicated in the alleged conspiracy.
>
> The Court is not persuaded and finds that Plaintiffs' conclusory allegations do not plausibly suggest that XL participated in the alleged conspiracy. As described above, to state a viable § 1 claim, **Plaintiffs must allege a factual connection between each Defendant and the alleged conspiracy, and may not rely solely on government investigations and conclusory allegations based on mere participation in the municipal derivatives market.** In addition, the Court has previously rejected SCAC Plaintiffs' reliance on Defendants' mere presence at industry associations and meetings to state a § 1 claim. *See Hinds*, 620 F. Supp. 2d at 513. Accordingly, the Court dismisses Plaintiffs' claim against XL . . .

*Hinds III*, at \*\*53-54 (emphases added; internal record citations omitted).

Other recent cases have drawn similar conclusions to reject arguments such as those put forth by Plaintiffs. These include *In re TFT LCD Antitrust Litig.*, 586 F.Supp. 2d 1109 (N.D. Cal. 2008), a published decision from the same court that issued the unpublished decision *In re Flash Memory Litig.*, 2009 WL 1096602 (N.D. Cal. Mar. 31, 2009) cited by Plaintiffs. Opposition, n.8. In the *TFT LCD* case, the Court acknowledged that "the complaint need not contain detailed 'defendant by defendant' allegations," but held that "[w]hile this is true, the

12

Court agrees with defendants that the complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it..." *Id.* at 1117. The court agreed that general allegations common to all defendants, or vague non-specific labels such as undifferentiated references to "Japanese Defendants," are insufficient to establish that a particular defendant joined the conspiracy.

To similar effect is *In re California Title Antitrust Litig.*, 2009 U.S. Dist. LEXIS 43323 (N.D. Cal. Nov. 6, 2009), another recent decision by the Northern California District Court. There, the plaintiffs named as defendants parent corporations of the title companies alleged to have engaged in a price-fixing conspiracy, relying on generalized allegations common to all defendants. The parents moved to dismiss, arguing that the plaintiffs had not pleaded specific facts showing that the parent companies joined the conspiracy. Just as Plaintiffs do here, the plaintiffs there cited the *Vitamins* case to argue that they need not plead any overt acts by the defendants. The Court granted the motions, holding:

> Plaintiffs argue that they need not allege overt acts committed by each defendant in furtherance of the alleged conspiracy and rely on *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 164 n. 27 (D.D.C. 2004) to support this argument. However, *Jung* does not stand for the proposition that plaintiffs are relieved of their obligation to allege that each defendant agreed to join or participated in the alleged conspiracy. *See Jung*, 300 F. Supp. 2d at 164 n. 27 ("Plaintiffs' reference to . . . *In re Vitamins Antitrust Litigation*, 2000 U.S. Dist. LEXIS 7397, 2000 WL 1475705, is misplaced. In that case, Chief Judge Hogan concluded that a plaintiff need not allege overt acts committed by each defendant in furtherance of a conspiracy. . . . He did not hold that plaintiffs need not plead that an individual defendant was a participant in the conspiracy in the first instance.") (emphasis added); *see also id.* at 161, 163. Here, as in *In re TFT-LCD I* and *Jung*, Plaintiffs attempt to show the Parent Corporations directly participated in the conspiracy by making general allegations as to the families of the title insurance companies, without any specific allegations as to what the Parent Corporations did. Those allegations are insufficient . . . .

*Id.* **27-29.

In short, the cases are in accord that a plaintiff must adequately plead that each defendant in an alleged conspiracy knowingly participated in the conspiracy. After *Iqbal,* it is clear that the claim must be supported by well-pleaded, non-conclusory allegations sufficient to plausibly suggest that each defendant knowingly participated in the conspiracy. Even Plaintiffs appear to recognize that the post-*Iqbal* pleading standard requires some level of specification of the particular activities of each Defendant. Plaintiffs accordingly attempt to distinguish the cases cited by Mr. Sanfilippo where complaints were dismissed for failure to adequately plead sufficiently detailed non-conclusory facts plausibly suggesting a particular defendant's participation in an antitrust conspiracy. Plaintiffs do so by baldly stating that, "[h]ere there are allegations of specific activities by each of the movants." Opposition at 24-26. As to Mr. Sanfilippo, scrutiny of Paragraph 43 through the prism of the first prong of the *Iqbal* test reveals that the so-called "specifics" are nothing more than mere conclusions and rote recitations of the elements "knowledge," "participation" and "agreement." This defect fatally undermines all of Plaintiffs' arguments.

C.   *Conclusion and Prayer for Relief*

None of the authorities Plaintiffs cite in opposition support the notion that they can state an antitrust claim against an individual for joining a price-fixing conspiracy simply by tacking on allegations that are no more than bare conclusions to general allegations common to over 40 other alleged co-conspirators, and specific, detailed allegations about the meetings, plans, agreements, guilty pleas and requests for leniency of other defendants. Yet this is all the Plaintiffs have done by relying solely on allegations that Mr. Sanfilippo "had knowledge of, approved . . . and participated in" the alleged conduct of his employer, engaged in "collusive discussions and communications," and "agreed upon" fuel surcharges with other airlines, at some

14

unspecified point within a five year time span. Mr. Sanfilippo agrees with the Plaintiffs that the Court should view the Complaints as a whole. When viewed against the backdrop of the Complaints' detailed allegations particularizing the meetings, discussions and agreements in which certain specified airlines and their employees were involved, and the guilty pleas and leniency requests of other defendants, the rank conclusory nature of the allegations against Mr. Sanfilippo stand out in stark contrast.

Nor have Plaintiffs represented that they have any more specific allegations they could add to particularize the claims against Mr. Sanfilippo. In their request to replead, should it be necessary, Plaintiffs list a number of additional factual allegations they could add to an amended complaint, but none of the listed new details relate in any way to Mr. Sanfilippo or would address the deficiencies of the Complaints as to him. Opposition, at 26-27.

**WHEREFORE,** the claims against Defendant Salvatore Sanfilippo must be dismissed, with prejudice.

                                            Respectfully submitted,

                                            GARVEY SCHUBERT BARER

                                            */s/ Benjamin J. Lambiotte*
                                            Benjamin J. Lambiotte
                                            Paul S. Hoff
                                            Richard D. Gluck
                                            Appearing *Pro Hac Vice*
                                            1000 Potomac Street NW
                                            Fifth Floor
                                            Washington, DC 20007-3501
                                            (202) 965 7880
                                            blambiotte@gsblaw.com

                                            *Attorneys for Defendant Salvatore Sanfilippo*