UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION | 06-MD-01775 (JG)(VVP) |
| THIS DOCUMENT RELATES TO:<br><br>BENCHMARK EXPORT SERVICES, et al.,<br>   Plaintiffs<br>              v.<br>CHINA AIRLINES, LTD., et al.,<br>   Defendants | 10-CV-00639 (JG)(VVP) |

**REPLY MEMORANDUM IN SUPPORT OF
CHINA AIRLINES, LTD.'S MOTION TO DISMISS THE CLASS
ACTION COMPLAINT PURSUANT TO F.R.Civ.P. 12(b)(6)**

James V. Dick (D.C. Bar. 213330; Admitted *Pro Hac Vice*)
SQUIRE, SANDERS & DEMPSEY, LLP
Fifth Floor
1201 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 626-6600
Facsimile: (202) 626-6780
E-mail: jdick@ssd.com

Counsel for Defendant China Airlines, Ltd.

## TABLE OF CONTENTS

Page

I. PLAINTIFFS FAIL TO SHOW THAT THE COMPLAINT SUFFICIENTLY ALLEGES FRAUDULENT CONCEALMENT...................................................1

    A. Fraudulent Concealment Issues Are Often Resolved on a Motion to Dismiss......1

    B. The Complaint Does Not Sufficiently Allege the "Concealment" Element.........2

        1. Plaintiffs May Not Rest on the "Self-Concealing Conspiracy" Argument..................................................................................2

        2. Plaintiffs' Allegations Regarding "Pretextual" Explanations Are Insufficient..................................................................................4

        3. Plaintiffs' Allegations of "Secret" Communications Are Insufficient......6

    C. The Complaint Does Not Sufficiently Allege the "Due Diligence" Element.......7

II. SECTION 5(i) SHOULD NOT EXTEND THE LIMITATIONS PERIOD UNDER THE CIRCUMSTANCES HERE.......................................................................9

III. ANY REMAINING ALLEGATIONS AGAINST CHINA AIRLINES SHOULD BE DISMISSED UNDER *TWOMBLY*..................................................11

    A. *Stare Decisis* Does Not Apply to China Airlines' Motion..........................11

    B. The Well-Pleaded Factual Allegations Against China Airlines Fail to Satisfy *Twombly* and *Iqbal*.................................................................12

IV. CONCLUSION...........................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*(In re) Aluminum Phosphide Antitrust Litigation*,
   905 F. Supp. 1457 (D. Kan. 1995)..................................................................7, 8, 9

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009)...................................................................................1, 12, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................1, 11, 12, 13

*Butala v. Agashiwala*,
   916 F. Supp. 314 (S.D.N.Y. 1996) ..............................................................................2

*Camotex, S.R.L. v. Hunt*,
   741 F. Supp. 1086 (S.D.N.Y. 1990).........................................................................10

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
   858 F.2d 499 (9th Cir. 1988) .......................................................................................7

*Coveal v. Consumer Home Mort., Inc.*,
   2005 U.S. Dist. LEXIS 5003 (E.D.N.Y. Mar. 29, 2005).........................................2

*Donahue v. Pendleton Woolen Mills, Inc.*,
   633 F. Supp. 1423 (S.D.N.Y. 1986)...........................................................................4

*Dry Cleaning & Laundry Institute v. Flom's Corp.*,
   841 F. Supp. 212 (E.D. Mich. 1993).........................................................................3

*(In re) Fertilizer Antitrust Litigation*,
   1979 U.S. Dist. LEXIS 9818 (E.D. Wash. Sept. 14, 1979) ...................................3

*Gately v. Massachusetts*,
   2 F.3d 1221 (1st Cir. 1993) .......................................................................................12

*Gelin v. Lehman & City Colleges*,
   2000 U.S. Dist. LEXIS 3498 (S.D.N.Y. Mar. 23, 2000) .........................................2

*Hinds County, Mississippi v. Wachovia Bank, N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009)...................................................................1, 2

*King & King Enterprises v. Champlin Petroleum Co.*,
   657 F.2d 1147 (10th Cir. 1981) ..................................................................................6

*Korwek v. Hunt*,
    646 F. Supp. 953 (S.D.N.Y. 1986) .................................................................................11

