**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES<br>ANTITRUST LITIGATION<br><br>MDL No. 1775 | 06-MD-1775 (JG) (VVP)<br><br>**ECF CASE** |
| BENCHMARK EXPORT SERVICES, et al.,<br><br>                    Plaintiffs,<br><br>      v.<br><br>CHINA AIRLINES, Ltd. et al.,<br><br>                    Defendants. | 10-Civ.-0639 (JG) (VVP) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MALAYSIA AIRLINES' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
Douglas H. Flaum
Bernard A. Nigro, Jr. (*pro hac vice*)
Shahzeb Lari
Joshua D. Roth
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

*Attorneys for Defendant Malaysia Airlines*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT .......................................................................................................... 2

   I.    PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE ATA.................... 2

   II.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF
       LIMITATIONS........................................................................................ 6

   III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
       ADEQUATELY PLEAD A VIOLATION OF THE SHERMAN ACT ..... 12

   IV.  PLAINTIFFS HAVE NOT ADEQUATELY SERVED MALAYSIA
       AIRLINES WITH PROCESS.................................................................. 15

CONCLUSION........................................................................................................ 16

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Airline Pilots Ass'n v. TACA Int'l Airlines, S.A.*,
    748 F.2d 965 (5th Cir. 1984) ........................................................................2

*Air Transp. Ass'n of Am. v. City of Los Angeles*,
    844 F. Supp. 550 (C.D. Cal. 1994) ..............................................................3

*Arista Records LLC v. Lime Group LLC*,
    532 F. Supp. 2d 556 (S.D.N.Y. 2007) ........................................................13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................8, 9

*Bell v. Hood*,
    327 U.S. 678 (1946) ....................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ................................................................................9, 12

*Bender v. Nat'l Semiconductor Corp.*,
    No. 09-CV-01151, 2009 WL 2912522 (N.D. Cal. Sept. 9, 2009) ..............15 n.9

*Brighton Way LLC v. Queen Ester's Temple, Inc.*,
    19 Misc. 3d 1137(A), 2008 WL 2186155
    (Sup. Ct. Queens County May 2, 2008) ......................................................15

*British Caledonian Airways Ltd. v. Bond*,
    665 F.2d 1153 (D.C. Cir. 1981) ..................................................................3

*Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed'n*,
    361 F.3d 676 (2d Cir. 2004) ........................................................................5

*Dickinson, Inc. v. Kansas City Star Co.*,
    173 F. Supp. 423 (W.D. Mo. 1959) ..........................................................6 n.5

*Donahue v. Pendleton Woolen Mills, Inc.*,
    633 F. Supp. 1423 (S.D.N.Y. 1986) ..........................................................10

*Gibble v. Car-Lene Research, Inc.*,
    78 Cal. Rptr. 2d 892 (Cal. Ct. App. 1998) ..............................................15 n.9

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
    620 F. Supp. 2d 499 (S.D.N.Y. 2009) ....................................................7, 12

CASES                                                                          PAGE(S)

*In re Aluminum Phosphide Antitrust Litig.,*
    905 F. Supp. 1457 (D. Kan. 1997) ................................................................10

*In re Buspirone Patent Litig.,*
    185 F. Supp. 2d 363 (S.D.N.Y. 2002) ..........................................................7

*In re Ciprofloxacin Hydrochloride Antitrust Litig.,*
    261 F. Supp. 2d 188 (E.D.N.Y. 2003) ......................................................7, 11

*In re Elevator Antitrust Litig.,*
    502 F.3d 47 (2d Cir. 2007) .......................................................................9, 14

*In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.,*
    No. 00-CV-7804, 2004 WL 487222 (S.D.N.Y. Mar. 12, 2004)..........................7

*In re Mercedes-Benz Antitrust Litig.,*
    157 F. Supp. 2d 355 (D.N.J. 2001) ......................................................9 n.7, 10

*In re Merrill Lynch Ltd. P'ships Litig.,*
    7 F. Supp. 2d 256 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 65 (2d Cir. 1998).........7, 12

*In re Milk Prods. Antitrust Litig.,*
    84 F. Supp. 2d 1016 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999) .....................10

*In re Nine West Shoes Antitrust Litig.,*
    80 F. Supp. 2d 181 (S.D.N.Y. 2000)............................................................7

*In re Publ'n Paper Antitrust Litig.,*
    No. 3:04 MD 1631, 2005 WL 2175139 (D. Conn. Sept. 7, 2005) ...........7 n.6, 8, 11, 12

*In re Rubber Chems. Antitrust Litig.,*
    504 F. Supp. 2d 777 (N.D. Cal. 2007) .........................................................10

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) .................................................................9 n.7

*In re Urethane Antitrust Litig.,*
    683 F. Supp. 2d 1214 (D. Kan. 2010) .........................................................10

*In re Vitamins Antitrust Litig.,*
    No. Misc. 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000)...................9 n.7, 10, 11

*Kelley v. Societe Anonyme Belge D'Exploitation de la Navigation Aerienne,*
    242 F. Supp. 129 (E.D.N.Y. 1965) ...........................................................5 n.4

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.,*
    578 F. Supp. 2d 1224 (C.D. Cal. 2008) ....................................................15 n.9

| **CASES** | **PAGE(S)** |
|---|---|

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997) ...................................................................................12

*LaFlamme v. Société Air France,*
    No. 08-CV-1079, 2010 WL 1292262 (E.D.N.Y. Apr. 5, 2010) .........................14

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
    731 F.2d 909 (D.C. Cir. 1984) ..................................................................2, 3

*Lemnitzer v. Philippine Airlines, Inc.,*
    52 F.3d 333, 1995 WL 230404 (9th Cir. Apr. 18, 1995) ...............................2

