UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775 | Case No. 06-MD-1775 (JG) (VVP) |
| BENCHMARK EXPORT SERVICES, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CHINA AIRLINES, Ltd. et al.,<br><br>        Defendants. | Case No. 10-CV-0639 (JG) (VVP) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT EVA AIRWAYS CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

KIRKLAND & ELLIS LLP

James H. Mutchnik, P.C. (*pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile (312) 862-2200

Christopher T. Casamassima (*pro hac vice*)
David I. Horowitz
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for EVA Airways Corporation*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................................1

ARGUMENT ......................................................................................................................................2

I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE FACTS SHOWING A PLAUSIBLE CLAIM FOR RELIEF AGAINST EVA. ...................................................................................................................2

II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS UNTIMELY. ..........................................................................................................................4

    A. Plaintiffs Have Not Adequately Alleged A Self-Concealing Conspiracy. ...............5

    B. Plaintiffs Have Not Sufficiently Alleged Affirmative Acts Of Concealment. .........................................................................................................6

    C. Plaintiffs Concede That They Did Not Exercise Any Due Diligence. ....................7

III. 15 U.S.C. § 16(i) DOES NOT MAKE PLAINTIFFS' COMPLAINT TIMELY................9

    A. The Court Should Not Permit Plaintiffs To Combine Successive Government Proceedings To Toll The Statute Of Limitations................................9

    B. Even If Plaintiffs Could Tack Successive Government Proceedings, Their Claim Would Nonetheless Be Untimely Because Plaintiffs Do Not Allege That EVA Participated in the Conspiracy After August 1, 2003...........................11

CONCLUSION................................................................................................................................12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arista Records LLC v. Lime Group LLP*,
   532 F. Supp. 2d 556 (S.D.N.Y. 2007) ........................................................................................ 2

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................................ 2, 3

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 3, 4

*Blue Cross of Cal. v. SmithKline Beecham Clinical Labs.*,
   108 F. Supp. 2d 116 (D. Conn. 2000) ........................................................................................ 8

*Camotex, S.R.L. v. Hunt*,
   741 F. Supp. 1086 (S.D.N.Y. 1990) ......................................................................................... 12

*Coveal v. Consumer Home Mortgage, Inc.*,
   No. 04 CV 4755, 2005 WL 704835 (E.D.N.Y. Mar. 29, 2005) ................................................ 9

*Dickinson, Inc. v. Kansas City Star Co.*,
   173 F. Supp. 423 (W.D. Mo. 1959) .......................................................................................... 11

*Estate of Sarocco v. Gen. Elec. Co.*,
   939 F. Supp. 91 (D. Mass. 1996) ............................................................................................... 8

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) ............................................................................... 5, 9, 10

*Hinds County, Miss. v. Wachovia Bank, N.A.*,
   Civil No. 08 2516, 2010 WL 1244765 (S.D.N.Y. Mar. 25, 2010) ..................................... 10, 11

*In re Aspartame Antitrust Litig.*,
   No. 2:06-CV-1732, 2007 WL 5215231 (E.D. Pa. Jan. 18, 2007) ............................................ 10

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
   261 F. Supp. 2d 188 (E.D.N.Y. 2003) .................................................................................. 5, 10

*In re Mercedes-Benz Antitrust Litig.*,
   157 F. Supp. 2d 355 (D.N.J. 2001) ........................................................................................ 5, 8

*In re Merrill Lynch Ltd. P'ships Litig.*,
   154 F.3d 56 (2d Cir. 1998) ..................................................................................................... 5, 9

*In re Milk Prods. Antitrust Litig.*,
  84 F. Supp. 2d 1016 (D. Minn. 1997) .................................................................................. 6, 8

*In re Publ'n Paper Antitrust Litig.*,
  No. 304MD1631SRU, 2005 WL 2175139 (D. Conn. Sept. 7, 2005) ............................ 5, 6, 7, 9

*In re Rubber Chems. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ...................................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................................................... 3

*In re Vitamins Antitrust Litig.*,
  No. Misc. 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000) .................................................. 9

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997) ................................................................................................................ 14

