# BAKER & MILLER PLLC

SUITE 300
2401 PENNSYLVANIA AVE., N.W.
WASHINGTON, D.C. 20037

TELEPHONE: (202) 663-7820
FACSIMILE: (202) 663-7849

June 22, 2010

The Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201-1818

Re:   <u>Air Cargo Shipping Services Antitrust Litigation, 06-MD-1775</u>

Dear Magistrate Judge Pohorelsky:

Plaintiffs' Motion to Compel ("Motion") asks this Court to order Defendants Air New Zealand, Korean Air, and Qantas (collectively, "Defendants") to supplement and amend their responses ("Responses") to Plaintiffs' First Combined Set of Interrogatories ("Interrogatories").[1]

On close examination, however, Plaintiffs' Motion is a form of shell game. If one relied simply on Plaintiffs' Motion, this Court would be lead to believe – quite incorrectly – that Defendants have steadfastly refused to answer Plaintiffs' Interrogatories and to make any attempt to narrow the issues of dispute during the meet and confer process. Not only is it a misleading picture of the overall status of discovery, but it allows Plaintiffs to gloss over and fail to identify the issues that one might consider to be truly in dispute with the Defendants. Indeed, with perhaps one exception which is no longer relevant,[2] there is no issue that is properly before this Court against all Defendants, notwithstanding Plaintiffs' efforts to disguise this fact. Plaintiffs were in various stages of the meet and confer process with each of the Defendants and rather than complete that process with any single Defendant, decided to file their Motion. As a result, Plaintiffs have not properly completed the meet and confer process and the Motion should be denied on this basis.

Moreover, even if one focuses on the two objections where Plaintiffs appear to have reached an impasse with at least one Defendant, Defendants' objections are well-founded and should be sustained. Accordingly, Plaintiffs' Motion should be denied.

---

[1]   The Motion to Compel was directed to LAN/ABSA with regard to the relevance of Interrogatory 3. Because Defendants withdraw their objection to responding to Interrogatory 3, the motion is moot as to LAN/ABSA.

[2]   While the dispute over Interrogatory 3 may have been ripe for review, as noted, Defendants withdraw their objection.

## I. Plaintiffs Have Not Attempted In Good Faith To Resolve The "Disputes" Identified In Their Motion.

Under Fed. R. Civ. P. 37(a)(1), parties must "'make a genuine effort to resolve the dispute' before resorting to a court's involvement." *See Care Environmental Corp. v. M2 Technologies, Inc.*, 2006 U.S. Dist. LEXIS 35396 (E.D.N.Y. May 30, 2006) (internal citations omitted); *see also* Local Rule 37.3(a). Courts frequently deny motions to compel when there are insufficient efforts to avoid the need for a motion. *See, e.g., Tompkins v. Allied Barton Security Services*, 2010 U.S. Dist. LEXIS 7191 at *3 (S.D.N.Y. January 25, 2010) (denying motion to compel for failure to satisfy Rule 37(a)(1)); *Auther v. Oshkosh Corp.*, 2010 U.S. Dist. LEXIS 30669 at *5-6 (W.D.N.Y. March 30, 2010) (same).

Plaintiffs' Motion tellingly fails to state that they did or attempted to confer in good faith with all Defendants on each relevant issue raised by the Motion. *See* Fed. R. Civ. P. 37(a)(1). Indeed, the parties were in the midst of the meet-and-confer process when Plaintiffs filed their Motion. *See, e.g.,* Letter from Peter Halle to Gary Specks dated May 28, 2010, Exhibit A; Letter from Kimberly Shaw to Howard Sedran dated June 12, 2010, Exhibit B. To allow the Court to confirm that the meet and confer process was ongoing, Defendants attach the relevant correspondence on the process. Plaintiffs neglected to present these communications to the Court—evidence of Defendants' good faith negotiations—and instead chose to present a one-sided and misleading picture.

To complete the picture, the Court should know that Defendants have—so far—produced millions of pages of documents and many gigabytes of transactional data showing sales of air cargo services[3], and have been productively negotiating the overly broad and burdensome Interrogatories that Plaintiffs served on January 14, 2010. Defendants responded to these Interrogatories on March 26, 2010. Thereafter, Plaintiffs engaged each Defendant separately with respect to their objections. The negotiations with the four Defendants that are subject to Plaintiffs' Motion started on April 12, 2010, and were continuing when Plaintiffs, without notice to three of the four Defendants,[4] unilaterally terminated negotiations and filed their Motion to Compel.

