```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE
                                                                06-MD-1775
AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION                                            ALL CASES

M.D.L. No. 1775
-----------------------------------------------------------x
```

**OPINION AND ORDER**

The plaintiffs have moved to compel the defendant South African Airways, Ltd. ("SAA") to produce certain transaction and cost information and to respond to their First Set of Interrogatories.[1] The defendant has withheld the requested information on the ground that disclosure is prohibited by South African law, specifically, the Protection of Businesses Act No. 99 of 1978 (hereinafter the "Act"). That Act absolutely prohibits anyone from, among other things, furnishing "any information as to any business whether carried on in or outside the Republic" in response to any request or interrogatory "emanating from outside the Republic in connection with any civil proceedings," "except with the permission of the Minister of Economic Affairs." Protection of Businesses Act 99 of 1978 § 1(b) (S. Afr.).[2]

---

[1] The terms "transaction information" and "cost information" are defined in a Stipulation and Order Regarding Preservation of Documents and Electronically Stored Information, so ordered by the court on March 11, 2008 and filed in the record; stated generally, the terms cover information about the pricing of each shipment for which SAA provided services, and the costs incurred in providing those services. The Interrogatories seek information about meetings and participants in communications concerning the imposition of various surcharges and related pricing matters, as well as information about the surcharges actually imposed by SAA.

[2] The full text of the Act is annexed as Exhibit E to the plaintiff's letter motion (Doc. No. 1097).

The resolution of issues presented by the invocation of foreign laws as a bar to the production of information in civil actions in the United States has been the subject of a previous opinion in this case which identified the principles that apply. *See In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06-MD-1775, 2010 WL 1189341 (E.D.N.Y. Mar. 29, 2010). Briefly stated, when deciding whether to compel the production of information located abroad, the court should consider the following factors: (1) the importance to the litigation of the information requested; (2) the degree of specificity of the requests; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located; (6) the hardship that compliance would impose on the party from whom the information is sought; and (7) the good faith of the party resisting production. *Id.*, at *2 (*citing, inter alia, Restatement (Third) of The Foreign Relations Law of the United States* (hereinafter the "Restatement") § 442(1)(c)(1987); *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 439 (E.D.N.Y. 2008); *Minpeco, S.A. v. Conticommodity Serv., Inc.*, 116 F.R.D. 517, 529-30 (S.D.N.Y.1987)).

The above considerations weigh heavily in favor of the plaintiffs' motion. There is no serious dispute that the requested information is highly relevant to the case. Since this is a price-fixing case, the transaction and cost information sought by the plaintiffs is essential to the proof of their claims against SAA. It is the principal way – perhaps the

only way – that the plaintiffs will be able to establish the prices charged and the costs incurred by SAA for its air cargo services, and thus be able to prove whether SAA engaged in unlawful price-fixing.  The interrogatories seek information about, among other things, communications directly related to the price-fixing allegations in the complaint, communications which would be central to the plaintiffs' proof of SAA's participation in a price-fixing conspiracy.  The defendant argues that the information is not crucial because it relates to only a relatively minor player in the conspiracy, but that does not render the information any less essential to the proof of the plaintiffs' claims against SAA.

     Nor is there any serious dispute about the specificity of the plaintiffs' requests, which provide ample detail about precisely what information is sought.  Although the requests for transaction and cost data may result in the production of large volumes of data, the requests themselves are highly detailed and there is no attempt to show that production would be burdensome.  Similarly, the interrogatories are specific about the meetings and communications to which they are directed, and the surcharge information they seek.

     Comparing the national interests at stake, the United States interest in enforcing antitrust laws through private civil actions is one of fundamental importance to this country's effort to encourage and maintain a competitive economy.  *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.*, 473 U.S. 614, 634-35 (1985); *Hawaii v. Standard Oil Co. Of Cal.*, 405 U.S. 251, 262 (1972).  The South African interest in enforcing the blocking statute at issue here, on the other hand, is entitled to less deference since it

is not a substantive rule of law at variance with the law of the United States, but rather one whose primary purpose is to protect its citizens from discovery obligations in foreign courts. *See, e.g., Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) (*citing Restatement* § 437, Reporter's Note 5, pp. 41, 42).

      The possibility that SAA will suffer hardship in complying with a discovery order is speculative at best.  Although the defendant cites the prospect of criminal sanctions if it violates the blocking statute, it has cited no instance in which such sanctions have ever been imposed.  *See, e.g., Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 529-30 (S.D.N.Y. 1987) (likelihood of enforcement is to be considered when examining hardship).  Any such prospect is further diminished by SAA's contention that it is itself an organ of the government.

      The defendant's principal argument in opposition to a compulsion order is that the plaintiffs have not established that the information they seek is otherwise unavailable.  SAA points out that approval for disclosure is possible under the blocking statute if authorized by the Ministry of Trade and Industry[3] from whom the defendant "has sought official guidance."  Def't Ltr., Apr. 16, 2010, p. 1.  At oral argument, however, the defendant conceded that the matter has been under consideration by the Ministry since the beginning of this year, without any indication when a decision will be made.  Nor has the

---

[3]The Ministry of Economic Affairs to which the Act refers has now been renamed the Ministry of Trade and Industry.  *See* Def't Letter, Apr. 16, 2010, p. 1 at n.1.

defendant made any showing about how or under what standards the Ministry treats such requests for "official guidance."  Given the passage of time and the absence of any indication that the Ministry will soon act on the defendant's request for guidance, it is fair to conclude that this "alternative" for obtaining the requested information has not proved to be viable.  Nor is there any other avenue to obtain disclosure.  Regardless of how a request for disclosure is made, the South African statute does not permit disclosure absent approval by the Ministry.  Thus, for example, in contrast to the French blocking statute that was the subject of the previous opinion by this court, the South African statute does not even permit a response via the Hague Convention or letters rogatory absent ultimate approval by the Ministry.

Of the remaining two considerations, only one clearly favors the defendant, the fact that most if not all of the information apparently did not originate in the United States, but rather elsewhere.  The question of the defendant's good faith in resisting disclosure cannot be resolved on the basis of the information in the present record.

Having weighed the above considerations, the court is convinced that the plaintiffs' motion should be granted.  Accordingly, SAA is directed to produce the requested transaction and cost data and to respond fully to the plaintiffs' interrogatories. Supplemental responses to the interrogatories that provide the information requested are to be served within thirty days.  As to the transaction and cost data, the defendant shall

meet and confer with the plaintiffs' counsel within fourteen days in an effort to reach agreement on a reasonable schedule for production of that data.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:   Brooklyn, New York
         July 23, 2010