IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION MDL No. 1775 | Master File 06-MD-1775(CBA)(VVP)<br><br>ALL CASES<br><br>ORAL ARGUMENT REQUESTED |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SOUTH AFRICAN AIRWAYS' MOTION FOR RECONSIDERATION
OF THE JULY 23, 2010 ORDER DIRECTING SAA TO RESPOND
TO PLAINTIFFS' DISCOVERY REQUESTS

J. Mark Gidley
George L. Paul
Kristen J. McAhren
**WHITE & CASE** LLP
701 13th Street, NW
Washington, DC 20005
(202) 626-3600
(202) 639-9355 (facsimile)

**INTRODUCTION**

On April 1, 2010, Plaintiffs moved to compel South African Airways Ltd. ("SAA") to produce certain transactional data and responses to Plaintiffs' First Set of Interrogatories. In opposing Plaintiffs' motion, SAA argued that the motion was premature because SAA was still in the process of seeking guidance about how to respond to Plaintiffs' discovery requests from the South African Minister of Trade and Industry (the "Minister") as required by the South African Protection of Business Act. Protection of Business Act No. 99 of 1978 (S. Afr.) (the "Act"). Before SAA obtained guidance from the Minister, however, the Court issued an order on July 23, 2010 compelling SAA to cooperate with Plaintiffs' discovery, over objections based on the Act. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No.06-MD-1775 (E.D.N.Y. July 23, 2010) (the "Order").[1]

SAA moves for reconsideration because on July 26 — only three days after the Court issued its Order — SAA was notified by the South African government authorities that any production by SAA threatened sovereign interests of the Republic of South Africa and therefore South African law required that the Minister forbid SAA from complying with the requests. SAA was also informed at that time of the South African Republic's strong sovereign interests in this litigation, its interests in the enforcement of the Act in South Africa, and the real consequences to SAA, a state-owned enterprise of the Republic of South Africa, if it were to disclose information in violation of the Act.

In light of the substantial international comity concerns at issue here, SAA respectfully requests that the Court reconsider its Order to take into account the overriding sovereign interests

---

[1] Plaintiffs' motion to compel and SAA's opposition focused solely on SAA's assertion of the Act as a basis for declining to produce the discovery sought at that time. Plaintiffs did not challenge any of SAA's other objections, and SAA does not understand the Court's Order to resolve SAA's other objections, as neither Plaintiffs nor SAA has submitted those objections to the Court.

of the South African Government in this important matter. Those interests tip the balance of the analysis in SAA's favor, particularly as Plaintiffs have never denied the potential availability of other sources of information about SAA. The Minister, moreover, raises new issues of foreign sovereign compulsion which similarly justify reconsideration and establish grounds for denial of Plaintiffs' motion to compel.

## BACKGROUND

In the Order compelling SAA to respond to Plaintiffs' discovery requests, the Court applied a balancing test that considered various factors, including in particular the competing interests of the United States and the Republic of South Africa and the hardship on SAA if it were compelled to produce information in violation of the Act. Order at 2-4. The Court found that the balance of factors weighed in favor of compelling production. *Id.* at 5.

After the Court entered its Order, on July 26, 2010, SAA was notified by the Department of Public Enterprises that the Minister had denied SAA permission to respond to Plaintiffs' discovery requests in this litigation. *See* July 26, 2010 letter from Barbara Hogan, Minister of Public Enterprises to C. A. Carolus, Chairperson, SAA (Exhibit "A", Tab 1), attaching July 1, 2010 letter from Dr. Rob Davies, Minister of Trade and Industry, to Barbara Hogan, Minister of Public Enterprises (Exhibit A, Tab 2) (the "Minister's Letter").[2] The Minister's Letter constitutes an official statement of the Government of South Africa on this issue and, as such, completely alters the comity analysis undertaken by the Court in its Order.

In support of his decision, the Minister relied upon an 18-page Legal Opinion from the State Attorney of Pretoria. *See* Legal Opinion of the State Attorney, Pretoria (Exhibit A, Tab 3) (the "Legal Opinion"). The Legal Opinion advises the Minister to deny SAA permission to

---

[2] Although the Legal Opinion is dated June 30, 2010 and the Minister's Letter is dated shortly thereafter, July 1, 2010, SAA did not receive the Minister's Letter from the Department of Public Enterprises until July 26, 2010.

