# Exhibit 3

# Labaton Sucharow

Hollis L. Salzman
Partner
212 907 0717 direct
212 883 7017 fax
hsalzman@labaton.com

July 29, 2010

**VIA EMAIL**

Heather L. Kafele, Esq.
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022

Re:   *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775

Dear Heather:

I write on behalf of Plaintiffs, in response to your letter of July 20, 2010 regarding our continued negotiations concerning Plaintiffs' Joint Objections and Responses to Defendants' First Set of Document Requests to Plaintiffs. This letter also serves to update you on the status of Plaintiffs' document production to Defendants.

I.   **Plaintiffs' Document Production**

For purposes of clarification, Plaintiffs have already begun producing documents to Defendants. To date, Plaintiffs have produced to Defendants, 89,102 documents from American Airlines, Inc., and have given Defendants access to 39,560 documents from United Air Lines, Inc. Plaintiffs are presently engaged in the meet and confer process with Defendants relating to the production of Plaintiffs' transaction data. Additionally, more than 300 boxes of paper documents are now available for inspection in various locations throughout the country, including New York, Pennsylvania, and Illinois, subject to Defendants' agreement that the production of any downstream data included in these documents is being made available only to avoid the unnecessary burden of separating downstream from upstream information maintained together in the ordinary course of business, and that Defendants will not construe production of such downstream data as an admission of relevance or admissibility of any such information, or of the propriety of any of the Requests for downstream documents. Nor should it be considered a waiver of Plaintiffs' objections to such Requests, nor used by Defendants to argue against Plaintiffs as a basis for the production of additional downstream information.[1] Upon Defendants' inspection, Plaintiffs will bates stamp, copy and produce the upstream documents selected. Please confirm your agreement to the foregoing before production begins.

---

[1] This stipulation will also apply to any other downstream documents that Plaintiffs produce including, but not limited to, any ESI produced that may contain downstream information.

Labaton Sucharow LLP   140 Broadway, New York, NY 10005   212 907 0700 main   212 818 0477 fax   www.labaton.com   

**Labaton**
**Sucharow**

Heather L. Kafele
July 29, 2010
Page 2

### II.   Correcting Inaccuracies Contained In Your Letter

Numerous assertions contained in your July 20th letter are inaccurate. During our July 7, 2010 meet and confer, Plaintiffs offered to produce documents related to specific Requests in which Defendants were particularly interested, *i.e.,* business plans and trade associations. Further, Plaintiffs raised the need for global search terms to the extent that the document requests seek electronically stored information ("ESI"). Plaintiffs, however, did not suggest that a search term proposal would delay the production of paper documents.

Plaintiffs agree, subject to privilege objections, that Request Nos. 10, 11, 16, 18, 28-31 are not in dispute. To clarify our response to the above Requests, Plaintiffs will not produce any expert material at this time. Also, as agreed, Plaintiffs will not produce any documents that have been produced or are currently being produced to Plaintiffs by the Air Cargo Carrier Defendants propounding the Requests. In addition, before the production of ESI can begin, the parties must agree upon a number of items relating to its production, including a search term protocol, a de-duplication procedure, and a production format, involving metadata, native files, and attachments. Plaintiffs invite Defendants to propose dates to meet and confer on these issues.

In our June 11, 2010 letter to Defendants on these topics, we stated that a discussion on the timing of production was premature, since we had not yet met and conferred on certain topics, including search terms. It was not until nearly one month later, during our July 7th meet and confer, that Defendants advised us of their preference that Plaintiffs propose an initial search term list for Defendants' consideration. Once Defendants made that request, Plaintiffs began drafting a search term proposal. We will be prepared to negotiate search terms with you shortly. Plaintiffs invite Defendants to propose times to meet and confer on these issues.

### III.   Requests for Specific (or Discrete Categories of) Documents

Set forth below is a request-by-request record of what Plaintiffs will produce, to the extent such documents exist. As you know, Plaintiffs' position is that downstream data is not relevant to this litigation and in certain circumstances may raise undue burden issues; thus we maintain our general objection to your Requests seeking the production of downstream documents and data.

Request No. 1: Plaintiffs have begun to produce organizational charts or their equivalent.

# Labaton Sucharow

Heather L. Kafele
July 29, 2010
Page 3

Request No. 2: Plaintiffs will produce non-privileged documents and ESI sufficient to describe Plaintiffs' creation, organization, and business activities, as they relate to Plaintiffs' Air Cargo Services.[2]

Request No. 3: Plaintiffs will not produce financial statements, since they are wholly irrelevant to this case. In exchange for your withdrawal of this Request and Request No. 32, we are prepared to provide you with a written statement that Plaintiffs are not seeking recovery of lost sales or lost profits as part of this case.

Request No. 4: Plaintiffs have already discussed with Defendants that, to the extent that requests for business plans relate to Plaintiffs' direct purchases of Air Cargo Services from any Air Cargo Carriers, Plaintiffs will produce business plans regarding their direct purchases.

