## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

IN RE

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION

MDL No. 1775

Master File 06-MD-1775 (JG) (VVP)

THIS DOCUMENT RELATES TO:
All Actions

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANTS
## SCANDINAVIAN AIRLINES SYSTEM AND SAS CARGO GROUP A/S

Dated:   September  22, 2010

## TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

I.     INTRODUCTION ....................................................................................... 1

II.    BACKGROUND ........................................................................................ 2

       A.     The Litigation.................................................................................. 2

       B.     The Settlement Agreement ............................................................. 3

              1.     The Settlement Class........................................................... 4

              2.     The Settlement Fund ........................................................... 4

              3.     The Cooperation Provisions................................................ 5

                     a.     Witnesses .................................................................. 5

                     b.     Documents ................................................................ 5

                     c.     Meetings with Counsel ............................................. 6

              4.     The Release ......................................................................... 4

              5.     MFN Provisions .................................................................. 7

              6.     Provisional Opt-Out Reduction .......................................... 7

III.   ARGUMENT .............................................................................................. 8

       A.     The Settlement of Complex Litigation Is Favored ........................ 8

       B.     The Proposed Settlement Exceeds the Standards for Preliminary
              Approval ......................................................................................... 8

              1.     The Proposed Settlement Is the Result of Arduous, Arm's Length
                     Negotiations Conducted by Highly Experienced Counsel ....... 10

              2.     The Proposed Settlement Falls Within the Range of Possible
                     Approval ............................................................................. 11

       C.     The Proposed Settlement Class Should Be Certified Pursuant to Rule 23 .......... 14

              1.     The Proposed Settlement Class Meets the Requirements of
                     Rule 23(a) ........................................................................... 15

| | | | |
|---|---|---|---|
| | a. | The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court | 15 |
| | b. | Plaintiffs and the Settlement Class Share Common Legal and Factual Questions | 16 |
| | c. | Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class | 17 |
| | d. | Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class | 18 |
| 2. | | The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) | 19 |
| | a. | Common Questions of Law and Fact Predominate | 19 |
| | b. | A Class Action Is the Superior Method to Adjudicate These Claims | 20 |
| D. | | Notice to the Class | 20 |
| IV. | | PRELIMINARY APPROVAL ORDER | 24 |
| V. | | CONCLUSION | 25 |

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................19

*Barone v. Safway Steel Prods., Inc.*,
    No. CV-03-4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005) ...................19

*Carlough v. Amchem Prods., Inc.*,
    158 F.R.D. 314 (E.D. Pa. 1993) ..............................................................21

*Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York*,
    198 F.R.D. 41 (E.D.N.Y. 2000) ...............................................................19

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..............................................................10, 14

*Edge v. C. Tech Collections, Inc.*,
    203 F.R.D. 85 (E.D.N.Y. 2001) ...............................................................15

*Gross v. Wash. Mut. Bank, F.A.*,
    02 CV 4135, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ..............................15

*In re Air Cargo Shipping Serv. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006) ...........................................................11, 18

*In re Air Cargo Shipping Serv. Antitrust Litig.*,
    No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ...............8, 10, 11, 18, 23

*In re Ampicillin Antitrust Litig.*,
    82 F.R.D. 652 (D.D.C. 1979) ..................................................................13

*In re Buspirone Patent Litig.*,
    210 F.R.D. 43 (S.D.N.Y. 2002) ...............................................................20

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995) ...........................................................12

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) ...................................................................18

*In re Global Crossing Sec. R. ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................... *passim*

*In re Indep. Energy Holdings,*
    210 F.R.D. 476 (S.D.N.Y. 2002) ......................................................................15

*In re Initial Public Offering Sec. Litig.,*
    260 F.R.D. 81 (S.D.N.Y. 2009) ......................................................................11

*In re Joint E. & S. Dists. Asbestos Litig.,*
    878 F. Supp. 473 (E.D.N.Y. 1995) ................................................................10

*In re Medical X-Ray Film Antitrust Litig.,*
    No. CV 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ...................9

*In re Michael Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................12

*In re NASDAQ Mkt. Makers Antitrust Litig.,*
    176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................1, 8, 9, 11

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................10, 12

*In re Nig. Charter Flights Contract Litig.,*
    233 F.R.D. 297 (E.D.N.Y. 2006) ...................................................................20

*In re Paine Webber Ltd. P'ship Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................10

*In re Playmobil Antitrust Litig.,*
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) .............................................................17

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001) ..........................................................................18

*In re Visa Check/Mastermoney Antitrust Litig.,*
    297 F. Supp. 2d 503 (2003) ...........................................................................14

*In re WorldCom Inc. Secs. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........................................................21

*Kapps v. Wing,*
    283 F. Supp. 2d 866 (E.D.N.Y. 2003) ...........................................................18

*Larsen v. JBC Legal Group, P.C.,*
    235 F.R.D. 191 (E.D.N.Y. 2006) ...................................................................19

*Marisol A. by Forbes v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997) ............................................................................16

*Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,*
    938 F. Supp. 1131 (E.D.N.Y. 1996) ...............................................................14

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ........................................................................................23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
    237 F.R.D. 26 (E.D.N.Y. 2006) ...............................................................16, 17

*W. Va. v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970) .............................................................12, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ..........................................................................9, 21

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ..............................................................................14

## FEDERAL STATUTES

15 U.S.C. § 1 ...............................................................................................................2

Federal Rule of Civil Procedure 23 .................................................................... *passim*

## I.   **INTRODUCTION**

Plaintiffs have negotiated a $13.93 million settlement with Defendants Scandinavian Airlines System and SAS Cargo Group A/S (collectively, "SAS").   Because this settlement was negotiated at arm's length by experienced counsel and is in the range of possible approval, the Court should grant preliminary approval and authorize the dissemination of notice to class members.

In addition to a cash payment of $13.93 million, the settlement provides notice costs up to $500,000 and meaningful cooperation that should assist Plaintiffs in prosecuting their claims against the non-settling Defendants.   Plaintiffs seek preliminary approval of this settlement because it is an excellent result for the proposed settlement class (the "Settlement Class"). At the preliminary approval stage, the Court is simply determining if, on its face, the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard" or, put another way, making sure that the settlement is within the range of *possible* approval. *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*").

As set forth in detail below, because the settlement provides substantial monetary and non-monetary relief to the Settlement Class, it is well within the range of possible approval and should be preliminarily approved by this Court under Rule 23(e).   In addition, because the Settlement Class meets the requirements of Rule 23 and the proposed Notice Plan will provide the best notice practicable under the circumstances, this Court should certify the Settlement Class and approve dissemination of notice in the manner and form proposed herein.

## II.   **BACKGROUND**

### A.   **The Litigation**

The Consolidated Amended Complaint filed in February 2007 named more than two dozen defendant air carriers. Plaintiffs alleged that Defendants conspired to unlawfully fix prices of Airfreight Shipping Services worldwide, including on cargo shipments to, from and within the United States, by, among other things, concertedly levying agreed-upon, artificially inflated surcharges thereon, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Additional Defendants were named in Complaints filed on February 12, 2010 and July 26, 2010. *See* Civil Action No. 10-CV-0639, Docket Entry No. 1; Civil Action No. 10-CV-3398, Docket Entry No. 1.

On July 21, 2008, SAS pled guilty to a criminal information brought by the United States charging that, from on or about February of 2002, and continuing at least until February 14, 2006, SAS joined and participated in a combination and conspiracy with one or more carriers to suppress and eliminate competition by fixing one or more components of the cargo rates charged to Airfreight Customers for air shipments, including shipments to and from the United States, in violation of Section 1 of the Sherman Act.

On September 25, 2009, the District Court issued a memorandum and order granting final approval to Plaintiffs' settlement with defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (collectively "Lufthansa"). In the settlement, Lufthansa agreed to, among other things, pay $85 million, pay the cost of providing notice to the class and provide substantial cooperation. The Court approved a settlement class that included both direct and indirect purchasers.

On November 18, 2009, the District Court entered a Scheduling Order that established a schedule for discovery including the production of documents that Defendants had previously

2

produced to the United States Department of Justice the ("DOJ") in connection with its ongoing investigation of Air Cargo Shipping Services. Under the Scheduling Order, Defendants, including SAS, for the most part began production of their grand jury documents in December of 2009.

On July 14, 2010, Plaintiffs filed a motion for preliminary approval of a settlement with Defendants Société Air France ("Air France"), Koninklijke Luchtvaart Maatschappij N.V. ("KLM"), and Martinair Holland N.V. ("Martinair") (collectively "Air-France-KLM") (Docket No. 1209). The Air France-KLM settlement, among other things, provided for Air France-KLM to pay $87 million, pay up to $500,000 for the cost of providing notice to the class, and provide substantial cooperation. There is substantial overlap in the terms and conditions of the Air France-KLM settlement and the settlement that has been reached between Plaintiffs and SAS. On July 20, 2010, Plaintiffs filed a motion for preliminary approval of a settlement with Defendant Japan Airlines International Co., Ltd. ("JAL") (Docket No. 1211), under which, among other things, JAL will pay $12 million. Shortly thereafter, on July 26, 2010, Plaintiffs filed a motion for preliminary approval of settlement with AMR Corporation and American Airlines, Inc. (collectively, "AA") (Docket No. 1215), under which, among other things, AA agrees to pay $5 million. On September 8, 2010, the Court granted these motions. *See* Civil Action No. 06-MD-1775, Docket Nos. 1254 (the "AF-KLM Preliminary Approval Order"), 1255 (the "JAL Preliminary Approval Order") and 1256 (the "AA Preliminary Approval Order").

On September 10, 2010, SAS (a much smaller carrier than Lufthansa, Air France or KLM) agreed to pay (and has paid) $13.93 million in settlement.

**B.** **The Settlement Agreement**

The Settlement Agreement, attached hereto as Exhibit A, includes the following material terms:

3

1.    **The Settlement Class**

The Settlement Agreement defines the Settlement Class as follows:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from the Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

Settlement Agreement ¶ 26. [1]

2.    **The Settlement Fund**

Pursuant to the terms of the Settlement Agreement, on September 16, 2010, SAS paid the full Settlement Amount of $13.93 million into an interest-bearing Escrow Account. *See* Settlement Agreement ¶ 35. All interest earned on the Settlement Fund shall become and remain part of the Settlement Fund. *Id.*, ¶ 40.

