**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION | 06-MD-1775 (JG) (VVP) |
| MDL No. 1775 | **ECF CASE** |
| BENCHMARK EXPORT SERVICES, et al., <br> Plaintiffs, <br> v. <br> CHINA AIRLINES, LTD., et al., <br> Defendants. | 10-CV-0639 (JG) (VVP) |

**PLAINTIFFS' OPPOSITION TO THE OBJECTIONS OF AIR INDIA,**
**CHINA AIRLINES, LTD., EVA AIRWAYS CORP., AND MALAYSIA AIRLINES**
**TO THE SEPTEMBER 22, 2010 REPORT AND RECOMMENDATION**
**OF MAGISTRATE JUDGE POHORELSKY**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

Statement Of Facts ........................................................................................................... 1

Argument ......................................................................................................................... 2

THE BENCHMARK DEFENDANTS' OBJECTIONS ARE WITHOUT MERIT..................... 2

    1.    Fraudulent Concealment (R&R at 23-39)............................................................. 2

    2.    Complaint Allegations Concerning Air India and EVA (R&R at 16-20, 24-29) ... 8

    3.    Air Transport Agreements (R&R at 48-56) ......................................................... 9

Conclusion ..................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Air Transp. Ass'n  v. City of L.A.*,
 844 F. Supp. 550 (C.D. Cal. 1994) ....................................................................11

*In re Aftermarket Filters Antitrust Litig.*,
 No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009).....................................8

*In re Aspartame Antitrust Litig.*,
 No. 2:06-CV-1732, 2007 WL 5215231 (E.D. Pa. Jan. 18, 2007)............................7

*Benoit v. United States*,
 No. 08-CV-4941, 2010 WL 3924736 (E.D.N.Y. Sept. 29, 2010) ...........................1

*Blanco v. United States*,
 775 F.2d 53 (2d Cir. 1985)..................................................................................10

*In re Catfish Antitrust Litig.*,
 826 F. Supp. 1019 (N.D. Miss. 1993)....................................................................5

*Chubb & Son Inc. v. Kelleher*,
 No. 92 CV 4484, 2006 WL 2711543 (E.D.N.Y. Sept. 21, 2006)............................1

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)..................................................................................3

*Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Fed'n*,
 361 F.3d 676 (2d Cir. 2004)................................................................................11

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
 858 F.2d 499 (9th Cir. 1988) ...............................................................................6

*Cont'l Ore v. Union Carbide & Carbon Corp.*,
 370 U.S. 690 (1962)..............................................................................................3

*Cook v. United States*,
 288 U.S. 102 (1933)............................................................................................10

*FTC v. Cement Inst.*,
 333 U.S. 683 (1948)..............................................................................................3

*Greenhaw v. Lubbock Cnty. Beverage Ass'n*,
 721 F.2d 1019 (5th Cir. 1983), *overruled on other grounds*, *Int'l Woodworkers v.
 Champion Int'l*, 790 F.2d 1174 (5th Cir. 1986) ...................................................5

*In re High Fructose Corn Syrup Antitrust Litig.*,
 295 F.3d 651 (7th Cir. 2002) ...............................................................................8

*Hinds Cnty. v. Wachovia Bank, N.A.*,
  700 F. Supp. 2d 378 (S.D.N.Y. 2010)..................................................................9

*In re Initial Pub. Offering Antitrust Litig. ("IPO")*,
  No. 00 Civ. 7804, 2004 WL 487222 (S.D.N.Y. Mar. 12, 2004) ..........................3, 7

*Kellam Energy, Inc. v. Duncan*,
  616 F. Supp. 215 (D. Del. 1985) .........................................................................3

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)............................................................................................8

*In re Mercedes-Benz Antitrust Litig.*,
  157 F. Supp. 2d 355 (D.N.J. 2001) ....................................................................5

*In re Merrill Lynch Ltd. P'ships Litig.*,
  7 F. Supp. 2d 256 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998) .................7

*New York v. Hendrickson Bros. Inc.*,
  840 F.2d 1065 (2d Cir. 1988).........................................................................3, 4, 5

*In re Nine West Shoes Antitrust Litig.*,
  80 F. Supp. 2d 181 (S.D.N.Y. 2000)..................................................................3, 6

*In re Publ'n Paper Antitrust Litig.*,
  No. 304 MD 1631, 2005 WL 2175139 (D. Conn. Sept. 7, 2005).........................3, 4

*Richards v. Mileski*,
  662 F.2d 65 (D.C. Cir. 1981) ..............................................................................6

*Riddell v. Riddell Wash. Corp.*,
  866 F.2d 1480 (D.C. Cir. 1989) ..........................................................................5

*In re Rubber Chems. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ..............................................................5, 6

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ..............................................................................5

*Shelley v. Kraemer*,
  334 U.S. 1 (1948)................................................................................................11

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010)...............................................................................9

*In re Sulfuric Acid Litig.*,
  231 F.R.D. 351 (N.D. Ill. 2005)...........................................................................3

*Swearingen v. United States*,
    565 F. Supp. 1019 (D. Colo. 1983)......................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008)................................................5

