UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
IN RE

                                                  06-MD-1775

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION                            **ALL CASES**

M.D.L. No. 1775
----------------------------------------------------------x

**OPINION AND ORDER**

The defendants have moved to compel the plaintiffs to produce various documents which the plaintiffs have withheld on the ground that they are irrelevant and too burdensome to produce. Initially, the motion addressed document requests that sought information broadly characterized as "downstream" data – including documents concerning the plaintiffs' sales, costs and profits – and document requests seeking information about the plaintiffs' own possible involvement in collusive pricing practices in their sales to their customers. At oral argument, however, the defendants eschewed any desire to obtain downstream data concerning sales, pricing and profits, and agreed to restate the disputed requests accordingly.

The restated requests which are now the subject of the defendants' motion are found in the defendants' letter dated October 21, 2010. See document no. 1299. Although the requests no longer seek specific sales and pricing data, most of the requests concern the plaintiffs' pricing of their services to their customers, including the manner in which pricing decisions were made by the plaintiffs as well as communications among the plaintiffs concerning their pricing decisions and the data underlying those decisions. As such, the requests continue to seek information about markets that are "downstream"

from the market in which the defendants sell their services to the plaintiffs, and the plaintiffs continue to contend that the information is therefore irrelevant to the issues in this action.[1]

A brief statement of the claims in this antitrust class action, and the facts underlying them, is useful in understanding the disputed issues. The plaintiffs suing on behalf of the class have alleged that the defendants engaged in collusive price-fixing with respect to the air cargo transportation services they provided to the classmembers. All but one of the plaintiffs named as class representatives are freight forwarders who provide various services to their customers in connection with the transportation of goods. Among the services they provide is purchasing air freight shipping services from the defendants, and it is the purchase of these services that the plaintiffs complain was contaminated by a price-fixing conspiracy among the defendants. The price-fixing was allegedly accomplished by various means, but principally by agreements as to the amounts of various surcharges to be added to the cost of air freight. In order to prove their case, the plaintiffs will have to show not only that such agreements existed, but that they resulted in overcharges for air freight shipping, that is charges that exceeded the charges that would have applied in the absence of such agreements. Thus the proof will require an examination of the market in which the plaintiffs purchased air freight shipping services from the defendants, to assess the various factors that affected pricing in

---

[1] Relevance, for purposes of discovery, is defined in Rule 26(b)(1) as "any nonprivileged matter relevant to any party's claim or defense," and includes information which, though not itself admissible, is "reasonably calculated to lead to the discovery of admissible evidence."

that market and determine whether the pricing of air freight shipping during the time when the conspiracy was operating was higher than it otherwise would have been.

The plaintiffs have produced all the pricing data and other information in their possession concerning their purchases of air freight from the defendants. What the defendants seek, however, is information about the pricing of the freight forwarding services provided by the plaintiffs to their customers, a component of which included air freight shipping charges. The vast majority of courts that have entertained discovery disputes concerning discovery of such "downstream" information have declined to compel plaintiffs to produce discovery about those matters. Their decisions stem primarily from the Supreme Court's opinions in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which held that defendants could not assert a "pass-on" defense in price-fixing cases brought under the Clayton Act,[2] and that only direct purchasers of goods and services could maintain actions under the Act against alleged collusive price-fixers. A primary consideration animating those decisions was an unwillingness to complicate the proof in price-fixing cases "with attempts to trace the effects of the overcharge on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois Brick Co.*, 431 U.S. at 725. Thus, for the most part courts have found information about such "downstream" matters to be irrelevant and therefore beyond the

---

[2] A "pass-on" defense rests on the notion that a direct purchaser of goods who then resells the goods is not injured by collusive overcharges because the overcharges are "passed on" to those to whom the goods are resold.

scope of permissible discovery. *E.g., Meijer, Inc. v. Abbott Laboratories*, 251 F.R.D. 431, 433-34 (N.D. Cal. 2008); *In re Aspartame Antitrust Litigation*, No. 2:06-CV-1732-LDD, 2008 WL 2275528, at*4-6 (E.D. Pa. Apr. 8, 2008); *In re K-Dur Antitrust Litigation*, No. 01-1652, MDL Docket No. 1419, 2007 WL 5302308, at *11-12 (D.N.J. Jan. 2, 2007); *In re Automotive Refinishing Paint Antitrust Litigation*, No. MDL 1426, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006).

Against the tide of cases precluding discovery of "downstream" information, the defendants advance decisions by two courts that have permitted such discovery based on their determination that the information might be relevant to class certification issues. *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181 (11th Cir. 2003); *In re Urethane Antitrust Litigation*, 237 F.R.D. 454 (D. Kan. 2006). In *Valley Drug*, the Eleventh Circuit found that downstream data was relevant to the question whether substantial conflicts of interest existed between the class representatives and some members of the class who appeared to have benefitted from the antitrust behavior that allegedly caused harm to other members of the class. 350 F.3d at 1188-93. In *Urethane*, the district court held that the downstream data requested by the defendants bore directly on the class-certification questions of whether common questions of law or fact were predominant and whether the class representatives' claims were typical of the class. 237 F.R.D. at 462-64.

Here the defendants argue that the information they seek is crucial to an examination of the predominance requirement for class certification. *See* Fed. R. Civ. P.

