

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

January 10, 2011

Harvey J. Wolkoff
T +1 617 951 7522
F +1 617 235 0224
harvey.wolkoff@ropesgray.com

**BY CM/ECF (WITH A COURTESY COPY BY HAND)**

Honorable Viktor V. Pohorelsky
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *In re Air Cargo Shipping Services, Antitrust Litigation*, Civil Action No. 06-MD-1775

Dear Magistrate Judge Pohorelsky:

Preliminary Statement

Atlas Air Worldwide Holdings, Inc. (the "Holding Company") hereby opposes Plaintiffs' motion to compel production of documents responsive to Request No. 3 of Plaintiffs' Second Set of Requests for Production to the Holding Company ("Request"). Specifically, Plaintiffs move to compel production of "All executed agreements and final transaction documents related to DHL's purchase of an interest in Polar Worldwide." Ex. 1 at 5.

Plaintiffs have not established how their request for documents pertaining to *non-party* DHL's purchase of an interest in *non-party* Polar Air Cargo Worldwide ("PACW") meets the higher "good cause" burden for supplemental document requests imposed by the parties' Letter Agreement of November 24, 2009 ("Letter Agreement"). Ex. 2 at 3. In reality, Plaintiffs' Request is nothing but a sweeping attempt to determine if defendant Polar Air Cargo, LLC ("Polar") maintained the financial resources after its restructuring and sale to be able to pay a judgment, should one be entered. But this issue is not ripe, and may well never become ripe. Discovery related to the recovery of potential damages—on claims not yet adjudicated—is wholly premature, and will not become ripe unless and until Plaintiffs actually obtain a judgment. Plaintiffs have not established "good cause" as to why they require such documents. Accordingly, this Court should deny Plaintiffs' motion to compel.

The Transaction at Issue

On June 27, 2007, in a publicly-disclosed transaction, Polar sold its certificates of public conveyance and necessity, exemptions, designations, frequency allocations and related operating authority. *See* Ex. 3.[1] This sale was part of an arm's length transaction with DHL, in which DHL, a foreign corporation, acquired 49 percent of PACW's stock. *See* Ex. 4. The transaction was structured by business and regulatory lawyers to account for statutory limits on foreign ownership and U.S. Department of Transportation precedents

---

[1] Concurrent with the transaction, Polar converted from a California corporation to a California limited liability company.

ROPES & GRAY LLP

Honorable Viktor V. Pohorelsky　　　　　　　- 2 -　　　　　　　　　　January 10, 2011

concerning how a foreign investment of this type must be structured. *See* Ex. 5 at 5 (outlining limits on foreign ownership, management, and investment); *see also* 49 U.S.C.A. § 40102(a)(2), (15) (same). The sale was made in the ordinary course of business, and has nothing to do with the pending lawsuit at bar.

Argument

Plaintiffs' motion to compel production of "executed agreements and final transaction documents related to DHL's purchase of an interest in Polar Worldwide" should be denied. The DHL transaction is wholly unrelated to the claims or defenses of any party in this action, and the Request fails to meet the higher burden for supplemental document requests imposed by the parties' Letter Agreement. Ex. 2 at 3 (In addition to relevance, Plaintiffs must show "good cause as to why Plaintiffs require such documents in view of the documents already obtained pursuant to this Letter Agreement or otherwise."). PACW and DHL are not—and have never been—parties to this action. Indeed, the Department of Justice ("DOJ"), in concluding its investigation into Polar's pricing practices, affirmatively stated that PACW was not a subject or target of the DOJ's inquiries. *See* Ex. 6. This Court should not allow Plaintiffs to conduct such a widespread "fishing expedition," particularly when the parties have agreed to a higher standard of "good cause" for the production of additional documents. *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (collecting cases) ("courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses.").

Plaintiffs reveal the true reason for their Request when they state, "Polar was left with little or no operations or assets of its own with which to pay an eventual judgment." Pls.' Mot. at 3. In other words, Plaintiffs are trying to get documents related to non-parties DHL and PACW because they are concerned that they will encounter difficulty collecting a judgment against Polar *if* Plaintiffs are successful in their claims and *if* damages are awarded. But such discovery is obviously not ripe, and may never become ripe.

