# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AIR CARGO SHIPPING SERVICES, ANTITRUST LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO: ) ALL ACTIONS ) ) ) | 06-MD-1775 (JG)(VVP) |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' RULE 25(C) MOTION TO JOIN POLAR AIR CARGO WORLDWIDE, INC. AS A DEFENDANT

# TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................................................1

STATEMENT OF FACTS...............................................................................................3

ARGUMENT ....................................................................................................................5

I.   PLAINTIFFS ARE NOT ENTITLED TO JOIN PACW AS A DEFENDANT
     UNDER RULE 25(C) BASED ON SUCCESSOR LIABILITY AS A
     MATTER OF LAW. ..................................................................................................5

    A.   Polar Did Not De Facto Merge with PACW.............................................6

        1.   Continuity of the selling corporation, evidenced by the same
              management, personnel, assets and physical location.....................8

        2.   Continuity of stockholders accomplished by paying for the
              acquired corporation with shares of stock......................................10

        3.   Dissolution of the selling corporation. ..........................................12

        4.   Assumption of liabilities by the purchaser.....................................13

    B.   PACW Is Not a "Mere Continuation" of Polar. ........................................14

II.  EVEN IF SUCCESSOR LIABILITY WERE ESTABLISHED, THIS COURT
     SHOULD DENY JOINDER AS A MATTER OF THE EXERCISE OF ITS
     DISCRETION. ..........................................................................................................16

CONCLUSION ................................................................................................................17

Defendants Atlas Air Worldwide Holdings, Inc. ("the Holding Company") and Polar Air Cargo, LLC ("Polar") (together, "Defendants") and non-party Polar Air Cargo Worldwide, Inc. ("PACW") hereby oppose Plaintiffs' Rule 25(c) Motion to Join PACW as a Defendant.

## <u>INTRODUCTION</u>

On the heels of Magistrate Pohorelsky's decision denying their motion to compel documents relating to PACW,[1] Plaintiffs now try another tactic, moving to join PACW as a party defendant *almost four and a half years after* they filed their original Complaint.  Plaintiffs do not assert that PACW engaged in a price-fixing conspiracy or other antitrust violations that are within the scope of the Amended Complaint.  Rather, Plaintiffs' true reason for their motion at this late date is revealed on page 8 of their memorandum of law: "An early decision on Polar Worldwide's successor liability could facilitate settlement, as it would make clear that Plaintiffs' recovery will not be limited to Polar, which may be judgment-proof as a result of the asset transfer described above."  Plaintiffs are not content with waiting to see if they indeed ever obtain a judgment against Polar, and then whether Polar can satisfy that judgment.  Nor are they content with having already brought in as a defendant Polar's parent company, the Holding Company, on the basis of rote allegations repeated against every other air cargo defendant with a parent,[2] asserting without any facts that the Holding Company dominated Polar sufficiently to justify the extraordinary remedy of piercing the corporate veil.  Now Plaintiffs are going after another Polar affiliate, all in a transparent effort to locate assets to satisfy a judgment that has not been – and may never be – obtained.  *See Eng v. Battery City Car & Limousine Serv., Inc.*, No. 00 CIV 1615, 2001 WL 1622262, at *8 (S.D.N.Y. Dec. 18, 2001) ("It being far from certain that a judgment . . . ever will be obtained . . . it is far more efficient to resolve

---

[1] Magistrate Pohorelsky ruled that transaction documents relating to DHL's purchase of an interest in PACW were not relevant and denied Plaintiffs' motion to compel their production.  *See* Ex. A.

[2] *See*, <u>e.g.</u>, Compl. ¶¶ 38, 42, 52, and 64.

the merits of the dispute first, and then consider whether any judgment against [transferor] can be enforced against [transferee] . . .").  Therefore, Plaintiffs should not be permitted to continue their "deep pockets" fishing expedition.

Even apart from Plaintiffs' transparently inappropriate motive and the elapse of over four years, the plain fact is that Plaintiffs are not entitled to join PACW as a party defendant, as a matter of law.  The transaction targeted by Plaintiffs involved a purchase by a third party, DHL, of a 49% interest in the Polar business, and a complete shift in that business toward substantial activity with DHL as a new business partner, under the PACW umbrella.  Contrary to Plaintiffs' unsupported speculations, however, Polar was paid for its assets,[3] and continues to earn revenues of several million dollars annually through the subleasing of aircraft.  It is well established that an asset purchaser is not liable for a seller's debts absent a showing of specific exceptions, none of which applies in this case: Polar has not dissolved, but rather continues to sublease aircraft; PACW's operations have changed over the course of the past few years and are substantially different from Polar's business as conducted prior to the transaction; PACW's senior management has changed with the addition of DHL officers in senior positions at PACW; PACW's Board of Directors has changed, with only two Polar Board members remaining on the PACW Board; PACW's ownership structure has changed; PACW did not purchase Polar's assets with stock; and PACW did not assume Polar's liabilities.

