UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775 | 06-MD-1775 (JG) (VVP) |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 17 2011 ★
BROOKLYN OFFICE

## LETTER ROGATORY TO COMPEL TESTIMONY

**TO THE SUPERIOR COURT OF QUEBEC (or) OTHER APPROPRIATE AUTHORITY OF THE PROVINCE OF QUEBEC, CANADA:**

The above-entitled action, more fully described below, is pending before the United States District Court of the Eastern District of New York. This Court requests judicial assistance to obtain evidence to be used in this civil action. A trial date on this matter has not yet been scheduled.

This Court requests the assistance described herein as necessary in the interests of justice. This request is made pursuant to, and in conformity with, Sections 43-51 of the Canada Evidence Act, Articles 9-20 of the Special Procedure Act, , R.S.Q, c. P-27, and Rule 28 of the United States Federal Rules of Civil Procedure. Furthermore, this District Court has jurisdiction over the proceedings, and has the power to compel the attendance of witnesses both in and outside the jurisdiction.

The District Court requests that the Superior Court of Quebec, District of Montreal, compel the appearance of Gerald Simpson (hereinafter "Mr. Simpson"), a Canadian citizen residing in Quebec, to give evidence. The District Court asserts that the evidence sought is directly relevant to the issues in dispute, and is not sought for the purpose of obtaining pre-trial discovery. If admissible, the evidence sought is intended to be adduced at trial. This District

Court further asserts that compliance with this request will not place Mr. Simpson in the position of having to commit an offense, nor would Mr. Simpson be required to undergo a broader form of inquiry than he would if the litigation were to be conducted locally. Lastly, this District Court asserts that the evidence sought from this witness cannot be secured except by the intervention of the Canadian courts.

## WITNESS TO BE SERVED

Gerald Simpson
Canadian National
92 St. Andrew Avenue
Beaconsfield, Quebec Canada H9W4Y6

## FACTS

### Nature of the Proceedings

The evidence sought relates to an antitrust case that was commenced in February 2006 when numerous civil class action lawsuits were filed, alleging that airfreight carriers and their co-conspirators participated in a conspiracy to fix, raise, maintain, and stabilize prices of airfreight shipping services, which began at least as early as January 1, 2000, and continued until at least February 14, 2006, in violation of the United States antitrust laws, including Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15, 26.

These lawsuits were filed in several different courts across the United States. Because these lawsuits involved similar facts, parties, and legal claims, they were all transferred to a single court for the convenience of the parties and witnesses and so as to promote the just and efficient conduct of the lawsuits pursuant to the procedures governing complex, multi-district litigation ("MDL"). Accordingly, all such lawsuits are now pending before this Court, for

consolidated proceedings with the case caption *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-1775-JG-VVP (E.D.N.Y.).

Summary of Complaint

The Plaintiffs are purchasers of airfreight shipping services from the Defendants and their named co-conspirators. Airfreight shipping services are defined to include paid, private air transport of freight or other cargo by airfreight carriers. The Defendants are major air carriers that provide airfreight shipping services and some former employees of the carriers. Plaintiffs allege that Defendants and their co-conspirators engaged in a worldwide conspiracy to fix the prices for airfreight shipping services in violation of the U.S. antitrust laws and that they fraudulently concealed the existence of the conspiracy until February 14, 2006. Plaintiffs allege that, as a result of the unlawful conspiracy, Plaintiffs and other purchasers of air freight shipping services paid artificially high prices for airfreight shipping services and thereby suffered injury and monetary damages. At least 15 carrier defendants and four individual defendants have pled guilty in the United States to participating in a conspiracy to fix the prices for airfreight shipping services.

Summary of Defense

In their answers, Defendants deny Plaintiffs' substantive allegations of wrongdoing or assert that they are without sufficient knowledge or information to form a belief concerning the truth of particular allegations. Defendants have asserted that they never agreed to fix, raise, maintain and stabilize prices of, airfreight shipping services as alleged by Plaintiffs, that Plaintiffs were not injured or damaged by the alleged conspiracy, and that Defendants' activities were lawful at all times. Defendants also deny that they fraudulently concealed any conspiracy and assert various affirmative defenses.

Stage of Proceedings

This case has been ongoing since 2006. Since that time, the District Court has denied Defendants' motions to dismiss Plaintiffs' complaint and has established a schedule for the case to proceed toward trial. Pursuant to that schedule, the parties have undertaken significant efforts to gather evidence and prepare for trial.

## QUESTIONS

The District Court seeks oral testimony for trial and other proceedings in the litigation from non-party witness Mr. Gerald Simpson. Mr. Simpson is a former employee of Defendant Air Canada or of Defendant AC Cargo LP, which Air Canada owns and controls (referred to collectively as "Air Canada"). Mr. Simpson is believed to have knowledge relevant to the claims and defenses in this case. Air Canada's Interrogatory Responses, which were submitted in the action pending before this Court, identified Mr. Simpson, former Director of Cargo Marketing and Business Development, as one of Air Canada's employees most knowledgeable about meetings, communications, agreements or understandings between Air Canada and other Airfreight Carriers concerning any coordination of surcharges, rates or yields. Additionally, documents, which Plaintiffs have obtained through discovery, indicate that Mr. Simpson, acting on behalf of Air Canada, discussed and participated in communications regarding rates and surcharges with Air Canada's major competitors.

