For the reasons set forth below, and in the attached letter forwarded to Addressees by the European Commission ("EC") for submission to this Court (Ex. A hereto), Plaintiffs' motion to compel production of the Confidential Decision should be denied. Both the Addressees and the EC have a strong interest in protecting information contained in the Confidential Decision, and Plaintiffs have demonstrated no need for production of that decision or good cause sufficient to overcome the considerations set forth below and in the EC's letter. Indeed, Judge Gleeson has explicitly adopted the principles espoused by the EC in denying a recent request for similar materials. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 05-MD-1720, 2010 U.S. Dist. LEXIS 89275 (E.D.N.Y. Aug. 27, 2010). Despite Plaintiffs' attempts to distinguish the Court's *Payment Card* decision, it is clear that Judge Gleeson's analysis, which is consistent with decisions of other courts that have considered the issue, compels the denial of Plaintiffs' motion.

***Background*.** The EC's Confidential Decision contains substantial amounts of confidential information gathered by the EC during its investigation, including information submitted by addressees of the Confidential Decision voluntarily pursuant to the EC's leniency program.[1] Ex. A at 1. In order to encourage parties to come forward with information, European Union ("EU") law strictly prohibits the use or disclosure of this information outside of EC proceedings. *See* EU Regulation No. 773/2004 of 7 Apr. 2004 (OJ 2004, L 123, p. 22), Article 15(4) (Ex. B). Each addressee has a right to submit, and Addressees have pending before the EC, claims of confidentiality, requesting that the EC redact portions of the Confidential Decision (including information submitted through the leniency program) prior to issuing a non-confidential, public version. *See* EU Regulation No. 1/2003 of 16 Dec. 2002 (OJ 2003, L 1, p. 1), Article 30(2) (Ex. C). The EC "issues a public version of a decision only after having decided on possible confidentiality claims from the addressees of the decision." Letter from Paul Malric-Smith, EC Director, dated Feb. 18, 2011 (Ex. D). Consistent with its longstanding policy and EU law, the EC has "object[ed] to any disclosure of the [Confidential] Decision . . . to the plaintiffs in these proceedings or to any third party," and has instructed Addressees not to produce the Confidential Decision to Plaintiffs. *Id.*; Ex. A at 2. The EC has also made it clear that it will issue a non-confidential, public version of the decision at issue here "in the near future." Ex. A at 2.

***This Court and Others Have Rejected Similar Attempts*.** Judge Gleeson was presented with this very issue recently in *Payment Card*. There, the Court rejected a motion to compel production of the EC's Statement of Objections ("SO") and Oral Hearing transcript based on principles of international comity that apply equally here. Because the EC's confidentiality rules are intended to promote "free and open participation" in its investigations, Judge Gleeson found that "the [EC's] interest in confidentiality outweighs the plaintiffs' interest in discovery" and held that the EC's "interests would be significantly undermined if its confidentiality rules were disregarded by American courts in this case and others like it." *Id.* at *29-30. Plaintiffs contend that *Payment Card* does not apply to requests for the Confidential Decision, as opposed to the SO or Oral Hearing transcript. Pls.' Mot. at 1. But there is no principled reason for such an argument, and the EC has explained that the "[SO] **and the full confidential version of the Decision** are documents prepared specifically for the antitrust proceedings and contain confidential

---

[1] Under the leniency program, companies voluntarily submit information to the EC in exchange for immunity or reduction of the fine. Eleven of the twelve addressees of the Confidential Decision are leniency applicants.

