# EXHIBIT F



**U.S. Department of Justice**

Antitrust Division

---

*Office of the Deputy Assistant*  
*Attorney General for Criminal*  
*Enforcement*

Washington, D.C. 20530

October 6, 2009

James C. Owens, Esq.  
Sidley Austin LLP  
1501 K Street, N.W.  
Washington, D.C. 20005

    Re: In re: Flat Glass Antitrust Litigation (II),  
         <u>Civil Action No. 08-mc-180, MDL No. 1942</u>

Dear Mr. Owens:

    I am writing this letter in reference to Plaintiffs' request for production of certain documents from Defendant Guardian Industries Corp. in the above matter, including documents that contain information the European Commission obtained through its corporate leniency program. As detailed below, the disclosure of such documents will harm the EC's leniency program and its investigative abilities and could have a corresponding negative impact on the Antitrust Division's leniency program and its international anti-cartel enforcement program.

    As the Antitrust Division's Deputy Assistant Attorney General for Criminal Enforcement, I am responsible for, among other things, the supervision of all Division criminal investigations and prosecutions, including the operation of the Division's Corporate Leniency Policy. Over the last several years, the European Commission has been one of the Division's closest partners in the fight against international cartels. The convergence of the U.S. and EC leniency programs has been instrumental in the close coordination of our investigations and our success in detecting and prosecuting international cartels. As detailed below, harm to one of our leniency programs could result in harm to the other's leniency program and corresponding harm to the other jurisdiction's ability to detect and prosecute international cartels.

    Due to the pernicious effect of price-fixing, bid-rigging, and market-allocation cartels on competition and their lack of redeeming economic value, anti-cartel enforcement is one of the Division's highest enforcement priorities. Beginning in the 1990's, the Division began to place particular emphasis on the investigation and prosecution of international cartels due to the increasing globalization of the U.S. economy and the resulting increased opportunities for the

formation and success of international cartels targeting U.S. businesses and consumers. These international cartels encompassed a much broader geographic scope, adversely affected much greater amounts of commerce, and injured much larger numbers of businesses and consumers than the domestic conspiracies the Division had traditionally prosecuted. The massive volumes of commerce affected by international cartels and the associated harm are reflected in the more than $5 billion in criminal fines imposed in Division cases since fiscal year 1996. The Division has prosecuted corporations based in multiple foreign countries, including the European nations of Belgium, Denmark, France, Germany, Liechtenstein, Luxembourg, the Netherlands, Norway, Switzerland, and the United Kingdom, and foreign individuals from the European nations of Austria, Belgium, France, Germany, Italy, the Netherlands, Norway, Sweden, Switzerland, and the United Kingdom. Today, the Division's enforcement efforts against international cartels continue to be one of the highest priorities of its criminal enforcement program, with dozens of sitting grand juries investigating suspected international cartel behavior.

When the Division began investigating international cartels, it faced enormous obstacles in obtaining the necessary evidence to prosecute the cartels. Key evidence of such cartels was often beyond the Division's jurisdictional reach, and foreign governments were reluctant to assist the Division in obtaining evidence in cartel investigations. The Division needed a strong tool to overcome these obstacles. As described below, that tool came in the form of the Division's Corporate Leniency Policy. Cooperation of cartel insiders pursuant to the Division's Corporate Leniency Policy cracked many international cartels, giving the Division the necessary evidence to prosecute the cartels.

The Division's Corporate Leniency Policy, the current form of which was adopted in August 1993, provides leniency for the first company in a cartel that comes forward, admits its participation in a cartel, provides full cooperation with the Division's investigation of other corporate and individual conspirators, and meets the other stated requirements of the policy. If the applicant and its cooperating executives qualify for leniency, they will avoid criminal convictions, fines, and jail terms for the cartel offense. As a result of the introduction of the current Corporate Leniency Policy, the number of companies seeking leniency substantially increased, and cooperation of applicants under the current leniency program has advanced the majority of the Division's international cartel investigations.

The Division's leniency policy has led to the detection and prosecution of more international cartels than all of the Division's search warrants, consensual monitoring, and FBI interrogations combined. Because cartels operate in secret, obtaining the cooperation of insiders is the best and frequently the only way to break open a cartel. Obtaining such cooperation can lead to the termination of cartels, conviction of coconspirators, and recovery of damages by victims; can shorten an investigation by months or years; and can conserve scarce government resources. The leniency program is clearly the Division's most effective generator of international cartel cases, and has become the Justice Department's most successful voluntary disclosure program.

