1

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X
                              :
                              :   06-MD-01775 (JG)
                              :
                              :
     IN RE:                   :   United States Courthouse
                              :   Brooklyn, New York
     AIR CARGO SHIPPING        :
     SERVICES ANTITRUST        :
     LITIGATION                :   September 27, 2011
                              :   3:00 p.m.
                              :
                              :
- - - - - - - - - - - - - - - X
```

```
       TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION HEARING
        BEFORE THE HONORABLE VIKTOR V. POHORELSKY
             UNITED STATES MAGISTRATE JUDGE
```

```
                  A P P E A R A N C E S:
```

```
For Plaintiffs:        KAPLAN FOX & KILSHEIMER, LLP
                       850 Third Avenue
                       22nd Floor
                       New York, New York 10022
                       BY:  ROBERT N. KAPLAN, ESQ.



                       KAPLAN FOX & KILSHEIMER, LLP
                       203 North Lasalle Street
                       Chicago, Illinois 60601
                       BY:  GARY L. SPECKS, ESQ.



                       LABATON SUCHAROW
                       140 Broadway
                       New York, New York 10005
                       BY:  HOLLIS SALZMAN, ESQ.
```

2

1
                    A P P E A R A N C E S: (cont.)
2

3                        HAUSFELD LLP
                             1604 Locust Street
4                            2nd Floor
                             Philadelphia, Pennsylvania 19103
5                        BY:  BRENT W. LANDAU, ESQ.

6


7                        LEVIN, FISHBEIN, SEDRAN & BERMAN
                             510 Walnut Street
8                            Suite 500
                             Philadelphia, Pennsylvania 19106
9                        BY:  AUSTIN B. COHEN, ESQ.

10


11                       LEVIN, FISHBEIN, SEDRAN & BERMAN
                             320 Walnut Street
12                           Suite 600
                             Philadelphia, Pennsylvania 19106
13                       BY:  HOWARD J. SEDRAN, ESQ.

14

15  For Defendants:      BAKER & HOSTETLER, LLP
                             1050 Connecticut Avenue, N.W.
16                           Suite 1100
                             Washington, DC  20036
17                       BY:  JEREMY M. KEIM, ESQ.

18


19                       DLA PIPER, LLP (US)
                             500 Eighth Street, N.W.
20                           Washington, DC  20004
                         BY:  DAVID HENRY BAMBERGER, ESQ.
21

22

23                       PAUL HASTINGS, LLP
                             75 East 55th Street
                             New York, New York  10022
24                       BY:  KEVIN C. LOGUE, ESQ.

25

3

A P P E A R A N C E S: (cont.)


O'MELVENY & MYERS, LLP
    1625 Eye Street, N.W.
    Washington, DC  20006
BY:  ANGELA THALER WILKS, ESQ.


LATHAM & WATKINS, LLP
    555 11th Street, N.W.
    Washington, DC  20004
BY:  WILLIAM SHERMAN, ESQ.


Court Reporter:      Marie Foley, RMR, CRR
                     Official Court Reporter
                     Telephone: (718) 613-2596
                     Facsimile: (718) 613-2648
                     E-mail:  Marie_Foley@nyed.uscourts.gov

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

Proceedings                                          4

1          (In open court.)

2          COURTROOM DEPUTY:  All rise.

3          (Magistrate Judge Pohorelsky takes the bench.)

4          THE COURT:  Good afternoon.  Please be seated.

5          THE CLERK:  Civil cause for a hearing in 06-MD-1775,

6   In Re Air Cargo Shipping Services Antitrust Litigation.  The

7   Honorable Victor Pohorelsky presiding.

8          THE COURT:  All right.  We have the two motions.  I

9   think that was all that's on the calendar, the two motions

10  regarding Nippon Airways.

11         MR. SEDRAN:  Correct, the two brought by plaintiffs

12  against Nippon Cargo.

13         THE COURT:  Correct.  Nippon Cargo, sorry.

14         Well, let me take up the issue concerning the

15  assertion of privilege which I had already ruled on in

16  connection with, I think, some other airline.  It was Korean

17  Air, I believe.  I'm kind of hard-pressed not to follow that

18  precedent; am I not?

19         Well, you might think I shouldn't, but is there

20  anything that differentiates this situation from the situation

21  with Korean Air?

22         MR. SEDRAN:  Howard Sedran, your Honor, for the

23  plaintiffs.

24         We think the answer is yes.  Otherwise, we wouldn't

25  take the Court's time to have this argument.

Proceedings                                    5

1          In connection with the motion against Korean Air, as

2    I understand the Court's ruling, you said, and I'm quoting

3    from page 74 of that transcript:  "I'm not sure he" -

4    referring to Mr. Morrow, KE's lawyer - "he knows how to solve

5    your difficulties, but there's going to have to be another way

6    and it's not by having them respond to a 30(b)(6) notice where

7    they have to produce a witness to explain what it was that the

8    Government was talking about, the anticompetitive behavior

9    here."  I mean, you said, your Honor, "I understand your

10   problem, but that's not the way to pursue it."

11         So, I'm here to tell you that in connection with our

12   motion against Nippon Cargo, we're not asking Mr. Fornaciari,

13   who represents Nippon Cargo, to educate his witness about his

14   thought processes about why it was that they, Nippon Cargo,

15   pled guilty.  So that's my reading of what you ruled, but you

16   did seem to say there might be another way to go about it.

17         THE COURT:  I'm not sure I remember what the "it"

18   is, but maybe you'll help me.

19         MR. SEDRAN:  Well, it's to try to get testimony from

20   the witnesses concerning a guilty plea.

21         So, the notice of deposition served on Nippon Cargo

22   is somewhat different than the notice served on Korean Air.

23   If you recall, the notice served on Korean Air asked for

24   information about the dates and parties and substance of

25   communications, and then incorporated the plea agreement and

Proceedings                                6

1    made reference to the fact that the Government said "if we

2    went to trial, we would have provided evidence to show that

3    there were meetings, communications and agreements."

4           Our notice of deposition on page five, and our

5    notice is Exhibit B to our motion, we're asking for Nippon

6    Cargo to identify the high-level personnel of Nippon Cargo

7    that was referred to in the plea agreement, other employees of

8    Nippon Cargo that were referred to in the plea agreement, the

9    other Air Cargo providers that supposedly conspired with

10   Nippon Cargo, and what was actually said.

11          In our factual situation, your Honor, in the Answers

12   to Interrogatories, Nippon Cargo never identified any

13   agreements that they entered into.  At best, they identified

14   meetings and communications with competitors.

15          THE COURT:  I'm sorry, you said they never

16   identified what?

17          MR. SEDRAN:  They never identified any agreements

18   that they entered into with competitors.  They've only

19   identified meetings and communications.

20          Our view, your Honor, is that when a company enters

21   a guilty plea and says on the record that in fact they did

22   what they were charged with, they admit that there were

23   agreements, and in our brief, Exhibit F I think it is, during

24   Nippon Cargo's guilty plea, the criminal court said:  "Is that

25   factual summary true and correct?"    Nippon Cargo said:  "Yes,

Proceedings                                              7

1   it is."  Then the Court said:  "Did Nippon, in fact, do what

2   the Government has stated it could prove at trial?"   The

3   answer is:  "Yes."

4          So, when a company comes in and says "yes, we did,

5   we conspired, we agreed," I want to suggest to the Court that

6   it's fair game for the plaintiffs to ask "okay, what is it

7   that you did, what is it that you agreed to, and who were the

8   participants?"

9          I don't want Mr. Fornaciari to have to go through

10  all of his meetings with the Department of Justice and give me

11  the underlying factual basis for the decision to plea, but I

12  do think we're entitled to have a witness, a corporate

13  representative under oath, this will be a videotaped

14  deposition, be asked questions.

15         Okay.  Nippon Cargo said that it did these things,

16  it agreed, it conspired.  "What is it that you did?"   Now,

17  the answer may be, "We didn't do anything.  We didn't

18  conspire.  We didn't agree."  If that's the position that they

19  want to take at trial, I think they might look silly in light

20  of the fact in court they agreed that they did it.

21         I want to suggest, your Honor, however, it's not

22  proper for a privilege objection to be lodged to preclude us

23  from getting the answer.  I am certain, based on all the

24  evidence that we know, that Nippon Cargo knows what it did, it

25  knows that it agreed with others, but if it's their position

Proceedings                                           8

1   that "we really didn't agree, that we stepped into court, we

2   pled guilty, but that wasn't the truth," well, let them state

3   that on the record and not be shielded by a privilege

4   objection.

5           Another point I'd like to make is --

6           THE COURT:  Are you asking them to make another

7   admission that is the same as the admission they made on the

8   record in making the guilty plea?

9           MR. SEDRAN:  No, it's far --

10          THE COURT:  You want more specificity?

11          MR. SEDRAN:  I do want more specificity.  I have

12  trouble with that word.  And I think we're entitled to it to

13  the extent that it is information known by the company as to

14  what it did and who they spoke to.  It's either they have the

15  knowledge or they don't have the knowledge and tell us.

16          Now, if I could just address the Eli Lilly case

17  because that you, in large part, base your opinion on Eli

18  Lilly.  But Eli Lilly, what I'm going to say, your Honor, is

19  Eli Lilly could stand and you could still find in our favor

20  for these reasons.

21          In Eli Lilly, the facts were extremely important.

22  It wasn't just a rule of law that applies to every single case

23  no matter what.  In the Eli Lilly case, Eli Lilly pled guilty

24  to promoting Zyprexa, a drug, and they were misbranding it.

25  It wasn't a conspiracy case and there was only one product.

Proceedings                                                        9

1   The guilty plea was for a period of time that predated the

2   civil case period of time.

3           In that case, we checked the docket, the plaintiff,

4   the State of West Virginia, took seventy depositions, and the

5   court, Magistrate Mann, said that the State has not explained

6   the added value of a 30(b)(6) deposition.

7           Here, we don't know, we've never had Answers to

8   Interrogatories identifying the agreements.  We're entitled to

9   know who Nippon Cargo conspired with.  We still don't know who

10  are the key people with Nippon Cargo that engaged in unlawful

11  acts.

12          In the Zyprexa case, the guilty plea agreement

13  specifically stated what Eli Lilly did wrong, that they

14  mismarketed their product for uses for dementia that were

15  approved.  So there was sufficient information for the

16  plaintiffs to have all they needed to know from the guilty

17  plea.

18          Here, we have deposed three Nippon Cargo witnesses

19  for a total of two days, and we had interpreters so basically

20  half the day is spent waiting for the interpretation.  So,

21  unlike the Eli Lilly case where there were seventy

22  depositions, we had four days with an interpreter.

23          So, I think it would be fair for you to rule, your

24  Honor, that Nippon Cargo has to produce a witness to identify

25  agreements that it has entered into with competitors

Proceedings                                    10

1   concerning rates and surcharges, including any agreements that

2   it admitted that it entered into while it was being sentenced

3   on May 8th.  Again, if they want to take the position "no, we

4   really didn't enter into agreements, we didn't have

5   communications, we admitted it on the record but we just did

6   it to be done with it."

7             So, for those reasons, I think the factual record is

8   different and there are facts here that were not brought to

9   your attention with respect to the motion against Korean.  So

10  I think you could still be faithful to the Eli Lilly opinion

11  and allow us the relief we're requesting.

12            THE COURT:  It sounds like what you're saying is

13  that to the extent, because I think Eli Lilly rested, and I

14  haven't read it recently, but rested on the notion that the

15  decision about what it was that was being pleaded to would

16  reveal attorney work product, attorney impressions, attorney

17  views, to the extent that that was communicated to their

18  clients that would be, perhaps, attorney/client privilege, but

19  in any event, essentially what you're saying is that whoever

20  was seeking information in that case, I guess it was the

21  plaintiff, had not satisfied the standard for getting attorney

22  work product.  That is, you got to show there's no other way

23  to get the information.  There Judge Mann, you were arguing,

24  was saying "well, you got the information, so we don't have to

25  go and tread upon these attorney sensitive matters."

Proceedings                                11

1              Is that the argument that you're making?

2         MR. SEDRAN:  Well, it's close to it, but it's a

3    little bit more because in connection with the motions

4    concerning interrogatories, you have said, ruled, that facts

5    known by attorneys need to be revealed in Answers to

6    Interrogatories, and I would say that in putting up a witness

7    under 30(b)(6), facts known by the company, including the

8    attorneys, need to be presented by the 30(b)(6) witnesses.

9              THE COURT:  But facts, if where you're going is it's

10   just a fact, what agreement did they enter into, it's just a

11   fact?   Well, in this context, and I don't know exactly if

12   everybody had a handshake and said, "We're going to do this

13   together."  It's not typically the way things progress.  So

14   you have a much more murky situation.  So you don't have

15   somebody saying you can't say that as of such-and-such a date,

16   and I'm not saying this is the case here.  I'm just saying

17   hypothetically when you're talking about conspiracies of this

18   nature, of any nature, people talk, exchange some information,

19   and then they go about doing their business and it looks like

20   they're doing business in a conspiratorial way, and maybe they

21   are, but it's not quite, it's not like you have a document

22   that says 'okay, this is what you're going to do, this is what

23   I'm going to do and we're going to all work together.'

24             MR. SEDRAN:  I would suggest --

25             THE COURT:  Let me just finish.

Proceedings                                      12

1       MR. SEDRAN:  I'm sorry.

2       THE COURT:  And, so, to the extent that a decision

3  is made to plead guilty, it may well come up in the context of

4  a set of analyses that say well, you know, we're looking at

5  all the meetings here that we know about and all the facts

6  that we know about and looks like the Government would be able

7  to meet their burden of proof in showing that between the

8  conduct that you've engaged in and all of the other meetings

9  that you had with these people that there was an agreement.

10      MR. SEDRAN:  And that's not what I'm asking for.  It

11 happens to be in this case that there were explicit

12 agreements.  Mr. Cohen's going to argue the next motion, and

13 in his papers, we have learned through the discovery we've

14 been able to take, that at various meetings there were express

15 agreements by the parties.

16      So we want Nippon Cargo to tell us at a 30(b)(6),

17 identify the agreements that Nippon Cargo entered into, but if

18 it's a question of Mr. Fornaciari having to do a gestalt

19 process of taking communications and determining whether that

20 rises to the level of agreement, then we're not asking for

21 that.  But, to the extent that they know that there were

22 agreements that can't be controverted if they would only tell

23 us and that actually appear in some of the documents, then

24 they ought to have a witness tell us about the agreements that

25 they knew that took place.  If it's a matter of Mr.

1   Fornaciari's interpretation of putting together an e-mail, a

2   piece of correspondence and then reaching his decision that

3   maybe that rises to the level of agreement and perhaps the

4   Government could prove its case, I'm not trying to get that

5   information.  I understand that gets inside his mental

6   processes.  But we're asking for facts known, we're asking

7   them to identify agreements and participants.

8             The fact that Nippon Cargo came into court and said:

9   "Yes, there were agreements," I think allows us to take a

10  deposition and have Nippon Cargo say:  "Yes, we had these

11  three agreements.  They were on these routes.  Here were the

12  participants."  Or, they might say at a deposition:  "No, we

13  don't -- as the corporate representative, it's our position

14  that there were no agreements."

15            THE COURT:  Okay.

16            MR. SEDRAN:  I'm going to say one more thing on Eli

17  Lilly.

18            THE COURT:  I'll let you do that.  Go ahead.

19            MR. SEDRAN:  The last point on Eli Lilly was that

20  the decision by the Court was based upon a lot of factors, not

21  only the possibilities of invading privilege, but the extent

22  of the discovery that had been taken, and it was extensive,

23  and that the fact that that plea agreement gave the plaintiff

24  all it needed to know that Zyprexa was misbranded in its

25  marketing.

1          THE COURT:  Okay.  I confess, as I said, that I

2     haven't looked at that case since we last got together.  So I

3     may end up having to do that now.

4          Let me ask this question of you, Mr. Sedran.

5     Presumably you've been given the documents that you've asked

6     for.  You've received documents from the Justice Department,

7     or that were provided to the Justice Department and perhaps

8     other documents that you got from Nippon Cargo as well.

9          To the extent that those disclose agreements, I

10    presume you've been able to ask about that, or maybe they just

11    don't disclose any agreements as far as setting rates for

12    cargo or --

13          MR. SEDRAN:  The answer is Nippon Cargo has produced

14    documents that are produced to the DOJ.  One of our problems

15    is, well, there are probably hundreds of thousands of pages of

16    e-mails, a vast majority are in Japanese.  So, that we've been

17    working on trying to figure out which ones we should

18    translate, but to go -- we have not translated every single

19    one because it probably would cost us three hundred thousand

20    dollars or more to have full translations, and to the extent

21    that there are agreements that were reached that are not

22    reflected in documents, and I don't know, I would have no

23    access to them.  So the easy route is to have Nippon Cargo

24    provide a representative and identify meetings -- I'm sorry,

25    agreements that they know about, rather than have us go

Proceedings                                          15

1    through -- I mean, we're working on it, but in all honesty, we

2    haven't translated all the Japanese documents, and we're

3    entitled to the information in a deposition, and it's probably

4    the speediest way to find out what Nippon Cargo knows.

5              THE COURT:  Was your deposition notice on Korean Air

6    the same as the one you served on Nippon Cargo?

7              MR. SEDRAN:  It was different in this sense, your

8    Honor.  That the deposition notice on Korean Air specifically

9    incorporated the language, I mean verbatim, it didn't

10   incorporate, it set forth the language that "if the Government

11   went to trial, it would have presented sufficient evidence to

12   provide the following facts."

13             One other thought comes to mind, and that is that

14   there are other defendants against whom we would like to take

15   depositions learning information about their agreements.  So,

16   rather than retooling a deposition notice, going to the

17   deposition and then having an instruction and then coming to

18   see the Court, it's useful, certainly for our motion against

19   Nippon Cargo, but for the other deposition notices that are

20   queued up, to find out from the Court if in fact there are

21   other ways to get the information, and what I'm suggesting is

22   we don't want to get inside the head of Mr. Fornaciari because

23   there's things in there we probably don't want to know, but to

24   the extent there are facts that don't require filtering and

25   analysis, we think we're entitled to them.

Proceedings                                      16

1              THE COURT:  Okay.

2              Mr. Fornaciari?   I am assuming you're Mr.

3     Fornaciari.

4              MR. FORNACIARI:  That's right, your Honor.  I have

5     been for a while.

6              The argument you heard was nothing more than a plea

7     to eradicate the attorney/client privilege, especially in a

8     criminal context, and the reason I say that is because your

9     ruling on September 8th, only a portion of which was read to

10    you, and this opinion that Judge Mann entered in the Eli Lilly

11    case is not so limited.  Not at all.  And you have it exactly

12    right and you summarized it in the transcript.  I'll read to

13    you what you said.  You said:  "Essentially, Korean Air

14    decided to plead guilty because their lawyers looked at a

15    bunch of evidence and said, you know, the Government has

16    probably got you there so you ought to plead guilty."

17             Now, as you so --

18             THE COURT:  I don't know how I would know that.  I

19    mean, maybe that's what they argued to me at the time, but I

20    mean, that's often the case.  I'm just surmising that's the

21    case.

22             MR. FORNACIARI:  But, your Honor, this is not a

23    blue-collar case, not a case of violence.  This is a financial

24    crime.  This is an antitrust violation.  So what happens here

25    is we have Japanese clients.  They don't know the difference

1   between a communication with a competitor that is

2   procompetitive or anticompetitive.  They're relying on us

3   totally to tell them when is enough evidence to reach the

4   level of chargeable conduct and the risks are too high to go

5   to trial.

