UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION

MDL No. 1775

MEMORANDUM
AND ORDER

06-MD-1775 (JG) (VVP)

JOHN GLEESON, United States District Judge:

On October 24, 2012 Magistrate Judge Viktor Pohorelsky issued a Memorandum Order directing the disclosure of portions of grand jury testimony by John Doe and James Doe, witnesses before federal grand juries in California and Georgia, respectively, which were investigating price-fixing in the air cargo industry.  ECF No. 1764.  On November 30, 2012 John Doe, James Doe, and defendants Airline 1 and Airline 2 filed objections to Magistrate Judge Pohorelsky's Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and 28 U.S.C. § 636(b)(1)(A).  ECF Nos. 1782, 1783, 1792.  I heard oral argument on the objections on January 4, 2013.  For the reasons stated below, the objections to Magistrate Judge Pohorelsky's Order are sustained.

BACKGROUND

Since 2006 the Antitrust Division of the United States Department of Justice ("DOJ") has been investigating price-fixing in the air transportation industry.  As part of that investigation, John Doe testified before a grand jury sitting in the Central District of California on March 4, 2010, and James Doe testified before a grand jury sitting in the Northern District of Georgia on March 16, 2010.  DOJ *Ex Parte* Mem. 2, ECF No. 1748.

This multi-district litigation stems from the part of DOJ's investigation that relates to price-fixing in the air cargo industry. The facts of this litigation have been set forth more fully in several prior opinions of the Court, familiarity with which is assumed. *See, e.g.*, *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-1775, 2010 WL 4916723 (E.D.N.Y. Nov. 24, 2010). Defendants are domestic and foreign airlines that provide airfreight shipping services around the world. Plaintiffs are direct and indirect domestic and foreign purchasers of these airfreight shipping services. Plaintiffs allege that defendants engaged in a global conspiracy to fix the prices of airfreight shipping services from 2000 to 2006.

Plaintiffs deposed John Doe on April 27, 2011 and James Doe on June 2, 2011. ECF No. 1742-1, Exs. 2 (John Doe Dep. Tr.), 4 (James Doe Dep. Tr.). The depositions of John Doe and James Doe both revealed that each had previously testified before a grand jury investigating price-fixing in the air cargo industry. *Id*. Ex. 2 91:18-91:19 (John Doe Dep. Tr.); Ex. 4 11:17-19:22 (James Doe Dep. Tr.).

On August 8, 2011 plaintiffs petitioned the United States District Court for the Central District of California and the United States District Court for the Northern District of Georgia to transfer the grand jury transcripts of John Doe and James Doe to this Court, or, in the alternative, to disclose the transcripts in their entirety pursuant to Rules 6(e)(3)(E)(i), 6(e)(3)(F), and 6(e)(3)(G) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). Pls. Resp. Objections 5, ECF No. 1787. In support of their petitions, plaintiffs argued that disclosure of the transcripts was necessary to impeach or refresh the recollections of John Doe and James Doe. DOJ *Ex Parte* Mem. 3. DOJ submitted memoranda to both courts opposing the disclosure of the transcripts, but it did not oppose transfer of the transcripts to this Court. *Id*. Both courts granted

plaintiffs' petitions to transfer the grand jury transcripts to this Court. DOJ *Ex Parte* Mem. 3; *see also* ECF No. 1724-1, Ex. 9 (N.D. Ga. Order); ECF No. 1727-3, Ex. 1 (C.D. Cal. Order).

Thereafter, on June 8, 2012 plaintiffs and DOJ filed a joint motion for disclosure of limited excerpts of the grand jury transcripts of John Doe and James Doe. Joint Mot., ECF No. 1704. As set forth in the joint motion, DOJ compared the deposition testimony of John Doe and James Doe with their prior grand jury testimony and concluded "that limited disclosure of *excerpts* of the grand jury transcripts is appropriate for the purpose of allowing plaintiffs to refresh the recollection or impeachment of witnesses, as permitted under *Douglas Oil*."[1] *Id*. at 2 (emphasis in original). In the joint motion, DOJ further requested leave to file "an *ex parte* and *in camera* memorandum under seal that describes in detail the limited portions of the grand jury transcript meriting disclosure," which Magistrate Judge Pohorelsky granted. *Id*.; Order, Aug. 20, 2012; *see* DOJ *Ex Parte* Mem. Magistrate Judge Pohorelsky heard oral argument on the joint motion on September 5, 2012. Order, June 19, 2012, ECF No. 1715.

