# EXHIBIT A

**IN THE HIGH COURT OF NEW ZEALAND**
**AUCKLAND REGISTRY**

CIV-2008-404-008352
[2012] NZHC 271

| | |
|---|---|
| BETWEEN | COMMERCE COMMISSION<br>Plaintiff |
| AND | AIR NEW ZEALAND LIMITED<br>Defendant |

CIV-2008-404-008357

| | |
|---|---|
| AND BETWEEN | COMMERCE COMMISSION<br>Plaintiff |
| AND | CATHAY PACIFIC AIRWAYS LIMITED<br>Defendant |

CIV-2008-404-008349

| | |
|---|---|
| AND BETWEEN | COMMERCE COMMISSION<br>Plaintiff |
| AND | EMIRATES<br>Defendant |

CIV-2008-404-008348

| | |
|---|---|
| AND BETWEEN | COMMERCE COMMISSION<br>Plaintiff |
| AND | JAPAN AIRLINES INTERNATIONAL<br>CO LIMITED<br>Defendant |

CIV-2008-404-008351

| | |
|---|---|
| AND BETWEEN | COMMERCE COMMISSION<br>Plaintiff |

AND                KOREAN AIR LINES CO LIMITED
                   Defendant

CIV-2008-404-008350

AND BETWEEN        COMMERCE COMMISSION
                   Plaintiff

AND                MALAYSIAN AIRLINES SYSTEM
                   BERHAD LIMITED
                   Defendant

CIV-2008-404-008356

AND BETWEEN        COMMERCE COMMISSION
                   Plaintiff

AND                SINGAPORE AIRLINES LIMITED &
                   SINGAPORE AIRLINES CARGO PTE
                   LIMITED
                   Defendants

CIV-2008-404-008354

AND BETWEEN        COMMERCE COMMISSION
                   Plaintiff

AND                THAI AIRWAYS INTERNATIONAL
                   PUBLIC COMPANY LIMITED
                   Defendant

Hearing:    12 December 2011

Counsel:    P Collins for Schenker
            P Barratt for DHL
            H Wallwork and K Rusbatch for Plaintiff
            SJP Ladd and C Milne for Air New Zealand
            AN Birkinshaw for Emirates
            DS Alderslade for Japan Airlines International Co Ltd
            G Holm-Hansen for Korean Air Lines Co Ltd
            JL Land and A Pope for Malaysian Airlines System Berhad Ltd
            KJ Dobbs for Singapore Airlines Ltd & Singapore Airlines Cargo Pte
            Ltd

Ltd

Judgment:    24 February 2012

---

**JUDGMENT OF ASHER J**
**(Application to search court file by Schenker)**

---

*This judgment was delivered by me on Friday, 24 February 2012 at 4pm*
*pursuant to r 11.5 of the High Court Rules.*

*Registrar/Deputy Registrar*

### Table of Contents

|  | Para No |
|---|---|
| **Introduction** | [1] |
| **Position of parties to this application** | [4] |
| **The statement of facts for the stage one hearing** | [11] |
| **The relevant rules** | [15] |
| **Approach adopted** | [26] |
| **This application** | [30] |
| *The freedom to seek, receive and impart information* | [33] |
| *The orderly and fair administration of justice* | [38] |
| *The protection of confidential or commercially sensitive* | |
| *and privacy interests* | [42] |
| *Other matters* | [47] |
| **Conclusion** | [49] |
| **Result** | [52] |
| **Costs** | [53] |

### Introduction

[1]    Schenker AG and Schenker (NZ) Ltd (collectively "Schenker") who are non-parties to these proceedings, request access to the documents that have been filed by the parties.  The request is opposed by the present defendant airlines, and at least one former party, Qantas Airways Ltd ("Qantas").  Another non-party, DHL Global Forwarding (New Zealand) Ltd ("DHL"), also opposes. The plaintiff, the Commerce Commission, does not oppose Schenker's request but asks that access not be granted to certain particular documents.  Qantas filed a submission but did not appear, but

the Commerce Commission, although abiding the decision of the Court in relation to the defendant airlines' opposition, filed detailed submissions.

