**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES<br>ANTITRUST LITIGATION<br><br>MDL No. 1775 | 06-MD-1775 (JG) (VVP)<br><br>THIS DOCUMENT RELATES TO:<br>All Actions |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO AUTHORIZE**
**DISTRIBUTION OF THE AIR CARGO 3 SETTLEMENT FUND**

Plaintiffs respectfully submit this memorandum in support of their motion to authorize distribution of funds from the Air Cargo 3 settlements (as defined below) to claimants.

## I.      FACTUAL BACKGROUND

The Court previously authorized distribution of funds from settlements with two different groups of Defendants in this case:  (1) the "Lufthansa" settlement with Defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd.; and (2) the "Air Cargo 2" settlements, with Defendants Cargolux Airlines International, S.A.; All Nippon Airways Co., Ltd.; Thai Airways International Public Company Limited; Qantas Airways Limited; Société Air France, Koninklijke Luchtvaart Maatschappij N.V. and Martinair Holland N.V.; Japan Airlines International Co., Ltd. ("JAL"); American Airlines, Inc. and AMR Corporation; and Scandinavian Airlines System and SAS Cargo Group A/S.  *See* ECF Nos. 1561, 1673, 1680.

Plaintiffs now seek authorization to distribute funds from settlements with a third group of Defendants (the "Air Cargo 3" settlements) which have been granted final approval by the Court:  Lan Airlines, S.A., Lan Cargo, S.A., and Aerolinhas Brasileiras, S.A. (collectively, "Lan/ABSA"); British Airways plc ("British Airways"); South African Airways Ltd. ("South African"); Malaysia Airlines ("Malaysia"); Saudi Arabian Airlines, Ltd ("Saudia"); Emirates; El Al Israel Airlines Ltd. ("El Al"); and Air Canada and AC Cargo LP (collectively, "Air Canada"). *See* ECF No. 1732.  The Garden City Group, ("GCG"), serving as the Court-approved Claims Administrator, has engaged in the complex claims administration process, and the Settlement Fund, minus the deductions set forth in more detail below, is ready to be distributed to Settlement Class members.  *See* Declaration of Jennifer M. Keough Re: Air Cargo 3 Claims Administration, dated August 22, 2013 ("Keough Declaration").

1

II.     **CLAIMS ADMINISTRATION PROCESS**

GCG was charged with various administrative tasks, including:  disseminating notices;

publishing summary notices; receiving and processing claims and requests for exclusion;

responding to class member inquiries; establishing and maintaining a settlement website; and

performing such other duties as may be directed by the Court or the parties.  *Id*. at ¶ 1.  GCG also

conducted the administrative tasks associated with collecting claim forms from claimants

seeking compensation from the Settlement Fund, evaluating and auditing those claim forms, and

ultimately calculating the appropriate allocated amount for each qualified claimant.  *Id*.  The

claims review and audit process was thorough and time consuming.

A.     **Claim Form Deadline and Documentation**

The settlement class definitions for the Air Cargo 2 and Air Cargo 3 settlement classes

are identical.  Therefore, Class members that had filed an approved claim form in connection

with the Air Cargo 2 settlements were not required to submit another claim form for

consideration in connection with the Air Cargo 3 settlements.  *Id.* at ¶ 2.  The deadline for filing

new claims against the Air Cargo 3 settlement fund was July 27, 2012.

The claim form required each claimant to provide information related to the amount of

outbound and inbound purchases of air cargo, among other information.[1]  *Id*. at Ex. 1 (blank

claim form).  Each claimant also had to verify the accuracy of the information provided on the

claim form under penalty of perjury.  *Id.*  While claimants were not initially required to submit

supporting documentation of their air cargo purchases with their claim forms, the claim form

asked each claimant to agree to provide additional supporting information in response to any

---

[1]  For claimants who filed claims in currencies other than the U.S. Dollar ("USD"), the claimed
amount was converted into USD based on the currency exchange rates applicable on September
11, 2006.  *Id*. at ¶ 12.

