# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION | **Master File 06-MD-1775 (JG) (VVP)** |
| | **ALL CASES** |
| **MDL No. 1775** | |

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of this 28 day of October, 2013 (the "Execution Date"), by and between Korean Air Lines Co., Ltd. ("Settling Defendant") and plaintiff class representatives Benchmark Export Services, FTS International Express, Inc., R.I.M. Logistics, Ltd., Olarte Transport Service, Inc., S.A.T. Sea & Air Transport, Inc. and Volvo Logistics AB (collectively, "Plaintiffs"), both individually and on behalf of a class of persons who purchased Airfreight Shipping Services (as defined below) for shipments to, from or within the United States directly from Settling Defendant or any other Defendant (as defined below) in the Action (as defined below) during the period from and including January 1, 2000, up to and including September 11, 2006.

WHEREAS, Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Class (as defined below);

WHEREAS, Plaintiffs allege that Settling Defendant participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the prices of Airfreight Shipping Services for shipments to, from and within the United States at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Settling Defendant vigorously denies Plaintiffs' allegations and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and Settling Defendant agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission by or evidence against Settling Defendant or any of its alleged co-conspirators or evidence of the truth of any of the Plaintiffs' allegations;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for Settling Defendant, and this Agreement has been reached as a result of those negotiations;

WHEREAS, following disclosure of significant information about Settling Defendant's financial position, Settlement Class Counsel have concluded that there are issues as to Settling Defendant's ability to pay more than the Settlement Amount (as defined below);

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Settling Defendant according to the terms set forth below is in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, the Action will continue against Defendants that are not Released Parties (as defined below);

WHEREAS, Settling Defendant, despite its belief and assertion that it is not liable and that it has good and conclusive defenses to the claims alleged, has nevertheless agreed to enter into this Agreement to avoid the expense, inconvenience, and the distraction of potentially burdensome and protracted litigation;

WHEREAS, Plaintiffs recognize the benefits of Settling Defendant's cooperation and recognize that, because of joint and several liability, this Agreement with Settling Defendant

2

does not impair Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled in this Action; and

WHEREAS, Settling Defendant has agreed to cooperate with Plaintiffs as set forth in this Agreement, and, therefore, will reduce Plaintiffs' burden and expense associated with prosecuting the Action.

NOW, THEREFORE, in consideration of the mutual promises, covenants, agreements and releases set forth herein and for other good and valuable consideration, and incorporating the above recitals herein, it is agreed by and among the undersigned that claims that have been or could be asserted in the Action be settled and compromised as to Settling Defendant and all other Released Parties, without costs as to Plaintiffs, the Settlement Class, or Settling Defendant, subject to the approval of the Court (as defined below), on the following terms and conditions.

## A. Definitions

The following terms, as used in this Agreement have the following meanings:

1.  "Action" means the action captioned *In re Air Cargo Shipping Services Antitrust Litigation*, 06-MD-1775 (JG)(VVP) (E.D.N.Y.), which is currently pending in the United States District Court for the Eastern District of New York, and all actions filed in or transferred to the Eastern District of New York for consolidation and/or coordination with the above-captioned multidistrict litigation, specifically including the actions captioned *Benchmark Export Services et al. v. AMR Corporation and American Airlines, Inc.*, Case No. 10-CV-3398 (JG) (VVP) (E.D.N.Y.), *Benchmark Export Services et al. v. China Airlines Ltd.*, Case No. 10-CV-0639 (JG) (VVP) (E.D.N.Y.), *Benchmark Export Services et al. v. McCaffrey*, Case No. 10-CV-10253-NMG (D. Mass.), *Benchmark Export Services et al. v. De Jong*, Case No. 2:10-CV-00007-TB (E.D.N.C.), and *Benchmark Export Services et al. v. Sanfilippo*, Case No. 10-CV-01374 JG-VVP

3

(E.D.N.Y.), all actions pending such transfer (including but not limited to "tag-along" actions) and all actions that may be transferred in the future, or are otherwise based on the conduct alleged in the above-captioned multidistrict litigation.

2.     "Airfreight Shipping Services" means paid private air transport of freight or other cargo by any airline acting as a provider of such services.

3.     "Claims" shall mean any and all actions, suits, claims, rights, demands, assertions, allegations, causes of action, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, debts, liabilities, judgments, or remedies, whether equitable or legal, resulting from a direct purchase of Airfreight Shipping Services.

4.     "Claims Administrator" means a third party retained by the Plaintiffs to manage and administer the process by which Settlement Class members are notified of and paid pursuant to this Agreement, all consistent with this Agreement and any order by the Court.

