**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION | **Master File 06-MD-1775 (JG) (VVP)** |
| | ALL CASES |
| **MDL No. 1775** | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement") is made and entered into as of this 19th day of December, 2013 (the "Execution Date"), by and between Singapore Airlines Limited and Singapore Airlines Cargo PTE, Ltd. (collectively, "Settling Defendant") and plaintiff class representatives Benchmark Export Services, FTS International Express, Inc., R.I.M. Logistics, Ltd., Olarte Transport Service, Inc., S.A.T. Sea & Air Transport, Inc. and Volvo Logistics AB (collectively, "Plaintiffs"), both individually and on behalf of a class of persons who purchased Airfreight Shipping Services (as defined below) for shipments to, from or within the United States directly from Settling Defendant or any other Defendant (as defined below) in the Action (as defined below) during the period from and including January 1, 2000, up to and including September 11, 2006.

WHEREAS, Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Settlement Class (as defined below);

WHEREAS, Plaintiffs allege that Settling Defendant participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of Airfreight Shipping Services for shipments to, from and within the United States at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Settling Defendant denies Plaintiffs' allegations and has asserted a number of defenses to Plaintiffs' Claims (as defined below);

WHEREAS, Plaintiffs and Settling Defendant agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission by or evidence against Settling Defendant or any of its alleged co-conspirators or evidence of the truth of any of the Plaintiffs' allegations;

WHEREAS, arm's-length settlement negotiations have taken place between Settlement Class Counsel (as defined below) and counsel for Settling Defendant, and this Agreement has been reached as a result of those negotiations;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Settling Defendant according to the terms set forth below is in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, the Action will continue against Defendants that are not Released Parties (as defined below);

WHEREAS, Settling Defendant, despite its belief that it has good defenses to the Claims alleged, has nevertheless agreed to enter into this Agreement to avoid the expense, inconvenience, and the distraction of potentially burdensome and protracted litigation;

WHEREAS, Plaintiffs recognize the benefits of Settling Defendant's cooperation and recognize that, because of joint and several liability, this Agreement with Settling Defendant does not impair Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled in this Action; and

WHEREAS, Settling Defendant has agreed to cooperate with Plaintiffs as set forth in this Agreement, and, therefore, will reduce Plaintiffs' burden and expense associated with prosecuting the Action.

NOW, THEREFORE, in consideration of the mutual promises, covenants, agreements and releases set forth herein and for other good and valuable consideration, and incorporating the above recitals herein, it is agreed by and among the undersigned that claims that have been or could be asserted in the Action be settled and compromised as to Settling Defendant and all other Released Parties, without costs as to Plaintiffs, the Settlement Class, or Settling Defendant, subject to the approval of the Court (as defined below), on the following terms and conditions.

A.      **Definitions**

The following terms, as used in this Agreement have the following meanings:

1.      "Action" means the action captioned *In re Air Cargo Shipping Services Antitrust Litigation*, 06-MD-1775 (JG)(VVP) (E.D.N.Y.), which is currently pending in the United States District Court for the Eastern District of New York, and all actions filed in or transferred to the Eastern District of New York for consolidation and/or coordination with the above-captioned multidistrict litigation, specifically including the actions captioned *Benchmark Export Services et al. v. AMR Corporation and American Airlines, Inc.*, Case No. 10-CV-3398 (JG) (VVP) (E.D.N.Y.), *Benchmark Export Services et al. v. China Airlines Ltd.*, Case No. 10-CV-0639 (JG) (VVP) (E.D.N.Y.), *Benchmark Export Services et al. v. McCaffrey*, Case No. 10-CV-10253-NMG (D. Mass.), *Benchmark Export Services et al. v. De Jong*, Case No. 2:10-CV-00007-TB (E.D.N.C.), and *Benchmark Export Services et al. v. Sanfilippo*, Case No. 10-CV-01374 JG-VVP (E.D.N.Y.), all actions pending such transfer (including but not limited to "tag-along" actions)

and all actions that may be transferred in the future, or are otherwise based on the conduct alleged in the above-captioned multidistrict litigation.

2. "Airfreight Shipping Services" means paid private air transport of freight or other cargo by any airline acting as a provider of such services.

