## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES<br>ANTITRUST LITIGATION<br><br>MDL No. 1775 | Master File 06-MD-1775 (JG) (VVP)<br><br>THIS DOCUMENT RELATES TO:<br>All Actions |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT CATHAY PACIFIC AIRWAYS LIMITED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. iii

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ....................................................................................................... 1

   A. The Litigation ........................................................................................................ 1

   B. Settlement Negotiations ........................................................................................ 5

   C. The Settlement Agreement .................................................................................... 6

      1. The Settlement Class ...................................................................................... 6

      2. The Settlement Fund ...................................................................................... 7

      3. The Cooperation Provisions .......................................................................... 7

         (a) Witnesses ............................................................................................. 7

         (b) Meetings with Counsel ........................................................................ 7

         (c) Documents ............................................................................................ 8

      4. The Release .................................................................................................... 8

      5. Rescission Based on Opt-Outs ...................................................................... 9

III. ARGUMENT ........................................................................................................... 10

   A. The Settlement of Complex Litigation Is Favored .............................................. 10

   B. The Proposed Settlement Exceeds the Standards for Preliminary Approval ............. 11

      1. The Proposed Settlement Is the Result of Arm's Length Negotiations Conducted by Highly Experienced Counsel ............................... 13

      2. The Proposed Settlement Falls Within the Range of Possible Approval. ........................................................................................................ 14

   C. The Proposed Settlement Class Should Be Certified Pursuant to Rule 23 ................. 16

      1. The Proposed Settlement Class Meets the Requirements of Rule 23(a) ........................................................................................................ 17

      a.    The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court ................................................................................................ 17

      b.    Plaintiffs and the Settlement Class Share Common Legal and Factual Questions. ........................................................... 18

      c.    Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class. ....................................... 19

      d.    Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. ................................................................................... 20

    2.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ................................................................... 22

      a.    Common Questions of Law and Fact Predominate. ............... 22

      b.    A Class Action Is the Superior Method to Adjudicate These Claims ......................................................................... 23

  D.  Notice to the Class ................................................................................ 24

IV.    PRELIMINARY APPROVAL ORDER ........................................................ 24

V.    CONCLUSION ............................................................................................... 25

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  240 F.R.D. 56 (E.D.N.Y. 2006) .............................................................................13, 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ................................... *passim*

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-01775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ...............................10, 13, 14

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-md-01775, 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2011) ..................................13

*In re Alcoholic Beverages Litig.*,
  95 F.R.D. 321 (E.D.N.Y. 1982) .............................................................................20

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................................................22, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................2

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001) .................................................................................11

*Barone v. Safway Steel Prods., Inc.*,
  No. CV-03-4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005)...........................22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................2

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ...................................................................10, 12

*In re Buspirone Patent Litig.*,
  210 F.R.D. 43 (S.D.N.Y. 2002) ............................................................................23

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995)........................................................................15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..................................................................................12, 16

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ..........................................11

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)..................................................................................21

*Edge v. C. Tech Collections, Inc.*,
203 F.R.D. 85 (E.D.N.Y. 2001) ..............................................................................17

*Fox v. Cheminova, Inc.*,
213 F.R.D. 113 (E.D.N.Y. 2003) .........................................................................21, 24

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... *passim*

*Gross v. Wash. Mut. Bank, F.A.*,
02 CV 4135, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) ....................................................17

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ..............................................................................14

*In re Joint E. & S. Dists. Asbestos Litig.*,
878 F. Supp. 473 (E.D.N.Y. 1995) ...........................................................................13

*Kapps v. Wing*,
283 F. Supp. 2d 866 (E.D.N.Y. 2003) ........................................................................21

*Larsen v. JBC Legal Group, P.C.*,
235 F.R.D. 191 (E.D.N.Y. 2006) .............................................................................22

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ..........................................12

*Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*,
938 F. Supp. 1131 (E.D.N.Y. 1996) ..........................................................................16

*In re MetLife Demutualization Litig.*,
229 F.R.D. 369 (E.D.N.Y. 2005)..............................................................................21

*In re Mutual Funds Inv. Litig.*,
   No. 04-md-15861, 2010 WL 2342413 (D.Md. May 19, 2010) ................................................9

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................1, 11, 12, 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................13, 15

*In re Nig. Charter Flights Contract Litig.*,
   233 F.R.D. 297 (E.D.N.Y. 2006) ...................................................................23

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................13

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) ....................................................20, 23, 24

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................18, 20

*In re Sterling Foster & Co. Sec. Litig.*,
   238 F. Supp. 2d 480 (E.D.N.Y. 2002) ...........................................................13

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ............................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001).........................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...............................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..........................................................................11

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)..........................................................................16

## FEDERAL STATUTES

15 U.S.C. § 1 ...........................................................................................2

Fed. R. Civ. P. 23 *et seq.*........................................................................ *passim*

**MISCELLANEOUS**

*Manual For Complex Litigation* (Third) (1995) ............................................................................12

*Manual For Complex Litigation* (Fourth) (2004) ......................................................................11

## I.      INTRODUCTION

Plaintiffs have negotiated a settlement with Cathay Pacific Airways Limited ("Cathay") in the amount of $65,000,000.00 (the "Settlement Amount"), of which up to $150,000.00 may be used to pay notice costs.  In addition, Cathay has agreed to provide cooperation with respect to witnesses, documents and meetings with counsel, which will aid Plaintiffs in the litigation against non-settling Defendants.  This is not a cookie cutter settlement.  The Settlement Amount was agreed to years after the first settlement discussions took place and the other terms were negotiated for months.  Among other things, there is no opt-out reduction in this settlement, so there will be no reduction of the Settlement Amount.