*LaFlamme v. Societe Air France*,
    2010 U.S. Dist. LEXIS 33480 (E.D.N.Y. April 5, 2010) ..................................................13

*Maricopa County v. American Pipe and Construction Co.*,
    303 F. Supp. 77 (D. Ariz. 1969) ......................................................................................10

*Martin v. Consultants & Adm'rs, Inc.*,
    966 F.2d 1078 (7th Cir. 1992) ...........................................................................................3

*Mendenhall v. Cedarapids, Inc.*,
    5 F.3d 1557 (Fed. Cir. 1993) ...........................................................................................11

*(In re) Mercedes-Benz Antitrust Litigation*,
    157 F. Supp. 2d 355 (D. N.J. 2001) ..................................................................................8

*(In re) Merrill Lynch Limited Partnerships Litigation*,
    154 F.3d 56 (2d Cir. 1998) ................................................................................................4

*Michigan v. Morton Salt Co.*,
    259 F. Supp. 35 (D. Minn. 1966) ....................................................................................10

*(In re) Milk Products Antitrust Litigation*,
    84 F. Supp. 2d 1016 (D. Minn. 1997) ......................................................................4, 5, 7

*(In re) Monosodium Glutamate Antitrust Litigation*,
    2003 U.S. Dist. LEXIS 1969 (E.D.Mich. 1993) ................................................................3

*New York v. Hendrickson Bros., Inc.*,
    840 F.2d 1065 (2d Cir. 1088) .......................................................................................2, 3

*OBG Technical Services, Inc. v. Northrup Grumman Space & Mission Sys. Corp.*,
    503 F.Supp. 2d 490 (D. Conn. 2007) ............................................................................2, 3

*Philip Morris, Inc. v. Heinrich*,
    1996 U.S. Dist. LEXIS 9156 (S.D.N.Y. June 28, 1996) ..................................................10

*Pocahontas Supreme Coal Company, Inc. v. Bethlehem Steel Corporation*,
    828 F.2d 211 (4th Cir. 1987) .............................................................................................5

*(In re) Publication Paper Antitrust Litigation*,
    2005 U.S. Dist. LEXIS 19896 (D. Conn. Sept. 6, 2005) ............................................ *passim*


*Raucci v. Roman,*
  2007 U.S. Dist. LEXIS 77499 (D. Conn. Oct. 18, 2007) ...................................................2

*(In re) Rubber Chemicals Antitrust Litigation,*
  504 F. Supp. 2d 777 (N.D. Cal. 2007) .............................................................................7

*Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.,*
  71 F.3d 119 (4th Cir. 1995) .............................................................................................3

*Testone v. Niagara Mohawk Power Corp.,*
  1992 U.S. Dist. LEXIS 3743 (N.D.N.Y. Mar. 26, 1992)..................................................2

*Texas v. Allan Construction Co.,*
  851 F.2d 1526 (5th Cir. 1988) .........................................................................................3

*Tug Helen B. Moran, Inc. v. Moran Towing and Transp. Co., Inc.,*
  607 F.2d 1029 (2d Cir. 1979)..........................................................................................11

*Union Carbide & Carbon Corp. v. Nicely,*
  300 F.2d 561 (10th Cir. 1961) .......................................................................................10

*(In re) Urethane Antitrust Litigation,*
  683 F. Supp. 2d 1214 (D. Kan. 2010).............................................................................11

*(In re) Vitamins Antitrust Litigation,*
  2000 U.S. Dist. LEXIS 7397 (D.D.C. May 9, 2000)...................................................7, 8

## DOCKETED CASES

*United States v. Jan Lillieborg,*
  Crim. No. 2:09-cr-00616 (D.N.J., filed Aug. 12, 2009) ................................................10

## FEDERAL STATUTES

15 U.S.C. § 16(i)....................................................................................................................9

Defendant China Airlines, Ltd. ("China Airlines") submits this reply brief in further support of its motion to dismiss the Class Action Complaint ("Complaint") under F.R.Civ.P. 12(b)(6). Virtually all of Plaintiffs' claims against China Airlines are barred by the four-year statute of limitations applicable to actions seeking treble damages under the federal antitrust laws. 15 U.S.C. § 15b. To the limited extent that an isolated allegation may not be time-barred, the Complaint fails to allege facts showing a plausible claim against China Airlines under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).