*Masters v. Wilhelmina Model Agency, Inc.,*
    No. 02-CV-4911, 2003 WL 1990262  (S.D.N.Y. Apr. 29, 2003)......................12

*Michigan v. Morton Salt Co.,*
    259 F. Supp. 35 (D. Minn. 1966),
    *order aff'd, Hardy Salt Co. v. Illinois,* 377 F.2d 768 (8th Cir. 1967)............6 n.5

*New York v. Hendrickson Bros.,*
    840 F.2d 1065 (2d Cir. 1988)..............................................................7, 9 n.7

*Nowak v. Ironworkers Local 6 Pension Fund,*
    81 F.3d 1182 (2d Cir. 1996)......................................................................3

*OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.,*
    503 F. Supp. 2d 490 (D. Conn. 2007)........................................................7

*Osrecovery, Inc. v. One Group Int'l, Inc.,*
    No. 02-CV-8993, 2005 WL 1958359 (S.D.N.Y. Aug. 15, 2005)......................15

*Pandozy v. Segan,*
    340 Fed. App'x 723 (2d Cir. 2009).......................................................14 n.8

*Pasadena Medi-Center Assocs. v. Superior Ct. of Los Angeles County,*
    511 P.2d 1180 (Cal. 1973) .................................................................15 n.9

*Shelley v. Kraemer,*
    334 U.S. 1 (1948) .................................................................................5

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.,*
    71 F.3d 119 (4th Cir. 1995) .................................................................7 n.6, 8

*Texas v. Allan Constr. Co.,*
    851 F.2d 1526 (5th Cir. 1988) ..................................................................8

**CASES**                                                                          **PAGE(S)**

*Todaro v. Wales Chem. Co.,*
    173 A.D.2d 696 (2d Dep't 1991) ...............................................................15 n.9

*United Nat'l Records, Inc. v. MCA, Inc.,*
    609 F. Supp. 33 (N.D. Ill. 1984) ....................................................................10

*United States v. Gen. Elec. Co.,*
    303 F. Supp. 1121 (S.D.N.Y. 1969) ..............................................................13

*United States v. Lloyd's TSB Bank PLC,*
    639 F. Supp. 2d 326 (S.D.N.Y. 2009)............................................................14

*Virgin Atl. Airways Ltd. v. British Airways PLC,*
    872 F. Supp. 52 (S.D.N.Y. 1994) ................................................................3, 4

*Vladimir v. Deloitte & Touche LLP,*
    No. 95-CV-10319, 1997 WL 151330 (S.D.N.Y. Mar. 31, 1997) ...................14


**STATUTES AND RULES**                                                             **PAGE(S)**

49 U.S.C. § 41308.....................................................................................5, 5 n.3

15 U.S.C. § 16(i) .............................................................................................6 n.5

Fed. R. Civ. P. 9(b) .......................................................................................6, 7

Fed. R. Civ. P. 12(b)(5)......................................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................................1


**OTHER AUTHORITIES**                                                              **PAGE(S)**

Multilateral Convention between the United States of America and Other
    Governments Respecting International Civil Aviation, Dec. 7, 1944,
    61 Stat. 1180, T.I.A.S. No. 1591........................................................................4

18-134 MOORE'S FED. PRACTICE – CIVIL § 134.05[3] (2010) .......................................13

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES
    § 115 cmt. c (1987) ...........................................................................................4

Defendant Malaysia Airlines respectfully submits this reply memorandum of law in support of its motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs' response to Malaysia Airlines' dispositive grounds for dismissal is to essentially argue that Judge Gleeson's prior decision in the Air Cargo Antitrust Litigation against entirely different defendants moots Malaysia Airlines' motion to dismiss. In doing so, Plaintiffs generically argue that they have stated causes of action against the defendants in both this action and the Air Cargo Antitrust Litigation as a group, but make little or no effort to either identify any tenable basis for their claims against Malaysia Airlines or respond to the specific bases for dismissal raised by Malaysia Airlines. Most fundamentally:

- Plaintiffs seek to avoid the clear impact of the ATA by relying on inapposite precedent, mischaracterizing the regulatory scheme governing international air transportation, misreading the relevant legislative authority, and proffering an interpretation of the ATA that would rob it of any meaning. As discussed further below, each of those attempts is unavailing. *See infra* Sec. I.

- While conceding that they cannot recover damages for conduct occurring outside the applicable limitations period, Plaintiffs try to extend that period by arguing that the statute of limitations is subject to tolling under the doctrine of fraudulent concealment. Plaintiffs' fraudulent concealment argument, however, is based on a studious disregard of their own allegations that the uniform price increases in the air cargo industry could *not* have been explained by independent market forces — *i.e.*, Plaintiffs were on notice of the supposed conspiracy. That fact makes it impossible for Plaintiffs to satisfy *any* of the prerequisites for a fraudulent concealment claim. *See infra* Sec. II.

- Unable to rebut the fact that the majority of their conspiracy claims make no mention of Malaysia Airlines, Plaintiffs argue that Judge Gleeson's ruling in the Air Cargo Antitrust Litigation requires a finding that Plaintiffs' claims against Malaysia Airlines state a plausible claim for relief. In doing so, Plaintiffs ignore the extensive discovery, government investigations and guilty pleas that have taken place since Judge Gleeson's ruling. The law, which Plaintiffs entirely ignore, is clear that Plaintiffs, having received the benefit of those developments,

---

[1]    Unless otherwise specified, capitalized terms used herein have the same meaning as in Malaysia Airlines' memorandum of law in support of its motion to dismiss, dated May 14, 2010 (cited herein as "D. Mem."). "P. Mem." refers to Plaintiffs' memorandum of law in opposition to Defendants' motions to dismiss, dated June 4, 2010; "Zweig Decl." refers to the Declaration of Jason Zweig, dated June 4, 2010.

must amplify their factual allegations against Malaysia Airlines.  They have failed to do so.  *See infra* Sec. III.