*Masters v. Wilhelmina Model Agency*,
  No. 02 Civ. 4911 (HB), 2003 WL 1990262 (S.D.N.Y. Apr. 29, 2003) ..................................... 6

*Michigan v. Morton Salt Co.*,
  259 F. Supp. 35 (D. Minn. 1966) ............................................................................................ 11

*New York v. Hendrickson Bros. Inc.*,
  840 F.2d 1065 (2d Cir. 1988) ................................................................................................ 6, 9

*OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*,
  503 F. Supp. 2d 490 (D. Conn. 2007) ....................................................................................... 6

*Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.*,
  828 F.2d 211 (4th Cir. 1987) .................................................................................................... 8

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010) ...................................................................................................... 2

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
  71 F.3d 119 (4th Cir. 1995) ...................................................................................................... 7

*Texas v. Allan Constr. Co.*,
  851 F.2d 1526 (5th Cir. 1988) .................................................................................................. 7

*Vladimir v. Deloitte & Touche LLP*,
  No. 95 Civ. 10319, 1997 WL 151330 (S.D.N.Y. Mar. 28, 1997) ............................................. 3

*Wood v. Carpenter*,
  101 U.S. 135 (1879) .................................................................................................................. 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) .................................................................................................................. 12

**Statutes**

15 U.S.C. § 16(i) ............................................................................................................................ 9

Case 1:06-md-01775-JG -VVP Document 1195    Filed 06/18/10    Page 5 of 18

## **INTRODUCTION**

EVA Airways Corporation's motion to dismiss presents the Court with a straightforward question: whether two vague allegations that unidentified representatives of EVA attended Air Cargo Association meetings at JFK Airport at unspecified times in 2001-2002, and received information on one occasion about Lufthansa's security surcharges in 2001, are sufficient to state a timely price-fixing claim against EVA. Not before the Court is whether the Complaint plausibly alleges an antitrust conspiracy generally, or a conspiracy against other airlines. Plaintiffs' two allegations concerning EVA must plausibly suggest *EVA's* involvement in the purported "unitary" conspiracy to fix the prices of Airfreight Shipping Services. They do not.

Regardless, even if Plaintiffs' allegations otherwise stated a claim against EVA, their claim should still be dismissed — at least in part — on statute of limitations grounds. To avoid the statute of limitations, Plaintiffs attempt to rely on fraudulent concealment. Plaintiffs, however, fail to plead either wrongful concealment of the alleged conspiracy, or that they exercised due diligence in investigating their claim. Plaintiffs do not explain away either of these shortcomings in their Opposition Brief, nor can they. In their Opposition, Plaintiffs also attempt to rely on 15 U.S.C. § 16 (i) to toll the statute of limitations, but this argument likewise fails because (a) Plaintiffs inappropriately seek to "tack" multiple government proceedings together to enlarge the tolling period, and (b) Plaintiffs' allegations are so stale that they would remain untimely even if the statute of limitations was tolled under § 16(i).

**ARGUMENT**

I. **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT ALLEGE FACTS SHOWING A PLAUSIBLE CLAIM FOR RELIEF AGAINST EVA.**

A claim is plausible only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). Here, Plaintiffs have had *four years* to investigate their claims since the Department of Justice announced its investigation into price fixing of Airfreight Shipping Services. Unlike most plaintiffs, they also had the benefit of substantial discovery to prepare their Complaint, having received document productions from Lufthansa, Lufthansa Cargo, and Swiss Air in April 2008. (*See* Compl. ¶ 173.)[1] Despite all this time and discovery, Plaintiffs could muster nothing more than two vague allegations against EVA. (*See* Compl. ¶¶ 137, 149.) Viewed with this in mind, Plaintiffs should not be given wide latitude, and instead should be held accountable for the Complaint's paucity of allegations against EVA.