Plaintiffs' Motion should be denied because it is premature, as Plaintiffs never attempted to resolve in good faith most of the alleged "disputes"—much less address them at all—with all four Defendants during the aborted meet-and-confer process. These include issues where Plaintiffs have not conferred with Defendants at all or have only recently offered to modify their position.

---

[3] In contrast, despite having Defendants' document requests since January, Plaintiffs have not yet produced a single document. Consequently, Defendants are likely to file a motion to compel in the near future.

[4] Korean Air, Air New Zealand, and LAN/ABSA.

2

### A. Legal Standard

To the extent this Court determines that any of the issues Plaintiffs raise are ripe for discussion (they are not), the following legal standards should guide its analysis. Courts should deny discovery requests if "the burden or expense of the proposed discovery outweighs its likely benefit...." Fed. R. Civ. P. 26(b)(2)(C); *see also Bellinger v. Astrue*, 2009 U.S. Dist. LEXIS 71727 at *17 (E.D.N.Y. August 14, 2009) (denying motion to compel interrogatory responses for undue burden); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 383 (W.D. Tenn. 1999) ("discovery does have ultimate and necessary boundaries").

As a general matter, a party may not discover work product. *See* Fed. R. Civ. P. 26(b)(3). However, fact work product may be discovered if, among other things, "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "Opinion work product" is not discoverable absent an "extraordinary justification." *See In re Vitamins Antitrust Litigation*, 211 F.R.D. 1, 4 (D.D.C. 2002).

Discovery requests must be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Indeed, the party seeking discovery must persuade the court that its requests are "narrowly tailored in scope or time to seek relevant information or information reasonably calculated to lead to the discovery of admissible evidence." *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2008 U.S. Dist. LEXIS 38297 (E.D. Mich. May 12, 2008) (denying as overbroad a motion to compel the production of "all documents concerning settlements of [certain] employment discrimination claims," and noting that the term "all documents" was not defined with reasonable particularity).

### B. General Objections

Plaintiffs challenge Defendants' general objections and ask this Court to overrule them, which they characterize as "boilerplate." *See* Mot. at 1, 9. Before filing the Motion, Plaintiffs never argued that the act of asserting general objections, in and of itself, was in any way improper, so this argument should be rejected. Nevertheless, there is nothing improper—or unusual—in asserting general objections. Parties do not waive objections, general or otherwise, by timely asserting them. *See Majdalani v. Legacy Bank*, No. 06-1317, 2007 WL 2694043, at *6 (D. Kan. Sept. 11, 2007) (rejecting plaintiff's argument that defendant waived its objections by merely asserting general objections); *Peach v. City of Kewanee et al.*, No. 05-4012, 2006 U.S. Dist. LEXIS 77379, at *8 (C.D. Ill. 2006) ("[P]laintiff complains that defendant responded with 'boilerplate' objections . . . . These are all valid objections, so characterizing them as 'boilerplate' does not explain why the objection was not legitimate and it does not provide the Court with a basis for a ruling. Accordingly, insofar as the Court determines this issue is ripe for resolution, it should not overrule Defendants' general objections merely because they are general objections.

### C. Work Product

At least with respect to Korean Air, Plaintiffs are still in the process of negotiating whether Defendants must provide work product when responding to Plaintiffs' Interrogatories. Yet

3

Plaintiffs seek an order permitting them to invade Defendants' attorney work product, stating that "Defendants must provide facts available to them, including through their counsel." Mot. at 2. Nonetheless, Korean Air explicitly stated that it would "not withhold otherwise non-privileged information in responding to the interrogatories just because that information is in the possession of its litigation and investigation counsel." Exhibit A. Similarly, during a telephone call on May 13, 2010, counsel for Qantas indicated that it did not know of any specific information that would be or has been withheld, but strongly disagreed that the work product doctrine would not protect information that was not in the corporation's possession, custody, or control but was within counsel's knowledge: for example, through interviews of third parties that counsel may have conducted. Plaintiffs blatantly ignored these statements, instead opting to file the Motion prematurely, before the meet and confer process was completed, and before Defendants had the chance to fully respond to the Interrogatories.