respond to the discovery requests because the requests seek sensitive information from SAA, one of South Africa's national assets, relating to SAA's core business. Minister's Letter at 17. The Legal Opinion emphasizes that SAA is a state-owned enterprise reporting directly to the Government of South Africa. Legal Opinion at 8. As such, discovery disclosures not only directly affect SAA but directly implicate the Republic of South Africa's sovereign interests. *Id.* at 15. As the State Attorney's Legal Opinion makes clear: "[I]t is apparent that the information and/or documentation [requested] involves the disclosure of sensitive information relating to *inter alia* pricing, strategies, communications, information which may harm national security and which relates to the core business of one of the Republic of South Africa's national assets which if disclosed may have direct and/or indirect consequences together with various adverse effects on an already volatile business sector." *Id.* The Minister is advised that he "is obliged by the [South African] Constitution to take decisions which are in the interest of the Republic." *Id.* at 18. Because disclosure by SAA is not in the interests of the Republic, the Minister is therefore "obliged by the Constitution not to permit disclosure of such [sensitive] information." *Id.*

In reaching this conclusion, the State Attorney recognizes the conflict of laws facing SAA. The Republic of South Africa is, however, "entitled to exercise jurisdiction over all persons, including juristic persons within its territory and over all acts that take place within its territory." *Id.* at 16. SAA cannot elect whether to provide the information — except as decided by the Minister — and must abide by the Minister's decision. *Id.* at 15-16; *see also id.* at 15 (stating that "SAA is bound to adhere to all legislation enacted within the Republic of South Africa and any violation thereof would amount to a contravention which has its own punitive consequences"). As to this conflict, the Legal Opinion opines that "US courts cannot expect that SAA will breach South African laws to comply to their laws." *Id.* at 18. Indeed, "[i]f that is required, then their laws are a serious threat to our sovereignty." *Id.* In the end, the Legal

3

Opinion concludes that the "possible consequences to SAA" of not responding to the U.S. discovery requests "are not as severe as compromising our sovereignty and the continued existence of our national carrier." *Id.*

The Legal Opinion also confirms the continuing viability of the Protection of Business Act in South Africa. *Id.* at 12. The Act's provisions "are peremptory and extend to all persons within the Republic of South Africa, including SAA." *Id.* at 15. Because the Act by its terms prohibits SAA from voluntarily responding to Plaintiffs' requests without the Minister's permission, SAA cannot produce over the Minister's denial without violating the Act itself. *Id.* at 15-16.

## ARGUMENT

Rule 54(b) of the Federal Rules of Civil Procedure authorizes this Court to revise its Order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Likewise, Local Civil Rule 6.3 expressly authorizes a motion for reconsideration of a court order. Reconsideration is appropriate because of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD C. COOPER, FEDERAL PRACTICE AND PROCEDURE 4478 at n.49 (2d ed. 2002); *see also Ragusa v. Malverne Union Free School Dist.*, 652 F. Supp. 2d 275, 278-79 (E.D.N.Y. 2009) (granting motion for reconsideration based on availability of new evidence).

In this case, the Court ruled on the parties' discovery dispute before the Minister responded to SAA's request for guidance on Plaintiffs' discovery requests. The Minister has now provided that guidance, which constitutes newly available evidence in the form of an official statement from the South African Government that the Court should now consider. As described below, when a foreign government plainly expresses its interest in litigation and

4

advises that certain disclosures would be harmful to its sovereign interest, the Court must evaluate the foreign government's position as part of any comity analysis. Reconsideration is additionally appropriate in light of the fact that in contrast to the Minister's expressed statement of the sensitivity of the information requested, there has never been any factual showing that the requested information is "crucial" to Plaintiffs' claim or cannot largely be obtained by alternate means. Finally, SAA is prohibited by South African law from responding to these requests and the doctrine of foreign sovereign compulsion requires that Plaintiffs' motion to compel be reconsidered and denied on that basis.

## I.  THE MINISTER'S LETTER PROVIDES NEW EVIDENCE THAT THIS COURT MUST CONSIDER

### A.  Comity Requires That This Court Consider The South African Government's Official Statement Of Its Sovereign Interests In The Litigation

When the Court issued its Order, the primary evidence regarding the Republic of South Africa's interest in the litigation was the Act itself, which forbids compliance with extraterritorial discovery requests without permission of the Minister. In granting the motion to compel, this Court recognized South Africa's general interest in foreign discovery requests seeking information located in South Africa. Order at 4. Nevertheless, the Court found it significant that the Minister had not yet responded to SAA's request for guidance and opined that no decision was likely forthcoming. *Id.* at 5. Moreover, the Court found SAA's contention that "it is itself an organ of the Government" made it unlikely that SAA would be subject to penalties by disclosing the requested information without the Minister's permission. *Id.* at 4.