Request No. 5: Plaintiffs will produce non-privileged documents and ESI comparing, analyzing, or negotiating (with Air Cargo Carriers) air carrier price(s) for Air Cargo Services for routes into or out of the U.S., subject to your proposed limitation that these Requests should not be interpreted to call for the production of documents that merely request or state a price, rate or Surcharge for Air Cargo Services, *i.e.*, a rate request for a particular route and date.

Request No. 6: Documents concerning the pricing of Freight Forwarding Services are wholly irrelevant to the alleged conspiracy and would otherwise be unduly burdensome to search for and produce, and therefore will not be produced.

Request No. 7: As you know from our July 7, 2010 meet and confer, Plaintiffs will produce non-privileged documents and ESI concerning U.S., foreign or international trade association(s) relating in whole or in part to Air Cargo Services for routes into or out of the U.S. that are sufficient to show meetings of such trade association(s) relating to the price of, or Surcharges for, Air Cargo Services.

Request No. 8: Plaintiffs will produce non-privileged documents and ESI submitted, received, or generated in connection with the trade association meetings described in Request No. 7, including minutes, agendas, studies, analyses, reports, and data relating to the price of, or Surcharges for, Air Cargo Services.

Request No. 9: Plaintiffs will produce communications between Air Cargo Carriers and Plaintiffs regarding the pricing of direct sales, subject to Defendants' limitation that the Requests should not be interpreted to call for the production of documents that solely request or state a price, rate or Surcharge for Air Cargo Services, *i.e.*, a rate request for a particular route and date.

---

[2] As set forth in Plaintiffs' Joint Objections and Responses to Defendants' First Set of Document Requests to Plaintiffs, we interpret the term Air Cargo Services to mean paid private air transportation of freight or other cargo by any airline acting as a provider of Air Cargo Services.



# Labaton
# Sucharow

Heather L. Kafele
July 29, 2010
Page 4


Request No. 10: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI reflecting communications between Plaintiffs and Air Cargo Carriers regarding the direct purchase of Air Cargo Services for shipments to or from the U.S. will be produced.

Request No. 11: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI constituting contract agreements between Plaintiffs and Air Cargo Carriers regarding Plaintiffs' direct purchases of Air Cargo Services for shipments to or from the U.S. will be produced.

Request No. 12: Defendants have expressed a willingness to drop this Request, pending Plaintiffs' responses to other Requests. Nonetheless, Plaintiffs will produce non-privileged documents and ESI concerning the direct purchase, sale or pricing of Air Cargo Services from any Air Cargo Carrier upon which any Plaintiff bases its claim.

Request No. 13: Plaintiffs are presently engaged in the meet and confer process with Defendants, to discuss the production of upstream transactional information from January 1998 through March 2009. Meet and confers are continuing on a Plaintiff-by-Plaintiff basis, as needed.

Request No. 14: Defendants have expressed a willingness to drop this Request, pending Plaintiffs' responses to other Requests. Plaintiffs agree that this Request should be abandoned. Plaintiffs will not produce downstream transactional data, with the exception of downstream data maintained in paper form that is co-mingled with upstream paper documents in the ordinary course of business, subject to the reservation set forth in Section I, above.

Request No. 15: Defendants have expressed a willingness to drop this Request, pending Plaintiffs' responses to other Requests. No Plaintiff falls into the category of having participated in the conspiracy alleged, and no Plaintiff had knowledge of the conspiracy alleged prior to February 2006, when raids and investigations of certain Air Cargo Carriers first became public and cases were first filed. Moreover, we maintain our objections to this Request because the Request is vague, ambiguous, unintelligible, and does not specify the documents sought with sufficient particularity. We continue to be perplexed by this Request, and invite you to clarify the Request and propose search terms that might target responsive documents.

Request No. 16: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI will be produced.

Request No. 17: Plaintiffs will produce non-privileged documents and ESI reflecting complaints from Plaintiffs or other direct purchasers of Air Cargo Services to Air Cargo Carriers, concerning Air Cargo Carrier pricing of Air Cargo Services for shipments to or from the U.S., subject to Defendants' limitation that the Requests should not be interpreted to call for the production of

**Labaton Sucharow**

Heather L. Kafele
July 29, 2010
Page 5

documents that solely request or state a price, rate or Surcharge for Air Cargo Services, *i.e.*, a rate request for a particular route and date.

Request No. 18: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI will be produced.

Request No. 19: Plaintiffs will produce non-privileged documents and ESI reflecting communications concerning government investigations of Air Cargo Carriers regarding their pricing, including Surcharges, for Air Cargo Services.

Request No. 20: Plaintiffs will produce non-privileged documents and ESI provided to the U.S. Department of Justice ("DOJ") in connection with any DOJ investigation of Air Cargo Carrier pricing for Air Cargo Services, for shipments to or from the U.S.