Further, the Settlement Agreement provides that SAS will pay up to $500,000 toward all reasonable costs of disseminating notice of the settlement, including the cost of notice administration. *Id.*, ¶ 36. Pursuant to the terms of the Settlement Agreement, within ten (10) days after the Preliminary Approval Date, SAS will wire $100,000 of the $500,000 to be used for notice costs into the Notice Fund. *Id.*, ¶ 37. If additional funds are required to cover notice costs relating to this settlement, SAS will wire the additional amount into the Notice Fund within

---

[1] As defined in the Settlement Agreement, the term "Defendant" means any party named as a defendant in the First Consolidated Amended Complaint, in the Complaints filed on February 12, 2010 and July 26, 2010, or named thereafter as a defendant up to and including as of the preliminary approval date, and including Deutsche Lufthansa AG, Lufthansa Cargo AG and Swiss International Airlines, Ltd. *See* Settlement Agreement, ¶ 8. The Settlement Class is identical to the Settlement Classes approved by the Court in its preliminary approval orders with respect to the Air France-KLM, JAL and AA settlements. *See* AF-KLM Prel. App. Order, ¶ 3; JAL Prel. App. Order, ¶ 3; AA Prel. App. Order, ¶ 3.

forty-eight (48) hours of receiving written notification that additional funds are required. *Id.*, ¶ 37. Any unused portion of the Notice Fund will be returned to SAS. *Id.*, ¶ 37.

### 3.      The Cooperation Provisions

SAS has agreed to provide extensive cooperation to the Settlement Class that will aid in the prosecution of antitrust claims against the remaining Defendants. The extent of this cooperation can be summarized as follows:

#### a.      Witnesses

SAS has agreed, for the purpose of interviews, depositions, affidavits, and trial testimony, to use all reasonable efforts to provide Co-Lead Counsel with access, without subpoena, to up to six current and former directors, officers, and employees whom Co-Lead Counsel, in consultation with counsel for SAS, reasonably and in good faith believe to have knowledge regarding Plaintiffs' claims alleged in this action. *Id.*, ¶ 56. In addition, SAS has agreed to use all reasonable efforts to make two witnesses who were excluded from SAS's plea agreements with the DOJ, available for interviews, depositions and testimony at hearings or trial (such cooperation may be postponed until resolution of any criminal antitrust exposure). *Id.*, ¶¶ 56, 57. Also, if Settlement Class Counsel show good cause, SAS agrees to make additional persons available for interviews, depositions, affidavits, and trial testimony. *Id.*, ¶ 56.

#### b.      Documents

Beginning within ten days, and to be completed within ninety days, after Plaintiffs file their motion for preliminary approval, SAS will produce the following categories of documents and information: (i) follow-up information in response to questions Plaintiffs may have concerning the transaction data in electronic form previously produced by SAS; (ii) cost data through March 31, 2009 to the extent it was not previously produced; (iii) all price announcements for surcharges for Airfreight Shipping Services from January 1, 1997 through

5

March 31, 2009;   (iv) all documents produced to the European Commission during its investigation of the air cargo industry which relate to Airfreight Shipping Services; and (v) available English translations of foreign language documents that were produced by SAS. *Id.*, ¶¶ 52(a)-(e).

**c.     Meetings with Counsel**

SAS has agreed to make its lead counsel available for up to a total of three meetings, plus reasonable follow-up conversations, with Co-Lead Counsel to provide information regarding documents, witnesses, meetings, communications, and events relevant to the action. *Id.*, ¶ 55.

**4.     The Release**

In exchange for the monetary and other consideration paid by SAS, Settlement Class members would release, acquit, and forever discharge SAS and current and former officers, directors and employees from any and all claims, demands, actions, suits and causes of action, damages and liabilities of any nature against SAS arising from or in any way concerning the direct purchase from SAS or any other defendant of Airfreight Shipping Services to, from or within the United States concerning the pricing, selling, discounting or marketing of Airfreight Shipping Services for shipments to, from or within the United States, including without limitation, claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the First Consolidated Amended Complaint filed in the action or otherwise the subject of that litigation, which arise under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing trade practice, consumer protection, unjust enrichment, or civil conspiracy law or any other law, code, rule, or regulation of any country or jurisdiction worldwide.[2]  However, there is no release of any claims (a) involving any negligence, breach of

---

[2] The full language of the release provisions is found at ¶¶ 32-34 of the Settlement Agreement. The release is identical to that contained in the Air France-KLM Settlement Agreement.

contract, bailment, failure to deliver, lost goods, damages or delayed goods or similar claim between any of the Released Parties and any of the Releasing Parties relating to Airfreight Shipping Services and/or (b) made with respect to any indirect purchase of Airfreight Shipping Services. *Id.*, ¶ 32.

### 5. MFN Provisions

The Settlement Agreement has reciprocal Most Favored Nation ("MFN") provisions that provide: (1) Plaintiffs with additional funds if SAS settles on more favorable terms with other direct purchasers who exclude themselves from the Settlement Class; and (2) SAS with a refund if the Plaintiffs settle with certain other Defendants on monetary terms more favorable to the later settling Defendant. *Id.*, ¶¶ 45, 46. The Settlement Ratio to determine whether any additional payments or refunds are required is the same ratio as under the Air France-KLM settlement agreement. *Id.*, ¶¶ 45(d), 46(c).

The MFNs do not apply to settlements reached with a party within sixty days of the scheduled date for the commencement of trial or two-and-a-half years from the date of the SAS Settlement Agreement, whichever occurs first. *Id.*, ¶¶ 45(e), 46(d). Also, the MFN in favor of SAS does not apply to any future settlements Plaintiffs enter into with Defendants who did not plead guilty in the United States to Section 1 Sherman Act violations or to settlements with individual (not corporate) defendants. *Id.*, ¶¶ 45(a), (e).

### 6. Provisional Opt-Out Reduction

To the extent that any member of the Settlement Class elects to opt-out of the Settlement Class, funds totaling the opt-out's representative share of the Settlement Fund will be transferred to separately established opt-out escrow accounts – Opt-Out Escrow Accounts I and II. *Id.*, ¶ 47. During the opt-out retention periods (Settlement Agreement, ¶ 47(f), (g)), if SAS pays an opt-out plaintiff to settle its claim, SAS will be entitled to a *pro rata* payment from the opt-out escrow

accounts. *Id.*, ¶ 47(e). At the expiration of the opt-out retention periods, the balance of the funds in the two opt-out escrow accounts revert to the Settlement Fund.

## III.   ARGUMENT

### A.   The Settlement of Complex Litigation Is Favored

Plaintiffs and SAS have reached an agreement that provides a recovery and guarantees significant cooperation from SAS in the prosecution of Plaintiffs' claims against the non-settling Defendants. Having negotiated for a substantial cash payment from SAS to the Settlement Fund as well as significant other benefits, Plaintiffs have avoided the potential risks inherent in complex antitrust class action litigation and secured a favorable settlement for the Settlement Class. Reaching such a positive result at this stage in the litigation only enhances the attractiveness of this settlement. *See In re Global Crossing Sec. R. ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). While reviewing this proposed settlement, the Court should be mindful of the "general public policy favoring settlement." *In re Air Cargo Shipping Serv. Antitrust Litig.*, No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (approving the Lufthansa settlement); *see also* Report and Recommendation, Civil Action No. 06-md-01775, Doc. No. 625 (the "Lufthansa Prel. App. R&R"), at 14.

### B.   The Proposed Settlement Exceeds the Standards for Preliminary Approval

When parties to a class action seek to settle, they must proceed before the Court in two steps – first, they must seek preliminary approval of the proposed class action as well as certification of the proposed settlement class and then, should such preliminary approval and class certification be granted, they must provide notice to the settlement class and appear at a fairness hearing after which time the Court may grant final approval to the settlement. *See Manual For Complex Litigation* (Fourth) § 21.63 (2004); *NASDAQ I*, 176 F.R.D. at 102.

Because the first step of this process is only "preliminary," the standards for preliminary approval are less exacting than those applied for final approval. "[T]he court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 U.S. Dist. LEXIS 82167, at *18 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Preliminary approval is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval." *NASDAQ I*, 176 F.R.D. at 102 (emphasis added).

In conducting this inquiry, a court considers both the negotiating process leading up to the settlement and the settlement's substantive terms. *In re Global Crossing*, 225 F.R.D. at 455. A court determines whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ I*, 176 F.R.D. at 102 (citations omitted). Preliminary approval should be granted "if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees." *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580 at *6 (E.D.N.Y. Dec. 26, 1997) (citing *NASDAQ I*, 176 F.R.D. 99, *and Manual for Complex Litigation,* Third 3d § 30.14).

The negotiations here were conducted by experienced counsel on both sides at arm's length and lasted over four years. *See* Decl. of Howard J. Sedran in Support of Plaintiffs' Motion for Preliminary Approval (the "Sedran Decl."), at ¶¶ 2, 4. Plaintiffs' counsel were well informed of the material facts and the negotiations were non-collusive. *See id.*, at ¶¶ 3-4. Furthermore, the significant cooperation to be provided in addition to the $13.93 million cash

payment makes this settlement fall well within the range of possible approval. Based upon these facts, preliminary approval is warranted and as will be demonstrated in detail at the final fairness hearing, this settlement is a "fair, reasonable, and adequate" settlement of the class claims. *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).[3]

### 1. The Proposed Settlement Is the Result of Arduous, Arm's Length Negotiations Conducted by Highly Experienced Counsel.

The process that led to this proposed settlement was fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients and the Settlement Class. When counsel engage in a lengthy arm's length negotiation that results in a settlement, courts are clear that the settlement is entitled to a presumption of fairness. *See In re Air Cargo Shipping Serv. Antitrust Litig.,* 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair because it was the product of arm's length negotiations between experienced and capable counsel"); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*"). Furthermore, when the settlement that results from such long and difficult negotiations is being championed by experienced and informed counsel, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself. *See In re Joint E. & S. Dists. Asbestos Litig.,* 878 F. Supp. 473, 567 (E.D.N.Y. 1995) ("A substantial factor in determining the fairness of a settlement is the opinion of counsel involved in the settlement" (citations omitted)); *In re Paine Webber Ltd. P'ship Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997). The process that led to this settlement confirms that the initial presumption of fairness is correct.

---

[3]     There are nine factors that courts consider in evaluating a settlement's substantive terms at final approval. *See Grinnell Corp.,* 495 F.2d at 463. The Court has recognized there is little to be gained by applying the *Grinnell* factors at the preliminarily approval stage. *See Bourlas,* 2006 WL 2513021, at *7 n.7. As a result, they are discussed herein only when they provide a useful guide to assess the settlement's fairness even at this stage.

The Court has found that Co-Lead Counsel are highly capable and have the requisite qualifications and experience to handle this litigation. *See* Lufthansa Prel. App. R&R, at 8-9; *see also In re Air Cargo Shipping Serv. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *In re Air Cargo Shipping Serv. Antitrust Litig.*, 2009 WL 3077396, at *7. In this case, the basic terms of the Settlement Agreement were negotiated with extensive back and forth over the course of four years. *See* Sedran Decl., at ¶ 2. During this period of time in which negotiations were intermittently ongoing, there were many in-person meetings as well as numerous telephone calls and email exchanges concerning the settlement terms. *See* Sedran Decl., at ¶ 4. The meetings were meaningful and informed as Co-Lead Counsel took many steps to insure that they had all of the necessary information to advocate for a fair settlement that served the best interests of the Settlement Class. Co-Lead Counsel analyzed and evaluated all of the contested legal and factual issues posed by the litigation so that adequate demands and accurate evaluation of SAS's positions could be made. *See* Sedran Decl., at ¶¶ 3-4; *see also In re Air Cargo Shipping Serv. Antitrust Litig.*, 2009 WL 3077396, at *7 (discussing negotiation process arriving at Lufthansa settlement).