*United Nat'l Records, Inc. v. MCA, Inc.*,
    609 F. Supp. 33 (N.D. Ill. 1984)......................................................5, 7

*United States v. Guy W. Capps, Inc.*,
    204 F.2d 655 (4th Cir. 1953), *aff'd on other grounds*, 348 U.S. 296 (1955)............14

*United States v. Pizzonia*,
    577 F.3d 455 (2d Cir. 2009)................................................................8

*United States v. Salmonese*,
    352 F.3d 608 (2d Cir. 2003)................................................................8

*United States v. Walczak*,
    783 F.2d 852 (9th Cir. 1986)..............................................................14

*In re Urethane Antitrust Litig.*,
    683 F. Supp. 2d 1214 (D. Kan. 2010)....................................................5

*Virgin Atlantic Airways Ltd. v. British Airways PLC*,
    872 F. Supp. 52 (S.D.N.Y. 1994)........................................................10

*In re Vitamins Antitrust Litig.*,
    No. Misc. 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000)................5, 6, 7, 8

**STATUTES**

15 U.S.C. § 15................................................................................11

15 U.S.C. § 15(b)...........................................................................2

15 U.S.C. § 16(i)...........................................................................2

49 U.S.C. § 41308......................................................................12, 13

**OTHER AUTHORITIES**

Adam L. Schless, *Open Skies: Loosening the Protectionist Grip on International Civil
    Aviation*, 8 Emory Int'l L. Rev. 435................................................10

Warren L. Dean, Jr. and Jeffrey N. Shane, Alliances, Immunity, and the Future of
    Aviation, 22 No. 4 Air and Space Lawyer 1........................................12

Defendants Air India, China Airlines Ltd., EVA Airways Corporation ("EVA"), and

Malaysia Airlines ("the *Benchmark* defendants") have objected to Magistrate Judge Pohorelsky's

Report and Recommendation, dated Sept. 22, 2010 on three grounds.  *See* ECF Nos. 1270

("R&R"); 1279 ("Obj.").  First, they contend that Magistrate Judge Pohorelsky erred in

upholding the adequacy of the complaint's fraudulent concealment allegations.  Second, Air

India and EVA argue that the complaint against them is legally insufficient, purportedly for

failing to plead specific conduct during the limitations period.  Finally, Air India and Malaysia

Airlines argue that plaintiffs' claims are preempted by two executive "Air Transport

Agreements" ("ATAs").  As we demonstrate, there is no basis for overruling Magistrate Judge

Pohorelsky's well-reasoned rulings on these issues.[1]

## Statement Of Facts

The complaint against the *Benchmark* defendants is modeled after, and even more

specific than, the earlier First Consolidated Amended Complaint (ECF No. 271), which this

Court sustained as legally sufficient on August 21, 2009 (ECF No. 938).  The complaint here

(Case No. 1:10-cv-00639 (Feb. 12, 2010) ("Compl."))  alleges that beginning no later than

January 1, 2000, and continuing through February 14, 2006, the *Benchmark* defendants and their

"Named Co-Conspirators" engaged in a conspiracy to artificially inflate the prices of airfreight

shipping services.  Compl. ¶¶ 1, 3, 12, 32-35, 44-88, 128-30.[2]  As a result, plaintiffs and other

---

[1] The *Benchmark* defendants also "incorporate by reference" and "renew" their motions to dismiss the complaint.  Obj. at 1 & n.2.  To the extent that these comments raise any objection at all, the Court should review the R&R only for "clear error."  Here, there is none. *Compare Chubb & Son Inc. v. Kelleher*, No. 92 CV 4484, 2006 WL 2711543, at *2 (E.D.N.Y. Sept. 21, 2006) (general objections are "too vague to direct adequately the Court's attention to the issues needing review"), *with Benoit v. United States*, No. 08-CV-4941, 2010 WL 3924736, at *4 (E.D.N.Y. Sept. 29, 2010) (applying clear error review where general objections merely reiterated original arguments).  *See* Plaintiffs' Memorandum of Law in Opposition to Motions to Dismiss of Air India, China Airlines, Ltd., EVA Airways Corporation, Malaysia Airlines and Salvatore Sanfilippo, dated June 4, 2010 (ECF No. 1171), incorporated by reference.

[2] The "Named Co-conspirators" include original defendants named in Plaintiffs' First Consolidated Amended Complaint in the MDL case. ECF No. 271,  FCAC ¶¶ 44-75.

members of the class paid artificially high prices for airfreight shipping services and were thus

damaged.  *Id.* ¶¶ 92, 212-13.

        As to fraudulent concealment, plaintiffs allege that the conspiracy was, by its nature, self-

concealing. Compl. ¶ 178.  In addition, the complaint alleges that the *Benchmark* defendants and

their Named Co-Conspirators concealed their unlawful conduct through affirmative acts

specifically described in the complaint.  *Id.* ¶¶ 172-94.  Finally, the complaint alleges that

because of the conspiracy's inherently self-concealing nature and the co-conspirators'

affirmative acts of concealment, plaintiffs and class members were unaware of, and could not

through the exercise of reasonable diligence (which they exercised) have discovered, the

existence of the conspiracy before February 2006, when investigations by the United States

Department of Justice ("DOJ") and foreign antitrust enforcement authorities first became public.