23(b)(3); Def. Ltr, Sept. 10, 2010, at 2. Specifically, they contend that a central question for determining the appropriateness of class certification in this case is whether the plaintiffs will be able to demonstrate antitrust injury by means of common, as opposed to individualized, proof of injury. *See, e.g., Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.* 502 F.3d 91, 106 (2nd Cir. 2007). To test that issue, the defendants contend they need to understand the markets for the services provided by the plaintiffs to their customers, and in particular to examine whether supply and demand conditions in those markets differed materially for different types of customers of the various plaintiffs' services. Although the defendants provide examples of how market conditions for the plaintiffs' services might affect the demand for those services, the defendants have not adequately explained why that is particularly relevant to the examination of the market that is at issue in this litigation, i.e, the market in which the defendants provided their services to the plaintiffs. It is the demand and supply conditions in that market that will be scrutinized as part of the effort to determine whether collusive price-fixing resulted in overcharges – and as a result antitrust injury – to the plaintiffs.

The decision in *Valley Drug*, which was not a price-fixing case, is not particularly helpful to the defendants. The court there was focused, not on the predominance requirement of Rule 23(b)(3), but on the "adequacy of representation" requirement of Rule 23(a)(4). Because of characteristics unique to the pharmaceutical markets at issue in *Valley Drug*, there was considerable evidence to indicate that some class members obtained enhanced profits as a result of the alleged anticompetitive conduct at issue

there. The court concluded that the interests of those class members were potentially antagonistic to those of the class representatives, and that an examination of "downstream data" was therefore necessary to determine whether or not those class members actually did receive a net economic benefit from the anticompetitive conduct that would preclude certification of a class that included those members. *Valley Drug*, 350 F.3d at 1190-92. No prima facie showing of potential conflicts within the class like those identified in *Valley Drug* has been made by the defendants here. Nor, for that matter, is there any demonstration that the markets at issue here share any of the unique market characteristics the court in *Valley Drug* found significant to its decision. As a result, *Valley Drug* is simply inapposite to the discovery dispute here.

The decision in *Urethane* involved circumstances somewhat closer to those presented here, but is not persuasive. There the court concluded, without explanation, that broad categories of information concerning the downstream markets in which the plaintiffs sold their products might be relevant to the class certification issues of typicality and predominance. *See Urethane* 237 F.R.D. at 459-60, 464. Here, the defendants are not questioning typicality. Rather, as noted above, they argue that the information they seek may be relevant to the predominance issue because it might bear on whether the plaintiffs' claims of injury here are susceptible of common proof. On that score, the court in *Urethane* asserted that "changes in supply, demand, pricing and discounting" in downstream markets might demonstrate differences in the product market for different purchasers such that individual issues "overwhelm" any common issues. *Urethane*, 237

F.R.D. at 459-60.  The court seemed to overlook the fact that the common issues to be resolved, if any, were not in the downstream markets but in the upstream market where the plaintiffs were alleging they were overcharged.  The court did not explain how changes in downstream markets would affect the proof on whether the plaintiffs had to pay higher prices because of price-fixing, and thus did not speak to the concern advanced by the defendants here, namely, whether that can be established by common, as opposed to individualized, proof.  As a result, the *Urethane* opinion does not provide guidance for resolving the discovery dispute here.

      The defendants have cited one other case, decided by this court, in which some discovery concerning downstream data was ordered, but the case is readily distinguishable.  In that case, the court permitted some discovery concerning the pricing of the claimant's products because the information was relevant to the claimant's contention that their business did not grow and become more profitable because of their adversary's price-fixing conduct.  *See Air Tech Equip., Ltd. v. Humidity Ventilation Sys., Inc.*, No. 05-CV-77, 2006 WL 3193720, at *2 (E.D.N.Y. Nov. 2, 2006).  The claimant intended to prove that contention by comparing evidence of their total sales before the wrongful conduct with their total sales after the wrongful conduct.  The court concluded that information about the claimant's pricing might provide an alternative explanation for the lack of growth and profit, namely, that it was attributable, not to any wrongful conduct, but rather to the claimant's pricing practices.  In contrast, the plaintiffs here are alleging injury solely on the basis of unlawful overcharges; they do not seek to obtain

damages for lost profits or any other impact on their business.  Indeed, it was on this basis that the court in *Air Tech* distinguished its decision from the myriad cases that have denied downstream discovery.  *Air Tech*, 2006 WL 3193720, at *3 n.9.

The remaining discovery requests in dispute seek information about possible price-fixing by the plaintiffs themselves.  The Department of Justice ("DOJ") has opened an investigation into price-fixing by freight forwarders, but the class representatives here all assert that they have not been subpoenaed or otherwise approached by DOJ concerning the investigation and have provided no documents to DOJ in connection with the investigation.  In any event, such information would not be relevant to any defenses that might be advanced here.  The Supreme Court has clearly expressed that an *in pari delicto* defense – i.e., a defense that rests on a claimant's own fault or unclean hands – may be asserted in an antitrust case only where, as a direct result of the claimant's conduct, the claimant "bears at least substantially equal responsibility for the violations he seeks to redress."  *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985).  Here, of course, the violations the plaintiffs seek to redress are overcharges they allege were imposed on them by the defendants.  The information sought by the defendants concerns, not those violations, but rather an entirely different set of possible violations.  Accordingly, the information sought by the defendants cannot support an *in pari delicto* defense here and is not otherwise relevant.

For the foregoing reasons, the defendants' motion to compel discovery is DENIED.

                                                **SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:    Brooklyn, New York
             November 24, 2010