Plaintiffs also insinuate that the DHL transaction was really a fraudulent conveyance, designed to shift defendant Polar's assets to a third party in the face of this litigation. This conspiracy theory is Oliver Stone-like to its core, and is completely unfounded. This was a publicly-disclosed transaction, involving an independent third-party (DHL), under the jurisdiction and auspices of the SEC—and, despite Plaintiffs' assertions of fraud, the transaction was the result of substantial consideration exchanged among the parties, since DHL did not obtain a 49 percent interest in an arms' length transaction with a public company for free, as disclosed in public SEC filings. *See* Ex. 4 at 2; Ex. 7, Oct. 14, 2010 Hr'g Tr., at 70:4-8 (this Court noting that "[s]omebody paid a lot of money for a piece of this company. So it's not a sham transaction.")

Moreover, the time for advancing a fraudulent conveyance claim, if ever, is after Plaintiffs obtain a judgment, if they ever do. Plaintiffs certainly have not, as of this date, alleged any such claim in their Complaint, and they certainly have not satisfied Fed. R. Civ. P. 9(b)'s heightened pleading requirements for fraudulent conveyances. Of course, Plaintiffs are not entitled to discovery related to a claim they have not even pled. *Wright v. City of New York*, No. CV 2003-2177(ENV)(MDG), 2006 WL 3694551, at *1 (E.D.N.Y. Dec. 13, 2006) quoting the Advisory Committee Notes to 2000 Amendments ("[T]he court … has authority to confine discovery to the claims and defenses asserted in the pleadings, and … the parties … have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

ROPES & GRAY LLP

Honorable Viktor V. Pohorelsky                - 3 -                          January 10, 2011


      Plaintiffs try to advance the theory that they need documents related to the DHL purchase of 49 percent of PACW to understand whether post-transaction cost and rates/surcharge data are comparable to similar data before the transaction.  It is respectfully submitted that this theory is merely a contrivance.  According to Plaintiffs' own assertions to this Court, Plaintiffs are using the transaction and cost data to compare rates and surcharges before and after the alleged conspiracy, "to see what happened in the absence presumably of a conspiracy."  *See* Ex. 7, Oct. 14, 2010 Hr'g Tr., at 58:18 - 59:6.  Polar has produced to Plaintiffs transaction and cost data from 2002 through March 31, 2009.  Therefore, Plaintiffs already have all the information they need to compare rates and surcharges for the period before and after the alleged conspiracy ended.  Plaintiffs have failed to explain how executed transaction documents with non-party DHL inform any such comparison.  In fact, there is absolutely no relationship between transaction documents from the DHL sale and post-2007 pricing data that came from the same database as the pre-2007 data.  Plaintiffs are not entitled to any additional information unless they can establish "good cause" and explain how such information is relevant to a claim or defense asserted in this action, which Plaintiffs have failed to do.

      Plaintiffs also state that "the requested documents are relevant because they go to the liability of AAWW for Polar's conduct," but they fail to explain how documents related to the purchase of an interest in non-party PACW by DHL, a third party, are relevant to the Holding Company's "domination and control of Polar."  Pls.' Mot. at 3.  Furthermore, Plaintiffs' 'piercing the corporate veil' theory is entirely without merit.  It is well established that 'piercing the corporate veil' is "an extreme remedy, sparingly used."  *See Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).[2]  The sale to DHL has nothing to do with a theory of piercing the corporate veil.  Moreover, the documents requested relate to a DHL transaction that occurred in mid-2007, well after the period of the alleged conspiracy through September 2006.

Conclusion

      The Holding Company has fulfilled its obligations in good faith with respect to Plaintiffs' Second Set of Requests for Production to the Holding Company.  The information now sought by Plaintiffs is not relevant and Plaintiffs have not met the heightened, agreed upon requirement of "good cause" as to why they are entitled to such documents.  Accordingly, this Court should deny Plaintiffs' motion to compel.

      Respectfully submitted,


      */s/ Harvey J. Wolkoff*
      Harvey J. Wolkoff

cc:    All counsel (via CM/ECF)

---

[2] Plaintiffs cite decisions from New York, Indiana, and Illinois in their motion (Pls.' Mot. at 3), but California law governs Plaintiffs' 'piercing the corporate veil' claim because California is the state in which the Holding Company's subsidiary, Polar, was incorporated.  *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC), 2007 WL 2044656, at *4 n.3 (S.D.N.Y. July 17, 2007) (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 683 n.101 (S.D.N.Y. 2006)) ("'Federal choice of law rules would most likely require application of the place of incorporation ….'").