---

[3] Plaintiffs do not attempt to square at least two of their speculations that are directly at war with each other, i.e., that Polar has no assets (which is not true) and that Polar agreed to pay the Department of Justice ("DOJ") $17.4 million and the Korea Fair Trade Commission ("KFTC") $681 million KRW (approximately $600,000 U.S.).  *Compare* Pls.' Mem. of Law at 8 *with* Pls.' Mem. of Law at 1-2.  (The amount actually paid to the KFTC differs from the amount announced in Pls.' Ex. 2 because it was subsequently reduced by the KFTC.)

## STATEMENT OF FACTS

In or about the winter of 2005, DHL began discussions about a joint venture opportunity with Polar involving DHL's purchase of an ownership stake in the company. *See* Ex. B, J. Dietrich affidavit, ¶ 4.  However, DHL is a foreign-owned company, and, as such, is subject to strict statutory and U.S. Department of Transportation ("DOT") limitations on foreign ownership of U.S. air carriers. *Id*. at ¶¶ 4, 6.  Because of this and various other business and tax considerations, the complex transaction was structured so that Polar sold a portion of its assets to PACW on June 27, 2007 for due consideration, in the form of a promissory note from the Holding Company; and the next day, June 28, 2007, DHL purchased a 49% non-controlling interest in PACW, representing a 25% voting interest in that company, in exchange for nine figures in cash and additional millions of dollars in working capital. *Id*. at ¶¶ 6, 9, 11.  Polar thereafter continued to do business as a California limited liability corporation, or LLC, engaged in the leasing and subleasing of airplanes. *Id*. at ¶¶ 8, 18.  The transaction (hereinafter referred to as the "June 2007 transaction") was made in the ordinary course of business, was fully disclosed to the Securities and Exchange Commission ("SEC") and was publicly disclosed in numerous SEC filings, was approved by the DOT, and had absolutely nothing to do with this lawsuit. *Id*. at ¶¶ 14-15.

As might be expected, with the new ownership came changes in the PACW business from the way Polar had previously conducted itself.  New DHL senior officers were brought in to help actively manage the company and to sit on PACW's Board of Directors, and PACW shifted to doing a material amount of business directly with DHL, on routes and flight times consistent with the DHL express network model, in contrast to Polar's "scheduled service" business. *Id*. at ¶¶ 16-17.  As an example, concurrent with the June 2007 transaction, DHL and PACW entered into a 20-year block space agreement in which PACW agreed to provide prioritized air cargo capacity to

DHL on dedicated aircraft, flying designated US to Asia routes, subject to strict on-time performance standards. *Id*. at ¶ 12. In exchange, DHL agreed to pay PACW certain "blocked space fees" and additional fees to compensate PACW should net costs exceed the "blocked space fees" during any given monthly billing period. *Id*. In a contemporaneous agreement, DHL agreed to bear PACW's operational costs and to assume certain associated financial risks after commencement of the DHL express network. *Id*. at ¶ 13.

PACW's business model and operations differ dramatically from Polar's business before the June 2007 transaction. Polar previously had flown primarily heavy freight with no timing guarantees (known as "scheduled service"), while PACW's business is now predominantly time-sensitive small package express service. *Id*. at ¶ 17. Polar did not have a primary customer, while DHL became PACW's anchor customer, accounting for more than 40% of PACW's overall revenues. *Id*. PACW only flies U.S. to Asia and Asia to Europe routes with occasional Middle East stops, while Polar operated a global network, including Europe to U.S. and South American routes that PACW does not fly. *Id*. Furthermore, DHL agreed to cover PACW's costs and bear PACW's financial risks as a result of the June 2007 transaction. *Id*. Polar never enjoyed similar financial protection. *Id*.

Moreover, Polar did not sell all its assets to PACW, and did not dissolve after the June 2007 transaction. *Id*. at ¶ 18. To the contrary, Polar maintains its own assets and corporate officers, continuing to lease aircraft and generating substantial revenues. *Id*. at ¶¶18-19. And, PACW did not assume Polar's liabilities as a result of the June 2007 transaction. *Id*. at ¶ 15. Indeed, in the Asset Conveyance Agreement between Polar and PACW, Polar explicitly retained liability for this civil suit. *Id*.