Questions to Be Put to Mr. Simpson

The subject matter about which Mr. Simpson is to be questioned includes:

1. Questions concerning Mr. Simpson's knowledge of price fixing in the air cargo industry, including his knowledge of and participation in communications and meetings between air cargo carriers concerning the pricing of air freight shipping services, including the imposition of fuel, security and other surcharges;

4

2. Questions concerning Mr. Simpson's knowledge of meetings and communications among air cargo carriers concerning plans to raise the ceiling of fuel surcharge methodologies, progress in raising the upper limit of fuel surcharge methodologies, the details of fuel surcharge methodology increases, increases in the ceiling for fuel surcharge methodologies, and the dates on which carriers would or did raise fuel surcharges;

3. Questions concerning Mr. Simpson's knowledge of meetings and communications among air cargo carriers concerning plans to, from time to time, raise, lower or maintain fuel surcharges, and the dates on which carriers would or did make such decisions regarding fuel surcharges;

4. Questions concerning Mr. Simpson's knowledge concerning Air Canada's motive, intent and rationale for the imposition of fuel, security and other surcharges on air freight shipping services; and

5. Questions concerning Mr. Simpson's knowledge of any efforts to conceal the existence of communications or meetings between air cargo carriers concerning the pricing of air freight shipping services, including the imposition of fuel, security and other charges.

## SPECIAL METHODS AND PROCEDURES TO BE FOLLOWED

The District Court requests that the following special procedures be observed:

1. That in executing the Letter Rogatory, the testimony of Mr. Simpson be given under the following oath, under penalty of perjury: "I, Gerald Simpson, swear that the testimony that I am about to give is the truth, the whole truth and nothing but the truth, so help me God."

2. That only the Superior Court of Quebec and its personnel, the parties' representatives or their designees, interpreters, a videographer, a U.S. verbatim court reporter and an Official Court Stenographer be permitted to attend and participate in the hearing at which Mr. Simpson will be examined;

3. That Plaintiffs' legal representatives or their designees first be permitted to examine Mr. Simpson on the subjects set forth above and that Defendants' legal representatives or their designees thereafter be permitted to cross-examine Mr. Simpson on the matters elicited during his direct testimony;

4. That Plaintiffs' legal representative or their designee be permitted to conduct a re-direct examination on the matters elicited during cross-examination by Defendants' legal representative and that Defendants' legal representative or their designees

thereafter be permitted to conduct a re-cross of Mr. Simpson on the matters elicited during his re-direct examination.

5. That in addition to any official transcript that will be made by the Official Court Stenographer, a U.S. court reporter be permitted to make a verbatim record of Mr. Simpson's examination, at Plaintiffs' expense;

6. That the parties' representatives or their designees be permitted to object orally to any questions posed by an opposing party's representative or designee, thereby preserving their objections to be ruled upon at a later time by the U.S. District Court;

7. That a videographer be permitted to attend the hearing and make a video recording of Mr. Simpson while he testifies;

8. That a total of seven hours of examination time be allotted for the taking of testimony of Mr. Simpson, and that the allotted seven hours be divided by agreement of the parties, or in the absence of an agreement, to be determined by the U.S. District Court; and

9. That, during his oral examination, Mr. Simpson may be shown documents that the examining attorney believes may be useful in adducing Mr. Simpson's testimony.

## **REQUEST FOR NOTIFICATION**

It is respectfully requested that testimony be taken at such place, date or time as ordered by the Superior Court of Quebec or as otherwise agreed to by Mr. Simpson and the respective representatives of the parties.

The District Court requests that the Plaintiffs' Canadian Legal Representative, Jean-Yves Simard, and the District Court's designee in the United States, Jay L. Himes, act as liaison between the Superior Court of Quebec and the parties to ensure that they are timely advised of the Superior Court of Quebec's decisions with respect to the aforementioned requests and to ensure that all participants are advised of the date and location of deposition for the execution of the Request. Plaintiffs' counsel or Plaintiffs' Canadian designee will arrange for court reporters, videographers and interpreters as permitted by the Superior Court of Quebec. Plaintiffs' U.S.

counsel, Jay L. Himes, may also communicate with the Canadian judicial authorities as needed for clarification with respect to any aspect of the content of this Request. Contact details for these designees are listed below.

Plaintiffs' Counsel Canadian Designee

Jean-Yves Simard
Avocat/Lawyer
Lavery, de Billy, S.E.N.C.R.L. / L.L.P.
Bureau 4000
1, Place Ville Marie
Montréal (Québec) H3B 4M4
Téléphone: 514 877-3039
Télécopieur: 514 871-8977
jysimard@lavery.ca

Plaintiffs' Counsel U.S. Designee

Jay L. Himes
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Telephone: 212 907 0700
Telecopier: 212 883 7501
jhimes@labaton.com

**RECIPROCITY**

This District Court expresses its gratitude and assures the appropriate judicial authorities of Canada that it stands ready and willing to render similar assistance to the Canadian courts when requested.

7

**REIMBURSEMENT**

The Superior Court of Quebec may submit a note to be reimbursed for costs incurred in executing the Letter Rogatory to this District Court and to Plaintiffs' Counsel U.S. Designee, Jay L. Himes:

Chambers of Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
For the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201-1818
USA

Jay L. Himes
Labaton Sucharow LLP
140 Broadway
New York, NY 10005
Telephone: 212 907 0700
Telecopier: 212 883 7501
jhimes@labaton.com

Dated: June 15, 2011

s/Viktor Pohorelsky

By: Honorable Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201-1818
USA