information received through investigative measures." *E.g.,* EC Letter as Amicus Curiae at 3, *Payment Card*, 05-MD-1720 (E.D.N.Y. Jan. 20, 2010) (emphasis added); *see also* Ex. A at 1. The Confidential Decision, like the SO, contains substantial confidential information, which was submitted to the EC under the leniency program with the understanding, based on EU law, that it would be used only for the EC's investigation. Thus, Judge Gleeson's reasoning should guide this Court's ruling.[2] That reasoning is also consistent with the decisions of other courts that have considered this issue. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 07-CV-01827, Report of Special Master, at 5-6 (N.D. Cal. Apr. 26, 2011) (holding that international comity barred production of confidential EC information because the "benefit of discovery" was "outweighed by the impact that disclosure will have on the EC's" ability to enforce their competition laws); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1084 (N.D. Cal. 2007) (refusing, based on comity principles, to compel production of leniency program materials because of the adverse impact on the EC's interests and U.S. – EU cooperation); *In re Methionine Antitrust Litig.*, MDL No. 00-1311 CRB, Order on Pls.' Mot. to Compel, at 13 (N.D. Cal. June 17, 2002) (holding that the comity analysis "tips strongly in the favor of the [EC]" because of the potential harm to the leniency program).

*The Court's KFTC Ruling Presented An Entirely Different Issue*. Plaintiffs' reliance on this Court's recent ruling regarding the Korean Fair Trade Commission ("KFTC") is misplaced. That ruling did not involve the production of an un-redacted, confidential document generated by a foreign sovereign, but instead simply allowed Plaintiffs to conduct depositions "regarding the names of individuals who participated in price fixing communications and meetings that are public." Pls.' Mot. Ex. G, at 27-28 ("[W]e're not asking for the investigative work product of the [KFTC]."). Denying Plaintiffs' instant motion will not hinder them from discovering similar underlying facts. The Court's previous rulings regarding production of KFTC materials are also distinguishable, as Judge Gleeson explicitly held in his final ruling that the KFTC's interest in the documents was "less compelling" because much of the information was already "publicly available." *In re Air Cargo Shipping Servs. Litig.*, 06-MD-1775, Order on Mot. for Reconsideration (E.D.N.Y. Apr. 26, 2011). Plaintiffs' numerous citations to this Court's ruling regarding the production of documents by Air France in spite of a French "blocking statute" are equally inapposite. *See Payment Card*, 2010 U.S. Dist. LEXIS 89275, at *25 ("The reasoning of courts considering the [EC's] arguments is more germane to this motion than the *Air Cargo* decision or others concerning the French blocking statute.").

*Comity weighs strongly against discovery*. International comity requires U.S. courts to "not take such action as may cause a violation of the laws of a friendly neighbor or, at least, an unnecessary circumvention of its procedures." *Payment Card*, 2010 U.S. Dist. LEXIS 89275, at *16 (citation omitted). Courts in the Second Circuit consider a number of factors when

---

[2] Plaintiffs also claim that Judge Gleeson relied on the fact that the plaintiffs in *Payment Card* already had access to an unredacted copy of the EC decision, but that is plainly incorrect. Judge Gleeson's analysis mentions that fact only in a passing reference to whether the plaintiffs there had alternative avenues for obtaining information about the defendants' European activities. Judge Gleeson emphasized that the discovery process was available to the plaintiffs in *Payment Card*, as it is here, negating their claimed need for the EC's documents. *See Payment Card*, 2010 U.S. Dist. LEXIS 89275, at *32 ("[I]t is the defendants' European business practices, rather than the Commission's investigation itself, that may be directly relevant to this litigation.").

conducting a comity analysis, the most important of which is the weighing of national interests. *Id.* at *21. The EC has consistently stated that disclosure of confidential information, especially information submitted via the leniency program, would drastically undermine its ability to enforce competition laws. Ex. A at 2; *Rubber Chems.*, 486 F. Supp. 2d at 1084; EC White Paper on Damages Actions, Section 2.9 (Ex. E). Judge Gleeson recognized this interest in *Payment Card*, holding that "the [EC] has established that confidentiality plays a significant role in assisting the effective enforcement of [EU] antitrust laws." 2010 U.S. Dist. LEXIS 89275, at *29. Indeed, the U.S. Department of Justice has stated that, due to the "critical" role of the U.S. leniency program, "harm to the EC leniency program could result in harm to [DOJ's] ability to detect and successfully prosecute international cartels." Letter from Scott Hammond, DAAG for Criminal Enforcement, DOJ, at 4 (Oct. 6, 2009), *attached to* EC Br. as Intervenor, *In re Flat Glass Antitrust Litig. (II)*, 08-MC-00180 (W.D. Pa. Oct. 8, 2009) (Ex. F). Thus, contrary to Plaintiffs' contentions, any individual benefit Plaintiffs may enjoy from access to the EC's work product is vastly outweighed by the adverse impact disclosure could have on EC and DOJ interests. *See Payment Card*, 2010 U.S. Dist. LEXIS 89275, at *31 (refusing to require the [EC] "to turn over the fruits of its own labors in the service of the plaintiffs' American case").