Confidentiality is one of the hallmarks of leniency programs, and a lack of confidentiality is a major disincentive for leniency applications. In spite of the benefits of leniency to corporations and their employees, companies are reluctant to come forward and admit their involvement in a cartel. Among the reasons for the reluctance are fear of retribution by former coconspirators and concern over damaged relations with customers. In its publications regarding the application of the leniency program, the Division has emphasized the confidentiality of the leniency program.[1] The Division holds the identity of leniency applicants in strict confidence and will not publicly disclose the identity of a leniency applicant, absent prior disclosure by or agreement with the applicant, unless required to do so by court order in connection with litigation. Moreover, leniency negotiations are conducted with the express commitment that those negotiations and the information provided by the applicant will remain confidential, even after the investigation at issue is closed. Even after an investigation is closed, confidential sources pursuant to the leniency program maintain an interest in keeping the information they disclose confidential due to fear of retribution by former coconspirators they implicated and damaged relations with customers. With respect to international conspiracies, given that some foreign governments do not have statutes of limitations for cartel offenses or leniency programs and thus the applicant's foreign exposure remains, this continued confidentiality is particularly important. Many leading members of the private antitrust bar who represent leniency applicants have advised me that the Division's promise of confidentiality is a critical, and in some cases determinative, factor that companies rely upon in making the decision to self-report pursuant to the Division's leniency program.

The success of the Division's Corporate Leniency Policy has also led to the development of leniency programs by numerous foreign governments around the world. The Division has advised a number of foreign governments in the drafting and implementation of effective leniency policies. The emergence of leniency policies of different governments with similar requirements has made it much easier and far more attractive for companies to develop a global strategy for reporting international cartel offenses and has led leniency applicants to report their conduct to multiple jurisdictions simultaneously. As a result, the Division is currently conducting a number of investigations that were initiated by an applicant that simultaneously sought leniency in eight or more jurisdictions.[2] Prior to this convergence in leniency programs, many leniency applicants were deterred from applying for leniency in one jurisdiction if they had greater exposure in another jurisdiction that had an ineffective leniency program. Thus, the

---

[1] Scott D. Hammond & Belinda A. Barnett, Frequently Asked Questions Regarding the Antitrust Division's Leniency Program and Model Leniency Letters 27-28 (Nov. 19, 2008), http://www.usdoj.gov/atr/public/criminal/239583.htm; Gary R. Spratling, Deputy Ass't Att'y Gen., Antitrust Div., Dep't of Justice, Making Companies an Offer They Shouldn't Refuse, Speech Before the D.C. Bar Association 35th Annual Symposium on Associations and Antitrust 3, 5-6 (Feb. 16, 1999), http://www.usdoj.gov/atr/public/speeches/2247.htm; Spratling, The Corporate Leniency Policy: Answers to Recurring Questions, Speech Before the 1998 Spring Meeting of the ABA Section of Antitrust Law 18 (Ap. 1 1998), http://www.usdoj.gov/atr/public/speeches/1626.htm.

[2] Scott D. Hammond, Recent Developments, Trends, and Milestones in the Antitrust Division's Criminal Enforcement Program, Address Before the 56th Annual Spring Meeting of the ABA Section of Antitrust Law 16-17 (March 26, 2008), http://www.usdoj.gov/atr/public/speeches/232716.htm.

efficient functioning of a leniency program in one jurisdiction affects the efficient functioning of leniency programs in other jurisdictions.

Convergence in leniency programs and the resulting simultaneous leniency applications to multiple jurisdictions have in turn provided opportunities for coordinated covert and overt investigative activities among governments, such as the coordination of searches, interviews, and the service of subpoenas. This cooperation has strengthened anti-cartel enforcement in the United States and abroad.

As noted above, the European Commission has been one of the Division's closest partners in the fight against international cartels. Over ninety percent of the international cartels that have been prosecuted by the Division were active in Europe as well as in the United States. Thus, over the last several years the Division has coordinated multiple investigations with the European Commission, including the coordination of the timing of searches and service of subpoenas.[3] Turning over information provided by a leniency applicant will create disincentives for companies to apply for leniency in the European Union. If companies that have dual exposure in the United States and the European Union are dissuaded from applying for leniency with the European Commission, then they may also choose not to apply for leniency in the United States, especially if they have greater exposure in the European Union. Due to the critical role of the Division's leniency program in its international anti-cartel enforcement program as described above, harm to the EC leniency program could result in harm to the Division's ability to detect and successfully prosecute international cartels that target U.S. businesses and consumers.

Sincerely,

Scott D. Hammond<br>
Deputy Assistant Attorney General<br>
for Criminal Enforcement

---

[3] *Id.* at 18 (discussing simultaneous searches in the investigations of cartels in the air transportation and marine hose investigations); Press Release, Antitrust Div., Dep't of Justice, Eight Executives Arrested on Charges of Conspiring to Rig Bids, Fix Prices, and Allocate Markets for Sales of Marine Hose (May 2, 2007) (discussing simultaneous searches by U.S., EC, and UK officials), http://www.usdoj.gov/atr/public/press_releases/2007/223037.htm; Press Release, Eur. Comm'n, Statement on inspections at producers of heat stabilizers as well as impact modifiers and processing aids – International cooperation on inspections (Feb. 14, 2003), http://europa.eu/rapid/pressReleasesAction.do?reference=MEMO/03/33&format=HTML&aged=0&language=EN&guiLanguage=en.