6            THE COURT:  Okay.  And I think Mr. Sedran in his

7   argument is acknowledging that, but he is saying that you said

8   there was an agreement and if there are specific agreements

9   that you learned about from your investigation on behalf of

10  your client and those are facts as opposed to he is making a

11  distinction between analyzing the whole body of evidence and

12  deciding there's enough evidence to convict you versus, you

13  know, an explicit understanding which may have even, in fact,

14  been disclosed in e-mails between the competitors which says

15  we're going to -- as you said, they don't know what's

16  pro-competitive.  Maybe they even put in their e-mails "we

17  decided we're going to do this or we're going to do this as

18  part of our joint trade agreement" or whatever.  If that's in

19  the documents and it's disclosed in that way, or there's some

20  sort of memorandum from one of your clients to a superior that

21  says "we had this meeting and we decided this, this and this

22  with our competitors," that's a fact as opposed to --

23           MR. FORNACIARI:  But, your Honor, he's making an

24  illusory distinction that you're buying into.  We're not

25  talking about an agreement.  We're talking about a decision by

1  a lawyer that there's a possible felony.

2          THE COURT:  No, there's a distinction, it seems to

3  me.  If they say to each other -- you know, I guess the way

4  it's framed here, it's an agreement that's referenced in

5  paragraph four of your plea agreement, that means it's an

6  agreement that violates the law, it does make that leap.  I

7  mean, if there's an agreement in there about -- they haven't

8  translated all the e-mails.  If there's agreements that your

9  clients reached about specific prices to charge, that's

10 distinguished from, it seems to me, I guess maybe the way it's

11 framed in this notice provides a little bit different color to

12 it.

13         MR. FORNACIARI:  But, your Honor, what the Eli Lilly

14 court said and what you adopted on September 8th is exactly

15 what's going on here.  What they said here is, and the

16 question in the Eli Lilly case was they wanted to know the

17 precise nature of the misbranding conduct.

18         Here, he's saying "I want to know the precise nature

19 of what you pled to as an agreement."

20         So, what the Court there said was they wanted a Eli

21 Lilly agent most knowledgeable about those matters, and the

22 Court said:  "Well, that's going to present a host of

23 attorney/client privilege and work product issues.

24 Knowledgeable witnesses undoubtedly derive their information

25 as or through counsel.  Lilly's board of directors, after

1    having been counseled on the company's legal rights and

2    factual basis for the plea, authorized the plea."  And that's

3    what happens when there's a plea.

4          Your Honor, please let me make clear we have given

5    them everything that NCA knows about.  There's a universe of

6    facts we've given them.  He has admitted that we have given

7    him thousands of pages of documents which we gave the Justice

8    Department which constituted the basis for the plea.  So, it's

9    not -- now, he has this universe of information that he has at

10   his disposal and what he wants know is to ask our clients

11   "well, out of that universe of information, what did your

12   lawyers believe was so important and so damaging that they

13   counseled you to plead to entering an agreement?"  He has the

14   universe of information.  He can sift through it.  He can

15   decide himself what it is.  He can ask the witnesses he's

16   called what it is.  But now he wants what we counseled the

17   client to plead to.

18         So, I think what he's asking for, and it's really no

19   argument to say the easy route.  It's always the easy route to

20   find out what the damaging evidence is if you can breach the

21   attorney/client privilege.  Let's find out what it is.  Let's

22   just ask him what his lawyer told him.

23         So, arguing to you that let's take a shortcut, let's

24   take a shortcut and breach the attorney/client privilege is

25   essentially what he's saying.  You were right on September

Proceedings                                                    20

1    8th, Judge Mann was correct in Eli Lilly, and we are right

2    today when we're telling you that what he wants is privileged

3    information.

4          Your Honor, this is not a small matter.  This goes

5    to the very heart of the legal representation of a client in a

6    criminal matter and he wants it.

7          THE COURT:  Can't blame him.

8          MR. FORNACIARI:  No, I can't blame him either, but

9    he's got it.  He doesn't want to do the work to look through

10   all the evidence he's got to find out what it is.

11         THE COURT:  This is a little problematic, the way

12   it's phrased here by reference to the plea agreement, but why

13   can't he obtain the information, he didn't want to have to

14   translate all the e-mails, but why shouldn't your client be

15   forced to look through, I understand some of the people who

16   were actually involved, in fact maybe most of the people who

17   were involved in this are no longer employed by your client,

18   but why shouldn't they ask you to have one of the current

19   employees be familiar enough with the e-mail traffic and the

20   other communications to say were any of those disclosed

21   conversations about agreements, or conversations about

22   tariffs, or conversations about prices that will be charged?

23         MR. FORNACIARI:  Your Honor, we've identified them

24   for him, your Honor.

25         THE COURT:  Specific e-mails?  No, I think you've

1   given him all the e-mails.

2          MR. FORNACIARI:  They had a witness, Miss Shingu

3   that you're going to hear about in about ten minutes, whose

4   job was to file approvals on the fuel surcharge in Japan.  She

5   spoke for two days about talking to JAL, talking to other

6   airlines about filing for fuel surcharge approvals.

7          So, to the extent we have evidence, it's there.

8   They've questioned witnesses and they've given them responses.

9   It is not our problem that the five or six people who were at

10  the meetings that he is trying to get at are no longer there.

11  They can take their depositions.  They're not dead.  They're

12  in Japan.

13         THE COURT:  Well, they're not exactly readily

14  available either.

15         MR. FORNACIARI:  No, but that's what a plaintiff

16  does to prove his case.  He finds out who the witnesses are.

17  He doesn't ask a defense lawyer to help him prove his case.

18  He knows who they are.  We've identified who they are for him.

19  We've given him the e-mails.  Their names are on the e-mails.

20         So, your Honor, Eli Lilly was not as limited as Mr.

21  Sedran would have you believe, and in fact, your Honor, as far

22  as we know, if you ordered us to have a witness testify behind

23  a plea agreement, you'd be the only court that ever did it.  I

24  don't see one case in their briefs where they cite to you that

25  this is fair game.  We are proceeding on the assumption, the

1   unsupported assumption by Mr. Sedran, that he's entitled to

2   look behind the plea agreement, and he's not.  As Judge Mann

3   said, they have everything that was involved in the plea

4   agreement.  They have the plea agreement, they have the

5   sentencing memorandum, they have the hearing on which Judge

6   Bates in Washington --

7           THE COURT:  Well, the sentencing memorandum, it

8   provides the Government's view of the evidence.  I mean, the

9   sentencing memorandum is just --

10          MR. FORNACIARI:  It tells you what the violation is.

11          THE COURT:  I know, but are you going to stipulate

12  to the admission of that?

13          MR. FORNACIARI:  No, but I'm -- I mean, I'm not

14  going to stipulate it.  We're talking about discovery.  They

15  have it.

16          THE COURT:  Well --

17          MR. FORNACIARI:  But more importantly, your Honor,

18  what they shouldn't have is what we told our clients

19  constituted a possible crime, and from that subset of facts

20  they want to learn from the client everything about what we

21  told them because it was what we told them that would lead to

22  the identity of the people involved in the plea, the identity

23  of the situations.

24          THE COURT:  The identity of the people involved in

25  the plea, I'm not sure I follow you.

Proceedings                              23

1         MR. FORNACIARI:  He says the only thing we're asking

2    for is the identity of the people who were involved in the

3    conduct pled to.  Well, we've identified them.  We've talked

4    to our client about them.  That's how the client knows.  The

5    client doesn't know what's chargeable conduct and what is not.

6    The client knows what communications it's had and it's told

7    him.

8         So, your Honor, what he's really asking you to do is

9    really take a second bite at the apple.  There's no reason for

10   you to step back and reverse yourself.

11        THE COURT:  Okay.  Mr. Sedran?

12        MR. SEDRAN:  Yes, sir.

13        Again, facts known by an attorney are discoverable.

14   I don't want to get into the legal analyses of Mr. Fornaciari.

15   If Nippon Cargo knows that it entered into agreements, then at

16   a deposition they have to tell us what the agreements are.  If

17   their position is "we did not enter into any agreements," then

18   they have to say so under oath.  That is not going to violate

19   the attorney/client privilege.  I don't want to know what the

20   analysis was of Mr. Fornaciari in advising his client.  Facts

21   known are discoverable, whether in an interrogatory or in a

22   30(b)(6) deposition.

23        In the Eli Lilly case, I'm reading from page two, it

24   says:  "The state has already been furnished with the most

25   compelling evidence of the terms of the guilty agreement."

```
                        Proceedings                    24
```

1          THE COURT:  I must have received a copy of Judge

2    Mann's opinion which was adopted by Judge Weinstein.

3          MR. SEDRAN:  Correct.

4          THE COURT:  Because it doesn't appear to be here in

5    published form.

6          MR. SEDRAN:  In a second I could hand my copy up to

7    you, but I want to say that the plaintiffs, the State of West

8    Virginia, also wanted to know the factual basis for the plea.

9          In this deposition, I don't want to know the factual

10   basis of the plea.

11         THE COURT:  But I think you're making a distinction

12   without a difference.  I mean, you do.  You want to know the

13   factual basis that -- you want to know what the defendant here

14   believed the factual basis for the plea was.

15         MR. SEDRAN:  Well, with all due respect, what I want

16   to know is did Nippon Cargo enter into agreements with

17   competitors --

18         THE COURT:  Their attorneys think there was enough

19   evidence that they did, and it seems to me if you have a

20   document that discloses what communications went back and

21   forth and you have the identification of the meetings that

22   occurred, whether a particular meeting and discussion rose to

23   the level of an agreement is what I think you're asking from

24   me.

25         MR. SEDRAN:  Well, it's not because based on a

Proceedings                                        25

1   limited record, we have seen that there were agreements

2   reached in some of the meetings in Japan, Mr. Cohen can

3   address that.  So if it's not clear whether there was a

4   meeting -- I mean, whether there was an agreement because

5   you've got to piece e-mails together, well, that's fair that

6   he doesn't, Mr. Fornaciari doesn't have to reach the

7   conclusion 'yeah, that was an agreement.'  But, if Nippon

8   Cargo, if it's their litigation position that 'we entered into

9   agreements, we're entitled to that,' if it's --

10              THE COURT:  Well, they said they did.  I mean, they

11  said that they did enter into an agreement.  Somebody got up

12  and said that, I guess, on behalf of the corporation.  He said

13  that on behalf of the corporation probably because his

14  attorney said, "That's what they're going to ask you and

15  you've agreed to say that."

16              MR. SEDRAN:  Okay.  But let's say --

17              THE COURT:  And so, you have that admission "we

18  entered into agreements."  They didn't go into any specificity

19  about what the content of that agreement or those agreements

20  were.

21              But you're asking now, I think, for them to say what

22  the content of the agreements were.

23              MR. SEDRAN:  I am if it's the corporate position

24  that, in fact, they entered into agreements.  If it was simply

25  for convenience that they pled guilty and in another court

Proceedings                                    26

1  admitted that there were agreements, but in this litigation

2  they want to say on the record, "No, we really didn't enter

3  into agreement.  The answer, Mr. Sedran, is no, there were no

4  agreements," well, then let them say that at a videotaped

5  deposition.  It will be quick.  But in good faith, if they

6  know they entered into agreements --

7          THE COURT:  I'm sorry.  Based on what I'm hearing

8  today, it sounds -- well, I don't think that the distinction

9  you're trying to draw is one that's meaningful.  I mean, the

10  reason they believed they entered into an agreement is because

11  their attorney told them they entered into an agreement,

12  right, and they don't know, there's not a corporate

13  representative who knows what agreements they entered into

14  except an agreement as you've asked for, as referred to in the

15  plea agreement, that's devoid from what their attorneys told

16  them.

17          MR. SEDRAN:  Well, that's true that it may be that

18  Mr. Fornaciari is one of the main sources of facts, but as

19  you've ruled --

20          THE COURT:  No, he has gathered facts.  He is also

21  the source of the legal conclusion, the mental conclusion that

22  those facts constitute an agreement that is referred to in the

23  plea agreement.

24          MR. SEDRAN:  Just as a hypothetical, if someone from

25  Nippon Cargo said, "Mr. Fornaciari, yes, there was an

Proceedings                                    27

1   agreement, we fixed prices with JAL or ANA," well, that

2   doesn't require much interpretation, and why is it that the

3   plaintiffs are not entitled to know facts known by the

4   company, especially if they come into court and say "We did

5   it," I think we're entitled to just ask them on the record:

6   "Did you enter into agreements with competitors to fix prices

7   of surcharges or rates?"  If they now want to say "we

8   didn't," well, I'm going to have to live with that and prove

9   my case through the documents, but if in good faith they know

10  that they did enter into these agreements, I think we're

11  entitled to know it without asking Mr. Fornaciari to sift

12  through any evidence.

13          THE COURT:  I'm not inclined to reverse myself based

14  on what I've heard.  I believe this is an area that's fraught

15  with attorney/client privilege and work product privileged

16  information.  I don't think it makes sense to compel somebody

17  to come in and reiterate what they said:  'Did you enter into

18  an agreement?  Yes, we did.  Do you know what the contents of

19  the agreement are?  No, I don't, but the company said it

20  entered into an agreement, so that's as much as I know.  What

21  were the agreements?  I don't know, except for what my

22  attorney tells me.'

23          I don't think it makes sense to have somebody show

24  up and say that.

25          MR. SEDRAN:  Well, thank you for giving me the time

Proceedings                                    28

1   to present my argument.

2          THE COURT:  I mean, you made some good arguments.  I

3   mean, I understand the notion.  It's just that I don't think

4   you can divorce the facts and the legal assessment of those

5   facts in these circumstances, and that's treading into

6   attorney/client matters.  So I'll just have to adhere to the

7   prior ruling.

8          All right.  Let's go to the other issue, which is

9   whether or not Nippon Cargo properly prepared their

10  representatives on the various subjects.

11         I wasn't absolutely clear about which subjects out

12  of the eleven you felt were, the testimony was deficient.  It

13  looked like it was really concentrated only three of the

14  areas.

15         In any event, I did not go and study each of the

16  pieces of testimony, I'll be honest with you.  I was looking

17  at the summaries.  So I need a little bit more clarity on

18  that, where you think they fell short and to meet what Mr.

19  Fornaciari's response was that at least some of the inability

20  arises from the fact that this resolution of the Korean Fair

21  Trade Commission may not comport with reality, I mean with the

22  facts, at least as known to the defendant.

23         But anyway, I'll let you address it, and give me a

24  little bit more clarity on what it is, what specific areas you

25  think that they fell short and whether it's, indeed, possible

Proceedings                                        29

1   for them to educate themselves given that some of the people,

2   if not all of the people, who were involved in the

3   communications about which you're interested are no longer

4   available to the company either.

5           MR. COHEN:  Austin Cohen on behalf of the

6   plaintiffs.

7           THE COURT:  I'm sorry, your first name?

8           MR. COHEN:  Austin Cohen.

9           THE COURT:  Thank you.

10          MR. COHEN:  First off, in terms of which topics we

11  believe they didn't address, the answer is pretty much all of

12  them.

13          What we've done in the brief, for illustrative

14  purposes, is we've set out a number of instances where they

15  didn't provide information and we tried to cross-reference,

16  and the reason why we say all of them pretty much is because

17  there's significant overlap among the topics.  For instance,

18  the KFTC resolution is a topic.  The KFTC resolution discusses

19  ICAJ meetings where NCA met with JAL and/or ANA in Japan and

20  discussed setting fuel charges and rates.  So the meetings of

21  the ICAJ as discussed in the KFTC resolution would be

22  responsive to, for instance, eleven.  It would also be

23  responsive to seven, to nine and to four.

24          THE COURT:  So can I take --

25          MR. COHEN:  So, we've done some of that

1    cross-reference.

2        THE COURT:  Can I take from that then that what you

3    are -- maybe it's better to identify it as subject matter as

4    opposed to topic.

5        MR. COHEN:  Right.  The subject matter is we were

6    trying to get at meetings and communications where we believed

7    agreements were reached or fuel surcharges were discussed.

8    Purposes of the topics was to help NCA prepare their

9    designees.  We're narrowing down you need to look at the KFTC

10   resolution, you need to look at meetings and communications,

11   you know, ICAJ meetings, but there's overlap.

12       For instance, to the point that it's not exclusive,

13   let me show you we don't discuss in the exhibits topic five

14   which is G8 meetings, which was this global group.  If you go

15   to Mr. Kato's deposition, I have a copy here if you want me to

16   hand it up.

17       THE COURT:  Is it there?

18       MR. COHEN:  Kato's deposition is Exhibit 5.

19       If you look at page 226, lines five through eleven.

20       MR. FORNACIARI:  Could we have a date?

21       MR. COHEN:  A date of the deposition?

22       MR. FORNACIARI:  Yes.

23       MR. COHEN:  July 14th.

24       Page 226, lines five through eleven Mr. Kato said he

25   does not know if NCA attended G8 conferences in or about April

Proceedings                              31

1   of 2000.  Lines twelve through fifteen on the same page, he

2   does not know where G8 conferences were even held.  Lines 16

3   through 20 on that page, he does not know if rates were

4   discussed at G8 conferences.  And lines 21 through 25 on that

5   same page, he does not know if G8 attendees ever agreed to

6   increase rates.

7              THE COURT:  Was he the designated witness for

8   topic --

9              MR. COHEN:  Yes, he was.  He was designated for

10  everything except for three topics.

11             But, you know, really we think it's a pretty simple

12  argument, and if you go through the testimony, it speaks for

13  itself.  We noticed the eleven topics which we think was a

14  reasonably narrow universe of information for them to prepare

15  the designee on.

16             The rule is that NCA is obligated to produce a

17  properly educated witness.  You yourself at the last hearing

18  correctly stated, quote:  It's the institutional witness's

19  obligation to make sure they have somebody educated enough to

20  answer the questions.

21             Here, NCA did not do that.  NCA and Mr. Kato and Ms.

22  Shingu simply did not do their homework.  They could not

23  answer questions about almost every meeting or communication

24  we asked about, including the limited universe of meetings and

25  communications contained in the KFTC resolution, and we think

Proceedings                                              32

1    that's a particularly useful example of how unprepared their

2    designee was.

3              I have a copy of the translation that we had in our

4    possession before the deposition.  If you'd like, I can hand

5    it up as well, the translation of the KFTC resolution.  We had

6    a copy that we obtained and we translated it.

7              THE COURT:  Had that been supplied to the defendant?

8              MR. COHEN:  That copy had not been, but the

9    deposition notice cited the KFTC resolution by the proceeding

10   number from the Korean Fair Trade Commission.

11             THE COURT:  By the?  I don't understand.

12             MR. COHEN:  The KFTC stands for the Korean Fair

13   Trade Commission.

14             THE COURT:  Right.  You said by the preceding

15   number?

16             MR. COHEN:  By the proceeding.

17             THE COURT:  Proceeding number.

18             MR. COHEN:  And it's Resolution Number 2010-145.

19             Mr. Fornaciari admitted on the record at the

20   deposition that of course Nippon Cargo had a copy of the

21   resolution, they were a party to the proceedings, and yet if

22   you go through every single meeting and communication

23   contained within that resolution we asked about, he was unable

24   to provide any information about.

25             And if you go to the end of our questioning of the

Proceedings                                33

1   KFTC resolution, I asked him what he did in particular to

2   prepare for his designation as the KFTC witness.  His answer

3   was, quote:  I did not do any preparation in particular.  Page

4   143, lines 15 through 16.

5          On page 144, line eight I asked him did anybody show

6   him documents regarding meetings and communications contained

7   in the KFTC resolution.  His answer was, quote:  I did not see

8   any.

9          And finally, after going through specific meetings

10  and communications that we believe are contained in their copy

11  of the KFTC resolution, I asked if he could tell me based on

12  his preparation what meetings and communications he was aware

13  of that are set out in the KFTC resolution, any meetings and

14  communications.  His answer was on page 146, line 15 through

15  16, quote:  I do not have any information regarding any

16  specific meeting, close quote.

17         So, at a minimum, we believe if he was properly

18  prepared, NCA should have at least sat down with him with the

19  resolution, the unredacted resolution that they received as a

20  party to the proceedings and gone through those meetings and

21  communications.  Additionally --

22         THE COURT:  Did the KFTC resolution identify

23  specific communications or documents that it --

24         MR. COHEN:  It does.

25         THE COURT:  Does it cite the documentation in

Proceedings                                    34

1    support of its --

2              MR. COHEN:  It cites to documentation.  It

3    describes, for instance, e-mails that were sent by some

4    attendees at these meetings to other attendees.  It discusses

5    in many instances official ICAJ subcommittee meetings, and one

6    of the things I had asked even during the deposition was if he

7    was aware whether or not minutes were kept at ICAJ meetings

8    and he said he wasn't.  I don't think we've seen any ICAJ

9    minutes in the NCA documents.