On October 24, 2012 Magistrate Judge Pohorelsky issued a Memorandum Order granting the joint motion. In the Order, Magistrate Judge Pohorelsky noted that he had independently reviewed the excerpts of the grand jury transcripts identified by DOJ and compared them with the deposition testimony of John Doe and James Doe. Mem. Order 2. He held that a portion of the grand jury transcripts identified by DOJ "may well serve to refresh the witnesses' recollection or to impeach them." *Id*. Magistrate Judge Pohorelsky specifically "reject[ed] the assertion that there must be a 'compelling interest' for the information," finding instead that "all that is required is a showing that the information 'is needed to avoid a possible injustice.'" *Id*. (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)).

---

[1] During oral argument before Magistrate Judge Pohorelsky on the motion, plaintiffs' counsel represented that "the Justice Department approached [them] and said that they felt that certain excerpts, limited number as we understand it, fell within *Douglas Oil* . . . ." Tr. 5:3-6, Sept. 5, 2012.

He concluded that "[g]iven the limited volume of the grand jury testimony at issue and the fact that the government is not asserting that continued grand jury secrecy should trump the plaintiffs' need for that testimony, the court is satisfied that all aspects of the *Douglas Oil* test are met and that disclosure is therefore warranted . . . ." *Id*.

Magistrate Judge Pohorelsky further ordered immediate disclosure of the excerpts of the grand jury transcripts, rather than "on the eve of trial." *Id*. at 2-3. He reasoned that "[g]iven that no trial date has been set, and none is likely to be set for an extended period of time, it is not at all clear whether the witnesses will be available to testify at trial or be subject to the subpoena power of the court when the trial is held" and that "the very question of whether the witnesses should be called to testify at trial could be affected by the plaintiffs' assessment of the grand jury testimony that is disclosed." *Id*. Finally, he directed that disclosure of the testimony be "limited to 'attorneys' eyes only,' to protect the witnesses from retaliation within the industry where they apparently remain employed." *Id*. at 3.

## DISCUSSION

A.  *Standard of Review*

In considering a timely objection to a magistrate judge's ruling on a non-dispositive pretrial matter, I must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A factual finding is "clearly erroneous" when the reviewing court "on the entire evidence . . . is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case

4

law, or rules of procedure." *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 162-63 (E.D.N.Y. 2006) (citation and internal quotation marks omitted).

B.   *Analysis*

    1.   *The* Douglas Oil *Standard for Disclosing Grand Jury Material under Fed. R. Crim. P. 6(e)*

The grand jury occupies such a cherished position "as an instrument of justice in our system of criminal law . . . that it is enshrined in the Constitution." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 423 (1983) (citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959); *Costello v. United States*, 350 U.S. 359, 361-62 (1956)). The Founding Fathers considered "the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand jury.'" *United States v. Calandra*, 414 U.S. 338, 343 (1974). Today, the grand jury continues to serve "the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Sells Engineering*, 463 U.S. at 423 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972)).

The Supreme Court has consistently recognized "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co.*, 441 U.S. at 218-19; *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958) ("[W]e start with a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts."). This policy, which is "older than our Nation itself," *Pittsburgh Plate Glass Co.*, 360 U.S. at 399, serves several distinct interests:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward

5

> voluntarily, knowing that those against whom they testify would be
> aware of that testimony. Moreover, witnesses who appeared
> before the grand jury would be less likely to testify fully and
> frankly, as they would be open to retribution as well as to
> inducements. There also would be the risk that those about to be
> indicted would flee, or would try to influence individual grand
> jurors to vote against indictment. Finally, by preserving the
> secrecy of the proceedings, we assure that persons who are accused
> but exonerated by the grand jury will not be held up to public
> ridicule.

*Douglas Oil*, 441 U.S. at 219.