[2]     The request arises in the course of the Commerce Commission's claim against the defendant airlines that they, along with others, fixed elements of the prices of in-bound and out-bound air cargo services to New Zealand.   The proceeding is at present part-heard.   There has been a stage one hearing concerned with issues relating to whether there was a market in New Zealand for in-bound air cargo services.   The stage one decision determined amongst other things that there is a market in New Zealand for air cargo services from an overseas country or region to New Zealand.

[3]     There will be a stage two hearing which will consider the remaining issues, and in particular whether the defendant airlines did enter into arrangements to impose fuel and security surcharges at certain agreed rates.   That hearing starts in February 2013.   The parties are at present attempting to do discovery and prepare evidence.

**Position of parties to this application**

[4]     Schenker is one of the world's largest freight forwarders.   As an international freight forwarder, it is and has been involved in freight forwarding contracts with the defendant airlines.   In its letter of request of 20 July 2011, Schenker's lawyers assert that Schenker "may have suffered loss as a result of the alleged conduct in these proceedings".   This is the sole reason put forward for the request.   Schenker requests:

2.1     a copy of any minute of the Court regarding the issues to be determined in these proceedings;

2.2     the pleadings, including the statements of claim, statements of defence, any amended statements of claim, any amended statements of defence, the parties' opening and closing submissions, and documents handed up, including any "issues list" and/or illustrative guides;

2.3     the affidavits, briefs of evidence, and any summaries of these documents;

2.4     the agreed bundle of documents;

2.5     the agreed statement of facts, including all schedules; and

2.6     a copy of the Court transcript.

[5]     The Commerce Commission elected to discontinue claims against six current and former Air New Zealand executives.   In Minute (No. 14)[1] I directed that documents referring to those individuals by name or position not be accessed by anyone other than a party to the proceedings.   Schenker submits that this Minute should not operate as a blanket suppression of all documents which include reference to the individual airline executives, but that they should be suppressed only to the extent that any references to the individual airline executives are redacted.

[6]     Mr Collins for Schenker relies in particular on what he termed to be a rebuttable presumption of disclosure or a "presumption of accessibility".   According to Mr Collins this was a consequence of open justice now being the paramount consideration.

[7]     The Commerce Commission also accepts that the relevant High Court Rules starting at r 3.9, have effectively created a presumption in favour of access by non-parties to Court files.   However, the Commission requests restricted access reflecting the fact that it received information from non-party freight forwarders, exporters and importers that were not parties to the proceeding and who co-operated with the Commission.   It accepts that this was commercially sensitive information given voluntarily, and that this information should not be accessed.   It submits that r 3.9(3) enables Judges to restrict access to certain documents.

[8]     The defendant airlines take issue with the basic premise relied on by Schenker.   They submit that the Court must consider a number of factors including open justice, and that none of the factors has any particular priority.   The Court, it submits, must carry out a balancing exercise between the interests of the parties trying to prevent or restrict access to documents on the Court file in the interests of the parties seeking access.

---

[1]     *Commerce Commission v Air New Zealand Ltd* HC Auckland CIV-2008-404-8352, 19 April 2011.

[9]     Mr Land for the Airlines submits that the reason put forward for access, namely, that Schenker has suffered loss and there may be possible claims, is not a justification for access.  He submits that the documents sought will not assist Schenker in achieving its stated purpose.  He argues that a number of the documents, in particular the summary of facts and schedules, were prepared for the New Zealand air cargo proceedings for the purpose of achieving an efficient hearing.  An order for disclosure to a third party will deter such co-operation in the future.  He submits that some of the information is commercially sensitive and confidential.

[10]    DHL is part of the DHL Group and is one of the world's largest freight forwarders and the largest single forwarder in New Zealand.  It is not a party to the proceedings but voluntarily provided information to the parties which is contained in the agreed statement of facts and schedules.  It states that the information it provided was never intended to become public and that it would not provide voluntary assistance again if it was to find that its commercial interests will, or might be, prejudiced by doing so.  Schenker is DHL's most significant competitor and DHL believes that the granting of the orders will give Schenker access to information about key clients, freight calculations, margins, freight volumes and similar confidential material.