2

specific GCG request.  Keough Decl. at ¶ 4.  The claim form also contains a section providing

that the signing party certifies under penalty of perjury that, under among other things, there is

documentation to support the claim.  *Id*. at Ex. 1.

###   B.        Deficiency Review and Audit Process

GCG received an additional 513 Air Cargo 3 claims on top of the 2,638 Air Cargo 2

claims it had previously received and reviewed.[2]  *Id*. at ¶ 2.  As it had done with the Air Cargo 2

claim forms, GCG compiled the information provided in the Air Cargo 3 claim forms in its

proprietary database and identified claims that were deficient because they failed to provide

required information.  *Id* at ¶ 3.  The deficiencies included:  missing signature; failure to provide

purchase amount or purchase amount illegible; failure to provide the Defendant from whom

shipping services were purchased; failure to provide currency or currency illegible; and failure to

provide claims preparer contract.  *Id*.  GCG mailed or otherwise communicated to claimants any

identified deficiencies and provided and them an opportunity to cure such deficiencies.  *Id.*  Of

the 96 claimants with deficiencies, 49 did not respond or their deficiencies were not resolved,

and their claims were therefore deemed invalid.  *Id*.

In addition to following up regarding deficient claim forms, GCG also audited all claims

(from both Air Cargo 2 and Air Cargo 3) with an estimated payment value over $50,000 and a

sampling of all other claims.  Keough Decl. at ¶ 4.  This resulted in a group of claims which

represent over 90% of the total inbound and outbound values claimed by class members eligible

for payment.  *Id*.  Many of the claims selected had previously been audited as part of the Air

---

[2]  During the claims administration process, some claimants requested that their claims be withdrawn, and other claims were found to be duplicative.  *Id*. at ¶ 6.  In total, 95 claims were identified as such and were removed from further review and processing.  *Id.*

Cargo 2 audit process and therefore documentation was already on file.[3]  *Id.*  If no

documentation had previously been provided by the claimant or if the documentation on file was

not sufficient, GCG mailed letters to the claimants requesting supporting documentation.  *Id*.

After reviewing the selected claimants' responses, GCG engaged in discussions with claimants,

where necessary.  *Id*.  For claimants who did not respond to the request for supporting

documentation, GCG followed up with reminder phone calls and e-mails providing them with

multiple opportunities to provide supporting documentation.  *Id*.  There were 61 claimants who

failed to respond to these requests or whose audit responses were deemed insufficient.  *Id*.

### C.      Late-Filed Claims

Nine (9) claimants filed claims after the deadline.  *Id*. at ¶ 5.  None of these claims was

received so late as to interfere with the claims administration process.  *Id*.  Therefore, all such

claims were included and treated as timely claims for purposes of the settlement distribution, and

Settlement Class Counsel recommend that they be accepted by the Court.  It is appropriate for

the Court to approve distribution to claimants who filed these late claims, particularly where, as

here, it is equitable to do so.  *See Zients v. LaMorte*, 459 F.2d 628, 629-30 (2d Cir. 1972)

(accepting late claims where made before the distribution of funds); *see also In re Crazy Eddie*

*Sec. Litig*., 906 F. Supp. 840, 843 (E.D.N.Y. 1995) (citing *Zients*, 459 F.2d at 629-30).

### D.      The Settlement Fund

The available Air Cargo 3 settlement funds total $132,030,205.48.

-        Air Canada:  $5,550,205.38;

-        British Airways:  $55,267,927.81;

---

[3]  For the Air Cargo 2 audit, GCG selected a group of claims which represented over 85% of the total inbound and outbound values claimed by Class members claims to audit through a review of supporting documentation.  *See* ECF No. 1668-3 at ¶ 6.

- El Al:  $8,091,499.02 (includes initial deposit and first installment);

- Emirates:  $5,796,634.61;

- Lan/ABSA:  $42,160,713.58;

- Malaysia:  $2,368,119.49;

- Saudia:  $10,360,383.55; and

- South African:  $2,434,722.04.