5.     "Class Member" means each member of the Settlement Class who does not timely and validly elect to be excluded from the Settlement Class.

6.     "Class Period" means the period from and including January 1, 2000, up to and including September 11, 2006.

7.     "Court" means the United States District Court for the Eastern District of New York.

8.     "Defendant" means any party named as a defendant in the First Consolidated Amended Complaint in *In re Air Cargo Shipping Services Antitrust Litigation*, 06-MD-1775 (JG)(VVP) (E.D.N.Y.) or otherwise named as a defendant in the Action at any time up to and including the Preliminary Approval Date (as defined below).

9.      "Distribution Date" means the date of initial distribution to Class Members from the Escrow Account (as defined below) which Settlement Class Counsel presently estimate will occur in approximately late 2014, not including any subsequent distribution of funds required as a result of the operation of Paragraph 52, or because of unclaimed funds or other residual amounts, or as a result of the Settlement Amount being paid in installments pursuant to Paragraph 41.

10.      "Effective Date" means the first date by which all of the following have occurred: (a) the Court has entered a final judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered a final judgment dismissing the Action as against any Released Party who is a Defendant with prejudice as to all Class Members and without costs; and (c) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

11.      "Escrow Account" is the account referenced in Paragraph 41 created to maintain the Settlement Fund (as defined below) established pursuant to the terms and conditions set forth in an escrow agreement to be entered into with Citibank N.A., as Escrow Agent (as defined below), subject to the approval of Plaintiffs and Settling Defendant.

12.      "Escrow Agent" means the third party responsible for managing and administering the Escrow Account and the Opt-Out Escrow Account in accordance with this

Agreement, any agreement establishing the Escrow Account or the Opt-Out Escrow Account, and any other order by the Court.

13. "Opt-Out Escrow Account" is the account referenced in Paragraph 52(a) created to maintain that portion of the Settlement Fund associated with Opt-Out Sales (as defined below).

14. "Opt-Out Plaintiff" means a person, otherwise qualifying as a member of the Settlement Class, that has timely and validly elected to be excluded from the Settlement Class.

15. "Opt-Out Ratio" means the U.S. dollar amount of all Opt-Out Sales (as defined below) divided by the total U.S. dollar amount of all direct sales of Airfreight Shipping Services by Settling Defendant to the Settlement Class during the period from January 1, 2000 through September 11, 2006.

16. "Opt-Out Retention Period" means the period of time from when the funds are first deposited in the Opt-Out Escrow Account, as set out in Paragraph 52(a), up to and including one year after the Distribution Date.

17. "Opt-Out Sales" means the U.S. dollar amount of purchases of Airfreight Shipping Services to, from and within the United States by an Opt-Out Plaintiff directly from Settling Defendant during the period from January 1, 2000 through September 11, 2006 if such data is reasonably available or during some other period as agreed by the Parties.

18. "Preliminary Approval Date" means the date on which the Court enters an order granting preliminary approval of this Agreement.

19. "Proof of Payment" means a written statement that Settling Defendant has paid, or provided other valuable consideration to, an Opt-Out Plaintiff in resolution of its claim, either by settlement or judgment, and the value of such payment or consideration. Settling Defendant

6

will provide Settlement Class Counsel with information sufficient to verify the value of such payment or consideration. Any disputes as to the value of such payment or consideration shall be submitted to arbitration for a final resolution pursuant to Paragraph 65 of this Agreement.

20. "Provisional Opt-Out Reduction" means the U.S. dollar amount reduction in the Settlement Amount (as defined below), determined by multiplying the Settlement Amount by the Opt-Out Ratio.

21. "Released Claims" shall refer to the claims described in Paragraph 38 of this Agreement.

22. "Released Parties" shall refer jointly and severally, individually and collectively, to Settling Defendant, its predecessors, successors, past and present parents, subsidiaries, affiliates, divisions, and departments, and each of their respective past and present officers, directors, employees, agents, attorneys, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. Notwithstanding any part of the foregoing, however, for purposes of this Agreement, "Released Parties" does not include any Defendant other than the Settling Defendant. As used in this definition, "affiliates" means entities controlling, controlled by or under common control with any of the Released Parties.

23. "Releasing Parties" shall refer jointly and severally, and individually and collectively, to the Plaintiffs, the Class Members, their predecessors, successors, past and present parents, subsidiaries, affiliates, divisions, and departments, and each of their respective past and present officers, directors, employees, agents, attorneys, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns or transferees, immediate

7

and remote, of each of the foregoing.  As used in this definition, "affiliates" means entities controlling, controlled by, or under common control with, any of the Releasing Parties.