3. "Claims" shall mean any and all actions, suits, claims, rights, demands, assertions, allegations, causes of action, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, debts, liabilities, judgments, or remedies, whether equitable or legal, resulting from a direct purchase of Airfreight Shipping Services.

4. "Claims Administrator" means a third party retained by the Plaintiffs to manage and administer the process by which Settlement Class members are notified of and paid pursuant to this Agreement, all consistent with this Agreement and any order by the Court.

5. "Class Member" means each member of the Settlement Class who does not timely and validly elect to be excluded from the Settlement Class.

6. "Class Period" means the period from and including January 1, 2000, up to and including September 11, 2006.

7. "Combined Notice Fund" means the sum of the funds paid for notice and notice administration costs by Settling Defendant and any other Defendant who enters into a settlement with Plaintiffs, whose settlements are included in the same combined notice to the Settlement Class.

8. "Court" means the United States District Court for the Eastern District of New York.

9. "Defendant" means any party named as a defendant in the First Consolidated Amended Complaint in *In re Air Cargo Shipping Services Antitrust Litigation*, 06-MD-1775

4

(JG)(VVP) (E.D.N.Y.) or otherwise named as a defendant in the Action at any time up to and including the Preliminary Approval Date (as defined below).

10.    "Effective Date" means the first date by which all of the following have occurred: (a) the Court has entered a final judgment approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure; (b) the Court has entered a final judgment dismissing the Action as against any Released Party who is a Defendant with prejudice as to all Class Members and without costs; and (c) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

11.    "Escrow Account" is the account referenced in Paragraph 44 to maintain the Settlement Fund (as defined below) established pursuant to the terms and conditions set forth in an escrow agreement to be entered into with Citibank N.A., as Escrow Agent (as defined below), subject to the approval of Plaintiffs and Settling Defendant.

12.    "Escrow Agent" means the third party responsible for managing and administering the Escrow Account in accordance with this Agreement, any agreement establishing the Escrow Account and any order by the Court.

13.    "Opt-Out Escrow Account" is the account referenced in Paragraph 54 created to maintain that portion of the Settlement Fund associated with Opt-Out Sales (as defined below) other than Pre-Existing Settlement Opt-Out Sales (as defined below).

14. "Opt-Out Plaintiff" means a person, otherwise qualifying as a member of the Settlement Class, that has timely and validly elected to be excluded from the Settlement Class but who has not separately entered into a settlement agreement with Settling Defendant prior to October 7, 2013.

15. "Opt-Out Ratio" means the U.S. dollar amount of all Opt-Out Sales divided by the total dollar amount of all direct sales of Airfreight Shipping Services by Settling Defendant to the Settlement Class during the period from April 1, 2001 through September 11, 2006.

16. "Opt-Out Retention Period" means the period of time set forth in a separate letter agreement between Settlement Class Counsel and Settling Defendant.

17. "Opt-Out Sales" means the U.S. dollar amount of purchases of Airfreight Shipping Services to, from and within the United States by an Opt-Out Plaintiff directly from Settling Defendant during the period from April 1, 2001 through September 11, 2006.

18. "Pre-Existing Settlement Opt-Out Plaintiff" means a person, otherwise qualifying as a member of the Settlement Class that has agreed in principle to settle its claims with Settling Defendant prior to October 7, 2013, that has separately entered into a settlement agreement with Settling Defendant, and that will therefore be excluded from the Settlement Class with respect to this settlement with Settling Defendant (but not with respect to a settlement with any other defendant).

19. "Pre-Existing Settlement Opt-Out Ratio" means the U.S. dollar amount of Pre-Existing Settlement Opt-Out Sales divided by the total dollar amount of direct sales of Airfreight Shipping Services by Settling Defendant to the Settlement Class during the period from April 1, 2001 through September 11, 2006.

20.    "Pre-Existing Settlement Opt-Out Sales" means the U.S. dollar amount of all purchases of Airfreight Shipping Services to, from and within the United States by a Pre-Existing Settlement Opt-Out Plaintiff directly from Settling Defendant during the period from April 1, 2001 through September 11, 2006.

21.    "Pre-Existing Settlement Reduction" means the dollar amount reduction in the Settlement Amount (as defined below), determined by multiplying the Settlement Amount by the Pre-Existing Settlement Opt-Out Ratio, as set forth in a separate letter agreement between Settlement Class Counsel and Settling Defendant.