Plaintiffs seek preliminary approval of this settlement under Federal Rule of Civil Procedure 23(e), because it is an excellent result for the proposed settlement class (the "Settlement Class").  At the preliminary approval stage, the Court only determines if, on its face, the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard" or, put another way, to make sure that the settlement is within the range of possible approval.  *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*").

As detailed below, the settlement is well within the range of possible approval and should be preliminarily approved by this Court under Rule 23(e).

## II.     BACKGROUND

### A.      The Litigation

This litigation began in early 2006, when Plaintiffs filed over ninety complaints individually and on behalf of various classes of persons and entities who purchased, either directly or indirectly, Airfreight Shipping Services from Cathay and/or the other airfreight

carriers named as Defendants. The First Consolidated Amended Complaint filed in February 2007 named more than two dozen Defendant air carriers. Plaintiffs alleged that Defendants conspired to unlawfully fix prices of Airfreight Shipping Services worldwide, including on cargo shipments to, from and within the United States, by, among other things, concertedly levying agreed-upon, artificially inflated surcharges thereon, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Additional Defendants were named in Complaints filed on February 12, 2010 and July 26, 2010. *See* Civil Action No. 10-CV-0639, ECF No. 1; Civil Action No. 10-CV-3398, ECF No. 1.

After extensive motion practice directed at the First Consolidated Amended Complaint, on August 21, 2009, the Court adopted the Report and Recommendation of Magistrate Judge Viktor V. Pohorelsky with respect to the dismissal of indirect purchaser claims, dismissal of claims under European law, and the denial of Defendants' motion to dismiss on the grounds that certain Plaintiffs' claims were barred by the Foreign Trade Antitrust Improvements Act of 1982. The Court also ruled that the direct purchaser plaintiffs' Sherman Act claims satisfied the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

On November 18, 2009, the Court entered a Scheduling Order that established a schedule for discovery, including the production of documents that Defendants had previously produced to the United States Department of Justice ("DOJ") in connection with its investigation of Airfreight Shipping Services. Under the Scheduling Order, Defendants, for the most part, began producing documents in December 2009. The parties have proceeded with discovery, including the taking of depositions. On October 28, 2011, Plaintiffs filed their Motion and Memorandum of Law in Support of Their Motion for Class Certification and Appointment of Class Counsel, as

2

well as expert and other declarations in support thereof.  *See* ECF Nos. 1599 -1605 (filed under seal).  On May 25, 2012, Defendants filed their oppositions to Plaintiffs' motion for class certification, as well as expert and other declarations in support thereof.  *See* ECF Nos. 1682-91 (filed under seal).  On October 5, 2012, Plaintiffs filed their replies in support of their motion for class certification.  *See* ECF Nos. 1753-58 (filed under seal).  The parties retained multiple experts relating to class certification, all of whom were deposed on one or more occasions.  On April 22 and 23, 2013, Defendants filed sur-reply papers in further opposition to Plaintiffs' motion for class certification.  *See* ECF Nos. 1842-49 (filed under seal).  On April 22, 2013, Plaintiffs filed motions to exclude the testimony of Defendants' consultants.  *See* ECF Nos. 1838-41 (filed under seal).  Defendants opposed the motions on July 22, 2013 (ECF Nos. 1882-86), and Plaintiffs filed reply papers on September 11, 2013 (ECF Nos. 1902-05).  During the period October 29-31, 2013, a three-day evidentiary hearing, including 20 hours of expert testimony was held before Magistrate Judge Pohorelsky and on November 25, 2013, closing arguments were held with respect to the class certification motion and plaintiffs' Daubert motions.  Those motions are still pending.

To date, the Court has granted final approval to 18 settlements: (1) Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (collectively "Lufthansa"): $85 million, plus the cost of providing notice to the class and substantial cooperation (final approval granted September 25, 2009 (ECF No. 963)) (unlike subsequent settlements, which include payments only to direct purchasers, the Lufthansa settlement included payments both to direct and indirect purchasers); (2) Société Air France ("Air France"), Koninklijke Luchtvaart Maatschappij N.V. ("KLM"), and Martinair Holland N.V. ("Martinair") (collectively "Air France/KLM"): $87 million, plus notice costs up to $500,000 and substantial cooperation (final

approval granted March 14, 2011 (ECF No. 1414)); (3) JAL: $12 million, plus substantial cooperation (final approval granted March 14, 2011 (ECF No. 1417)); (4) AMR Corporation and American Airlines, Inc. (collectively, "AA"): $5 million, plus the cost of providing notice to the class and substantial cooperation (final approval granted March 14, 2011 (ECF No. 1413)); (5) Scandinavian Airlines System and SAS Cargo Group A/S (collectively, "SAS"): $13.93 million, plus notice costs up to $500,000 and substantial cooperation (final approval granted effective March 17, 2011 (ECF No. 1416));  (6) All Nippon Airways Co., Ltd. ("ANA"): $10.4 million, plus substantial cooperation (final approval granted July 15, 2011 (ECF No. 1524)); (7) Cargolux Airlines International S.A. ("Cargolux"): $35.1 million, plus notice costs of up to $150,000 and substantial cooperation (final approval granted July 15, 2011 (ECF No. 1524)); (8) Thai Airways International Public Company Limited ("Thai"): $3.5 million plus substantial cooperation (final approval granted July 15, 2011 (ECF No. 1524)); (9) Qantas Airways Limited ("Qantas"): $26.5 million, plus notice costs of up to $250,000 and substantial cooperation (final approval granted August 4, 2011 (ECF No. 1524)); (10) LAN Airlines, S.A., LAN Cargo S.A., and Aerolínhas Brasileiras, S.A. ("LAN/ABSA"): $66 million, plus notice costs up to $150,000 and substantial cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (11) British Airways PLC ("BA"): $89.512 million, plus notice costs up to $500,000 and substantial cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (12) Malaysia Airlines ("Malaysia"):  $3.2 million, plus $150,000 toward the cost of notice and settlement administration and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (13) South African Airways ("SAA"): $3.29 million plus $150,000 toward the cost of notice and settlement administration and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (14) Saudi Arabian Airlines, Ltd. ("Saudia"): $14 million and cooperation (final approval granted August 2, 2012