## I. PLAINTIFFS FAIL TO SHOW THAT THE COMPLAINT SUFFICIENTLY ALLEGES FRAUDULENT CONCEALMENT

Plaintiffs fail to meet their burden of pleading fraudulent concealment with the particularity required by F.R.Civ.P. 9(b). *See* Memorandum in Support of China Airlines, Ltd's Motion to Dismiss, filed May 14, 2010 ("China Airlines' Mem.") at 7-8.

### A. Fraudulent Concealment Issues Are Often Resolved on a Motion to Dismiss

With respect to fraudulent concealment, Plaintiffs' Opposition Brief ("Opp.") first contends that it would be "inappropriate" for the Court to resolve China Airlines' challenge in the context of a motion to dismiss, since fraudulent concealment is fact-specific. Opp. at 31. It is true that fraudulent concealment claims cannot be proven at the motion to dismiss stage, but they clearly can be dismissed if they are not properly pleaded. As the court wrote in *Hinds County, Mississippi v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 522 (S.D.N.Y. 2009): "Named Plaintiffs contend that the Court should refrain from deciding whether [they] should have discovered the basis for the antitrust violations alleged here because that issue implicates questions of fact that cannot be decided on a motion to dismiss. However, it is appropriate for

1

the Court to assess the sufficiency of Named Plaintiffs' pleading of fraudulent concealment at the motion to dismiss stage."[1]

For that reason, numerous courts within the Second Circuit have dismissed fraudulent concealment claims under F.R.Civ. P. 12(b)(6). *See, e.g., Hinds County, supra*; *Raucci v. Roman*, 2007 U.S. Dist. LEXIS 77499 (D. Conn. Oct. 18, 2007); *OBG Technical Services, Inc. v. Northrup Grumman Space & Mission Sys. Corp.*, 503 F.Supp. 2d 490 (D. Conn. 2007); *In re Publication Paper Antitrust Litigation*, 2005 U.S. Dist. LEXIS 19896 (D. Conn. Sept. 6, 2005); *Coveal v. Consumer Home Mort., Inc.*, 2005 U.S. Dist. LEXIS 5003 (E.D.N.Y. Mar. 29, 2005).[2] This court should do likewise

**B.      The Complaint Does Not Sufficiently Allege the "Concealment" Element**

Plaintiffs have not shown that the Complaint sufficiently alleges the "wrongful concealment" element of fraudulent concealment. *See* China Airlines Mem. at 8-11.

1. Plaintiffs May Not Rest on the "Self-Concealing Conspiracy" Argument

Plaintiffs continue to insist that the alleged conspiracy is "self-concealing," so they need not allege any putative acts of concealment beyond the conspiracy itself. Opp. at 31-32. In *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1088), the Second Circuit ruled that a bid-rigging conspiracy was self-concealing for purposes of fraudulent concealment. That case involved an appeal from a jury verdict in which the evidence showed, among other facts, that the bidders were required to submit affidavits representing (falsely) that they had not agreed in

---

[1] *See also In re Publication Paper Antitrust Litigation*, 2005 U.S. Dist. LEXIS 19896 (D. Conn. Sept. 6, 2005), at *17 n. 7 ("[T]he ultimate question whether the plaintiffs' investigation or lack thereof was reasonable is one of fact and not resolvable on a motion to dismiss….That does not, however, excuse plaintiffs from pleading the circumstances surrounding their diligence or lack thereof;" citations omitted).

[2] *See also Gelin v. Lehman & City Colleges*, 2000 U.S. Dist. LEXIS 3498 (S.D.N.Y. Mar. 23, 2000; *Butala v. Agashiwala*, 916 F. Supp. 314 (S.D.N.Y. 1996); *Testone v. Niagara Mohawk Power Corp.*, 1992 U.S. Dist. LEXIS 3743 (N.D.N.Y. Mar. 26, 1992).

collusion in submitting their bids. *Id.* at 1084. Contrary to Plaintiffs' claim, Opp. at 31, *Hendrickson* does not establish that all price-fixing conspiracies are self-concealing.