Accordingly, this Court should dismiss the claims against Malaysia Airlines.

**ARGUMENT**[2]

**I.    PLAINTIFFS' CLAIMS ARE PRECLUDED BY THE ATA**

*Section 12 of the ATA Provides The Exclusive Means Of Resolving Challenges To Malaysia Airlines' Pricing Of Air Services.*  In an attempt to circumvent the clear terms of the ATA, which set forth a mutual and compulsory consultation process between Malaysia and the United States as the exclusive means of resolving any objections to Malaysia Airlines' pricing of air services, Plaintiffs argue that courts faced with similar bilateral civil aviation agreements have refused to allow the dispute resolution procedures set forth in those agreements to supersede United States statutes.  *See* P. Mem. at 46-49; D. Mem. at 6-9.  None of the cases cited by Plaintiffs support that position.

In both *Airline Pilots Ass'n v. TACA Int'l Airlines, S.A.*, 748 F.2d 965 (5th Cir. 1984) and *Lemnitzer v. Philippine Airlines, Inc.*, 52 F.3d 333, 1995 WL 230404 (9th Cir. Apr. 18, 1995), the terms of the underlying agreements expressly required the parties to comply with specific statutory requirements — claims based on violations of those requirements were thus allowed to proceed.  *See TACA*, 748 F.2d at 968-69 (claims under the Railway Labor Act were not superseded because the agreement expressly required the defendant to act "*in accordance with the laws and regulations of the other Party relating to entry, residence and employment*"); *Lemnitzer*, 1995 WL 230404, at *1-2 (claims under Title VII of the Civil Rights Act of 1964 were not superseded because the agreement subjected defendant to "*the laws and regulations of the other Party relating to entry, residence and employment*").  Here, the ATA does not contain any similar provision subjecting Malaysia Airlines to the Sherman Act.

Likewise, *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984) is inapposite.  To the limited extent that *Laker* discussed the interaction between the

---

[2]     Malaysia Airlines incorporates by reference the arguments made by Air India, China Airlines, Ltd. and EVA Airways Corporation in their respective motions to dismiss.

2

Sherman Act and bilateral civil aviation agreements, it addressed whether the defendants were subject "to the jurisdiction of the United States"; it did not resolve the substantive question of whether such agreements can protect parties from certain Sherman Act claims. *Id.* at 917; *see also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.") (quoting *Bell v. Hood,* 327 U.S. 678, 682-83 (1946)). Indeed, the *Laker* court specifically noted that "the [defendants] have not asserted before the United States courts any claim to immunity under the air service treaties," and did not address any provision similar to the key dispute resolution provisions in the ATA — which designate a mutual consultation process as the exclusive means of resolving any challenges to pricing. *Laker*, 731 F.2d at 932; *see also* D. Mem. at 6-7; ATA, Art. 12.

Finally, *Air Transp. Ass'n of Am. v. City of Los Angeles*, 844 F. Supp. 550 (C.D. Cal. 1994), provides no support for Plaintiffs. To the contrary, that case squarely supports a finding that the ATA prohibits the prosecution of Sherman Act claims against Malaysia Airlines in this Court:

> Under these Bilateral Agreements, when a dispute as to the interpretation or application of the treaty arises, the contracting parties are to consult amongst themselves. If the consultation fails then the dispute may be submitted to the arbitration procedures set out in the treaty. . . . Nothing in these Bilateral Agreements indicates that the contracting parties may resort to their respective judicial systems for relief . . . .

*See id.* at 557. This holding is consistent with the numerous other cases finding that the dispute resolution procedures in bilateral civil aviation agreements such as the ATA govern any covered disputes, to the exclusion of judicial intervention. *See* D. Mem. at 8-9; *Virgin Atl. Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52, 62-63 (S.D.N.Y. 1994) (bilateral civil aviation agreement superseded antitrust law with respect to a code-sharing arrangement that plaintiff alleged violated antitrust law); *British Caledonian Airways Ltd. v. Bond*, 665 F.2d 1153, 1162 (D.C. Cir. 1981) ("If the [FAA] Administrator had questioned the foreign government's

compliance with minimum airworthiness standards, other provisions of the bilateral agreements would have required him to consult with each of the contracting parties").

*The ATA Can, And Does, Supersede The Sherman Act.* Plaintiffs' assertion that the ATA cannot supersede the Sherman Act (P. Mem. at 55-57) is likewise baseless. Specifically, Plaintiffs contend that the ATA was not entered into pursuant to the Chicago Convention on International Civil Aviation (the "Convention") — and is therefore a "solely executive agreement" — because the Convention does not expressly address the subject of prices and antitrust law. *See id.* Plaintiffs, however, ignore the fact that the Convention requires each contracting State, including the United States, to enter into agreements to facilitate the provision of air services. *See* Multilateral Convention between the United States of America and Other Governments Respecting International Civil Aviation, Art. 22, Dec. 7, 1944, 61 Stat. 180, T.I.A.S. No. 1591 ("Each contracting State agrees to adopt all practicable measures, through the issuance of special regulations or otherwise, to facilitate and expedite navigation by aircraft between the territories of contracting States, and to prevent unnecessary delays to aircraft, crews, passengers, and cargo"). The ATA is precisely such an agreement.

Plaintiffs cannot seriously mean that the pricing provisions of the ATA are ineffective simply because the Convention did not explicitly reference the Sherman Act. The ATA was implemented in furtherance of the Convention, is therefore an executive agreement with the force of a treaty, and the pricing provisions of the ATA clearly conflict with (and thus supersede) Section 1 of the Sherman Act. *See* D. Mem. at 6-8; RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 115 cmt. c (1987) ("an executive agreement pursuant to a treaty . . . derives its authority from that treaty and has the same effect as the treaty to supersede an earlier inconsistent federal statute"). Courts in this Circuit agree with that conclusion. *See, e.g., Virgin Atl. Airways*, 872 F. Supp. at 62-63 (bilateral civil aviation agreement, entered into pursuant to the Convention, superseded the Sherman Act because "a later law supersedes an earlier one").