Indeed, in its opening brief, EVA cited several cases criticizing plaintiffs for failing to plead specific facts suggesting wrongdoing when those plaintiffs had access to documentation concerning their claims before they filed their Complaint. (*See* Opening Br. at 18 (citing *Arista Records LLC v. Lime Group LLP*, 532 F. Supp. 2d 556, 585 (S.D.N.Y. 2007); *Vladimir v. Deloitte & Touche LLP*, No. 95 Civ. 10319, 1997 WL 151330, at *7 n. 14 (S.D.N.Y. Mar. 28, 1997)).). Plaintiffs make no meaningful attempt to distinguish these cases, asserting instead that

---

[1] While Plaintiffs claim that they could not make their document review system "operational" in the two months between the time they received document productions from the other *In re Air Cargo* Defendants and the time they filed their Complaint (notwithstanding their apparent review of Lufthansa and Swiss Air documents), they do not deny receiving substantial document productions from EVA's alleged co-conspirators before filing the Complaint. (*See* Opp'n at 2 n.2.)

2

"[n]either *Bell Atl. v. Twombly*, 550 U.S. 544 (2007), nor *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937 (2009)" require Plaintiffs to plead specific factual allegations. (*See* Opp'n at 2.)

Plaintiffs themselves, however, rely on authority that applies *Twombly* in a price-fixing case to require plaintiffs "to more specifically plead how each individual defendant joined the alleged price-fixing conspiracy." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (*cited in* Opp'n at 31, 36, 37, 38.) The *Flat Panel* Court specifically held that "allegations as to all defendants, to 'Japanese' defendants' or to a single corporate entity . . . are insufficient to put specific defendant on notice of the claims against them." *Id*. Therefore, as *Flat Panel* makes clear, while Plaintiffs are not required to plead "elaborate detail," they must "include allegations specific to each defendant alleging that defendant's role in the conspiracy." *Id*.; (*see also* Opening Br. at 17–22).

Here, Plaintiffs have alleged what they believe to be EVA's actions implicating it in Plaintiffs' alleged worldwide, "unitary" conspiracy — its alleged attendance of unidentified meetings at JFK Airport in 2001-02, and its purported receipt of information concerning Lufthansa's security surcharges in 2001. (*See* Compl. ¶¶ 137, 149.) These vague allegations lack the heft required to "nudge" Plaintiffs' claim against EVA across the line from possible to plausible. *See Twombly*, 550 U.S. at 570. Indeed, the Complaint does not allege that EVA attended meetings in which "coordination" of surcharges supposedly took place. (Compl. ¶ 137.) Nor are there any allegations that EVA agreed to fix prices at any of the unidentified meetings that unspecified EVA representatives attended, or that EVA reached any agreements with any other Defendant in connection with the purported information exchange that occurred in 2001. (*Id*. ¶¶ 137, 149.)

3

Recognizing the implausibility of their current allegations, Plaintiffs go beyond their Complaint to rely on fines levied against 19 airlines by South Korea's Fair Trade Commission as further evidence of collusion. (*See* Opp'n at 27.) But **EVA was not implicated** whatsoever by the South Korean Fair Trade Commission's decision. Thus, in attempting to bolster their Complaint by (impermissibly) moving beyond the pleadings, Plaintiffs demonstrate further that EVA is not appropriately included within the alleged conspiracy, and has not been convicted or fined by any government as a result of investigations into the air cargo industry.[2]

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS UNTIMELY.

Even if Plaintiffs' Complaint satisfies *Twombly*'s pleading standard, it should be dismissed as untimely. Plaintiffs suggest that the Court should defer ruling on statute of limitations issues because fraudulent concealment is "intimately bound up with the facts of the case." (*See* Opp'n at 31 (citing *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 374 (D.N.J. 2001).) Thus, Plaintiffs seek to force EVA to spend vast amounts of time and money to litigate a claim purportedly arising almost nine years ago without having this Court conduct any threshold statute of limitations analysis. The Court should reject this invitation.