Regardless, to the extent the Court finds the issue ripe for resolution, it should first determine whether the materials in question constitute attorney work product and are therefore protected from discovery. *See In re Vitamins Antitrust Litigation*, 211 F.R.D. 1, 4 (D.D.C. 2002). Plaintiffs insist that Defendants provide responses based on confidential memoranda written by Defendants' counsel during their internal investigations conducted in response to DOJ's grand jury subpoenas and in anticipation of follow-on civil action. Accordingly, these memoranda contain attorney mental impressions prepared in anticipation of litigation and, as such, are protected as work product. *See id.* ("A document [constitutes attorney work product] on a showing that the document was prepared by an attorney or his or her agent, and the attorney or agent prepared the document in anticipation of litigation.") (internal citations omitted). Requiring Defendants to use these memoranda in the preparation of their responses to Plaintiffs' Interrogatories would therefore invade Defendants' work product.[5]

In any event, Plaintiffs fail to demonstrate any need for Defendants to make inquiry of their litigation and investigation counsel, showing that this issue is not ripe for the Court's resolution. In order to pierce the work-product protection, Plaintiffs must show substantial need for fact work product and that they "cannot, without undue hardship, obtain [its] substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *see Hickman v. Taylor*, 329 U.S. 495, 508-510 (1947) (denying discovery of work product to party who failed to show any need for it).[6]

---

[5] Courts assess whether the materials in question are "opinion" or "fact" work product. *See id.* The confidential memoranda that Plaintiffs insist Defendants use in responding to their Interrogatories invariably contain "opinions, judgments, and thought processes of counsel," so they should receive "almost absolute protection from discovery" and are only discoverable upon a showing of "extraordinary justification." *See id.* To the extent they contain only non-privileged facts, they "must be produced if the party seeking discovery meets the criteria established under the [Rule 26(b)(3)(A)]." *See id.*

[6] Even the cases Plaintiffs cite support the proposition that the discovering party must demonstrate substantial need. *See Bowne of N.Y. City, Inc. v. Ambase Corp.*, 150 F.R.D. 465, 471-472 (S.D.N.Y. 1993); *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.*, No. 90-cv-7811, 1994 WL 510043, at *4 (S.D.N.Y. Sept. 16, 1994).

4

Plaintiffs do not and cannot make such a showing. Accordingly, the Court should deny Plaintiffs' attempt to invade Defendants' work product.[7]

### D. Narrative Answers

Plaintiffs spend much of their Motion on red herrings. As relevant here, they claim that Defendants are unwilling to provide narrative responses and are unwilling to provide responses beyond those located in their documents. Neither claim is correct. Subject to other limitations (*i.e.*, the geographic scope of inquiry), each Defendant agreed long ago to supplement their prior responses to Interrogatories 1 through 6 with narrative answers containing information to the extent that information exists and is not reflected in documents. Thus, almost four pages of Plaintiffs' twelve-page Motion is devoted to issues that Plaintiffs know full well are not currently in dispute.

### E. Geographic Scope

Plaintiffs' Interrogatories 1 through 6 request that each Defendant provide information on every meeting, communication, agreement, and understanding with any other air cargo carrier with respect to rates, yields, and surcharges occurring at every location where each Defendant has had operations over an eight-year period, regardless of whether those communications relate to that Defendant's cargo services to and from the United States. At least Korean Air is in the midst of negotiating with Plaintiffs on the locations where it will make inquiry, so the issue is not ripe for this Court's attention.

Nevertheless, each Defendant has offered to individually address the burden of responding to these Interrogatories, generally by agreeing to provide information relating to shipments to and from the U.S. To respond to their Interrogatories, Plaintiffs would require each Defendant to make inquiry of numerous individuals employed over an eight-year period to: (1) identify every "meeting" or "communication" occurring at every one of the dozens of ports served by each Defendant, regardless of whether the Defendant served the U.S. from that port; (2) identify every participant at each "meeting" or "communication"; (3) determine whether, at the time of the "meetings or communications" any participant carrier flew to or from the United States from that port; and (4) investigate whether any of the countless "meetings or communications" related to fuel surcharges, surcharges, rates or yields on routes to the United States. This also would require each Defendant to search countless documents, including emails of any employee of which inquiry is made.