Now the Court has before it an official statement by the Government of South Africa outlining its strong sovereign interest in this litigation. Principles of international comity require the Court to give serious consideration to the Minister's Letter and the accompanying Legal Opinion. When a party moves to compel extraterritorial discovery, the balance of interests of the

5

foreign sovereign and the United States is "the factor considered most important by several courts confronting the issue." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2010 WL 1189341, at *4 (E.D.N.Y. Mar. 29, 2010). The foreign sovereign's interest in the discovery issue is best seen from its own statement, and so a court must take such statement into consideration. *See Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts should . . . take care to demonstrate due respect . . . for any sovereign interest expressed by a foreign state.").

In *Minpeco S.A. v. Conticommodity Services, Inc.*, the court declined to compel a Swiss bank to produce documents subject to a discovery request in part because the Swiss government issued statements underscoring the importance of Swiss bank secrecy laws and the government's general objection to any action in the case that would violate those laws. 116 F.R.D. 517, 525 (S.D.N.Y. 1987). *See also United States v. Davis*, 767 F.2d 1025, 1035 (2d Cir. 1985) ("The absence of any objection by the Cayman government to the subpoena and subsequent order . . . is significant."); *Weiss v. Nat'l Westminster Bank*, 242 F.R.D. 33, 51 (E.D.N.Y. 2007) ("where the British government's interest in its bank secrecy laws is not asserted, the court need not consider those interests here"). The court in *Minpeco* credited the Swiss government's statements even though they "stop[ped] short of declaring that the issuance of an order to compel . . . would require [the defendant] to violate Swiss law or would embarrass Swiss-American relations." *Minpeco*, 116 F.R.D. at 525. Here, the Minister's Letter and the Legal Opinion are even stronger statements of sovereign interest than the Swiss government's statements in *Minpeco*. In an 18-page Legal Opinion from the State Attorney General of Pretoria and relied upon by the Minister, it is explained that SAA's compliance with the discovery requests would not only breach South African law, but also be "a serious threat to our sovereignty." Legal Opinion at 18.

The Legal Opinion explains that SAA is not an ordinary company, but rather the state-

6

owned airline carrier of South Africa. *Id.* at 8. If this "national asset[]" were permitted to disclose information relating to its "core business" — information regarding pricing, strategies, and communications — South Africa's national security and other interests could be threatened. *Id*. at 15. Thus, the Minister's letter and the Legal Opinion tilt the balance of interests in the litigation towards South Africa under the international comity analysis.

### B. The Minister's Letter Demonstrates The Substantial Hardship SAA Would Face If Forced To Comply With Plaintiffs' Discovery Requests

Courts in this Circuit view the hardship a litigant would face as the second most important factor — behind competing national interests — in deciding whether to compel production of foreign documents. *See, e.g.*, *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998); *Minpeco*, 116 F.R.D. at 525-26 (citing hardship factor as second "principal factor"); *Reino de Espana v. Am. Bureau of Shipping*, 2005 WL 1813017, at *8 (S.D.N.Y. Aug. 1, 2005) (stating Second Circuit considers hardship factor "the second most important factor"). The hardship factor analysis involves consideration of the sanctions a disclosing party may face and the likelihood of prosecution. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 454 (E.D.N.Y. 2008); *Minpeco*, 116 F.R.D. at 526 (finding likelihood of prosecution under foreign law must be more than "highly speculative"); *Reino de Espana*, 2005 WL 1813017, at *8 (citing potential penalties such as high fines and incarceration coupled with likelihood of sanctions as weighing against order compelling foreign discovery). The prospect of criminal prosecution, in particular, "constitutes a weighty excuse for nonproduction." *Societe Internationale Pour Participations Industrielle et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958).

Here, the Minister has found that disclosure by SAA would be a threat to the sovereignty of the Republic of South Africa. Legal Opinion at 15. Moreover, the Minister expressly states

7

that SAA "is bound to adhere to the Protection of Business Act and *any violation thereof would amount to serious contravention with punitive consequences for SAA*."  Minister's Letter at 2 (emphasis added); *see also* Legal Opinion at 15.  That Act criminalizes unauthorized compliance with foreign discovery requests, potentially resulting in fines or imprisonment.  *See* Protection of Business Act 99 of 1978 § 2 (S. Afr.) (Exhibit "B").  The Legal Opinion deems this penalty to be more severe than any penalty SAA would incur in this litigation.  Legal Opinion at 17-18.  The possibility that SAA will suffer hardship in complying with a discovery order is thus no longer "speculative" as this Court held in its Order, but is instead very real.