Request No. 21: Defendants have expressed a willingness to drop this Request, pending Plaintiffs' responses to other Requests. Plaintiffs agree that this Request should be dropped, and will not produce documents relating to antitrust compliance policies, since Plaintiffs' antitrust compliance policies are irrelevant and outside the scope of this case.

Request No. 22: Plaintiffs will produce non-privileged documents and ESI regarding any index used by any Air Cargo Carrier or any Air Cargo Carrier association for pricing, including Surcharges, on routes to or from the U.S.

Request No. 23: Plaintiffs will not produce fuel surcharge announcements issued by Plaintiffs, if any, since such announcements are irrelevant and fall outside the scope of this case.

Request No. 24: Plaintiffs will not produce documents reflecting how they made pricing determinations to their customers, since the prices charged for Freight Forwarding Services to Plaintiffs' customers are wholly irrelevant, outside the scope of this case, and would be unduly burdensome to produce.

Request No. 25: Defendants have expressed a willingness to drop this Request, pending Plaintiffs' responses to other Requests, specifically Request No. 13. Plaintiffs are already engaged in separate negotiations with Defendants regarding Request No. 13. Nonetheless, to the extent that they are not duplicative, Plaintiffs will additionally produce non-privileged documents and ESI sufficient to show purchases or sales of airfreight shipping services upon which Plaintiffs base their claims, subject to Defendants' limitations that the Requests should not be interpreted to call for the production of documents that solely request or state a price, rate or Surcharge for Air Cargo Services, *i.e.*, a rate request for a particular route and date.

# Labaton Sucharow

Heather L. Kafele
July 29, 2010
Page 6


Request No. 26: Plaintiffs will not produce documents and ESI sufficient to show the identities of Plaintiffs' customers and contracts with those customers. Such downstream documents are generally irrelevant. Plaintiffs will, however, produce any pre-existing cost plus, fixed quantity contracts they have, if any, with their customers regarding the price of Air Cargo Services for shipments to or from the U.S.

Request No. 27: Plaintiffs will produce settlement agreements between Plaintiffs and entities other than Defendants propounding these Requests, based on, or related to, the facts alleged in the Complaint.

Request No. 28: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI will be produced accordingly.

Request No. 29: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI will be produced accordingly.

Request No. 30: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI will be produced accordingly.

Request No. 31: As is set forth above, in Section II, this Request is not in dispute. Responsive non-privileged documents and ESI will be produced accordingly.

Request No. 32: We will not produce documents sufficient to show Plaintiffs' revenues, profits and margins from sales of Freight Forwarding Services. Such downstream documents are irrelevant and outside the scope of this case. See further our response to Request 3, above.

Request No. 33: Plaintiffs will produce non-privileged, non-public documents and ESI other than what has been and is already being produced by parties propounding these Document Requests.

Request No. 34: Plaintiffs will produce non-privileged, non-public documents and ESI other than what has been and is already being produced by parties propounding these Document Requests.

Request No. 35: Plaintiffs will produce non-privileged, non-public documents and ESI other than what has been and is already being produced by parties propounding these Document Requests.

Request No. 36: Plaintiffs will produce non-privileged, non-public documents and ESI other than what has been and is already being produced by parties propounding these Document Requests.

Request No. 37: Plaintiffs are unable to ascertain the types of documents Defendants seek as responsive to this Request, and ask for your guidance. Do Defendants seek Co-Lead Counsels' firm resumes?

# Labaton Sucharow

Heather L. Kafele
July 29, 2010
Page 7

Request Nos. 38: Plaintiffs will produce non-privileged, non-public documents and ESI other than what has been and is already being produced by parties propounding these Document Requests.

Request Nos. 39-41: Plaintiffs have addressed these Requests by way of a separate letter to James Warnot, dated June 4, 2010.

Request No. 42: Plaintiffs will produce non-privileged documents and ESI sufficient to explain the record layout of, or codes used, in ESI produced pursuant to these Requests.

## IV.  Proposal to Narrow Requests

Defendants purport to limit their Requests relating to downstream information. Plaintiffs maintain our position that downstream documents are patently irrelevant to this litigation, thus Plaintiffs will not produce downstream data.

Additionally, Defendants claim to narrow the number of individuals whose documents must be searched. However, your proposal is illusory: rather than truly limiting the number of potential custodians, your request for a search of selected custodians, *i.e.,* officers and directors, individuals directly responsible for dealing with customers, and central or shared files, in fact expands this search to the entirety of certain of the Plaintiffs' businesses. If Defendants truly wish to narrow the universe of documents and custodians, as you claim, please submit a revised proposal during our next meet and confer.

\*   \*   \*

Plaintiffs agree that a meet and confer is needed. Please propose dates and times that work with yours schedules.

Very truly yours,

*Hollis L. Salzman*   \mrf
Hollis L. Salzman

CC:   Gary Specks
      William Butterfield
      Austin Cohen