## 2.    The Proposed Settlement Falls Within the Range of Possible Approval.

To preliminarily approve this settlement, the Court must decide that the proposed settlement falls within the range of settlement that could *possibly* be approved as "fair, adequate and reasonable." *NASDAQ I*, 176 F.R.D. at 102. The settlement here contains a substantial cash payment of $13.93 million in addition to the payment of expenses related to notification of the class as well as non-cash benefits that will ultimately enhance Plaintiffs' chances of recovery from the remaining non-settling defendants. These benefits have been obtained at a stage in the litigation where the non-monetary benefits will be helpful. *See In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 118 (S.D.N.Y. 2009) ("It is undisputed that the economic landscape has

11

changed dramatically even in the last year, affecting the capability of many of the defendants to pay a large recovery in these actions."). Under these circumstances and considering these benefits, the proposed settlement represents an excellent result for members of the Settlement Class.

Continuing this litigation against SAS would entail a lengthy and highly expensive legal battle, involving complex legal and factual issues where motions would be vigorously contested. The discovery process would be complicated by the unique issues that attend discovery against foreign parties. Of course, at trial, SAS would assert defenses making the outcome of trial uncertain for both parties because it would turn on questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages.[4] *See NASDAQ II*, 187 F.R.D. at 475-76; *see also W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). Moreover, even after trial is concluded, there could potentially be one or more lengthy appeals. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993). Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Furthermore, because liability under the Sherman Act is joint and several, this settlement in no way prejudices the Class's ability to recover its full treble damages caused by the alleged conspiracy. Under the Settlement Agreement, SAS's sales remain in the case as a source of damages to be paid by the non-settling defendants due to their joint and several liability. The

---

[4]     Because Co-Lead Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a full discussion of their potential litigation risks.

Settlement Agreement secures SAS's immediate and substantial cooperation in prosecuting the Settlement Class members' claims against the non-settling Defendants. It requires them to immediately and diligently cooperate by providing factual proffers, interviews, documents, depositions, and trial testimony, as well as by meeting with Plaintiffs' counsel to identify relevant avenues of discovery. Thus, if approved, the settlement with SAS could well hasten the Class's recovery by providing Plaintiffs with access to information that might otherwise be obtainable only through protracted discovery. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case against [a non-settling defendant] will prove invaluable to the plaintiffs").

Measured by surcharges, this settlement represents nearly 11% of SAS's surcharges while the Lufthansa settlement, previously found to be "fair, reasonable and adequate," represented 10.5% percent of surcharges. Moreover, the settlement amount is equal to the amount required under the Most Favored Nation ("MFN") provision of the Settlement Agreement between Plaintiffs and Air France-KLM in order for Plaintiffs to avoid the obligation to return any funds to the Air France-KLM Settling Defendants. That amount is 6.57% of SAS's 2004-2005 sales of Airfreight Shipping Services.[5]

---

[5]      Under the AF-KLM MFN, AF-KLM would be entitled to a refund if a subsequent settlement entered into between Plaintiffs and a defendant that plead guilty to price-fixing charges in the United States did not equal 6.57% of the settling defendant's 2004-2005 sales of Airfreight Shipping Services.

Based upon the foregoing, the Settlement Agreement is well within the *possible* range of approval as a "fair, reasonable, and adequate" settlement of the Settlement Class's claims.   *See Grinnell Corp.,* 495 F.2d at 463.[6]

## C.   <u>The Proposed Settlement Class Should Be Certified Pursuant to Rule 23</u>

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See* Lufthansa Prel. App. R&R, at 2-3; *see also Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982); *In re Global Crossing,* 225 F.R.D. at 451.   A court may grant certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) as well as one of the three subsections of Rule 23(b). *See* Lufthansa Prel. App. R&R, at 3; *see also Weinberger,* 698 F.2d at 73; *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,* 938 F. Supp. 1131, 1140 (E.D.N.Y. 1996).   Here, Plaintiffs seek certification of the following class:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from the Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

Settlement Agreement ¶ 26.   This Court previously certified a broader Settlement Class that also includes indirect purchasers when it preliminarily and then finally approved the Lufthansa settlement, *see* Lufthansa Prel. App. R&R, at 3-13, and the Court has preliminarily approved the Air France-KLM, JAL and AA settlements which have identical Settlement Classes. The factual and legal support for certification of the Lufthansa settlement class and the settlement class for

---

[6]     *See also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (2003) (fact that the class faced a long trial and the additional time it would take to exhaust all appeals "weigh[ed] heavily in favor of approving the Settlements").

the other settlements apply equally here as set forth below. *See* AF-KLM Prel. App. Order, ¶ 4 (identical class certified); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same).

### 1.   The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### a.   *The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court*

First, Rule 23(a) requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1); *see also Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001). While no magic number exists for satisfying the numerosity requirement and the plaintiff is not required to allege the exact number or identity of class members, "[c]ourts in this circuit generally 'find a class sufficiently numerous when it comprises forty or more members.'" Lufthansa Prel. App. R&R, at 5 (quoting *In re Indep. Energy Holdings*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002)); *see also Gross v. Wash. Mut. Bank, F.A.*, 02 CV 4135, 2006 WL 318814 at *2 (E.D.N.Y. Feb. 9, 2006) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Courts generally consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits when determining whether the numerosity requirement is met. *See Mascol v. E&L Transp., Inc.*, CV-03-3343, 2005 U.S. Dist. LEXIS 32634, at *12 (E.D.N.Y. June 30, 2005).

Here, the proposed Settlement Class consists of persons and entities who directly purchased Airfreight Shipping Services from the Defendants during the period from January 1, 2000 to September 11, 2006. Based on the thousands of persons and entities that fall within the Settlement Class definition and the fact that joinder of these persons is impracticable, the numerosity requirement is satisfied here. *See generally* Lufthansa Prel. App. R&R, at 6; *see also* AF-KLM Prel. App. Order, ¶ 4 (numerosity satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same).

### b. *Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.*

Second, Rule 23(a) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); *see also* Lufthansa Prel. App. R&R, at 6; *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006). The commonality element "may be found when 'injuries derive from a unitary course of conduct by a single system.'" Lufthansa Prel. App. R&R, at 6 (quoting *Reade-Alvarez*, 237 F.R.D. at 32). The commonality element "'does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *In re Global Crossing*, 225 F.R.D. at 451 (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)); *see also Reade-Alvarez*, 237 F.R.D. at 32; *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

Here, Plaintiffs' allegations raise questions of law and fact common to the proposed Class, including, for example: whether Defendants engaged in a combination or conspiracy to fix, raise, maintain, and/or stabilize prices of airfreight cargo shipping services for shipments to, from, or within the United States; the duration of the conspiracy alleged in the Complaint and the nature and character of the acts performed by Defendants in furtherance of the conspiracy; whether the alleged conspiracy violated Section 1 of the Sherman Act; and the effect of Defendants' alleged conspiracy on the price of airfreight cargo shipping services, and whether the alleged conspiracy caused injury to the businesses or property of Plaintiffs and the other members of the Class.

The overarching allegation in the Consolidated Amended Complaint is that Defendants have engaged in an illegal cartel designed and intended to fix the prices of Airfreight Shipping

Services. Proof of this unlawful cartel is common to all members of the Class. *See* Lufthansa Prel. App. R&R, at 6-7; *see also* AF-KLM Prel. App. Order, ¶ 4 (commonality satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same)..

c. ***Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.***

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied where, as here, the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, and the claims are based on the same legal theories. *See Reade-Alvarez,* 237 F.R.D. at 32; *see also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998). "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'" *In re Global Crossing,* 225 F.R.D. at 452 (citation omitted).

Here, the claims of the representative Plaintiffs are typical when compared to those held by the members of the Settlement Class. Plaintiffs have alleged that the Defendants created and maintained an illegal cartel in the Airfreight Shipping Services industry, which artificially raised the prices of Airfreight Shipping Services. Such claims of the representative Plaintiffs, like those of the members of the Settlement Class, arise out of the same alleged illegal anticompetitive conduct by the same Defendants and are based on the same legal theories. *See* Lufthansa Prel. App. R&R, at 8 (finding typicality element met); *see also* AF-KLM Prel. App. Order, ¶ 4 (typicality satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same).

> **d.      Settlement Class Counsel and Representative Plaintiffs**
> **Will Fairly and Adequately Protect the Interests of the**
> **Class.**

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4).  As the Second Circuit has stated, "adequacy of representation is measured by two standards.   First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.   Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 142 (2d Cir. 2001).

Both requirements are satisfied here.  As this Court has already found, Settlement Class Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation. *See* Lufthansa Prel. App. R&R, at 8-9; *see also In re Air Cargo Shipping Serv. Antitrust Litig.,* 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *In re Air Cargo Shipping Serv. Antitrust Litig.,* 2009 WL 3077396, at *7.   Moreover, in reaching this Settlement Agreement, the interests of the Class members were adequately protected and were not in conflict. *See Kapps v. Wing,* 283 F. Supp. 2d 866, 873 (E.D.N.Y. 2003), (*vacated in part on other grounds,* 404 F.3d 105 (2d Cir. 2005)). All class members share an overriding interest in obtaining the largest monetary recovery possible from SAS. *See* Luthansa Prel. App. R&R, at 9-10; *see also In re Global Crossing,* 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members.  All share the common goal of maximizing recovery."). The Class members also share a common interest in obtaining SAS's early and substantial cooperation in prosecuting the claims against the non-settling Defendants. *See* AF-KLM Prel. App. Order, ¶ 4 (adequacy satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same).

## 2.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Once the four prerequisites of Rule 23(a) are met, as in this case, Plaintiffs must also show that the proposed settlement class satisfies the requirements of either Rule 23(b)(2) or Rule 23(b)(3). *See, e.g., Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006). Under Rule 23(b)(3), Plaintiff must first demonstrate that "questions of law or fact common to the class predominate over questions affecting individual members." *Barone v. Safway Steel Prods., Inc.*, No. CV-03-4258, 2005 WL 2009882 at *15 (E.D.N.Y. Aug. 23, 2005) (quoting Rule 23(b)(3)). Second, Plaintiffs must show that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.*. With respect to both requirements, the court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

### a.    *Common Questions of Law and Fact Predominate.*

"'[I]n cases involving allegations of a pure price-fixing conspiracy, common questions of law and fact generally predominate on all issues.'" Lufthansa Prel. App. R&R, at 11 (quoting *Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York*, 198 F.R.D. 41, 46 (E.D.N.Y. 2000)). Because Plaintiffs' claims allege a single global conspiracy from which all Plaintiffs' injuries arise, issues common to the class members – for example, the existence and scope of the alleged price-fixing conspiracy among Defendants, the impact of Defendants' conspiracy, and the amount of damage suffered by the class as a result of an alleged violation of Section 1 of the Sherman Act – predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or

19

violations of the antitrust laws."); *In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002).  Here, the predominance prong is satisfied.  *See* Lufthansa Prel. App. R&R, at 12; *see also* AF-KLM Prel. App. Order, ¶ 4 (predominance satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same).