*Id.* ¶¶ 173, 174, 191-93, 196.

### Argument

### THE BENCHMARK DEFENDANTS' OBJECTIONS ARE WITHOUT MERIT

        **1.      Fraudulent Concealment (R&R at 23-39)**: Defendants concede that successive

DOJ criminal proceedings have tolled the applicable statute of limitations beginning as of

August 1, 2007.  *See* R&R at 40-48 (discussing § 5(i) of the Clayton Act, 15 U.S.C. § 16(i)); *see*

*also* Obj. at 2-3.  Accordingly, plaintiffs may recover damages from the *Benchmark* defendants

back to August 1, 2003, regardless of whether there has been fraudulent concealment.  *See* 15

U.S.C. § 15(b) (providing for the four-year antitrust limitations period).  Thus, the adequacy of

plaintiffs' fraudulent concealment allegations affects only whether plaintiffs also can recover

damages for that portion of the conspiracy period extending from January 1, 2000 through July 31, 2003.[3]

The elements of fraudulent concealment in an antitrust case are: (1) concealment by conspirators; (2) the plaintiff's ignorance of the violation until a point within four years of commencing its lawsuit; and (3) the plaintiff's exercise of reasonable diligence.  *See* R&R at 30 (citing, among other authorities, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 460 (2d Cir. 1974); *New York v. Hendrickson Bros. Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).  The first element – that of "concealment" – may be proven "by showing either that the defendant took affirmative steps to prevent the plaintiffs' discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Hendrickson*, 840 F.2d at 1083; *see also* R& R at 31.

Under *Hendrickson*, price-fixing conspiracies are self-concealing. 840 F.2d at 1083-84. Therefore, the complaint, which alleges that the price-fixing conspiracy here "was inherently self-concealing," is sufficient.  Compl. ¶¶ 178, 192; *see also In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) (where price-fixing is alleged, "there is no need to require the pleading of affirmative actions taken by the defendants to prevent the plaintiff's discovery of its claim"); *In re Initial Pub. Offering Antitrust Litig. ("IPO")*, No. 00 Civ. 7804, 2004 WL 487222, at *4 (S.D.N.Y. Mar. 12, 2004) (following *Hendrickson* and *Nine West*).

Relying largely on *In re Publication Paper Antitrust Litigation*, No. 304 MD 1631, 2005 WL 2175139, at *4 (D. Conn. Sept. 7, 2005), the *Benchmark* defendants argue nonetheless that

---

[3] The *Benchmark* defendants suggest that the adequacy of plaintiffs' fraudulent concealment allegations will "affect" the scope of discovery in this litigation.  Obj. at 3.  However, the appropriate scope of discovery in an antitrust conspiracy case is determined not by the limitations period, but by the temporal scope and nature of the conspiracy alleged.  *See, e.g., In re Sulfuric Acid Litig.*, 231 F.R.D. 351, 357 n.5 (N.D. Ill. 2005); *Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 218 (D. Del. 1985) (citing authorities).  *Cf. Cont'l Ore v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 709-10 (1962) (admitting pre-limitations period evidence at trial); *FTC v. Cement Inst.*, 333 U.S. 683, 704-05 (1948).

allegations of a self-concealing conspiracy, standing alone, are insufficient.  *See* Obj. at 6-7.

Magistrate Judge Pohorelsky, however, found that "there is enough factual matter in the

complaint and the surrounding context to bear out" plaintiffs' allegation that the price-fixing

conspiracy here was in fact inherently self-concealing.  R&R at 34.  Specifically, plaintiffs allege

that they were "conditioned by experience in dealing with [the *Benchmark*] Defendants and

Named Co-Conspirators" to expect surcharges, from time to time, as part of what "Plaintiffs

believed to be a competitive industry."  Compl. ¶ 180.  In consequence, public surcharge

announcements "constituted implicit statements" that the surcharges resulted from "legitimate

competitive market forces."  *Id.*  Indeed, concealment of the conspiracy was essential because

plaintiffs "would not have [] tolerated" any surcharge "that was openly collusive."  *Id.*; *see also*

*id.* ¶ 189.  Thus, the complaint adequately alleges a self-concealing conspiracy even under the

*Publication Paper* court's reading of *Hendrickson*.

Similarly, Magistrate Judge Pohorelsky correctly held (R&R at 31-32) that plaintiffs'

complaint pleads affirmative acts of concealment sufficient to satisfy the alternative concealment

prong. The complaint alleges that the *Benchmark* defendants and Named Co-Conspirators: (1)

agreed "not to discuss publicly or otherwise reveal the nature and substance" of their

conspiratorial activity (Compl. ¶ 176); (2) "met and communicated secretly concerning the

pricing and marketing of Airfreight Shipping Services so as to avoid detection" (*id.* ¶¶ 177, 146,

191); (3) "gave false and pretextual reasons for their Surcharges," ascribing them "to normal

market forces and considerations, including increases in costs;" (*id.* ¶¶ 179, 181, 191); (4)