-4-

## ARGUMENT

**I.     PLAINTIFFS ARE NOT ENTITLED TO JOIN PACW AS A DEFENDANT UNDER RULE 25(C) BASED ON SUCCESSOR LIABILITY AS A MATTER OF LAW.**

A court may not grant a Rule 25(c) motion unless the moving party has proven as a matter of law that "a party is, in fact, a successor-in-interest."  *Software Freedom Conservancy, Inc. v. Best Buy Co., Inc*., No. 09 Civ. 10155, 2010 WL 4860780, at *3 (S.D.N.Y. Nov. 29, 2010) (internal citations omitted).  And, where facts are disputed in conjunction with a Rule 25(c) motion, a court may not weigh evidence to resolve them, but rather must deny the motion to join.  *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc*., 13 F.3d 69, 72 (3d Cir. 1993).

Plaintiffs have not shown and cannot show the necessary elements to warrant joinder of PACW as a defendant in this case.  As a threshold matter, the clear legal presumption is *against* joinder, and *against* holding a non-party corporation liable for the debts of another.  Thus, "[u]nder both New York law[4] and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the liabilities of the seller."  *Douglas v. Stamco*, No. 09-1390-cv, 2010 WL 337043, at *1 (2d Cir. 2010).  *Accord New York v. Nat'l Serv. Indus., Inc*., 460 F.3d 201, 209 (2d Cir. 2006); *Cargo Partner AG v. Albatrans, Inc*., 352 F.3d 41, 45 (2d Cir. 2003); *Doktor v. Werner Co.*, No. CV 10-2332, 2011 WL 52520, at *2 (E.D.N.Y. Jan. 4, 2011).

New York recognizes successor liability only in "certain exceptional circumstances." *Haywin Textile Prods., Inc. v. Int'l Fin. Inv. & Commerce Bank Ltd*., 152 F. Supp. 2d 409, 412 (S.D.N.Y. 2001).  "The exceptions are a response to inequities which could occur if . . . a corporation could escape liability by using corporate reorganization to make cosmetic changes in

---

[4] Although Polar is a California limited liability company, and PACW is incorporated in Delaware, Defendants and PACW do not object to the application of New York law as federal common law and the law in all of these states is substantially the same, and Plaintiffs cannot establish successor liability regardless of which law is applied.

essentially the same business, [leaving] potential plaintiffs . . . without remedy.  Naturally, the

exception to the rule need not apply if the predecessor business was not made defunct by the change

and was subject to suit."  *Monroe v. Interlock Steel Co*., 128 Misc.2d 28, 30, 487 N.Y.S.2d 1013,

1014-15 (N.Y. Sup. Ct. 1985).  The four exceptions recognized by New York law are: "(1) a buyer

who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer

who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller."  *Cargo

Partner*, 352 F.3d at 45.  "The party alleging successor liability has the burden of proving facts

which bring the case within one of these exceptions," *Silverman Partners LP v. Verox Group*, No.

08 CIV 3103, 2010 WL 2899438, at *3 (S.D.N.Y. July 19, 2010).

Plaintiffs allege that exceptions 3 and 4 are present, Pls.' Mem. of Law at 5, but they have

failed to meet their burden of alleging facts, as opposed to speculations, demonstrating that the June

2007 transaction falls into either of these exceptions.[5]  In fact, neither exception 3 nor 4 is present.

### A.     Polar Did Not De Facto Merge with PACW.

A de facto merger only occurs "when a transaction, although not in form a merger, is in

substance 'a consolidation or merger of seller and purchaser.'"  *Cargo Partner*, 352 F.3d at 45

(citing *Schumacher v. Richards Shear Co*., 59 N.Y.2d 239, 245, 451 N.E.2d 195, 198 (N.Y. 1983)).

The purpose of the de facto merger exception is to prevent a seller from retaining its interest "while

cutting off the creditors' claims . . . "  *Cargo Partner AG v. Albatrans Inc.*, 207 F.Supp.2d 86,

105 (S.D.N.Y. 2002), *aff'd*, 352 F.3d 41 (2d Cir. 2003).