The protective order in this case does not mitigate the potential harm to the leniency program, as evidenced by the EC's maintenance of its position even with knowledge of that order. Ex. A at 2; *see also Payment Card*, 2010 U.S. Dist. LEXIS 89275, at *34 ("[A] protective order would not sufficiently protect the [EC's] interest," because the EC documents would still be used in "foreign private litigation"). Addressees relied on the EC's confidentiality rules in voluntarily producing information, and the compelled production of the Confidential Decision containing their confidential information in this case would unfairly prejudice Addressees and undermine the incentives of future leniency applicants, regardless of whether the information is protected from further disclosure by the protective order.

***Plaintiffs have not established good cause or a need for the Confidential Decision.*** Finally, because the non-confidential version of the decision will be available to Plaintiffs as soon as it is released, Plaintiffs can claim no prejudice that will result from the denial of their motion. Plaintiffs have made no showing that the ordinary tools of discovery are insufficient for them to obtain any relevant information that might be contained in the Confidential Decision. Moreover, although Plaintiffs claim without explanation that they "have a need for this information now," as this Court is aware, the parties are currently in the process of completing discovery related to *class certification*, and Plaintiffs can make no reasonable argument that the Confidential Decision is necessary for that purpose. Nor is there any legitimate argument that protection of the Confidential Decision will delay or hinder the orderly resolution of this matter, in which the issue of class certification is not scheduled to be resolved until late 2012. In short, Plaintiffs can obtain the facts they need by reference to the voluminous discovery in this case, so they do not have "good cause" for their request (as required by the letter agreements between the parties); they do not have a compelling interest that would outweigh the EC's interest in protecting its investigative process and leniency program; and they do not have a basis to distinguish Judge Gleeson's ruling in *Payment Card*. Plaintiffs' motion should be denied.

                                Respectfully submitted,

| | |
|---|---|
| Sandy Litvack | */s/ William R. Sherman* |
| Eric J. Stock | Margaret M. Zwisler |
| HOGAN LOVELLS US LLP | William R. Sherman |
| 875 Third Avenue | LATHAM & WATKINS LLP |
| New York, NY  10022 | 555 Eleventh Street, N.W., Suite 1000 |
| (212) 918-3517 (telephone) | Washington, D.C. 20004 |
| (212) 918-3100 (facsimile) | (202) 637-2200 (telephone) |
| | (202) 637-2201 (facsimile) |
| *Counsel for Air Canada and AC Cargo LP* | |
| | *Counsel for Singapore Airlines Cargo Pte Ltd. and Singapore Airlines Limited* |
| David H. Bamberger | James V. Dick |
| Deana L. Cairo | SQUIRE, SANDERS & DEMPSEY, LLP |
| DLA PIPER LLP (US) | 1201 Pennsylvania Avenue, N.W. |
| 500 Eighth Street, N.W. | P.O. Box 407 |
| Washington, D.C.  20004 | Washington, D.C.  20044-0407 |
| (202) 799-4000 (telephone) | (202) 626-6600 (telephone) |
| (202) 799-5000 (facsimile) | (202) 626-6780 (facsimile) |
| *Counsel for Cathay Pacific Airways Ltd.* | *Counsel for LAN Airlines S.A. and LAN Cargo S.A.* |