10             But, again, those are the types of materials that

11   NCA should have collected and used to educate Mr. Kato.

12             It's also worth noting that the copy of the KFTC

13   resolution we reviewed, the names of NCA employees who

14   attended meetings and had communications were redacted.  So

15   part of it is we wanted to find out who they were.  They even

16   have that information at least because they have the

17   unredacted resolution.  We couldn't get any information from

18   him.

19             And it's true, if you go through the summaries, the

20   Exhibit 6, 7, 8, you can see that's true throughout the

21   deposition beyond just the KFTC resolution, and when we asked

22   about meetings and communications contained in interrogatory

23   answers, they were unable to provide any additional

24   information about the substance of any such meeting, what was

25   discussed, what was agreed to, or any communication.

Proceedings                              35

1        THE COURT:  They couldn't give you even the subject

2   matter that was discussed?

3        MR. COHEN:  Not beyond what was already in the

4   interrogatory.  For the ones that were --

5        THE COURT:  I don't know what was in the

6   interrogatory answers.  I can't recall.

7        MR. COHEN:  When previously before you, you had

8   ruled for purposes of answering interrogatories so that the

9   defendants --

10       THE COURT:  No, I remember that they had to provide

11  at least the dates and participants in meetings.  I don't

12  remember how much farther than that --

13       MR. COHEN:  And the subject matter, but not any of

14  the substance, and the purpose of that was since that was

15  coming from the attorney's investigation, it wouldn't require

16  the company to do anything.

17       THE COURT:  Right.

18       MR. COHEN:  This is the time when the company has to

19  sit down with their designee and educate him, and they just

20  didn't do their homework.

21       THE COURT:  All right.  And you say basically it had

22  to do with they fell particularly short in connection with the

23  meetings identified in the KFTC resolution and meetings

24  relating to the ICAJ.

25       MR. COHEN:  Well, I'm using that as an example

1    because those are instances where we could say that 'is it

2    true that on a date certain, you know, these companies or

3    these people met and discussed blank?'  There are many other

4    instances through our discovery where we believe there were

5    meetings or communications.  Many of them are summarized in

6    those exhibits 6, 7 and 8 where they simply could not provide

7    any information.  We just use these, particularly the KFTC and

8    the interrogatories, because it's a very limited universe of

9    communications.  They can't argue 'you were asking us to go

10   through six years worth of documents and look for a needle in

11   a haystack.'  It's 23 meetings.  They are summarized in the

12   KFTC resolution.  NCA received a copy of that as a party to

13   the proceedings.  NCA should have collected whatever

14   information it had.  NCA should have gone and seen if it had

15   documents from its former employees that it could have used to

16   educate Mr. Kato.  The obligation is on NCA to educate Mr.

17   Kato.  The obligation is not on Mr. Kato to educate himself,

18   and if you look at the brief they filed, they talk about the

19   efforts Mr. Kato made to contact the former employees after

20   the fact when he was preparing for the deposition.  What they

21   don't talk about is if anyone at NCA at any point had met with

22   one of the former employees, such as Mr. Katayama, and have

23   facts and information that they collected from Mr. Katayama,

24   those facts and information should have been given to Mr. Kato

25   so he could be prepared.

Proceedings                                    37

1            THE COURT:  Okay.

2            Mr. Fornaciari?

3            MR. FORNACIARI:  Your Honor, I would like to split

4    up these witnesses into two, they're two different witnesses,

5    and they were noticed for two different subjects.

6            I don't know if you have in front of you the

7    subjects the notice cover.

8            THE COURT:  The notice?  I did look at the

9    deposition notice, and there was something like eleven topics

10   it covered, and Miss Shingu appeared on some and Mr. Kato on

11   the other.

12           MR. FORNACIARI:  Let's first talk about Miss Shingu.

13           THE COURT:  Well, they didn't talk much about Miss

14   Shingu.  Let's talk about Mr. Kato.

15           MR. FORNACIARI:  Maybe we can stipulate Miss Shingu

16   is --

17           THE COURT:  I don't think they're stipulating to

18   that.  But Mr. Kato was designated, I gather, to talk about

19   the various meetings in the KFTC resolution and the ICAJ and

20   the G8 topics.

21           MR. FORNACIARI:  Let me say, your Honor, with

22   respect to the G8.  I represented this client, this Japanese

23   client, since 2006 when it got the subpoena.  I interviewed a

24   lot of witnesses.  I represented them in the criminal case as

25   well as in the civil case.  I have never heard any witness

Proceedings                                    38

1   from NCA use the word "G8."  So, to assume that the witness

2   was not prepared on G8 meetings has within it an implicit

3   assumption that they knew about G8 meetings.  As far as I

4   know, your Honor, NCA knows nothing about G8 meetings.  That's

5   the first thing.

6              THE COURT:  The G8 conference.

7              MR. FORNACIARI:  Whatever.

8              THE COURT:  Okay.

9          Can I just ask the plaintiffs what is the G8

10  conference?   I mean, I've heard of G8 in connection with, I

11  guess, countries that make up the G8.  Is that what this is

12  referring to?

13             MR. FORNACIARI:  I don't know.  No one knows.  So

14  that's how critical it is to this case.

15             MR. SEDRAN:  Well, we do know.  Actually, we do

16  know.

17             THE COURT:  Is it the same G8 conference of the

18  government leaders?

19             (Pause in the proceedings.)

20             MR. COHEN:  It's a group of eight carriers.

21             MR. FORNACIARI:  Do we know what eight carriers?

22             THE COURT:  All right.

23             MR. FORNACIARI:  All right, your Honor.  So, if we

24  look at --

25             THE COURT:  So you're saying your client doesn't

Proceedings                          39

1    refer to it at least as a G8.

2              MR. FORNACIARI:  No.

3              Now, if you look at these eight categories,

4    plaintiffs want to separate them out into overlapping

5    categories, but they noticed them separately.  So, for

6    example, item two is interrogatories.  Item three is

7    surcharges.  Item four is attendance at ICAJ meetings.

8              Now, what your Honor doesn't know that the ICAJ had

9    three subcommittees.  One subcommittee had to do with the

10   United States, that is, traffic to and from whatever country

11   it was, Japan to the United States.  A second one had to do

12   with traffic between Japan and Europe, and a third one was

13   inter-Asia.  That's three.  So when they talk about ICAJ

14   meetings, and you have to understand that some of the ICAJ

15   meetings had absolutely nothing to do with this case because

16   they were inter-Asia or they were inter-Japan to Europe.  It

17   had nothing to do with traffic back and forth between the

18   United States and Japan.

19             So, if you read through this, we identified Mr. Kato

20   for items one, two, four, five, six, seven, eight, nine, ten

21   and eleven.  Okay.

22             THE COURT:  So the only one he wasn't is item three?

23             MR. FORNACIARI:  So he was identified for all of

24   those, right.

25             THE COURT:  Except for three.  You said one, two,

Proceedings                                  40

1   four, five, six, seven, eight, nine, ten and eleven.

2            MR. FORNACIARI:  I don't think he was identified for

3   three.

4            THE COURT:  That's what I'm saying.  Except for

5   three, he was identified in response to all the other except

6   for three.

7            MR. FORNACIARI:  Right.

8            Now, this motion indicates that he was -- they are

9   not moving on items five, seven, eight, nine and ten.  So that

10  means Mr. Kato must have been prepared adequately on at least

11  those.

12           THE COURT:  No.  G8, they were complaining about the

13  fact that he didn't know anything about G8.  So they just

14  saw --

15           MR. FORNACIARI:  Well, they didn't move.

16           THE COURT:  I wouldn't make that assumption.

17           MR. FORNACIARI:  Right, but they didn't make a

18  motion on it.

19           THE COURT:  No.

20           MR. FORNACIARI:  Let's go back.  I'm sorry, I didn't

21  mean to confuse the Court.

22           THE COURT:  Granted, the plaintiffs have discussed

23  this not so much in reference to the specific topics listed in

24  the deposition notice, but the general lack of information of

25  Mr. Kato.  They didn't focus on Miss Shingu, but general lack

Proceedings                                    41

1   of knowledge about any number of anything relating to

2   meetings, whether ICAJ or G8 conference or meetings described

3   in the interrogatory responses.  He just didn't know anything.

4            MR. FORNACIARI:  Yeah, but, your Honor, that's not

5   true.  They had the deposition taken for days.  They had to

6   say something besides "I don't know."

7            THE COURT:  Well, I guess I'm going to have to read

8   these depositions and decide whether he had any answers that

9   were meaningful.

10           MR. FORNACIARI:  No, don't.  I mean, listen.

11           THE COURT:  The plaintiffs are absolutely right,

12  that it is the defendant's obligation to educate somebody who

13  can talk about what happened at these meetings that they're

14  asking about, and that may mean that you're going to have to

15  disclose to the witness what you learned --

16           MR. FORNACIARI:  I did.

17           THE COURT:  -- because of your investigations.

18           MR. FORNACIARI:  I did, your Honor.

19           THE COURT:  Well, maybe you did, but he didn't know

20  it.  I mean, somebody --

21           MR. FORNACIARI:  But, your Honor, you're just

22  hearing one side of it.

23           THE COURT:  Okay.  Well, I'm going to give you a

24  chance to tell me about your side of it.

25           MR. FORNACIARI:  All right.  So, the other side is

Proceedings                    42

1   Mr. Kato was in charge of sales and marketing between 2001 and

2   2005 in the United States.  His responsibilities were fuel

3   surcharges and rates.  So he knew of his own personal

4   knowledge about whatever those topics would entail.

5           Moreover, we --

6           THE COURT:  But wait.  Does that mean that he

7   attended the meetings that they were asking about?    Probably

8   not, right?

9           They were asking about meetings.

10          MR. FORNACIARI:  Right, and so Mr. Kato told them,

11  they talked about ICAJ meetings, right.  Mr. Kato said to

12  them:  "I would like to add about the ICAJ meetings, I believe

13  that the NCA employees who attended those meetings were Mr.

14  Fujimura and Mr. Sasano.  As far as Mr. Fujimura, I attempted

15  to contact him and I explained I wanted to get information

16  from him, and he, however, declined, so I was not able to get

17  any more information from him.  About Mr. Sasano, I didn't

18  know where he was.  He left the company several years before."

19  This is on page 148.

20          So, your Honor, one of the real problems here is not

21  that we haven't tried to prepare these witnesses.  Kato

22  testified he read a banker's box of other people's documents

23  and e-mails.  A banker's box.  Someone from plaintiff's side

24  said there's something like three thousand documents in a

25  banker's box of documents.  Now, these are documents that the

Proceedings                                    43

1    lawyers selected and gave him to read to help educate him.

2            He also said he met with the lawyers, after he read

3    the documents, for at least six hours.

4            THE COURT:  But if he didn't know anything in

5    response to the questions, then what was that exercise worth?

6            I mean, obviously certainly for the interrogatory

7    responses somebody knows that there were meetings that

8    occurred with respect to various subjects.  They want to know

9    what the substance of those meetings was.  They're entitled to

10   know that.  Somebody's got to know the answer to those

11   questions, right?  And Mr. Kato, they say he didn't.  I guess

12   I can read through and see if he answered.

13           MR. FORNACIARI:  He didn't know a lot of questions

14   they answered.

15           THE COURT:  I'm sorry?

16           MR. FORNACIARI:  He didn't know a lot of answers to

17   questions he was asking.

18           THE COURT:  Then somebody has to --

19           MR. FORNACIARI:  But just because somebody doesn't

20   know doesn't mean the answer's there somewhere.

21           THE COURT:  Why not?

22           MR. FORNACIARI:  Why?  Because we did not write the

23   KFTC resolution that's 120 pages long.  The KFTC went out and

24   obtained information from who knows where and then they listed

25   it.  Plaintiffs got that list and decided that NCA witnesses

Proceedings                    44

1   would know that list.  That's not something we gave to them

2   and said here's the list of -- here's the list of meetings

3   that we attended and we know about it.  This is a list

4   published by some agency in Korea.  We don't know where they

5   got that information.  That information didn't come from us.

6   NCA had a general sales agent in Korea.  It didn't even have

7   an employee there.  Okay.  It was an independent entity.

8   Right.

9           So, Mr. Kato tried to tell them that the two people

10  who know the details, we told them there were ICAJ meetings.

11  We told them that these people attended.  We told them that

12  they discussed fuel surcharges at these meetings.  Now they

13  want to know details, on this particular date who attended and

14  what was said.  We don't have that information, your Honor,

15  and the people who have it are no longer with the company.

16          So you can order me to produce a well-prepared

17  witness, and I tried to prepare the witness well.  So I don't

18  know if they're going to get anything more from them.

19          We admitted there were meetings, someone from NCA

20  went to them and they discussed fuel surcharges.

21          THE COURT:  Then why don't you know who from NCA

22  went to the meetings?

23          MR. FORNACIARI:  We did.  We did.  We told them,

24  Sosano and Fujimura.  We gave them all the e-mails that we

25  could find from these people.  They're not here anymore.

Proceedings                                      45

1        So, you could order me to produce another witness.

2    I'd get that box of documents, I'd sit down with them, I'd go

3    through them again, and we'd have the same thing.

4        THE COURT:  Well, did Mr. Kato read the e-mails

5    prepared by these two gentlemen?

6        MR. FORNACIARI:  He read all of them that were in

7    that box and that was all the relevant ones.

8        THE COURT:  I don't know what that means.

9        When you say "all the relevant ones," are you saying

10   they're all the ones that occurred around the times of these

11   meetings?

12       MR. FORNACIARI:  Yes, that we found.

13       THE COURT:  But, then if he read those, he still

14   couldn't answer questions, I gather, about what happened at

15   the meetings to the extent that was disclosed in these

16   e-mails?

17       MR. FORNACIARI:  Right, because there may not be a

18   lot of e-mails that said 'on such-and-such a date we had a

19   meeting and this was discussed.'  Things didn't happen that

20   way, as far as I know.

21       Now, they have --

22       THE COURT:  All these e-mails are in Japanese too, I

23   gather.  Or -- yes, probably Japanese.

24       MR. FORNACIARI:  A lot of them are.

25       THE COURT:  So you don't even understand what they

Proceedings                                        46

1    say.

2         MR. FORNACIARI:  I have some translations of

3    e-mails.

4         THE COURT:  Oh, you do.

5         MR. FORNACIARI:  But, your Honor, I mean, I know you

6    don't want to -- we've been talking about a 120-page report

7    published by an agency.

8         THE COURT:  Well, that's one of the things, but I

9    believe if I recall what Mr. Cohen said is that there were 23

10   meetings identified in your Answers to Interrogatories where

11   the subject matter is disclosed but none of the substance

12   because I didn't require that in the Answer to Interrogatories

13   in anticipation that there would be a deposition of precisely

14   this nature where someone would testify on behalf of the

15   company about what happened at these meetings and what the

16   discussions were at the meetings.  I gather, I haven't read

17   the deposition, but I gather that that was not -- they weren't

18   able to get that information.

19        Let's even put aside the KFTC.  I understand what

20   you're saying about the KFTC resolution, but there's nothing,

21   they've gotten nothing, virtually, with respect to the

22   meetings that even you identified in the Answers to

23   Interrogatories.

24        MR. FORNACIARI:  Your Honor, we had a witness, Kato

25   testified that in the United States when he was responsible

```
                        Proceedings                    47
```

1  for the fuel surcharges, when they decided to move the fuel

2  surcharge, he called his counterpart in JAL and said, "I'm

3  going to move on such-and-such a date."  We went through that.

4          THE COURT:  When you say "move," what do you mean?

5          MR. FORNACIARI:  Raise it up or lower it.

6          He testified about that.  He knew about it, he

7  testified about it.  It's damaging.  We're not hiding the ball

8  from these people.  I wish I had more balls to throw them.  I

9  just don't, you know.

10          So you could order us to do it again and we'll be

11  happy to give it another try, but please don't order Ms.

12  Shingu to come back again because we haven't discussed her and

13  it would really be an abuse to do that.

14          She was responsible for the fuel surcharge in Japan.

15  She was only noticed for that, for those three topics, and she

16  testified --

17          THE COURT:  Well, you mean that's who you identified

18  to be responsive on those three topics.

19          MR. FORNACIARI:  That's right, your Honor.

20          THE COURT:  Okay.

21          MR. FORNACIARI:  And those were topics three, eight

22  and ten, and she testified about them.  She testified about

23  them ad nauseam.  She was there for like four years right in

24  the middle of the alleged conspiracy period, and she testified

25  about it ad nauseam.

Proceedings                    48

1          So, when you look at Exhibit 7 to their docket

2    number 1555, which is the motion relating to the 30(b)(6), and

3    you look at what they've identified in Exhibit 7, when you

4    read behind these page transcript numbers, what you will see

5    is she was being asked about interrogatory answers.  That is,

6    for all but the last four items on the page.  The last four

7    items on that page she was being asked about the KFTC

8    proceedings.

9          So, when she was asked about how did you raise the

10   fuel surcharge, what was the formula used, she testified about

11   it.  She testified about how it was done every time.

12         So, it's because the plaintiffs want to say that

13   these topics overlap, they want to say 'well, she didn't

14   testify about the KFTC order.'  She wasn't noticed for the

15   KFTC order.  We didn't designate her for the KFTC order.  We

16   designated her for three discrete topics and she testified

17   about them.

18         Now, they want to say these three discrete topics

19   relate to a whole bunch of other topics.  Well, someone should

20   have told us because we could have prepared Miss Shingu on

21   something else, but that's what she did.

22         So, I don't know what you're going to do about Mr.

23   Kato, but it would be really abusive to require this woman to

24   reappear.

25         THE COURT:  Well, eleven is a pretty broad

Proceedings                                             49

1    communications meetings and/or something described in

2    Resolution Number 2010-145.

3              You do have a copy of that, the KFTC resolution?

4              MR. FORNACIARI:  The KFTC resolution, my client has

5    a copy.  It was sent to him in Korean.  I think they had it

6    translated into Japanese.

7              THE COURT:  It does not -- I see.  It was in Korean.

8    It was translated to Japanese.

9              Do you have an English copy of it?

10             MR. FORNACIARI:  Only the one that I was provided by

11   the plaintiffs.

12             THE COURT:  I see.

13             MR. FORNACIARI:  And, your Honor, when you think

14   about the KFTC resolution, remember, this is the Korean Fair

15   Trade Commission.  They're investigating traffic between Japan

16   and Korea, not the United States.

17             THE COURT:  But the surcharges, I mean, we're

18   talking about discovery here.  So the surcharges that may have

19   been agreed to there or are discussed in meetings that related

20   to that could have some relationship to this.

21             MR. FORNACIARI:  That's why I told you there were

22   three different committees to the ICAJ, one dealing with Asia.

23             THE COURT:  Right.

24             Yes, Mr. Cohen?

25             MR. COHEN:  First let me just touch on a couple of

1   things.

2          First off, with regard to the KFTC resolution, the

3   KFTC issued four resolutions.  The one that we cite here

4   explicitly dealt with cargo shipments from Japan.  Those cargo

5   shipments, and in the resolution when it describes meetings

6   and communications and agreements that were reached, it

7   discusses them reaching global agreements to fix fuel

8   surcharges and/or rates from Japan to all destinations,

9   including the United States.  It's also the same thing for

10  some of the other motions.

11         Also, the same thing applies with the ICAJ meetings.

12  There were three subcommittees, but many of the subcommittees

13  when they met, they reached agreement about fixing surcharges

14  from whatever region they were responsible for to all

15  destinations, including United States.  We've alleged a global

16  conspiracy.  The fact that they were globally fixing

17  surcharges and rates through these trade organizations is

18  relevant.

19         Let me just, in terms of Mr. Fornaciari going

20  through whether or not Miss Shingu was designated for those

21  questions, that's Mr. Fornaciari reading in what our source

22  was, foundation was to ask about a particular ICAJ meeting.