Fed. R. Crim. P. 6(e) "codifies the traditional rule of grand jury secrecy." *Sells Engineering, Inc.*, 463 U.S. at 425. But this secrecy is not absolute. The rule delineates exceptions. Fed. R. Crim. P. 6(e)(3)(C)(i), the exception upon which plaintiffs rely, authorizes the disclosure of grand jury material "when so directed by a court preliminarily to or in connection with a judicial proceeding." *See Douglas Oil*, 441 U.S. at 220-21 ("[I]t has been recognized that in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings. Indeed, recognition of the occasional need for litigants to have access to grand jury transcripts led to the provision . . . that disclosure of grand jury transcripts may be made 'when so directed by a court preliminarily to or in connection with a judicial proceeding.'").

The Supreme Court has articulated the standard for determining when the traditional rule of grand jury secrecy must yield to this exception:

> Parties seeking grand jury transcripts under Rule 6(e) must show
> that the material they seek is needed to avoid a possible injustice in
> another judicial proceeding, that the need for disclosure is greater
> than the need for continued secrecy, and that their request is
> structured to cover only material so needed.

*Douglas Oil*, 441 U.S. at 222. More succinctly stated, the court must determine "whether a particularized need for disclosure outweigh[s] the interest in continued grand jury secrecy." *Id*. at 223; *see also United States v. Sobotka*, 623 F.2d 764, 767 (2d Cir. 1980) ("[E]ven when the literal requirements of Rule 6(e) are met, the court which is requested to direct the disclosure must balance the goal of a just result in a judicial proceeding against the countervailing policy of grand jury secrecy.") (citation omitted). The "burden of demonstrating this balance rests upon the private party seeking disclosure." *Id*.; *see also In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) ("[T]he burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy.") (citing *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)).

Magistrate Judge Pohorelsky's Order misconstrues this standard. The Order begins with a recitation of the standard as set forth in *Douglas Oil*. Mem. Order 1. But its application of this standard begins and ends with a consideration of "particularized need." Specifically, the Order states that "[i]n determining whether those portions [of the grand jury testimony] should be disclosed . . . all that is required is a showing that the information is needed to avoid a possible injustice."[2] *Id*. at 2 (citations and internal quotation marks omitted). It concludes that disclosure is warranted because plaintiffs have made this showing, by demonstrating a "particularized need" to "refresh the witnesses' recollection or to impeach them." *Id*.

---

[2] A showing of "possible injustice" is part of the determination of "particularized need." As the Supreme Court has explained, "[t]he particularized need test requires that the materials sought be 'needed to avoid a possible injustice in another judicial proceeding' and that the moving party's request be 'structured to cover only material so needed.'" *United States v. Baggot*, 463 U.S. 476, 479 n.4 (1983). Magistrate Judge Pohorelsky's Order here conflates "possible injustice" and "particularized need." But the Order later addresses whether disclosure is "structured to cover only material so needed" by finding only a "limited volume of . . . grand jury testimony at issue." Mem. Order 2.

7

In holding that disclosure requires only "a showing that the information is needed to avoid a possible injustice," Magistrate Judge Pohorelsky's Order specifically "rejects the assertion that there must be a 'compelling necessity' for the information." Mem. Order 2. The parties' briefs and statements at oral argument agonize over this particular phrase – "compelling necessity" – and whether the standard for disclosing grand jury testimony demands this showing. *See, e.g.* John Doe Objections 5-7, ECF No. 1783; Pls. Resp. Objections 8-10. But rather than meaningfully consider this phrase in light of the standard set forth in *Douglas Oil*, the parties' arguments largely devolve into an exercise of tallying the relevant case law that does or does not invoke the precise words "compelling necessity." *See, e.g.* Pls. Resp. Objections 9 ("Following *Douglas Oil*, the Supreme Court and Second Circuit have repeatedly held that 'particularized need' is required for disclosure of grand jury transcripts without any mention of 'compelling necessity.'").