**The statement of facts for the stage one hearing**

[11]    On 4 May 2011, as part of the process of preparing and presenting the evidence for the stage one hearing and prior to its commencement, the parties filed a joint memorandum concerning the statement of facts, agreed bundle of documents and market issues, which has been commonly referred to "the protocol".  The protocol set out the parties' agreement to the status of a statement of facts and schedules, the status of the agreed bundle of documents and certain market issues.

[12]    These were significant documents containing many hundreds of pages of detailed information.  The protocol provides:[2]

---

[2]    At [11].

> The statement of facts has been prepared for the purpose of the New Zealand air cargo proceedings only and the statement of facts is not binding against, and does not constitute an admission by, any of the defendants in the other proceedings in New Zealand or in any other jurisdiction.

[13]   The statement of facts is just that; a statement of considerable detail setting out how the air cargo industry works and the roles played by the relevant groups of parties.   The schedules contain material from interviews conducted by the Commission with freight forwarders, importers and exporters.   The relevant freight forwarders, importers and exporters verified the final content of the respective schedules.   The statement of facts was based in part upon the responses to the questions to freight forwarders by importers and exporters as well as information and advice from airline personnel, industry experts and relevant discovered documents. It is stated in the protocol:[3]

> Other than as described above, the process by which the statement of facts, A, B, D in this memorandum were prepared and agreed was confidential and without prejudice.  For the avoidance of doubt, this means that no party may disclose to the Court:
>
> (i)   the basis on which any particular statement or document was included or excluded;
>
> (ii)   the background to, or party responsible for, the inclusion or exclusion of any statement or document; or
>
> (iii)   the meaning any party understood any particular statement or document to have.

[14]   In the event of inconsistency between the summary of facts and the schedule, the summary prevailed.[4]  It is not in contention that these documents were part of the evidence of the stage one hearing.

**The relevant rules**

[15]   Rule 3.9 relates to access to documents during the hearing of a proceeding. Rules 3.9(2) and (3) provide:

**3.9  Access to documents during substantive hearing stage**

---

[3]   At [3].
[4]   At [5].

...

(2)  During the period to which this rule applies, any person may access any of the following documents relating to the proceeding:

    (a)  any pleading, reference, notice, or application filed in the court:

    (b)  affidavits, depositions, or other written statements admitted into evidence for the purposes of the hearing:

    (c)  documents admitted into evidence for the purposes of the hearing:

    (d)  if any evidence given orally at the hearing has been transcribed, a transcript of that evidence.

(3)  Despite subclause (2), a Judge may, on his or her initiative or on request, direct that any document, or part of a document, relating to the proceeding not be accessed without the permission of a Judge.

[16]  Rule 3.9(4) provides that a request for access may be made informally to the Registrar by letter and must identify the requested document and give the reasons for the request.  Rule 3.9(5) sets out the procedure to be followed when a request for access to a document is made.  Following the request the Registrar must give notice of the request to the parties who have the right to object within time limits set out in r 3.10.  If no objection is received, the Registrar must make the documents available promptly.  If an objection is received, the Registrar must promptly refer the objection and the request to a Judge for determination.

[17]  Rule 3.16 sets out the matters to be taken into account:

**3.16  Matters to be taken into account**

In determining an application under rule 3.13, or a request for permission under rule 3.9, or the determination of an objection under that rule, the Judge or Registrar must consider the nature of, and the reasons for, the application or request and take into account each of the following matters that is relevant to the application, request, or objection:

    (a)  the orderly and fair administration of justice:

    (b)  the protection of confidentiality, privacy interests (including those of children and other vulnerable members of the community), and any privilege held by, or available to, any person:

    (c)  the principle of open justice, namely, encouraging fair and accurate reporting of, and comment on, court hearings and decisions:

    (d)  the freedom to seek, receive, and impart information:

(e)   whether a document to which the application or request relates is subject to any restriction under rule 3.12:

(f)   any other matter that the Judge or Registrar thinks just.