*Id.* at ¶ 8.  The balances above include earned interest and reflect reductions for the payment of

attorneys' fees and expenses approved by the Court (ECF No. 1732).

However, the settlement funds, which are responsible for payment of their own taxes and

tax-related expenses, have incurred and been invoiced $44,000 for tax preparation services.  *Id.*

at ¶ 9.  In most cases, there were multi-year returns involved, along with quarterly handling and

reporting.  *Id.*  In addition, the invoiced administrative fees and expenses – including publication

of notice, direct mail of notice, and claims administration through the distribution of checks – is

$703,737.73.  *Id.* at ¶ 10. Pursuant to their settlement agreements, British Airways, South

African, Malaysian, and LAN have agreed to pay certain notice and administration costs and are

responsible for a total of $686,600.86 towards these fees and expenses.  *Id.*  Therefore, the

remaining amount of administrative fees and expenses to be paid by the Settlement Fund is only

$17,136.87.  *Id.*

The remaining amount of the Settlement Fund, after the above adjustments, is

$131,969,068.61.  *Id.* at ¶ 11.  This amount represents the total amount available for distribution

to claimants, *i.e.*, the Net Settlement Fund.

5

### III.     PROPOSED DISTRIBUTION

The Net Settlement Fund will be allocated in accordance with the Plan of Allocation approved by the Court.  ECF No. 1732.  Under the Plan of Allocation, the Net Settlement Fund shall be distributed to Settlement Class members that submit valid claim forms in proportion to their relevant purchases from defendants of Airfreight Shipping Services.  Shipments into the United States will be valued at 1.625 times the dollar amount of such purchases; purchases of Airfreight Shipping Services for shipments out of the United States will be valued at the dollar amount of such purchases.

GCG has completed the processing of claims in connection with the Air Cargo 3 settlements.  The Net Settlement Fund is now available for distribution to Settlement Class members who have submitted valid claims.  The distribution will be made pursuant to the chart attached as Exhibit 3 to the Keough Declaration, which shows information about each claimant's purchases, identifying claimants by numbers as opposed to names for purposes of confidentiality, and GCG's recommended allocation as determined according to the Plan of Allocation. Additionally, GCG, in consultation with Settlement Class Counsel, recommends that all claimants receive a minimum payment of $5.00, as was done for the Lufthansa and Air Cargo 2 distribution.  *Id.* at ¶ 11.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court authorize distribution of the Net Settlement Funds to Settlement Class members who have submitted valid claims as set forth above and in the Keough Declaration.

Dated:  August 23, 2013                        Respectfully submitted,


By:   _/s/ Robert N. Kaplan_                    By:   _/s/ Michael D. Hausfeld_

Robert N. Kaplan (RK-3100)                     Michael D. Hausfeld
Gregory K. Arenson (GA-2426)                   Hilary K. Scherrer
KAPLAN FOX & KILSHEIMER LLP                    HAUSFELD LLP
850 Third Avenue, 14th Floor                   1700 K Street, N.W., Suite 650
New York, NY  10022                            Washington, DC  20006
(212) 687-1980                                 (202) 540-7200


Gary L. Specks (GS-8767)                       Brent W. Landau
KAPLAN FOX & KILSHEIMER LLP                    HAUSFELD LLP
423 Sumac Road                                 1604 Locust St, 2nd floor
Highland Park, IL 60035                        Philadelphia, PA 19103
(847) 831-1585                                 (215) 985-3270


By:   _/s/ Hollis L. Salzman_                   By:   /s/ _Howard J. Sedran_

Hollis L. Salzman (HS-5994)                    Howard J. Sedran
ROBINS, KAPLAN, MILLER & CIRESI, LLP           Austin B. Cohen
601 Lexington Avenue, Suite 3400               LEVIN, FISHBEIN, SEDRAN
New York, NY  10022                             & BERMAN
(212) 980-7400                                 510 Walnut Street
                                               Philadelphia, PA 19106
                                               (215) 592-1500


*Interim Co-Lead Counsel*