24.     "Settlement Amount" means $115,000,000 in United States currency.

25.     "Settlement Class" means, for purposes of settlement under this Agreement, all persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

26.     "Settlement Class Counsel" shall refer to the law firms of Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, 14th Floor, New York, NY 10022; Robins, Kaplan, Miller & Ciresi LLP, 601 Lexington Avenue, Suite 3400, New York, NY 10022-4611; and Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Philadelphia, PA 19106.

27.     "Settlement Fund" shall be the amount paid by Settling Defendant in settlement of the Action pursuant to Paragraph 41 of this Agreement and any income earned on amounts in the fund.

28.     "Settlement Hearing" has the meaning attributed to it in Paragraph 35.

29.     "Settling Defendant's Counsel" shall refer to the law firm of Paul Hastings LLP, 75 East 55th Street, New York, NY 10022 or any firm later retained by Settling Defendant to represent it in this Action.

**B.**   **Stipulation to Settlement Class Certification**

30.   The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the following Settlement Class shall be certified for settlement purposes as to Settling Defendant:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

**C.**   **Approval of this Agreement, Notice, and Dismissal of Claims**

31.   Plaintiffs and Settling Defendant shall use all reasonable efforts to effectuate this Agreement, including cooperating in Plaintiffs' effort to obtain the Court's approval of procedures (including the giving of class notice under Rules 23(c) and 23(e) of the Federal Rules of Civil Procedure) and to secure certification of the Settlement Class for settlement purposes and the prompt, complete, and final dismissal with prejudice of the Action as to Settling Defendant.

32.   Promptly after the Execution Date of this Agreement, Plaintiffs shall submit to the Court a motion for preliminary approval of the settlement. The motion shall include the proposed form of an order preliminarily approving this Agreement, the text of which shall be agreed upon by Plaintiffs and Settling Defendant before submission of the motion.

33.   Plaintiffs may, as practicable, combine dissemination of notice of this Agreement and the proposed certification of the Settlement Class for settlement purposes with notice of other settlement agreements reached with other Defendants. The text of the notice shall be

9

agreed upon by Plaintiffs and Settling Defendant before submission of the notice to the Court for approval.

34.    Settling Defendant shall notify federal and state officials of this settlement as specified in 28 U.S.C. §§ 1715(a) & (b).

35.    Notice to the Settlement Class shall be given as follows, or as otherwise deemed sufficient by the Court:

(a)    After preliminary approval of this Agreement and submission to the Court of the proposed forms of mail and publication notice, Settlement Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, provide those members of the Settlement Class who have been identified by reasonable means in connection with the prior settlements, with notice by first class mail of the settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed settlement (the "Settlement Hearing").

(b)    After preliminary approval of this Agreement and submission to the Court of the proposed forms of mail and publication notice, Settlement Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, cause a summary notice of the settlement and the Settlement Hearing to be published one time in the national and international editions of *The Wall Street Journal* and in each of the publications identified in Paragraph 3 of Judge Gleeson's Court Order dated October 21, 2010 (Air Cargo World (U.S. only); Air Cargo Week; Cargonews Asia; International Transport Journal; American Shipper; Airport Press; American Journal of Transportation; Inbound Logistics; Logistics Management; and Air Transport World), unless publication in any of the proposed publications is impracticable, in which case notice will be published in substitute publications as deemed appropriate by the Claims Administrator.

36.    Plaintiffs shall seek entry of an order and a final judgment, the text of which shall be agreed upon by Plaintiffs and Settling Defendant before submission to the Court:

(a)    approving this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation according to its terms;

(b)    reserving to the Court exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

(c)     requiring Settlement Class Counsel to file with the Clerk of the Court a record of potential members of the Settlement Class who timely and validly excluded themselves from the Settlement Class, and to provide a copy of the record to counsel for Settling Defendant; and

(d)     dismissing the Action with prejudice as to the Released Parties.