22.    "Preliminary Approval Date" means the date on which the Court enters an order granting preliminary approval of this Agreement.

23.    "Proof of Payment" means a written statement that Settling Defendant has paid an Opt-Out Plaintiff in resolution of its claim, either by settlement or judgment, and the amount of such payment, or a signed settlement agreement between Settling Defendant and an Opt-Out Plaintiff, requiring Settling Defendant to make a specified payment to the Opt-Out Plaintiff.

24.    "Provisional Opt-Out Reduction" means the dollar amount reduction in the Settlement Amount (as defined below), determined by multiplying the Settlement Amount by the Opt-Out Ratio.

25.    "Released Claims" shall refer to the claims described in Paragraph 41 of this Agreement.

26.    "Released Parties" shall refer jointly and severally, individually and collectively, to Settling Defendant, its predecessors, successors, past and present parents, subsidiaries, affiliates, divisions, and departments, and each of their respective past and present officers, directors, employees, agents, attorneys, servants, and representatives, and the predecessors,

successors, heirs, executors, administrators, and assigns of each of the foregoing. Notwithstanding any part of the foregoing, however, for purposes of this Agreement, "Released Parties" does not include any Defendant other than the Settling Defendant. As used in this definition, "affiliates" means entities controlling, controlled by or under common control with any of the Released Parties.

27.     "Releasing Parties" shall refer jointly and severally, and individually and collectively, to the Plaintiffs, the Settlement Class Members, their predecessors, successors, past and present parents, subsidiaries, affiliates, divisions, and departments, and each of their respective past and present officers, directors, employees, agents, attorneys, servants, and representatives, and the predecessors, successors, heirs, executors, administrators, and assigns or transferees, immediate and remote, of each of the foregoing. As used in this definition, "affiliates" means entities controlling, controlled by, or under common control with, any of the Releasing Parties.

28.     "Settlement Amount" means $92,492,442 in United States currency.

29.     "Settlement Class" means, for purposes of settlement under this Agreement, all persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

30.     "Settlement Class Counsel" shall refer to the law firms of Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; Kaplan Fox & Kilsheimer LLP, 850 Third Avenue, New York, NY 10022; Robins, Kaplan, Miller & Ciresi LLP, 601 Lexington Avenue,

Suite 3400, New York, NY 10022-4611; and Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Philadelphia, PA 19106.

31.     "Settlement Fund" shall be the amount paid by Settling Defendant in settlement of the Action pursuant to Paragraph 44 of this Agreement and any income earned on amounts in the fund.

32.     "Settlement Hearing" has the meaning attributed to it in Paragraph 38.

33.     "Settling Defendant's Counsel" shall refer to the law firm of Latham & Watkins LLP, 555 Eleventh St NW, Washington, DC 20004 or any firm later retained by Settling Defendant to represent it in this Action.

**B.     Stipulation to Settlement Class Certification**

34.     The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied, and, subject to Court approval, the following class shall be certified for settlement purposes as to Settling Defendant:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

**C.     Approval of this Agreement, Notice, and Dismissal of Claims**

35.     Plaintiffs and Settling Defendant shall use all reasonable efforts to effectuate this Agreement, including cooperating in Plaintiffs' effort to obtain the Court's approval of procedures (including the giving of class notice under Rules 23(c) and 23(e) of the Federal Rules of Civil Procedure) and to secure certification of the Settlement Class for settlement purposes

and the prompt, complete, and final dismissal with prejudice of the Action as to Settling Defendant.

36.     Promptly after the Execution Date of this Agreement, Plaintiffs shall submit to the Court a motion for preliminary approval of the settlement.  The motion shall include the proposed form of an order preliminarily approving this Agreement, the text of which shall be agreed upon by Plaintiffs and Settling Defendant before submission of the motion.

37.     Plaintiffs may, as practicable, combine dissemination of notice of this Agreement and the proposed certification of the Settlement Class for settlement purposes with notice of other settlement agreements reached with other Defendants.  The text of the notice shall be agreed upon by Plaintiffs and Settling Defendant before submission of the notice to the Court for approval.