(ECF No. 1732)); (15) Emirates:  $7.833 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (16) El Al Israel Airlines Ltd. ("El Al"):  $15.8 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (17) Air Canada and AC Cargo LP (collectively, "Air Canada"):  $7.5 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); and (18) Salvatore Sanfilippo ("Sanfilippo"), a managerial employee of Defendant Air New Zealand:  cooperation (final approval granted August 2, 2012 (ECF No. 1732)).

In addition, the Court recently granted preliminary approval to two settlements:  (1) Korean Air Lines Co., Ltd.: $115 million, of which $250,000 may be used toward the cost of notice and settlement administration, and cooperation (preliminary approval granted January 29, 2014 (ECF No. 1979)); and (2) Singapore Airlines Limited and Singapore Airlines Cargo PTE, Ltd.: $92,492,442, plus $250,000 toward the cost of notice and settlement administration and cooperation (preliminary approval granted January 29, 2014 (ECF No. 1980)).

### B.  Settlement Negotiations

Plaintiffs and Cathay first engaged in settlement discussions in September 2010 which were followed by a series of meetings during the period November 5, 2010 through June 2011. However, despite these extensive discussions, the parties did not agree to settle.  *See* Declaration of Robert N. Kaplan in Support of Plaintiffs' Motion for Preliminary Approval of Settlement With Defendant Cathay Pacific Airways Ltd., sworn to February 19, 2014 ("Kaplan Decl."), ¶ 2. In early October 2013, settlement discussions started again.   There were dozens of emails and telephone conversations with Cathay's counsel during October and November 2013 and, on December 2, 2013, co-lead counsel met in New York with Cathay's counsel and a top Cathay executive who travelled from Hong Kong.  *Id.*  After dozens of additional telephone conversations and emails, an agreement in principle was reached, which was followed by

extensive negotiations concerning the language and provisions of a settlement agreement, culminating in the signed Settlement Agreement dated February 12, 2014.  *Id.* ¶ 3.  Both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement and the negotiations were non-collusive.  Indeed, the settlement amount is materially higher than the amount offered by Cathay in 2010.  *Id.* ¶ 4.  In connection with these settlement negotiations, Plaintiffs' Co-Lead Counsel were informed of the facts concerning liability and damages issues and the relative strengths and weaknesses of each side's litigation position.  *Id.* ¶ 5.  Counsel for plaintiffs and Cathay signed the Settlement Agreement with an execution date of February 12, 2014.  *Id.* ¶ 6.

**C.**     **The Settlement Agreement**

The Settlement Agreement, attached to the Kaplan Declaration as Exhibit A, includes the following material terms:

**1.**     **The Settlement Class**

The Settlement Agreement defines the Settlement Class as follows:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006 [the "Class Period"].

Settlement Agreement, ¶ 18.[1]

---

[1] As defined in the Settlement Agreement, the term "Defendant" means any party named as a defendant in the First Consolidated Amended Complaint in this Action or named thereafter as a defendant in the Action up to and including the Preliminary Approval Date.  *See* Settlement Agreement, ¶ 7.

### 2.    The Settlement Fund

Pursuant to the terms of the Settlement Agreement, Cathay or its designee will pay the Settlement Amount into an escrow account within 10 business days after execution of the Settlement Agreement.  *Id.* ¶ 34.  All income earned on the Settlement Fund or any portion thereof shall become and remain part of the Settlement Fund or portion thereof, respectively.  *Id.* ¶ 38.  Further, Plaintiffs may use up to $150,000 from the Settlement Fund toward all reasonable costs of disseminating notice of the settlement, including the cost of notice administration (the "Notice Fund").  *Id.* ¶ 35.  Any unused portion of the Notice Fund shall become part of the Settlement Fund.  *Id.*

### 3.    The Cooperation Provisions

Cathay has agreed to provide cooperation to the Settlement Class that will aid in the prosecution of antitrust claims against the remaining Defendants.  The full extent of this cooperation, set forth in more detail in Paragraphs 45 through 51 of the Settlement Agreement, can be summarized as follows:

### (a)    Witnesses

Cathay has agreed to use all reasonable efforts to make available to Settlement Class Counsel for interviews and testimony at trial, without subpoena, up to three (3) current officers and/or employees of Cathay who Settlement Class Counsel, in consultation with counsel for Cathay, reasonably and in good faith believe to have knowledge regarding Plaintiffs' claims in the Action.  *Id.* ¶ 49.