Numerous courts have held that price-fixing conspiracies are not inherently self-concealing, *e.g., Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 123 (4th Cir. 1995); *Texas v. Allan Construction Co.*, 851 F.2d 1526, 1531 (5th Cir. 1988); *Dry Cleaning & Laundry Institute v. Flom's Corp.*, 841 F. Supp. 212, 217 (E.D. Mich. 1993); *In re Monosodium Glutamate Antitrust Litigation*, 2003 U.S. Dist. LEXIS 1969 (E.D.Mich. 1993), at *9-*10; *In re Fertilizer Antitrust Litigation*, 1979 U.S. Dist. LEXIS 9818 (E.D. Wash. Sept. 14, 1979), at *20.[3] In one post-*Hendrickson* case within the Second Circuit, the court expressly ruled that "not every price-fixing conspiracy is self-concealing." *In re Publication Paper Antitrust Litigation*, 2005 U.S. Dist. LEXIS 19896 (D. Conn. Sept. 6 2005), at *11.[4]

The price-fixing conspiracy alleged by the plaintiffs in *Publication Paper* was found to be insufficient, by itself, to establish the "wrongful concealment" element of fraudulent concealment. The court cited the plaintiffs' own allegations that defendants' price increases were "not explainable by ordinary market forces," which suggested that the announcements "did not bear the hallmarks of legitimate increases and so were not misleading." 2005 U.S. Dist. LEXIS 19896, at *13. In the instant case, the Plaintiffs allege that over a period of many years nearly 40 airlines around the world raised prices simultaneously in 5-cent increments regardless

---

[3] The rationale expressed in *Dry Cleaning & Laundry Institute* is representative of these cases: "In order for a price-fixing scheme to be successful, it must be kept secret....However, the purpose of the deception is to cover up the illegal act. Thus, the deception is not an essential element of the wrong. If the deception is not an essential element of the wrong, then it follows that fraudulent concealment is not inherent in every price-fixing scheme." 841 F. Supp. at 217 (internal quotation omitted).

[4] In another post-*Hendrickson* case within the Second Circuit the court questioned the concept of self-concealing violations, writing that "the phrase 'self-concealing' is often invoked as a substitute for meaningful analysis" and noting that "Judge Posner has properly queried, 'Self-concealing sounds good, but what does it mean?'" *OBG Tech. Servs. v. Northup Grumman Space and Mission System Corp.*, 503 F. Supp. 2d 490, 507 (D. Conn. 2007), quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1103 (7th Cir. 1992) (Posner, J., concurring).

3

of their differing costs, *see, e.g.*, Complaint, ¶¶ 139. 141, 143, 152, 159-60--allegations that similarly suggest that Plaintiffs were or should have been suspicious about the legitimacy of the increases. *See* Sec. I-C *infra*.

> 2. Plaintiffs' Allegations Regarding "Pretextual" Explanations Are Insufficient

The Plaintiffs argue that, even if the alleged conspiracy is not self-concealing, the allegations in the Complaint regarding pretextual explanations and secret meetings and communications by and among defendants sufficiently plead the "concealment" element of fraudulent concealment. They are mistaken.

In support of their position that allegedly "pretextual" justifications for price increases constitute affirmative acts of concealment, Plaintiffs cite district court cases from outside the Second Circuit, Opp. at 36, but ignore the Second Circuit's own ruling in *In re Merrill Lynch Limited Partnerships Litigation*, 154 F.3d 56 (2d Cir. 1998). In that case, the plaintiffs alleged that Merrill Lynch concealed its fraud "by actively misrepresenting that the declines in the partnerships' asset values and distributions were the result of short-term declines in the real estate market," but those allegations of concealment were considered a insufficient excuse for plaintiffs' failure to discover the fraud. 154 F. 3d at 60. *See also Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986) ("General assertions by counsel that [defendant] supplied blatantly false and fraudulent information to retailers and sales representatives fall far short of meeting the pleading requirement for wrongful concealment").