4

***The ATA Grants Immunity From Challenges To Pricing, Not Complete Antitrust
Immunity.*** Plaintiffs' contention that 49 U.S.C. § 41308, which permits the Secretary of
Transportation to grant applicants antitrust immunity under certain circumstances, "would be
rendered meaningless" if Malaysia Airlines "were correct that antitrust immunity flows
automatically from ATAs" (P. Mem. at 54) misstates both the ATA and Malaysia Airlines'
argument. 49 U.S.C. § 41308 and the ATA provide varying scopes of antitrust immunity. While
49 U.S.C. § 41308 can provide an applicant with *complete* antitrust immunity, the ATA provides
Malaysia Airlines with a much more limited form of protection relating *solely* to pricing issues
— it does not address other forms of potential antitrust activity (*e.g.*, illegal boycotts, tying
arrangements, monopolization, etc.).[3]

***Private Price-Fixing Claims Are Barred By The ATA.*** Plaintiffs' assertion that the ATA
does not preclude this Court from adjudicating claims brought by private litigants, such as
Plaintiffs, simply ignores well-established law holding that judicial action to enforce private
claims constitutes state action. *See Compagnie Noga D'Importation et D'Exportation, S.A. v.
Russian Fed'n*, 361 F.3d 676, 688-89 (2d Cir. 2004) ("[T]he conduct of any State organ shall be
considered an act of that State under international law, whether the organ exercises legislative,
executive, judicial or any other functions, whatever position it holds in the organization of the
State, and whatever its character as an organ of the central government or of a territorial unit of
the State.") (citation omitted); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948) (rejecting respondents'
argument "that judicial enforcement of private agreements does not amount to state action; or, in
any event, the participation of the State is so attenuated in character as not to amount to state
action").[4]

---

[3] It is therefore irrelevant that Malaysia Airlines previously sought — and was granted — complete antitrust
immunity under 49 U.S.C. § 41308 for an alliance with Northwest Airlines. *See* P. Mem. at 52-54. Indeed, given
that Malaysia Airlines and Northwest Airlines were "the only U.S. and Malaysia flag passenger carriers in the U.S.-
Malaysia market" when they jointly applied for antitrust immunity, they were likely concerned about potential
monopoly claims that would not have been barred by the ATA. *See* Joint Application of Malaysia Airlines and
Northwest Airlines, Inc., Docket OST-00-6791-1 D.O.T. June 13, 2000) (Zweig Decl., Exhibit 24 at 24).

[4] Moreover, under Plaintiffs' theory, the United States would be barred from challenging conduct insulated
by the ATA but a private right of action would remain. Plaintiffs offer no basis for such a reading of the ATA,

Plaintiffs' contention that the ATA does not apply to price-fixing claims (P. Mem. at 50-51) is similarly frivolous.  Such claims are plainly covered by the terms of the ATA, which bars judicial challenges to "prices that are unreasonably high or restrictive due to the abuse of a dominant position."  ATA § 12, Art.1.  Plaintiffs' argument that the ATA only applies to actions to prevent "the inauguration or continuation of a price" (P. Mem. at 52) is equally unavailing: both Plaintiffs' request for injunctive relief (Compl. p. 49) and a judicial finding that Malaysia Airlines' pricing violated the Sherman Act (a prerequisite to any damages award) would clearly impact the pricing of Malaysia Airlines' provision of air cargo services.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

As detailed in Malaysia Airlines' opening brief, the vast majority of Plaintiffs' allegations against Malaysia Airlines are based on conduct occurring prior to August 1, 2003 and are therefore barred by the four-year statute of limitations applicable to Plaintiffs' claims.  *See* D. Mem. Sec. II.A.[5]  Plaintiffs acknowledge that they can only recover damages incurred during the limitations period.  *See* P. Mem. at 30.  However, Plaintiffs attempt to extend the relevant period by arguing that the statute of limitations was tolled because the purported conspiracy was fraudulently concealed.  *See* P. Mem. at 30-41.  That assertion is meritless.  Plaintiffs have failed to plead any of the requisite elements of fraudulent concealment — that the purported conspiracy was self-concealing or affirmatively concealed, that Plaintiffs were ignorant of the potential existence of a conspiracy, and that Plaintiffs' ignorance was not due to a lack of due diligence on their part — with the particularity required by Rule 9(b).  *See* D. Mem. Sec. II.B.

---

which would effectively render the consultation process laid out in the ATA as the sole means of resolving challenges to the pricing of air services meaningless.  *See Kelley v. Societe Anonyme Belge D'Exploitation de la Navigation Aerienne*, 242 F. Supp. 129, 136 (E.D.N.Y. 1965) (holding that treaties, like contracts, should be interpreted "so as to give a sensible meaning to all of the provisions thereof").

[5]      As Plaintiffs concede, August 1, 2003 is four years before the initiation of criminal proceedings relating to the alleged air cargo conspiracy which is the first point at which the statute of limitations could have been tolled. *See* D. Mem. at 9, n.10; P. Mem. at 29-30, 41-44; *but see Michigan v. Morton Salt Co.*, 259 F. Supp. 35, 51 (D. Minn. 1966) *order aff'd, Hardy Salt Co. v. Illinois*, 377 F.2d 768 (8th Cir. 1967) ("It may be in some instances tolling the statute during successive actions would result in treble damage claims of such vintage that it would be patently unreasonable to assume that Congress meant to allow 'tacking' under § 5(b)."); *Dickinson, Inc. v. Kansas City Star Co.*, 173 F. Supp. 423, 425 (W.D. Mo. 1959) (holding that 15 U.S.C. § 16(i) only suspends the Sherman Act's four-year statute of limitations during the pendency of an initial government proceeding).