There is no legitimate dispute that statute of limitations issues may be resolved at the motion to dismiss stage. In fact, courts in this circuit routinely grant motions to dismiss fraudulent concealment claims when plaintiffs' allegations fail to meet Rule 9(b)'s high standard. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59–60 (2d Cir. 1998) (affirming

---

[2] Plaintiffs argue that Judge Gleeson's ruling denying the *In re Air Cargo* Defendants' motions to dismiss binds EVA "under *stare decisis*." (Opp'n at 19.) It does not. Plaintiffs' factual allegations against EVA must stand on their own. Judge Gleeson's ruling applied to a different complaint against different defendants. The issue presented here is whether the Complaint in the *Benchmark* case adequately alleges that **EVA** joined and participated in the far-flung conspiracy that Plaintiffs seek to allege. Whether or not Plaintiffs' allegations of a price-fixing conspiracy in general are sufficient, Plaintiffs cannot sweep every minor air cargo company like EVA into the *Air Cargo* litigation without first adequately alleging the company's involvement in the alleged conspiracy. Plaintiffs' baseless attempt to bootstrap Judge Gleeson's prior ruling onto the issues presented here must be rejected by this Court.

dismissal of complaint for failure to adequately plead fraudulent concealment); *In re Publ'n Paper Antitrust Litig.*, No. 304MD1631SRU, 2005 WL 2175139, at * 6 (D. Conn. Sept. 7, 2005) (dismissing complaint for failure to plead fraudulent concealment with requisite specificity); *see also Hinds County, Miss. v. Wachovia Bank, N.A.*, 620 F. Supp. 2d 499, 522 (S.D.N.Y. 2009) (same); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 226-227 (E.D.N.Y. 2003) (same); *Masters v. Wilhelmina Model Agency*, No. 02 Civ. 4911 (HB), 2003 WL 1990262, at * 2 (S.D.N.Y. Apr. 29, 2003) (same).  Here, there are ample reasons to dismiss Plaintiffs' Complaint as untimely.  Plaintiffs fail to allege actual concealment — either through affirmative acts, or through a self concealing conspiracy.  Moreover, Plaintiffs concede that they fail to allege *any* actual due diligence on their part in investigating their claim.

      A.      **Plaintiffs Have Not Adequately Alleged A Self-Concealing Conspiracy.**

Plaintiffs contend that the Second Circuit's decision in *New York v. Hendrickson Bros. Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988) "establishes that price-fixing conspiracies are self-concealing."  (Opp'n at 31.)  But *Hendrickson* specifically concerned bid-rigging.  *See id.* at 1083–84.  Cognizant of the factual distinction between bid-rigging and other types of conspiracies, post-*Hendrickson* decisions within this circuit hold that "not every price-fixing conspiracy is self-concealing."  *See Publ'n Paper*, 2005 WL 2175139, at *4; *see also OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 508 (D. Conn. 2007) (holding that "bald and conclusory invocation[s] of the words 'self-concealing'" are not sufficient to support a fraudulent concealment claim); *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1023 (D. Minn. 1997) ("Merely claiming that 'all conspiracies are self-concealing' is simply insufficient.") (citations omitted).  No Second Circuit opinion holds to the contrary.  *Cf. Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 123 (4th Cir. 1995) ("[P]rice-fixing is not by its very nature concealed . . . Because

5

price fixing is not inevitably deceptive or concealing, application of the self-concealing standard here would be improper.") (alteration in original); *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1531 (5th Cir. 1988) ("[W]e cannot conclude that Congress, in writing the Clayton Act's four-year statute of limitations, could have intended for the fraudulent concealment doctrine to apply to every price-fixing case.").

EVA demonstrated in its opening brief that Plaintiffs had copied legal conclusions from the *Publication Paper* decision to plead a self-concealing conspiracy. (*See* Opening Br. at 11–12.) Not only do Plaintiffs ignore this point entirely — they go one step further and again rely on the bald legal conclusions they parroted from *Publication Paper*, this time in their Opposition Brief. (*See* Opp'n at 32.) Plaintiffs' failure to respond to this argument is telling, and their inability to plead in good faith actual *facts* demonstrating a self-concealing conspiracy is dispositive.