Plaintiffs' proposed inquiry would create a burden on each Defendant that is disproportionate to the marginal gain to be realized from having each Defendant replicate similar inquiries across the

---

[7] Plaintiffs also address Defendant Korean Air's objection to providing information obtained from the European Commission, noting that they would be willing to accept "answers that withhold only information obtained solely from access to non-Korean Air doc documents and witness statements in the investigative files of the EC so long as Defendants state in writing that they are withholding information on that basis." Mot. at 3. There is no dispute here, and Plaintiffs seek no relief from the Court on this issue. *See* Exhibit A.

5

globe. In other words, there is no added benefit to having each and every Defendant make inquiry of its offices in, for example, Mumbai, if Plaintiffs already have more than sufficient relevant information on communications already identified by other defendants. The Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. To this end, federal courts, including those within the Second Circuit, routinely exercise their inherent power over pretrial matters by imposing reasonable limitations on discovery, including geographic limitations. Reasonable limitations are especially important in complex antitrust cases, where discovery can be prone to abuse. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007).

Plaintiffs argue that their discovery should be unfettered in geographic scope in part because they allege a global conspiracy. *See, e.g.*, Exhibit A at 2. As noted above, however, each Defendant has agreed to provide responses with regard to its own shipments to and from the U.S. This is true *regardless of the physical location of such information.* For example, Qantas's responses would likely require collecting information from corporate headquarters in Sydney, certain other ports in Australia, and all locations in the United States. Qantas objects to providing a response with regard to its ports—such as Darwin, Australia—that are not directly related to U.S. commerce, because of: (1) the burden of making such an inquiry; (2) the potentially limited relevance of such information; and (3) the availability of different discovery techniques to address Plaintiffs' desire for such information. Qantas has or has had cargo operations in over 30 countries, many of which (like the U.S. and Australia) with multiple offices. Nonetheless, there would still be about 10 offices involved in shipping or receiving cargo directly to or from the United States. Similarly, Korean Air has 130 offices in 30 countries around the world, but only some of these offices are involved in U.S. commerce. As each Defendant has shown to Plaintiffs, Plaintiffs could obtain the relevant information from other Defendants that fly from any particular port to and from the United States. Plaintiffs do not even explain to the Court the position that each Defendant took on this matter, relying instead on broad generalizations that Defendants objected on grounds of "relevancy". Mot. at 6, 7.

Moreover, Plaintiffs ignore a burden associated with their Interrogatories that Defendants raised during the meet and confer process and that is unique to this case. In most antitrust conspiracy cases, such as the cases to which Defendants cite, defendants tend to have few legitimate communications with their competitors, so identifying relevant communications is relatively easy. For example, defense counsel attempting to locate relevant communications may electronically search e-mail for addresses of competitors. But Defendants here have numerous, legitimate communications with other airlines—including those with respect to interlining, terminaling services, block space, and other supply arrangements—so using such a search methodology would require an additional step of reviewing each and every communication with another airline to determine whether it is relevant to the Interrogatories. (See discussion below regarding "agreements" and "understandings").

F.     **Relevant Time Period**

Plaintiffs' Complaint defines the "class period" as "the period from January 1, 2000 to the present." *See* Consolidated Amended Complaint at 1. Plaintiffs' Interrogatories seek answers for the period January 1, 1997 to December 31, 2006. The Complaint alleges that the conspiracy

6

began no later than January 1, 2000 and that in, at least, December 1999, Defendants exchanged information about surcharges. Thus, requiring Defendants to go to the burden of searching for information three years earlier, to January 1, 1997, appeared to be excessive, and Defendants objected to this added burden.

It would appear that Plaintiffs concede that their 1997 demand was overly aggressive. *Before* their Motion to Compel, Plaintiffs offered to limit the time period to the last quarter of 1999 through December 31, 2006 to Air New Zealand. During a meet and confer on April 12, 2010, Air New Zealand advised Plaintiffs that this timeframe was acceptable. Plaintiffs' Motion now states that they are willing to accept answers for the period of January 1, 1999 through December 31, 2006. *See* Mot. at 8. They did make such an offer to Qantas shortly before filing their Motion, but had not yet received a reply. *See* Letter from Howard Sedran to Todd Miller dated May 27, 2010, Exhibit C. Plaintiffs did not offer that "compromise" to Korean Air before filing their Motion. Accordingly, Plaintiffs have failed to sufficiently confer with all Defendants on the relevant time period.