The Minister's serious concern over protecting South Africa's sovereign interests from foreign legal processes also underscores the hardship SAA would suffer due to the ongoing parallel criminal proceedings in the United States.  Parties who face parallel civil and criminal proceedings run the risk of substantial burdens stemming from civil discovery, including the possibility of: (1) prematurely exposing the party's defenses to the criminal authorities; (2) diverting limited resources from the party's criminal defense; and (3) compromising the party's ability to defend itself in both proceedings.  *See Volmar Distribs. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (holding civil discovery during parallel criminal proceedings negatively affected defendant's ability to "defend the civil case vigorously without fear of subsequent prosecution").  If SAA is forced to comply with Plaintiffs' discovery requests over the Minister's directive to the contrary, SAA will face the very real risk of prematurely exposing its defenses to prosecutors and diverting its limited resources away from its criminal defense.  In sum, the potential for serious hardship on SAA if ordered to respond to Plaintiffs' discovery requests over the Minister's decision and in contravention of the Act weighs strongly in SAA's favor in the Court's consideration of Plaintiffs' motion to compel.

8

### C. Under the Circumstances, the Possible Availability of Alternative Means of Securing The Information Now Also Weighs In SAA's Favor

Because the Minister has determined that the information requested is "sensitive" to the Republic of South Africa's interests in SAA, a core strategic asset of the Republic of South Africa, the need to examine alternative means for disclosure is now particularly acute. Significantly, Plaintiffs may not need this discovery from SAA. This is because Plaintiffs may have alternate means to obtain the same or similar information.

First, SAA's U.S. outbound transactional shipment information and its U.S. grand jury production have already been made available to Plaintiffs. Moreover, responsive information regarding air cargo carrier transactions is reported to and available from sources such as the U.S. Department of Transportation and the International Air Transport Association ("IATA"). SAA understands, in fact, that Plaintiffs are currently seeking from IATA exactly that kind of transactional data. A cursory review of the 2,852,464 pages of documents already produced by other carriers reveals that other carriers maintained summaries and other market intelligence on rates and surcharges, including SAA's.

Plaintiffs have never established that alternative sources of information are not available to them, nor have Plaintiffs demonstrated why such other sources could not be adequate for their purposes. At a minimum, prudence — in light of the Minister's Letter — counsels in favor of requiring Plaintiffs to explore these alternative means.

In light of the conflict-of-laws dilemma SAA faces, these are real alternatives that warrant the Court's reconsideration of its Order.

## II. THE MINISTER'S LETTER RAISES NEW ISSUES OF FOREIGN SOVEREIGN COMPULSION

The Minister's Letter is clear that SAA must abide by the Act and the Minister's decision and that SAA is prohibited from responding to Plaintiffs' discovery requests. Minister's Letter

9

at 2 & Legal Opinion at 15-16.  Accordingly, the foreign sovereign compulsion doctrine provides an independent basis for reconsideration of the Order.  *See In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 550 (E.D.N.Y. 2008) (noting that the foreign sovereign compulsion doctrine is distinct from other defenses).  Under this doctrine, "a state may not require a person to do an act in another state that is prohibited by the law of that state or the law of the state of which he is a national."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) (quotations omitted).

The Legal Opinion states plainly that SAA is prohibited by South African law from responding to Plaintiffs' requests.  Legal Opinion at 15-16.  It also states that "US courts cannot expect that SAA will breach South African laws to comply to their laws."  *Id.* at 18.  The Minister's Letter and the Legal Opinion constitute new legal authority directing SAA not to comply with Plaintiffs' discovery requests.

Accordingly, the Court should reconsider its Order because, under the foreign sovereign compulsion doctrine, this Court should not compel SAA to violate the Minister's directive and South African law.  *See Trugman-Nash, Inc. v. New Zealand Dairy Board*, 954 F.Supp. 733, 736 (S.D.N.Y. 1997) (granting reargument because the defendants were entitled to invoke the foreign sovereign compulsion doctrine based on an apparent conflict between U.S. and New Zealand law).

## **CONCLUSION**

For all of the foregoing reasons, SAA respectfully requests that the Court reconsider its July 23, 2010 Order and deny Plaintiffs' Motion to Compel.


Dated: August 6, 2010

>                                    By: /s/  J. Mark Gidley
>                                    J. Mark Gidley
>                                    George L. Paul
>                                    Kristen J. McAhren
>                                    **WHITE & CASE** LLP
>                                    701 13th Street, NW
>                                    Washington, DC 20005
>                                    (202) 626-3600
>                                    (202) 639-9355 (facsimile)

11

## **CERTIFICATE OF SERVICE**

     I certify that on August 6, 2010, a copy of the foregoing NOTICE OF MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO FILE AFFIDAVIT WITH NEWLY AVAILABLE EVIDENCE, and MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOUTH AFRICAN AIRWAYS LTD.'S MOTION FOR RECONSIDERATION OF THE JULY 23, 2010 ORDER DIRECTING SAA TO RESPOND TO PLAINTIFFS' INTERROGATORIES was served via the Court's ECF system upon all counsel registered for ECF in this case.

                                                                  /s/ Arik Clausner  
                                                                  Arik Clausner