### b.   *A Class Action Is the Superior Method to Adjudicate These Claims.*

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *In re Nig. Charter Flights Contract Litig.,* 233 F.R.D. 297, 301 (E.D.N.Y. 2006).  *See* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination).  The Court needs to consider "'the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.'"  Lufthansa Prel. App. R&R, at 1 2 (quoting *D'Alauro,* 168 F.R.D. at 458).  Here, the interests of Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Thousands of persons and entities purchased Airfreight Shipping Services during the class period and settling their claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery.  *See Fox,* 213 F.R.D. at 130.  The superiority requirement is satisfied.  *See* Lufthansa Prel. App. R&R, at 13; *see also* AF-KLM Prel. App. Order, ¶ 4 (superiority satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same).

### D.   <u>Notice to the Class</u>

Rule 23 requires that notice be given in a reasonable manner to all class members who would be bound by a proposed settlement prior to final approval of the settlement.  *See* Fed. R. Civ. P. 23.  Where, as here, notice of certification of the Settlement Class and notice of a

proposed settlement are combined, the more detailed provisions contained in Rule 23(c)(2)(B) apply: "The Court must direct to the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B); *see also Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324- 25 (E.D. Pa. 1993) (citing 5 H. Newberg and A. Conte, *Newberg on Class Actions* §§ 8.04, 8.21 (3d ed. 1992)).

Notice regarding a proposed settlement is adequate under both Rule 23 and due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," and it can "be understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114-15 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005) (internal quotation marks and citation omitted); *In re WorldCom Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 340 (S.D.N.Y. 2005).

This settlement is limited to a Settlement Class of direct purchasers from Defendants who purchased Airfreight Shipping Services for shipments to, from or within the United States. As part of the Lufthansa settlement process, all parties engaged in a discovery process directed to obtaining lists of Defendants' customers who shipped goods to, from or within the United States. For the most part, these lists consisted of direct purchasers of Airfreight Shipping Services who dealt directly with the Defendants. The Court found that the customer lists were sufficient to provide individual notice by mail to the Lufthansa settlement class. *See* Memorandum Approving Lufthansa Settlement Agreement at 6-7, October 6, 2009 (Document No. 963).

Plaintiffs propose using the same mailing list for notifying the SAS Settlement Class. To the extent Class members provided the Claims Administrator with new address information,

21

these addresses will be added to the mailing list. Additionally, Plaintiffs have obtained or are in the process of obtaining similar mailing lists from the newly added corporate defendants – Air India, Malaysia Airlines, EVA, China Airlines and American Airlines. This combined mailing list would be used to provide direct mail notice to the SAS Settlement Class.

Plaintiffs' proposed notice includes all of the information required by Rule 23 and due process. Plaintiffs notice will be a joint notice combining information concerning the (a) Air France-KLM settlement, (b) JAL settlement, (c) AA settlement, and (d) SAS settlement. *See* Exhibit 1 to Proposed Preliminary Approval Order. The proposed notice will also provide: (i) a description of the nature of the action; (ii) a the definition of the Settlement Class; (iii) a description of the Settlement Class' claims; (iv) a description of the Settlement Agreements, including the monetary consideration and cooperation provided to the Settlement Class; (v) a description of the release provided by the Settlement Class; (vi) the names of Settlement Class Counsel; (vii) the Fairness Hearing date; (viii) information about the Fairness Hearing; (ix) a statement that a member of the Settlement Class may enter an appearance through an attorney if the member so desires; (x) a description of the request for litigation expenses;[7] (xi) information about the deadline for filing objections to the Settlement Agreements and the request for litigation expenses; (xii) a statement of the deadline for filing requests for exclusion from the Settlement Class; (xiii) the consequences of exclusion; (xiv) the consequences of remaining in the Settlement Class; and (xiv) the manner in which to obtain further information about the proposed Settlement Agreements. And it will do so "clearly and concisely" in "plain, easily understood language," Fed. R. Civ. P. 23( c)(2)(B), using the format suggested by the Federal Judicial Center (www.fjc.gov).

---

[7] Plaintiffs will be requesting a total of $1 million for litigation expenses from the AF/KLM, JAL, AA and SAS settlement agreements – less than 1% of the combined settlement amounts.

Courts consistently have approved notices like the one to be proposed here.[8]  *See In re Air Cargo Shipping Serv. Antitrust Litig.*, 2009 WL 3077396, at *3-4.  This notice plan, which is identical to the plan approved by this Court on September 8, 2010, shall provide individual and publication notice to potential class members within and outside the United States.  Specifically, the plan will provide for individual notice, via first-class mail, to each potential Settlement Class member whose address is reasonably ascertainable from the Defendants' customer lists and to any purchaser of Airfreight Shipping Services who requests a copy of the Notice by writing to the Settlement Class Administrator or by dialing a toll-free number.  As discussed above, Plaintiffs already have an extensive database of airfreight shipping services customer names and addresses that was assembled to provide mailed notice of the Lufthansa Settlement.

In addition to individual notice, the program proposed by the Settling Parties includes publication of a summary notice ("Publication Notice") in the national and international edition of *The Wall Street Journal* and, to the extent practicable, certain trade publications identified in consultation with the Garden City Group.  *See* Exhibit 2 to Proposed Preliminary Approval Order; *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950) (publication is an acceptable means of providing adequate notice for those whose names and addresses cannot be determined through reasonable efforts) (quoted in *West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1090 (2d Cir. 1971)).  The notices also will be published on a website established for the purpose of this and the other pending settlements,

---

[8]  Unlike with the Lufthansa notice, a Claim Form will not be disseminated at this time. Plaintiffs' counsel expect to disseminate a new Claim Form in the future when other settlements are obtained, if any, so that Class Members will not be put to the burden of filling out numerous Claim Forms.  Also, the administrative tasks will be lessened by consolidating the future claims process.

www.aircargosettlementII.com.  Notice materials may also be viewed and downloaded from that website.

In sum, the notice plan proposed by the Parties meets the requirements of Rule 23, comports with due process, and will fairly apprise potential Settlement Class Members of the existence of the Settlement Agreement and their options under it.  *See* AF-KLM Prel. App. Order, ¶¶ 7-11 (discussing notice plan); JAL Prel. App. Order, ¶¶ 7-11 (same); AA Prel. App. Order, ¶¶ 7-11 (same).

## IV.  **PRELIMINARY APPROVAL ORDER**

Plaintiffs respectfully request that the Court:

1. Preliminarily approve the Settlement Agreement, that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the Settlement Class;

2. Certify the Settlement Class as defined in the Settlement Agreement, for purposes of settlement only pursuant to Federal Rule of Civil Procedure 23(c), and authorize Plaintiffs to represent the Settlement Class;

3. Order Settlement Class Counsel to disseminate notices to the Settlement Class ("Notice");

4. Determine, pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, that the giving of notice pursuant to the notice plan will constitute the best notice practicable of this proposed settlement, the fairness hearing, and the rights of the members of the Settlement Class with respect thereto, and that such notice thus satisfies the requirements of due process;

5. Approve The Garden City Group as Administrator of the Settlement, and Citibank as Escrow Agent pursuant to the Escrow Agreement;

6. Set deadlines for Class Members to serve and file any objections to the SAS Settlement Agreement;  and

7. Schedule a Fairness Hearing to determine the fairness, reasonableness, and adequacy of the Settlement and whether it should be finally approved by the Court.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Approval, certify the Settlement Class, and authorize the dissemination of notice. Plaintiffs are in the process of obtaining the customer lists from Air India, Malaysia Airlines, EVA and China Airlines. As soon as that task is complete, Plaintiffs will file a motion with the Court requesting that the various deadlines and a hearing date be determined and that the Class notices be approved for all of the pending settlements.

Dated:  September 22, 2010

Howard J. Sedran
Austin Cohen
Keith J. Verrier
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500

By:      /s/ Howard J. Sedran


Robert N. Kaplan (RK-3100)
Gregory K. Arenson (GA-2426)
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980

Gary L. Specks (GS-8767)
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585

By:      /s/ Robert N. Kaplan


Respectfully Submitted,

Michael D. Hausfeld
William Butterfield
Brent Landau
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
(202) 540-7200

By:      /s/ Michael D. Hausfeld


Hollis L. Salzman (HS-5994)
Jay L. Himes (JLH-7714)
Gregory S. Asciolla, Esq. (GA-2222)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
(212) 907-0700

By:      /s/ Hollis L. Salzman

# Exhibit

## "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

IN RE: AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION

MDL No. 1775

**Master File 06-MD-1775 (JG) (VVP)**

ALL CASES

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of this

10th day of September, 2010 (the "Execution Date"), by and between Scandinavian Airlines

System and SAS Cargo Group A/S (collectively referred to herein as "Settling Defendant") and

plaintiff class representatives Benchmark Export Services, FTS International Express, Inc.,

R.I.M. Logistics, Ltd., Ralph Olarte d/b/a/ Olarte Transport Services, S.A.T. Sea & Air

Transport, Inc. and Volvo Logistics AB (collectively, "Plaintiffs"), both individually and on

behalf of a class of persons who purchased Airfreight Shipping Services for shipments to, from

or within the United States directly from the Settling Defendant or any of the other Defendants in

the Action as defined herein during the period from January 1, 2000, up to and including

September 11, 2006.

WHEREAS, Plaintiffs are prosecuting the Action on their own behalf and on behalf of the

Settlement Class (as defined below);

WHEREAS, Plaintiffs allege that the Settling Defendant participated in an unlawful

conspiracy to raise, fix, maintain, or stabilize the price of Airfreight Shipping Services for

shipments to, from and within the United States at artificially high levels in violation of Section

1 of the Sherman Act;

1

WHEREAS, the Settling Defendant denies Plaintiffs' allegations and have asserted a number of defenses to Plaintiffs' claims;

WHEREAS, the Plaintiffs and the Settling Defendant agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission by or evidence against the Settling Defendant or any of its alleged co-conspirators or evidence of the truth of any of the Plaintiffs' allegations;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for the Settling Defendant, and this Agreement has been reached as a result of those negotiations;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with the Settling Defendant according to the terms set forth below is in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, the Action will continue against defendants that are not Released Parties (as defined herein);

WHEREAS, the Settling Defendant, despite its belief that it has good defenses to the claims alleged, has nevertheless agreed to enter into this Agreement to avoid the expense, inconvenience, and the distraction of potentially burdensome and protracted litigation;

WHEREAS, Plaintiffs recognize the benefits of the Settling Defendant's cooperation and recognize that, because of joint and several liability, this Agreement with the Settling Defendant does not impair Plaintiffs' ability to collect the full amount of damages to which they may be entitled in this Action; and

WHEREAS, the Settling Defendant has agreed to cooperate with Plaintiffs as set forth in this Agreement, and, therefore, will reduce Plaintiffs' burden and expense associated with prosecuting the Action.