"privately exchang[ed] price and cost information" to monitor and enforce surcharge levels and

to jointly increase carrier yields (*id*. ¶¶ 138, 167-68); and (5) "secretly met and communicated

about compliance" with their collusive agreements (*id.* ¶ 146).  The complaint further alleges

- 4 -

secret meetings at which the *Benchmark* defendants and the Named Co-Conspirators agreed to, communicated and implemented their collusive fuel surcharges.  Compl. ¶¶ 134, 135 (February 14, 2001 meeting that included Malaysia Airlines, among others), 137 (meetings at the JFK Airport Air Cargo Association that included China Airlines and EVA, among others), 140 and 141 (BAR-CSC-I and the ACCS activities that included Air India, Malaysia Airlines and China Airlines, among others); *see also id.* ¶¶ 148-49, 153-55, 157-59, 163-65 (alleging secret meetings and communications regarding the other collusively-imposed surcharges).

The complaint further identifies, as examples, specific public representations by JAL, Cargolux, SAS, British Airways, Air France and KLM, in which these co-conspirators falsely attributed surcharges to cost changes.  Compl. ¶¶ 182-86; *see also id.* ¶¶ 187, 189 (alleging similar public statements explaining the surcharges as "the normal result of competitive market forces").[4]

These allegations meet any requisite particularity requirement under Rule 9(b).  The affirmative acts alleged here are – as Magistrate Judge Pohorelsky recognized – plainly sufficient.[5]

The complaint further alleges that plaintiffs had neither actual nor constructive knowledge of the facts constituting their antitrust claims, and could not, in the exercise of

---

[4] Acts of the *Benchmark* defendants' co-conspirators may, of course, be attributed to the *Benchmark* defendants themselves for fraudulent concealment purposes.  *Hendrickson*, 840 F.2d at 1084-85; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008) ("[f]raudulent concealment . . . may be established through the acts of co-conspirators," relying on *Hendrickson* and *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir.1989) (collecting authorities)).

[5] *See, e.g., Greenhaw v. Lubbock Cnty. Beverage Ass'n*, 721 F.2d 1019, 1030 (5th Cir. 1983) ("secret agreements and covert price-setting sessions"), *overruled on other grounds*, *Int'l Woodworkers v. Champion Int'l*, 790 F.2d 1174, 1181 n.8 (5th Cir. 1986); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788-89 (N.D. Cal. 2007) (secret meetings and agreement); *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 372 (D.N.J. 2001) (conspirators urged to maintain secrecy); *In re Vitamins Antitrust Litig.*, No. Misc. 99-197, 2000 WL 1475705, at *3 (D.D.C. May 9, 2000) (secret meetings and instructions); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1031 (N.D. Miss. 1993) (meetings and telephone calls).  For pretextual explanations of price changes, *see, e.g.*, *In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1235-36 (D. Kan. 2010); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1110 (N.D. Cal. 2008); *United Nat'l Records, Inc. v. MCA, Inc.*, 609 F. Supp. 33, 36 (N.D. Ill. 1984).

reasonable diligence, which they exercised, have discovered the conspiracy before February 14, 2006, when government antitrust investigations and industry raids first became public.  Compl. ¶¶ 173-81, 189-93.  Magistrate Judge Pohorelsky correctly held these allegations sufficient. R&R at 35-39.

The *Benchmark* defendants contend that in order to adequately plead due diligence, plaintiffs must allege that they made a specific inquiry into the existence of a conspiracy that they had no reason to suspect existed.  *See* Obj. 8-10.  This argument is contrary to law.  In *Conmar Corp. v. Mitsui & Co. (U.S.A.),* 858 F.2d 499, 504 (9th Cir. 1988), the Ninth Circuit explained that the diligence element "is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person."  As Magistrate Judge Pohorelsky wrote, "[i]f the announcement of lockstep price increases were curious, even somewhat suspicious, they still did not provide notice to the plaintiffs.  Due diligence does not demand such unmitigated cynicism on the part of consumers."  R&R at 37; *see also Richards v. Mileski*, 662 F.2d 65, 71 (D.C. Cir. 1981) (one need not "proceed from the outset as if he were dealing with thieves"); *Rubber Chems.*, 504 F. Supp. 2d at 788 (one has no duty "to scout around to uncover claims which they have no reason to suspect they might have").

Even if plaintiffs had inquired, they lacked access to contemporaneous information that would have exposed the pretextual explanations that the conspirators gave for their agreed-upon surcharges. Accordingly, any inquiry before the DOJ and foreign enforcer investigations came to light could not and would not have led to discovery of the conspiracy.  *See* Compl. ¶¶ 173-181, 189-93.  *See, e.g., Nine West*, 80 F. Supp. 2d at 193 (due diligence was satisfied where plaintiffs alleged that they could not have discovered the conspiracy);  *Vitamins*, 2000 WL 1475705, at *4 (to toll the limitations period, "actual proof of an investigation is not required").