Plaintiffs bear the burden of demonstrating the existence of the following de facto merger

factors as a matter of law in order to join PACW under Rule 25(c): "[1] a continuity of the selling

---

[5] Defendants and PACW limit their responses to the two exceptions raised by Plaintiffs in their
Mem. of Law, but Defendants and PACW vehemently deny the existence of all four exceptions.

corporation, evidenced by the same management, personnel, assets and physical location; [2] a continuity of stockholders, accomplished by paying for the acquired corporation with shares of stock; [3] a dissolution of the selling corporation [;] and [4] the assumption of liabilities by the purchaser." *Cargo Partner*, 352 F.3d at 46 (citing *Arnold Graphics Indus. v. Indep. Agent Ctr., Inc*., 775 F.2d 38, 42 (2d Cir. 1985)). And, in *Arnold*, the Second Circuit held that plaintiffs must demonstrate that *all four* factors are satisfied in order to establish a de facto merger. 775 F.2d at 42. *See also Cargo Partner*, 207 F. Supp. 2d at 100 ("The controlling decision in *Arnold* . . . forecloses the qualification that not all of the factors are needed . . . "); *New York v. Westwood-Squibb Pharm. Co., Inc.*, 981 F. Supp. 768, 787-88 (W.D.N.Y. 1997) ("The *Arnold Graphics* court also ruled that all of these factors 'must' be satisfied."); *New York v. Panex Indus.*, *Inc.,* No. 94-CV-0400E, 1996 WL 378172, *8 (W.D.N.Y. June 24, 1996) ("The United States Court of Appeals for the Second Circuit has consistently ruled that all of these factors 'must' be satisfied . . . ").[6] Thus, the absence of even one of these four factors would defeat the Plaintiffs' de facto merger claim here.

In fact, Plaintiffs satisfy none of the four factors necessary to establish a de facto merger. The Second Circuit has provided the following example of a prototypical de facto merger: "a corporation acquires the assets of another corporation by (1) purchasing the assets of the seller with its stock; (2) assuming the liabilities of the seller; and (3) continuing the operations of the seller through itself but dissolving the seller . . . " *Cargo Partner*, 352 F.3d at 46 n.4. The June 2007 transaction does not contain *any* of the de facto merger hallmarks from the Second Circuit's example.

---

[6] Although in *Cargo Partner*, 352 F.3d at 46, and *Nat'l Service Indus.*, 460 F.3d at 211, the Second Circuit declined to explicitly opine on whether all four factors must be present for there to be a de facto merger, *Arnold* remains good law – even if some district courts have declined to follow it. Pls.' Mem. of Law at 9.

### 1.    Continuity of the selling corporation, evidenced by the same management, personnel, assets and physical location.

After the June 2007 transaction, PACW's business model and operations changed dramatically.  Polar had flown primarily heavy freight with no timing guarantees, while PACW's business is predominantly time-sensitive express network small package shipping.  *See* Ex. B, J. Dietrich affidavit, ¶ 17.  PACW only flies U.S. to Asia and Asia to Europe routes with occasional Middle East stops, while Polar operated worldwide, including Europe to U.S. and South American routes that PACW does not fly.  *Id.*  Polar did not have an anchor customer, but PACW has a block space agreement with DHL that accounts for more than 40% of PACW's revenues.  *Id.* at ¶¶ 12, 17.  Because of the block space agreement, PACW operates much differently from the way that Polar operated.  *Id.*  PACW must reserve air cargo capacity for DHL on certain U.S. to Asia routes and provide DHL with priority service over other customers.  *Id.* at ¶ 12.  In return, DHL pays PACW certain "blocked space fees" and additional fees to compensate PACW should net costs exceed the "blocked space fees" during any given monthly billing period.  *Id.*  DHL also covers PACW's costs and bears PACW's associated risks, a financial support that Polar never had.  *Id.* at ¶ 17.

With regard to assets, continuity is absent because Polar did not "transfer" all of its assets to PACW.  Rather, Polar "sold" assets for due consideration, but also retained other assets, including certain general sales agency agreements, rate agreements, interline traffic agreements, sublease agreements, guaranties, and ground handling agreements.  *Id.* at ¶¶ 9, 18.

Furthermore, PACW's management materially changed as a result of the June 2007 transaction, with the addition of several new officers and an almost completely new Board of Directors, including two members of DHL's senior management who became PACW's Chief Operating Officer and Chief Financial Officer, and another member of DHL's senior management

who was added, among others, to PACW's Board of Directors.  *Id.* at ¶ 16.

      The cases Plaintiffs cite are inapposite because they involve purchasers who "continued virtually the identical business" of the sellers.  Pls.' Mem. of Law at 14 (internal citations omitted). Plaintiffs emphasize the fact that there were some similarities between Polar's and PACW's businesses, Pls.' Mem. of Law at 14-16, but that is to be expected in light of the sale.  As the S.D.N.Y. stated, "[w]hen one company purchases all the assets of another, it is to be expected that the purchasing corporation will continue the operations of the former, but this does not by itself render the purchaser liable for the obligations of the former."  *Cargo Partner*, 207 F. Supp. 2d at 104 (internal citations omitted).  To the extent that there is some overlap between Polar's customers and PACW's customers, that is a result of the nature of their business: there are only a handful of major freight forwarders that operate in each region.  However, PACW's business is not "virtually identical" to Polar's business.