23  For instance, the KFTC says that the ICAJ met on a certain

24  date and NCA attended along with JAL and ANA and they

25  discussed fixing a fuel surcharge.  We got the information

Proceedings                                51

1    that there was a meeting on that date certain and that they

2    discussed that from the KFTC, but if you read through, at no

3    point did I ask Miss Shingu:  "According to the KFTC

4    resolution on page X is it true that?'  Instead, what we asked

5    her was:  "Is it true that NCA met with JAL and ANA in an ICAJ

6    in Japan and discussed blank?"  She's been designated to

7    cover communications between JAL and ANA regarding fuel

8    surcharges.

9             So, if we ask a question saying did NCA meet with

10   JAL and ANA in an ICAJ meeting and discuss fuel surcharges,

11   that falls underneath the topic she was designated for.

12            THE COURT:  Where are those designations made?

13            MR. COHEN:  In Exhibit 2, there is a letter from Mr.

14   Fornaciari.

15            THE COURT:  In Exhibit 2?

16            MR. COHEN:  Exhibit 2.

17            However, he did make one modification during the

18   deposition.  For topics eight and ten, and actually I think

19   it's a footnote in the letter brief, footnote one in the

20   letter brief.  Originally I think he had designated Miss

21   Shingu for eight and ten and during the deposition he changed

22   it so that Miss Shingu is designated only for eight and ten

23   for shipments from Japan and Mr. Kato was designated for

24   discussions with JAL and ANA, for instance, for shipments from

25   the U.S., and I can give you the cite in the deposition where

Proceedings                                    52

1   that clarification was made.  It was in Miss Shingu's

2   deposition on the 13th, page 24, line 11 through 26, line 18.

3           So, another point is I think he's downplaying the

4   KFTC resolution.  This was a finding by the Korean Fair Trade

5   Commission that resulted in them recommending penalties,

6   significant financial penalties for NCA.  And again, this

7   resolution, the one we cited, was for shipments Ex-Japan, not

8   Ex-Korea.  Ex-Japan many of the meetings were for fixing rates

9   and surcharges Ex-Japan to all destinations including the

10  United States.

11          THE COURT:  All right.  Well, it looks like I'm just

12  going to have to look through the depositions --

13          MR. COHEN:  I'm sorry.  I also have one more

14  instance.

15          THE COURT:  -- and make some judgments about whether

16  they supplied a witness who was properly prepared.

17          MR. COHEN:  I'm sorry.  One more point, if I may.

18          THE COURT:  Yes.

19          MR. COHEN:  He's correct, Miss Shingu was deposed

20  the day before her 30(b)(6) deposition individually.  In her

21  30(b)(6) deposition, I tried not to ask her questions about

22  meetings and communications she was personally involved in.

23  That was covered.  That she provided some substantive

24  testimony for.

25          If you read through this, you'll see when she was

Proceedings                                    53

1   testifying as designee for meetings and communications where

2   she wasn't the person involved, she really had no information,

3   and if you go through notes on her preparation -- or, sorry.

4   If you go through when she was asked what she did to prepare,

5   she basically said all she did was look through her e-mails

6   before she came over and then she met with the attorneys.

7           As for Mr. Kato, he was deposed.  We rolled the two

8   depositions together, his 30(b)(6) and his personal

9   deposition, and even when he was being deposed based on his

10  personal knowledge, he fell short of providing complete

11  testimony.  If you go to page 232, line 25 through 234, line

12  18 he couldn't even remember if he himself met with JAL at a

13  restaurant and, if he did, he doesn't remember what he

14  discussed.

15          At one point, I think we discussed whether or not he

16  was being overly evasive during the deposition, but I think

17  we're saying he was unprepared for many of these topics, or

18  for all these topics.

19          MR. FORNACIARI:  Your Honor?

20          THE COURT:  I suppose --

21          MR. FORNACIARI:  Can I just be heard for one minute

22  about the KFTC report?

23          THE COURT:  The KFTC resolution you mean, or the

24  report?  Because there was a final report.

25          MR. FORNACIARI:  I don't know whether they're

Proceedings                                      54

1    calling it a resolution or a report.

2           MR. COHEN:  It's officially called a -- what we have

3    is officially called a resolution.

4           THE COURT:  But I remember there was some discussion

5    earlier, not today but previously, about a report that was

6    issued by the KFTC.

7           Is that the resolution?   Is the resolution --

8           MR. COHEN:  They imposed fines, yes.

9           THE COURT:  I'm sorry?

10          MR. COHEN:  They imposed fines.  At the back of this

11   resolution, again if you look for reference I can give you our

12   translation which was used as an exhibit, although was not

13   referenced when we were asking Mr. Kato questions, but I can

14   hand it up to the Court.

15          THE COURT:  What do you mean it wasn't referenced?

16          MR. COHEN:  I initially introduced it as an exhibit.

17          THE COURT:  At the deposition?

18          MR. COHEN:  At the deposition.  An objection was

19   made that this wasn't the copy they had, he wasn't sure what

20   this was, it was tough for him to follow the pages, this was

21   in English and was redacted.  So at that point, I said you can

22   put that one aside.  As a designee, he should have been

23   prepared with their complete copy of the KFTC resolution.

24          So, I can give you this copy for the Court's

25   convenience, with the understanding though that this is what

1  we used as a foundation for our belief that there were such

2  meetings and communications.

3        THE COURT:  I'm not sure I know what I'm going to

4  get from that other than dates about which you asked questions

5  about meetings.  That's what you used as your source --

6        MR. COHEN:  Correct.

7        THE COURT:  -- and that's going to be in the

8  transcript as well.

9        MR. COHEN:  It will be in the transcript.  It will

10 also be in the summary where it summarized the questions

11 regarding communication.  So yes, it will be in there.

12       THE COURT:  In the summary, I see.  Right.

13       MR. COHEN:  Right.

14       THE COURT:  So I'm not sure I need to see that as

15 well as an additional.  I mean, if I do in reviewing this,

16 because I'm not going to be able to make a decision today.

17       MR. FORNACIARI:  Your Honor, maybe you ought to have

18 this because getting ready for this hearing, I went through it

19 because I didn't think it was -- it was really a good document

20 to use with my client, and there were -- I don't know if this

21 is complete, but I came up with thirteen references to

22 meetings in which they said Nippon Cargo was at and it says

23 what the source is of the information in the report, and I

24 looked at the source and the source was Lufthansa on almost

25 all of them and Korean Air on about three of them.  So not one

1   of these sources for these allegations would be found in the

2   Nippon Cargo files.

3            So, if the question here is whether Nippon Cargo can

4   get ready and research this and go find things, based on what

5   I did, the source isn't at Nippon Cargo.  So if you want to

6   look at that --

7            THE COURT:  The source of information that such a

8   meeting occurred?

9            MR. FORNACIARI:  Yes, your Honor.

10           So, the KFTC resolution or report or whatever it is

11  says a meeting occurred on such-and-such a date, 4/10/22,

12  source LH, Lufthansa.  Then it says what the venue was.  So

13  it's in there and it tells you where the information

14  purportedly comes from that they're reciting in the report,

15  and according to what I've got, everything I've seen so far is

16  either Lufthansa or Korean.

17           THE COURT:  I'll ask the plaintiffs, how am I

18  supposed to resolve the issue if the defendant says KFTC

19  reached a conclusion that such a meeting occurred.  We don't

20  have any information that such a meeting occurred.  We don't

21  know what happened at the meeting that KFTC decided occurred

22  and, therefore, we can't answer questions about that.  How am

23  I supposed to resolve that?

24           MR. COHEN:  Well, your Honor, at this deposition,

25  that is pretty much what he said, but that's because they

Proceedings                                              57

1   didn't do their homework.  From what we can see, from what we

2   asked Mr. Kato, he did absolutely no preparation, for instance

3   we're talking KFTC in particular, but he did no preparation.

4   He didn't even look at a copy of the resolution, which was one

5   of the noticed topics, before he was deposed.

6            Mr. Fornaciari talks about the fact that he

7   interviewed lots of employees.

8            THE COURT:  Maybe it makes sense for me to look at

9   that.  What good would it do for him to look at it and --

10           MR. COHEN:  If he looks at it and he sees the names

11  of NCA employees who they're alleging attended these meetings

12  who receive letters from other attendees, some of the

13  Lufthansa references are the fact that a person sent an e-mail

14  to all the other attendees of the meeting after the fact,

15  which I assume meant that he probably sent it to whoever the

16  NCA representative was.  He could have, or I should say NCA

17  should have done an investigation, seen if they had documents,

18  facts, or other information from the individuals who were

19  involved in these meetings and then educated their designee so

20  that he would know whatever information was possessed by NCA

21  or his counsel, factual information.

22           Mr. Fornaciari said that he interviewed lots of NCA

23  employees, including former employees.  Did he interview the

24  NCA former employees who attended these meetings, and does he

25  have factual information from those employees?

Proceedings                    58

1        THE COURT:  You're talking about I think Mr. Kato

2   said, or maybe he didn't say it in his deposition, Mr.

3   Fornaciari is representing that -- or I think he did actually

4   say in his deposition, "I tried to reach out to such-and-such

5   people and one of them didn't respond and one of them declined

6   to talk, or two of them declined to talk."

7        MR. COHEN:  Mr. Kato said in preparation as the

8   designee he tried to reach out to three former employees.

9   There were several other employees in the interrogatory

10  answers who he's never tried to reach.

11       THE COURT:  In the interrogatory answers designated

12  as people who participated in meetings identified in

13  interrogatory answers, is that what you're talking about?

14  Not necessarily KFTC meetings, meetings referenced in the

15  KFTC.

16       MR. COHEN:  Right.  The question is that Mr. Kato

17  shouldn't be out when he's preparing for the deposition doing

18  this.  NCA should have done an investigation of their own

19  files and collected the facts that they know institutionally

20  and educated Mr. Kato.

21       THE COURT:  I don't disagree, but they said they

22  gave him a banker's box of documents.  So I'm presuming that's

23  what they did.  What the overlap is, I don't know.

24       MR. COHEN:  It was cagey about how many documents he

25  reviewed.

```
                        Proceedings                      59
```

1         THE COURT:  I'm sorry?

2         MR. COHEN:  It was cagey about how many documents he

3   actually reviewed.  But we don't know what was in there.  We

4   certainly didn't ask because that was attorney privilege.

5         He says he attempted to, for instance, contact these

6   three formers.  The question is, for instance, if Mr.

7   Fornaciari when he was representing them, did he ever

8   interview these three formers, and does he have factual

9   information he collected from them as relevant?

10        THE COURT:  Well, that's certainly, that's fair.  I

11  mean, if you interviewed them and have information you could

12  pass on to Mr. Kato about that, it seems to me that's

13  something that he needs to look at to prepare.

14        MR. FORNACIARI:  I agree with that, your Honor, and

15  I did it.

16        But, your Honor, they are assuming, they are

17  assuming that when I interviewed these witnesses I was getting

18  ready for the KFTC questions.  I mean, I might have asked them

19  a lot of different questions, questions that I was interested

20  in about the United States.

21        And I did prepare my witnesses.  So, I mean, to

22  think that -- and when he says he's cagey about the documents

23  he reviewed, I'm trying to get the cite so if you wanted to

24  you could look at it.  He actually said to him, "Well, how

25  many documents did you review?"  And he was fumbling around,

Proceedings                                    60

1    he speaks Japanese, so I don't know how good the communication

2    was.  And so there was a banker's box in the corner and he

3    said, "Well, what was the volume?  Was it a foot?  Two feet?"

4    He didn't understand that.  So then he said, "Well, look at

5    one of those boxes.  Was it that big?"  And he said, "Would

6    they fit in that?"  He said, "Well, I don't know.  It would be

7    close."

8               THE COURT:  I got a lot of reading to do.

9               MR. FORNACIARI:  I'm sorry, your Honor, believe me.

10              THE COURT:  I mean, I think that's the only way I

11   can look at this.  I mean, I have to see what was asked, what

12   he said about how he prepared.

13              MR. FORNACIARI:  We have citations in our brief to

14   what he said about how he was prepared, if that helps you at

15   all.

16              THE COURT:  But it seems to me, maybe I should take

17   the KFTC report too.  I will take a copy if you have it.

18              MR. COHEN:  (Handing to the clerk.)

19              THE COURT:  I gather there were some things that

20   were redacted from this, from the report?

21              MR. COHEN:  Yes, your Honor.  That was the point is

22   we have a redacted copy that was incomplete.  We couldn't even

23   get the information that's redacted out of Mr. Kato.

24              THE COURT:  Because he had not seen the report,

25   you're saying.

Proceedings                    61

1      MR. COHEN:  He testified, correct, he testified he

2   didn't do anything to prepare, he had never seen it before.

3      THE COURT:  Why shouldn't he be prepared for that,

4   Mr. Fornaciari?

5      MR. FORNACIARI:  I'm sorry, your Honor.  I missed

6   it.

7      THE COURT:  Apparently Mr. Kato, having not actually

8   reviewed the resolution, was unable to testify about who

9   attended meetings that are described in the report, and maybe

10  he can testify whether any meetings occurred, but he didn't

11  have any knowledge whatsoever one way or the other, I gather,

12  about meetings disclosed in here.

13      Is there some way that I can -- I mean, the whole

14  report goes into a lot of things that are unrelated to.

15      MR. COHEN:  The best summary -- I don't have a --

16      THE COURT:  These are ICAJ meetings.  Well, they do

17  say Nippon Cargo were there.

18      (Pause in the proceedings.)

19      MR. COHEN:  As I said, the questions we asked were

20  basically harvested from the resolution, and if you go through

21  the summary we have, Exhibit 6, it doesn't have a page cite to

22  the resolution obviously, but that summarizes the meetings

23  contained in there and the information we could get from that.

24      And again, I think I pointed this out earlier, but

25  in terms of his preparation, on page 144, line eight when we

Proceedings                                   62

1   asked him if anybody had shown him documents about meetings or

2   communications contained in the KFTC resolution, he said:  "I

3   did not see any."

4            MR. FORNACIARI:  Your Honor, I don't want to belabor

5   this.

6            That's because NCA was not the source of any of the

7   information.  The colloquy about banker's box, not banker's

8   box is on page 33 and 34 of the July 13th deposition.

9            MR. COHEN:  Your Honor, we also believe that as a

10  party to the proceedings and respondent, NCA would have

11  received all of the supporting documents from the KFTC when it

12  received the resolution itself, or before it received the

13  resolution.

14           THE COURT:  In other words, the resolution cites to

15  source material for the conclusions that are set forth in the

16  resolution.

17           MR. COHEN:  Correct, and those material would be --

18           THE COURT:  And that in addition to receiving a copy

19  of the resolution, NCA would have received copies of the

20  source material as well.

21           MR. COHEN:  Yes, your Honor.

22           THE COURT:  Mr. Fornaciari?

23           MR. FORNACIARI:  I don't know if that's true or not,

24  your Honor.  I haven't checked that.

25           THE COURT:  Well, that's something that I guess --

Proceedings                                                63

1          MR. FORNACIARI:  I can check that, but I don't know

2     what language that would have.

3          THE COURT:  Well, the language barrier is a

4     significant problem, but it's a problem for both sides, and it

5     does seem to me that the defendant has the obligation to sift

6     through the foreign language documents and try to understand

7     what they say and what the source materials are and to do its

8     own investigation about what may or may not be correct and

9     what they can provide information about with respect to the

10    meetings that are disclosed where NCA is supposed to have been

11    an attendee.

12          MR. COHEN:  One more point.

13          I've been told that as a party, NCA would receive

14    report of examination from the KFTC along with all the

15    documents.

16          THE COURT:  A report of examination, what do you

17    mean?

18          MR. COHEN:  Before the resolution is issued, they

19    send out to the parties a report of examination.

20          THE COURT:  What does that mean?   A report of

21    examination of what?

22          MR. SPECKS:  I can respond.

23          It's basically a compilation of the evidence that

24    supposedly the KFTC has against the respondent and they are

25    then given an opportunity to respond to it.  Then the

Proceedings                    64

1   resolution is issued.

2        THE COURT:  I see.  As a precursor to the final

3   resolution, there's a disclosure of evidence.

4        MR. COHEN:  And an opportunity for NCA to respond.

5        THE COURT:  And an opportunity to respond.

6        You apparently were not involved in that process.  I

7   presume not.

8        MR. FORNACIARI:  No, it was all in Korean.  They had

9   Korean lawyers.

10       THE COURT:  They would not have come to you for

11  that, I suppose.  But I don't think that puts that beyond the

12  scope of preparation and of discovery here.

13       All right.  Is there anything else?

14       MR. COHEN:  No, sir, your Honor.

15       THE COURT:  Thank you, very much.

16       MR. SEDRAN:  Thank you.

17       MR. COHEN:  Thank you.

18       THE COURT:  I have another conference scheduled in

19  the broader case already.

20       MR. KAPLAN:  Do you have a date for the other

21  conference?  Oh, on a different day.

22       THE COURT:  Yes, on a different day.  I mean I've

23  already scheduled other proceedings.

24       (Time noted:  4:48 p.m.)