Where the phrase "compelling necessity" has cropped up in the case law, it clearly refers to the balancing aspect of the *Douglas Oil* inquiry. In *Proctor & Gamble*, the Supreme Court's first opportunity to address Fed. R. Crim. P. 6(e), the Court held: "Th[e] 'indispensable secrecy of grand jury proceedings' must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." 356 U.S. at 682 (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). Reading the phrase "compelling necessity" in context clarifies its meaning. The Supreme Court explicates "compelling necessity" as those "instances" where the need for disclosure "outweigh[s]" the "countervailing policy" in favor of grand jury secrecy.

*Douglas Oil* explicitly incorporated this connotation of "compelling necessity" in establishing the canonical standard "for determining when the traditional secrecy of the grand jury may be broken." 441 U.S. at 222. This standard consists of three parts, one of which is a determination of whether "the need for disclosure is greater than the need for continued secrecy," *id.*, closely tracking the language of *Proctor & Gamble*, 356 U.S. at 682 ("There are instances when that need will outweigh the countervailing policy."). The Court later reiterated this part of the standard: "It is clear from *Proctor & Gamble* and *Dennis* [*v. United States*, 384 U.S. 855 (1966)] that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy. . . ." *Douglas Oil*, 441 U.S. at 223.

By "reject[ing] the assertion that there must be a 'compelling necessity' for the information," Magistrate Judge Pohorelsky's Order dispenses with the balancing aspect of the *Douglas Oil* inquiry. Mem. Order 2. Instead, the Order relies solely on plaintiffs' showing of "particularized need." *Id*. ("[A]ll that is required is a showing that the information is needed to avoid a possible injustice.") (citations and internal quotation marks omitted). This showing, on its own, is not enough. Rather, that need must trump "the important policy considerations which underlie the historic rule of grand jury secrecy." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 32 (2d Cir. 1981). The court "must *balance* the goal of a just result in a judicial proceeding against the countervailing policy of grand jury secrecy."[3] *Sobotka*, 623 F.2d

---

[3] That the court is responsible for undertaking this balancing exercise bears emphasis given the unique procedural history of this Fed. R. Crim. P. 6(e)(3)(C)(i) motion. Following the transfer of the grand jury transcripts to this court, DOJ approached plaintiffs and represented its belief that limited excerpts of the deposition testimony of John Doe and James Doe were appropriate for disclosure under *Douglas Oil.* Tr. 5:3-6, Sept. 5, 2012 (recording plaintiffs' counsel stating that "the Justice Department approached us and said that they felt that certain excerpts, limited number as we understand it, fell within *Douglas Oil* "). Thereafter, plaintiffs and DOJ filed a joint motion for disclosure of those excerpts under Fed. R. Crim. P. 6(e)(3)(C)(i). In his Order, Judge Pohorelsky relies on "the fact that the government is not asserting that continued grand jury secrecy should trump the plaintiffs' need for that testimony" to support his conclusion that "all aspects of the *Douglas Oil* test are met and that disclosure is therefore warranted." Mem. Order 2. The determination of whether plaintiffs' "particularized need" for the grand jury testimony outweighs the need for continued grand jury secrecy is for the Court, not DOJ, to make.

at 767 (citation omitted) (emphasis added); *Douglas Oil*, 441 U.S. at 223 ("[T]he court's duty in a case of this kind is to *weigh* carefully the competing standards in light of the relevant circumstances and the standards announced by this Court.") (emphasis added). Accordingly, Magistrate Judge Pohorelsky's failure to weigh plaintiffs' particularized need for grand jury testimony against the need for continuing grand jury secrecy is contrary to law.

2. *Applying the* Douglas Oil *Standard*

The predominant secrecy-related interest that bears on this Court's analysis is the need to "encourage all witnesses to step forward and testify freely without fear or retaliation."[4] *Proctor & Gamble*, 356 U.S. at 682; *Douglas Oil*, 441 U.S. at 219 ("[I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements."). The Supreme Court has emphasized the particular significance of this interest in the antitrust context. In such cases, the Court has noted, "[t]he witnesses . . . may be employees or even officers of potential defendants, or their customers, their competitors, their suppliers," *Proctor & Gamble*, 356 U.S. at 682, and "fear of business reprisal might haunt . . . the witness." *Pittsburgh Plate Glass Co.*, 360 U.S. at 400. *See also Douglas Oil*, 441 U.S. at 222 ("Fear of future retribution or social