[18]    The parties have presented conflicting submissions as to how these rules should be interpreted.  Prior to the present access to documents rules, r 66 applied and non-parties making application to court registrars to search, inspect or copy documents were required to show a "genuine or proper interest".  A court's exercise of its powers was a matter of discretion depending on the facts of the individual case. In its 2006 report the Law Commission did not accept that approach, proposing that "in accordance with the principle of open justice, information should generally be available, unless there are good reasons for not permitting access".[5]  Good reasons included trade secrets or sensitive information.

[19]    Following the report, the rules were considered by the Rules Committee.  The rules were amended in June by the High Court (Access to Court Documents) Amendment Rules 2009, the rules that apply to this application.

[20]    The Commerce Commission in a submission accepted by Mr Collins for Schenker observed that r 3.9 has effectively created a presumption in favour of access by non-parties to court files during the substantive hearing phase.  However, r 3.9(3) enables a Judge to restrict the presumptive operation of r 3.9 and direct that a document not be accessed.

[21]    Schenker supported this approach by reference to statements in the Law Commission report in 2006[6] which included the following introductory statement:

> The rules governing access to court records are currently not easy to find, nor are they clear, comprehensive or consistent across jurisdictions. Although most court hearings are in public, access to court records is not so open.  This report recommends a new approach.  *We consider that court record information should be more generally available in accordance with the principles of open justice and freedom of information, unless there are good reasons for withholding the information.*  This approach is consistent with that of the Official Information Act 1982, and we recommend the enactment of a Court Information Act that follows a similar policy framework: a presumption of open court records limited only by principled

---

[5]   Law Commission *Access to Court Records* (NZLC R93, 2006( at [5].
[6]   At 6.

reasons for denying access. Such reasons would include protection of sensitive, private or personal information, particularly in cases involving children.

(Emphasis added.)

[22]    The Law Commission endorsed a "presumption of accessibility"[7] It stated: "The starting point would be that all court record information is presumptively accessible."[8] It stated that "[c]onclusive reasons" must be necessary for withholding information, including situations where access would be likely to prejudice the maintenance of the law, or endanger the safety of a person. It concluded that open justice was the cornerstone of New Zealand's justice system and should be the key guiding principle in an access to court information regime.[9]

[23]    Schenker relied in particular on the decision of *BNZ Investments Ltd v Commissioner of Inland Revenue*.[10] In that case the relevant case law, the Law Commission's report and approaches in other Commonwealth jurisdictions were reviewed. Wild J concluded in relation to requests for permission to access court documents that the principle of open justice was paramount, "effectively creating a presumption of disclosure".[11] He determined that in the case before him, the briefs of evidence should be made available to a party who was seeking material from the file to assist in relation to potential litigation in Australia with similar issues to those in the New Zealand litigation. He observed:[12]

> The BNZ correctly identifies that Maddocks' reason for requesting the briefs of evidence is not particularly compelling. The BNZ is correct for the reasons enunciated in *Dian* at [31], and *Universal Music* at [52], viz. the principle of open justice does not encompass access to documents for research for parallel litigation, especially litigation without a public interest element such as that in *Sayers*. However, as the cases above demonstrate, the unintended consequence of making open justice a paramount consideration is the provision of documents to non-parties for this purpose, and it is one that must be tolerated lest that paramount consideration be undermined. Given the focus of the new rules, this Court has little option but to uphold that principle of open justice and tolerate the consequences.

---

[7]    At 10.
[8]    At [12].
[9]    At [2.100].
[10]   *BNZ Investments Ltd v Commissioner of Inland Revenue* (2010) 24 NZTC 23,997.
[11]   At [36].
[12]   At [38].