37.     This Agreement shall become final only upon occurrence of the Effective Date.

## D.     **Release and Discharge**

38.     Upon the occurrence of the Effective Date and in consideration of the payment by Settling Defendant of the Settlement Amount, the Releasing Parties shall be deemed to and do hereby completely, finally and forever release, acquit, and discharge the Released Parties from any and all claims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasing Parties, or any of them, ever had, now has, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against any of the Released Parties, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated or unliquidated, or Claims that have been, could have been, or in the future might be asserted in law or equity, on account of or arising out of or resulting from or in any way related to any conduct regardless of where it occurred at any time prior to the Effective Date concerning the direct purchase from Settling Defendant or any other Defendant of Airfreight Shipping Services to, from or within the United States or concerning the pricing, selling, discounting, or marketing of Airfreight Shipping Services for shipments to, from or within the United States, including without limitation, Claims based in whole or in part on the facts, occurrences, transactions, or

other matters alleged in the Action, or otherwise the subject of the Action (and specifically including, without limitation, Claims in any way related to cargo rates, fuel surcharges, security surcharges, insurance surcharges, United States customs surcharges, war risk surcharges, commissions, incentives, rebates, credits, yields, or any other element of the price of or the compensation related to Airfreight Shipping Services), which arise under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, unjust enrichment, civil conspiracy law, or any other law, code, rule, or regulation of any country or jurisdiction worldwide, including under federal or state law, regardless of legal theory, and regardless of the type or amount of damages claimed. However, nothing herein shall release any claims (a) for negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods or similar claim between any of the Released Parties and any of the Releasing Parties relating to Airfreight Shipping Services and/or (b) made with respect to any indirect purchase of Airfreight Shipping Services.

39.     The Releasing Parties hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Claims.

40.     The release set forth in Paragraph 38 constitutes a waiver of Section 1542 of the California Civil Code and Section 20-7-11 of the South Dakota Codified Laws, each of which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor, and a waiver of any similar, comparable, or equivalent provisions, statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction. The Releasing Parties acknowledge that they are aware that they may

hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release and settle fully, finally, and forever any and all claims released in Paragraph 38, and in furtherance of such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts. The parties acknowledge that the foregoing waiver was separately bargained for and is a key and integral element of the Agreement of which the release is a part.

**E.** **Payments**

41. Settling Defendant shall pay or cause to be paid the Settlement Amount of $115 million by wire transfer into the Escrow Account and administered in accordance with the provisions of this Agreement in the manner set forth below:

(a) Settling Defendant shall pay $50 million of the Settlement Amount on or before January 15, 2014.

(b) Settling Defendant shall pay $40 million of the Settlement Amount on or before January 15, 2015.

(c) Settling Defendant shall pay $25 million of the Settlement Amount on or before January 15, 2016.

(d) In the event that Settling Defendant fails to make any of the payments when due and fails to cure such default within fifteen (15) business days, then the entire unpaid balance of the Settlement Amount shall be accelerated and become due and payable immediately. In addition to such acceleration, interest shall be added to the entire remaining balance, calculated at the Federal Funds Rate plus 500 basis points, and running from the Execution Date to the date of payment of the remaining balance.

(e) In addition to the accelerated payments that may be required as set forth in Paragraph 41(d), Settling Defendant may accelerate all or part of any of its payments.

42. From the Settlement Amount, the sum of $250,000 in United States currency may be used for reasonable costs of disseminating notice of this Agreement, including the cost of

13

administration ("Notice and Administration Fund"). Plaintiffs may combine notice of this Agreement with the notice of settlement agreements reached with other Defendants. In the event that Settling Defendant's share of such costs as determined by Settlement Class Counsel is less than $250,000, the remainder shall become part of the Settlement Fund.

43.     Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Fund. Settling Defendant shall not oppose any motion by Settlement Class Counsel seeking approval of payment of attorneys' fees and past and current expenses from the Settlement Fund or any motion by Settlement Class Counsel seeking approval of payment after the Effective Date for future litigation expenses from the Settlement Fund. Settling Defendant shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

**F.     Settlement Fund**

44.     The Settlement Fund is intended by the parties to this Agreement to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties to this Agreement shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of Settling Defendant, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.

45.     To the extent practicable, the Settlement Fund shall be invested in United States Government Treasury obligations or deposited in a federally insured account or United States

14

Treasury Money Market funds in an amount not exceeding $250,000 or the limits of federal insurance, whichever is greater. All income earned on the Settlement Fund shall become and remain part of the Settlement Fund.

46.     Settling Defendant shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution and administration, except as expressly otherwise provided in this Agreement.

47.     Subject to Court approval, Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses and claims including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. Settling Defendant shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court may be paid out of the Settlement Fund.