38.     Notice to the Settlement Class shall be given as follows, or as otherwise deemed sufficient by the Court:

(a)     After preliminary approval of this Agreement and after submission and Court approval of the proposed forms of mail and publication notice, Settlement Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, provide those members of the Settlement Class who have been identified by reasonable means in connection with the prior settlements, with notice by first class mail of the settlement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of the proposed settlement (the "Settlement Hearing").

(b)     After preliminary approval of this Agreement and after submission and Court approval of the proposed forms of mail and publication notice, Settlement Class Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure and the Court's order, cause a summary notice of the settlement and the Settlement Hearing to be published one time in the national and international editions of *The Wall Street Journal* and in each of the publications identified in Paragraph 3 of Judge Gleeson's Court Order dated October 21, 2010 (Air Cargo World (U.S. only); Air Cargo Week; Cargonews Asia; International Transport Journal; American Shipper; Airport Press; American Journal of Transportation; Inbound Logistics; Logistics Management; and Air Transport World), unless publication in any of the

proposed publications is impracticable, in which case notice will be published in substitute publications as deemed appropriate by the Claims Administrator.

39.     Plaintiffs shall seek entry of an order and a final judgment, the text of which shall be agreed upon by Plaintiffs and Settling Defendant before submission to the Court:

    (a)     approving this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation according to its terms;

    (b)     reserving to the Court exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

    (c)     requiring Settlement Class Counsel to file with the Clerk of the Court a record of potential members of the Settlement Class who timely and validly excluded themselves from the Settlement Class, and to provide a copy of the record to counsel for Settling Defendant; and

    (d)     dismissing the Action with prejudice as to the Released Parties.

40.     This Agreement shall become final only upon occurrence of the Effective Date.

**D.     Release and Discharge**

41.     Upon the occurrence of the Effective Date and in consideration of the payment by Settling Defendant of the Settlement Amount, the Releasing Parties shall be deemed to and do hereby completely, finally and forever release, acquit, and discharge the Released Parties from any and all claims, counterclaims, demands, actions, potential actions, suits, and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature, including without limitation claims for costs, expenses, penalties, and attorneys' fees, whether class, individual, or otherwise, that the Releasing Parties, or any of them, ever had, now has, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against any of the Released Parties, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, accrued or unaccrued, matured or unmatured, disclosed or undisclosed, apparent or unapparent, liquidated

11

or unliquidated, or claims that have been, could have been, or in the future might be asserted in law or equity, on account of or arising out of or resulting from or in any way related to any conduct regardless of where it occurred at any time prior to the Effective Date concerning the direct purchase from Settling Defendant or any other Defendant of Airfreight Shipping Services to, from or within the United States or concerning the pricing, selling, discounting, or marketing of Airfreight Shipping Services for shipments to, from or within the United States, including without limitation, Claims based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Action, or otherwise the subject of the Action (and specifically including, without limitation, Claims in any way related to cargo rates, fuel surcharges, security surcharges, insurance surcharges, United States customs surcharges, war risk surcharges, commissions, incentives, rebates, credits, yields, or any other element of the price of or the compensation related to Airfreight Shipping Services), which arise under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, unjust enrichment, civil conspiracy law, or any other law, code, rule, or regulation of any country or jurisdiction worldwide, including under federal or state law, regardless of legal theory, and regardless of the type or amount of damages claimed.  However, nothing herein shall release any claims (a) for negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods or similar claim between any of the Released Parties and any of the Releasing Parties relating to Airfreight Shipping Services and/or (b) made with respect to any indirect purchase of Airfreight Shipping Services.

42.     The Releasing Parties hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Released Parties based, in whole or in part, upon any of the Released Claims.

43. The release set forth in Paragraph 41 constitutes a waiver of Section 1542 of the California Civil Code and Section 20-7-11 of the South Dakota Codified Laws, each of which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor, and a waiver of any similar, comparable, or equivalent provisions, statute, regulation, rule, or principle of law or equity of any other state or applicable jurisdiction. The Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release and settle fully, finally, and forever any and all claims released in Paragraph 41, and in furtherance of such intention, this release shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts. The parties acknowledge that the foregoing waiver was separately bargained for and is a key and integral element of the Agreement of which the release is a part.