### (b)    Meetings with Counsel

Cathay has agreed to make its counsel available for up to three (3) meetings with Settlement Class Counsel during the period between the Execution Date and twelve (12) months thereafter to provide information concerning documents, witnesses, meetings, communications,

and events not covered by privilege or other protections available under any applicable United

States laws, relevant to the Action. *Id.* ¶ 48.  Cathay has also agreed to make its counsel available

for reasonable follow-up conversations.  *Id.*

### (c)    Documents

Cathay has agreed to produce representatives who are qualified to establish admissibility

into evidence of any information or documents they have provided in this Action, including

authentication of such documents and information and, to the extent possible, confirmation that

such documents and information are business records.  *Id.* ¶ 47.

### 4.    The Release

In exchange for monetary and other consideration paid by Cathay, the released parties

shall be completely released, acquitted, and forever discharged from any and all claims,

demands, actions, potential actions, suits and causes of action, losses, obligations, damages,

matters and issues of any kind or nature whatsoever, and liabilities of any nature on account of or

arising out of or resulting from or related to any conduct regardless of where it occurred at any

time prior to the Effective Date concerning the direct purchase from Cathay or any other

Defendant of Airfreight Shipping Services to, from or within the United States or concerning the

pricing, selling, discounting or marketing of Airfreight Shipping Services for shipments to, from

or within the United States, including without limitation, claims brought or that could have been

brought based in whole or in part on the facts, occurrences, transactions, or other matters alleged

in this Action or otherwise the subject of this Action, which arise under any antitrust, unfair

competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer

protection, unjust enrichment, civil conspiracy law, or any other law (the "Released Claims").[2]

---

[2] The full language of the release provisions is found at ¶¶ 31-33 of the Settlement Agreement.

*Id*. ¶ 31.  However, there is no release of any claims (a) made with respect to any indirect purchase of Airfreight Shipping Services; or (b) for negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods or similar claim between any of the released parties and any of the releasing parties relating to Airfreight Shipping Services.  *Id*.

### 5.      Rescission Based on Opt-Outs

The Settlement Agreement permits Cathay to rescind the agreement based upon the level of opt-outs, but unlike some prior settlements does not provide for any reduction of the Settlement Amount based on opt-outs.  Specifically, if the dollar amount of purchases by Class members who elect to opt-out of the Settlement Class exceeds a threshold amount agreed to separately by the parties, Cathay has the option to rescind the agreement.  *Id*. ¶ 42.  Within ten (10) business days after the day set by the Court as the date by which Settlement Class members must elect whether to remain in the Settlement Class or opt out, Plaintiffs will provide Cathay with a list of all potential Settlement Class members who have opted out.  *Id*. ¶ 42(a).  Within ten (10) business days thereafter, Cathay will provide Plaintiffs with Cathay's sales to each Opt-Out Plaintiff (the "Opt-Out Sales"), the total amount of Opt-Out Sales, and a calculation of the percentage of the Opt-Out Plaintiff's purchases in relation to the purchases of the Settlement Class as a whole from Cathay (the "Opt-Out Ratio").  *Id*. ¶ 42(b).  If the Opt-Out Ratio exceeds the amount agreed to separately by the parties, then Cathay will have the right and option, within ten (10) business days after the date the Opt-Out Ratio is provided or within ten (10) business days after resolution of any dispute as to the Opt-Out Sales or Opt-Out Ratio, to rescind the Settlement Agreement.[3]  *Id*. ¶ 42(d).  Cathay will not be obligated to rescind the Settlement

---

[3]  The Opt-Out Ratio is reflected in a confidential letter between the parties and can be made available to the Court if requested.  *See In re Mut. Funds Inv. Litig.*, No. 04-md-15861, 2010 WL 2342413 (D.Md. May 19, 2010) (side letter reflecting terms of opt-out rescission agreement).  The percentage amount of purchases represented by Opt-Out Plaintiffs that triggers the right of the parties to rescind the agreement

Agreement, but will first be obligated to discuss with Plaintiffs in good faith whether the Settlement Agreement can be re-negotiated rather than rescinded.  *Id*.

## III.   ARGUMENT

### A.   The Settlement of Complex Litigation Is Favored

Plaintiffs and Cathay have reached an agreement that maximizes Plaintiffs' recovery and provides cooperation from Cathay in the prosecution of Plaintiffs' claims against the non-settling Defendants.  Having negotiated for a cash payment from Cathay that – as measured on a percentage basis – is substantial, as well as significant other benefits, Plaintiffs have avoided the potential risks inherent in complex antitrust class action litigation and secured a substantial settlement for the Settlement Class.  Reaching such a positive result at this stage in the litigation only enhances the attractiveness of this settlement.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.").  While reviewing this proposed settlement, the Court should be mindful of the "general public policy favoring settlement." *In re Air Cargo Shipping Servs. Antitrust Litig*., No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (approving the Lufthansa settlement); *see also In re Air Cargo Shipping Servs. Antitrust Litig*., No. 06-md-01775, 2011 WL 2909162, at *3 (E.D.N.Y. July 15, 2011); Report & Recommendation (ECF No. 625) (the "Lufthansa Prel. App. R&R"), at 14; *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354-55

---

is often referred to as a "blow percentage."  The exact blow percentage is not relevant to Class members' decisions as to whether to remain in or exclude themselves from the Settlement Class.  Rather, what is relevant is the amount being paid, the cooperation terms, the release terms, and the fact that the sales by Cathay remain in the case.  Moreover, this Court has granted both preliminary and final approval to prior settlements that had been accompanied by a confidential side letter reflecting the terms of an opt-out recession agreement by the parties.  See e.g., Cargolux Prel. App. Order (ECF No. 1362); Cargolux Final App. Order (ECF No. 1524); El Al Prel. App. Order (ECF No. 1630); El Al Final App. Order (ECF No. 1732).