Other courts have also found that misrepresentations such as those in *Merrill Lynch* and *Pendleton Woolen Mills* do not amount to the type of concealment that can support a claim of fraudulent concealment. In *In re Milk Products Antitrust Litigation*, 84 F.Supp. 2d 1016, 1022-23 (D. Minn. 1997), for example, the plaintiffs "allege[d] that instead of admitting to a

4

conspiracy, Defendants attributed their high profits to diversified operations, improved efficiency, drought, tight supplies, and state law." The court nevertheless concluded that "the mere allegation that Defendants mailed letters to customers attributing price increases to market factors…does not lead to the conclusion that Defendants affirmatively concealed a conspiracy, as would a letter on plain stationery meant to conceal the identity of the sender." *Id*. at 1023. In *Pocohontas Supreme Coal Company, Inc. v. Bethlehem Steel Corporation*, 828 F.2d 211, 218 (4th Cir. 1987), the plaintiff specifically inquired of one of the defendants why it refused to accept certain deliveries of coal, and why the price it paid for coal was so low. "Instead of responding that the pricing and delivery policies were the result of concerted, illegal antitrust activity, [the defendant] responded that the delivery quotas were due to a railroad strike that affected [its] ability to store the coal and that the pricing simply was the maximum allowable." The Fourth Circuit deemed the defendant's statements to be no more than a "failure to own up to illegal conduct," which cannot support a claim of fraudulent concealment. 828 F.2d at 218-19.

In the instant case, the allegedly "pretextual" justifications for price increases were not even pretextual. According to the Complaint, the original defendants attributed price increases to factors such as the rising cost of fuel and other expenses. *See* Complaint, ¶¶ 182-87. The Complaint does not allege that such statements were false, nor could it, because the skyrocketing price of fuel and the increased cost of airline security during the relevant period are common knowledge. The Complaint merely claims that these statements were incomplete because the defendants did not specifically attribute their price increases to the alleged conspiracy. But, as the *Pocohantas* court declared, the law is clear that the mere "failure to own up to illegal conduct" does not constitute concealment for purposes of fraudulent concealment; a contrary result "would effectively nullify the statute of limitations." 828 F.2d at 218019. *See also Milk*

5

*Products*, 84 F. Supp. 2d at 1023 ("Simply denying the existence of an antitrust violation does not constitute fraudulent concealment…"); *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir. 1981) ("A denial of an accusation of wrongdoing does not constitute fraudulent concealment"). The Plaintiffs, in short, cannot rest the "concealment" element of their fraudulent concealment claim on the original defendants' public statements regarding the reasons for their price increases.

        3.      <u>Plaintiffs' Allegations of "Secret" Communications Are Insufficient</u>

Nor are Plaintiffs' allegations of "secret" meetings and communications sufficient to satisfy the "wrongful concealment" element of their fraudulent concealment claim. The Complaint asserts that the Defendants and co-conspirators "met and communicated secretly concerning the pricing and marketing of Airfreight Shipping Services so as to avoid detection" (¶ 177), and "agreed among themselves not to discuss publicly or otherwise reveal the nature and substance of the acts and communications in furtherance of their illegal conspiracy" (¶ 176). But these are entirely conclusory statements with no supporting factual allegations. The portion of the Complaint that outlines the alleged price-fixing scheme (¶¶ 127-171) contains several specific descriptions of meetings or communications in which certain defendants allegedly engaged in unlawful conduct. *See, e.g.*, Complaint, at ¶¶ 135, 137, 140, 141, 149, 155, 164. These paragraphs describe alleged agreements among certain defendants on fuel surcharges, other types of surcharges, and a concerted refusal to discount, but <u>none</u> of the descriptions in these paragraphs contain a single reference to any need to avoid detection or prevent revelation of the nature or substance of the meeting or communication--let alone any allegation of

affirmative acts of concealment such as document destruction or an agreement to refrain from creating documents as in cases cited by Plaintiffs. *See* Opp. at 36.[5]

General, conclusory allegations of "secret meetings" and "surreptitious communications" are "wholly insufficient under Rule 9(b)." *Publication Paper*, 2005 U.S. Dist. LEXIS at *8. "[A]lleging that Defendants participated in 'clandestine meetings'…is not tantamount to representing to others that the meetings were [lawful] when in fact they were meetings in furtherance of a conspiracy." *In re Milk Products Antitrust Litigation*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997). *See also In re Aluminum Phosphide Antitrust Litigation*, 905 F. Supp. 1457, 1470 (D. Kan. 1995) (Plaintiffs "do not cite any specific actions by defendants to keep their meetings a secret;" fraudulent concealment claim denied).