As a threshold matter, Plaintiffs' opposition brief completely ignores the fact that Rule 9(b) governs Plaintiffs' unsuccessful efforts to plead fraudulent concealment. *See, e.g.*, *Hinds County, Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009). Instead, Plaintiffs contend that it is "inappropriate to resolve" claims of fraudulent concealment "at the motion-to-dismiss stage." P. Mem. at 31. That is contrary to the wealth of case-law in this Circuit rejecting fraudulent concealment allegations at the pleading stage for failure to comply with Rule 9(b), which is a rule of *pleading*, not of proof. *See, e.g.*, *Hinds County*, 620 F. Supp. 2d at 522; *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 227 (E.D.N.Y. 2003); *In re Buspirone Patent Litig.*, 185 F. Supp.2d 363, 380 (S.D.N.Y. 2002); *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 275 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998). The requirements of Rule 9(b) have clearly not been met here.

***Plaintiffs Have Not Pled Concealment Of The Alleged Conspiracy.*** Plaintiffs argue, based on *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988), that price-fixing conspiracies are *per se* self-concealing. P. Mem. at 31. That is incorrect. Although *Hendrickson* held that "*bid-rigging* was self-concealing," it did *not* address price-fixing conspiracies (840 F.2d at 1085 (emphasis added)), and the cases extending *Hendrickson* to price-fixing claims have done so without any analysis. *See, e.g.*, *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, No. 00-CV-7804, 2004 WL 48722, at *4 (S.D.N.Y. Mar. 12, 2004); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000); *see also OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 507 (D. Conn. 2007) (noting that "the phrase 'self-concealing' is often invoked as a substitute for meaningful analysis").[6]

---

[6]     Bid-rigging conspiracies are self-concealing because a party seeking bids would naturally refuse to accept any bids it knew to be collusive. *See In re Publ'n Paper Antitrust Litig.*, No. 3:04 MD 1631, 2005 WL 2175139, at *4 (D. Conn. Sept. 7, 2005). In contrast, price-fixing conspiracies are not necessarily self-concealing because customers may be aware that vendors are colluding, but nonetheless continue to rely on those vendors out of "indifference, fear, or because the perpetrators are exempt from . . . antitrust laws." *Id.* at *4. *See also Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 123 (4th Cir. 1995) ("the deceptive aspect of price-fixing is intended solely to cover up the illegal act; price-fixing is not by its very nature concealed") (internal citations and quotations omitted).

The more reasoned approach is that a "price-fixing conspiracy *may* be self-concealing, depending on the circumstances." *Publ'n Paper*, 2005 WL 2175139, at *4 (emphasis added); *see also Marlinton*, 71 F.3d at 123 ("Because price-fixing is not inevitably deceptive or concealing, application of the self-concealing standard here would be improper") (footnote omitted); *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1531 (5th Cir. 1988) ("we cannot conclude that Congress, in writing the Clayton Act's four-year statute of limitations, could have intended for the fraudulent concealment doctrine to apply to every price-fixing case"); D. Mem. at 13. Although Plaintiffs acknowledge this principle (P. Mem. at 32), they claim to have satisfied it because the Complaint parrots, without providing any factual support, the factors identified in *Publ'n Paper* as relevant to a determination of whether the circumstances indicate a self-concealing conspiracy. *Compare, e.g.*, Compl. ¶ 180 (the air cargo industry was a "competitive industry" in which price-fixing "would not have been tolerated") *with Publ'n Paper*, 2005 WL 2175139, at *4 ("In a competitive, well-regulated industry it will often be the case that a price-fixing conspiracy, if not concealed, would immediately fail because of . . . legal action."). However, simply reciting legal conclusions, without any supporting facts, is patently insufficient. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

This is especially the case here, where the *Complaint itself alleges* that the announcements of Fuel Surcharges — which Plaintiffs claim "'constituted implicit statements' that the surcharges resulted from legitimate competitive market forces" (P. Mem. at 32) — were too suspiciously uniform to have been the result of independent market forces. *See* D. Mem. at 13-14. Accepting that allegation as true, Plaintiffs cannot now legitimately argue that the alleged price-fixing conspiracy was self-concealing. *See id.*; *Publ'n Paper*, 2005 WL 2175139, at *4 ("plaintiffs allege that the price increases were *not* explainable by ordinary market forces, an allegation that potentially indicates that the announcements did not bear the hallmarks of legitimate increases and so were not misleading"); *infra* at 11-12. Tellingly, Plaintiffs' opposition brief has no response to this dispositive point.

8

Plaintiffs' fall-back position (P. Mem. at 33-37) — that the Complaint sufficiently alleges affirmative acts of concealment — is equally unavailing. *First*, Plaintiffs contend that their failure to allege that Malaysia Airlines took any steps whatsoever to conceal the alleged conspiracy is immaterial because the concealing actions of the "named co-conspirators" (*i.e.*, the defendants in the Air Cargo Antitrust Litigation, none of whom are defendants in this case) can be imputed to Malaysia Airlines. *See* P. Mem. at 33-36. In support of that proposition, Plaintiffs rely entirely on cases pre-dating *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007), and *Iqbal. See* P. Mem. at 33-34.[7] Those cases cannot be reconciled with the pleading standards articulated by the Supreme Court in *Twombly* and *Iqbal*, which require Plaintiffs to allege facts creating a plausible inference of misconduct by *each* defendant. *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (allegations "in entirely general terms without any specification of any particular activities by any particular defendant" are insufficient) (footnote and citation omitted).