### B. Plaintiffs Have Not Sufficiently Alleged Affirmative Acts Of Concealment.

EVA also demonstrated in its opening brief that Plaintiffs pleaded in their Complaint the exact same allegation that the *Publication Paper* court found "wholly insufficient" to plead affirmative concealment under Rule 9(b). (*See* Opening Br. at 9.) Once again, Plaintiffs ignore EVA's argument and rely in their Opposition on the same allegations that were previously found lacking. (*See* Opp'n at 34.) Plaintiffs also attempt to bolster their allegations by referencing other conclusory allegations about purported "secret meetings" and alleged pretextual announcements regarding price increases. (*See id.*) But these bare allegations demonstrate, at most, that the conspiracy was not publicly disclosed — not that the conspiracy was affirmatively concealed. Plaintiffs make no attempt in their nearly 75-pages of briefing to distinguish the many cases EVA cited in its opening brief holding that plaintiffs must plead facts demonstrating "clear, concise and unequivocal" evidence of conduct demonstrating concealment. (*See* Opening

6

Br. at 10 (citing *Blue Cross of Cal. v. SmithKline Beecham Clinical Labs.*, 108 F. Supp. 2d 116, 122 (D. Conn. 2000) ("[F]raudulent concealment cannot 'rest on a failure to own up to illegal conduct.'") (citation omitted); *Pocohontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987); *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)); *see also Estate of Sarocco v. Gen. Elec. Co.*, 939 F. Supp. 91, 97 (D. Mass. 1996) (holding that defendants' public denials of culpability are insufficient to establish affirmative concealment); *In re Milk Prods.*, 84 F. Supp. 2d at 1023 ("Simply denying the existence of an antitrust violation does not constitute fraudulent concealment."). And the cases Plaintiffs cite permitting concealment claims to proceed involved far more specific allegations of affirmative concealment than those alleged here. *See, e.g.*, *Mercedes-Benz*, 157 F. Supp. 2d at 371-72 (stating that plaintiffs alleged that participants were "strenuously urged" by a specifically identified protagonist at a meeting to conceal the conspiracy, and that those who failed to comply with the conspiracy were "singled out and berated" at meetings); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197, 2000 WL 1475705, at *3 (D.D.C. May 9, 2000) (noting that plaintiffs alleged, among other thing, that defendants submitted false bids and provided false information to law enforcement); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788–89 (N.D. Cal. 2007) (indicating that plaintiffs alleged, among other things, "the destruction of documents that might evidence [defendants'] actions"); *Hendrickson*, 840 F.2d at 1084–85 (alleging, among other things, that defendants burned and shredded documents).

      **C.    Plaintiffs Concede That They Did Not Exercise Any Due Diligence.**

The Second Circuit has made clear that plaintiffs alleging fraudulent concealment must plead with particularity facts supporting their allegations of due diligence. *See, e.g.*, *Merrill Lynch*, 154 F.3d at 60. In its opening brief, EVA demonstrated that the Southern District of New York recently rejected conclusory allegations of due diligence that are nearly identical to those

7

asserted by Plaintiffs in their Complaint.  (*See* Opening Br. at 14 (citing *Hinds*, 620 F. Supp. 2d. at 522).)  But Plaintiffs make no attempt to distinguish *Merrill Lynch*, *Hinds*, or any of the myriad other in-circuit cases EVA has cited to this effect.  (*See* Opening Br. at 13–16 (citing *Merrill Lynch*, 154 F.3d at 60; *Hinds*, 620 F. Supp. 2d at 522; *Publ'n Paper*, 2005 WL 2175139, at *6; *Coveal v. Consumer Home Mortgage, Inc*., No. 04 CV 4755, 2005 WL 704835, at *6 (E.D.N.Y. Mar. 29, 2005); *Ciprofloxacin*, 261 F. Supp. 2d at 226 .)