Regardless, as a matter of discretion, the Court may place reasonable limits upon such discovery requests. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 710 (1962). Such limits may be set initially with leave to seek additional discovery at a later point in time should more information be necessary. *See In re Shopping Carts Antitrust Litig.*, No. M-21-29-CLB, 1982 WL 1817, at *1 (S.D.N.Y. Mar. 11, 1982). Accordingly, if the Court finds this matter ripe for resolution, Defendants request it to limit discovery from October 1, 1999, through December 31, 2006 to coincide with the timeframe Plaintiffs offered to Air New Zealand.

### G. Interrogatory 3.

Interrogatory No. 3 seeks information concerning "whether to pay commissions to freight forwarders on Fuel and Security Surcharges..." Defendants objected to this Interrogatory on the ground, among others, that such information is irrelevant to the claims asserted in the case because the Consolidated Amended Complaint ("Complaint") contains no allegations relating to the payment of commissions. In the interest of accommodation, the Defendants will agree to withdraw their relevance objection to Interrogatory No. 3.[8]

### H. DOT Immunity And Other Immunity Claims

Plaintiffs assert that "Defendants claim that other unspecified Communications do not have to be identified because their actions were supervised by foreign regulatory regimes and are thus immune." Mot. at 8. Plaintiffs do not, however, identify—nor do Defendants understand—which objection they are disputing or which of the four Defendants that are the subject of the Motion made this objection. This conjured "dispute" underscores the half-baked nature of Plaintiffs' Motion; had they conferred in good faith on this issue, perhaps the parties would have

---

[8] Because Plaintiffs' "motion is brought against LAN/ABSA only with respect to their response to Interrogatory No. 3," June 15, 2010, Letter, at 1, the withdrawal of LAN/ABSA's objection to Interrogatory No. 3 fully resolves the motion to compel as to Lan Cargo and ABSA.

been able to understand what it is and resolve it. Instead, Defendants cannot even respond to their argument.

### I. Foreign Laws and International Comity

Plaintiffs complain that Defendants should be precluded from withholding information based on foreign laws and principles of international comity, but this issue is moot. Defendants objected to providing information to the extent doing so would violate foreign laws, as U.S. courts regularly consider whether foreign laws preclude discovery in U.S. proceedings under principles of international comity. *See, e.g., Societe Nationale Industrielle Aeropostiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 543 (1987); *In re Vivendi Universal, S.A., Securities Litigation*, 618 F. Supp. 2d 335, 341 (S.D.N.Y. 2009). In response, Plaintiffs asked Korean Air[9] to provide a description of the categories of information that it might withhold on the basis of this objection. *See* Letter from Gary Specks to Peter Halle dated May 7, 2010 at 2, Exhibit D. Korean Air responded that foreign laws "may not provide a substantial impediment to providing response to these interrogatories," but that it would fully accommodate Plaintiffs' request by indicating "whether any information is withheld pursuant to this objection." *See* Exhibit A. Accordingly, the issue was rendered moot before Plaintiffs filed their Motion; to the extent any disputes remain on this issue, Plaintiffs have failed to previously raise them with Defendants before bringing them to the Court's attention, and the parties should have the opportunity to resolve them before involving the Court.

### J. Definitions

**"Agreement" And "Understanding".** In order for parties to reach an "Agreement" or an "Understanding" there must be an exchange of communications or a meeting. Accordingly, the terms "Agreement" and "Understandings" are subsumed by the terms "meetings" and "communications." Defendants have not objected to the use of the terms "meetings" and "communications" and have responded to the respective Interrogatories accordingly. None of Plaintiffs' Interrogatories merely request the identity of "Agreements" and "Understandings"—they also include "communications" and/or "meetings" within each request. Defendants have agreed to answer the Interrogatories to the extent they seek communications and meetings.

Furthermore, Rule 26.3(c)(1) of the Local Rules of the Eastern District specifically identifies the term "communication" as "the transmittal of information in the form of facts, ideas, inquiries or otherwise." Responding to Plaintiffs' Interrogatories utilizing the definition of "communication" provided by the Local Rules gives Plaintiffs an all-encompassing response—not merely the identification of documents that may meet a finite or disputed definition of "Agreement" or "Understanding." Accordingly, Defendants have fully responded to Plaintiffs' Interrogatories, although the objection based upon the definition of "Agreement" and "Understanding" is contained within their respective responses.

Nevertheless, Plaintiffs insist that Defendants must go further to identify "Agreements" because the definition of "Agreement" was taken directly from the DOJ subpoena to which Defendants responded. Defendants produced to Plaintiffs all documents they produced to the DOJ.