NOW, THEREFORE, in consideration of the promises, mutual promises, covenants, agreements and releases set forth herein and for other good and valuable consideration, and incorporating the above recitals herein, it is agreed by and among the undersigned that claims that have been or could be asserted in the Action be settled and compromised as to the Settling Defendant and all other Released Parties, without costs as to Plaintiffs, the Settlement Class, or the Settling Defendant, subject to the approval of the Court, on the following terms and conditions.

A.      **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Action" means the action captioned *In re Air Cargo Shipping Services Antitrust Litigation*, 06-MD-1775 (JG)(VVP) (E.D.N.Y.), which is currently pending in the United States District Court for the Eastern District of New York, and including all actions filed in or transferred to the Eastern District of New York for consolidation and/or coordination with the above-captioned multidistrict litigation, all actions pending such transfer (including but not limited to "tag-along" actions), and specifically including the actions captioned *Benchmark Export Services et al. v. China Airlines Ltd.*, Case No. 10 Civ. 0639 (JG) (VVP) (E.D.N.Y.), *Benchmark Export Services et al. v. McCaffrey*, Case No. 10-CV-10253-NMG (D. Mass.), *Benchmark Export Services et al. v. De Jong,* Case No. 2:10-cv-00007-BO *(*E.D.N.C.), and *Benchmark Export Services et al. v. Sanfilippo*, Case No. 10-cv-01084 JFW (AGR) (C.D. Cal.)),

3

and all actions that may be transferred in the future, or are otherwise based on the conduct
alleged in the above-captioned multidistrict litigation.

2.     "Airfreight Shipping Services" means paid private air transport of freight or other
cargo by any airline acting as a provider of such services.

3.     "Claims" shall mean any and all actions, suits, claims, rights, demands, assertions,
allegations, causes of action, controversies, proceedings, losses, damages, injuries, attorneys'
fees, costs, expenses, debts, liabilities, judgments, or remedies, whether equitable or legal,
resulting from a direct purchase of Airfreight Shipping Services.

4.     "Class Member" means each member of the Settlement Class who does not timely
and validly elect to be excluded from the Settlement Class.

5.     "Class Period" means the period from and including January 1, 2000, up to and
including September 11, 2006.

6.     "Cooperation Materials" means any information or material produced by the
Settling Defendant under the terms of this Settlement Agreement.

7.     "Court" means the United States District Court for the Eastern District of New
York.

8.     "Defendant" means any party named as a defendant in the First Consolidated
Amended Complaint in the Action or named thereafter as a defendant in the Action up to and
including as of the Preliminary Approval Date, and also including Deutsche Lufthansa AG,
Lufthansa Cargo AG, and Swiss International Airlines, Ltd. (the last three collectively
"Lufthansa").

9.     "Document" is defined to be synonymous in meaning and equal in scope to the
usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including, without

4

limitation, electronically stored information.  A draft or non-identical copy is a separate document within the meaning of this term.

10.     "Effective Date" means the date that: (a) the Court has entered a final judgment approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action as against any Released Party who is named as a defendant in the Action with prejudice as to all Class Members and without costs; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Settlement Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times.

11.     "Escrow Account" means the accounts (the escrow account, Opt-Out Escrow Account I and Opt-Out Escrow Account II) established pursuant to the terms and conditions set forth in the escrow agreement to be entered into with Citibank N.A., subject to the approval of Plaintiffs and Settling Defendant.

12.     "Individual Defendant" means a defendant who is a natural person.

13.     "Opt-Out Percentage" means the dollar amount of Opt-Out Sales (as defined below) divided by the total dollar amount of direct sales of Airfreight Shipping Services by the Settling Defendant to the Settlement Class during the years 2004 through 2005.

14.     "Opt-Out Plaintiff" means a person, otherwise qualifying as a member of the Settlement Class, that has validly elected to be excluded from the Settlement Class.

5

15.     "Opt-Out Sales" means the dollar amount of direct purchases of Airfreight
Shipping Services to, from and within the United States by Opt-Out Plaintiffs directly from the
Settling Defendant during the years 2004 through 2005.

16.     "Plaintiffs" means Benchmark Export Services, FTS International Express, Inc.,
R.I.M. Logistics, Ltd.,  Ralph Olarte d/b/a Olarte Transport Services, S.A.T. Sea & Air
Transport, Inc. and Volvo Logistics AB.

17.     "Preliminary Approval Date" means the date on which the Court enters an order
granting preliminary approval of this Agreement.

18.     "Provisional Opt-Out Reduction" means the dollar amount reduction in the
Settlement Amount, determined by multiplying the Settlement Amount by the Opt-Out
Percentage.

19.     "Released Claims" shall refer to the claims described in Paragraph 32 of this
Agreement.

20.     "Released Parties" shall refer jointly and severally, individually and collectively,
to the Settling Defendant, its predecessors, successors, past and present parents, specifically
including SAS AB, subsidiaries, affiliates, divisions, and departments, and each of their
respective past and present officers, directors, employees, agents, attorneys, servants, and
representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of
each of the foregoing ("the Settling Defendant's Released Parties").  Notwithstanding any part of
the foregoing, however, for purposes of this Agreement, "Released Parties" does not include: (a)
Timothy Pfeil; (b) Jan Lillieborg; (c) any Defendant, other than the Settling Defendant's
Released Parties; or (d)  any natural person who has entered into a tolling agreement with

Plaintiffs, as of the Execution Date. As used in this definition, "affiliates" means entities controlling, controlled by or under common control with any of the Released Parties.

21.    "Releasing Parties" shall refer jointly and severally, and individually and collectively, to the Plaintiffs, the Class Members, their predecessors, successors, past and present parents, subsidiaries, affiliates, divisions, and departments, and each of their respective past and present officers, directors, employees, agents, attorneys, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this definition, "affiliates" means entities controlling, controlled by or under common control with any of the Releasing Parties.

22.    "Settlement Amount" means $13,930,000 in United States currency.

23.    "Settlement Class" means, for purposes of settlement under this Agreement, all persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from the Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

24.    "Settlement Class Counsel" shall refer to the law firms of Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, New York, NY 10022; Labaton Sucharow LLP, 140 Broadway, New York, NY 10017; and Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Philadelphia, PA 19106.

25.    The "Settlement Fund" shall be the amount paid by the Settling Defendant in settlement of the Action pursuant to Paragraph 35 of this Agreement and any income earned on amounts in the fund.

**B.    Stipulation to Settlement Class Certification**

26.    The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the following class shall be certified for settlement purposes as to the Settling Defendant:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from the Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

**C.    Approval of this Agreement, Notice, and Dismissal of Claims**

27.    Plaintiffs and the Settling Defendant shall use all reasonable efforts to effectuate this Agreement, including cooperating in Plaintiffs' effort to obtain the Court's approval of procedures (including the giving of class notice under Rules 23(c) and 23(e) of the Federal Rules of Civil Procedure) and to secure certification of the Settlement Class for settlement purposes and the prompt, complete, and final dismissal with prejudice of the Action as to the Settling Defendant and any other Released Party who is a Defendant in the Action.

28.    Promptly after the Execution Date of this Agreement, Plaintiffs shall submit to the Court a motion for preliminary approval of the settlement and the final judgment contemplated by this Agreement.  The motion shall include (a) the proposed form of an order preliminarily approving this Agreement; (b) the proposed forms of mail notice and publication notice of the settlement to Class Members; and (c) the proposed form of order and final judgment.  (Plaintiffs

8

may combine dissemination of notice of the proposed certification of the Settlement Class for settlement purposes and the Agreement with notice of other settlement agreements.)  The text of the items referred to in clauses (a), (b) and (c) above shall be agreed upon by Plaintiffs and the Settling Defendant before submission of the motion.

29.    Notice to the Settlement Class shall be given as follows, or as otherwise deemed sufficient by the Court:

    i.    Upon preliminary approval of this Agreement, Settlement Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, provide those members of the Settlement Class who have been identified by reasonable means, including those identified in customer lists previously provided to the Garden City Group in connection with the Lufthansa settlement, with notice by first class mail of the settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed settlement (the "Settlement Hearing").

    ii.    Upon preliminary approval of this Agreement, Settlement Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, cause to be published in the national and international versions of *The Wall Street Journal* a summary notice of the settlement and the Settlement Hearing.

30.    Plaintiffs shall seek entry of an order and final judgment:

    i.    Approving this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation according to its terms;

    ii.    Reserving to the Court exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

    iii.    Requiring Settlement Class Counsel to file with the Clerk of the Court a record of potential members of the Settlement Class who timely and validly excluded themselves from the Settlement Class, and to provide a copy of the record to counsel for the Settling Defendant; and

    iv.    Dismissing the Action with prejudice as to the Settling Defendant and any other Released Party who is a Defendant in the Action.

31.     This Agreement shall become final only upon the occurrence of the Effective Date.

**D.     <u>Release and Discharge</u>**

32.     Upon the occurrence of the Effective Date and in consideration of the payment by the Settling Defendant of the Settlement Amount as specified in Paragraph 22 of this Agreement, the Releasing Parties shall be deemed to and do hereby completely release, acquit, and forever discharge the Released Parties from any and all claims, demands, actions, suits, and causes of action, damages, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasing Parties, or any of them, ever had, now has, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against the Released Parties or any of them, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, or Claims that have been, could have been, or in the future might be asserted in law or equity, on account of or arising out of or resulting from or in any way related to any conduct regardless of where it occurred at any time prior to the Effective Date concerning the direct purchase from any Settling Defendant or any other Defendant, of Airfreight Shipping Services to, from or within, the United States or concerning the pricing, selling, discounting, or marketing of Airfreight Shipping Services for shipments to, from or within the United States, including without limitation, Claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the First Consolidated Amended Complaint filed in the Action or otherwise the subject of that litigation (and specifically including, without limitation, Claims in any way related to cargo rates, fuel surcharges, security surcharges, United States customs surcharges, war risk

10

surcharges, commissions, incentives, rebates, credits, yields, or any other element of the price of
or the compensation related to Airfreight Cargo Shipping Services), which arise under any
antitrust, unfair competition, unfair practices, price discrimination, unitary pricing trade practice,
consumer protection, unjust enrichment, civil conspiracy law, or any other law, code, rule, or
regulation of any country or jurisdiction worldwide, regardless of legal theory, and regardless of
the type or amount of damages claimed.  However, nothing herein shall release any claims (a)
involving any negligence, breach of contract, bailment, failure to deliver, lost goods, damages or
delayed goods or similar claim between any of the Released Parties and any of the Releasing
Parties relating to Airfreight Shipping Services and/or (b) made with respect to any indirect
purchase of Airfreight Shipping Services.