The *Benchmark* defendants also argue that, because surcharges were publicly announced, plaintiffs should have investigated. Obj. at 9-10.  However, Magistrate Judge Pohorelsky properly rejected the *Benchmark* defendants' 20/20 hindsight argument.  Knowing today about the government investigations and guilty plea admissions of conspiracy, the Court said, "it makes sense in retrospect that the surcharge announcements and increases should have triggered some inquiries on the plaintiffs' part.  But *Twombly* stands for the proposition that parallel conduct by itself – which is basically what the announcements were – does not give rise to a plausible claim, and the same consideration should hold when considering whether these announcements effectively put the plaintiffs on notice of the cause of action."  R&R at 36.[6]

*In re Merrill Lynch Ltd. Partnerships Litig.*, 7 F. Supp. 2d 256 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998), the authority on which the *Benchmark* defendants principally rely (Obj. at 8-9), was a RICO case alleging fraud in the sale of partnership interests.  The source of the plaintiffs' injury there, the circumstances surrounding it, the existence of comprehensive written materials directed specifically to the partnership interests purchased, and the nature of the claim itself all are different from the facts underlying this action.  Therefore, the decision is inapposite.

In any event, Magistrate Judge Pohorelsky correctly recognized (R&R at 38) that fact issues preclude dismissing plaintiffs' fraudulent concealment allegations at the pleading stage. *See, e.g., IPO*, 2004 WL 487222, at *5;  *Aspartame*, 2007 WL 5215231, at *6.

---

[6] *See also Vitamins*, 2000 WL 1475705, at *5 ("market trends as a matter of law do not constitute notice" of price-fixing); *In re Aspartame Antitrust Litig.*, No. 2:06-CV-1732, 2007 WL 5215231, at *7 (E.D. Pa. Jan. 18, 2007) (collecting authorities); *IPO*, 2004 WL 487222, at *5 (public availability of underwriting fees did not put stock purchasers on notice that underwriters "were possibly colluding and conspiring"); *United Nat'l Records*, 609 F. Supp. at 37 (knowledge of price increases "does not mean the plaintiffs knew or should have known that defendants were allegedly agreeing to fix prices").

**2.      Complaint Allegations Concerning Air India and EVA (R&R at 16-20, 24-29)**:

Air India and EVA argue that Magistrate Judge Pohorelsky erroneously declined to dismiss where, they assert, the complaint fails to plead overt acts by either defendant after August 1, 2003.  Obj. at 11-12.  But Magistrate Judge Pohorelsky correctly held that "[t]here is no requirement that the plaintiffs identify specific conduct on the part of the [Benchmark] defendants during the limitations period . . . .  That all of the particular allegations against the *Benchmark* defendants occurred prior to the limitations period . . . offers little reason to find that the claim against them is barred by the statute of limitations."  R&R at 29.

The complaint alleges conspiratorial meetings in which Air India and EVA participated and pleads other conduct from which their participation in the conspiracy can be inferred (Compl. ¶¶ 137, 140-41, 148-49, 151-52), while also establishing the conspiracy's continuation until at least February 14, 2006. *Id.* ¶¶ 98-113 (guilty plea admissions); *see also* R&R at 27.  Under substantive conspiracy law, Air India and EVA are jointly and severally liable for all acts of, and damages caused by, their co-conspirators during the conspiracy, regardless of when either defendants' own participation began.[7]  Moreover, even pre-limitations period conduct may be admitted to prove Air India's and EVA's participation in and liability for the conspiracy.[8]  Finally, Air India and EVA sold airfreight shipping services at fixed prices throughout the conspiracy period.  R&R at 27; *see also Klehr v.  A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)

---

[7] *See*, *e.g.*, *United States v. Pizzonia*, 577 F.3d 455, 466 (2d Cir. 2009) (a single act in furtherance of conspiracy by co-conspirator during limitations period is sufficient to establish defendant's liability; once participation is shown, it is presumed to continue); *United States v. Salmonese,* 352 F.3d 608, 615-17 (2d Cir. 2003) (once a defendant's participation in a conspiracy is shown, that participation is presumed to continue until the last overt act of any co-conspirator in furtherance of the conspiracy); *Vitamins*, 2000 WL 1475705, at *11 ("a single overt act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits").

[8] *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654, 663 (7th Cir. 2002) (collusive action taken more than four years prior to the lawsuit's filing was "enough to enable a reasonable jury to infer that the agreement to fix prices was express"); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *3 (N.D. Ill. Nov. 5, 2009) (upholding a complaint alleging a conspiracy beginning with a March 1999 agreement running through 2004 meetings, attended by cooperating witness, and continuing to the present).

("each sale to the plaintiff, 'starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times,'" quoting 2 P. AREEDA & H. HOVENKAMP, ANTITRUST LAW ¶ 338B, AT 145 (REV. ED. 1995) (additional authorities omitted)).

Equally important, as demonstrated above, fraudulent concealment by Air India, EVA, the other *Benchmark* defendants, and the Named Co-Conspirators has tolled the statute of limitations, as has Clayton Act § 5(i). Thus, the conspiratorial meetings and communications alleged in the complaint all occurred within the applicable limitations period.