      Plaintiffs also argue that PACW employs the same personnel as Polar, Pls.' Mem. of Law at 14, but even if true, "[t]he fact that the two corporations have an identity of members or officers does not necessarily suggest that the corporations do not have a separate identity."  *Ladjevardian v. Laidlaw-Coggeshall, Inc*., 431 F. Supp. 834, 838-39 (S.D.N.Y. 1977).  And, as noted above, PACW does *not* employ the same personnel as Polar, but rather has several new officers and Board members, including three from DHL.

      Therefore, Plaintiffs have not and cannot demonstrate a complete continuity of management, assets, and general business operations between Polar and the new enterprise, causing the first factor to weigh heavily against finding a de facto merger.

> **2.    Continuity of stockholders accomplished by paying for the acquired corporation with shares of stock.[7]**

Without continuity of ownership, a de facto merger cannot be found.  *Nat'l Serv. Indus.*, 460 F.3d at 215; accord *Cargo Partner*, 352 F.3d at 46.  This element is designed to prevent shareholders of a seller corporation from retaining ownership in their assets "after cleansing those assets of liability."  *Nat'l Serv. Indus.*, 460 F.3d at 211 (internal citations omitted).

Continuity of ownership is typically satisfied "where the purchasing corporation pays for the acquired assets with shares of its own stock."  *Id.* at 210 n.2.  Continuity of ownership does not exist where assets are sold for cash.  *Doktor*, 2011 WL 52520, at *4.  *See also Nat'l Serv. Indus.*, 460 F.3d at 209 ("There is no continuity of ownership between . . . the purchasing corporation, and . . . the selling corporation, because the transaction was for cash."); *Peralta v. WHM Tool Group, Inc.*, No. CV 04 3826, 2005 WL 2002454, at *3 (E.D.N.Y. Aug. 19, 2005) (no continuity of ownership where assets were purchased with cash).  Plaintiffs claim otherwise, citing only one New York case in support of their proposition that continuity of ownership may be shown in a non-stock transaction.  Pls.' Mem. of Law at 10-11 citing *Cargo Partner*, 207 F. Supp. 2d at 98-99.  But *Cargo Partner* emphasized that the purpose of this factor is to prevent shareholders from retaining their interests while "cutting off . . . creditors' claims," which is not a legitimate concern in the present case.  207 F. Supp. 2d at 105.[8]

Here, "continuity of ownership" is absent because PACW purchased a portion of Polar's

---

[7] This factor has alternatively been called "continuity of ownership" by other New York courts, but the test remains the same regardless of the terminology used.

[8] *Westwood-Squibb* and *United States v. Gen. Battery Corp.*, 423 F.3d 294 (3d Cir. 2005), cited by Plaintiffs on page 10 of their memorandum of law, are inapposite because they are both CERCLA cases, where de facto merger requirements are uniquely analyzed "in order to promote the broad remedial policies underlying CERCLA."  *Westwood-Squibb*, 981 F. Supp. at 788 (internal citations omitted).

assets for due consideration with a cash equivalent – what was, at the time, a nine figure promissory note – and, immediately thereafter, DHL purchased an equity interest in PACW for nine figures in cash and millions of dollars in working capital.  *See* Ex. B, J. Dietrich affidavit, ¶ 9, 11.  No stock was exchanged between Polar and PACW.  Before the June 2007 transaction, Polar was a wholly owned subsidiary of the Holding Company.  *Id*. at ¶ 5.  After the June 2007 transaction, DHL owned 49% of PACW and the Holding Company owned the remaining 51% of the corporation.  *Id*. at ¶ 11.  But the Holding Company did not *acquire* any stock in PACW as a result of the transaction.  The Holding Company just *retained* partial ownership of PACW after the sale because it owned 100% of PACW prior to the June 2007 transaction.  "Continuity of ownership" exists only where "shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation *as the result* of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction."  *Peralta*, 2005 WL 2002454, at *3 (internal citations omitted) (emphasis added); accord *Connecticut Indem. Co. v. 21st Century Transp. Co.,* No. 99 CV 7735, 2001 WL 868340, at *6 (E.D.N.Y. July 27, 2001).  *See also Desclafani v. Pave-Mark Corp*., No. 07 Civ. 4639, 2008 WL 3914881, at *5 (S.D.N.Y. Aug. 22, 2008) ("continuity of ownership" not satisfied where one of the seller's shareholders received stock options from the purchaser outside of the asset purchase itself).  Here, there is no "continuity of ownership" because the Holding Company did not acquire any new shares as a result of the asset sale.