25

## '

**'did** [1] - 27:17
**'is** [1] - 36:1
**'okay** [1] - 11:22
**'on** [1] - 45:18
**'we** [1] - 25:8
**'well** [1] - 48:13
**'yeah** [1] - 25:7
**'you** [1] - 36:9

## 0

**06-MD-01775** [1] - 1:3
**06-MD-1775** [1] - 4:5

## 1

**10005** [1] - 1:22
**10022** [2] - 1:15, 2:23
**1050** [1] - 2:15
**11** [1] - 52:2
**1100** [1] - 2:16
**11th** [1] - 3:7
**120** [1] - 43:23
**120-page** [1] - 46:6
**13th** [1] - 52:2, 62:8
**140** [1] - 1:22
**143** [1] - 33:4
**144** [2] - 33:5, 61:25
**146** [1] - 33:14
**148** [1] - 42:19
**14th** [1] - 30:23
**15** [2] - 33:4, 33:14
**1555** [1] - 48:2
**16** [3] - 31:2, 33:4, 33:15
**1604** [1] - 2:3
**1625** [1] - 3:4
**18** [2] - 52:2, 53:12
**19103** [1] - 2:4
**19106** [2] - 2:8, 2:12

## 2

**2** [3] - 51:13, 51:15, 51:16
**20** [1] - 31:3
**2000** [1] - 31:1
**20004** [2] - 2:20, 3:8
**20006** [1] - 3:4
**2001** [1] - 42:1
**20036** [1] - 2:16
**2005** [1] - 42:2
**2006** [1] - 37:23
**2010-145** [2] - 32:18, 49:2
**2011** [1] - 1:7
**203** [1] - 1:18

**21** [1] - 31:4
**226** [2] - 30:19, 30:24
**22nd** [1] - 1:15
**23** [2] - 36:11, 46:9
**232** [1] - 53:11
**234** [1] - 53:11
**24** [1] - 52:2
**25** [2] - 31:4, 53:11
**26** [1] - 52:2
**27** [1] - 1:7
**2nd** [1] - 2:4

## 3

**30(b)(6** [10] - 5:6, 9:6, 11:7, 11:8,
12:16, 23:22, 48:2, 52:20, 52:21, 53:8
**320** [1] - 2:11
**33** [1] - 62:8
**34** [1] - 62:8
**3:00** [1] - 1:7

## 4

**4/10/22** [1] - 56:11
**4:48** [1] - 64:24

## 5

**5** [1] - 30:18
**500** [2] - 2:8, 2:19
**510** [1] - 2:7
**555** [1] - 3:7
**55th** [1] - 2:23

## 6

**6** [3] - 34:20, 36:6, 61:21
**600** [1] - 2:12
**60601** [1] - 1:19
**613-2596** [1] - 3:16
**613-2648** [1] - 3:16

## 7

**7** [4] - 34:20, 36:6, 48:1, 48:3
**718** [2] - 3:16, 3:16
**74** [1] - 5:3
**75** [1] - 2:23

## 8

**8** [2] - 34:20, 36:6
**850** [1] - 1:14
**8th** [4] - 10:3, 16:9, 18:14, 20:1

## A

**able** [6] - 12:6, 12:14, 14:10, 42:16,
46:18, 55:16
**absolutely** [4] - 28:11, 39:15, 41:11,
57:2
**abuse** [1] - 47:13
**abusive** [1] - 48:23
**access** [1] - 14:23
**According** [1] - 51:3
**according** [1] - 56:15
**acknowledging** [1] - 17:7
**acts** [1] - 9:11
**ad** [2] - 47:23, 47:25
**add** [1] - 42:12
**added** [1] - 9:6
**addition** [1] - 62:18
**additional** [2] - 34:23, 55:15
**additionally** [1] - 33:21
**address** [4] - 8:16, 25:3, 28:23, 29:11
**adequately** [1] - 40:10
**adhere** [1] - 28:6
**admission** [4] - 8:7, 22:12, 25:17
**admit** [1] - 6:22
**admitted** [6] - 10:2, 10:5, 19:6, 26:1,
32:19, 44:19
**adopted** [2] - 18:14, 24:2
**advising** [1] - 23:20
**afternoon** [1] - 4:4
**agency** [2] - 44:4, 46:7
**agent** [2] - 18:21, 44:6
**agree** [3] - 7:18, 8:1, 59:14
**agreed** [9] - 7:5, 7:7, 7:16, 7:20, 7:25,
25:15, 31:5, 34:25, 49:19
**agreement** [41] - 5:25, 6:7, 6:8, 9:12,
11:10, 12:9, 12:20, 13:3, 13:23, 17:8,
17:18, 17:25, 18:4, 18:5, 18:6, 18:7,
18:19, 19:13, 20:12, 21:23, 22:2, 22:4,
23:25, 24:23, 25:4, 25:7, 25:11, 25:19,
26:3, 26:10, 26:11, 26:14, 26:15, 26:22,
26:23, 27:1, 27:18, 27:19, 27:20, 50:13
**agreements** [45] - 6:3, 6:13, 6:17,
6:23, 9:8, 9:25, 10:1, 10:4, 12:12,
12:15, 12:17, 12:22, 12:24, 13:7, 13:9,
13:11, 13:14, 14:9, 14:11, 14:21, 14:25,
15:15, 17:8, 18:8, 20:21, 23:15, 23:16,
23:17, 24:16, 25:1, 25:9, 25:18, 25:19,
25:22, 25:24, 26:1, 26:4, 26:6, 26:13,
27:6, 27:10, 27:21, 30:7, 50:6, 50:7
**ahead** [1] - 13:18
**aided** [1] - 3:18
**AIR** [1] - 1:6
**Air** [11] - 4:6, 4:17, 4:21, 5:1, 5:22,
5:23, 6:9, 15:5, 15:8, 16:13, 55:25
**airline** [1] - 4:16
**airlines** [1] - 21:6
**Airways** [1] - 4:10
**allegations** [1] - 56:1
**alleged** [2] - 47:24, 50:15

alleging [1] - 57:11
allow [1] - 10:11
allows [1] - 13:9
almost [2] - 31:23, 55:24
ANA [7] - 27:1, 29:19, 50:24, 51:5, 51:7, 51:10, 51:24
analyses [2] - 12:4, 23:14
analysis [2] - 15:25, 23:20
analyzing [1] - 17:11
ANGELA [1] - 3:5
Answer [1] - 46:12
answer [15] - 4:24, 7:3, 7:17, 7:23, 14:13, 26:3, 29:11, 31:20, 31:23, 33:2, 33:7, 33:14, 43:10, 45:14, 56:22
answer's [1] - 43:20
answered [2] - 43:12, 43:14
answering [1] - 35:8
Answers [5] - 6:11, 9:7, 11:5, 46:10, 46:22
answers [8] - 34:23, 35:6, 41:8, 43:16, 48:5, 58:10, 58:11, 58:13
anticipation [1] - 46:13
anticompetitive [2] - 5:8, 17:2
Antitrust [1] - 4:6
antitrust [1] - 16:24
ANTITRUST [1] - 1:6
anyway [1] - 28:23
appear [2] - 12:23, 24:4
appeared [1] - 37:10
apple [1] - 23:9
applies [2] - 8:22, 50:11
approvals [2] - 21:4, 21:6
approved [1] - 9:15
April [1] - 30:25
area [1] - 27:14
areas [2] - 28:14, 28:24
argue [2] - 12:12, 36:9
argued [1] - 16:19
arguing [2] - 10:23, 19:23
argument [7] - 4:25, 11:1, 16:6, 17:7, 19:19, 28:1, 31:12
arguments [1] - 28:2
arises [1] - 28:20
Asia [3] - 39:13, 39:16, 49:22
aside [2] - 46:19, 54:22
assertion [1] - 4:15
assessment [1] - 28:4
assume [2] - 38:1, 57:15
assuming [3] - 16:2, 59:16, 59:17
assumption [4] - 21:25, 22:1, 38:3, 40:16
attempted [2] - 42:14, 59:5
attendance [1] - 39:7
attended [11] - 30:25, 34:14, 42:7, 42:13, 44:3, 44:11, 44:13, 50:24, 57:11, 57:24, 61:9
attendee [1] - 63:11
attendees [5] - 31:5, 34:4, 57:12, 57:14

attention [1] - 10:9
attorney [10] - 10:16, 10:21, 10:25, 23:13, 25:14, 26:11, 27:22, 59:4
attorney's [1] - 35:15
attorney/client [8] - 10:18, 16:7, 18:23, 19:21, 19:24, 23:19, 27:15, 28:6
attorneys [5] - 11:5, 11:8, 24:18, 26:15, 53:6
AUSTIN [1] - 2:9
Austin [2] - 29:5, 29:8
authorized [1] - 19:2
available [2] - 21:14, 29:4
Avenue [2] - 1:14, 2:15
aware [2] - 33:12, 34:7

## B

BAKER [1] - 2:15
ball [1] - 47:7
balls [1] - 47:8
BAMBERGER [1] - 2:20
banker's [7] - 42:22, 42:23, 42:25, 58:22, 60:2, 62:7
barrier [1] - 63:3
base [1] - 8:17
based [8] - 7:23, 13:20, 24:25, 26:7, 27:13, 33:11, 53:9, 56:4
basis [7] - 7:11, 19:2, 19:8, 24:8, 24:10, 24:13, 24:14
Bates [1] - 22:6
BEFORE [1] - 1:11
behalf [5] - 17:9, 25:12, 25:13, 29:5, 46:14
behavior [1] - 5:8
behind [3] - 21:22, 22:2, 48:4
belabor [1] - 62:4
belief [1] - 55:1
bench [1] - 4:3
BERMAN [2] - 2:7, 2:11
best [2] - 6:13, 61:15
better [1] - 30:3
between [9] - 12:7, 17:1, 17:11, 17:14, 39:12, 39:17, 42:1, 49:15, 51:7
beyond [3] - 34:21, 35:3, 64:11
big [1] - 60:5
bit [4] - 11:3, 18:11, 28:17, 28:24
bite [1] - 23:9
blame [2] - 20:7, 20:8
blank [2] - 36:3, 51:6
blue [1] - 16:23
blue-collar [1] - 16:23
board [1] - 18:25
body [1] - 17:11
box [9] - 42:22, 42:23, 42:25, 45:2, 45:7, 58:22, 60:2, 62:7, 62:8
boxes [1] - 60:5
breach [2] - 19:20, 19:24
BRENT [1] - 2:5
brief [6] - 6:23, 29:13, 36:18, 51:19,

51:20, 60:13
briefs [1] - 21:24
broad [1] - 48:25
broader [1] - 64:19
Broadway [1] - 1:22
Brooklyn [1] - 1:5
brought [2] - 4:11, 10:8
bunch [2] - 16:15, 48:19
burden [1] - 12:7
business [2] - 11:19, 11:20
buying [1] - 17:24
BY [11] - 1:16, 1:19, 1:23, 2:5, 2:9, 2:13, 2:17, 2:20, 2:24, 3:5, 3:8

## C

cagey [3] - 58:24, 59:2, 59:22
calendar [1] - 4:9
cargo [3] - 14:12, 50:4
CARGO [1] - 1:6
Cargo [41] - 4:6, 4:12, 4:13, 5:12, 5:13, 5:14, 5:21, 6:6, 6:8, 6:9, 6:10, 6:12, 6:25, 7:15, 7:24, 9:9, 9:10, 9:18, 9:24, 12:16, 12:17, 13:8, 13:10, 14:8, 14:13, 14:23, 15:4, 15:6, 15:19, 23:15, 24:16, 25:8, 26:25, 28:9, 32:20, 55:22, 56:2, 56:3, 56:5, 61:17
Cargo's [1] - 6:24
carriers [2] - 38:20, 38:21
case [29] - 8:16, 8:22, 8:23, 8:25, 9:2, 9:3, 9:12, 9:21, 10:20, 11:16, 12:11, 13:4, 14:2, 16:11, 16:20, 16:21, 16:23, 18:16, 21:16, 21:17, 21:24, 23:23, 27:9, 37:24, 37:25, 38:14, 39:15, 64:19
categories [2] - 39:3, 39:5
CAUSE [1] - 1:10
certain [4] - 7:23, 36:2, 50:23, 51:1
certainly [4] - 15:18, 43:6, 59:4, 59:10
chance [1] - 41:24
changed [1] - 51:21
charge [2] - 18:9, 42:1
chargeable [2] - 17:4, 23:5
charged [2] - 6:22, 20:22
charges [1] - 29:20
check [1] - 63:1
checked [2] - 9:3, 62:24
Chicago [1] - 1:19
circumstances [1] - 28:5
citations [1] - 60:13
cite [6] - 21:24, 33:25, 50:3, 51:25, 59:23, 61:21
cited [2] - 32:9, 52:7
cites [2] - 34:2, 62:14
civil [3] - 4:5, 9:2, 37:25
clarification [1] - 52:1
clarity [2] - 28:17, 28:24
clear [3] - 19:4, 25:3, 28:11
clerk [2] - 60:18
CLERK [1] - 4:5

**client** [16] - 17:10, 19:17, 20:5, 20:14, 20:17, 22:20, 23:4, 23:5, 23:6, 23:20, 37:22, 37:23, 38:25, 49:4, 55:20

**clients** [6] - 10:18, 16:25, 17:20, 18:9, 19:10, 22:18

**close** [3] - 11:2, 33:16, 60:7

**COHEN** [55] - 2:9, 29:5, 29:8, 29:10, 29:25, 30:5, 30:18, 30:21, 30:23, 31:9, 32:8, 32:12, 32:16, 32:18, 33:24, 34:2, 35:3, 35:7, 35:13, 35:18, 35:25, 38:20, 49:25, 51:13, 51:16, 52:13, 52:17, 52:19, 54:2, 54:8, 54:10, 54:16, 54:18, 55:6, 55:9, 55:13, 56:24, 57:10, 58:7, 58:16, 58:24, 59:2, 60:18, 60:21, 61:1, 61:15, 61:19, 62:9, 62:17, 62:21, 63:12, 63:18, 64:4, 64:14, 64:17

**Cohen** [5] - 25:2, 29:5, 29:8, 46:9, 49:24

**Cohen's** [1] - 12:12

**collar** [1] - 16:23

**collected** [5] - 34:11, 36:13, 36:23, 58:19, 59:9

**colloquy** [1] - 62:7

**color** [1] - 18:11

**coming** [2] - 15:17, 35:15

**Commission** [5] - 28:21, 32:10, 32:13, 49:15, 52:5

**committees** [1] - 49:22

**communicated** [1] - 10:17

**communication** [6] - 17:1, 31:23, 32:22, 34:25, 55:11, 60:1

**communications** [30] - 5:25, 6:3, 6:14, 6:19, 10:5, 12:19, 20:20, 23:6, 24:20, 29:3, 30:6, 30:10, 31:25, 33:6, 33:10, 33:12, 33:14, 33:21, 33:23, 34:14, 34:22, 36:5, 36:9, 49:1, 50:6, 51:7, 52:22, 53:1, 55:2, 62:2

**companies** [1] - 36:2

**company** [12] - 6:20, 7:4, 8:13, 11:7, 27:4, 27:19, 29:4, 35:16, 35:18, 42:18, 44:15, 46:15

**company's** [1] - 19:1

**compel** [1] - 27:16

**compelling** [1] - 23:25

**competitive** [1] - 17:16

**competitor** [1] - 17:1

**competitors** [7] - 6:14, 6:18, 9:25, 17:14, 17:22, 24:17, 27:6

**compilation** [1] - 63:23

**complaining** [1] - 40:12

**complete** [3] - 53:10, 54:23, 55:21

**comport** [1] - 28:21

**Computer** [1] - 3:18

**Computer-aided** [1] - 3:18

**computerized** [1] - 3:18

**concentrated** [1] - 28:13

**concerning** [4] - 4:14, 5:20, 10:1, 11:4

**conclusion** [4] - 25:7, 26:21, 56:19

**conclusions** [1] - 62:15

**conduct** [5] - 12:8, 17:4, 18:17, 23:3,
23:5

**conference** [6] - 38:6, 38:10, 38:17, 41:2, 64:18, 64:21

**conferences** [3] - 30:25, 31:2, 31:4

**confess** [1] - 14:1

**confuse** [1] - 40:21

**Connecticut** [1] - 2:15

**connection** [6] - 4:16, 5:1, 5:11, 11:3, 35:22, 38:10

**conspiracies** [1] - 11:17

**conspiracy** [3] - 8:25, 47:24, 50:16

**conspiratorial** [1] - 11:20

**conspire** [1] - 7:18

**conspired** [4] - 6:9, 7:5, 7:16, 9:9

**constitute** [1] - 26:22

**constituted** [2] - 19:8, 22:19

**cont** [2] - 2:1, 3:1

**contact** [3] - 36:19, 42:15, 59:5

**contained** [7] - 31:25, 32:23, 33:6, 33:10, 34:22, 61:23, 62:2

**content** [2] - 25:19, 25:22

**contents** [1] - 27:18

**context** [3] - 11:11, 12:3, 16:8

**controverted** [1] - 12:22

**convenience** [2] - 25:25, 54:25

**conversations** [3] - 20:21, 20:22

**convict** [1] - 17:12

**copies** [1] - 62:19

**copy** [20] - 24:1, 24:6, 30:15, 32:3, 32:6, 32:8, 32:20, 33:10, 34:12, 36:12, 49:3, 49:5, 49:9, 54:19, 54:23, 54:24, 57:4, 60:17, 60:22, 62:18

**corner** [1] - 60:2

**corporate** [4] - 7:12, 13:13, 25:23, 26:12

**corporation** [2] - 25:12, 25:13

**correct** [10] - 4:11, 4:13, 6:25, 20:1, 24:3, 52:19, 55:6, 61:1, 62:17, 63:8

**correctly** [1] - 31:18

**correspondence** [1] - 13:2

**cost** [1] - 14:19

**counsel** [2] - 18:25, 57:21

**counseled** [3] - 19:1, 19:13, 19:16

**counterpart** [1] - 47:2

**countries** [1] - 38:11

**country** [1] - 39:10

**couple** [1] - 49:25

**course** [1] - 32:20

**Court** [11] - 3:15, 3:15, 7:1, 7:5, 13:20, 15:18, 15:20, 18:20, 18:22, 40:21, 54:14

**COURT** [142] - 1:1, 4:4, 4:8, 4:13, 5:17, 6:15, 8:6, 8:10, 10:12, 11:9, 11:25, 12:2, 13:15, 13:18, 14:1, 15:5, 16:1, 16:18, 17:6, 18:2, 20:7, 20:11, 20:25, 21:13, 22:7, 22:11, 22:16, 22:24, 23:11, 24:1, 24:4, 24:11, 24:18, 25:10, 25:17, 26:7, 26:20, 27:13, 28:2, 29:7, 29:9, 29:24, 30:2, 30:17, 31:7, 32:7, 32:11,

32:14, 32:17, 33:22, 33:25, 35:1, 35:5, 35:10, 35:17, 35:21, 37:1, 37:8, 37:13, 37:17, 38:6, 38:8, 38:17, 38:22, 38:25, 39:22, 39:25, 40:4, 40:12, 40:16, 40:19, 40:22, 41:7, 41:11, 41:17, 41:19, 41:23, 42:6, 43:4, 45:8, 45:13, 45:22, 45:25, 46:4, 46:8, 47:4, 47:17, 47:20, 48:25, 49:7, 49:12, 49:17, 49:23, 51:12, 51:15, 52:11, 52:15, 52:18, 53:20, 53:23, 54:4, 54:9, 54:15, 54:17, 55:3, 55:7, 55:12, 55:14, 56:7, 56:17, 57:8, 58:1, 58:11, 58:21, 59:1, 59:10, 60:8, 60:10, 60:16, 60:19, 60:24, 61:3, 61:7, 61:16, 62:14, 62:18, 62:22, 62:25, 63:3, 63:16, 63:20, 64:2, 64:5, 64:10, 64:15, 64:18, 64:22