---

[4] This Court need not worry about "the risk that those about to be indicted would flee." *Douglas Oil*, 441 U.S. at 219. According to DOJ, "the Government is not actively seeking new indictments." DOJ *Ex Parte* Mem, at 5. (Several indicted individuals have already fled and "remain at large." *Id*.). Nor does this Court need to worry about "the risk that those about to be indicted . . . would try to influence individual grand jurors to vote against indictment," tamper with witnesses, or otherwise hinder the grand jury deliberative process. *Douglas Oil*, 441 U.S. at 219. The grand jury has completed its deliberations and the identities of its members will remain confidential even if John Doe and James Doe's testimony is disclosed. However, DOJ does note that disclosure (here, DOJ emphasizes "wholesale disclosure of the entire transcripts") could provide indicted fugitives opportunity "to potentially use this information in an attempt to intimidate or interfere with witnesses or otherwise tamper with evidence." DOJ *Ex Parte* Mem., at 6 ("Alteration of physical and testimonial evidence is a real concern. In particular, the Air Transportation Investigation has uncovered at least 10 separate instances of document obstruction that have occurred since the investigation became general knowledge.").

10

stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation.") Accordingly, the "[t]he grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *Id*.

Both John Doe and James Doe continue to work in the air cargo industry. John Doe has worked in this industry, for the same airfreight shipping company, for 25 years, John Doe Decl. ¶ 1, ECF No. 1728-2; James Doe has worked in this industry for over 20 years, James Doe Mem. Opp. Pls.' Mot. Disclosure 12, ECF No. 1725. Their work entails social and business interactions with colleagues and competitors – some of the same individuals and corporations that were under investigation by the grand juries – as well as customers in the air cargo industry.[5] John Doe Decl. ¶ 8; James Doe Mem. Opp. Pls.' Mot. Disclosure 12. Disclosing their grand jury testimony may very well subject both individuals to "retribution and social stigma" within the industry in which they have made their careers. These actions would "act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." *Douglas Oil*, 441 U.S. at 222.

Plaintiffs counter that both "the potential risk of retaliation to John Doe and James Doe and the risk that future grand jury witnesses could be deterred from freely testifying" are "remote under the circumstances of this case." Pls. Resp. Objections 19. Their strongest argument in support of this point is that Magistrate Judge Pohorelsky's Order "limits disclosure

---

[5] In fact, DOJ itself has noted that James Doe's current supervisor is an individual James Doe "implicated . . . in the conspiratorial conduct under investigation" and that if this supervisor "was to become aware that his current subordinate was discussing [him] in a federal criminal probe, it could obviously have a severe adverse effect on [James Doe]." DOJ *Ex Parte* Mem., at 8. While the excerpted grand jury testimony at issue does not include testimony directly identifying or implicating James Doe's current supervisor, it is possible that the information disclosed would allow for the inference that James Doe gave such testimony.

11

of the grand jury excerpts ordered to be produced to 'attorneys' eyes only.'"[6] *Id*. at 20. This limitation on the scope of disclosure certainly reduces the risk of retaliation against John Doe and James Doe, as well as that of deterring future grand jury witnesses from testifying. But the Supreme Court has recognized that the very act of disclosure poses these risks. By its nature, "disclosure increase[s] the number of persons to whom the information is available (thereby increasing the risk of inadvertent or illegal release to others)." *Sells Engineering, Inc.*, 463 U.S. at 432. This risk is considerably more potent when disclosure is to private, as opposed to public, parties. *Cf. In re May 18, 1981 Grand Jury*, 602 F. Supp. 772, 775 (E.D.N.Y. 1985) ("It is not a private party who seeks disclosure. . . . To give the District Attorney access to the materials does not pose as great a risk of further leakage or improper use as would disclosure to private parties."). Moreover, the act of disclosure "renders considerably more concrete the threat to the willingness of witnesses to come forward and to testify fully and candidly." *Sells Engineering, Inc.*, 463 at 432. Thus, the risks of retaliation and of deterring future grand jury witnesses, while blunted by Magistrate Judge Pohorelsky's limitation on the scope of disclosure, remain a vital concern.