[24]    Mr Land for the defendant airlines took issue with this approach.    He accepted that the Law Commission had recommended an effective presumption of disclosure, but submitted that that recommendation was not ultimately accepted and is not reflected in the present rules. He referred to the relevant minutes of the Rules Committee when it considered the Law Commission's report and the wording of the proposed rules, and a statement in a public lecture by the then-Chief High Court Judge, Randerson J, who was on the Rules Committee.   It was observed that court records differ fundamentally from other government records held by the executive or the administration, and that a presumptive approach to third party access to court records was inappropriate.[13]    Randerson J observed that a better approach was a balancing of the competing interests tailored to the circumstances of the case.   He referred to other applications to access court documents under the new rules where a presumption of disclosure was not adopted.[14]

[25]    Mr Land submitted that there was no presumptive approach in r 3.16 and that open justice is only one of a number of factors in the balancing exercise. He relied on observations to this effect in *McGechan on Procedure*,[15] Australian authorities and a decision of *Chapman v P*[16] where Mallon J, relying on observations in *McGechan on Procedure*, determined that the principle of open justice did not warrant special weight. She observed:[17]

> ... None of the relevant factors are given special primacy over the other factors and so a balancing exercise is required.   As is said in *McGechan on Procedure* ... the rules:
>
> > "reflect the tension between the needs for open justice, and the recognition that the private matters of litigants should not be subject to unnecessary public scrutiny.
> >
> > ...
> >
> > ... The principle guiding these rules is that Court documents are not automatically regarded as public documents. While a Court hearing is conducted in public, documents frequently contain information that the parties would prefer not to have aired in public. Persons other than the parties would therefore have to establish a good reason to have access to documents."

---

[13]    Justice Randerson "Contempt of Court and the media" *Media Law 2008* (LexisNexis, Wellington, 2008).

[14]    *ASB Bank Ltd v Versalko* HC Auckland CIV-2009-404-5449, 4 May 2010.

[15]    *McGechan on Procedure* (online looseleaf ed, Brookers).

[16]    *Chapman v P* (2009) 20 PRNZ 330 (HC).

[17]    At [31].

**Approach adopted**

[26]    Rule 3.9(2) sets out the basic proposition that "any person may access" the defined court documents.  The rules then go on to create a default position whereby that access will be achieved if there is no objection.  Rule 3.9(5) provides that the request for access is to be promptly given to the parties or their counsel, and that a party who wishes to object must do so before the relevant deadline.  If there is no objection, the Registrar must promptly provide the documents.

[27]    While that is the default procedural position, in the event that a party who has been served with notice of the request objects to it, the matter is then referred to a Judge for consideration.[18]  At that point the default position with its bias towards access no longer applies and the Judge must determine the request and objection applying r 3.16, which sets out the matters to be taken into account.  Rule 3.16 sets out six matters, and the introductory words require the Judge to take into account "each ... [matter] that is relevant to the application, requests or objection".  There is therefore nothing in the words of the rule to indicate that primacy is to be given to any of the six particular matters, only one of which is the principle of open justice.  To the contrary, the rule states that they are all to be weighed in the balancing.  As is usual with such lists of matters, some will be relevant to the particular request and some will not, and some matters may assume primacy given the particular facts.  But none has automatic primacy.

[28]    The structure of these rules and the unambiguously non-hierarchical listing of the six r 3.16 matters support Mr Land's submission that the Law Commission's recommendation that open justice and freedom of information be cornerstones of any future rules relating to access to court records was not adopted by the Rules Committee.  There is a real difference between information held in government records and court records which consist largely of information provided by parties so that their dispute can be resolved.  While some Australian authorities in relation to access to court records do give primacy to the principle of open justice, those observations are driven by the wording in the particular rules.  In the United

---

[18]    High Court Rules, r 3.9(5)(c).

Kingdom primacy is not given to the principle of open justice in relation to requests by non-parties.  The English position is summarised in the 2011 White Book on the English Civil Procedure Rules 1998:[19]

> A non-party has no right to documents on the court file except where the rules so specify.  Rule 5.4C(2) gives the court a discretion to be exercised in accordance with the overriding objective (r.1(2)).  The discretion is to be exercised after taking into account all the circumstances, including the applicant's reasons.  The principle of open justice is a powerful reason for allowing access to documents where the purpose is to monitor that justice was done, particularly as it takes place … .  Where the purpose is not to monitor that justice was done, but the documents have nevertheless been read by the court, as part of the decision-making process, the court should lean in favour of disclosure if a legitimate interest can still be shown for obtaining the documents.  The court should not be as ready to grant permission in the case of documents that were not read by the court, as part of the decision-making process, as the principle of open justice does not come into play in relation to those documents.  In such circumstances, permission should be granted only if there are "strong grounds for thinking that is necessary in the interests of justice to do so".