**G.     Rescission of the Agreement**

48.     If the Court refuses to approve this Agreement or any part hereof, or with respect to court approval if such approval is modified or set aside on or following appeal, remand, or other proceedings, or if the Court does not enter the final judgment provided for in Paragraph 36

of this Agreement, or if the Court enters the final judgment but on or following appeal, remand, or other proceedings, such final judgment is modified or reversed then Settling Defendant and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. A modification or reversal on or following appeal, remand, or other proceedings, of any amount of Settlement Class Counsel's fees and expenses awarded by the Court or any plan of allocation of the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

49.    (a)    Within ten (10) business days of the conclusion of the opt-out period established by the Court, Settlement Class Counsel shall provide to counsel for Settling Defendant a written list of all potential Class members who have exercised their right to request exclusion from the Settlement Class.

(b)    Within twenty (20) business days of Settlement Class Counsel providing the list set out in Paragraph 49(a), Settling Defendant shall provide Settlement Class Counsel with the Opt-Out Sales for each Opt-Out Plaintiff, the total amount of Opt-Out Sales, and the resulting Opt-Out Ratio.

(c)    In the event Plaintiffs dispute Settling Defendant's claimed Opt-Out Sales amount and/or the resulting Opt-Out Ratio, Plaintiffs must notify counsel for Settling Defendant within ten (10) business days from the delivery thereof. Such notification shall include the basis for any dispute and any supporting data or documentation. Settling Defendant shall respond to such notification within ten (10) business days. If, after good faith discussion about the dispute, the parties cannot agree to a resolution, they shall submit the dispute to arbitration for final resolution pursuant to Paragraph 65. Pending such final resolution, there shall be no further disbursements from the Settlement Fund.

16

(d)     In the event that the Opt-Out Ratio, expressed as a percentage, is equal to or greater than the percentage set forth in a separate letter agreement between Settlement Class Counsel and Settling Defendant, then Settling Defendant shall have the right and option, but not the obligation, to rescind the Agreement as set forth in Paragraph 48.  Settling Defendant must notify Settlement Class Counsel in writing within ten (10) business days of the determination of the Opt-Out Ratio relating to all Opt-Out Plaintiffs identified in Paragraph 49(a) (whether upon a failure of Plaintiffs to dispute Settling Defendant's calculation, as set forth in Paragraph 49(c), by agreement of the parties, or pursuant to arbitration) in order to invoke rights to rescind the Agreement.  Settling Defendant shall not be obligated to rescind the Agreement but shall first be obligated to discuss with Plaintiffs in good faith whether the Agreement can be renegotiated rather than rescinded.

50.     In the event that this Agreement is rescinded, any and all amounts then constituting the Settlement Fund and any portions thereof (including all income earned thereon but excluding any taxes already paid on such income and any reasonable expenses that have been paid or incurred associated with providing notice to the Class or administering the Settlement Fund), together with any remaining amounts in the Notice and Administration Fund pursuant to Paragraph 42 hereof, shall be returned forthwith to Settling Defendant.

51.     Settling Defendant and Plaintiffs expressly reserve all of their rights if this Agreement does not become effective or if it is rescinded by Plaintiffs or Settling Defendant pursuant to Paragraphs 48 or 49 of this Agreement.  In addition, if for any reason (including a party's exercise of a valid right to rescind this Agreement), this Agreement does not receive final Court approval, then the certification of the Settlement Class shall become null and void without further Court action, and shall not be used or referred to for any further purpose in the Action or

17

in any other action or proceeding, and shall not prejudice any party in arguing for or against contested class certification in this Action or in any other proceeding.  Further, Plaintiffs and Settling Defendant agree that this Agreement, whether or not it is finally approved and whether or not Settling Defendant or Plaintiffs elect to rescind it under Paragraphs 48 or 49 of this Agreement, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by Settling Defendant or any Defendant, or of the truth of any of the claims or allegations in the Action, or waiver or invalidity of any defense, and evidence thereof shall neither be discoverable nor used directly or indirectly except in a proceeding to enforce or interpret the Agreement.

H.      **Provisional Opt-Out Reduction**

52.     (a)     Within ten (10) business days of the determination of the Opt-Out Ratio (whether upon a failure of Plaintiffs to dispute the Settling Defendant's calculation, as set forth in Paragraph 49(c), by agreement of the parties, or pursuant to arbitration), Plaintiffs and the Settling Defendant shall direct the Escrow Agent to transfer from the Escrow Account into a separately established escrow account for the purpose of effectuating this Paragraph 52 (the "Opt-Out Escrow Account") funds equal to the Provisional Opt-Out Reduction (plus any net income attributable to the amount so calculated).

(b)     Settling Defendant shall provide to Settlement Class Counsel and the Escrow Agent a Proof of Payment upon the resolution by settlement or judgment with any Opt-Out Plaintiff during the Opt-Out Retention Period or the Extended Opt-Out Retention Period (described in Paragraph 52(e)) of any claim that would have been a Released Claim.