E.  **Payments**

44. Settling Defendant shall pay or cause to be paid the Settlement Amount, less the Pre-Existing Settlement Reduction, into an Escrow Account established pursuant to the terms and conditions set forth in an escrow agreement to be entered into with Citibank N.A., as Escrow Agent, subject to the approval of Plaintiffs and Settling Defendant. Seventy-five percent (75%) of this payment shall be wire transferred by Settling Defendant or its designee within twenty (20) calendar days after the Execution Date into the Escrow Account; the remaining twenty-five percent (25%) of this payment shall be wire transferred by Settling Defendant or its designee within seventy-five (75) calendar days after the date of the initial payment into the Escrow

13

Account. The Escrow Account shall be administered in accordance with the provisions of this Agreement.

45.    Within twenty (20) calendar days after the Execution Date, Settling Defendant shall also pay or cause to be paid into the Escrow Account the sum of $250,000 in United States currency, to be used for reasonable costs of disseminating notice of this Agreement, including the cost of notice administration.  Plaintiffs may combine notice of this Agreement with the notice of settlement agreements reached with other Defendants, in which case Settling Defendant shall pay a share of the notice and notice administration costs equal to the lesser of a pro-rata share of the Combined Notice Fund (for example, if three Defendants' settlements are included in the notice, one third of the costs) or the ratio of Settling Defendant's payment of $250,000 to the Combined Notice Fund.  In any event, Settling Defendant's payments pursuant to this paragraph shall not exceed $250,000.  In the event that the notice and administration costs specified in this paragraph, or Settling Defendant's share of such costs, is less than $250,000, Settling Defendant shall be refunded the difference no later than 30 calendar days after the settlement funds covered by this paragraph have been distributed to the Settlement Class.

46.    Settlement Class Counsel may at an appropriate time, determined in their sole discretion, submit a motion seeking approval of the payment of attorneys' fees and expenses from the Settlement Fund.  Settling Defendant shall not oppose any motion by Settlement Class Counsel seeking approval of payment of attorneys' fees and past and current expenses from the Settlement Fund or any motion by Settlement Class Counsel seeking approval of payment after the Effective Date for future litigation expenses from the Settlement Fund.  Settling Defendant shall have no obligation to pay any amount of Settlement Class Counsel's attorneys' fees or the costs or expenses of litigation for the Settlement Class.

14

F.      **Settlement Fund**

47.     The Settlement Fund is intended by the parties to this Agreement to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties to this Agreement shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of Settling Defendant, a "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.

48.     To the extent practicable, the Settlement Fund shall be invested in United States Government Treasury obligations or deposited in a federally insured account or United States Treasury Money Market funds in an amount not exceeding $250,000 or the limits of federal insurance, whichever is greater. All income earned on the Settlement Fund or any portion thereof, including but not limited to the Provisional Opt-Out Reduction and the Pre-Existing Settlement Reduction, shall become and remain part of the Settlement Fund or the portion thereof, respectively.

49.     Settling Defendant shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution and administration, except as expressly otherwise provided in this Agreement.

50.     Subject to Court approval, Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses and claims including, but not limited to, attorneys' fees and past, current, or future litigation expenses. Attorneys' fees and

expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely-filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed. Settling Defendant shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court may be paid out of the Settlement Fund.

## G.    Rescission of the Agreement

51.    If the Court refuses to approve this Agreement or any part hereof, or with respect to Court approval if such approval is modified or set aside on or following appeal, remand, or other proceedings, or if the Court does not enter the final judgment provided for in Paragraph 39 of this Agreement, or if the Court enters the final judgment but on or following appeal, remand, or other proceedings, such final judgment is modified or reversed then Settling Defendant and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety and any and all amounts then constituting the Settlement Fund and any portions thereof (including all income earned thereon and excluding any taxes already paid on such income and any reasonable expenses that have been paid or incurred associated with providing notice to the Class or administering the Settlement Fund, to the extent necessary given notice costs borne by other settling Defendants included in the same notice), together with any amounts paid to Settlement Class Counsel pursuant to Paragraph 45 hereof, shall be returned forthwith to Settling Defendant. A modification or reversal on or following appeal, remand, or other proceedings, of

any amount of Settlement Class Counsel's fees and expenses awarded by the Court or any plan of allocation of the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

52.    (a)    Within ten (10) business days of the conclusion of the opt-out period established by the Court, Plaintiffs shall provide Settling Defendant a written list of all potential Class members who have exercised their right to request exclusion from the Settlement Class.