10

(E.D.N.Y. 2006) (noting that class actions are amenable to settlement "because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation"); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001).

### B.    The Proposed Settlement Exceeds the Standards for Preliminary Approval

When parties to a class action seek to settle, they must proceed before the court in two steps – first, they must seek preliminary approval of the proposed settlement as well as certification of the proposed settlement class and then, should such preliminary approval and class certification be granted, they must provide notice to the settlement class and appear at a fairness hearing after which the court may grant final approval to the settlement.  *See Manual for Complex Litigation* (Fourth) § 21.63 (2004); *NASDAQ I*, 176 F.R.D. at 102.  Because the first step of this process is only "preliminary," the standards for preliminary approval are less exacting than those applied for final approval.  "[A] court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Preliminary approval of a proposed settlement is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval."  *NASDAQ I*, 176 F.R.D. at 102 (emphasis added).

In conducting this inquiry, a court considers both the negotiating process leading up to the settlement and the settlement's substantive terms.  *Global Crossing*, 225 F.R.D. at 455.  A court determines whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *NASDAQ I,* 176 F.R.D. at 102 (citations omitted).  Preliminary approval should be granted "if the settlement is the result of

11

serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys' fees." *In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) (citing *NASDAQ I*, 176 F.R.D. 99, and *Manual for Complex Litigation* (Third) § 30.14 (1995)). In considering preliminary approval, the sole issue is whether the proposed settlement falls within the range of possible approval. *NASDAQ I*, 176 F.R.D. at 102.

The negotiations here were conducted at arm's length by experienced counsel on both sides. *See* Kaplan Decl. ¶¶ 2-5. Plaintiffs' counsel were well-informed of the material facts, and the negotiations were non-collusive. *Id.* ¶ 3. Furthermore, the cooperation to be provided in addition to the substantial cash payment makes this settlement fall well within the range of possible approval. Based upon these facts, preliminary approval is warranted, and, as will be demonstrated in detail at the final fairness hearing, this settlement is a "fair, reasonable, and adequate" settlement of the class claims. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).[4]

---

[4] There are nine relevant factors that courts consider in evaluating a settlement's substantive terms at the time of final approval: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell,* 495 F.2d at 463. As the Court has recognized, there is little to be gained by applying the *Grinnell* factors at the preliminary approval stage. *See Bourlas,* 237 F.R.D. at 355 n.7 ("[I]t is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process."). As a result, they are discussed herein only when they provide a useful guide to assess the settlement's fairness at this stage.

**1.      The Proposed Settlement Is the Result of Arm's Length Negotiations Conducted by Highly Experienced Counsel.**

The process that led to this proposed settlement was fairly conducted by highly-qualified counsel who sought to obtain the best possible result for their clients and the Settlement Class. When counsel engages in an arm's-length negotiation that results in a settlement, courts find that the settlement is entitled to a presumption of fairness.  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair because it was the product of arm's length negotiations between experienced and capable counsel"); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2011 WL 2909162, at *4;  *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement."); *In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.,* 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.,* 878 F. Supp. 473, 567 (E.D.N.Y. 1995).  Furthermore, when the settlement that results from such negotiations is being championed by experienced and informed counsel, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself.  *See Joint E.,* 878 F. Supp. at 567 ("A substantial factor in determining the fairness of a settlement is the opinion of counsel involved in the settlement."  (citations omitted)); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating that "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).  The process that led to this settlement confirms that the initial presumption of fairness is correct.

13

The Court has found that counsel are highly capable and have the requisite qualifications and experience to handle this litigation.  *See* Lufthansa Prel. App. R&R, at 8-9; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2012 WL 3138596, at *4 (E.D.N.Y. Aug. 2, 2012) (incorporating the reasoning and conclusions set forth in the Court's previous opinions approving settlements in this litigation); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2011 WL 2909162, at *6;  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *7. In this case, this settlement was negotiated over several years in a process that involved in-person meetings and many telephone conferences and emails.  *See* Kaplan Decl. ¶¶ 2-5.  Indeed, the Settlement Amount is materially higher than the amount offered by Cathay in 2010.  The discussions were meaningful and informed as Co-Lead Counsel took steps to ensure that they had all of the necessary information to advocate for a fair settlement that served the best interests of the Settlement Class.  *Id.* ¶ 3.  Counsel analyzed and evaluated many contested legal and factual issues posed by the litigation so that adequate demands and accurate evaluation of Cathay's positions could be made.  *See id.*; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *7 (discussing negotiation process arriving at Lufthansa settlement). Thus, Co-Lead Counsel were well-informed of the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated.  *See Global Crossing*, 225 F.R.D. at 458.

### 2.    The Proposed Settlement Falls Within the Range of Possible Approval.

To preliminarily approve this settlement, the court must decide that the proposed settlement falls within the range of settlement that could *possibly* be approved as "fair, adequate and reasonable."  *NASDAQ I*, 176 F.R.D. at 102.  The settlement here contains both a cash

payment and non-cash benefits that will ultimately enhance Plaintiffs' chances of recovery from the remaining non-settling Defendants.  These benefits have been obtained at a stage in the litigation where the non-monetary benefits will be helpful and have avoided much of the risk that is inherent in litigating complex antitrust cases.  *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 118 (S.D.N.Y. 2009); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *9.  Under these circumstances and considering these benefits, the proposed settlement not only falls well within the range of possible approval but also represents an excellent result for members of the Settlement Class.