### C.     The Complaint Does Not Sufficiently Allege the "Due Diligence" Element

The Plaintiffs also fail to show that the allegations in the Complaint satisfy the "due diligence" element of fraudulent concealment, *i.e.*, that they have sufficiently alleged their due diligence in pursuing discovery of their claim. *See* China Airlines Mem. at 8. Indeed, their opposition brief acknowledges that they failed to investigate the alleged conspiracy. Opp. at 38-39. They claim that they do not need to allege any inquiry into the existence of a conspiracy because they had no reason to suspect collusion, quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 504 (9th Cir. 1988), for the proposition that "the requirement of diligence is only meaningful…when facts exist that would excite the inquiry of a reasonable person." Opp. at 38. China Airlines does not dispute that proposition, but it vigorously disputes the suggestion that Plaintiffs had no basis for suspicion.

---

[5] *See, e.g., In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007) (complaint alleged document destruction); *In re Vitamins Antitrust Litigation*, 2000 U.S. Dist. LEXIS 7397 (D.D.C. 2000), at *19 (complaint alleged document destruction and an agreement not to create new documents).

The Complaint itself describes ample grounds for suspicion. It alleges that the Defendants and their co-conspirators used a common formula that resulted in uniform charges (Complaint, ¶ 134); that they imposed increases in uniform 5-cent steps (*id.*, ¶ 139); that they imposed identical fuel surcharge increases (*id.*, ¶ 141); that they jointly imposed multi-step price increases "all at identical amounts per step" (*id.*, ¶ 143); that they jointly imposed the same security surcharge ($0.15) throughout the world, "regardless of differences in actual security costs for different localities" (*id.*, ¶ 152); that they imposed a uniform surcharges to comply with U.S. Customs manifest requirements, even though "any costs incurred [by the airlines] could not have been virtually uniform" (*id.*, ¶¶ 159-60); and that they uniformly refused to provide discounts to freight forwarders *(id.*, ¶ 163).

China Airlines submits that a reasonable person in the Plaintiffs' position, faced with such uniform, parallel pricing over a period of many years by 40 airlines in all parts of the globe, would have become suspicious of possible collusion. Plaintiffs are not naive consumers, but sophisticated participants in the air cargo industry. They knew that the defendant carriers had parallel prices but not identical costs, *id.* at, *e.g.*, ¶¶ 152, 160. It is inconceivable that the possibility of collusion did not occur to the Plaintiffs, thereby triggering a duty to investigate.

Plaintiffs' opposition brief tries to minimize the grounds for suspicion by re-characterizing allegations of simultaneous, uniform price increases as mere "public announcements," and by claiming that "the purchasers of course know the prices they paid." Opp. at 39. They cite *In re Mercedes-Benz Antitrust Litigation*, 157 F. Supp. 2d 355, 373 (D. N.J. 2001), for the proposition that it is immaterial, for fraudulent concealment purposes, "whether plaintiffs know the prices paid were higher than they should have been," Opp. at 39, and *In re Vitamins Antitrust Litigation*, 2000 U.S. Dist. LEXIS 7397 (D.D.C. May 9, 2000), at *33, for the

8

proposition that "market trends" do not constitute notice of price-fixing, Opp. at 39. But they miss the point: their Complaint alleges far more grounds for suspicion than simply knowing that the prices they paid were high or trending upward.

The instant case is like *Publication Paper*, 2005 U.S. Dist. LEXIS 19896, at *15-*16, in which the plaintiffs "alleged that the defendants engaged in 'dramatic, lockstep price increases despite stable or declining demand and input costs...' all the while making 'contemporaneous statements that were intended to signal price increases to rivals'" (quoting complaint). The *Publication Paper* court determined that the complaint failed to sufficiently allege the due diligence element of fraudulent concealment because it offered no "allegations of steps taken to investigate those circumstances or any indication that they were not aware of those circumstances (and consequently could not have been expected to investigate them)." *Id*. at *16. As in *Publication Paper*, the Plaintiffs here have not merely alleged high prices, but "dramatic, lockstep increases" unsupported by cost conditions. Their acknowledged failure to allege any investigation or inquiries of defendants similarly defeats the due diligence element of their fraudulent concealment claim. *See also In re Aluminum Phosphide Antitrust Litigation*, 905 F. Supp. 1457, 1471 (D. Kan. 1995) (due diligence element not shown when one plaintiff had concluded, on the basis of a marketing survey, that there was something "was seriously wrong in the market" because the price of the relevant product was uniformly high).