*Second*, even if the alleged conduct Plaintiffs attribute to the co-conspirators could be imputed to Malaysia Airlines, it does not constitute the requisite affirmative acts of concealment. Specifically, Plaintiffs contend that "the Defendants and Co-Conspirators" (i) engaged in "secret" meetings and communications in furtherance of the purported conspiracy; (ii) "gave false and pretextual reasons for their Surcharges"; and (iii) agreed "not to discuss publicly or otherwise reveal the nature and substance of their conspiratorial activity." P . Mem. at 34 (citing Compl. ¶¶ 146, 176, 177, 179, 181, 191). These boilerplate allegations are unsupported by any factual pleading: the Complaint does not explain what actions were taken to keep the supposedly "secret" meetings hidden, who agreed to keep the purportedly "conspiratorial activity" secret, or how such secrecy was maintained. *See, e.g.,* Compl. ¶¶ 146, 177, 191. Such conclusory allegations have repeatedly — even before *Twombly* — been rejected as insufficient. *See, e.g.,*

---

[7]     *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008) (reviewing jury instructions under pre-*Twombly* law); *Hendrickson*, 840 F.2d at 1084; *In re Mercedes-Benz Antitrust* Litig., 157 F. Supp. 2d 355, 372 (D.N.J. 2001); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197, 2000 WL 1475705, at *3 (D.D.C. May 9, 2000).

*In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997), *aff'd*, 195 F.3d 430 (8th Cir. 1999) ("[A]lleging that Defendants participated in 'clandestine meetings,' . . . is not tantamount to representing to others that the meetings were valid trade association meetings when in fact they were meetings in furtherance of a conspiracy."); *In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1470 (D. Kan. 1995) (denying plaintiffs' fraudulent concealment claim because plaintiffs failed to "cite any specific actions by defendants to keep their meetings a secret"); *Milk Prods.*, 84 F. Supp. 2d at 1023 ("Simply denying the existence of an antitrust violation does not constitute fraudulent concealment"); *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986) ("General assertions by counsel that Pendleton supplied blatantly false and fraudulent information to retailers and sales representatives fall far short of meeting the pleading requirement for wrongful concealment.").

None of the cases cited by Plaintiffs (P. Mem. at 33-37) are to the contrary. Those cases all involved factually supported allegations of specific actions geared towards hiding the alleged conspiracies. *See, e.g., In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1236 (D. Kan. 2010) (plaintiffs alleged that the supposed conspirators "acted to make sure their meetings and communications were not discovered . . . by meeting in places where they could not be observed, such as in hallways, cafes and private homes"); *Vitamins*, 2000 WL 1475705, at *1 ("Plaintiffs further allege that defendants successfully avoided detection of the conspiracy . . . through a scheme of concealment which included: . . . limiting knowledge of the conspiracy to high level personnel; deliberately refraining from creating documents; destroying records"); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788-89 (N.D. Cal. 2007) ("Plaintiffs have alleged, with specificity, numerous acts of concealment in furtherance of the conspiracy . . . including . . . destruction of documents that might evidence their actions"); *Mercedes-Benz*, 157 F. Supp. 2d at 372 ("[T]he complaint expressly states that dealers refusing to comply with the conspiracy's price-fixing were 'singled out and berated' [by a named co-conspirator] at . . . meetings and subject to threats from the national distributor."); *United Nat'l Records, Inc. v. MCA, Inc.*, 609 F.

Supp. 33, 36-37 (N.D. Ill. 1984) (plaintiffs identified "confidential memoranda issued by defendants urging secrecy").

**_The Complaint Contradicts Any Inference That Plaintiffs Were Unaware of The Facts Underlying Their Claims_**. The Complaint alleges that uniform surcharge increases announced to the public by many of the "named co-conspirators" could _not_ have been explained by independent market forces, _i.e._, they were indicative of non-competitive activity. _See_ D. Mem. at 13-14; Compl. ¶¶ 133, 140-41. Thus, Plaintiffs cannot feasibly argue that they were unaware of the possible existence of a price-fixing conspiracy. _See, e.g._, D. Mem. at 13-14; _Publ'n Paper_, 2005 WL 2175139, at *5 (refusing to toll the statute of limitations where the plaintiffs failed to investigate the circumstances surrounding the defendants' "dramatic, lockstep price increases"); _Ciprofloxacin_, 261 F. Supp. 2d at 224 (plaintiff cannot plead ignorance once information in "the public domain" suggests a possible conspiracy).

Plaintiffs assert that "market trends . . . do not constitute notice that particular defendants were engaged in acts of price fixing" (P. Mem. at 39 (quoting _Vitamins_, 2000 WL 1475705, at *5)) because "the fact that seemingly innocuous conduct by the conspirators was not secret is immaterial." P. Mem. at 40. That argument is a red herring. The Complaint specifically alleges that the uniform surcharge increases were _not_ explicable by ordinary "market trends" and were _not_ "innocuous." _See_ D. Mem. at 13-14; _see, e.g._, Compl. ¶ 134 ("To eliminate competition in setting the Fuel Surcharge portion of Airfreight Shipping Services prices, Defendants and Named Co-Conspirators . . . jointly agre[ed] on the factors triggering each" price increase); ¶ 139 ("Defendants and Named Co-Conspirators jointly agreed to and initiated a four-step Fuel Surcharge increase program . . . at $.05 increase per step . . . ."); ¶ 141 (various airlines "imposed identical Fuel Surcharge increases in March 2003"); ¶ 143 ("Defendants and Named Co-Conspirators jointly imposed additional, multiple-step price increases, all at identical amounts per step."); ¶ 152 (Defendants and Named Co-Conspirators imposed Security Surcharges "at a uniform $0.15, regardless of differences in actual security costs for different localities"); ¶¶ 159-60 (Defendants and Named Co-Conspirators imposed flat fees for Customs Surcharges despite

11

the fact that "any costs incurred would not have been virtually uniform among the Airfreight Carriers"); ¶ 163 ("Defendants and Named Co-Conspirators . . . concertedly refus[ed] to pay certain discounts to freight forwarders with respect to Airfreight Shipping Services.").