      Moreover, Plaintiffs ***admit*** they exercised no diligence.  (*See* Opp'n at 38 ("Even if plaintiffs had inquired . . . .").)  Plaintiffs instead argue that their diligence was not required, and that the Court should kick the issue down the road because "[i]ssues of diligence and constructive notice, which are inherently factual, generally should not be decided on a motion to dismiss."  (Opp'n at 40 (citing *In re Aspartame Antitrust Litig*., No. 2:06-CV-1732, 2007 WL 5215231, at * 6 (E.D. Pa. Jan. 18, 2007).)  But courts have consistently held that "it is appropriate . . . to assess the sufficiency of [plaintiffs'] pleading of fraudulent concealment at the motion to dismiss stage."  *Hinds*, 620 F. Supp. 2d at 522 (rejecting plaintiffs' contention "that the Court should refrain from deciding whether [plaintiffs] should have discovered the basis for the antitrust violations alleged . . . because that issue implicates questions of fact that cannot be decided on a motion to dismiss").  And in *Hinds II*, on which Plaintiffs rely, the court confirmed that plaintiffs must still plead diligence in the complaint, holding that plaintiffs must adequately describe the "specific inquiries of [defendants] . . ." and provide the "***detail*** [of] when such inquiries were made, to whom, regarding what, and with what response."  *See Hinds County, Miss. v. Wachovia Bank, N.A.*, Civil No. 08 2516, 2010 WL 1244765, at *15 (S.D.N.Y. Mar. 25,

8

2010) (emphasis added) (internal quotations omitted). Plaintiffs' admission that they exercised no diligence whatsoever is fatal to their fraudulent concealment claim.[3]

### III. 15 U.S.C. § 16(i) DOES NOT MAKE PLAINTIFFS' COMPLAINT TIMELY.

#### A. The Court Should Not Permit Plaintiffs To Combine Successive Government Proceedings To Toll The Statute Of Limitations.

Unable to plead facts supporting their fraudulent concealment claim, Plaintiffs argue that the statute of limitations has been tolled indefinitely since August 1, 2003 because of successive government proceedings concerning price-fixing by *other companies*. (*See* Opp'n at 41–44.) But 15 U.S.C. § 16(i) does not save Plaintiffs' claim against EVA.

Neither the Supreme Court nor the Second Circuit has directly addressed whether plaintiffs may "tack" together successive, non-overlapping government actions to toll the statute of limitations. Several courts, however, have reasoned that allowing plaintiffs to tack proceedings would be unreasonable, and would undermine the need for finality and efficient enforcement of the antitrust laws. *See Michigan v. Morton Salt Co.*, 259 F. Supp. 35, 51 (D. Minn. 1966) ("[I]n some instances tolling the statute during successive actions would result in treble damage claims of such vintage that it would be patently unreasonable to assume that Congress meant to allow 'tacking' under [Clayton Act] § 5(b)."); *Dickinson, Inc. v. Kansas City Star Co.*, 173 F. Supp. 423, 425 (W.D. Mo. 1959) (indicating that only the first government proceeding should be counted for purposes of § 16(i) because tacking the tolling periods together "would create [an] intolerable condition"); *cf. Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1091 (S.D.N.Y. 1990) (holding that tacking tolling periods in an analogous situation involving tolling for successive class actions "would give rise to a situation plainly at odds with the principle of

---

[3] Likewise, there is no merit to Plaintiffs' contention that they had no duty to investigate their purported claims. (*See* Opp'n at 38–39.) Taking Plaintiffs' allegations as true, it is implausible to allege that purportedly parallel pricing for Airfreight Shipping Services by over forty different airlines throughout the world for a six-year period would not arouse Plaintiffs' suspicion.

9

repose that statutes of limitations are designed to achieve") (internal quotations omitted).  Here, despite Plaintiffs' present assertion of tolling under the statute, it is telling that Plaintiffs filed their Complaint on the last business day before the fourth anniversary of the public announcement of an investigation into Airfreight Shipping Services, and that the Complaint nowhere states that it was timely because of the previous filing of a related government proceeding.