---

[9] Plaintiffs have not raised the issue with any other Defendants subject to this motion.

8

Accordingly, any documents which may be an "Agreement" are within Plaintiffs' possession. It is not Defendants' duty to interpret the documents according to Plaintiffs' definitions that carry significant legal meaning, especially in a suit alleging conspiracy in violation of the Antitrust Laws, nor must Defendants identify which communications formed an "Agreement" as that is a legal conclusion, particularly given that Plaintiffs' definition of "Agreement" and "Understanding" include the terms "meeting of the minds" and "contract." *See Trueman v. New York State Canal Corp.*, 2010 U.S. Dist. LEXIS 16430 at *10 ("Rule 33 does not permit the inquiring party to seek an answer of 'pure law.'") (internal citations omitted). Thus, Defendants continue to object to Plaintiffs' definition of "Agreement" and "Understandings."

**"Employee".** Plaintiffs argue that the definition of "employee" should include the term "agent," but this should be denied for several reasons. First, it would be unduly burdensome as it would require Defendants to assess whether each and every one of its contractors over a long period of time met the legal requirements of an "agent," and then have to inquire of each such "agent" who is a third party to this litigation. Second, it would invade attorney-client privilege and attorney work product to the extent it would require inquiry into litigation and investigation counsel's determinations on whether contractors were agents. Third, it appears to expand on the definition of "Defendant" that this Court has established. *See* Local Rule 26.3(c)(5) (excluding the term "agent" from the definition of "parties," *i.e.*, "Defendant"). Moreover, Plaintiffs cite no authority for the proposition that the definition of "employee" should include the term "agent."

Plaintiffs suggest that the purpose for including "agents" in the definition of "employee" is to ensure that Defendants identify all of the individuals who participated in relevant communications. To compromise, Defendants will agree to identify all individuals—regardless of whether an agent, representative, or employee—who participated in relevant communications and that Defendants discover when undertaking an inquiry of relevant Defendant entities listed in Local Rule 26.3(c)(5).

**"You".** Plaintiffs also argue that Qantas' objection to the term "you" is improper because it includes "agents". While Plaintiffs never addressed the issue with Qantas as such, they suggest to the Court that they have addressed that objection because they have provided Qantas with five categories of current and former employees from which they expect Qantas to derive its interrogatory answers which categories do not include any agents. Interestingly, however, Plaintiffs offer no rationale or legal authority for insisting that Qantas' objection be overruled other than the fact that Plaintiffs have offered a process for Qantas to respond to Plaintiffs' Interrogatories. This is insufficient basis to overrule the objection.

## II.     Carrier-Specific Issues

### A.     Air New Zealand

*Interrogatory No. 4.* Air New Zealand objects to Plaintiffs' use of the terms "avoidance of competition" and "allocation" as vague and undefined in response to Interrogatory No. 4. This Interrogatory was not the subject of any one of the two meet and confer conversations Air New Zealand conducted with Plaintiffs. Plaintiffs did not raise this Interrogatory during the meet and confer process.

9

Nonetheless, Air New Zealand's objection is well-founded and should be upheld. Air New Zealand provided Plaintiffs with a copy of the entire production provided to the DOJ in response to its subpoena. Air New Zealand is under no duty to comb through the thousands of pages of documents produced to identify specific documents for the Plaintiffs' case. *See Olmert v. Nelson*, 60 F.R.D. 369 (D.D.C. 1973) ("[N]o party may be compelled to do the interrogating party's investigation for him."). Accordingly, Air New Zealand's interrogatory response is appropriate and Plaintiffs motion should be denied.

***Interrogatory No. 8.*** Plaintiffs seek the identification of persons with knowledge of meetings, communications, agreements, or understandings between other Airfreight Carriers, including Defendants, concerning any coordination or surcharges, rates or yields. Plaintiffs specifically request the identity of such persons involved in a guilty plea or who provided information to a grand jury, the DOJ, or foreign competition authorities.

Air New Zealand denies participation in any global conspiracy and has not entered a guilty plea with the DOJ or other competition authorities; therefore Air Zealand's response in this regard is "none." However, there is an ongoing investigation by the DOJ and providing this information to Plaintiffs may compromise DOJ's investigation. Accordingly, Interrogatory No. 8 is premature and Air New Zealand's objection should be upheld.