      33.     The Releasing Parties hereby covenant and agree that they shall not, hereafter, sue
or otherwise seek to establish liability against any of the Released Parties based, in whole or in
part, upon any of the Released Claims.

      34.     The release set forth in Paragraph 32 constitutes a waiver of Section 1542 of the
California Civil Code and Section 20-7-11 of the South Dakota Codified Laws, each of which
provides that a general release does not extend to claims which the creditor does not know or
suspect to exist in his favor at the time of executing the release, which if known by him must
have materially affected his settlement with the debtor, and a waiver of any similar provisions,
statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction.
Plaintiffs and each member of the Settlement Class acknowledge that they are aware that they
may hereafter discover facts in addition to, or different from, those facts which they know or
believe to be true with respect to the subject matter of this Settlement Agreement, but that it is
their intention to release fully, finally, and forever all Claims released in Paragraph 32, and in

furtherance of such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

**E.**   **Payments**

35.    The Settling Defendant shall pay or cause to be paid the Settlement Amount of $13,930,000.  This amount shall be wire transferred by the Settling Defendant or its designee within three (3) business days after the Execution Date  into the Escrow Account and administered in accordance with the provisions of this Agreement.

36.    The Settling Defendant shall also pay reasonable costs of disseminating notice of this settlement, including the cost of notice administration, in an amount not to exceed $500,000. Plaintiffs will make reasonable efforts to minimize such notice costs for the Settling Defendant, including but not limited to combining notice of this settlement with the notice of settlements with other defendants, in which case the Settling Defendant will pay a share of the combined notice costs on a basis to be agreed upon among the affected parties.

37.    With respect to notice costs, within ten (10) calendar days after the Preliminary Approval Date, the Settling Defendant shall wire transfer $100,000 to the Escrow Account to be used for notice costs (the "Notice Fund").  If additional funds are required to cover notice costs relating to this settlement, the Settling Defendant will wire such funds within forty-eight (48) hours of receiving written notification from the claims administrator or Settlement Class Counsel that additional funds are required.  Any unused portion of the Notice Fund shall be returned to the Settling Defendant within 120 calendar days after notice has been provided to the Settlement Class.

38.    Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses

12

from the Settlement Fund.  The Settling Defendant shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

**F.**   **Settlement Fund**

39.     The Settlement Fund is intended by the parties to this Agreement to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. §1.468B-1, and to that end the parties to this Agreement shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  At the request of the Settling Defendant, a "relation back election" as described in Treas. Reg. §1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.

40.     The Settlement Fund shall be invested in United States Government Treasury obligations (provided, however, that residual amounts that cannot be so invested or such portions of the Settlement Fund as may reasonably be needed to pay current expenses associated with providing notice to the Class, administering the Settlement Fund and any taxes may be deposited in a federally insured interest bearing account or United States Treasury Money Market funds in an amount not exceeding $100,000).  All income earned on the Settlement Fund shall become and remain part of the Settlement Fund.

41.     The Settling Defendant shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund or the Notice Fund, including, but not limited to, the costs and expenses of such

13

investment, distribution and administration, except as expressly otherwise provided in this Agreement.

42.     Subject to Court approval, Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. The Settling Defendant shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court may be paid out of the Settlement Fund.

## G.     Rescission of the Agreement

43.     If the Court refuses to approve this Agreement or any part hereof, or with respect to court approval if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 30 of this Agreement, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed, then the Settling Defendant and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety and any and all amounts then constituting the Settlement Fund (including all income earned thereon), together with any amounts paid to Settlement Class Counsel pursuant to Paragraph 42 hereof, shall be returned forthwith to the

14

Settling Defendant. In the event of rescission of the Agreement, any amounts remaining in the Notice Fund after payment of all amounts paid or incurred prior to the date of rescission shall be returned to the Settling Defendant. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court or any plan of allocation of the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

44.     The Settling Defendant and Plaintiffs expressly reserve all of their rights if this Agreement does not become effective or if it is rescinded by Plaintiffs or the Settling Defendant pursuant to Paragraph 43 of this Agreement. In addition, if for any reason (including a party's exercise of a valid right to rescind the Agreement), the Agreement does not receive final Court approval, then the certification of the Settlement Class shall become null and void without further Court action, and shall not be used or referred to for any further purpose in the Action or in any other action or proceeding, and shall not prejudice any party in arguing for or against contested class certification in this Action or in any other proceeding. Further, Plaintiffs and the Settling Defendant agree that this Agreement, whether or not it is finally approved and whether or not the Settling Defendant or Plaintiffs elect to rescind it under Paragraph 43 of this Agreement, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by the Settling Defendant or any Defendant, or of the truth of any of the claims or allegations contained in the First Consolidated Amended Complaint or any other pleading filed by Plaintiffs in the Action, and evidence thereof shall neither be discoverable nor used directly or indirectly except in a proceeding to enforce or interpret the Agreement.

**H.    Reciprocal Most Favored Nation Provisions**

MFN In The Settling Defendant's Favor

45.    (a)    Upon the Execution Date, the Settling Defendant shall have a most favored nation status as provided in this Paragraph 45. This Paragraph 45 shall apply to subsequent settlements with one or more corporate defendants named in the Action, but only if the subsequent settling defendant (or any of its affiliates or current or former officers, directors or employees) as of the time of the subsequent settlement has pled guilty in the United States to a violation of Section 1 of the Sherman Act in connection with the investigation by the U.S. Department of Justice of price-fixing and/or other collusive practices in the sale of Airfreight Shipping Services during some or all of the Class Period. Such a settlement shall be referred to as a "Qualifying Subsequent Settlement" with a "Subsequent Settling Defendant." This Paragraph 45 shall not apply to settlements as to which a motion for preliminary approval has been filed before the Execution Date or to any settlement described in Paragraph 45(e). If Plaintiffs enter into a Qualifying Subsequent Settlement, Plaintiffs shall provide the settlement agreement to the Settling Defendant simultaneously with the filing of Preliminary Approval papers for that settlement. Plaintiffs shall also provide to the Settling Defendant data sufficient to calculate the Settlement Ratio for the Qualifying Subsequent Settlement, as described in Paragraph 45(c).

(b)    If such a Qualifying Subsequent Settlement becomes final and effective, and if the Settlement Ratio for that settlement with respect to Airfreight Shipping Services, calculated as described in Paragraph 45(c), is less than the settlement ratio for the Settling Defendant (the "Settling Defendant's Settlement Ratio"), then Plaintiffs shall pay the Settling Defendant within ten (10) business days after the Qualifying Subsequent Settlement becomes

16

final and effective, an amount from the Qualifying Subsequent Settlement equal to (x) the

Settling Defendant's Settlement Ratio minus the Subsequent Settling Defendant' Settlement

Ratio, that difference multiplied by (y) the lesser of (i) the dollar amount of the Subsequent

Settling Defendant' sales of Airfreight Shipping Services to, from or within the United States

during the period 2004-2005 or (ii) the Settling Defendant's sales of Airfreight Shipping

Services to, from or within the United States during the period 2004-2005 ("MFN Refund

Amount"). The payment of the MFN Refund Amount to the Settling Defendant shall be made

before any distribution is made to class members under the Qualifying Subsequent Settlement,

and the settlement agreement that is a Qualifying Subsequent Settlement shall expressly so

provide. In no event shall the MFN Refund Amount exceed the dollar amount of the Qualifying

Subsequent Settlement.

       (c)    For purposes of this Paragraph 45, the Settlement Ratio for any other

Qualifying Subsequent Settlement (the "Subsequent Settling Defendant's Settlement Ratio")

shall be calculated by dividing (x) the settlement amount paid to the settlement class by the

Subsequent Settling Defendant (without regard to any later reductions for opt-out plaintiffs) by

(y) the Subsequent Settling Defendant's aggregate sales of Airfreight Shipping Services to, from

or within the United States during the years 2004-2005.

       (d)    The parties agree that the Settling Defendant's Settlement Ratio is 6.57%

based upon estimated aggregate sales to, from or within the United States of Airfreight Shipping

Services by the Settling Defendant to the Settlement Class during the years 2004-2005 of

$212,018,000. To the extent Plaintiffs enter into or have entered into other settlements that may

require payment of an MFN Refund Amount, payment of any MFN Refund Amount shall be

made first to the Settling Defendant after any payments of an MFN Refund Amount to

17

Lufthansa, Société Air France ("Air France"), Koninklijke Luchtvaart Maatschappil N.V.,

("KLM"), and Martinair Holland N.V. ("Martinair") and before any payment to any other

person, including a settlement class member or any other Defendant in the Action (except

Lufthansa, Air France, KLM and Martinair) under or as a result of the Qualifying Subsequent

Settlement.

        (e)     This Paragraph 45 shall not apply to: (1) a settlement with Plaintiffs for

which an agreement in principle is reached within sixty (60) days of the then scheduled date for

commencement of trial of the Action or two and a half years or more after the date of this

Agreement, whichever occurs first; (2) a settlement reached with an individual defendant who is

a natural person; (3) a settlement reached with a defendant who has filed for bankruptcy or

similar procedure under foreign law; (4) a settlement reached with a defendant who, based on

objective evidence, is financially unable to pay an amount equal to or greater than the Settling

Defendant's Settlement Ratio multiplied by the Subsequent Settling Defendant's sales of

Airfreight Shipping Services to, from or within the United States during the period 2004-2005,

provided, however that the defendant is not among the top twelve air cargo carriers in terms of

scheduled freight tonne-kilometres flown (international) as reported in IATA World Air

Transport Statistics (50th Edition) (2005) (excluding any air cargo carrier that is not a defendant

in this Action); or (5) a settlement reached after a denial of class certification with respect to

some or all of Plaintiffs' claims or a dismissal or other court ruling with respect to some or all of

Plaintiffs claims that materially reduces the damages that may be recoverable by Plaintiffs.

        (f)     Nothing herein shall give the Settling Defendant any standing to object to

or appeal any settlement entered into by Plaintiffs with any other defendant, except that the

Settling Defendant may object and appeal in order to preserve their rights under Paragraph 45 of

this Agreement.

(g)     Any dispute regarding the rights and obligations of the parties under this Paragraph 45 that cannot be resolved by agreement of the parties shall be submitted to an agreed upon arbitrator for final resolution pursuant to Paragraph 74 of this Agreement.