Air India's and EVA's additional argument – that the complaint must allege the role each of them played in the alleged conspiracy (Obj. at 12) – simply "is . . . incorrect." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010); *see also Hinds Cnty. v. Wachovia Bank, N.A.,* 700 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (plaintiffs "must make allegations, taken as true, supporting a plausible inference that Morgan Stanley participated in the alleged conspiracy," but they "need not necessarily provide any particular details about conduct undertaken by Morgan Stanley in furtherance of the conspiracy").

**3.     Air Transport Agreements (R&R at 48-56):** Magistrate Judge Pohorelsky correctly held that Malaysia Airlines and Air India are not immune from liability for their alleged price-fixing as a result of the U.S.-Malaysia and U.S.-India Air Transport Agreements ("the ATAs").[9]  The ATAs are not treaties, but executive agreements that say nothing about price-fixing or the Sherman Act, and they do not conflict with or supersede U.S. antitrust laws.

---

[9] *See* Air Transp. Agreement Between the Gov't of India and the Gov't of the United States of Am., dated Apr. 14, 2005 ("U.S.-India ATA") (Declaration of Joshua D. Roth ("Roth Decl.") (ECF No. 1280)**,** Ex. 4); Air Transp. Agreement Between the Gov't of the United States of Am. and the Gov't of Malaysia, dated June 21, 1997 ("U.S.-Malaysia ATA")  (*Id.* at Ex. 5).  Because the U.S.-India ATA was not executed until April 14, 2005, near the end of the class period, it could not, in any event, apply to plaintiffs' claims arising before that date.

**There is no conflict between the ATAs and the Sherman Act.**  International agreements do not supersede statutes unless: (1) "there is a 'positive repugnancy between them'" that is "irreconcilable"; and (2) "there is 'some affirmative showing of an intention to repeal.'" *Blanco v. United States*, 775 F.2d 53, 61 (2d Cir. 1985) (citations omitted).  Nowhere do the ATAs with Malaysia or India state that they supersede the Sherman Act or that price-fixing is immunized, and there is no evidence that the contract-parties so intended.  Rather, the ATAs' preambles demonstrate that they were intended to "promote an international aviation system based on competition among airlines" and to "encourage . . . innovative and competitive prices." *See* Roth Decl. (ECF No. 1280), Exs. 4 and 5.  Thus, Magistrate Judge Pohorelsky found that "it takes a somewhat skewed interpretation" to find a conflict, and he properly declined to limit the Sherman Act's "broad reach . . . on the basis of questionable, ambiguous provisions that do not naturally lend themselves to such an interpretation." R&R at 53, 56.[10]

Nevertheless, Malaysia Airlines and Air India suggest that there is no other "explanation of what the purpose or function [of Article 12 of the ATAs] could possibly be" if not to preclude private plaintiffs from suing for antitrust violations. Obj. at 18.  But it is well documented that the purpose of "double disapproval pricing" provisions in "Open Skies" agreements, such as Article 12 in the U.S.-Malaysia and U.S.-India ATAs, is to prevent one country from unilaterally suspending a carrier's fares, as in the prior system of "country-of-origin pricing."  *See* Adam L. Schless, *Open Skies: Loosening the Protectionist Grip on International Civil Aviation*, 8 Emory

---

[10] The decisions cited by Malaysia Airlines and Air India involved very different circumstances.  The ATA in *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 872 F. Supp. 52 (S.D.N.Y. 1994), contained language that expressly permitted code-sharing and was therefore held to preclude a claim that code-sharing was prohibited by the Sherman Act.  *See id.* at 62.  And the Supreme Court's conclusion in *Cook v. United States*, 288 U.S. 102 (1933), was based on a detailed analysis of the treaty's history, which demonstrated that it was intended to resolve diplomatic problems caused by the Tariff Act.  *See id.* at 112-18.

Int'l L. Rev. 435, 448 (1994).  Article 12 simply has nothing to do with collusive price-fixing, or with the ability of private plaintiffs to seek damages for violations of the Sherman Act.

**The ATAs do not limit private civil damage actions.**  As Magistrate Judge Pohorelsky recognized, the ATAs are "between governments, set[] limits on what *government* actions may be taken, and do[] not purport to affect the rights of private parties."  R&R at 49 (emphasis in original); *see also Air Transp. Ass'n v. City of L.A.*, 844 F. Supp. 550, 558 (C.D. Cal. 1994) ("There is no evidence that the [ATA] provision cited by the Airlines was meant to confer any rights on individual airlines.").[11]  Malaysia Airlines and Air India attempt to convert this private dispute into governmental action simply because this Court is part of the United States Government.  Magistrate Judge Pohorelsky correctly rejected this interpretation as "not the most natural reading" of the ATAs, noting that "the only way those provisions would apply would be to construe them in such a way as to create confusion, ambiguity, and inconsistency."  R&R at 50.[12]

Even if the ATAs imposed limits on United States court proceedings, they would not apply to claims for damages from past price-fixing.  Indeed, Article 12 of the ATAs does not address collusive price-fixing at all and is limited to "(a) prevention of unreasonably discriminatory prices or practices; (b) protection of consumers from prices that are unreasonably

---

[11] The reliance by Malaysia Airlines and Air India on statutes that allow the Government to file lawsuits but do not create private rights of action is misplaced.  *See* Obj. at 20.  The Sherman and Clayton Acts expressly permit private parties to sue.  *See* 15 U.S.C. §§ 1, 15.