Moreover, as noted above, the June 2007 transaction was a legitimate, complex business transaction designed to add DHL as a significant business partner and transform the Polar business model, not to cleanse Polar's assets of liability.  As a result, the policy underlying the "continuity of ownership" factor is not implicated in this case.  *Nat'l Serv. Indus.*, 460 F.3d at 211 (internal citations omitted).  Therefore, this factor also weighs heavily against finding a de facto merger, and,

since a de facto merger cannot be found without "continuity of ownership," the absence of this factor is dispositive.

### 3.     Dissolution of the selling corporation.

The third factor in the de facto merger analysis is whether the selling corporation "dissolved as soon as practically and legally possible." *Marenyi v. Packard Press Corp.*, No. 90 Civ. 4439, 1994 U.S. Dist. LEXIS 13923, at *5 (S.D.N.Y. 1994).  New York courts "have strictly applied the dissolution test." *Id.* at *7-8.  "It is not enough that the predecessor corporation cease ordinary business operations.  It must also be dissolved." *Peralta*, 2005 WL 2002454, at *4.  *See also Connecticut Indem. Co.*, 2001 WL 868340, at *6 (no de facto merger where seller remained in existence two years after purchase); *Marenyi*, 1994 U.S. Dist. LEXIS 13923, at *7-9 (no de facto merger where seller ceased ordinary business, but continued to conduct limited business for 1.5 years after the sale).  The cases relied upon by Plaintiffs for the proposition that formal dissolution is not required are inapposite because all involved corporations that, while not technically dissolved, had become mere shells.  Pls.' Mem. of Law at 11-12.  That is not the case here, and Plaintiffs have not shown otherwise.

To the contrary, Polar has not dissolved and is not a shell corporation.  Polar has leased and subleased aircraft continuously since June 2007 and, currently, it subleases five aircraft.  *See* Ex. B, J. Dietrich affidavit, ¶ 18.  Polar has a four member Board of Managers and five Officers.  *Id.* at ¶ 19.  Polar's operating revenues in 2007, 2008, and 2009 were millions of dollars annually.  *Id.* at ¶ 18.  Finally, Polar did not sell all of its assets to PACW, but rather retained certain general sales agency agreements, rate agreements, interline traffic agreements, sublease agreements, guaranties, ground handling agreements, and other assets.  *Id. See In re New York Asbestos Litigation*, 15 A.D.3d 254, 257-58, 789 N.Y.S.2d 484, 487-88 (N.Y. App. Div. 2005) (no de facto merger even

though most of seller's operating assets were transferred to purchaser because the asset purchase agreement provided that seller would retain other assets).  Therefore, this factor again weighs heavily against finding of a de facto merger.

### 4.    Assumption of liabilities by the purchaser.

PACW did not assume Polar's pre-closing liabilities as a result of the June 2007 transaction.  *See* Ex. B, J. Dietrich affidavit ¶ 15.  Directly to the contrary, the June 27, 2007 Asset Conveyance Agreement between Polar and PACW explicitly provided that PACW would not assume liability arising from this civil suit.  *Id.*  The contracting rights of Polar and PACW should be honored.  *See Connecticut Indem. Co.*, 2001 WL 868340, at *6 (no de facto merger where purchase agreement explicitly provided purchaser was not responsible for seller's previous debts and obligations).

As the discussion above demonstrates, Plaintiffs have not shown and cannot show that *any* of the four de facto merger requirements are present, let alone all four: PACW's business model and operations are substantially different from Polar's; Polar did not dissolve but rather continues to earn millions of dollars in annual revenues through the subleasing of aircraft; Polar's assets were not purchased with stock but with cash equivalents; and Polar explicitly retained responsibility for its own liabilities, including for the present action.

Moreover, Plaintiffs' cases granting joinder under Rule 25(c) are inapposite because they all involve situations where successor liability was *uncontested*.[9]  So, for example, in *Levin v. Raynor*, the court allowed the substitution of UNITE HERE for UNITE because all of the parties *agreed* that a merger took place and *agreed* that UNITE HERE became UNITE's successor-in-interest

---

[9] The other two decisions cited by Plaintiffs under Rule 25(c) actually support the position of Defendants and PACW because they denied plaintiffs' motions to join.  *See Software*, 2010 WL 4860780, at *6 and *Luxliner*, 13 F.3d at 75-76.

following the merger.  No. 03 Civ. 4697, 2010 WL 2106037, at *2-3 (S.D.N.Y. May 25, 2010).