**court** [10] - 4:1, 6:24, 7:20, 8:1, 9:5, 13:8, 18:14, 21:23, 25:25, 27:4

**Court's** [4] - 4:25, 5:2, 54:24

**Courthouse** [1] - 1:5

**COURTROOM** [1] - 4:2

**cover** [2] - 37:7, 51:7

**covered** [2] - 37:10, 52:23

**crime** [2] - 16:24, 22:19

**criminal** [4] - 6:24, 16:8, 20:6, 37:24

**CRIMINAL** [1] - 1:10

**critical** [1] - 38:14

**cross** [2] - 29:15, 30:1

**cross-reference** [2] - 29:15, 30:1

**CRR** [1] - 3:15

**current** [1] - 20:18


**D**

**damaging** [3] - 19:12, 19:20, 47:7

**date** [11] - 11:15, 30:20, 30:21, 36:2, 44:13, 45:18, 47:3, 50:24, 51:1, 56:11, 64:20

**dates** [3] - 5:24, 35:11, 55:4

**DAVID** [1] - 2:20

**days** [4] - 9:19, 9:22, 21:5, 41:5

**DC** [4] - 2:16, 2:20, 3:4, 3:8

**dead** [1] - 21:11

**dealing** [1] - 49:22

**dealt** [1] - 50:4

**decide** [2] - 19:15, 41:8

**decided** [6] - 16:14, 17:17, 17:21, 43:25, 47:1, 56:21

**deciding** [1] - 17:12

**decision** [7] - 7:11, 10:15, 12:2, 13:2, 13:20, 17:25, 55:16

**declined** [2] - 42:16, 58:5, 58:6

**defendant** [5] - 24:13, 28:22, 32:7, 56:18, 63:5

**defendant's** [1] - 41:12

**defendants** [2] - 15:14, 35:9

**Defendants** [1] - 2:15

**defense** [1] - 21:17

**deficient** [1] - 28:12

**dementia** [1] - 9:14
**Department** [4] - 7:10, 14:6, 14:7, 19:8
**deposed** [5] - 9:18, 52:19, 53:7, 53:9, 57:5
**deposition** [45] - 5:21, 6:4, 7:14, 9:6, 13:10, 13:12, 15:3, 15:5, 15:8, 15:16, 15:17, 15:19, 23:16, 23:22, 24:9, 26:5, 30:15, 30:18, 30:21, 32:4, 32:9, 32:20, 34:6, 34:21, 36:20, 37:9, 40:24, 41:5, 46:13, 46:17, 51:18, 51:21, 51:25, 52:2, 52:20, 52:21, 53:9, 53:16, 54:17, 54:18, 56:24, 58:2, 58:4, 58:17, 62:8
**depositions** [7] - 9:4, 9:22, 15:15, 21:11, 41:8, 52:12, 53:8
**DEPUTY** [1] - 4:2
**derive** [1] - 18:24
**described** [3] - 41:2, 49:1, 61:9
**describes** [2] - 34:3, 50:5
**designate** [1] - 48:15
**designated** [11] - 31:7, 31:9, 37:18, 48:16, 50:20, 51:6, 51:11, 51:20, 51:22, 51:23, 58:11
**designation** [1] - 33:2
**designations** [1] - 51:12
**designee** [7] - 31:15, 32:2, 35:19, 53:1, 54:22, 57:19, 58:8
**designees** [1] - 30:9
**destinations** [3] - 50:8, 50:15, 52:9
**details** [2] - 44:10, 44:13
**determining** [1] - 12:19
**devoid** [1] - 26:15
**difference** [2] - 16:25, 24:12
**different** [10] - 5:22, 10:8, 15:7, 18:11, 37:4, 37:5, 49:22, 59:19, 64:21, 64:22
**differentiates** [1] - 4:20
**difficulties** [1] - 5:5
**directors** [1] - 18:25
**disagree** [1] - 58:21
**disclose** [3] - 14:9, 14:11, 41:15
**disclosed** [7] - 17:14, 17:19, 20:20, 45:15, 46:11, 61:12, 63:10
**discloses** [1] - 24:20
**disclosure** [1] - 64:3
**discoverable** [2] - 23:13, 23:21
**discovery** [6] - 12:13, 13:22, 22:14, 36:4, 49:18, 64:12
**discrete** [2] - 48:16, 48:18
**discuss** [2] - 30:13, 51:10
**discussed** [18] - 29:20, 29:21, 30:7, 31:4, 34:25, 35:2, 36:3, 40:22, 44:12, 44:20, 45:19, 47:12, 49:19, 50:25, 51:2, 51:6, 53:14, 53:15
**discusses** [3] - 29:18, 34:4, 50:7
**discussion** [2] - 24:22, 54:4
**discussions** [2] - 46:16, 51:24
**disposal** [1] - 19:10
**distinction** [5] - 17:11, 17:24, 18:2, 24:11, 26:8
**distinguished** [1] - 18:10

**DISTRICT** [2] - 1:1, 1:1
**divorce** [1] - 28:4
**DLA** [1] - 2:19
**docket** [2] - 9:3, 48:1
**document** [3] - 11:21, 24:20, 55:19
**documentation** [2] - 33:25, 34:2
**documents** [31] - 12:23, 14:5, 14:6, 14:8, 14:14, 14:22, 15:2, 17:19, 19:7, 27:9, 33:6, 33:23, 34:9, 36:10, 36:15, 42:22, 42:24, 42:25, 43:3, 45:2, 57:17, 58:22, 58:24, 59:2, 59:22, 59:25, 62:1, 62:11, 63:6, 63:15
**DOJ** [1] - 14:14
**dollars** [1] - 14:20
**done** [6] - 10:6, 29:13, 29:25, 48:11, 57:17, 58:18
**down** [4] - 30:9, 33:18, 35:19, 45:2
**downplaying** [1] - 52:3
**draw** [1] - 26:9
**drug** [1] - 8:24
**due** [1] - 24:15
**during** [5] - 6:23, 34:6, 51:17, 51:21, 53:16

## E

**e-mail** [3] - 13:1, 20:19, 57:13
**E-mail** [1] - 3:17
**e-mails** [19] - 14:16, 17:14, 17:16, 18:8, 20:14, 20:25, 21:1, 21:19, 25:5, 34:3, 42:23, 44:24, 45:4, 45:16, 45:18, 45:22, 46:3, 53:5
**East** [1] - 2:23
**EASTERN** [1] - 1:1
**easy** [1] - 14:23, 19:19
**educate** [9] - 5:13, 29:1, 34:11, 35:19, 36:16, 36:17, 41:12, 43:1
**educated** [4] - 31:17, 31:19, 57:19, 58:20
**efforts** [1] - 36:19
**eight** [12] - 33:5, 38:20, 38:21, 39:3, 39:20, 40:1, 40:9, 47:21, 51:18, 51:21, 51:22, 61:25
**Eighth** [1] - 2:19
**either** [5] - 8:14, 20:8, 21:14, 29:4, 56:16
**eleven** [9] - 28:12, 29:22, 30:19, 30:24, 31:13, 37:9, 39:21, 40:1, 48:25
**Eli** [20] - 8:16, 8:17, 8:18, 8:19, 8:21, 8:23, 9:13, 9:21, 10:10, 10:13, 13:16, 13:19, 16:10, 18:13, 18:16, 18:20, 20:1, 21:20, 23:23
**employed** [1] - 20:17
**employee** [1] - 44:7
**employees** [15] - 6:7, 20:19, 34:13, 36:15, 36:19, 36:22, 42:13, 57:7, 57:11, 57:23, 57:24, 57:25, 58:8, 58:9
**end** [2] - 14:3, 32:25
**engaged** [2] - 9:10, 12:8

**English** [2] - 49:9, 54:21
**entail** [1] - 42:4
**enter** [9] - 10:4, 11:10, 23:17, 24:16, 25:11, 26:2, 27:6, 27:10, 27:17
**entered** [15] - 6:13, 6:18, 9:25, 10:2, 12:17, 16:10, 23:15, 25:8, 25:18, 25:24, 26:6, 26:10, 26:11, 26:13, 27:20
**entering** [1] - 19:13
**enters** [1] - 6:20
**entitled** [11] - 7:12, 8:12, 9:8, 15:3, 15:25, 22:1, 25:9, 27:3, 27:5, 27:11, 43:9
**entity** [1] - 44:7
**eradicate** [1] - 16:7
**especially** [2] - 16:7, 27:4
**ESQ** [1] - 1:16, 1:19, 1:23, 2:5, 2:9, 2:13, 2:17, 2:20, 2:24, 3:5, 3:8
**essentially** [3] - 10:19, 16:13, 19:25
**Europe** [2] - 39:12, 39:16
**evasive** [1] - 53:16
**event** [2] - 10:19, 28:15
**evidence** [16] - 6:2, 7:24, 15:11, 16:15, 17:3, 17:11, 17:12, 19:20, 20:10, 21:7, 22:8, 23:25, 24:19, 27:12, 63:23, 64:3
**Ex** [4] - 52:7, 52:8, 52:9
**Ex-Japan** [3] - 52:7, 52:8, 52:9
**Ex-Korea** [1] - 52:8
**exactly** [4] - 11:11, 16:11, 18:14, 21:13
**examination** [4] - 63:14, 63:16, 63:19, 63:21
**example** [3] - 32:1, 35:25, 39:6
**except** [6] - 26:14, 27:21, 31:10, 39:25, 40:4, 40:5
**exchange** [1] - 11:18
**exclusive** [1] - 30:12
**exercise** [1] - 43:5
**exhibit** [2] - 54:12, 54:16
**Exhibit** [10] - 6:5, 6:23, 30:18, 34:20, 48:1, 48:3, 51:13, 51:15, 51:16, 61:21
**exhibits** [2] - 30:13, 36:6
**explain** [1] - 5:7
**explained** [2] - 9:5, 42:15
**explicit** [2] - 12:11, 17:13
**explicitly** [1] - 50:4
**express** [1] - 12:14
**extensive** [1] - 13:22
**extent** [11] - 8:13, 10:13, 10:17, 12:2, 12:21, 13:21, 14:9, 14:20, 15:24, 21:7, 45:15
**extremely** [1] - 8:21
**Eye** [1] - 3:4

## F

**Facsimile** [1] - 3:16
**fact** [21] - 6:1, 6:21, 7:1, 7:20, 11:10, 11:11, 13:8, 13:23, 15:20, 17:13, 17:22, 20:16, 21:21, 25:24, 28:20, 36:20, 40:13, 50:16, 57:6, 57:13, 57:14

**factors** [1] - 13:20
**facts** [25] - 8:21, 10:8, 11:4, 11:7, 11:9, 12:5, 13:6, 15:12, 15:24, 17:10, 19:6, 22:19, 23:13, 23:20, 26:18, 26:20, 26:22, 27:3, 28:4, 28:5, 28:22, 36:23, 36:24, 57:18, 58:19
**factual** [12] - 6:11, 6:25, 7:11, 10:7, 19:2, 24:8, 24:9, 24:13, 24:14, 57:21, 57:25, 59:8
**Fair** [5] - 28:20, 32:10, 32:12, 49:14, 52:4
**fair** [5] - 7:6, 9:23, 21:25, 25:5, 59:10
**faith** [2] - 26:5, 27:9
**faithful** [1] - 10:10
**falls** [1] - 51:11
**familiar** [1] - 20:19
**far** [7] - 8:9, 14:11, 21:21, 38:3, 42:14, 45:20, 56:15
**favor** [1] - 8:19
**feet** [1] - 60:3
**fell** [4] - 28:18, 28:25, 35:22, 53:10
**felony** [1] - 18:1
**felt** [1] - 28:12
**fifteen** [1] - 31:1
**figure** [1] - 14:17
**file** [1] - 21:4
**filed** [1] - 36:18
**files** [2] - 56:2, 58:19
**filing** [1] - 21:6
**filtering** [1] - 15:24
**final** [2] - 53:24, 64:2
**finally** [1] - 33:9
**financial** [2] - 16:23, 52:6
**fines** [2] - 54:8, 54:10
**finish** [1] - 11:25
**first** [6] - 29:7, 29:10, 37:12, 38:5, 49:25, 50:2
**FISHBEIN** [2] - 2:7, 2:11
**fit** [1] - 60:6
**five** [8] - 6:4, 21:9, 30:13, 30:19, 30:24, 39:20, 40:1, 40:9
**fix** [2] - 27:6, 50:7
**fixed** [1] - 27:1
**fixing** [4] - 50:13, 50:16, 50:25, 52:8
**Floor** [2] - 1:15, 2:4
**focus** [1] - 40:25
**Foley** [1] - 3:15
**follow** [3] - 4:17, 22:25, 54:20
**following** [1] - 15:12
**foot** [1] - 60:3
**footnote** [2] - 51:19
**FOR** [1] - 1:10
**forced** [1] - 20:15
**foreign** [1] - 63:6
**form** [1] - 24:5
**former** [6] - 36:15, 36:19, 36:22, 57:23, 57:24, 58:8
**formers** [2] - 59:6, 59:8
**formula** [1] - 48:10

**Fornaciari** [23] - 5:12, 7:9, 12:18, 15:22, 16:2, 16:3, 23:14, 23:20, 25:6, 26:18, 26:25, 27:11, 32:19, 37:2, 50:19, 50:21, 51:14, 57:6, 57:22, 58:3, 59:7, 61:4, 62:22
**FORNACIARI** [68] - 16:4, 16:22, 17:23, 18:13, 20:8, 20:23, 21:2, 21:15, 22:10, 22:13, 22:17, 23:1, 30:20, 30:22, 37:3, 37:12, 37:15, 37:21, 38:7, 38:13, 38:21, 38:23, 39:2, 39:23, 40:2, 40:7, 40:15, 40:17, 40:20, 41:4, 41:10, 41:16, 41:18, 41:21, 41:25, 42:10, 43:13, 43:16, 43:19, 43:22, 44:23, 45:6, 45:12, 45:17, 45:24, 46:2, 46:5, 46:24, 47:5, 47:19, 47:21, 49:4, 49:10, 49:13, 49:21, 53:19, 53:21, 53:25, 55:17, 56:9, 59:14, 60:9, 60:13, 61:5, 62:4, 62:23, 63:1, 64:8
**Fornaciari's** [2] - 13:1, 28:19
**forth** [4] - 15:10, 24:21, 39:17, 62:15
**foundation** [2] - 50:22, 55:1
**four** [10] - 9:22, 18:5, 29:23, 39:7, 39:20, 40:1, 47:23, 48:6, 50:3
**FOX** [2] - 1:14, 1:18
**framed** [2] - 18:4, 18:11
**fraught** [1] - 27:14
**front** [1] - 37:6
**fuel** [15] - 21:4, 21:6, 29:20, 30:7, 42:2, 44:12, 44:20, 47:1, 47:14, 48:10, 50:7, 50:25, 51:7, 51:10
**Fujimura** [3] - 42:14, 44:24
**full** [1] - 14:20
**fumbling** [1] - 59:25
**furnished** [1] - 23:24

## G

**G8** [20] - 30:14, 30:25, 31:2, 31:4, 31:5, 37:20, 37:22, 38:1, 38:2, 38:3, 38:4, 38:6, 38:9, 38:10, 38:11, 38:17, 39:1, 40:12, 40:13, 41:2
**game** [2] - 7:6, 21:25
**GARY** [1] - 1:19
**gather** [7] - 37:18, 45:14, 45:23, 46:16, 46:17, 60:19, 61:11
**gathered** [1] - 26:20
**general** [3] - 40:24, 40:25, 44:6
**gentlemen** [1] - 45:5
**gestalt** [1] - 12:18
**given** [10] - 14:5, 19:4, 19:6, 21:1, 21:8, 21:19, 29:1, 36:24, 63:25
**global** [3] - 30:14, 50:7, 50:15
**globally** [1] - 50:16
**government** [1] - 38:18
**Government** [7] - 5:8, 6:1, 7:2, 12:6, 13:4, 15:10, 16:15
**Government's** [1] - 22:8
**granted** [1] - 40:22
**group** [2] - 30:14, 38:20
**guess** [8] - 10:20, 18:3, 18:10, 25:12,

38:11, 41:7, 43:11, 62:25
**guilty** [15] - 5:15, 5:20, 6:21, 6:24, 8:2, 8:8, 8:23, 9:1, 9:12, 9:16, 12:3, 16:14, 16:16, 23:25, 25:25

## H

**half** [1] - 9:20
**hand** [4] - 24:6, 30:16, 32:4, 54:14
**Handing** [1] - 60:18
**handshake** [1] - 11:12
**happy** [1] - 47:11
**hard** [1] - 4:17
**hard-pressed** [1] - 4:17
**harvested** [1] - 61:20
**HASTINGS** [1] - 2:22
**HAUSFELD** [1] - 2:3
**haystack** [1] - 36:11
**head** [1] - 15:22
**hear** [1] - 21:3
**heard** [5] - 16:6, 27:14, 37:25, 38:10, 53:21
**hearing** [6] - 4:5, 22:5, 26:7, 31:17, 41:22, 55:18
**HEARING** [1] - 1:10
**heart** [1] - 20:5
**held** [1] - 31:2
**help** [4] - 5:18, 21:17, 30:8, 43:1
**helps** [1] - 60:14
**HENRY** [1] - 2:20
**hiding** [1] - 47:7
**high** [2] - 6:6, 17:4
**high-level** [1] - 6:6
**himself** [3] - 19:15, 36:17, 53:12
**HOLLIS** [1] - 1:23
**homework** [3] - 31:22, 35:20, 57:1
**honest** [1] - 28:16
**honesty** [1] - 15:1
**Honor** [48] - 4:22, 5:9, 6:11, 6:20, 7:21, 8:18, 9:24, 15:8, 16:4, 16:22, 17:23, 18:13, 19:4, 20:4, 20:23, 20:24, 21:20, 21:21, 22:17, 23:8, 37:3, 37:21, 38:4, 38:23, 39:8, 41:4, 41:18, 41:21, 42:20, 44:14, 46:5, 46:24, 47:19, 49:13, 53:19, 55:17, 56:9, 56:24, 59:14, 59:16, 60:9, 60:21, 61:5, 62:4, 62:9, 62:21, 62:24, 64:14
**Honorable** [1] - 4:7
**HONORABLE** [1] - 1:11
**host** [1] - 18:22
**HOSTETLER** [1] - 2:15
**hours** [1] - 43:3
**HOWARD** [1] - 2:13
**Howard** [1] - 4:22
**hundred** [1] - 14:19
**hundreds** [1] - 14:15
**hypothetical** [1] - 26:24
**hypothetically** [1] - 11:17

## I

**ICAJ** [23] - 29:19, 29:21, 30:11, 34:5, 34:7, 34:8, 35:24, 37:19, 39:7, 39:8, 39:13, 39:14, 41:2, 42:11, 42:12, 44:10, 49:22, 50:11, 50:22, 50:23, 51:5, 51:10, 61:16
  **identification** [1] - 24:21
  **identified** [18] - 6:12, 6:13, 6:16, 6:17, 6:19, 20:23, 21:18, 23:3, 35:23, 39:19, 39:23, 40:2, 40:5, 46:10, 46:22, 47:17, 48:3, 58:12
  **identify** [7] - 6:6, 9:24, 12:17, 13:7, 14:24, 30:3, 33:22
  **identifying** [1] - 9:8
  **identity** [4] - 22:22, 22:24, 23:2
  **Illinois** [1] - 1:19
  **illusory** [1] - 17:24
  **illustrative** [1] - 29:13
  **implicit** [1] - 38:2
  **important** [2] - 8:21, 19:12
  **importantly** [1] - 22:17
  **imposed** [2] - 54:8, 54:10
  **impressions** [1] - 10:16
  **IN** [1] - 1:5
  **inability** [1] - 28:19
  **inclined** [1] - 27:13
  **including** [7] - 10:1, 11:7, 31:24, 50:9, 50:15, 52:9, 57:23
  **incomplete** [1] - 60:22
  **incorporate** [1] - 15:10
  **incorporated** [2] - 5:25, 15:9
  **increase** [1] - 31:6
  **indeed** [1] - 28:25
  **independent** [1] - 44:7
  **indicates** [1] - 40:8
  **individually** [1] - 52:20
  **individuals** [1] - 57:18
  **information** [53] - 5:24, 8:13, 9:15, 10:20, 10:23, 10:24, 11:18, 13:5, 15:3, 15:15, 15:21, 18:24, 19:9, 19:11, 19:14, 20:3, 20:13, 27:16, 29:15, 31:14, 32:24, 33:15, 34:16, 34:17, 34:24, 36:7, 36:14, 36:23, 36:24, 40:24, 42:15, 42:17, 43:24, 44:5, 44:14, 46:18, 50:25, 53:2, 55:23, 56:7, 56:13, 56:20, 57:18, 57:20, 57:21, 57:25, 59:9, 59:11, 60:23, 61:23, 62:7, 63:9
  **inside** [2] - 13:5, 15:22
  **instance** [10] - 29:17, 29:22, 30:12, 34:3, 50:23, 51:24, 52:14, 57:2, 59:5, 59:6
  **instances** [4] - 29:14, 34:5, 36:1, 36:4
  **instead** [1] - 51:4
  **institutional** [1] - 31:18
  **institutionally** [1] - 58:19
  **instruction** [1] - 15:17
  **inter** [3] - 39:13, 39:16
  **inter-Asia** [2] - 39:13, 39:16

  **inter-Japan** [1] - 39:16
  **interested** [2] - 29:3, 59:19
  **interpretation** [3] - 9:20, 13:1, 27:2
  **interpreter** [1] - 9:22
  **interpreters** [1] - 9:19
  **interrogatories** [4] - 11:4, 35:8, 36:8, 39:6
  **Interrogatories** [6] - 6:12, 9:8, 11:6, 46:10, 46:12, 46:23
  **interrogatory** [10] - 23:21, 34:22, 35:4, 35:6, 41:3, 43:6, 48:5, 58:9, 58:11, 58:13
  **interview** [2] - 57:23, 59:8
  **interviewed** [5] - 37:23, 57:7, 57:22, 59:11, 59:17
  **introduced** [1] - 54:16
  **invading** [1] - 13:21
  **investigating** [1] - 49:15
  **investigation** [5] - 17:9, 35:15, 57:17, 58:18, 63:8
  **investigations** [1] - 41:17
  **involved** [11] - 20:16, 20:17, 22:3, 22:22, 22:24, 23:2, 29:2, 52:22, 53:2, 57:19, 64:6
  **issue** [3] - 4:14, 28:8, 56:18
  **issued** [4] - 50:3, 54:6, 63:18, 64:1
  **issues** [1] - 18:23
  **item** [4] - 39:6, 39:7, 39:22
  **items** [4] - 39:20, 40:9, 48:6, 48:7
  **itself** [2] - 31:13, 62:12

## J

  **JAL** [10] - 21:5, 27:1, 29:19, 47:2, 50:24, 51:5, 51:7, 51:10, 51:24, 53:12
  **Japan** [17] - 21:4, 21:12, 25:2, 29:19, 39:11, 39:12, 39:16, 39:18, 47:14, 49:15, 50:4, 50:8, 51:6, 51:23, 52:7, 52:8, 52:9
  **Japanese** [9] - 14:16, 15:2, 16:25, 37:22, 45:22, 45:23, 49:6, 49:8, 60:1
  **JEREMY** [1] - 2:17
  **JG** [1] - 1:3
  **job** [1] - 21:4
  **joint** [1] - 17:18
  **JUDGE** [1] - 1:11
  **Judge** [8] - 4:3, 10:23, 16:10, 20:1, 22:2, 22:5, 24:1, 24:2
  **judgments** [1] - 52:15
  **July** [2] - 30:23, 62:8
  **Justice** [4] - 7:10, 14:6, 14:7, 19:7

## K

  **KAPLAN** [4] - 1:14, 1:16, 1:18, 64:20
  **Katayama** [2] - 36:22, 36:23
  **Kato** [34] - 30:24, 31:21, 34:11, 36:16, 36:17, 36:19, 36:24, 37:10, 37:14,

37:18, 39:19, 40:10, 40:25, 42:1, 42:10, 42:11, 42:21, 43:11, 44:9, 45:4, 46:24, 48:23, 51:23, 53:7, 54:13, 57:2, 58:1, 58:7, 58:16, 58:20, 59:12, 60:23, 61:7