---

[6] Plaintiffs also argue that because "the air cargo carriers that John Doe and James Doe worked for during the conspiracy have already entered much publicized, criminal guilty pleas," it is "highly unlikely that John Doe or James Doe will ever be subjected to any more risk of retaliation or damage to their reputations than they were exposed to by virtue of their company's pleas." Pls. Resp. Objections 20. *Douglas Oil* presented a similar fact pattern, in which plaintiffs filed a civil antitrust action against defendants who had entered *nolo contendere* pleas to price-fixing of gasoline. Plaintiffs similarly sought to disclose the testimony of company employees, who were witnesses before grand juries during the criminal investigation. The Supreme Court made no suggestion that the companies' entering of *nolo contendere* pleas lessened the presumption of grand jury secrecy with respect to testimony by company employees. Rather, the Court suggested that the presumption should be strengthened in these circumstances: "Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. . . . Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation." *Douglas Oil*, 441 U.S. at 222.

Plaintiffs further note that John Doe and James Doe were represented by company counsel during their depositions, suggesting that those companies are already aware of their testimony before grand juries. But it is one thing to be aware of the fact that a witness testified and another to know the content of the testimony. Also, the Supreme Court has made clear that grand jury witnesses in the antitrust context may fear retaliation and stigma from a constellation of actors with whom they have business relations, including "their customers, their competitors, their suppliers." *Proctor & Gamble*, 356 U.S. at 682.

A second critical secrecy-related interest that bears on this Court's analysis is to protect the identity and reputation of the innocent. *Johnson*, 319 U.S. at 513 ("To allow the intrusion . . . into the indispensable secrecy of grand jury proceedings – as important for the protection of the innocent as for the pursuit of the guilty – would subvert the functions of federal grand juries . . . ."); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d at 33 ("[S]ecrecy safeguards the innocent."). The focus of this interest has typically been on those "persons who are accused but exonerated by the grand jury." *Douglas Oil*, 441 U.S. at 219; *see also Proctor & Gamble*, 356 U.S. at 681 n.6. But the cloak of secrecy also extends more broadly to protect individuals identified or implicated over the course of grand jury proceedings. *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 566 n. 11 (1983) ("More generally, grand jury secrecy has traditionally been invoked to justify the limited procedural safeguards available to witnesses and persons under investigation."); *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d at 33 ("A glaring injustice could be inflicted and irreparable injury caused to the reputation of a person if it were to become known that there is or ever was before the grand jury any proceeding concerning him even if he were not subsequently indicted."). As DOJ itself observed, the mere "release of . . . names in connection with a federal criminal investigation could have a detrimental effect on . . . professional careers and client relationships and therefore defeat one of the purposes of grand jury secrecy." DOJ *Ex Parte* Mem. 7.

The grand jury testimony by John Doe and James Doe "implicated both co-workers and competitors in a criminal price-fixing conspiracy." *Id*. Although Magistrate Judge Pohorelsky's Order only permits disclosure of limited excerpts of that testimony, those excerpts still identify and implicate a number of co-workers and competitors. *See* Mem. Order App. John Doe Grand Jury Test. 31:15-33:12, 37:10-38:25, 42:11-43:3, 49:4-50:7, 53:20-54:4; *id*. App.

13

James Doe Grand Jury Test. 35:11-36:22, 44:3-45:20. It is also possible, as plaintiffs have suggested, that the disclosure of the grand jury testimony might "tarnish" the reputation of John Doe and James Doe by suggesting that they themselves were targets of the DOJ investigation.[7] James Doe. Mem. Opp. Pls. Mot. Disclosure 12; John Doe Mem. Opp. Pls. Mot. Disclosure 5-6, ECF No. 1728.