(Citations omitted).

[29]   I conclude that open justice is not the paramount consideration in the new access regime.  As has been observed, it is a principle and not a freestanding right.[20] It is just one of the matters to be taken into account, and there is no presumption in favour of disclosure.  In this regard I respectfully prefer the reasoning of Mallon J in *Chapman* to that of Wild J in *BNZ Investments Ltd*, and agree with the observation in *McGechan* that the r 3.16 factors "do not represent a hierarchy".[21]

**This application**

[30]   In addition to the six listed matters, r 3.16 requires the Court to consider the nature of and the reasons for the request.  They form a background for the assessment of the relevant matters that are then listed.  They will tend to drive the analysis of the six factors.  For instance if the purpose is publication to the public by the media, that may lead to a different focus than if the application was by a private person for personal or commercial purposes.  Inevitably a Court will be less

---

[19]   The White Book Service *Civil Procedure: Volume 1* (Thomson Reuters, London, 2011) at [5.4C.7].

[20]   *John Fairfax Publications Pty Ltd v Ryde Local Court* [2005] NSWCA 101, (2005) 62 NSWLR 512 at [29], approved in *Seven Network ltd v News Ltd (No 9)* [2005] FCA 1394 at [23].

[21]   *McGechan on Procedure*, above n 15, at [HR3.16.01].

sympathetic to an application which does not have a recognisable and legitimate public or private purpose.

[31]   There is a real distinction between r 3.16(c) (the principle of open justice) and r 3.16(d) (freedom to seek, receive and impart information). The first, which is to encourage fair and accurate reporting and comment on court hearings and decisions, is relevant to applications by media organisations and commentators but has little relevance to an application by a private party pursuing a commercial purpose.   It is significant that the principle of open justice is given a limited definition in the rule.   The second, freedom to seek and receive information, is directly relevant when an interested private party is seeking information for its own purposes.

[32]   It is the right to seek and receive information (r 3.16(d)) that has particular relevance to this application.   Schenker does not purport to have an interest in the fair and accurate reporting of the court hearing.   It has a private interest in the material asserting that its interest is to gather information that will assist it in considering whether to claim for losses in other jurisdictions.

*The freedom to seek, receive and impart information*

[33]   The principle that parties should have freedom to seek and receive information does not exist in a vacuum in r 3.16.   The rule requires a consideration of the reason for the request referred to in the opening words of the rule.   An understandable and legitimate reason will have more weight than a general wish to fish for information provided to the Court by the requestor's competitors or trade associates.

[34]   The submission of the airlines is that any proceedings in other jurisdictions are likely to be time barred.   Schenker has not provided any detail on where it might bring proceedings in other jurisdictions, and the time limits which apply.   Given that the Commerce Commission makes no allegations of wrongdoing after February 2006, and that there is a three year time bar in New Zealand and likely to be similar

time bars in many other jurisdictions, there would appear to be some force in this point.

[35]    Then there is the fact emphasised by Mr Land in his submissions that the primary issue of fact in the stage one proceeding was the existence of a market for in-bound cargo in New Zealand.  While the evidence was often general, the focus was on New Zealand.  The evidence did not relate to issues of collusion, or whether freight forwarding customers suffered loss.  The stage one decision reflects this.  In the decision there were no references to details of alleged collusion or particular loss. It is difficult to see how this general evidence would be of particular assistance to Schenker in the drafting of proceedings in other jurisdictions.

[36]    Moreover, the protocol provides[22] that the statement of facts is not binding against any of the airlines in any other proceeding.  So the airlines could claim not to be bound in any event by what was said (although the material could still be relevant despite that).