(c)     If Settling Defendant provides a Proof of Payment on or before the

18

Distribution Date, then Settling Defendant and Settlement Class Counsel shall, within five (5) business days after Settling Defendant provides the Proof of Payment, jointly instruct the Escrow Agent to earmark for payment to Settling Defendant from the Opt-Out Escrow Account an amount equal to the lesser of either (i) the amount Settling Defendant paid to the Opt-Out Plaintiff as shown in a Proof of Payment or (ii) such Opt-Out Plaintiff's pro rata share of the Opt-Out Escrow Account (plus any net income as may have accrued with respect to such pro rata share), less any attorneys' fee percentage awarded by the Court, in an amount not to exceed twenty (20) percent of such funds, without prejudice to Settlement Class Counsel's right to seek additional payment from any Opt-Out Plaintiff as compensation for creating the Settlement Fund.

(d)     Within ten (10) business days after the Distribution Date, Settling Defendant and Settlement Class Counsel shall jointly instruct the Escrow Agent to pay to Settling Defendant from the Opt-Out Escrow Account all funds earmarked for payment pursuant to Paragraph 52(c) as of the Distribution Date.

(e)     Within ten (10) business days after the Distribution Date, Settling Defendant and Settlement Class Counsel shall jointly instruct the Escrow Agent to promptly transfer all funds remaining in the Opt-Out Escrow Account to the Escrow Account for further distribution as ordered by the Court, except for the pro rata shares of the Opt-Out Escrow Account (plus any net income as may have accrued with respect to such pro rata shares, less any attorneys' fees percentage awarded by the Court, in an amount not to exceed twenty (20) percent of such funds) of those Opt-Out Plaintiffs, if any, who made any written demand or filed lawsuits against the Settling Defendant on or before the Distribution Date asserting any of the Released Claims and whose claims have not been resolved by the conclusion of the Opt-Out Retention

19

Period. With respect to those Opt-Out Plaintiffs, if any, who made any written demand or filed lawsuits against the Settling Defendant on or before the Distribution Date asserting any of the Released Claims and whose claims have not been resolved by the conclusion of the Opt-Out Retention Period, the Opt-Out Retention Period shall be extended for an additional one year, but no longer than thirty (30) months from the date set by the Court as the date by which Settlement Class members must elect whether to remain in the Settlement Class or opt-out (the "Extended Opt-Out Retention Period"). If Settling Defendant provides a Proof of Payment to Settlement Class Counsel during the Extended Opt-Out Retention Period, then within twenty (20) business days after Settling Defendant provides the Proof of Payment, Settling Defendant and Settlement Class Counsel shall jointly instruct the Escrow Agent to pay from the Opt-Out Escrow Account to Settling Defendant an amount equal to the lesser of either (i) the amount Settling Defendant paid to the Opt-Out Plaintiff as shown in a Proof of Payment or (ii) such Opt-Out Plaintiff's pro rata share of the Opt-Out Escrow Account (plus any net income as may have accrued with respect to such pro rata share), less any attorneys' fee percentage awarded by the Court, in an amount not to exceed twenty (20) percent of such funds, without prejudice to Settlement Class Counsel's right to seek additional payment from any Opt-Out Plaintiff as compensation for creating the Settlement Fund. Within ten (10) business days after the conclusion of the Extended Opt-Out Retention Period, Settling Defendant and Settlement Class Counsel shall jointly instruct the Escrow Agent to promptly transfer all funds remaining in the Opt-Out Escrow Account to the Escrow Account for further distribution as ordered by the Court.

(f)     Any dispute regarding the rights and obligations of the parties under this Paragraph 52 that cannot be resolved by agreement of the parties shall be submitted to arbitration for final resolution pursuant to Paragraph 65 of this Agreement.

I.      **Cooperation**

53.     Settling Defendant shall cooperate with Settlement Class Counsel as set forth specifically below.

54.     In connection with the provision of information under this Agreement, Plaintiffs and Settling Defendant agree that Settling Defendant shall have the right to assert the attorney-client privilege, attorney work-product protection, joint defense, or any other protection, privilege, or immunity available under any applicable laws.

55.     To the extent that any of Settling Defendant's documents produced in the Action are authentic and/or business records, including but not limited to evidence of Settling Defendant's sales or costs of Airfreight Shipping Services and/or surcharges related thereto, Settling Defendant agrees to produce, through affidavits or declarations, or, if necessary, through deposition or testimony at trial, representatives qualified to authenticate such documents and information, and, to the extent possible, provide confirmation that such documents and information are business records provided that Settlement Class Counsel agrees to use reasonable efforts to minimize the burden to Settling Defendant of any such authentication or business records testimony.