(b)    Within ten (10) business days of Plaintiffs providing the list set out in Paragraph 52(a), Settling Defendant shall provide Settlement Class Counsel with the Opt-Out Sales for each Opt-Out Plaintiff, the total amount of Opt-Out Sales, and the resulting Opt-Out Ratio.

(c)    In the event Plaintiffs dispute Settling Defendant's claimed Opt-Out Sales amount and/or the resulting Opt-Out Ratio, Plaintiffs must notify counsel for Settling Defendant within ten (10) business days from the delivery thereof. Such notification shall include the basis for any dispute and any supporting data or documentation. Settling Defendant shall respond to such notification within ten (10) business days. If, after good faith discussion about the dispute, the parties cannot agree to a resolution, they shall submit the dispute to arbitration for final resolution pursuant to Paragraph 65.

(d)    In the event that the Opt-Out Ratio, expressed as a percentage, is equal to or greater than the percentage set forth in a separate letter agreement between Settlement Class Counsel and Settling Defendant, then Settling Defendant shall have the right and option, but not the obligation, to rescind the Agreement as set forth in Paragraph 51. Settling Defendant must notify Settlement Class Counsel in writing within fifteen (15) business days of providing Settlement Class Counsel with the information set forth in Paragraph 52(b) or, if Plaintiffs

17

dispute Settling Defendant's calculation, as set forth in Paragraph 52(c), within ten (10) business days of the resolution of any such dispute by agreement of the parties or pursuant to arbitration in order to initiate the good-faith discussions set forth in this sub-paragraph regarding the possibility that Settling Defendant would rescind the Agreement. Settling Defendant shall not be obligated to rescind the Agreement; Settling Defendant and Plaintiffs shall first discuss in good faith whether the Agreement can be renegotiated rather than rescinded.

53.     Settling Defendant and Plaintiffs expressly reserve all of their rights if this Agreement does not become effective or if it is rescinded by Plaintiffs or Settling Defendant pursuant to Paragraphs 51 or 52 of this Agreement. In addition, if for any reason (including a party's exercise of a valid right to rescind this Agreement), this Agreement does not receive final Court approval, then the certification of the Settlement Class shall become null and void without further Court action, and shall not be used or referred to for any further purpose in the Action or in any other action or proceeding, and shall not prejudice any party in arguing for or against contested class certification in this Action or in any other proceeding. Further, Plaintiffs and Settling Defendant agree that this Agreement, whether or not it is finally approved and whether or not Settling Defendant or Plaintiffs elect to rescind it under Paragraphs 51 or 52 of this Agreement, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by Settling Defendant or any Defendant, or of the truth of any of the Claims or allegations in the Action, or waiver or invalidity of any defense, and evidence thereof shall neither be discoverable nor used directly or indirectly except in a proceeding to enforce or interpret the Agreement.

**H.**     **Provisional Opt-Out Reduction**

54.     (a)     Within fifteen (15) business days of the determination of the Opt-Out

Ratio relating to all Opt-Out Plaintiffs identified in Paragraph 52 (whether upon a failure of

Plaintiffs to dispute Settling Defendant's calculation, as set forth in Paragraph 52(c), by

agreement of the parties, or pursuant to arbitration), Plaintiffs and Settling Defendant shall direct

the Escrow Agent to transfer from the Escrow Account funds equal to eighty (80) percent of the

Provisional Opt-Out Reduction, plus any net income attributable to the amount so calculated,

into the Opt-Out Escrow Account. The remaining twenty (20) percent of the Provisional Opt-Out

Reduction shall remain in the Escrow Account to be paid to Settlement Class Counsel in

attorneys' fees if so awarded by the Court, without prejudice to Settlement Class Counsel's right

to seek additional payment from any Opt-Out Plaintiff as compensation for creating the

Settlement Fund.

(b)     Settling Defendant shall provide to the Escrow Agent and Settlement

Class Counsel a Proof of Payment upon the resolution by settlement or judgment with any Opt-

Out Plaintiff during the Opt-Out Retention Period of any claim that would have been a Released

Claim.