Continuing this litigation against Cathay would entail a lengthy and highly expensive legal battle, involving complex legal and factual issues where motions would be vigorously contested.  At trial, Cathay would have asserted defenses making the ultimate outcome uncertain for both parties because it would turn on questions of proof, many of which would be the subject of complicated expert opinions, particularly with regard to damages.[5]  *See NASDAQ II*, 187 F.R.D. at 475-76.  Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).  Furthermore, because liability under the Sherman Act is joint and several and Cathay's sales remain in the case, this settlement in no way prejudices the Class's ability to recover its full treble damages caused by the alleged conspiracy.

The Settlement Amount of $65,000,000 represents 3.33% of Cathay's sales of Airfreight Shipping Services to and from the United States to Settlement Class members during the Class Period.  By comparison, Lufthansa paid 1.85% of such sales, Air France/KLM 2.1%, SAS 2.38%, ANA 2.4%, Cargolux 2.7%, Qantas 3.2%, Thai 3.2%, LAN/ABSA 3.23% and British Air

---

[5] Because Co-Lead Counsel will likely have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a full discussion of their potential litigation risks.

3.3%.  Moreover, this settlement does not include an opt-out reduction provision, and therefore the Settlement Amount shall not be reduced based on opt-outs.  While there have been some settlements at higher percentages, those settlements either provided for an opt-out reduction or were for substantially smaller amounts.  Based upon the foregoing, the Settlement Agreement is well within the *possible* range of approval as a "fair, reasonable, and adequate" settlement of the Settlement Class's claims.  *See Grinnell,* 495 F.2d at 463.

### C.   The Proposed Settlement Class Should Be Certified Pursuant to Rule 23

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement.  *See* Lufthansa Prel. App. R&R, at 2-3; *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Global Crossing*, 225 F.R.D. at 451.  A court may grant certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *See* Lufthansa Prel. App. R&R, at 3; *see also Weinberger*, 698 F.2d at 73*; Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F. Supp. 1131, 1140 (E.D.N.Y. 1996).[6]  Here, Plaintiffs seek certification of the following Settlement Class:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006.

---

[6] Cathay reserves the right to challenge class certification in the event the Settlement Agreement is not finally approved by this Court.  Settlement Agreement, ¶ 44.  In addition, the Court's certification of this Settlement Class would be without prejudice to the rights of the non-settling Defendants to contest class certification of the claims asserted against them.

Settlement Agreement, ¶ 23.  This Court previously certified a broader Settlement Class that also included indirect purchasers when it preliminarily and then finally approved the Lufthansa settlement.  *See* Lufthansa Prel. App. R&R, at 3-13.[7]

> 1. **The Proposed Settlement Class Meets the Requirements of Rule 23(a)**
>
> a. ***The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court***

First, Rule 23(a) requires that the class be so numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001).  While no magic number exists for satisfying the numerosity requirement, and Plaintiffs are not required to allege the exact number or identity of class members, "[c]ourts in this circuit generally 'find a class sufficiently numerous when it comprises forty or more members.'"  Lufthansa Prel. App. R&R, at 5 (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002)); *see also Gross v. Wash. Mut. Bank, F.A.,* 02 CV 4135, 2006 WL 318814, at *2 (E.D.N.Y. Feb. 9, 2006) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

Here, the proposed Settlement Class consists of persons and entities who directly purchased Airfreight Shipping Services to, from, or within the United States from the Defendants

---

[7] Moreover, the Court has granted final approval of the Air France/KLM, JAL, AA, SAS, Cargolux, ANA, Thai, Qantas, LAN/ABSA, BA, Malaysia, SAA, Saudia, Emirates, El Al, Air Canada and Sanfilippo settlements, all of which have Settlement Classes identical to the Cathay Settlement Class. The factual and legal support for certification of the Lufthansa settlement class and the settlement classes for the other settlements apply equally here, as set forth below.  *See* Air France/KLM Prel. App. Order ¶ 4 (ECF No. 1254) (same class certified); JAL Prel. App. Order ¶ 4 (ECF No. 1255) (same); AA Prel. App. Order ¶ 4 (ECF No. 1256) (same); SAS Prel. App. Order ¶ 4 (ECF No. 1291) (same); Cargolux Prel. App. Order ¶ 4 (ECF No. 1362) (same); ANA Prel. App. Order ¶ 4 (ECF No. 1363) (same); Qantas Prel. App. Order, ¶ 4 (ECF No. 1381) (same); Thai Prel. App. Order, ¶ 4 (ECF No. 1418) (same); LAN/ABSA Prel. App. Order, ¶ 4 (ECF No. 1568) (same); BA Prel. App. Order, ¶ 4 (ECF No. 1569) (same); Malaysia Prel. App. Order, ¶ 4 (ECF No. 1570) (same); SAA Prel. App. Order, ¶ 4 (ECF No. 1571) (same); Saudia Prel. App. Order, ¶ 4 (ECF No. 1572) (same); Emirates Prel. App. Order, ¶ 4 (ECF No. 1622) (same); El Al Prel. App. Order, ¶ 4 (ECF No. 1630) (same); Air Canada Prel. App. Order, ¶ 4 (ECF No. 1652) (same); Sanfilippo Prel. App. Order, ¶ 4 (ECF No. 1657) (same); Korean Air Prel. App. Order ¶ 4 (ECF No. 1979) (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980) (same).

during the period from January 1, 2000 to September 11, 2006.  Based on the thousands of persons and entities that fall within the Settlement Class definition and the fact that joinder of these persons is impracticable, the numerosity requirement is satisfied here.[8]

> **b.    *Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.***

Second, Rule 23(a) requires the existence of questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2); *see also* Lufthansa Prel. App. R&R, at 6; *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).  Questions are common to the class if class members' claims "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The commonality element "may be found when 'injuries derive from a unitary course of conduct by a single system.'"  Lufthansa Prel. App. R&R, at 6 (quoting *Reade-Alvarez*, 237 F.R.D. at 32).  The commonality element "'does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"  *Global Crossing*, 225 F.R.D. at 451 (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)).