## II.   SECTION 5(i) SHOULD NOT EXTEND THE LIMITATIONS PERIOD UNDER THE CIRCUMSTANCES HERE

Plaintiffs also argue that, under Section 5(i) of the Clayton Act, 15 U.S.C. § 16(i), the tolling periods for related government antitrust actions may be tacked together to extend the limitations period to the present day. Opp. at 42. China Airlines does not dispute that tolling periods for government actions have been tacked together under Section 5(i). But it submits that

9

the Court should not do so under the circumstances presented here, involving a series of separate government actions--the first two of which ended more than two and a half years before the Complaint was filed--with gaps of up to three months between the end of one and the start of the next. *See* China Airlines Mem., at 6 n.5.

In two of the cases Plaintiffs cite in support of their argument, there was no gap at all between the conclusion of the first government action and the start of the next. *Philip Morris, Inc. v. Heinrich*, 1996 U.S. Dist. LEXIS 9156 (S.D.N.Y. June 28, 1996), at *35 (government proceedings overlapped); *Union Carbide & Carbon Corp. v. Nicely*, 300 F.2d 561, 569-70 (10th Cir. 1961) (second government case filed the same day the first one ended). In another there was only a four day hiatus between the government actions, *Maricopa County v. American Pipe and Construction Co.*, 303 F. Supp. 77, 81 (D. Ariz. 1969). In a fourth case Plaintiffs cite--*Michigan v. Morton Salt Co.*, 259 F. Supp. 35, 51 (D. Minn. 1966)--the court permitted the tolling periods of two successive government actions to be tacked together despite a 13-day gap between the actions, but recognized that that result is not inviolate: "It may be that in some instances tolling the statute during successive actions would result in treble damage claims of such vintage that it would be patently unreasonable to assume that Congress meant to allow 'tacking' under [Section 5(i)]." [6]

The Southern District of New York has ruled that tolling periods for successive class actions should not be tacked together in a price-fixing case because a contrary result "would give rise to 'a situation plainly at odds with the principle of repose that statutes of limitations are designed to achieve.'" *Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1091 (S.D.N.Y. 1990),

---

[6] For example, where (as here) the Justice Department indicts a foreign individual who remains overseas, the indictment may remain pending indefinitely, *see, e.g.*, 18 U.S.C. § 3161(h)(3), nullifying any statute of limitations. *See United States v. Jan Lillieborg*, Crim. No. 2:09-cr-00616 (D.N.J., filed Aug. 12, 2009) (SAS Cargo official indicted for participating in alleged conspiracy to fix air cargo prices).

10

quoting *Korwek v. Hunt*, 646 F.Supp. 953, 965 (S.D.N.Y. 1986). *Camotex* did not involve tolling under Section 5(i), but its rationale applies equally to the instant case. With eight separate government actions having been filed and concluded more than one year before the Complaint was filed, the scale now tips strongly in favor repose. *See* Complaint, ¶¶ 98, 100, 102, 104-06, 108, 112-13.

Even if this Court were to permit the Plaintiffs to tack together the tolling periods of successive government actions, moreover, they could only seek damages for the four year period prior to the filing of the first government action on August 1, 2007. *See* China Airlines Mem. at 5. Indeed, Plaintiffs appear to agree that (absent a successful fraudulent concealment claim) their damages as to China Airlines would be limited to the period after August 1, 2003, if tacking under Section 5(i) is permitted. Opp. at 43-44.[7]