***Plaintiffs Have Failed to Plead Due Diligence.*** Plaintiffs also assert that they were not required to conduct any due diligence because the conspirators "successfully concealed their unlawful conduct from [P]laintiffs," and Plaintiffs had "no reason … to suspect collusion." P. Mem. at 38. That argument fails for at least two independent reasons:

- Second Circuit law is clear that "[e]ven when a plaintiff pleads active concealment by the defendant, the plaintiff must still demonstrate that he exercised due diligence in trying to discover the fraud." *Merrill Lynch.*, 7 F. Supp. 2d at 275 (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997)). Plaintiffs simply ignore the governing law, relying entirely on extra-jurisdictional cases. *See* P. Mem. at 37-41. Whatever the merit of those cases, they are not the law of this Circuit. *See, e.g., Hinds County*, 620 F. Supp. 2d at 522 ("[T]he Court cannot find that a brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception . . . satisfies the Named Plaintiffs' burden under Rule 9(b) to plead the third prong . . . with particularity."); *Masters v. Wilhelmina Model Agency, Inc.*, No. 02-CV-4911, 2003 WL 1990262, at * 2 (S.D.N.Y. Apr. 29, 2003) ("General assertions of ignorance and due diligence without more specific explanation . . . will not satisfy the . . . pleading requirements.") (citations omitted).

- Plaintiffs' contention that they had "no reason to suspect collusion" is belied by the express allegations of the Complaint, which allege that the publicly announced surcharges were too uniform to be innocent. *See supra* at 11; *Publ'n Paper*, 2005 WL 2175139, at *5 (refusing to toll the statute of limitations where plaintiffs failed to offer "any allegations of steps taken to investigate" defendants' "dramatic, lock-step price increases").

## III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD A VIOLATION OF THE SHERMAN ACT

In arguing that the Complaint adequately pleads a violation of the Sherman Act against Malaysia Airlines under *Twombly*, Plaintiffs almost entirely ignore the arguments and precedent supporting dismissal set forth in Malaysia Airlines' opening brief. *See* P. Mem. at 18-27; D. Mem. at 15-18. Specifically, Malaysia Airlines argued that *Twombly* required dismissal of Plaintiffs' claims relating to (i) the Security Surcharge, the War Risk Surcharge, the U.S. Customs Surcharge, the improvement of yields, and the allocation of customers because

Malaysia Airlines is not alleged to have engaged in *any* activity relating to those claims; and (ii) the July 28, 2005 meeting alleged in paragraph 164 of the Complaint because Plaintiffs' bare-bones allegations regarding that meeting provide no basis to infer wrongdoing against Malaysia Airlines. *See* D. Mem. at 16-18. Plaintiffs make no attempt to defend those cursory allegations against Malaysia Airlines. *See* P. Mem. at 18-27.

Instead, Plaintiffs argue that Judge Gleeson's denial of motions to dismiss in the Air Cargo Antitrust Litigation is dispositive of Defendants' motions to dismiss in this case under *stare decisis*. P. Mem. at 19. Plaintiffs ignore that *stare decisis* only applies to purely legal issues; it does not apply to questions of fact or mixed questions of law and fact, such as the question of whether the facts alleged in the Complaint are sufficient to state a claim against Malaysia Airlines (against which no facts were alleged in the Air Cargo Antitrust Litigation). *See* 18-134 MOORE'S FED. PRACTICE – CIVIL § 134.05[3] ("The doctrine of stare decisis does not apply to the determination of the facts of a case."). In addition, *stare decisis* is doubly inapplicable here since new information — the discovery in the Air Cargo Antitrust Litigation, the guilty pleas, etc. — has become available since Judge Gleeson's decision. *See, e.g., United States v. Gen. Elec. Co.*, 303 F. Supp. 1121, 1126 (S.D.N.Y. 1969) (*stare decisis* did not apply because "the current factual situation is legally different from that which existed" when the earlier cases were decided).

Similarly, Plaintiffs assert that the extensive factual development relating to the underlying conspiracies in the four years since Plaintiffs commenced the Air Cargo Antitrust Litigation has no bearing on the question of whether the Complaint alleges sufficient facts against Malaysia Airlines. *See* P. Mem. at 2. Plaintiffs, however, cite no precedent to support their position and simply ignore the wealth of case-law cited by Malaysia Airlines holding the opposite — *i.e.*, that plaintiffs who have had the benefit of discovery are expected to provide more factual support for their claims than would otherwise be required. *See* D. Mem. at 16; *Arista Records LLC v. Lime Group LLC*, 532 F. Supp. 2d 556, 585 (S.D.N.Y. 2007) ("Despite receiving such discovery, Lime Wire has not yet identified any additional facts it would plead

that would enable it, for example, to demonstrate the existence of a conspiracy among counter-defendants"); *Vladimir v. Deloitte & Touche LLP*, No. 95 Civ. 10319, 1997 WL 151330, at *7 n.14 (S.D.N.Y. Mar. 28, 1997) ("Plaintiffs' counsel's possession of defendant's work papers and its conduct of discovery should have permitted it to offer a more definitive statement of the facts relevant to these allegations").