Ultimately, the question for the Court is whether tacking is appropriate under the specific facts of this case.  It is not.  As Plaintiffs concede, Section 16(i) was enacted to provide private litigants with the "benefits they might cull from government antitrust actions."  *See Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 335–36 (1971) (citations omitted).  Here, however, the only "benefit" Plaintiffs are seeking from the government's proceedings is an excuse for their otherwise time-barred claims.  Indeed, Plaintiffs filed the FCAC over three years ago (in February 2007), naming ***thirty nine*** airlines, before the government instituted its first criminal proceeding.  Multiple government proceedings have now come and gone against various airlines and individuals, but Plaintiffs' allegations remain virtually unchanged from the FCAC.  By Plaintiffs' admission, any documents Plaintiffs have obtained and used to prepare the *Benchmark* Complaint came from Lufthansa, not an airline that was subject to a criminal proceeding by the U.S. government.  (*See* Opp'n at 2 n.2.)  Nor has EVA been implicated in any government proceeding.  Plaintiffs have not used government proceedings to further investigate their claim against EVA.  Instead, they have sat on their purported rights and now cite the government actions only to justify their late filing against EVA.

Plaintiffs' over-reaching and belated claim against EVA is not what Section 16(i) was enacted to assist.  Accordingly, tacking should not apply here.  Because Plaintiffs did not file

10

their Complaint within one year after the government actions against British Airways and Korean Airlines concluded on August 24, 2007, § 16(i) does not make Plaintiffs' claim against EVA timely. *See* 15 U.S.C. § 16(i) (providing that a government action suspends the running of the statute of limitations "during the pendency [of the action] and for one year thereafter").

> **B.     Even If Plaintiffs Could Tack Successive Government Proceedings, Their Claim Would Nonetheless Be Untimely Because Plaintiffs Do Not Allege That EVA Participated in the Conspiracy After August 1, 2003.**

Even if Plaintiffs could combine successive government proceedings to toll the statute of limitations, their claim against EVA would still fail because Plaintiffs do not allege any overt act by EVA occurring on or after August 1, 2003 — four years before of the filing of the first criminal proceeding related to price fixing of Airfreight Shipping Services. Plaintiffs argue that EVA is nonetheless "jointly and severally liable for all acts of, and damages caused by, their co-conspirators during the duration of the conspiracy." (*See* Opp'n at 44.) Plaintiffs' argument misses the mark. Assuming that Plaintiffs' allegation regarding EVA's purported participation in unidentified meetings at JFK airport in 2001 or 2002 was sufficient to state any claim against EVA at all (it is not), that allegation does not plausibly suggest that EVA participated in a global price-fixing conspiracy continuing past August 1, 2003. And, in any event, Plaintiffs' ability to claim damages based on EVA's alleged overt acts in 2001-2002 expired four years later, in 2005-06 — ***before*** the first government actions could toll the statute of limitations. *See, e.g., Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (holding that antitrust plaintiffs "cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period"). Accordingly, because Plaintiffs do not allege fraudulent concealment or acts by EVA that would allow them to recover damages even if the statute of limitations was tolled under § 16(i), Plaintiffs' claim against EVA should be dismissed as untimely.

11

## **CONCLUSION**

Plaintiffs' Complaint is time-barred, and its allegations against EVA are insufficient to raise a plausible inference that EVA participated in an alleged "unitary" global price-fixing conspiracy. For these reasons, EVA respectfully requests that the Court dismiss the Complaint against EVA with prejudice.


Dated: June 18, 2010                                              Respectfully submitted,


                                                             By:  /s/ *Christopher T. Casamassima*
                                                             Christopher T. Casamassima (*pro hac vice*)
                                                             David I. Horowitz
                                                            **KIRKLAND & ELLIS LLP**
                                                            333 South Hope Street
                                                           Los Angeles, California 90071
                                                           Telephone: (213) 680-8400
                                                           Facsimile: (213) 680-8500

                                                           James H. Mutchnik, P.C. (*pro hac vice*)
                                                           **KIRKLAND & ELLIS LLP**
                                                           300 North LaSalle Street
                                                           Chicago, Illinois 60654
                                                           Telephone: (312) 862-2000
                                                           Facsimile (312) 862-2200

                                                           *Attorneys for Defendant*
                                                           *EVA Airways Corporation*

## **CERTIFICATE OF SERVICE**

I, Christopher T. Casamassima, certify that on Friday, June 18, 2010, I caused a copy of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT EVA AIRWAYS CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** to be served on all counsel of record via the Court's ECF system.

Dated: June 18, 2010

                                                   */s/Christopher T. Casamassima*
                                                 Christopher T. Casamassima