***Interrogatory No. 6.*** Plaintiffs make a sweeping and unsupported argument that Air New Zealand should be compelled to identify *all* communications at *all* meetings where the "intentions" or "actions" on non-members concerning surcharges, rates, yields or Airfreight Shipping Services were discussed. Without Plaintiffs specifically defining the phrases "intentions" and "actions," the production of the breadth of responsive information would essentially include *all* communications for *every single* industry-wide Air Cargo meeting for a period of no less than eight years. Moreover, this Interrogatory is requesting information that may not be in the possession of Air New Zealand as Air New Zealand may not have attended *all* alliance meetings. A response to this Interrogatory would be an insurmountable task for Air New Zealand and would in large part provide irrelevant information. Plaintiffs should not be permitted to embark on a needless fishing expedition that would only uncover thousands of pages of unnecessary information. Rule 26 does not permit blanket discovery upon bare skeletal requests when confronted with an objection; some degree of need must be shown. *Ehrlich v. The Inc. Vill. of Sea Cliff*, No. 04 CV 4025, 2007 WL 1593211, at *6 (E.D.N.Y. May 31, 2007) (denying motion to compel property inspection because of no showing of need or relevancy).

Although the Supreme Court has mandated that Rule 26(b)(1) be construed broadly, *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), courts have held that parties should not "roam in the shadow zones of relevancy" and explore matters which are not germane to the litigated issue on the theory that it might conceivably become relevant. *See Evans v. Calise*, No. 92 Civ. 8430, 1995 WL 312468, at *1 (S.D.N.Y. May 19, 1995) (internal citations omitted); *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 Civ. 4661, 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001) (denying motion to compel for failure to show that the discovery sought was in any way relevant or necessary). Simply stated, a party is not allowed to seek information that it hopes will eventually lead to the discovery of relevant material. Accordingly, Plaintiffs

should be required to define the terms "intentions" or "actions" as those terms relate to this litigation to ensure that the discovery sought is relevant and necessary.

### B.  Qantas

*Interrogatory 7.* Plaintiffs challenge Qantas' objection that the use of the term "methodology" in Interrogatory 7 was "vague and ambiguous". Plaintiffs did not raise this issue during the meet and confer process and did not provide any explanation of its intended meaning. Plaintiffs now contend that, because they can point to one example of the use of the term, Qantas' objection must be groundless. *See* Pl. Letter at 10. Plaintiffs fail to recognize that it is the existence of many other ways to calculate surcharges, in addition to one mentioned, that makes the Interrogatory vague and ambiguous. In any case, as a compromise, Qantas will agree to respond to Interrogatory 7 as to any "methodology" similar to the Lufthansa methodology identified in Plaintiffs' Motion.

*Interrogatory 8.* Plaintiffs also raise for the first time Qantas' objection to the breadth of Interrogatory 8 requiring Qantas to identify "*all*" employees, including former employees, who have knowledge of" communications and meetings on a variety of topics. Plaintiffs simply assert that this objection is "untenable" (Pl. Letter at 10) but do not explain why.

As discussed above, Plaintiffs' Interrogatories are quite broad because of their purported global reach. Moreover, as noted above, what makes this case unusual is that air carriers have numerous, legitimate reasons to have communications and meetings with other carriers where rates and surcharges are discussed and an approach coordinated. To identify each such person who has any knowledge of such matters would be, as Qantas pointed out, a monumental task. Contrary to the impression left by Plaintiffs, however, Qantas did indeed respond to Interrogatory 8. It identified those persons who had been searched for relevant documents in connection with the U.S. Department of Justice investigation of this matter. Moreover, Plaintiffs cite no authority for the proposition that Qantas should be put to the task proposed by Plaintiffs.

*Scope of Inquiry.* The last issue raised by Plaintiffs is not a real issue at all. Plaintiffs complain that Qantas will not agree to make inquiry into the five categories of persons laid out by Plaintiffs as being the appropriate universe for a response to the Interrogatories. Qantas instead made clear that it would make inquiry of those persons "reasonably believed to have relevant knowledge". *See* Pl. Letter at 10; Exhibit A. Plaintiffs do not explain why Qantas' position is incorrect and they do not ask this Court for relief. Indeed, Plaintiffs' own Motion undermines any argument that Qantas' position is unsound. As Plaintiffs themselves explain, "Defendants have an obligation to make inquiry of all persons reasonably likely to have responsive facts and information . . . ." Pl. Letter at 5. The parties are therefore in apparent agreement over what must be done and Plaintiffs' grumbling should be ignored.