<u>MFN In Plaintiffs' Favor</u>

46.     (a)     Upon the Execution Date, Plaintiffs shall also have a most favored nation status as provided in this Paragraph 46. This Paragraph 46 shall apply to settlements by the Settling Defendant with one or more Direct Purchasers of Airfreight Shipping Services to, from or within the United States who exclude themselves from the Settlement Class. Such a settlement shall be referred to as a "Direct Purchaser Subsequent Settlement." This Paragraph 46 shall not apply to a settlement entered into by the Settling Defendant before the Execution Date or any settlement described in Paragraph 46(d). If the Settling Defendant enters into a Direct Purchaser Subsequent Settlement on or after the Execution Date, the Settling Defendant shall give notice of that settlement to Plaintiffs within ten (10) business days after the execution of such settlement agreement and provide a copy of the agreement to Plaintiffs and the amount of the Settling Defendant's sales to that Direct Purchaser of Airfreight Shipping Services to, from or within the United States during the period 2004-2005 and sales data supporting that amount.

(b)     If the Settlement Ratio for the Direct Purchaser Subsequent Settlement (the "Opt-Out Settlement Ratio"), calculated as described in Paragraph 46(c) is greater than the Settling Defendant's Settlement Ratio as set forth in Paragraph 45(c), then the Settling Defendant shall pay Plaintiffs within ten (10) business days after the Direct Purchaser Subsequent Settlement becomes final and effective, an amount equal to the Opt-Out Settlement Ratio minus the Settling Defendant's Settlement Ratio, that difference multiplied by the dollar amount of the

19

Settling Defendant's sales to the Direct Purchaser of Airfreight Shipping Services to, from or within the United States during the period 2004-2005 ("Plaintiffs' MFN Refund Amount").

(c)    For purposes of this Paragraph 46, the Opt-Out Settlement Ratio for any Direct Purchaser Subsequent Settlement with respect to Airfreight Shipping Services shall be calculated by dividing (x) the settlement amount paid to the Direct Purchaser by the Settling Defendant (including attorneys' fees and other consideration) by (y) the Settling Defendant's sales to the Direct Purchaser of Airfreight Shipping Services to, from or within the United States during the period 2004-2005.

(d)    This Paragraph 46 shall not apply to a settlement with a Direct Purchaser for which an agreement in principle is reached within sixty (60) days of the then scheduled date for the commencement of trial of the Action or two and one half years or more after the date of this Agreement, whichever occurs first.

(e)    Nothing herein shall give Plaintiffs any standing to object to or appeal any settlement entered into by the Settling Defendant with any other Direct Purchaser, except that Plaintiffs may object and appeal in order to preserve their rights under Paragraph 46 of this Agreement.

(f)    Any dispute regarding the rights and obligations of the parties under this Paragraph 46 that cannot be resolved by agreement of the parties shall be submitted to an agreed upon arbitrator for final resolution pursuant to Paragraph 74 of this Agreement.

I.    **Provisional Opt-Out Reduction**

47.        (a)        Within ten (10) business days of the conclusion of the opt-out period,
Settlement Class Counsel shall provide to counsel for Settling Defendant a list of all persons and
entities that have requested exclusion from the Settlement Class;

(b)        Within ten (10) business days of the delivery of the list described in
Paragraph 47(a), Settling Defendant shall provide to Settlement Class Counsel the total amount
of Opt-Out Sales, the resulting Opt-Out Percentage, the Opt-Out Sales for each Opt-Out Plaintiff
and supporting data for Opt-Out Sales.

(c)        In the event Plaintiffs dispute the Opt-Out Sales amount and/or the
resulting Opt-Out Percentage as described in Paragraph 47(b), Plaintiffs must notify counsel for
the Settling Defendant within five (5) business days from the delivery thereof.  The parties shall
submit the dispute to arbitration for final resolution pursuant to Paragraph 74 of this Agreement.
Pending such final resolution, there shall be no further disbursements from the Settlement Fund.

(d)        Within five (5) business days of the determination of the Opt-Out
Percentage (whether upon a failure of Plaintiffs to dispute the Settling Defendant's calculation,
as set forth in Paragraph 47(c), by agreement of the parties, or pursuant to arbitration), Plaintiffs
and the Settling Defendant shall direct the Escrow Agent to transfer from the Escrow Account
into a separately established escrow account for the purpose of effectuating  Paragraph 47(e) (the
"Opt-Out Escrow Account I") an amount equal to the Provisional Opt-Out Reduction plus any
net income attributable to the amount so calculated.

(e)        During the Opt-Out Retention Period (defined in Paragraph 47(f)), upon
the resolution by settlement with any Opt-Out Plaintiff of any claim that would have been a
Released Claim,   the  (x) Settling Defendant shall provide to the Escrow Agent and Settlement

21

Class Counsel written proof that the settling defendant has paid the Opt-Out Plaintiff for such claim and the amount of such payment ("Proof of Opt-Out Claim"), , and (y) Settling Defendant and Settlement Class Counsel shall, within fifteen (15) business days after Settling Defendant provides the Proof of Opt-Out Claim , jointly instruct the Escrow Agent to pay to Settling Defendant from Opt-Out Escrow Account I an amount equal to such Opt-Out Plaintiff's pro rata share of the Provisional Opt-Out Reduction (plus any net income as may have accrued with respect to such pro rata share).

   (f) Thirty (30) days before the distribution to Class Members from the Settlement Fund that would be the last and final distribution, but for any distribution required as a result of the operation of this Paragraph 47(f) from the Settlement Fund (the "Opt-Out Retention Period"), Plaintiffs and Settling Defendant shall direct the Escrow Agent to transfer to the Settlement Fund all amounts remaining in the Opt-Out Escrow Account I.

   (g) If at least thirty (30) days before the distribution to Class Members from the Settlement Fund described in Paragraph 47(f), an Opt-Out Plaintiff files an action against Settling Defendant asserting any claim that in whole or in part would have been a Released Claim had such Opt-Out Plaintiff not validly elected to be excluded from the Settlement Class ("Opt-Out Claim"), then (x) Settling Defendant shall provide to the Escrow Agent and Settlement Class Counsel a copy of the Complaint in an action brought by the Opt-Out Plaintiff ("Notice of Opt-Out Action") and (y) Settling Defendant and Settlement Class Counsel shall within seven (7) business days after Settling Defendant provides Notice of Opt-Out Action, jointly instruct the Escrow Agent to transfer from the Opt-Out Escrow Account I into a separately established escrow account for purposes of effectuating this Paragraph 47(g) (the "Opt-Out Escrow Account II") an amount equal to such Opt-Out Plaintiff's pro rata share of the

Provisional Opt-Out Reduction (plus any net income as may have accrued with respect to such pro rata share). The pro rata amounts held in Opt-Out Escrow Account II shall be held for a period of one year from the date of distribution described in Paragraph 47(f) (the Extended Opt-Out Retention Period).

(h)     During the Extended Opt-Out Retention Period, upon the resolution by settlement or judgment with any Opt-Out Plaintiff who brought an action against Settling Defendant that would have been a Released Claim, then (x) Settling Defendant shall provide to the Escrow Agent and Settlement Class Counsel written proof that Settling Defendant has paid the Opt-Out Plaintiff for such filed claim and the amount of such payment ("Proof of Opt-Out Filed Claim") and (y) Settling Defendant and Settlement Class Counsel shall within fifteen (15) business days after Settling Defendant provides the Proof of Opt-Out Filed Claim, jointly instruct the Escrow Agent to pay Settling Defendant from Opt-Out Escrow Account II an amount equal to such Opt-Out Plaintiff's pro-rata share of the Provisional Opt-Out Reduction (plus any net income as may have accrued with respect to such pro rata share).

(i)     At the conclusion of the Extended Opt-Out Retention Period, Plaintiffs and Settling Defendants shall direct the Escrow Agent to transfer from Opt-Out Escrow Account II to the Settlement Fund all amounts remaining in the Opt-Out Escrow Account II.

(j)     Any dispute regarding the rights and obligations of the parties under this Paragraph 47 that cannot be resolved by agreement of the parties shall be submitted to an agreed upon arbitrator for final resolution pursuant to Paragraph 74 of this Agreement.

## J.    Cooperation

48.    The Settling Defendant shall cooperate with Settlement Class Counsel as set forth specifically below.

49.    In connection with the provision of information, testimony, and Documents under this Agreement, the Settling Defendant shall have the right to assert the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity available under any applicable United States law.  The Settling Defendant also shall have the right to designate any information, testimony, or Documents provided as "Confidential" or "Highly Confidential" in accordance with the Confidentiality Stipulation and Protective Order Governing Production of Documents Between Plaintiffs and Defendants (the "Protective Order") entered in the Action.  Any such designations shall survive the termination or rescission of this Agreement and shall continue to enjoy the fullest protections offered by the Protective Order.

50.    If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced, the Document shall promptly be returned to the Settling Defendant, and its production shall in no way be construed to have waived any privilege or protection attached to such Document.

51.    No Document shall be withheld under claim of privilege or work product if produced to or made available to the U.S. Department of Justice, the European Commission, or any other national competition authority, other than privileged Documents inadvertently produced to or seized by the U.S. Department of Justice, the European Commission, or any other national competition authority.

24

52.     Beginning within ten (10) days, and to be completed within 90 days, after Plaintiffs file their motion for preliminary approval as provided in Paragraph 28, Settling Defendant shall, to the extent not previously produced and subject to the limitations set forth in Paragraph 49 of this Agreement, promptly produce in the United States to Settlement Class Counsel the following categories of Documents or information:

a)     Follow-up information in response to questions Plaintiffs may have concerning the transaction data in electronic form previously produced by the Settling Defendant;

b)     To the extent not previously produced and reasonable under the circumstances, information sufficient to show or determine the costs incurred by the Settling Defendant in connection with its sale or delivery of Airfreight Shipping Services to, from, or within the United States for the period January 1, 1997 through March 31, 2009;

c)     To the extent reasonably available or as otherwise agreed, documents sufficient to show all price announcements for surcharges for Airfreight Shipping Services to, from, or within the United States for the period January 1, 1997, through March 31, 2009; and

d)     Copies of all Documents created or obtained for ordinary business purposes that were produced to the European Commission in connection with its investigation of the air cargo industry which relate to Airfreight Shipping Services.

e)     Available translations in English of foreign language documents that are or have been produced.

53.     Cooperation Materials may be used by Settlement Class Counsel only to prosecute this Action.

54.  <u>Authentication and Admissibility of Documents</u>.  The Settling Defendant agrees to produce at trial, deposition, or through affidavits or declarations, representatives qualified to establish for admission into evidence any of the Settling Defendant's Documents produced or to be produced in the Action, evidence of the Settling Defendant's sales or costs of Airfreight Shipping Services, and/or surcharges related thereto, any other Documents of the Settling Defendant, and, to the extent possible, any Documents produced by any of the Settling Defendant's alleged co-conspirators.