[12] In *Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation*, 361 F.3d 676 (2d Cir. 2004), also cited by Malaysia Airlines and Air India, the Second Circuit had little difficulty concluding that the "Russian Government" – akin to the U.S. Cabinet – was part of the Russian Federation.  *See id.* at 692.  But the court did not address whether a court ruling in a civil action would constitute state action.  The court's reference to "judicial or any other functions" was a quotation from a United Nations document that the Second Circuit emphasized was "not a primary or constitutive source of authority on international law" and, in any event, was not central to the court's analysis, as the facts of the case did not involve judicial actors.  *See id.* at 689 & n.13.  And *Shelley v. Kraemer*, 334 U.S. 1 (1948), also cited by Malaysia Airlines and Air India, concerned state action for purposes of the Fourteenth Amendment and has little relevance to the construction of ATAs.

high or restrictive due to the abuse of a dominant position; and (c) protection of airlines from prices that are artificially low due to direct or indirect governmental subsidy or support."  U.S.-Malaysia ATA, Art. 12(1); U.S.-India ATA, Art. 12(1).

Under the interpretation proposed by Malaysia Airlines and Air India – which Magistrate Judge Pohorelsky described as "inconceivable" (R&R at 53) – the omission of price-fixing from this list would mean that the United States government would be unable even to engage in consultations on the subject (because such consultations are limited to the circumstances in Article 12) *and* that a United States court would be barred from hearing price-fixing claims (because consultations would be the exclusive remedy).  This would have the unintended effect of completely immunizing price-fixing conduct.

Moreover, the ATAs refer only to "unilateral action to ***prevent*** the inauguration or continuation of a price proposed to be charged or charged by . . ."  U.S.-Malaysia ATA, Art. 12(3) (emphasis added); U.S.-India ATA, Art. 12(3) (emphasis added).  They say nothing about compensating victims of price-fixing cartels for amounts they were overcharged in the past.

**The ATAs do not confer antitrust immunity.**  Significantly, the ATAs do not themselves confer antitrust immunity. Instead, an "Open Skies" agreement is a ***prerequisite*** for applying to receive antitrust immunity.  And before granting that immunity, the U.S. U.S. Department of Transportation ("DOT") must first determine that immunity is "required by the public interest" – a finding that the DOT has not made here.  49 U.S.C. § 41308; *see also* Warren L. Dean, Jr. and Jeffrey N. Shane, *Alliances, Immunity, and the Future of Aviation*, 22 No. 4 Air and Space Lawyer 1, 18-19 (2010) ("because DOT had made it clear that an Open Skies agreement was an essential prerequisite to consideration of a request for [antitrust immunity],

foreign government interest in Open Skies relationships with the United States began to increase dramatically").

Malaysia Airlines has previously conceded as much.  Following the 1997 ATA between the United States and Malaysia, Malaysia Airlines applied to the DOT for antitrust immunity with Northwest Airlines, Inc.  *See* Exhibit A to the accompanying Declaration of Jay L. Himes ("Himes Decl.").  Malaysia Airlines stated that, "[i]n order to proceed with the alliance, and to make effective use of the open skies agreement between the United States and Malaysia, Northwest and Malaysia Airlines ***require*** antitrust immunity . . . . Absent immunity, the applicants would not be able to develop the efficiencies, provide the consumer benefits, and achieve the market expansion benefits that would be available through the proposed alliance." *Id.* at 6, 16 (emphasis added).  Thus, despite the ATA's existence, Malaysia Airlines recognized that it "will not and cannot carry out the full collaboration, coordination, and integration contemplated by their Coordination Agreement in the absence of antitrust immunity because of the substantial risk that they could be subject to costly and lengthy antitrust litigation . . . . This very real threat of a challenge makes the alliance impossible without immunity."  *Id.* at 25.

If Malaysia Airlines and Air India were correct that antitrust immunity flows automatically from ATAs without the need for express grants of DOT immunity, 49 U.S.C. § 41308 would be rendered meaningless.  *See* R&R at 56.  Such a result would be contrary to the statutory language, the views and historical practice of federal regulators, and the conduct of numerous airlines (including Malaysia Airlines) in specifically seeking antitrust immunity from the DOT notwithstanding the existence of ATAs.[13]

---

[13] Malaysia Airlines and Air India now argue that "[w]hile 49 U.S.C. § 41308 can provide an applicant with complete antitrust immunity, the ATAs provide Air India and Malaysia Airlines with a much more limited form of protection relating *solely* to pricing issues – other forms of potentially anti-competitive activity, such as illegal boycotts, tying arrangements, etc. are unprotected by the ATAs."  Obj. at 17.  But this position is contradicted by

**The ATAs were not enacted pursuant to a treaty.**  Magistrate Judge Pohorelsky

correctly rejected Malaysia Airlines's and Air India's attempt to "buttress the force of the ATAs

by suggesting that they were concluded to implement treaty obligations."  R&R at 51-52; *see*

*also United States v. Walczak*, 783 F.2d 852, 855 (9th Cir. 1986) (holding that ATAs do not

constitute "executive agreements pursuant to a treaty . . . because while there is some

relationship to the [1946 Chicago Convention on International Civil Aviation, 61 Stat. 1180], the

Convention does not literally authorize the President to enter into agreements implementing it.").