Tellingly, Plaintiffs do not mention that the *Levin* court denied another motion for substitution in

that case because "the Court cannot yet definitively conclude that Workers United is Defendant

UNITE's successor-in-interest" and "a court cannot allow substitution in the absence of a transfer of

interest."  *Id.* at *3-4 (internal citations omitted).  Similarly, in *Melton v. Bank of Lexington*, the

court granted plaintiffs' motion to join Clayton Bank and Trust because Clayton Bank and Trust

merged with the Bank of Friendship and explicitly "*agreed* to assume all debts, liabilities and duties

of the Bank of Friendship through the merger."  No. 02-1152, 2008 WL 867896, at *1-2 (W.D.

Tenn. Mar. 28, 2008) (emphasis added).  Finally, in *FDIC v. Tisch*, the court joined a trustee in

bankruptcy as a party plaintiff because the FDIC had *assigned* its claims against defendants to the

trustee such that "the trustee . . . will be bound by any determination herein."  89 F.R.D. 446, 448

(E.D.N.Y. 1981).  Unlike these cases, the facts show that PACW is *not* Polar's successor-in-interest,

and Plaintiffs have not proven otherwise, so Plaintiffs' motion for joinder must be denied.

> **B.      PACW Is Not a "Mere Continuation" of Polar.**

The "de facto merger" and "mere continuation" exceptions "are often regarded as so similar

as to be considered a single exception."  *Douglas*, 2010 WL 337043, at *1.  Where the "mere

continuation" exception is considered distinct from the "de facto merger" exception, the key inquiry

is whether the seller survived the asset sale.  *Id.*  Where "the predecessor corporation continues to

exist after the transaction, in however gossamer a form, the mere continuation exception is not

applicable."  *Doktor*, 2011 WL 52520, at *4 (internal citations omitted) (continued existence of

"Old Ladder" precluded mere continuation theory of successor liability).  The dissolution

requirement is "strictly applied under New York law.  An allegation that the seller has become a

mere shell is not sufficient."  *Cargo Partner*, 207 F. Supp. 2d at 95 n.10 (compiling cases).  *See also*

*Schumacher v. Richards Sheo., Inc.* 59 N.Y.2d 239, 245, 451 N.E.2d 195 (N.Y 1983) (where seller continued to exist without assets, business, or employees "as a distinct, albeit meager entity," there was no "mere continuation" because "the predecessor corporation must be extinguished" for exception to apply); *Douglas*, 2010 WL 337043, at *1 (because predecessor entity survived the asset sale as a bankrupt entity, "the mere continuation exception [is] unavailable . . . "); *Wensing v. Paris Indus. – New York*, 158 A.D.2d 164, 167, 558 N.Y.S.2d 692 (N.Y. App. Div. 1990) (because seller "survived the asset transfer as a distinct corporation, albeit in bankruptcy . . . [the purchaser] cannot be cast as its mere continuation").

In the present case, Polar is a limited liability company with substantial operating revenues, making Plaintiffs' claims of successor liability unfounded.  Polar has subleased aircraft continuously since June 2007, and continues to do so today.  *See* Ex. B, J. Dietrich affidavit, ¶ 18. Polar's operating revenues in 2007, 2008, and 2009 were millions of dollars annually.  *Id*. Furthermore, the Asset Conveyance Agreement listed assets and liabilities that Polar explicitly retained.  *Id*. at ¶ 15, 18.  *See Desclafani*, 2008 WL 3914881, at *6 (no "mere continuation" where asset purchase agreement provided that seller was to retain certain assets and liabilities).

Finally, the purpose of the "mere continuation" exception is to "prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors" and to prevent a corporation that undergoes a "mere change in form" from escaping liability.  *Silverman*, 2010 WL 2899438, at *5; accord *Societe Anonyme Dauphitex v. Schoenfelder Corp*., No. 07 Civ. 489, 2007 WL 3253592, at *6 (S.D.N.Y. Nov. 2, 2007).  This policy will not be thwarted by denying Plaintiffs' motion because the June 2007 transaction had a specific business purpose, and was neither performed to avoid liability, nor had that effect.