  **Kato's** [2] - 30:15, 30:18
  **KE's** [1] - 5:4
  **KEIM** [1] - 2:17
  **kept** [1] - 34:7
  **KEVIN** [1] - 2:24
  **key** [1] - 9:10
  **KFTC** [53] - 29:18, 29:21, 30:9, 31:25, 32:5, 32:9, 32:12, 33:1, 33:2, 33:7, 33:11, 33:13, 33:22, 34:12, 34:21, 35:23, 36:7, 36:12, 37:19, 43:23, 46:19, 46:20, 48:7, 48:14, 48:15, 49:3, 49:4, 49:14, 50:2, 50:3, 50:23, 51:2, 51:3, 52:4, 53:22, 53:23, 54:6, 54:23, 56:10, 56:18, 56:21, 57:3, 58:14, 58:15, 59:18, 60:17, 62:2, 62:11, 63:14, 63:24
  **KILSHEIMER** [1] - 1:14, 1:18
  **kind** [1] - 4:17
  **knowledge** [6] - 8:15, 41:1, 42:4, 53:10, 61:11
  **knowledgeable** [2] - 18:21, 18:24
  **known** [8] - 8:13, 11:5, 11:7, 13:6, 23:13, 23:21, 27:3, 28:22
  **knows** [14] - 5:4, 7:24, 7:25, 15:4, 19:5, 21:18, 23:4, 23:24, 23:15, 26:13, 38:4, 38:13, 43:7, 43:24
  **Korea** [4] - 44:4, 44:6, 49:16, 52:8
  **Korean** [20] - 4:16, 4:21, 5:1, 5:22, 5:23, 10:9, 15:5, 15:8, 16:13, 28:20, 32:10, 32:12, 49:5, 49:7, 49:14, 52:4, 55:25, 56:16, 64:8, 64:9

## L

  **LABATON** [1] - 1:21
  **lack** [2] - 40:24, 40:25
  **LANDAU** [1] - 2:5
  **language** [5] - 15:9, 15:10, 63:2, 63:3, 63:6
  **large** [1] - 8:17
  **Lasalle** [1] - 1:18
  **last** [5] - 13:19, 14:2, 31:17, 48:6
  **LATHAM** [1] - 3:7
  **law** [2] - 8:22, 18:6
  **lawyer** [4] - 5:4, 18:1, 19:22, 21:17
  **lawyers** [5] - 16:14, 19:12, 43:1, 43:2, 64:9
  **lead** [1] - 22:21
  **leaders** [1] - 38:16
  **leap** [1] - 18:6
  **learn** [1] - 22:20
  **learned** [3] - 12:13, 17:9, 41:15
  **learning** [1] - 15:15
  **least** [8] - 28:19, 28:22, 33:18, 34:16, 35:11, 39:1, 40:10, 43:3
  **left** [1] - 42:18

**legal** [5] - 19:1, 20:5, 23:14, 26:21, 28:4
**letter** [5] - 51:13, 51:19, 51:20
**letters** [1] - 57:12
**level** [5] - 6:6, 12:20, 13:3, 17:4, 24:23
**LEVIN** [2] - 2:7, 2:11
**LH** [1] - 56:12
**light** [1] - 7:19
**Lilly** [20] - 8:16, 8:18, 8:19, 8:21, 8:23, 9:13, 9:21, 10:10, 10:13, 13:17, 13:19, 16:10, 18:13, 18:16, 18:21, 20:1, 21:20, 23:23
**Lilly's** [1] - 18:25
**limited** [5] - 16:11, 21:20, 25:1, 31:24, 36:8
**line** [7] - 33:5, 33:14, 52:2, 53:11, 61:25
**lines** [6] - 30:19, 30:24, 31:1, 31:2, 31:4, 33:4
**list** [5] - 43:25, 44:1, 44:2, 44:3
**listed** [2] - 40:23, 43:24
**listen** [1] - 41:10
**Litigation** [1] - 4:6
**litigation** [2] - 25:8, 26:1
**LITIGATION** [1] - 1:7
**live** [1] - 27:8
**LLP** [8] - 1:14, 1:18, 2:3, 2:15, 2:19, 2:22, 3:3, 3:7
**Locust** [1] - 2:3
**lodged** [1] - 7:22
**LOGUE** [1] - 2:24
**look** [25] - 7:19, 20:9, 20:15, 22:2, 30:9, 30:10, 30:19, 36:10, 36:18, 37:8, 38:24, 39:3, 48:1, 48:3, 52:12, 53:5, 54:11, 56:6, 57:4, 57:8, 57:9, 59:13, 59:24, 60:4, 60:11
**looked** [4] - 14:2, 16:14, 28:13, 55:24
**looking** [2] - 12:4, 28:16
**looks** [4] - 11:19, 12:6, 52:11, 57:10
**lower** [1] - 47:5
**Lufthansa** [4] - 55:24, 56:12, 56:16, 57:13

# M

**MAGISTRATE** [1] - 1:11
**Magistrate** [2] - 4:3, 9:5
**mail** [4] - 3:17, 13:1, 20:19, 57:13
**mails** [19] - 14:16, 17:14, 17:16, 18:8, 20:14, 20:25, 21:1, 21:19, 25:5, 34:3, 42:23, 44:24, 45:4, 45:16, 45:18, 45:22, 46:3, 53:5
**main** [1] - 26:18
**majority** [1] - 14:16
**Mann** [5] - 9:5, 10:23, 16:10, 20:1, 22:2
**Mann's** [1] - 24:2
**Marie** [1] - 3:15
**Marie_Foley@nyed.uscourts.gov** [1] - 3:17

**marketing** [2] - 13:25, 42:1
**material** [3] - 62:15, 62:17, 62:20
**materials** [2] - 34:10, 63:7
**matter** [9] - 8:23, 12:25, 20:4, 20:6, 30:3, 30:5, 35:2, 35:13, 46:11
**matters** [3] - 10:25, 18:21, 28:6
**mean** [39] - 5:9, 15:1, 15:9, 16:19, 16:20, 18:7, 22:8, 22:13, 24:12, 25:4, 25:10, 26:9, 28:2, 28:3, 28:21, 38:10, 40:21, 41:10, 41:14, 41:20, 42:6, 43:6, 43:20, 46:5, 47:4, 47:17, 49:17, 53:23, 54:15, 55:15, 59:11, 59:18, 59:21, 60:10, 60:11, 61:13, 63:17, 63:20, 64:22
**meaningful** [2] - 26:9, 41:9
**means** [3] - 18:5, 40:10, 45:8
**meant** [1] - 57:15
**meet** [3] - 12:7, 28:18, 51:9
**meeting** [17] - 17:21, 24:22, 25:4, 31:23, 32:22, 33:16, 34:24, 45:19, 50:22, 51:1, 51:10, 56:8, 56:11, 56:19, 56:20, 56:21, 57:14
**meetings** [84] - 6:3, 6:14, 6:19, 7:10, 12:5, 12:8, 12:14, 14:24, 21:10, 24:21, 25:2, 29:19, 29:20, 30:6, 30:10, 30:11, 30:14, 31:24, 33:6, 33:9, 33:12, 33:13, 33:20, 34:4, 34:5, 34:7, 34:14, 34:22, 35:11, 35:23, 36:5, 36:11, 37:19, 38:2, 38:3, 38:4, 39:7, 39:14, 39:15, 41:2, 41:13, 42:7, 42:9, 42:11, 42:12, 42:13, 43:7, 43:9, 44:2, 44:10, 44:12, 44:19, 44:22, 45:11, 45:15, 46:10, 46:15, 46:16, 46:22, 49:1, 49:19, 50:5, 50:11, 52:8, 52:22, 53:1, 55:2, 55:5, 55:22, 57:11, 57:19, 57:24, 58:12, 58:14, 61:9, 61:10, 61:12, 61:16, 61:22, 62:1, 63:10
**memorandum** [4] - 17:20, 22:5, 22:7, 22:9
**mental** [2] - 13:5, 26:21
**met** [9] - 29:19, 36:3, 36:21, 43:2, 50:13, 50:23, 51:5, 53:6, 53:12
**middle** [1] - 47:24
**might** [5] - 4:19, 5:16, 7:19, 13:12, 59:18
**mind** [1] - 15:13
**minimum** [1] - 33:17
**minute** [1] - 53:21
**minutes** [3] - 21:3, 34:7, 34:9
**misbranded** [1] - 13:24
**misbranding** [2] - 8:24, 18:17
**mismarketed** [1] - 9:14
**Miss** [13] - 21:2, 37:10, 37:12, 37:13, 37:15, 40:25, 48:20, 50:20, 51:3, 51:20, 51:22, 52:1, 52:19
**missed** [1] - 61:5
**modification** [1] - 51:17
**moreover** [1] - 42:5
**Morrow** [1] - 5:4
**most** [3] - 18:21, 20:16, 23:24
**motion** [9] - 5:1, 5:12, 6:5, 10:9, 12:12,

15:18, 40:8, 40:18, 48:2
**MOTION** [1] - 1:10
**motions** [4] - 4:8, 4:9, 11:3, 50:10
**move** [4] - 40:15, 47:1, 47:3, 47:4
**moving** [1] - 40:9
**MR** [150] - 4:11, 4:22, 5:19, 6:17, 8:9, 8:11, 11:2, 11:24, 12:1, 12:10, 13:16, 13:19, 14:13, 15:7, 16:4, 16:22, 17:23, 18:13, 20:8, 20:23, 21:2, 21:15, 22:10, 22:13, 22:17, 23:1, 23:12, 24:3, 24:6, 24:15, 24:25, 25:16, 25:23, 26:17, 26:24, 27:25, 29:5, 29:8, 29:10, 29:25, 30:5, 30:18, 30:20, 30:21, 30:22, 30:23, 31:9, 32:8, 32:12, 32:16, 32:18, 33:24, 34:2, 35:3, 35:7, 35:13, 35:18, 35:25, 37:3, 37:12, 37:15, 37:21, 38:7, 38:13, 38:15, 38:20, 38:21, 38:23, 39:2, 39:23, 40:2, 40:7, 40:15, 40:17, 40:20, 41:4, 41:10, 41:16, 41:18, 41:21, 41:25, 42:10, 43:13, 43:16, 43:19, 43:22, 44:23, 45:6, 45:12, 45:17, 45:24, 46:2, 46:5, 46:24, 47:5, 47:19, 47:21, 49:4, 49:10, 49:13, 49:21, 49:25, 51:13, 51:16, 52:13, 52:17, 52:19, 53:19, 53:21, 53:25, 54:2, 54:8, 54:10, 54:16, 54:18, 55:6, 55:9, 55:13, 55:17, 56:9, 56:24, 57:10, 58:7, 58:16, 58:24, 59:2, 59:14, 60:9, 60:13, 60:18, 60:21, 61:1, 61:5, 61:15, 61:19, 62:4, 62:9, 62:17, 62:21, 62:23, 63:1, 63:12, 63:18, 63:22, 64:4, 64:8, 64:14, 64:16, 64:17, 64:20
**murky** [1] - 11:14
**must** [2] - 24:1, 40:10
**MYERS** [1] - 3:3

# N

**N.W** [4] - 2:15, 2:19, 3:4, 3:7
**name** [1] - 29:7
**names** [3] - 21:19, 34:13, 57:10
**narrow** [1] - 31:14
**narrowing** [1] - 30:9
**nature** [5] - 11:18, 18:17, 18:18, 46:14
**nauseam** [2] - 47:23, 47:25
**NCA** [40] - 19:5, 29:19, 30:8, 30:25, 31:16, 31:21, 33:18, 34:9, 34:11, 34:13, 36:12, 36:13, 36:14, 36:16, 36:21, 38:1, 38:4, 42:13, 43:25, 44:6, 44:19, 44:21, 50:24, 51:5, 51:9, 52:6, 57:11, 57:16, 57:20, 57:22, 57:24, 58:18, 62:6, 62:10, 62:19, 63:10, 63:13, 64:4
**necessarily** [1] - 58:14
**need** [6] - 11:5, 11:8, 28:17, 30:9, 30:10, 55:14
**needed** [2] - 9:16, 13:24
**needle** [1] - 36:10
**needs** [1] - 59:13
**never** [7] - 6:12, 6:15, 6:17, 9:7, 37:25, 58:10, 61:2

**NEW** [1] - 1:1
**New** [7] - 1:5, 1:15, 1:22, 2:23
**next** [1] - 12:12
**nine** [4] - 29:23, 39:20, 40:1, 40:9
**Nippon** [42] - 4:10, 4:12, 4:13, 5:12, 5:13, 5:14, 5:21, 6:5, 6:6, 6:8, 6:10, 6:12, 6:24, 6:25, 7:1, 7:15, 7:24, 9:9, 9:10, 9:18, 9:24, 12:16, 12:17, 13:8, 13:10, 14:8, 14:13, 14:23, 15:4, 15:6, 15:19, 23:15, 24:16, 25:7, 26:25, 28:9, 32:20, 55:22, 56:2, 56:3, 56:5, 61:17
**none** [1] - 46:11
**North** [1] - 1:18
**noted** [1] - 64:24
**notes** [1] - 53:3
**nothing** [1] - 16:6, 38:4, 39:15, 39:17, 46:20, 46:21
**notice** [15] - 5:6, 5:21, 5:22, 5:23, 6:4, 6:5, 15:5, 15:8, 15:16, 18:11, 32:9, 37:7, 37:8, 37:9, 40:24
**noticed** [6] - 31:13, 37:5, 39:5, 47:15, 48:14, 57:5
**notices** [1] - 15:19
**noting** [1] - 34:12
**notion** [2] - 10:14, 28:3
**number** [6] - 29:14, 32:10, 32:15, 32:17, 41:1, 48:2
**Number** [2] - 32:18, 49:2
**numbers** [1] - 48:4

## O

**O'MELVENY** [1] - 3:3
**oath** [2] - 7:13, 23:18
**objection** [3] - 7:22, 8:4, 54:18
**obligated** [1] - 31:16
**obligation** [5] - 31:19, 36:16, 36:17, 41:12, 63:5
**obtain** [1] - 20:13
**obtained** [2] - 32:6, 43:24
**obviously** [2] - 43:6, 61:22
**occurred** [9] - 24:22, 43:8, 45:10, 56:8, 56:11, 56:19, 56:20, 56:21, 61:10
**OF** [2] - 1:1, 1:10
**official** [2] - 3:15, 34:5
**officially** [2] - 54:2, 54:3
**often** [1] - 16:20
**one** [41] - 8:25, 13:16, 14:14, 14:19, 15:6, 15:13, 17:20, 20:18, 21:24, 26:9, 26:18, 34:5, 36:22, 38:13, 39:9, 39:11, 39:12, 39:20, 39:22, 39:25, 41:22, 42:20, 46:8, 49:10, 49:22, 50:3, 51:17, 51:19, 52:7, 52:13, 52:17, 53:15, 53:21, 54:22, 55:25, 57:4, 58:5, 60:5, 61:11, 63:12
**ones** [5] - 14:17, 35:4, 45:7, 45:9, 45:10
**open** [1] - 4:1
**opinion** [4] - 8:17, 10:10, 16:10, 24:2

**opportunity** [3] - 63:25, 64:4, 64:5
**opposed** [3] - 17:10, 17:22, 30:4
**order** [7] - 44:16, 45:1, 47:10, 47:11, 48:14, 48:15
**ordered** [1] - 21:22
**organizations** [1] - 50:17
**originally** [1] - 51:20
**otherwise** [1] - 4:24
**ought** [3] - 12:24, 16:16, 55:17
**overlap** [4] - 29:17, 30:11, 48:13, 58:23
**overlapping** [1] - 39:4
**overly** [1] - 53:16
**own** [3] - 42:3, 58:18, 63:8

## P

**p.m** [2] - 1:7, 64:24
**page** [21] - 5:3, 6:4, 23:23, 30:19, 30:24, 31:1, 31:3, 31:5, 33:3, 33:5, 33:14, 42:19, 48:4, 48:6, 48:7, 51:4, 52:2, 53:11, 61:21, 61:25, 62:8
**pages** [4] - 14:15, 19:7, 43:23, 54:20
**papers** [1] - 12:13
**paragraph** [1] - 18:5
**part** [3] - 8:17, 17:18, 34:15
**participants** [4] - 7:8, 13:7, 13:12, 35:11
**participated** [1] - 58:12
**particular** [6] - 24:22, 33:1, 33:3, 44:13, 50:22, 57:3
**particularly** [3] - 32:1, 35:22, 36:7
**parties** [3] - 5:24, 12:15, 63:19
**party** [5] - 32:21, 33:20, 36:12, 62:10, 63:13
**pass** [1] - 59:12
**PAUL** [1] - 2:22
**Pause** [2] - 38:19, 61:18
**penalties** [2] - 52:5, 52:6
**Pennsylvania** [3] - 2:4, 2:8, 2:12
**people** [19] - 9:10, 11:18, 12:9, 20:15, 20:16, 21:9, 22:22, 22:24, 23:2, 29:1, 29:2, 36:3, 44:9, 44:11, 44:15, 44:25, 47:8, 58:5, 58:12
**people's** [1] - 42:22
**perhaps** [3] - 10:18, 13:3, 14:7
**period** [3] - 9:1, 9:2, 47:24
**person** [2] - 53:2, 57:13
**personal** [3] - 42:3, 53:8, 53:10
**personally** [1] - 52:22
**personnel** [1] - 6:6
**Philadelphia** [3] - 2:4, 2:8, 2:12
**phrased** [1] - 20:12
**piece** [2] - 13:2, 25:5
**pieces** [1] - 28:16
**PIPER** [1] - 2:19
**place** [1] - 12:25
**plaintiff** [4] - 9:3, 10:21, 13:23, 21:15
**plaintiff's** [1] - 42:23

**plaintiffs** [15] - 4:11, 4:23, 7:6, 9:16, 24:7, 27:3, 29:6, 38:9, 39:4, 40:22, 41:11, 43:25, 48:12, 49:11, 56:17
**Plaintiffs** [1] - 1:14
**plea** [30] - 5:20, 5:25, 6:7, 6:8, 6:21, 6:24, 7:11, 8:8, 9:1, 9:12, 9:17, 13:23, 16:6, 18:5, 19:2, 19:3, 19:8, 20:12, 21:23, 22:2, 22:3, 22:4, 22:22, 22:25, 24:8, 24:10, 24:14, 26:15, 26:23
**plead** [5] - 12:3, 16:14, 16:16, 19:13, 19:17
**pleaded** [1] - 10:15
**pled** [6] - 5:15, 8:2, 8:23, 18:19, 23:3, 25:25
**Pohorelsky** [2] - 4:3, 4:7
**POHORELSKY** [1] - 1:11
**point** [11] - 8:5, 13:19, 30:12, 36:21, 51:3, 52:3, 52:17, 53:15, 54:21, 60:21, 63:12
**pointed** [1] - 61:24
**portion** [1] - 16:9
**position** [7] - 7:18, 7:25, 10:3, 13:13, 23:17, 25:8, 25:23
**possessed** [1] - 57:20
**possession** [1] - 32:4
**possibilities** [1] - 13:21
**possible** [3] - 18:1, 22:19, 28:25
**precedent** [1] - 4:18
**preceding** [1] - 32:14
**precise** [2] - 18:17, 18:18
**precisely** [1] - 46:13
**preclude** [1] - 7:22
**precursor** [1] - 64:2
**predated** [1] - 9:1
**preparation** [8] - 33:3, 33:12, 53:3, 57:2, 57:3, 58:7, 61:25, 64:12
**prepare** [9] - 30:8, 31:14, 33:2, 42:21, 44:17, 53:4, 59:13, 59:21, 61:2
**prepared** [2] - 28:9, 33:18, 36:25, 38:2, 40:10, 44:16, 45:5, 48:20, 52:16, 54:23, 60:12, 60:14, 61:3
**preparing** [2] - 36:20, 58:17
**present** [2] - 18:22, 28:1
**presented** [2] - 11:8, 15:11
**presiding** [1] - 4:7
**pressed** [1] - 4:17
**presumably** [1] - 14:5
**presume** [2] - 14:10, 64:7
**presuming** [1] - 58:22
**pretty** [5] - 29:11, 29:16, 31:11, 48:25, 56:25
**previously** [2] - 35:7, 54:5
**prices** [4] - 18:9, 20:22, 27:1, 27:6
**privilege** [12] - 4:15, 7:22, 8:3, 10:18, 13:21, 16:7, 18:23, 19:21, 19:24, 23:19, 27:15, 59:4
**privileged** [2] - 20:2, 27:15
**pro** [1] - 17:16
**pro-competitive** [1] - 17:16

**problem** [4] - 5:10, 21:9, 63:4
**problematic** [1] - 20:11
**problems** [2] - 14:14, 42:20
**proceeding** [4] - 21:25, 32:9, 32:16, 32:17
**Proceedings** [1] - 3:18
**proceedings** [8] - 32:21, 33:20, 36:13, 38:19, 48:8, 61:18, 62:10, 64:23
**process** [2] - 12:19, 64:6
**processes** [2] - 5:14, 13:6
**procompetitive** [1] - 17:2
**produce** [5] - 5:7, 9:24, 31:16, 44:16, 45:1
**produced** [3] - 3:18, 14:13, 14:14
**product** [6] - 8:25, 9:14, 10:16, 10:22, 18:23, 27:15