Turning to the particularized need for disclosure, plaintiffs argue and Magistrate Judge Pohorelsky's Order held that "portions of the grand jury transcripts . . . may well serve to refresh the witnesses' recollection or to impeach them." Mem. Order 2. The Supreme Court has recognized the refreshment of recollection or impeachment of credibility as constituting the particularized need required for disclosure of grand jury testimony. *Douglas Oil*, 441 U.S. at 222 n. 12 ("[T]he typical showing of a particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'") (quoting *Proctor & Gamble*, 356 U.S. at 683). But "[t]here is no 'absolute right' to the grand jury testimony of a witness who later testifies in a different judicial proceeding." *In re Federal Grand Jury Proceedings*, 760 F.2d 436, 439 (2d Cir. 1985) (quoting *Pittsburgh Plate Glass Co.*, 360 U.S. at 401). Rather, the party seeking disclosure bears the burden of demonstrating that "'a particularized need' exists for the minutes which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co.*, 360 U.S. at 400.

While the plaintiffs' showing of need here is sufficiently particularized, "[w]hether [they] have sufficient '*need*' of these materials is a more difficult question." *Moten*, 582 F.2d at 663 (emphasis added). The Second Circuit has explained that this showing of "need"

---

[7] To the extent that plaintiffs address this concern, it is limited to the argument that neither John Doe nor James Doe were actually targets of the grand jury investigations and, therefore, did not need to be "exonerated" by the grand jury. Pls. Resp. Objections 21. But as discussed above, grand jury secrecy works to protect those who might suffer reputational injury by their connection to a grand jury investigation, regardless of whether or not they were formal targets of the investigation.

or "necessity" "[p]resumably . . . refers to the ability of the party seeking disclosure to obtain the information he seeks from sources other than the protected source." *Id*. The court concluded that "it would seem that a party's need varies in proportion to the degree of access he has to other sources of the information he seeks." *Id*.

Plaintiffs have obtained a wealth of information through discovery. Airline 1, Airline 2, and other defendants have produced over 12 million pages of documents, including all documents produced to DOJ during its criminal investigation of the air cargo industry. ECF No. 1727-1 ¶ 8; ECF No. 1727-2 ¶ 6. In fact, plaintiffs relied heavily on this discovery to refresh the recollections of John Doe and James Doe during their depositions. *See* Pls. Resp. Objections 13-17. At the time this motion was made, plaintiffs had deposed a total of thirty-six witnesses, including John Doe and James Doe, ECF No. 1727-1 ¶ 9; ECF No. 1727-2 ¶ 7, and had received authorization to take additional depositions of other witnesses, 3d Stipulated Scheduling Order, July 18, 2012, ECF No. 1729. Plaintiffs may rely on the documents obtained through discovery, as well as the deposition testimony of John Doe, James Doe, and other witnesses to refresh the recollection or impeach the credibility of John Doe and James Doe at trial.

This trove of information stands in stark contrast to the limited excerpts of grand jury testimony requested by plaintiffs. DOJ itself noted, in comparing the deposition testimony to the grand jury testimony, that "[t]he two transcripts largely do not deal with overlapping issues" and "most of the deposition testimony covers topics that were simply not discussed during [John Doe or James Doe's] appearance[s] before the grand jury." DOJ *Ex Parte* Mem. 11-12. Plaintiffs cite to various instances in the deposition testimony of John Doe and James Doe where they claim these excerpts could serve to refresh their recollection or impeach their credibility. Pls. Resp. Objections 12-17. But the narrow scope of disclosure leads the Court to

15

the conclusion that these excerpts are of limited value to plaintiffs, perhaps allowing them to refresh recollection or impeach credibility in only a few discrete circumstances. Given plaintiffs' access to an abundance of readily available information, I find that plaintiffs have failed to demonstrate a need for disclosure that outweighs the interest in continued grand jury secrecy.

## CONCLUSION

For the foregoing reasons, the objections to Magistrate Judge Pohorelsky's Order to disclose excerpts of the grand jury testimony of John Doe and James Doe are sustained. The requirements for disclosure of the grand jury testimony have not been met, and therefore the testimony shall not be disclosed. If I concluded otherwise, I would grant the objectors' alternate relief of delaying disclosure until trial is imminent and the witnesses involved appear likely to be witnesses at the trial. The former event appears unlikely to me given the course of proceedings thus far.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 19, 2013
      Brooklyn, New York