[37]    In summary, the reason put forward for the request is underwhelming in that access is unlikely to assist in a claim for loss in other jurisdictions.  Schenker has been on notice of this objection by the defendant airlines for some time, but has not sought to justify or elaborate on the reason for its request.  No affidavit in support has been filed.  I have sympathy for the submission of DHL that Schenker has not shown a legitimate interest in the material on the file.

*The orderly and fair administration of justice*

[38]    The freight forwarders and other industry participants who co-operated in the Commerce Commission investigation by that co-operation assisted in the orderly and fair administration of justice.  With considerable effort and no doubt great cost, the Commerce Commission and the defendant airlines agreed on a statement of facts and on the content of the schedules that were prepared at the same time.  In doing so they undoubtedly saved a great deal of Court time that would have been otherwise taken

---

[22]    At [11].

in the recital of uncontentious evidence. And this assisted in defining the issues for trial.

[39]   It is very important that in a regulatory dispute such as this that parties in conflict be able to provide information to each other without fear of it being disclosed to third parties or used for purposes ulterior to the hearing. They should be encouraged to achieve the most speedy and cost-effective procedures to resolve the dispute. In this case the extent of co-operation and disclosure was exceptional and commendable. It is to be hoped that the parties will continue to show this good sense and co-operation in the future, and that it will also be a feature of this type of regulatory proceeding.

[40]   So in relation to the statement of facts and schedules there is a concern that an order for disclosure may derogate from the orderly and fair administration of justice. An order for access to be given to non-parties may discourage the parties from co-operating in this way in the second stage of the proceedings, and discourage other parties from operating in this way in future proceedings. Therefore in relation to the agreed statement of facts and the schedules, the orderly and fair administration of justice points against disclosure. This factor also works against the request in relation to the affidavits and agreed bundle of documents, as the process of preparing those documents involves the parties making decisions as to what they will disclose to the Court. It is not in the interests of justice for full disclosure to be discouraged, or cost added by the need for redaction.

[41]   This factor is less persuasive in relation to the pleadings which should not contain detailed evidence. Their purpose of pleadings is to set out the key elements relied on by each side and access to them can usually expected to be in accord with the principle of open justice.

*The protection of confidential or commercially sensitive and privacy interests*

[42]   I accept the submission for the defendant airlines that some of the material in the statement of agreed facts and the schedules was confidential. Mr Collins did not take issue with this, but suggested that redaction could fix the problem.

[43]   The Commerce Commission does not oppose Schenker's application, but because of the commercial sensitivity opposes the disclosure of the information provided by the freight forwarders, importers and exporters.

[44]   I accept that consistent with para 11 of the protocol the parties never anticipated that the schedules to the statement of facts would be used for any purpose other than the proceeding.

[45]   There was also some confidential material referred to in the submissions that were presented in court.  There can be no doubt that in this case, in light of the weak justification for the request, that the confidentiality of the parties and non-parties must be preserved.  I am not satisfied that in this case redaction is the way to preserve it.  This will greatly add to the cost of the proceeding.  There are many hundreds of pages of material and to require the parties to go through this material and to redact would be costly to them and distract from the paramount task of preparing for the stage two hearing.  In this particular case given the weakness of the reason for the request, I would hesitate to direct redaction even if Schenker had offered to pay the costs.  The task would prove a distraction for parties preparing for a major trial.

[46]   The protocol expressly set out the confidential nature of the statement of facts and schedules, and the agreement that no party might disclose to the Court the basis on which the statement or the document was included or excluded, the background or the party responsible for the inclusion or exclusion of the statement or document, and the meaning of any particular statement or document.  To put to one side the agreed confidential nature of the documents would be most unfair to the parties who relied on that clause.  This case is unusual in that there is on the court file a great deal of material in the statement of facts and schedules that has not been referred to in the proceeding.  Usually in relation to a list of documents, while it may contain a great deal of commercially sensitive material, this does not pose a problem as the documents are not on the court file unless they are of direct relevance to the issues in question.  That is not the case here, where in the schedules and the bundles of documents there is a great deal of material that ultimately was not referred to, and

can be put entirely to one side for the purposes of understanding what the case was about and the implication of the decision.