56.     Settling Defendant agrees that, after the Execution Date, Settling Defendant's Counsel will make themselves available for up to a total of three (3) meetings with Settlement Class Counsel (not to exceed five hours each) to provide information concerning documents, witnesses, meetings, communications, and events not covered by privilege or other protections available under any applicable United States laws, plus reasonable follow-up conversations including, but not limited to, identifying individuals such as current or former employees, who may provide information or potential testimony relevant to the Action.  Notwithstanding any

other provision in this Agreement, Plaintiffs and Settlement Class Counsel agree that they shall

maintain all statements made by Settling Defendant's Counsel under this Paragraph 56 as strictly

confidential; and that they shall not use directly or indirectly the information so received for any

purpose other than the prosecution of the Action. The Parties and their counsel further agree that

any statements made by Settling Defendant's Counsel in connection with and/or as part of this

settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be

discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a

Court. Settlement Class Counsel may use information contained in such statements in the

prosecution of the Action without attributing the source of the information.

57. Upon reasonable notice after the Execution Date, Settling Defendant agrees to use

all reasonable efforts to make available for interviews, depositions and testimony at hearings or

trial, at a location or locations of Settling Defendant's choice (except for testimony at hearings or

trial, which shall be at the United States Courthouse of the United States District Court for the

Eastern District of New York), and at Settling Defendant's expense, a total of four (4) current or

former directors, officers, or employees who are within the control of Settling Defendant and

who Settlement Class Counsel, in consultation with Settling Defendant's Counsel, reasonably

and in good faith believe to have knowledge regarding Plaintiffs' claims as alleged in the Action.

Nothing herein shall require Settling Defendant to pay any expense of Plaintiffs or Settlement

Class Counsel in connection with any interview, deposition or testimony provided for in this

Paragraph 57. Upon request of the witness, Settling Defendant shall provide a mutually

agreeable translator for interviews, depositions and/or testimony to be provided at Settling

Defendant's expense. An "interview" for purposes of this Paragraph 57 shall last no longer than

eight hours, excluding reasonable breaks and, subject to reasonable limitations, may occur on

more than a single day and not more than two days, but shall not include time in preparation for a deposition. Written notice served by Settlement Class Counsel upon Settling Defendant's Counsel shall constitute sufficient service of notice to any person employed by Settling Defendant at the time of such notice of any depositions requested under this Paragraph 57 unless the witness is represented by separate counsel. Depositions shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure, except to the extent prohibited by foreign law, regardless of the location at which they take place or the citizenship of the deponent. Settling Defendant agrees to bear reasonable travel expenses incurred by witnesses pursuant to this Paragraph 57.

58. Settling Defendant's obligations to cooperate shall not be affected by the release set forth in Paragraph 38 of this Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, Settling Defendant's obligations to cooperate under this Agreement shall continue until the date that final judgment has been rendered in the Action with respect to all Defendants.

59. The provisions set forth in this Section I (titled "Cooperation") of this Agreement shall constitute the exclusive means by which Plaintiffs and Settlement Class Counsel may obtain discovery from Settling Defendant or its current and former officers, directors, or employees, whether under the Federal Rules of Civil Procedure or the laws or rules of any other jurisdiction, and Settlement Class Counsel shall pursue no other means of discovery against such parties; provided, however, that this sentence shall not apply to any such former officer, director or employee if employed by or a director of any Defendant other than Settling Defendant. In addition, if any person whose interviews and depositions are subject to this Agreement refuses to

23

cooperate with Settlement Class Counsel, Settlement Class Counsel shall have the discretion to institute process to obtain testimony from such person.

      60.    Settling Defendant and its present and future directors, officers, and employees and members of the Settlement Class and Settlement Class Counsel agree that all disputes, claims, or controversies arising in connection with, pursuant to, or related to the cooperation terms of this Agreement shall be submitted to arbitration for a final resolution pursuant to Paragraph 65 of this Agreement.

**J.**    **Taxes**

      61.    Plaintiffs shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund, and all expenses incurred in connection with filing tax returns, shall be paid from the Settlement Fund. Settling Defendant shall have no responsibility to make any filings relating to the Settlement Fund and shall have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and until the Settlement Fund is returned to Settling Defendant. In the event the Settlement Fund is returned to Settling Defendant because the settlement is not consummated, Settling Defendant shall be responsible for the payment of all taxes on income earned by the Settlement Fund (including any interest or penalties, except to the extent that interest and penalties result from the failure of Plaintiffs to file any necessary tax returns or make

24

tax payments, in which case Plaintiffs shall be responsible for the payment of interest and/or penalties), except to the extent such taxes have been previously paid from the Settlement Fund. Settling Defendant makes no representation to Plaintiffs regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund.