(c)     For each Proof of Payment submitted by Settling Defendant, Settling

Defendant and Settlement Class Counsel shall, within five (5) business days after submission of

the Proof of Payment, jointly instruct the Escrow Agent to pay from the Opt-Out Escrow

Account an amount equal to the lesser of (i) the amount Settling Defendant paid or agreed to pay

to the Opt-Out Plaintiff as reflected in the Proof of Payment provided by Settling Defendant or

(ii) such Opt-Out Plaintiff's pro rata share of the Opt-Out Escrow Account, plus any net income

as may have accrued with respect to such pro rata share. Upon request by Settling Defendant,

Settlement Class Counsel shall provide its calculation of any Opt-Out Plaintiff's pro-rata share of the Opt-Out Escrow Account, plus any net income that may have accrued with respect to such pro rata share.  Any dispute between Settling Defendant and Settlement Class Counsel with respect to such pro-rata share and/or corresponding amounts that cannot be resolved by agreement of the parties shall be submitted to an agreed upon arbitrator for final resolution pursuant to Paragraph 65 of this Agreement.

(d)     At the conclusion of the Opt-Out Retention Period, Settling Defendant and Settlement Class Counsel shall jointly instruct the Escrow Agent to promptly transfer all funds remaining in the Opt-Out Escrow Account to the Escrow Account for further distribution as ordered by the Court.

(e)     Any dispute regarding the rights and obligations of the parties under this Paragraph 54 that cannot be resolved by agreement of the parties shall be submitted to an agreed upon arbitrator for final resolution pursuant to Paragraph 65 of this Agreement.

**I.     Cooperation**

55.     Settling Defendant shall cooperate with Settlement Class Counsel as set forth specifically below.

56.     To the extent that any of Settling Defendant's documents produced in the Action are authentic and/or business records, including but not limited to evidence of Settling Defendant's sales or costs of Airfreight Shipping Services and/or surcharges related thereto, Settling Defendant agrees to produce, through affidavits or declarations, or, if necessary, through deposition or testimony at trial, representatives qualified to authenticate such documents and information, and, to the extent possible, provide confirmation that such documents and information are business records provided that Settlement Class Counsel agrees to use reasonable

20

efforts to minimize the burden to Settling Defendant of any such authentication or business records testimony.

57.      Settling Defendant agrees to make available for testimony at trial, at the United States Courthouse of the United States District Court for the Eastern District of New York, up to three (3) current officers and/or employees of Settling Defendant who Settlement Class Counsel reasonably and in good faith believe to have knowledge regarding Plaintiffs' Claims as alleged in the Action. Settling Defendant and Plaintiffs agree to share the cost of reasonable travel expenses incurred by witnesses pursuant to this Paragraph 57. Nothing herein shall require Settling Defendant to pay any expense of Plaintiffs or Settlement Class counsel in connection with any testimony provided for in this Paragraph 57.

58.      Notwithstanding any other provision of this Agreement, Plaintiffs and Settlement Class Counsel agree that any statements made by Settling Defendant's Counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.

59.      Settling Defendant's obligations to cooperate shall not be affected by the release set forth in Paragraph 41 of this Agreement. Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, Settling Defendant's obligations to cooperate under this Agreement shall continue until the date that final judgment has been rendered in the Action with respect to all Defendants.

60.      Settling Defendant and its present and future directors, officers, and employees and members of the Settlement Class and Settlement Class Counsel agree that all disputes, claims, or controversies arising in connection with, pursuant to, or related to the cooperation

terms of this Agreement shall be submitted to arbitration for a final resolution pursuant to Paragraph 65 of this Agreement.

**J.**     **Taxes**

61.     Plaintiffs shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund or any portions thereof and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund or any portions thereof and shall be solely responsible for taking out of the Settlement Fund or any portions thereof, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund or any portions thereof.  All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund or any portions thereof, and all expenses incurred in connection with filing tax returns, shall be paid from the Settlement Fund.  Settling Defendant shall have no responsibility to make any filings relating to the Settlement Fund or any portions thereof and will have no responsibility to pay tax on any income earned by the Settlement Fund or any portions thereof or to pay any taxes on the Settlement Fund or any portions thereof unless the settlement is not consummated and until the Settlement Fund or any portions thereof is returned to Settling Defendant.  In the event the Settlement Fund or any portions thereof are returned to Settling Defendant because the settlement is not consummated, Settling Defendant shall be responsible for the payment of all taxes on income earned by the Settlement Fund (including any interest or penalties, except to the extent that interest and penalties result from the failure of Plaintiffs to file any necessary tax returns or make tax payments, in which case Plaintiffs shall be responsible for the payment of interest and/or penalties), except to the extent such taxes have been previously paid from the Settlement Fund or any portions thereof.  Settling Defendant makes no