Here, Plaintiffs' allegations raise questions of law and fact common to the proposed Class, including, for example:

---

[8] *See generally* Lufthansa Prel. App. R&R, at 6; Air France/KLM Prel. App. Order ¶ 4 (same class certified); JAL Prel. App. Order ¶ 4 (same); AA Prel. App. Order ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order ¶ 4 (same); ANA Prel. App. Order ¶ 4 (same); Qantas Prel. App. Order ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order ¶ 4 (ECF No. 1979 (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980 (same).

(i)     Whether Defendants engaged in a combination or conspiracy to fix, raise, maintain, or stabilize prices of Airfreight Shipping Services for shipments to, from, or within the United States;

(ii)    The duration of the conspiracy and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

(iii)   The effect of Defendants' alleged conspiracy on the price of Airfreight Shipping Services, and whether the alleged conspiracy caused injury to the business or property of Plaintiffs and the other members of the Class; and

(iv)    Whether the alleged conspiracy violated the antitrust laws.

The overarching allegation in the First Consolidated Amended Complaint is that Defendants have engaged in an illegal cartel designed and intended to fix the prices of Airfreight Shipping Services.  Proof of this unlawful cartel is common to all members of the Class.  *See* Lufthansa Prel. App. R&R, at 6, 7 (finding commonality element met because of allegations regarding massive, global conspiracy to fix prices).[9]

> **c.**     ***Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.***

Third, Rule 23(a) requires typicality of the class representatives' claims.  *See*  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied where, as here, the claims of the representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Settlement Class members, and the claims are based on the same legal theories.  *See*

---

[9]*See also* Air France/KLM Prel. App. Order ¶ 4 (commonality satisfied); JAL Prel. App. Order ¶ 4 (same); AA Prel. App. Order ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order ¶ 4 (same); ANA Prel. App. Order ¶ 4 (same); Qantas Prel. App. Order ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order ¶ 4 (ECF No. 1979 (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980 (same).

*Reade-Alvarez,* 237 F.R.D. at 32; *see also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998); *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982). "Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named plaintiffs and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.'" *Global Crossing,* 225 F.R.D. at 452 (citation omitted).

Here, the claims of the representative Plaintiffs are typical when compared to those held by the other members of the Settlement Class.  Plaintiffs have alleged that the Defendants created and maintained an illegal cartel in the Airfreight Shipping Services industry, which artificially raised the prices of Airfreight Shipping Services.  Such claims of the representative Plaintiffs, like those of the other members of the Settlement Class, arise out of the same alleged illegal anticompetitive conduct by the same Defendants and are based on the same legal theories.[10]

>    **d.    Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.**

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  As the Second Circuit has stated, "adequacy of representation is measured by two standards.  First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class members must not

---

[10] *See* Lufthansa Prel. App. R&R, at 8 (finding typicality element met); *see also* Air France/KLM Prel. App. Order ¶ 4 (finding typicality element satisfied); JAL Prel. App. Order ¶ 4 (same); AA Prel. App. Order ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order ¶ 4 (same); ANA Prel. App. Order ¶ 4 (same); Qantas Prel. App. Order ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same) ; Korean Air Prel. App. Order ¶ 4 (ECF No. 1979 (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980 (same).

have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001); *In re MetLife Demutualization Litig.,* 229 F.R.D. 369, 376 (E.D.N.Y. 2005) (citing *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 130 (E.D.N.Y. 2003)).  Both requirements are satisfied here.  As this Court has already found, Settlement Class Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.  *See* Lufthansa Prel. App. R&R, at 8-9; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. at 57; *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *7. Moreover, in reaching this Settlement Agreement, the interests of the Class members were adequately protected and were not in conflict.  *See Kapps v. Wing*, 283 F. Supp. 2d 866, 873 (E.D.N.Y. 2003), *aff'd in part vacated in part on other grounds,* 404 F.3d 105 (2d Cir. 2005).

All Settlement Class members share an overriding interest in obtaining the largest monetary recovery possible from Cathay.  *See* Lufthansa Prel. App. R&R, at 9-10 (finding class members not antagonistic when discussing preliminary approval of Lufthansa settlement); *see also Global Crossing*, 225 F.R.D. at 453.  The Settlement Class members also share a common interest in obtaining Cathay's cooperation in prosecuting the claims against the non-settling Defendants.[11]

---

[11]*See* Air France/KLM Prel. App. Order ¶ 4 (adequacy satisfied); JAL Prel. App. Order ¶ 4 (same); AA Prel. App. Order ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order ¶ 4 (same); ANA Prel. App. Order ¶ 4 (same); Qantas Prel. App. Order ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order ¶ 4 (ECF No. 1979 (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980 (same).