## III. ANY REMAINING ALLEGATIONS AGAINST CHINA AIRLINES SHOULD BE DISMISSED UNDER TWOMBLY

### A. *Stare Decisis* Does Not Apply to China Airlines' Motion

Plaintiffs' lead argument--that Judge Gleeson's ruling denying the original defendants' motion to dismiss on *Twombly* grounds[8] "should be dispositive under *stare decisis*," Opp. at 19-- misapprehends the nature of the *stare decisis* doctrine. *Stare decisis* applies to pure questions of law, not to the facts, or alleged facts, of a case, and not to mixed questions of law and fact. 18-134 *Moore's Federal Practice - Civil* § 134.05[3], citing, *inter alia, Tug Helen B. Moran, Inc. v. Moran Towing and Transp. Co., Inc.*, 607 F.2d 1029, 1031 (2d Cir. 1979); *Mendenhall v.*

---

[7] It is immaterial that the start of the limitations period for the original defendants may be earlier than August 1, 2003. Courts have recognized that the same claims may be time-barred as to one alleged conspirator yet timely as to another in the same conspiracy. *See In re Urethane Antitrust Litigation*, 683 F. Supp. 2d 1214, 1225-29 (D. Kan. 2010) (claims brought against individual conspirators were time-barred when raised more than one year after the same claims were timely brought against corporate conspirators).

[8] Order of August 21, 2009, Docket Entry 938.

11

*Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993); *see also Gately v. Massachusetts*, 2 F.3d 1221, 1226 (1st Cir. 1993) (citing *Tug Helen B. Moran, Inc.*).

Whether or not a complaint passes muster under *Twombly* necessarily depends upon the particular factual allegations it contains. *See Twombly*, 550 U.S. at 570 (need to allege "enough facts to state a claim for relief that is plausible on its face"); *Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). But the facts alleged as to China Airlines in the Plaintiffs' Complaint here are obviously quite different from those alleged in the First Consolidated Amended Complaint ("FCAC"), because there are no facts alleged as to China Airlines in the FCAC. Judge Gleeson's *Twombly* decision therefore has no *stare decisis* effect as to China Airlines.

### B. The Well-Pleaded Factual Allegations Against China Airlines Fail to Satisfy *Twombly* and *Iqbal*

Plaintiffs then argue that the factual detail they claim to have added to the Complaint makes the inference of a price-fixing violation "even more plausible." Opp. at 19. As discussed in China Airlines' brief, however, the "additional factual detail" that refers to China Airlines is limited to allegations in four paragraphs that are individually and collectively insufficient to demonstrate that it joined the alleged conspiracy--notwithstanding Plaintiffs' extensive access to documents and information from Lufthansa and other defendants. *See* China Airlines Mem. at 14-15.

Only one of those allegations concerns the period after August 1, 2003. *Id*. It relates exclusively to an alleged refusal to discount, and, even as to that limited conduct, is entirely conclusory as to China Airlines' role. *Id*. at 15. There are no allegations concerning the period after August 1, 2003, that tie China Airlines to any other allegedly collusive acts. The time-

12

barred allegations, moreover, are simply not "*well-pleaded* factual allegations," *Iqbal*, 129 S.Ct. at 1950 (emphasis added), which must be considered in evaluating the plausibility of Plaintiffs' claim under *Twombly* and *Iqbal*. Rather, the Court should exercise its discretion to ascribe little or no weight to the time-barred allegations. *See, e.g., LaFlamme v. Societe Air France*, 2010 U.S. Dist. LEXIS 33480 (E.D.N.Y. April 5, 2010), at *24. ("Assessing whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense;'" quoting *Iqbal*, 129 S.Ct. at 1950.).

## IV.  CONCLUSION

For the reasons set forth herein, and in China Airlines opening memorandum in support of its motion, China Airlines respectfully requests this Court to dismiss the Complaint as to China Airlines with prejudice, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ James V. Dick
James V. Dick (D.C. Bar. 213330; Admitted *Pro Hac Vice*)
SQUIRE, SANDERS & DEMPSEY, LLP
Fifth Floor
1201 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 626-6600
Facsimile: (202) 626-6780
E-mail: jdick@ssd.com

Counsel for Defendant China Airlines, Ltd.

DATED: June 18, 2010

## CERTIFICATE OF SERVICE

I declare that, on June 18, 2010, I caused a true and correct copy of China Airlines, Ltd.'s Reply Memorandum in Support of China Airlines, Ltd.'s Motion to Dismiss the Class Action Complaint Pursuant to F.R.Civ.P. 12(b)(6), to be delivered via the Court's ECF system to all counsel of record.

_____
James V. Dick