Finally, to the extent that Plaintiffs imply that they do not have to factually allege Malaysia Airlines' participation in the non-Fuel Surcharge claims because all of their claims relate to a "single, unitary, global, and overarching conspiracy to fix, raise, maintain, or stabilize prices of Airfreight Shipping Services" (Compl. ¶ 12), Plaintiffs are wrong. Plaintiffs fail to allege any nexus between their various claims — which allegedly spanned different time periods, lasted for varying lengths of time and had different leaders and participants in different countries and continents — beyond their basic connection to the air cargo industry. *See Elevator*, 502 F.3d at 52 ("Allegations of anticompetitive wrongdoing in Europe-absent any evidence of linkage between such foreign conduct and conduct here is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'"); *LaFlamme v. Societe Air France*, No. 08-CV-1079, 2010 WL 1292262, at *14 (E.D.N.Y. Apr. 5, 2010) (dismissing passenger surcharge claim despite the presence of other surcharge allegations in the complaint because "plaintiffs fail[ed] to establish any probative connection between" those surcharges); *United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326, 346 (S.D.N.Y. 2009) (sustaining money laundering claims while dismissing securities fraud claims despite plaintiffs' attempt to characterize both allegations as stemming from a single, broad conspiracy).[8]

---

[8]    Although Plaintiffs now aver that they could add certain allegations to bolster their claims if granted leave to amend, those new allegations are not properly considered on this motion. *See, e.g., Pandozy v. Segan*, 340 Fed. App'x 723, 725 (2d Cir. 2009) (affirming refusal to consider new claims raised by plaintiff for the first time in opposition to a motion to dismiss).

## IV.   PLAINTIFFS HAVE NOT ADEQUATELY SERVED MALAYSIA AIRLINES WITH PROCESS

Despite their nine-page response (P. Mem. at 63-71) to Malaysia Airlines' three-paragraph argument that Plaintiffs failed to properly serve Malaysia Airlines with process (D. Mem. at 18-19), Plaintiffs have still not satisfied their burden.  Plaintiffs primarily seek to excuse their failure to execute proper service by arguing that "Malaysia Airlines had actual notice of this action."  P. Mem. at 67.  However, "actual notice" is not an adequate substitute for proper service.  *See, e.g., Osrecovery, Inc. v. One Group Int'l, Inc.*, No. 02-CV-8993, 2005 WL 1958359, at *1 (S.D.N.Y. Aug. 15, 2005) ("[A]ctual notice alone will not sustain personal jurisdiction over a defendant.") (footnote omitted); *Brighton Way, LLC v. Queen Esther's Temple, Inc.*, 19 Misc. 3d 1137(A), 2008 WL 2186155, at *2 (Sup. Ct. Queens County May 2, 2008) ("When the requirements for service of process have not been met, it is irrelevant that defendant may have actually received the documents.").[9]

---

[9]        Plaintiffs citation to *Pasadena Medi-Center Assocs. v. Superior Ct. of Los Angeles County*, 511 P.2d 1180 (Cal. 1973), is misplaced.  In that case, plaintiff served an individual who was identified in public filings as the corporation's "secretary-treasurer," and who the corporation held out as a senior officer.  *Id.* at 1183-1187. There is no allegation that Malaysia Airlines similarly held Ms. Gorakshakar out as a senior officer.  While Plaintiffs fixate on Ms. Gorakshakar's title (P. Mem. 65-66), she has a very narrow role — supervising one employee, her assistant, and handling "administrative issues and human resources matters."  Gorakshakar Decl. ¶ 1.  She hardly exercises the corporate discretion that courts require of managing or general agents.  *See, e.g., Bender v. Nat'l Semiconductor Corp*, No. 09-CV-01151, 2009 WL 2912522, at *2-3 (N.D. Cal. Sept. 9, 2009) (finding service improper where process server delivered papers to employee of large corporation who did not play a significant role in the overall structure of the company); *Todaro v. Wales Chem. Co.*,173 A.D.2d 696, 697 (2d Dep't 1991) (holding that a clerk, whose main responsibilities included filing and typing, had no supervisory authority and could not accept service for the corporation).  The cases relied on by Plaintiffs are therefore inapposite.  *See, e.g., Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1226 (C.D. Cal. 2008) (upholding service on Toyota's United States subsidiary as the "general manager" for the parent entity, Toyota Motor Corporation); *Gibble v. Car-Lene Research, Inc.*, 67 Cal. Rptr. 2d 892, 903 (Cal. Ct. App. 1998) (plaintiffs served an individual who "had sole, unfettered authority to hire and fire employees, to authorize payment of their wages, to authorize or withhold payments to interview subjects, and to conduct [the corporation's] core business activities in the San Francisco area").

## CONCLUSION

For the reasons stated above and in Malaysia Airlines' opening brief, Plaintiffs' claims against Malaysia Airlines should be dismissed in their entirety.

Dated:   New York, New York
         June 18, 2010

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By:    _____
            *Douglas H. Flaum*
            Douglas H. Flaum
            (A Member of the Firm)

One New York Plaza
New York, New York 10004-1980
(212) 859-8000
douglas.flaum@friedfrank.com
barry.nigro@friedfrank.com (*pro hac vice*)
shahzeb.lari@friedfrank.com
joshua.roth@friedfrank.com

*Attorneys for Defendant*
*Malaysia Airlines*

7726099

16

<u>CERTIFICATE OF SERVICE</u>

I certify under the penalty of perjury pursuant to 28 U.S.C. § 1746 that on June 18, 2010, I caused a true copy of the Reply Memorandum of Law in Support of Malaysia Airlines' Motion to Dismiss the Class Action Complaint, dated June 18, 2010, to be served through this Court's ECF system on all participating counsel and to the following parties via Federal Express.

Jan Lillieborg, *pro se*
Badhusvägen 11
165 71 Hässelby, Sweden

Keith H. Packer, *pro se*
Winters View, 1A Mountain Ash,
Marlow, Bucks, SL7 30B
01628 488760
United Kingdom

Dated:          New York, New York
                June 18, 2010

                                        Joshua D. Roth