### C.  Korean Air

Plaintiffs demand Korean Air make inquiry of a seemingly endless number of individuals located throughout the entire world and unlimited as to relevance to U.S. In and Out Cargo Service. *See* Exhibit D at 4-5. In response, Korean Air has proposed to make inquiry of individuals

11

responsible for Korean Air's general pricing guidelines and surcharges relating to a substantial majority of U.S. In and Out Cargo: *i.e.*, personnel with price, sales & marketing authority (1) at its worldwide headquarters in Seoul and (2) in four regional headquarters in (a) the Americas Region, (b) the Korea Region, (c) the China Region, and (d) the Japan Region, which cover the origin and destination cities of most of U.S. In and Out Cargo that Korean Air carries. *See* Exhibit A at 2. Korean Air's proposal was based on relevance and burden grounds.

The burden of conducting overly broad inquiry proposed by Plaintiffs would far exceed the marginal benefit that might accrue to Plaintiffs. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *see also In re ATM Fee Antitrust Litigation*, 2007 U.S. Dist. LEXIS 47943 at *11 (N.D.Ca. June 25, 2007) ("[Although the discovery rules entitle Plaintiffs to seek all material 'reasonably calculated to lead to the discovery of admissible evidence,' their theoretical entitlement yields to practical considerations when 'the burden or expense of the proposed discovery outweighs its likely benefit.') (internal citations omitted). Korean Air would need to inquire of each of its employees who had the slightest measure of pricing authority at each of its 130 local sales offices located in 30 countries—an endeavor which could require inquiry of thousands of employees who worked during a eight-year period.

Plaintiffs' "global conspiracy" allegations are not focused on Korean Air alone, but on all 24 Defendants. Those 24 other Defendants, many with their base of operations in countries where Korean Air has no significant inbound or outbound U.S. cargo business, will also be responding to Plaintiffs' Interrogatories. If Korean Air had communications and meetings in countries in which it does not have U.S. inbound and outbound cargo business, Plaintiffs will learn of those communications through other Defendants' responses. Thus, the burden on Korean Air is disproportionate to the benefit it would yield to Plaintiffs.

Plaintiffs' Motion demonstrates this point. Plaintiffs identify other offices in Asia as locations where Korean Air has offices and participated in relevant communications. *See* Mot. at 11. But Plaintiffs already have or will obtain most of the relevant information they seek from other Defendants in Asia who have global headquarters in those countries. Accordingly, requiring Korean Air to possibly duplicate the information Plaintiffs already have or will have from other Defendants is unlikely to add an even marginal level of detail to the discovery in this case.

Korean Air is still in negotiations with Plaintiffs to bridge the gap between Korean Air's position, outlined above, and Plaintiffs position that it make inquiry everywhere over an eight-year period.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be denied in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ W. Todd Miller* | */s/ Peter E. Halle* |
| W. Todd Miller | Peter E. Halle |
| Kimberly N. Shaw | MORGAN, LEWIS & BOCKIUS, LLP |
| BAKER & MILLER PLLC | 1111 Pennsylvania Ave., NW |
| 2401 Pennsylvania Ave., NW Suite 300 | Washington, D.C. 20004 |
| Washington, D.C. 20037 | Tel: 202-739-3000 |
| Tel: 202-663-7820 | Fax: 202-739-3001 |
| Fax: 202-663-7849 | |
| | *Counsel For Korean Airlines Co., Ltd.* |
| *Counsel For Qantas Airways Limited* | |
| | |
| */s/ James V. Dick* | */s/ Michael J. Holland* |
| James V. Dick | Michael J. Holland |
| SQUIRE, SANDERS & DEMPSEY, LLP | CONDON & FORSYTH LLP |
| 1201 Pennsylvania Ave., NW | 7 Times Square, 18th Floor |
| P.O. Box 407 | New York, NY 10036 |
| Washington, D.C. 20044-0407 | Tel: 212-490-9100 |
| Tel: 202-626-6600 | Fax: 212-370-4453 |
| Fax: 202-626-6780 | |
| | *Counsel For Air New Zealand Limited* |
| *Counsel For LAN Airlines S.A., LAN Cargo S.A. and Aerolineas Brasileiras S.A.* | |