55.  <u>Meetings with Counsel</u>.  The Settling Defendant agrees that, upon the filing by Plaintiffs a motion for preliminary approval as provided in Paragraph 28, its lead counsel will make themselves available for up to a total of three (3) meetings with Settlement Class Counsel to provide information concerning documents, witnesses, meetings, communications, and events not covered by privilege or other protections available under any applicable United States law, plus reasonable follow-up conversations including, but not limited to, identifying individuals such as current or former employees, who may provide information or potential testimony relevant to the Action.  Notwithstanding any other provision in this Agreement, Plaintiffs and Settlement Class Counsel agree that they shall maintain all statements made by the Settling Defendant's counsel under this Paragraph 55 strictly confidential; and that they shall not use directly or indirectly the information so received for any other purpose than the prosecution of the Action.  The Parties and their counsel further agree that any statements made by the Settling Defendant's counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.  Settlement Class Counsel may use

26

information contained in such statements in the prosecution of the Action without attributing the source of the information.

## Witnesses

56.     Upon reasonable notice after the filing of Plaintiffs' motion for preliminary approval as provided in Paragraph 28, the Settling Defendant agrees to use all reasonable efforts to make available for interviews, depositions and testimony at hearings or trial, at a location or locations of Settling Defendant's choice (except for testimony at hearings or trial, which shall be at the United States Courthouse of the United States District Court for the Eastern District of New York, or where it would be prohibited by foreign law), and at Settling Defendant's expense up to six (6) current and former directors, officers, and employees of the Settling Defendant (excluding Timothy Pfeil and Jan Lillieborg) who Settlement Class Counsel, in consultation with counsel for the Settling Defendant, reasonably and in good faith believe to have knowledge regarding Plaintiffs' claims as alleged in the Action. Upon request of the witness, Plaintiffs shall provide a translator for interviews, depositions and/or testimony at Plaintiffs' expense. In addition, subject to Paragraph 57, the Settling Defendant agrees to use all reasonable efforts to make the Peter Gronlund and Kenneth Marx who were excluded from Settling Defendant's plea agreement with the U.S. Department of Justice available for interviews, depositions and testimony at hearings or trial as described herein. Written notice served by Settlement Class Counsel upon the Settling Defendant's counsel shall constitute sufficient service of notice to any person employed by the Settling Defendant at the time of such notice of any depositions requested under this Paragraph 56 unless the witness is represented by separate counsel. Depositions shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure, except to the extent prohibited by foreign law, regardless of the location at

which they take place or the citizenship of the deponent. An "interview" or "deposition" for purposes of this Paragraph 56 shall last no longer than eight hours, including reasonable breaks and, subject to reasonable limitations, may occur on more than a single day, but not more than two days. The Settling Defendant agrees to bear reasonable travel expenses incurred by witnesses pursuant to this Paragraph 56. If Settlement Class Counsel show good cause, Settling Defendant agrees that it shall make additional persons available pursuant to this Paragraph 56.

57.     With respect to Peter Gronlund and Kenneth Marx who were excluded from Settling Defendant's plea agreement with the U.S. Department of Justice, any cooperation obligations may be postponed until resolution of any criminal antitrust exposure in the United States. A nonprosecution letter from the U.S. Department of Justice shall be considered resolution of criminal antitrust exposure in the United States. For purposes of this Paragraph 57, if such person (1) enters into a plea agreement that is approved by the court and becomes final or (2) is found guilty by a court in the United States and such finding of guilt becomes final, or (3) a criminal indictment or information is not filed by the United States Department of Justice by March 1, 2011 such agreement, finding or lack of prosecution shall be deemed a resolution of such exposure.

58.     If a witness identified in Paragraph 56 (excluding Timothy Pfeil or Jan Lillieborg) is not available prior to the end of fact discovery in this Action, but then becomes available after fact discovery has ended, the Settling Defendant will not object to any application by Plaintiffs to the Court for permission to take the deposition of such a witness, unless such objection is based upon grounds other than timeliness of the objection (e.g., violation of foreign law).

59.     The Settling Defendant's obligations to cooperate shall not be affected by the release set forth in Paragraph 32 of this Agreement. Unless this Agreement is rescinded,

28

disapproved, or otherwise fails to take effect, the Settling Defendant's obligations to cooperate under this Agreement shall continue until the date that final judgment has been rendered in the Action against all Defendants.

60.     The provisions set forth in Section J of this Agreement shall constitute the exclusive means by which Plaintiffs and Settlement Class Counsel may obtain discovery from Settling Defendant or its current and former officers, directors, or employees, (excluding Timothy Pfeil and Jan Lillieborg) and Plaintiffs and Settlement Class Counsel shall pursue no other means of discovery against Settling Defendant or its current and former officers, directors, or employees, whether under the Federal Rules of Civil Procedure or the laws or rules of any other jurisdiction, except to the extent plaintiffs have the right to additional discovery under the letter agreement of November 19, 2009, between Settling Defendant and Plaintiffs, provided, however, that Plaintiffs shall not have rights to additional discovery under Section F of the November 19, 2009 letter agreement.  In addition, if any persons whose interviews and depositions are subject to this agreement refuse to cooperate with Settlement Class counsel, Settlement Class Counsel shall have the discretion to institute process to obtain testimony from such person.

61.     The Settling Defendant and its present, former, and future directors, officers, and employees (excluding Timothy Pfeil and Jan Lillieborg) and members of the Settlement Class and Settlement Class Counsel agree that all disputes, claims, or controversies arising in connection with, pursuant to, or related to the cooperation terms of this Agreement shall be submitted to arbitration for a final resolution pursuant to Paragraph 74 of this Agreement.

### K.   Taxes

62.     Settlement Class Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund.  All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund.  The Settling Defendant shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and until the Settlement Fund is returned to the Settling Defendant.  In the event the Settlement Fund is returned to the Settling Defendant because the settlement is not consummated, the Settling Defendant shall be responsible for the payment of all taxes (including any interest or penalties, except to the extent that interest and penalties result from the failure of Plaintiffs to file any necessary tax returns or make tax payments, in which case Plaintiffs shall be responsible for the payment of interest and/or penalties), if any, on such income.  The Settling Defendant makes no representation to Plaintiffs regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund.

### L.   Reservation of Class Members' Rights Against Other Defendants

63.     All rights of any Class Member against former, current, or future defendants or co-conspirators or any other person other than the Released Parties, for sales made by the Settling Defendant, are specifically reserved by Plaintiffs and the Class Members.  The sales of

Airfreight Shipping Services by the Settling Defendant shall, to the extent permitted or authorized by law, remain in the case against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Released Parties. This Paragraph 63 shall not be construed to impact the right of such other current or future defendants in the Action to receive any set-off to which they are entitled.

## M.    **Miscellaneous**

64.    This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member against any former or current defendant or alleged co-conspirator or any other person or entity other than the Released Parties.

65.    This Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto with respect to the subject matter of this Agreement.

66.    This Agreement may be modified or amended only by a writing executed by Plaintiffs and the Settling Defendant and, after the Preliminary Approval Date, with approval by the Court.

67.    Neither this Agreement, nor any negotiations or proceedings connected with it, shall be deemed or construed to be an admission by any party to this Agreement or any Released Parties or evidence of any fact or matter in this Action or in any related actions or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement.

68.    Neither the Settling Defendant nor Plaintiffs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of

31

interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

69.     This Agreement shall be construed and interpreted to effectuate the intent of the parties which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Parties.

70.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasing Parties, and Released Parties any right or remedy under or by reason of this Agreement.

71.     This Agreement shall be binding upon, and inure to the benefit of the Releasing Parties and the Released Parties.

72.     All terms of this Agreement  shall be governed and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

73.     With the exception of matters expressly declared subject to arbitration in this Agreement, the Settling Defendant, Plaintiffs, and each member of the Settlement Class hereby submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.  The Settling Defendant, Plaintiffs, and each member of the Settlement Class likewise agree that any applicable arbitral award on matters subject to arbitration pursuant to Paragraph 74 of this Settlement Agreement shall not be subject to vacation or modification solely on errors of law or fact but only those grounds set forth in the Federal Arbitration Act, and that any challenge to an arbitral award based on those grounds is subject to the exclusive jurisdiction of the United States District Court for the Eastern

32

District of New York, or, if such court does not have subject matter jurisdiction, to the exclusive jurisdiction of the Supreme Court of the State of New York, New York County, and shall not be subject to further review.

74.     Any controversy, claim or dispute arising out of, relating to or in connection with the matters specifically designated to be submitted to arbitration under this Agreement shall be finally determined in arbitration in New York before Eric D. Green of Resolutions, LLC or such other arbitrator upon whom the parties shall mutually agree.  Subject to the award of the arbitrator, the parties participating in an arbitration shall pay an equal share of the arbitrator's fees.  The arbitrator may award recovery of all costs (including administrative fees, arbitrator's fees and court costs, but excluding attorneys' fees) to the prevailing party.  Judgment upon any award rendered may be entered in the United States District Court for the Eastern District of New York or the New York Supreme Court, New York County, as set forth in Paragraph 73 of this Agreement.

75.     This Agreement may be executed in counterparts by counsel for Plaintiffs and the Settling Defendant, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

76.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of and to execute this Agreement, subject to Court approval.

33

Michael D. Hausfeld
William P. Butterfield
Brent W. Landau
HAUSFELD LLP
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: (202) 579-1089
Facsimile: (202) 747-5713

Robert N. Kaplan
Gregory K. Arenson
Jason A. Zweig
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7114

-and-

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831 1585
Facsimile: (847) 831 1580

Lawrence Sucharow
Hollis L. Salzman
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0717
Facsimile: (212) 592-4663

Howard J. Sedran
Austin B. Cohen
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

CLASS COUNSEL

34

_[signature]_

Michael D. Hausfeld
William P. Butterfield
Brent W. Landau
HAUSFELD LLP
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: (202) 579-1089
Facsimile: (202) 747-5713

_1700 K Street NW_
_Ste 650_
_Washington, DC 20006_
_Telephone (202) 540-7200_
_Fax: (202) 540-7201_

Robert N. Kaplan
Gregory K. Arenson
Jason A. Zweig
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7114

-and-

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831 1585
Facsimile: (847) 831 1580

Lawrence Sucharow
Hollis L. Salzman
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0717
Facsimile: (212) 592-4663

_[signature]_

Howard J. Sedran
Austin B. Cohen
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

CLASS COUNSEL

34

Jeffrey Blumenfeld
George D. Ruttinger
CROWELL & MORING LLP
1001 Pennsylvania Ave. N.W.
Washington, DC 20004
(202) 624-2500 (telephone)
(202) 628-5116 (facsimile)

Michael F. Goldman
SILVERBERG, GOLDMAN, & BIKOFF,
LLP
1101 30th St., N.W.
Washington, DC 20007
(202) 944-3300 (telephone)
(202) 944-3306 (facsimile)


*Counsel for Scandinavian Airlines System and
SAS Cargo Group A/S*

35