As they now concede, for an executive agreement to be entered into "pursuant to" a treaty, it

must be "expressly authorized by the text of an existing treaty" or its "making may be reasonably

inferred from the provisions of a prior treaty."  Obj. at 16.  But the only Chicago Convention

provision that they cite, Article 22, has nothing to do with pricing.  It concerns, instead, measures

"to *facilitate and expedite navigation* by aircraft between the territories of contracting States,

and to *prevent unnecessary delays* to aircraft, crews, passengers, and cargo." *Id.* (emphasis

added); 1946 Chicago Convention on International Civil Aviation, Article 22 (attached as Himes

Decl., Ex. B).  As Magistrate Judge Pohorelsky held, because "'congressional authorization to

make an executive agreement that would supersede federal law is not to be inferred lightly'…

inferring such an intent on the basis of a 65-year-old treaty that is silent on pricing and antitrust

issues is far too tenuous and speculative to supersede the Sherman Act."  R&R at 52 (quoting

RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 115 CMT. C).[14]

---

Malaysia Airlines's DOT application itself.  The activities that Malaysia Airlines previously said would be
"impossible" without DOT immunity are the same as those that Malaysia Airlines and Air India now say are
*permissible* without such immunity.  *See* Himes Decl., Ex. A at 6 (listing "pricing" as one of the planned
"coordination/integration undertakings"); *id.* at 16 (describing "[t]he comprehensive cooperation envisioned"); *id.* at
26 ("extensive discussions and coordination").

   [14] Because the ATAs are not "pursuant to" a treaty, they are sole executive agreements that do not supersede
federal law.  *See United States v. Guy W. Capps, Inc.*, 204 F.2d 655, 658 (4th Cir. 1953) ("the executive agreement
was void because it was not authorized by Congress and contravened provisions of a statute dealing with the very
matter to which it related."), *aff'd on other grounds*, 348 U.S. 296 (1955); *Swearingen v. United States*, 565 F. Supp.

Because the ATAs do not conflict with or supersede the Sherman Act, the Court should adopt Magistrate Judge Pohorelsky's recommendation to deny the branch of the motions of Malaysia Airlines and Air India to dismiss the complaint pursuant to the ATAs.

**Conclusion**

Accordingly, the Court should uphold Magistrate Judge Pohorelsky's rulings in all respects.  If the Court declines to adopt any part of the R&R, plaintiffs respectfully request leave to replead.

Dated: New York, New York
      October 19, 2010

Respectfully submitted,

| | |
|---|---|
| Robert N. Kaplan (RK-3100) | Michael D. Hausfeld |
| Gregory K. Arenson (GA-2426) | William P. Butterfield |
| Jason A. Zweig (JZ-8107) | Brent W. Landau |
| KAPLAN FOX & KILSHEIMER LLP | HAUSFELD LLP |
| 850 Third Avenue, 14th Floor | 1700 K Street, N.W., Suite 650 |
| New York, NY  10022 | Washington, DC  20006 |
| (212) 687-1980 | (202) 540-7200 |

By: _ /s/ Brent Landau_

Gary L. Specks (GS-8767)
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585

By: _ /s/ Gregory K. Arenson_

---

1019, 1021 (D. Colo. 1983) ("executive agreements do not supersede prior inconsistent acts of Congress"); *see also* U.S. Dep't of State, 11 Foreign Affairs Manual 723.2-2(C) ("The President may conclude an international agreement on any subject within his constitutional authority so long as the agreement is not inconsistent with legislation enacted by the Congress in the exercise of its constitutional authority.") (Himes Decl., Ex. C).

Hollis L. Salzman (HS-5994)          Howard J. Sedran
Jay L. Himes (JH-7714)              Austin B. Cohen
Gregory S. Asciolla (GA-2222)      LEVIN, FISHBEIN, SEDRAN
LABATON SUCHAROW LLP          & BERMAN
140 Broadway                     510 Walnut Street
New York, NY  10005           Philadelphia, PA 19106
(212) 907-0700                  (215) 592-1500

By: ___*/s/ Jay L. Himes*___        By:___/s/ Howard J. Sedran_____

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Jay L. Himes, certify that on October 19, 2010, I caused a true and correct copy of

Plaintiffs' Opposition to the Objections of Air India, China Airlines, Ltd., Eva Airways Corp.,

and Malaysia Airlines to the September 22, 2010 Report and Recommendation of Magistrate

Judge Pohorelsky, to be served through this Court's ECF System on all participating counsel and

to the following parties via Federal Express:

Jan Lillieborg, *pro se*
Badhasvagen 11
165 71 Hasselby, Sweden

Keith H. Packer, *pro se*
Winters View, lA Mountain Ash
Marlow Bucks, SL 7 30B
01628488760
United Kingdom

Dated: New York, New York
        October 19, 2010

                                        */s/ Jay L. Himes*
                                        Jay L. Himes