Plaintiffs cite *Silverman*, 2010 WL 2899438, at *5 for the proposition that the "mere

continuation" exception is not precluded where a selling corporation remains in existence. Pls.'
Mem. of Law at 17. But that is only true where a corporation has been shorn of all its assets, is a
mere shell, and "the successor corporation was created to avoid liability." *Silverman*, 2010 WL
2899438, at *5. Plaintiffs cite to *Societe* and *McDarren v. Marvel Entm't Group, Inc*., for the same
proposition, Pls.' Mem. of Law at 16-17, but these cases are equally inapposite since they too
involve corporations that sold all their assets, had no income, and became mere shells. *Societe*,
2007 WL 3253592, at *6 and *McDarren*, No. 94 CIV 0910, 1995 WL 214482, at *8 (S.D.N.Y. Apr.
11, 1995). Finally, Plaintiffs cite *Kidz Cloz, Inc., v. Officially for Kids, Inc*., but *Kidz Cloz* is a
decision at the motion to dismiss stage, where the burden of proof is substantially lower than for a
Rule 25(c) motion, and only one *non-transferable* asset was retained by the seller in that case. No.
00 CIV. 6270, 2002 WL 1586877, at *5 (S.D.N.Y. July 17, 2002).

Furthermore, it cannot be said that PACW's day-to-day operations are a mere continuation
of Polar's previous operations. As discussed *supra*, significant changes in management and Board
membership and transformed business operations occurred after PACW purchased Polar's assets.[10]
Therefore, because Polar has not dissolved, is not a mere shell corporation, and PACW's business
operations are considerably different than Polar's, Plaintiffs' "mere continuation" argument is
without support.

## II.   EVEN IF SUCCESSOR LIABILITY WERE ESTABLISHED, THIS COURT SHOULD DENY JOINDER AS A MATTER OF THE EXERCISE OF ITS DISCRETION.

Even assuming, *arguendo*, that Plaintiffs could succeed in proving PACW's successor
liability as a matter of law, joinder is discretionary. *Software*, 2010 WL 4860780, at *2. There is

---

[10] *See supra* section I.A.1.

no reason for this Court to exercise its discretion in this case, and ample reason that it should refrain from doing so.  Plaintiffs' motive for joinder is only to add more deep pockets to pay a judgment that has not been obtained.  If Plaintiffs ever do obtain a judgment against Polar, they can attempt to proceed against PACW based on successor liability at that time.  *See Eng*, 2001 WL 1622262, at *8.  Therefore, this motion is unnecessary.  Plaintiffs also have inexplicably waited more than four years after the filing of their Complaint, and almost three years after the Polar/DHL transaction was publicly announced, to bring this motion.

Plaintiffs generously argue that they are actually looking out for PACW, that PACW should be allowed to "participate in the defense of the case" and that joining PACW will "expedite and simplify" the litigation and prevent PACW from later arguing that its interests were not adequately represented in this action.  Pls.' Mem. of Law at 6-7.  But PACW has not asked to be joined, and it has no intention of later arguing that its interests were not adequately represented or that it was somehow prejudiced by not being named a defendant.  Therefore, Plaintiffs' motion should be denied.[11]

## CONCLUSION

Plaintiffs are required to prove PACW's successor liability as a matter of law before this Court may grant their Rule 25(c) motion for joinder.  *Software*, 2010 WL 4860780, at *3.  For the reasons set forth above, Plaintiffs have failed to meet this demanding burden.  Moreover, even if they had met their burden, this Court should exercise its discretion to deny Plaintiffs' motion to join because it is unnecessary and premature.

---

[11] Plaintiffs alternatively argue that this Court should grant an evidentiary hearing, Pls.' Mem. of Law at 7, but an evidentiary hearing is not appropriate where, as here, it is "far from certain that a judgment . . . will ever be obtained, or that any such judgment will not be paid if entered . . ."  *Eng*, 2001 WL 1622262, at *8.

Therefore, the Holding Company, Polar, and non-party PACW respectfully request that

Plaintiffs' Rule 25(c) Motion to Join PACW as a Defendant be denied.

Dated:  March 14, 2011                         Respectfully submitted,

                                               /s/ Harvey J. Wolkoff
                                               Harvey J. Wolkoff (admitted *pro hac vice*)
                                               Maria G. Arlotto (admitted *pro hac vice*)
                                               ROPES & GRAY LLP
                                               Prudential Tower
                                               800 Boylston Street
                                               Boston, MA 02199-3600
                                               Tel:  617-951-7000
                                               Fax:  617-951-7050

                                               *Attorneys for Defendants*
                                               *Atlas Air Worldwide Holdings, Inc. and*
                                               *Polar Air Cargo LLC, and non-party*
                                               *Polar Air Cargo Worldwide, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Maria G. Arlotto, hereby certify that on March 14, 2011, I caused a true and correct copy of the above document to be served via the Court's ECF system to all attorneys of record in this action.

/s/ Maria G. Arlotto
Maria G. Arlotto