**progress** [1] - 11:13
**promoting** [1] - 8:24
**proof** [1] - 12:7
**proper** [1] - 7:22
**properly** [4] - 28:9, 31:17, 33:17, 52:16
**prove** [5] - 7:2, 13:4, 21:16, 21:17, 27:8
**provide** [8] - 14:24, 15:12, 29:15, 32:24, 34:23, 35:10, 36:6, 63:9
**provided** [4] - 6:2, 14:7, 49:10, 52:23
**providers** [1] - 6:9
**provides** [2] - 18:11, 22:8
**providing** [1] - 53:10
**published** [3] - 24:5, 44:4, 46:7
**purportedly** [1] - 56:14
**purpose** [1] - 35:14
**purposes** [3] - 29:14, 30:8, 35:8
**pursue** [1] - 5:10
**put** [3] - 17:16, 46:19, 54:22
**puts** [1] - 64:11
**putting** [2] - 11:6, 13:1

**Q**

**questioned** [1] - 21:8
**questioning** [1] - 32:25
**questions** [18] - 7:14, 31:20, 31:23, 43:5, 43:11, 43:13, 43:17, 45:14, 50:21, 52:21, 54:13, 55:4, 55:10, 56:22, 59:18, 59:19, 61:19
**queued** [1] - 15:20
**quick** [1] - 26:5
**quite** [1] - 11:21
**quote** [5] - 31:18, 33:3, 33:7, 33:15, 33:16
**quoting** [1] - 5:2

**R**

**raise** [2] - 47:5, 48:9
**rates** [10] - 10:1, 14:11, 27:7, 29:20, 31:3, 31:6, 42:3, 50:8, 50:17, 52:8
**rather** [2] - 14:25, 15:16
**Re** [1] - 4:6
**RE** [1] - 1:5
**reach** [5] - 17:3, 25:6, 58:4, 58:8, 58:10
**reached** [4] - 14:21, 18:9, 25:2, 30:7, 50:6, 50:13, 56:19
**reaching** [2] - 13:2, 50:7
**read** [16] - 10:14, 16:9, 16:12, 39:19, 41:7, 42:22, 43:1, 43:2, 43:12, 45:4, 45:6, 45:13, 46:16, 48:4, 51:2, 52:25
**readily** [1] - 21:13
**reading** [4] - 5:15, 23:23, 50:21, 60:8
**ready** [3] - 55:18, 56:4, 59:18
**real** [1] - 42:20
**reality** [1] - 28:21
**really** [12] - 8:1, 10:4, 19:18, 23:8, 23:9, 26:2, 28:13, 31:11, 47:13, 48:23, 53:2, 55:19
**reappear** [1] - 48:24
**reason** [4] - 16:8, 23:9, 26:10, 29:16
**reasonably** [1] - 31:14
**reasons** [2] - 8:20, 10:7
**receive** [2] - 57:12, 63:13
**received** [8] - 14:6, 24:1, 33:19, 36:12, 62:11, 62:12, 62:19
**receiving** [1] - 62:18
**recently** [1] - 10:14
**reciting** [1] - 56:14
**recommending** [1] - 52:5
**record** [9] - 6:21, 8:3, 8:8, 10:5, 10:7, 25:1, 26:2, 27:5, 32:19
**recorded** [1] - 3:18
**redacted** [5] - 34:14, 54:21, 60:20, 60:22, 60:23
**refer** [1] - 39:1
**reference** [6] - 6:1, 20:12, 29:15, 30:1, 40:23, 54:11
**referenced** [4] - 18:4, 54:13, 54:15, 58:14
**references** [2] - 55:21, 57:13
**referred** [4] - 6:7, 6:8, 26:14, 26:22
**referring** [2] - 5:4, 38:12
**reflected** [1] - 14:22
**regard** [1] - 50:2
**regarding** [5] - 4:10, 33:6, 33:15, 51:7, 55:11
**region** [1] - 50:14
**reiterate** [1] - 27:17
**relate** [1] - 48:19
**related** [1] - 49:19
**relating** [3] - 35:24, 41:1, 48:2
**relationship** [1] - 49:20
**relevant** [4] - 45:7, 45:9, 50:18, 59:9
**relief** [1] - 10:11
**relying** [1] - 17:2
**remember** [7] - 5:17, 35:10, 35:12, 49:14, 53:12, 53:13, 54:4
**report** [18] - 46:6, 53:22, 53:24, 54:1,

54:5, 55:23, 56:10, 56:14, 60:17, 60:20, 60:24, 61:9, 61:14, 63:14, 63:16, 63:19, 63:20
**Reporter** [2] - 3:15, 3:15
**representation** [1] - 20:5
**representative** [5] - 7:13, 13:13, 14:24, 26:13, 57:16
**representatives** [1] - 28:10
**represented** [2] - 37:22, 37:24
**representing** [2] - 58:3, 59:7
**represents** [1] - 5:13
**requesting** [1] - 10:11
**require** [5] - 15:24, 27:2, 35:15, 46:12, 48:23
**research** [1] - 56:4
**Resolution** [2] - 32:18, 49:2
**resolution** [54] - 28:20, 29:18, 29:21, 30:10, 31:25, 32:5, 32:9, 32:21, 32:23, 33:1, 33:7, 33:11, 33:13, 33:19, 33:22, 34:13, 34:17, 34:21, 35:23, 36:12, 37:19, 43:23, 46:20, 49:3, 49:4, 49:14, 50:2, 50:5, 51:4, 52:4, 52:7, 53:23, 54:1, 54:3, 54:7, 54:11, 54:23, 56:10, 57:4, 61:8, 61:20, 61:22, 62:2, 62:12, 62:13, 62:14, 62:16, 62:19, 63:18, 64:1, 64:3
**resolutions** [1] - 50:3
**resolve** [2] - 56:18, 56:23
**respect** [6] - 10:9, 24:15, 37:22, 43:8, 46:21, 63:9
**respond** [2] - 5:6, 58:5, 63:22, 63:25, 64:4, 64:5
**respondent** [2] - 62:10, 63:24
**response** [3] - 28:19, 40:5, 43:5
**responses** [3] - 21:8, 41:3, 43:7
**responsibilities** [1] - 42:2
**responsible** [3] - 46:25, 47:14, 50:14
**responsive** [3] - 29:22, 29:23, 47:18
**restaurant** [1] - 53:13
**rested** [2] - 10:13, 10:14
**resulted** [1] - 52:5
**retooling** [1] - 15:16
**reveal** [1] - 10:16
**revealed** [1] - 11:5
**reverse** [2] - 23:10, 27:13
**review** [1] - 59:25
**reviewed** [5] - 34:13, 58:25, 59:3, 59:23, 61:8
**reviewing** [1] - 55:15
**rights** [1] - 19:1
**rise** [1] - 4:2
**rises** [2] - 12:20, 13:3
**risks** [1] - 17:4
**RMR** [1] - 3:15
**ROBERT** [1] - 1:16
**rolled** [1] - 53:7
**rose** [1] - 24:22
**route** [2] - 14:23, 19:19
**routes** [1] - 13:11

**rule** [3] - 8:22, 9:23, 31:16
**ruled** [5] - 4:15, 5:15, 11:4, 26:19, 35:8
**ruling** [3] - 5:2, 16:9, 28:7

## S

**sales** [2] - 42:1, 44:6
**SALZMAN** [1] - 1:23
**Sasano** [2] - 42:14, 42:17
**sat** [1] - 33:18
**satisfied** [1] - 10:21
**saw** [1] - 40:14
**scheduled** [2] - 64:18, 64:23
**scope** [1] - 64:12
**seated** [1] - 4:4
**second** [3] - 23:9, 24:6, 39:11
**Sedran** [7] - 4:22, 14:4, 17:6, 21:21, 22:1, 23:11, 26:3
**SEDRAN** [29] - 2:7, 2:11, 2:13, 4:11, 4:22, 5:19, 6:17, 8:9, 8:11, 11:2, 11:24, 12:1, 12:10, 13:16, 13:19, 14:13, 15:7, 23:12, 24:3, 24:6, 24:15, 24:25, 25:16, 25:23, 26:17, 26:24, 27:25, 38:15, 64:16
**see** [15] - 15:18, 21:24, 33:7, 34:20, 43:12, 48:4, 49:7, 49:12, 52:25, 55:12, 55:14, 57:1, 60:11, 62:3, 64:2
**seeking** [1] - 10:20
**seem** [2] - 5:16, 63:5
**sees** [1] - 57:10
**selected** [1] - 43:1
**send** [1] - 63:19
**sense** [4] - 15:7, 27:16, 27:23, 57:8
**sensitive** [1] - 10:25
**sent** [4] - 34:3, 49:5, 57:13, 57:15
**sentenced** [1] - 10:2
**sentencing** [3] - 22:5, 22:7, 22:9
**separate** [1] - 39:4
**separately** [1] - 39:5
**September** [4] - 1:7, 16:9, 18:14, 19:25
**served** [4] - 5:21, 5:22, 5:23, 15:6
**Services** [1] - 4:6
**SERVICES** [1] - 1:6
**set** [5] - 12:4, 15:10, 29:14, 33:13, 62:15
**setting** [2] - 14:11, 29:20
**seven** [4] - 29:23, 39:20, 40:1, 40:9
**seventy** [2] - 9:4, 9:21
**several** [2] - 42:18, 58:9
**SHERMAN** [1] - 3:8
**shielded** [1] - 8:3
**Shingu** [14] - 21:2, 31:22, 37:10, 37:12, 37:14, 37:15, 40:25, 47:12, 48:20, 50:20, 51:3, 51:21, 51:22, 52:19
**Shingu's** [1] - 52:1
**shipments** [5] - 50:4, 50:5, 51:23, 51:24, 52:7
**Shipping** [1] - 4:6

**SHIPPING** [1] - 1:6
**short** [4] - 28:18, 28:25, 35:22, 53:10
**shortcut** [2] - 19:23, 19:24
**show** [5] - 6:2, 10:22, 27:23, 30:13, 33:5
**showing** [1] - 12:7
**shown** [1] - 62:1
**side** [4] - 41:22, 41:24, 41:25, 42:23
**sides** [1] - 63:4
**sift** [3] - 19:14, 27:11, 63:5
**significant** [3] - 29:17, 52:6, 63:4
**silly** [1] - 7:19
**simple** [1] - 31:11
**simply** [3] - 25:24, 31:22, 36:6
**single** [3] - 8:22, 14:18, 32:22
**sit** [2] - 35:19, 45:2
**situation** [4] - 4:20, 6:11, 11:14
**situations** [1] - 22:23
**six** [5] - 21:9, 36:10, 39:20, 40:1, 43:3
**small** [1] - 20:4
**solve** [1] - 5:4
**someone** [5] - 26:24, 42:23, 44:19, 46:14, 48:19
**somewhat** [1] - 5:22
**somewhere** [1] - 43:20
**sorry** [15] - 4:13, 6:15, 12:1, 14:24, 26:7, 29:7, 40:20, 43:15, 52:13, 52:17, 53:3, 54:9, 59:1, 60:9, 61:5
**sort** [1] - 17:20
**Sosano** [1] - 44:24
**sounds** [2] - 10:12, 26:8
**source** [13] - 26:21, 50:21, 55:5, 55:23, 55:24, 56:5, 56:7, 56:12, 62:6, 62:15, 62:20, 63:7
**sources** [2] - 26:18, 56:1
**speaks** [2] - 31:12, 60:11
**specific** [8] - 17:8, 18:9, 20:25, 28:24, 33:9, 33:16, 33:23, 40:23
**specifically** [2] - 9:13, 15:8
**specificity** [3] - 8:10, 8:11, 25:18
**SPECKS** [2] - 1:19, 63:22
**speediest** [1] - 15:4
**spent** [1] - 9:20
**split** [1] - 37:3
**stand** [1] - 8:19
**standard** [1] - 10:21
**stands** [1] - 32:12
**state** [2] - 8:2, 23:24
**State** [3] - 9:4, 9:5, 24:7
**STATES** [2] - 1:1, 1:11
**States** [11] - 1:5, 39:10, 39:11, 39:18, 42:2, 46:25, 49:16, 50:9, 50:15, 52:10, 59:20
**stenography** [1] - 3:18
**step** [1] - 23:10
**stepped** [1] - 8:1
**still** [4] - 8:19, 9:9, 10:10, 45:13
**stipulate** [3] - 22:11, 22:14, 37:15
**stipulating** [1] - 37:17

**Street** [8] - 1:18, 2:3, 2:7, 2:11, 2:19, 2:23, 3:4, 3:7
**study** [1] - 28:15
**subcommittee** [2] - 34:5, 39:9
**subcommittees** [3] - 39:9, 50:12
**subject** [5] - 30:3, 30:5, 35:1, 35:13, 46:11
**subjects** [5] - 28:10, 28:11, 37:5, 37:7, 43:8
**subpoena** [1] - 37:23
**subset** [1] - 22:19
**substance** [5] - 5:24, 34:24, 35:14, 43:9, 46:11
**substantive** [1] - 52:23
**such-and-such** [5] - 11:15, 45:18, 47:3, 56:11, 58:4
**SUCHAROW** [1] - 1:21
**sufficient** [2] - 9:15, 15:11
**suggest** [3] - 7:5, 7:21, 11:24
**suggesting** [1] - 15:21
**Suite** [3] - 2:8, 2:12, 2:16
**summaries** [1] - 28:17, 34:19
**summarized** [4] - 16:12, 36:5, 36:11, 55:10
**summarizes** [1] - 61:22
**summary** [6] - 6:25, 55:10, 55:12, 61:15, 61:21
**superior** [1] - 17:20
**supplied** [2] - 32:7, 52:16
**support** [1] - 34:1
**supporting** [1] - 62:11
**suppose** [2] - 53:20, 64:11
**supposed** [3] - 56:18, 56:23, 63:10
**supposedly** [2] - 6:9, 63:24
**surcharge** [6] - 21:4, 21:6, 47:2, 47:14, 48:10, 50:25
**surcharges** [16] - 10:1, 27:7, 30:7, 39:7, 42:3, 44:12, 44:20, 47:1, 49:17, 49:18, 50:8, 50:13, 50:17, 51:8, 51:10, 52:9
**surmising** [1] - 16:20

## T

**talks** [1] - 57:6
**tariffs** [1] - 20:22
**Telephone** [1] - 3:16
**ten** [8] - 21:3, 39:20, 40:1, 40:9, 47:22, 51:18, 51:21, 51:22
**terms** [4] - 23:25, 29:10, 50:19, 61:25
**testified** [13] - 42:22, 46:25, 46:6, 47:7, 47:16, 47:22, 47:24, 48:10, 48:11, 48:16, 61:1
**testify** [5] - 21:22, 46:14, 48:14, 61:8, 61:10
**testifying** [1] - 53:1
**testimony** [5] - 5:19, 28:12, 28:16, 31:12, 52:24, 53:11
**THALER** [1] - 3:5

**themselves** [1] - 29:1
**therefore** [1] - 56:22
**they've** [5] - 6:18, 21:8, 46:21, 48:3
**third** [1] - 39:12
**Third** [1] - 1:14
**thirteen** [1] - 55:21
**thousand** [2] - 14:19, 42:24
**thousands** [2] - 14:15, 19:7
**three** [25] - 9:18, 13:11, 14:19, 28:13, 31:10, 39:6, 39:9, 39:13, 39:22, 39:25, 40:3, 40:5, 40:6, 42:24, 47:15, 47:18, 47:21, 48:16, 48:18, 49:22, 50:12, 55:25, 58:8, 59:6, 59:8
**throughout** [1] - 34:20
**throw** [1] - 47:8
**today** [4] - 20:2, 26:8, 54:5, 55:16
**together** [6] - 11:13, 11:23, 13:1, 14:2, 25:5, 53:8
**took** [2] - 9:4, 12:25
**topic** [5] - 29:18, 30:4, 30:13, 31:8, 51:11
**topics** [20] - 29:10, 29:17, 30:8, 31:10, 31:13, 37:9, 37:20, 40:23, 42:4, 47:15, 47:18, 47:21, 48:13, 48:16, 48:18, 48:19, 51:18, 53:17, 53:18, 57:5
**total** [1] - 9:19
**totally** [1] - 17:3
**touch** [1] - 49:25
**tough** [1] - 54:20
**trade** [2] - 17:18, 50:17
**Trade** [5] - 28:21, 32:10, 32:13, 49:15, 52:4
**traffic** [5] - 20:19, 39:10, 39:12, 39:17, 49:15
**transcript** [5] - 5:3, 16:12, 48:4, 55:8, 55:9
**TRANSCRIPT** [1] - 1:10
**Transcript** [1] - 3:18
**Transcription** [1] - 3:18
**translate** [2] - 14:18, 20:14
**translated** [6] - 14:18, 15:2, 18:8, 32:6, 49:6, 49:8
**translation** [3] - 32:3, 32:5, 54:12
**translations** [2] - 14:20, 46:2
**tread** [1] - 10:25
**treading** [1] - 28:5
**trial** [5] - 6:2, 7:2, 7:19, 15:11, 17:5
**tried** [8] - 29:15, 42:21, 44:9, 44:17, 52:21, 58:4, 58:8, 58:10
**trouble** [1] - 8:12
**true** [9] - 6:25, 26:17, 34:19, 34:20, 36:2, 41:5, 51:4, 51:5, 62:23
**truth** [1] - 8:2
**try** [3] - 5:19, 47:11, 63:6
**trying** [6] - 13:4, 14:17, 21:10, 26:9, 30:6, 59:23
**twelve** [1] - 31:1
**two** [17] - 4:8, 4:9, 4:11, 9:19, 21:5, 23:23, 37:4, 37:5, 39:6, 39:20, 39:25, 44:9, 45:5, 53:7, 58:6, 60:3
**types** [1] - 34:10
**typically** [1] - 11:13

## U

**U.S** [1] - 51:25
**unable** [3] - 32:23, 34:23, 61:8
**under** [3] - 7:13, 11:7, 23:18
**underlying** [1] - 7:11
**underneath** [1] - 51:11
**undoubtedly** [1] - 18:24
**UNITED** [2] - 1:1, 1:11
**United** [11] - 1:5, 39:10, 39:11, 39:18, 42:2, 46:25, 49:16, 50:9, 50:15, 52:10, 59:20
**universe** [1] - 19:5, 19:9, 19:11, 19:14, 31:14, 31:24, 36:8
**unlawful** [1] - 9:10
**unlike** [1] - 9:21
**unprepared** [2] - 32:1, 53:17
**unredacted** [2] - 33:19, 34:17
**unrelated** [1] - 61:14
**unsupported** [1] - 22:1
**up** [15] - 4:14, 11:6, 12:3, 14:3, 15:20, 24:6, 25:11, 27:24, 30:16, 32:5, 37:4, 38:11, 47:5, 54:14, 55:21
**US** [1] - 2:19
**useful** [2] - 15:18, 32:1
**uses** [1] - 9:14

## V

**value** [1] - 9:6
**various** [4] - 12:14, 28:10, 37:19, 43:8
**vast** [1] - 14:16
**venue** [1] - 56:12
**verbatim** [1] - 15:9
**versus** [1] - 17:12
**Victor** [1] - 4:7
**videotaped** [2] - 7:13, 26:4
**view** [2] - 6:20, 22:8
**views** [1] - 10:17
**VIKTOR** [1] - 1:11
**violate** [1] - 23:18
**violates** [1] - 18:6
**violation** [2] - 16:24, 22:10
**violence** [1] - 16:23
**Virginia** [2] - 9:4, 24:8
**virtually** [1] - 46:21
**volume** [1] - 60:3

## W

**wait** [1] - 42:6
**waiting** [1] - 9:20
**Walnut** [2] - 2:7, 2:11

**wants** [4] - 19:10, 19:16, 20:2, 20:6
**Washington** [5] - 2:16, 2:20, 3:4, 3:8, 22:6
**WATKINS** [1] - 3:7
**ways** [1] - 15:21
**Weinstein** [1] - 24:2
**well-prepared** [1] - 44:16
**West** [2] - 9:4, 24:7
**whatsoever** [1] - 61:11
**whole** [3] - 17:11, 48:19, 61:13
**WILKS** [1] - 3:5
**WILLIAM** [1] - 3:8
**wish** [1] - 47:8
**witness** [19] - 5:7, 5:13, 7:12, 9:24, 11:6, 12:24, 21:2, 21:22, 31:7, 31:17, 33:2, 37:25, 38:1, 41:15, 44:17, 45:1, 46:24, 52:16
**witness's** [1] - 31:18
**witnesses** [14] - 5:20, 9:18, 11:8, 18:24, 19:15, 21:8, 21:16, 37:4, 37:24, 42:21, 43:25, 59:17, 59:21
**woman** [1] - 48:23
**word** [2] - 8:12, 38:1
**words** [1] - 62:14
**worth** [3] - 34:12, 36:10, 43:5
**write** [1] - 43:22

## Y

**years** [3] - 36:10, 42:18, 47:23
**YORK** [1] - 1:1
**York** [7] - 1:5, 1:15, 1:22, 2:23
**yourself** [2] - 23:10, 31:17

## Z

**Zyprexa** [3] - 8:24, 9:12, 13:24