*Other matters*

[47]   I accept Schenker's submission that Minute (No. 14) should not operate as a prohibition of access.   It was intended to prevent identification of individual airline executive defendants against whom the claim had been discontinued.   Schenker accepts this, and does not seek material that might lead to identification.   It submits that such material should be redacted.   Although the minute related to documents that referred to the executives, it cannot be interpreted as a general suppression of access, and if it was, as a consent order not involving Schenker, it can be put to one side for the purposes of this request.

[48]   As a background factor I bear in mind that documents that are produced in the process of discovery cannot be used for any purpose other than the proceedings themselves.   The concept is that where a party is forced by the Rules to disclose documents in proceedings, it is not right that they can be used then for other purposes against their interests.[23]   In relation to the agreed statement of facts and schedules, it would be contrary to this concept, that where to assist in the resolution of a very complex proceeding parties and non-parties have voluntarily placed a great deal of material on the court file, much of which is not referred to in court, they later find that non-parties may access that material for purposes that have nothing to do with the proceedings.

Conclusion

[49]   In preparing the agreed statement of facts and schedules the parties acted with commendable co-operation.   To give disclosure of that material to Schenker for no apparent good reason would go against the orderly and fair administration of justice.   It would result in a court-forced reversal of the confidential basis of the provision of that information.   Balancing against this the principle that a person should be free to seek and receive court documents, that principle is accorded less

---

[23]   High Court Rules, r 8.30.

weight given the fact that the documents to which access is sought do not deal with loss, which is the claimed matter of interest, and that there are unanswered problems in using the information for the stated purpose of bringing proceedings in respect of that loss out of New Zealand. It is difficult to discern a recognisable and legitimate interest of Schenker in the statement of agreed facts and schedules. So there should be no disclosure of them.

[50]    Although the affidavits and agreed bundle of documents do not to the same extent as the statement of facts and schedules involve the voluntary supply of confidential information, they too contain some confidential information which would have to be redacted. In the absence of good reason to do so, it is wrong to put the parties to that cost and inconvenience.

[51]    The more difficult question is whether the minutes, pleadings, issues lists, opening and closing submissions, and the court transcript should be disclosed. It is relevant that there is a full and unredacted judgment available (except for two minor footnote changes) which sets out the issues and the findings of the Court. All the material sought, including the statement of claim which contains detailed references to personnel, has in it confidential and commercially sensitive material. The oral submissions (which were transcribed) contained confidential information. The cost and inconvenience to parties of redaction is not warranted, given the nature of Schenker's request and the lack of any recognisable and legitimate interest to which I have already referred. The only evidence heard in court was expert evidence as to whether there was a market in New Zealand. This was transcribed, but Schenker can have no interest in that issue which involved largely expressions of opinion.

[52]    I conclude that I should not order access to any of the requested documents.

**Result**

[53]    The application is dismissed.

Costs

[53]   Submissions as to costs can be filed if the parties do not agree.  If this is so, all parties, other than Schenker, are to file their submissions within 14 days and Schenker to file its submissions within a further 14 days.

...................................................
                                                    Asher J

Solicitors/Counsel:
Glaister Ennor, DX CX10236, Auckland 1140.  Email:  paul.collins@glaisterennor.co.nz
Jones Fee, DX CP20539, Auckland 1140.  Email:  Pauline.barratt@jonesfee.com
Meredith Connell (Auckland) for Commerce Commission
Bell Gully (Auckland/Wellington) for Air New Zealand & Singapore Airlines
Chapman Tripp (Auckland) for Japan Airlines
Buddle Findlay (Auckland) for Emirates
Kensington Swan (Auckland) for Malaysian Airlines
Simpson Grierson (Auckland) for Korean Air Lines
Lowndes Associates (Auckland) for Thai Airways
DLA Phillips Fox (Auckland) for Cathay Pacific
BWF Brown QC; MR Dean QC; J A Farmer QC; AR Galbraith QC; TC Weston QC; AW Lear