**K.**    **Reservation of Class Members' Rights Against Other Defendants**

62.    All rights of any Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Released Parties are specifically reserved by Plaintiffs and the Class Members. The sales of Airfreight Shipping Services by Settling Defendant shall, to the extent permitted or authorized by law, remain in the Action against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Released Parties.

**L.**    **Miscellaneous**

63.    This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member against any former or current Defendants or alleged co-conspirator or any other person or entity other than the Released Parties.

64.    With the exception of matters expressly declared subject to arbitration in this Agreement, Settling Defendant, Plaintiffs, and each Class Member hereby submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York solely for the purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

65.     Any controversy, claim or dispute arising out of, relating to or in connection with the matters specifically designated to be submitted to arbitration under this Agreement shall be finally determined in arbitration in New York before Eric D. Green of Resolutions, LLC or, if he is not available, such arbitrator upon whom the parties shall mutually agree.  Subject to the award of the arbitrator, the parties participating in an arbitration shall pay an equal share of the arbitrator's fees.  The arbitrator may award recovery of all costs (including administrative fees, arbitrator's fees and court costs, but excluding attorneys' fees) to the prevailing party.  Judgment upon any award rendered may be entered in the United States District Court for the Eastern District of New York.

66.     This Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto with respect to the subject matter of this Agreement.

67.     This Agreement may be modified or amended only by a writing executed by Plaintiffs and Settling Defendant and, after the Preliminary Approval Date, with approval by the Court.

68.     Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party to this Agreement or any Released Party or evidence of any fact or matter in this Action or in any related actions or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement.

69.     Neither Settling Defendant nor Plaintiffs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of

26

interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

70.     This Agreement shall be construed and interpreted to effectuate the intent of the parties which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Parties.

71.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasing Parties, and Released Parties any right or remedy under or by reason of this Agreement.

72.     This Agreement shall be binding upon, and inure to the benefit of, the Releasing Parties and the Released Parties.

73.     If any provision of this Agreement is found by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the remainder of this Agreement will not be affected, and, in lieu of each provision that is found illegal, invalid or unenforceable, a provision will be added as a part of this Agreement that is as similar to the illegal, invalid or unenforceable provision as may be legal, valid and enforceable.

74.     All terms of this Agreement shall be governed and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

75.     Plaintiffs and Settling Defendant recognize the provisions of Paragraph 66(a) of the Settlement Agreement Between Air Cargo Plaintiffs and Defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (the "Lufthansa Settlement Agreement") without conceding that an MFN Refund Amount (as that term is defined in the Lufthansa Settlement Agreement) is due under its terms.

27

76. This Agreement may be executed in counterparts by counsel for Plaintiffs and Settling Defendant, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

77. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of and to execute this Agreement, subject to Court approval.

Michael D. Hausfeld
Brent W. Landau
Hilary K. Scherrer
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

Robert N. Kaplan
Gregory K. Arenson
Gary L. Specks
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7114

Hollis L. Salzman
**ROBINS, KAPLAN, MILLER & CIRESI**
601 Lexington Ave, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499

Howard J. Sedran
Austin B. Cohen
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

*Class Counsel*

28

Barry Sher
Kevin Logue
**PAUL HASTINGS LLP**
75 East 55th Street
New York, NY 10022
Tel: (212) 318-6085
Fax: (212) 230-5185

*Counsel for Korean Air Lines Co., Ltd*

# 106724108

29

76.     This Agreement may be executed in counterparts by counsel for Plaintiffs and Settling Defendant, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

77.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of and to execute this Agreement, subject to Court approval.


Michael D. Hausfeld
Brent W. Landau
Hilary K. Scherrer
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201


Robert N. Kaplan
Gregory K. Arenson
Gary L. Specks
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7114


Hollis L. Salzman
**ROBINS, KAPLAN, MILLER & CIRESI**
601 Lexington Ave, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499


Howard J. Sedran
Austin B. Cohen
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663


*Class Counsel*

28

_____  10/29/13
Barry Sher
Kevin Logue
**PAUL HASTINGS LLP**
75 East 55th Street
New York, NY  10022
Tel: (212) 318-6085
Fax: (212) 230-5185

*Counsel for Korean Air Lines Co., Ltd*

# 106724108