22

representation to Plaintiffs regarding the appropriate tax treatment of the Settlement Fund or any portions thereof, income earned on the Settlement Fund or any portions thereof, or any distribution taken from the Settlement Fund or any portions thereof.

**K.**     **Reservation of Class Members' Rights Against Other Defendants**

62.     All rights of any Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than the Released Parties are specifically reserved by Plaintiffs and the Class Members.  The sales of Airfreight Shipping Services by Settling Defendant shall, to the extent permitted or authorized by law, remain in the Action against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Released Parties.

**L.**     **Miscellaneous**

63.     This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member against any former or current Defendants or alleged co-conspirator or any other person or entity other than the Released Parties.

64.     With the exception of matters expressly declared subject to arbitration in this Agreement, Settling Defendant and its present and future directors, officers, and employees, Plaintiffs, and each Class Member hereby submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York solely for the purpose of any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement.

65.     Any controversy, claim or dispute arising out of, relating to or in connection with the matters specifically designated to be submitted to arbitration under this Agreement shall be

23

finally determined in arbitration in New York before Eric D. Green of Resolutions, LLC or, if he is not available, such arbitrator upon whom the parties shall mutually agree. Subject to the award of the arbitrator, the parties participating in an arbitration shall pay an equal share of the arbitrator's fees. The arbitrator may award recovery of all costs (including administrative fees, arbitrator's fees and court costs, but excluding attorneys' fees) to the prevailing party. Judgment upon any award rendered may be entered in the United States District Court for the Eastern District of New York.

66.     This Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and between the parties hereto with respect to the subject matter of this Agreement.

67.     This Agreement may be modified or amended only by a writing executed by Plaintiffs and Settling Defendant and, after the Preliminary Approval Date, with approval by the Court.

68.     Neither this Agreement nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party to this Agreement or any Released Party or evidence of any fact or matter in this Action or in any related actions or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Agreement.

69.     Neither Settling Defendant nor Plaintiffs shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

70.     This Agreement shall be construed and interpreted to effectuate the intent of the

parties which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Parties.

71.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasing Parties, and Released Parties any right or remedy under or by reason of this Agreement.

72.     This Agreement shall be binding upon, and inure to the benefit of, the Releasing Parties and the Released Parties.

73.     If any provision of this Agreement is found by a court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the remainder of this Agreement will not be affected, and, in lieu of each provision that is found illegal, invalid or unenforceable, a provision will be added as a part of this Agreement that is as similar to the illegal, invalid or unenforceable provision as may be legal, valid and enforceable.

74.     All terms of this Agreement shall be governed and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles.

75.     Plaintiffs and Settling Defendant recognize the provisions of Paragraph 66(a) of the Settlement Agreement Between Air Cargo Plaintiffs and Defendants Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (the "Lufthansa Settlement Agreement") without conceding that an MFN Refund Amount (as that term is defined in the Lufthansa Settlement Agreement) is due under its terms.

76.     This Agreement may be executed in counterparts by counsel for Plaintiffs and Settling Defendant, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

77.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of and to execute this Agreement, subject to Court approval.


Michael D. Hausfeld
Brent W. Landau
Hilary K. Scherrer
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC  20006
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201


Robert N. Kaplan
Gregory K. Arenson
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY  10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7114


Hollis L. Salzman
**ROBINS, KAPLAN, MILLER & CIRESI**
601 Lexington Ave, Suite 3400
New York, NY  10022
Telephone:  (212) 980-7400
Facsimile:  (212) 980-7499


Howard J. Sedran
Austin B. Cohen
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street
Philadelphia, PA  19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663


*Class Counsel*


Margaret M. Zwisler
William R. Sherman
**LATHAM & WATKINS LLP**
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

*Counsel for Singapore Airlines Cargo Pte Ltd.*
*and Singapore Airlines Limited*

26