**2.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).**

Once the four prerequisites of Rule 23(a) are met, as in this case, Plaintiffs must also show that the proposed Settlement Class satisfies one of the requirements of Rule 23(b), in this case Rule 23(b)(3). *See, e.g., Larsen v. JBC Legal Group, P.C.,* 235 F.R.D. 191, 196 (E.D.N.Y. 2006). Under Rule 23(b)(3), Plaintiffs must first demonstrate that "questions of law or fact common to the class predominate over questions affecting individual members." *Barone v. Safway Steel Prods., Inc.*, No. CV-03-4258, 2005 WL 2009882 at *15 (E.D.N.Y. Aug. 23, 2005) (quoting Rule 23(b)(3)). Second, Plaintiffs must show that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

### a.      Common Questions of Law and Fact Predominate.

"'[I]n cases involving allegations of a pure price-fixing conspiracy, common questions of law and fact generally predominate on all issues.'" Lufthansa Prel. App. R&R, at 11 (quoting *Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y.*, 198 F.R.D. 41, 46 (E.D.N.Y. 2000)). Because Plaintiffs' claims allege a single global conspiracy from which all Plaintiffs' injuries arise, issues common to the class members—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants, the impact of Defendants' conspiracy, and the amount of damage suffered by the class as a result of an alleged violation of Section 1 of the Sherman Act—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or

22

violations of the antitrust laws."); *Playmobil*, 35 F. Supp. 2d at 247 (finding predominance where case involved allegations of "pricing structure to regulate prices . . . , to maintain prices at artificially high levels, and to hinder price competition"); *In re Buspirone Patent Litig.,* 210 F.R.D. 43, 58 (S.D.N.Y. 2002) (finding predominance requirement satisfied where "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs" (citing *Amchem*, 521 U.S. at 625)).  Here, the predominance prong is easily satisfied.[12]

> **b.    A Class Action Is the Superior Method to Adjudicate These Claims.**

The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *In re Nig. Charter Flights Contract Litig.,* 233 F.R.D. 297, 301 (E.D.N.Y. 2006).  *See* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination).  The Court needs to consider "'the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.'"  Lufthansa Prel. App. R&R, at 12 (quoting *D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D.N.Y. 1996).  Here, the interests of Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Thousands of persons and entities purchased Airfreight Shipping Services during the Class Period and settling their claims in the context of a class action would conserve both judicial and private resources and

---

[12] *See* Lufthansa Prel. App. R&R, at 12; *see also* Air France/KLM Prel. App. Order ¶ 4 (predominance satisfied); JAL Prel. App. Order ¶ 4 (same); AA Prel. App. Order ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order ¶ 4 (same); ANA Prel. App. Order ¶ 4 (same); Qantas Prel. App. Order ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order ¶ 4 (ECF No. 1979 (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980 (same).

would hasten the class members' recovery.  *See Fox,* 213 F.R.D. at 130 (stating that "the larger the class, the more judicial resources would be saved by proceeding as a class action"); *Playmobil,* 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources").  The superiority requirement is therefore satisfied.[13]

### D.   Notice to the Class

The Court recently granted preliminary approval of two settlements and plaintiffs are in settlement negotiations with at least one additional Defendant and will propose combining notice of the Cathay settlement with the other recent settlements and any other settlement that emerges. For this reason, Plaintiffs have not submitted a form of notice at this time, but they will submit at an appropriate time a proposed form of notice that will include all of the information required by Rule 23 and due process.  *See* Settlement Agreement, ¶ 26.

## IV.   PRELIMINARY APPROVAL ORDER

Plaintiffs respectfully submit that the proposed Settlement Agreement with Cathay falls well within the range of possible approval and that certification of the Settlement Class is appropriate.  Plaintiffs therefore request that the Court:

1.     Preliminarily approve the Settlement Agreement and find that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class as defined in the Settlement Agreement;

---

[13] *See* Lufthansa Prel. App. R&R, at 13; *see also* Air France/KLM Prel. App. Order ¶ 4 (superiority satisfied); JAL Prel. App. Order ¶ 4 (same); AA Prel. App. Order ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order ¶ 4 (same); ANA Prel. App. Order ¶ 4 (same); Qantas Prel. App. Order ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order ¶ 4 (ECF No. 1979 (same) and Singapore Prel. App. Order ¶ 4 (ECF No. 1980 (same).

2.      Certify the Settlement Class, for purposes of settlement only pursuant to Federal

Rule of Civil Procedure 23(c), and authorize Plaintiffs to represent the Settlement

Class;

3.      Order Settlement Class Counsel to disseminate notice to the Settlement Class,

upon submission of proposed notices and approval by the Court of the form of

notice and the notice plan; and

4.      Approve The Garden City Group as Administrator of the Settlement, and

Citibank, N.A. as escrow agent.

## V.      **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary

Approval and certify the Settlement Class.


Dated:  February 19, 2014                         Respectfully Submitted,

Robert N. Kaplan                                   Hollis Salzman
Gregory K. Arenson                                 Meegan Hollywood
KAPLAN FOX & KILSHEIMER LLP                        ROBINS, KAPLAN, MILLER & CIRESI LLP
850 Third Avenue, 14th Floor                       601 Lexington Avenue, Suite 3400
New York, NY 10022                                 New York, NY 10022
(212) 687-1980                                     (212) 980-7400

Gary L. Specks                                     By:     */s/ Hollis Salzman*
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585


By:   */s/ Robert N. Kaplan*

Howard J. Sedran
Austin Cohen
Keith J. Verrier
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500


By:  */s/ Howard J. Sedran*

Michael D. Hausfeld
Brent W. Landau
Hilary K. Scherrer
Melinda Coolidge
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
(202) 540-7200


By:  */s/ Michael D. Hausfeld*