## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | Master File 06-MD-1775 (JG) (VVP) |
| AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION | THIS DOCUMENT RELATES TO: All Actions |
| MDL No. 1775 | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT CHINA AIRLINES, LTD.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... iii

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................. 1

   A.  The Litigation................................................................................................ 1

   B.  Settlement Negotiations ............................................................................... 4

   C.  The Settlement Agreement ........................................................................... 6

      1.   The Settlement Class.............................................................................6

      2.   The Settlement Fund .............................................................................6

      3.   The Cooperation Provisions..................................................................7

         (a)   Witnesses ...................................................................................7

         (b)   Meetings with Counsel ..............................................................7

         (c)   Documents .................................................................................7

      4.   The Release............................................................................................8

      5.   Provisional Opt-Out Reduction.............................................................9

III. ARGUMENT ................................................................................................. 10

   A.  The Settlement of Complex Litigation Is Favored .................................... 10

   B.  The Proposed Settlement Exceeds the Standards for Preliminary Approval.............. 10

      1.   The Proposed Settlement Is the Result of Arm's Length Negotiations Conducted by Highly Experienced Counsel.............................12

      2.   The Proposed Settlement Falls Within the Range of Possible Approval. ...........................................................................................14

   C.  The Proposed Settlement Class Should Be Certified Pursuant to Rule 23 ................ 15

      1.   The Proposed Settlement Class Meets the Requirements of Rule 23(a)............................................................................................17

a.     The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court ................................................................................. 17

b.     Plaintiffs and the Settlement Class Share Common Legal and Factual Questions. ........................................................... 18

c.     Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class. ........................................ 19

d.     Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. ................................................................................. 20

2.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ........................................................................ 21

a.     Common Questions of Law and Fact Predominate. ............... 22

b.     A Class Action Is the Superior Method to Adjudicate These Claims ........................................................................ 23

D.   Notice to the Class ............................................................................... 24

IV.     PRELIMINARY APPROVAL ORDER ........................................................ 24

V.     CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ...............................................................................13, 21

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)................................... *passim*

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-01775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ....................................10, 13

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-01775, 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2011) ..................................................13

*In re Alcoholic Beverages Litig.*,
   95 F.R.D. 321 (E.D.N.Y. 1982) ............................................................................................19

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................2

*Bano v. Union Carbide Corp.*,
   273 F.3d 120 (2d Cir. 2001)...................................................................................................10

*Barone v. Safway Steel Prods., Inc.*,
   No. CV-03-4258, 2005 WL 2009882 (E.D.N.Y. Aug. 23, 2005)...........................................22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................2

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006) ....................................................................................10, 12

*In re Buspirone Patent Litig.*,
   210 F.R.D. 43 (S.D.N.Y. 2002) .............................................................................................22

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995)........................................................................................15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)......................................................................................12, 15

*In re Currency Conversion Fee Antitrust Litig.*,
  No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ..........................................11

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992)...........................................................................................20

*Edge v. C. Tech Collections, Inc.*,
  203 F.R.D. 85 (E.D.N.Y. 2001) ......................................................................................17

*Fox v. Cheminova, Inc.*,
  213 F.R.D. 113 (E.D.N.Y. 2003) ................................................................................20, 23

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... *passim*

*Gross v. Wash. Mut. Bank, F.A.*,
  02 CV 4135, 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006) .......................................................17

*In re Joint E. & S. Dists. Asbestos Litig.*,
  878 F. Supp. 473 (E.D.N.Y. 1995) ..................................................................................13

*Kapps v. Wing*,
  283 F. Supp. 2d 866 (E.D.N.Y. 2003) ..............................................................................21

*Larsen v. JBC Legal Group, P.C.*,
  235 F.R.D. 191 (E.D.N.Y. 2006) .....................................................................................21

*In re Med. X-Ray Film Antitrust Litig.*,
  No. CV 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ..........................................11

*Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*,
  938 F. Supp. 1131 (E.D.N.Y. 1996) ................................................................................16

*In re MetLife Demutualization Litig.*,
  229 F.R.D. 369 (E.D.N.Y. 2005) .....................................................................................20

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................1, 11, 12, 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................13, 15

*In re Nig. Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) .........................................................23

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................13

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ........................................19, 22, 23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) .......................................................18, 19

*In re Sterling Foster & Co. Sec. Litig.*,
    238 F. Supp. 2d 480 (E.D.N.Y. 2002) ..................................................13

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................................................13

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................11

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .............................................................15, 16

## FEDERAL STATUTES

15 U.S.C. § 1 ...........................................................................................2

Fed. R. Civ. P. 23 *et seq.* ............................................................. *passim*

## MISCELLANEOUS

*Manual For Complex Litigation* (Third) (1995) ......................................11

*Manual For Complex Litigation* (Fourth) (2004) ...................................11

## I.      INTRODUCTION

Plaintiffs have negotiated a settlement with China Airlines, Ltd. ("China Air") in the amount of $90,000,000.00 (the "Settlement Amount"), plus an additional $200,000.00 to be used to pay notice and administration costs.  In addition, China Air has agreed to provide cooperation with respect to witnesses, documents and meetings with counsel, which will aid Plaintiffs in the litigation against non-settling Defendants.  A settlement in principle was agreed to years after the first settlement discussions took place.  During the course of the negotiations co-lead counsel and their financial consultant conducted an extensive analysis of China Air's financial condition and ability to pay and met on multiple occasions with China Air's Chief Financial Officer.  ("CFO").

Plaintiffs seek preliminary approval of this settlement under Federal Rule of Civil Procedure 23(e), because it is an excellent result for the proposed settlement class (the "Settlement Class").  At the preliminary approval stage, the Court only determines if, on its face, the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard" or, put another way, to make sure that the settlement is within the range of possible approval.  *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ I*").

As detailed below, the settlement is well within the range of possible approval and should be preliminarily approved by this Court under Rule 23(e).

## II.     BACKGROUND

### A.      The Litigation

This litigation began in early 2006, when Plaintiffs filed over ninety complaints individually and on behalf of various classes of persons and entities who purchased, either directly or indirectly, Airfreight Shipping Services from a number of airfreight carriers named as

Defendants.  The First Consolidated Amended Complaint filed in February 2007 named more than two dozen Defendant air carriers.  Plaintiffs alleged that Defendants conspired to unlawfully fix prices of Airfreight Shipping Services worldwide, including on cargo shipments to, from and within the United States, by, among other things, concertedly levying agreed-upon, artificially inflated surcharges thereon, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Additional Defendants, including China Air, were named in Complaints filed on February 12, 2010 and July 26, 2010, respectively.  *See Benchmark Export Services et al. v. China Airlines Ltd.*, Case No. 10-CV-0639 (JG) (VVP) (E.D.N.Y.) ("China Air Complaint"), ECF No. 1; *Benchmark Export Services et al. v. AMR Corporation and American Airlines, Inc.*, Case No. 10-CV-3398 (JG) (VVP) (E.D.N.Y.), ECF No. 1.

After extensive motion practice directed at the First Consolidated Amended Complaint, on August 21, 2009, the Court adopted the Report and Recommendation of Magistrate Judge Viktor V. Pohorelsky with respect to the dismissal of indirect purchaser claims, dismissal of claims under European law, and the denial of Defendants' motion to dismiss on the grounds that certain Plaintiffs' claims were barred by the Foreign Trade Antitrust Improvements Act of 1982. The Court also ruled that the direct purchaser plaintiffs' Sherman Act claims satisfied the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After additional motion practice by China Air directed at the China Air Complaint, on November 1, 2010, the Court adopted the Report and Recommendation of Magistrate Judge Viktor V. Pohorelsky (ECF No. 1270) denying China Air's motion to dismiss.

On November 18, 2009, the Court entered a Scheduling Order that established a schedule for discovery, including the production of documents that Defendants had previously produced to the United States Department of Justice ("DOJ") in connection with its investigation of

2

Airfreight Shipping Services.  Under the Scheduling Order, Defendants, for the most part, began producing documents in December 2009.  The parties have proceeded with discovery, including the taking of depositions.

On October 28, 2011, Plaintiffs filed their Motion and Memorandum of Law in Support of Their Motion for Class Certification and Appointment of Class Counsel, as well as expert and other declarations in support thereof.  *See* ECF Nos. 1599 -1605 (filed under seal).  On May 25, 2012, Defendants filed their oppositions to Plaintiffs' motion for class certification, as well as expert and other declarations in support thereof.  *See* ECF Nos. 1682-91 (filed under seal).  On October 5, 2012, Plaintiffs filed their replies in support of their motion for class certification. *See* ECF Nos. 1753-58 (filed under seal).  The parties retained multiple experts relating to class certification, all of whom were deposed on one or more occasions.  On April 22 and 23, 2013, Defendants filed sur-reply papers in further opposition to Plaintiffs' motion for class certification.  *See* ECF Nos. 1842-49 (filed under seal).  On April 22, 2013, Plaintiffs filed motions to exclude the testimony of Defendants' experts.  *See* ECF Nos. 1838-41 (filed under seal).  Defendants opposed the motions on July 22, 2013 (ECF Nos. 1882-86), and Plaintiffs filed reply papers on September 11, 2013 (ECF Nos. 1902-05).  During the period October 29-31, 2013, a three-day evidentiary hearing, including 20 hours of expert testimony was held before Magistrate Judge Pohorelsky and on November 25, 2013, closing arguments were held with respect to the class certification motion and plaintiffs' Daubert motions.  Those motions are pending.

To date, the Court has granted final approval to 18 settlements[1]:

---

[1] (1) Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (collectively "Lufthansa"): $85 million, plus the cost of providing notice to the class and substantial cooperation (final approval granted September 25, 2009 (ECF No. 963)) (unlike subsequent settlements, which include payments only to direct purchasers, the Lufthansa settlement included payments both to

In addition, the Court recently granted preliminary approval to three settlements:  (1) Korean Air Lines Co., Ltd.: $115 million, (preliminary approval granted January 29, 2014 (ECF No. 1979)); (2) Singapore Airlines Limited and Singapore Airlines Cargo PTE, Ltd.: $92,492,442, plus $250,000 toward the cost of notice and settlement administration (preliminary approval granted January 29, 2014 (ECF No. 1980)); and (3) Cathay Pacific Airways Limited: $65,000,000, and cooperation (preliminary approval granted March 4, 2014 (ECF No. 1992)).

### B.   Settlement Negotiations

Plaintiffs and China Air first engaged in settlement discussions in September 2010, which involved an in-person meeting in New York with plaintiffs' financial consultant and China Air's

---

direct and indirect purchasers); (2) Société Air France ("Air France"), Koninklijke Luchtvaart Maatschappij N.V. ("KLM"), and Martinair Holland N.V. ("Martinair") (collectively "Air France/KLM"): $87 million, plus notice costs up to $500,000 and substantial cooperation (final approval granted March 14, 2011 (ECF No. 1414)); (3) JAL: $12 million, plus substantial cooperation (final approval granted March 14, 2011 (ECF No. 1417)); (4) AMR Corporation and American Airlines, Inc. (collectively, "AA"): $5 million, plus the cost of providing notice to the class and substantial cooperation (final approval granted March 14, 2011 (ECF No. 1413)); (5) Scandinavian Airlines System and SAS Cargo Group A/S (collectively, "SAS"): $13.93 million, plus notice costs up to $500,000 and substantial cooperation (final approval granted effective March 17, 2011 (ECF No. 1416));  (6) All Nippon Airways Co., Ltd. ("ANA"): $10.4 million, plus substantial cooperation (final approval granted July 15, 2011 (ECF No. 1524)); (7) Cargolux Airlines International S.A. ("Cargolux"): $35.1 million, plus notice costs of up to $150,000 and substantial cooperation (final approval granted July 15, 2011 (ECF No. 1524)); (8) Thai Airways International Public Company Limited ("Thai"): $3.5 million plus substantial cooperation (final approval granted July 15, 2011 (ECF No. 1524)); (9) Qantas Airways Limited ("Qantas"): $26.5 million, plus notice costs of up to $250,000 and substantial cooperation (final approval granted August 4, 2011 (ECF No. 1524)); (10) LAN Airlines, S.A., LAN Cargo S.A., and Aerolínhas Brasileiras, S.A. ("LAN/ABSA"): $66 million, plus notice costs up to $150,000 and substantial cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (11) British Airways PLC ("BA"): $89.512 million, plus notice costs up to $500,000 and substantial cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (12) Malaysia Airlines ("Malaysia"):  $3.2 million, plus $150,000 toward the cost of notice and settlement administration and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (13) South African Airways ("SAA"): $3.29 million plus $150,000 toward the cost of notice and settlement administration and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (14) Saudi Arabian Airlines, Ltd. ("Saudia"): $14 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (15) Emirates:  $7.833 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (16) El Al Israel Airlines Ltd. ("El Al"):  $15.8 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); (17) Air Canada and AC Cargo LP (collectively, "Air Canada"):  $7.5 million and cooperation (final approval granted August 2, 2012 (ECF No. 1732)); and (18) Salvatore Sanfilippo ("Sanfilippo"), a managerial employee of Defendant Air New Zealand: cooperation (final approval granted August 2, 2012 (ECF No. 1732)).

CFO.  However, despite these discussions, the parties did not agree to settle.  *See* Declaration of Robert N. Kaplan in Support of Plaintiffs' Motion for Preliminary Approval of Settlement With Defendant China Airlines, Ltd., sworn to May 8, 2014 ("Kaplan Decl."), ¶ 2.  In October 2013, settlement discussions started again.   There were many emails and telephone conversations with China Air's counsel during October and November 2013 and, on November 21, 2013, an in-person meeting with China Air's Counsel took place in New York.  *Id.*  Following that meeting, China Air provided co-lead counsel with detailed financial information concerning its ability to pay.  *Id.*  On January 16, 2014, co-lead counsel and their financial consultant met again in New York with China Air's counsel and its CFO and in-house Counsel.  *Id.*  At this meeting, the parties discussed in depth China Air's financial condition, and co-lead counsel and their financial consultant thoroughly vetted China Air's ability to pay with its CFO.  *Id.*  After that meeting, the parties exchanged almost daily telephone conversations and emails, and China Air provided additional financial information.  *Id.*  On March 11, 2014, another meeting was held with China Air's counsel in Los Angeles, and on March 21, 2014 the parties met again in New York.  *Id.*  During the meeting on March 21, co-lead counsel and their financial consultant continued to analyze China Air's financial condition and ability to pay with its CFO and General Counsel.  *Id.*  Further telephone conversations and emails occurred, and only after co-lead counsel were thoroughly informed of China Air's financial condition and ability to pay and the parties had negotiated all other areas of contention, an agreement in principle was reached.  *Id.* ¶ 3.  This was followed by extensive negotiations concerning the language and provisions of a settlement agreement, culminating in the signed Settlement Agreement dated May 6, 2014.  *Id.*

Both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement and the negotiations were non-collusive.  *Id.* ¶ 4.  In connection with these

settlement negotiations, Plaintiffs' Co-Lead Counsel were informed of the facts concerning liability and damages issues and the relative strengths and weaknesses of each side's litigation position.  *Id.* ¶ 5.  Counsel for plaintiffs and China Air signed the Settlement Agreement with an execution date of May 6, 2014.  *Id.* ¶ 6.

>      **C.**      **The Settlement Agreement**

The Settlement Agreement, attached to the Kaplan Declaration as Exhibit A, includes the following material terms:

>      **1.**      **The Settlement Class**

The Settlement Agreement defines the Settlement Class as follows:

> All persons or entities (but excluding Defendants, their parents, predecessors, successors, subsidiaries, affiliates, as well as government entities) who purchased Airfreight Shipping Services for shipments to, from or within the United States directly from Settling Defendant, any other Defendant, or from any of their parents, predecessors, successors, subsidiaries, or affiliates, at any time during the period from January 1, 2000, up to and including September 11, 2006 [the "Class Period"].

Settlement Agreement, ¶¶ 20, 25.[2]

>      **2.**      **The Settlement Fund**

Pursuant to the terms of the Settlement Agreement, China Air will pay the Settlement Amount into an escrow on the following schedule:

> (i)      $30 million on or before June 5, 2014;

> (ii)      $30 million on or before June 5, 2015; and

> (iii)      $30 million on or before June 6, 2016.

*Id.* ¶ 36.

---

[2] As defined in the Settlement Agreement, the term "Defendant" means any party named as a defendant in the First Consolidated Amended Complaint in this Action or named thereafter as a defendant in the Action up to and including the Preliminary Approval Date.  *See* Settlement Agreement, ¶ 8.

All income earned on the Settlement Fund shall become and remain part of the Settlement Fund. *Id.* ¶ 40. Further, the Settlement Agreement provides that China Air will pay an additional $200,000 to be used for all reasonable costs of disseminating notice of the settlement, including the cost of notice administration (the "Notice and Administration Fund"). *Id*. ¶ 37.

### 3. The Cooperation Provisions

China Air has agreed to provide cooperation to the Settlement Class that will aid in the prosecution of antitrust claims against the remaining Defendants. The full extent of this cooperation, set forth in more detail in Paragraphs 47 through 53 of the Settlement Agreement, can be summarized as follows:

#### (a) Witnesses

China Air has agreed to use all reasonable efforts to make available to Settlement Class Counsel for interviews, depositions and testimony at trial, without subpoena, (3) current officers and/or employees of China Air who Settlement Class Counsel, in consultation with counsel for China Air, reasonably and in good faith believe to have knowledge regarding Plaintiffs' claims in the Action. *Id*. ¶ 50.

#### (b) Meetings with Counsel

China Air has agreed to make its counsel available for up to three (3) meetings with Settlement Class Counsel to provide information concerning documents, witnesses, meetings, communications, and events. *Id*. ¶ 49. China Air has also agreed to make its counsel available for reasonable follow-up conversations. *Id*.

#### (c) Documents

China Air has agreed to produce representatives who are qualified to establish admissibility into evidence of any information or documents they have provided in this Action,

including authentication of such documents and information and, to the extent possible, confirmation that such documents and information are business records.  *Id*. ¶ 48.

### 4.    The Release

In exchange for monetary and other consideration paid by China Air, the released parties shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, potential actions, suits and causes of action, losses, obligations, damages, matters and issues of any kind or nature whatsoever, and liabilities of any nature on account of or arising out of or resulting from or related to any conduct regardless of where it occurred at any time prior to the Effective Date concerning the direct purchase from China Air or any other Defendant of Airfreight Shipping Services to, from or within the United States or concerning the pricing, selling, discounting or marketing of Airfreight Shipping Services for shipments to, from or within the United States, including without limitation, claims brought or that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters alleged in this Action or otherwise the subject of this Action, which arise under any antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, unjust enrichment, civil conspiracy law, or any other law (the "Released Claims").[3] *Id*. ¶ 33.  However, there is no release of any claims (a) made with respect to any indirect purchase of Airfreight Shipping Services; or (b) for negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods or similar claim between any of the released parties and any of the releasing parties relating to Airfreight Shipping Services.  *Id*.

---

[3] The full language of the release provisions is found at ¶¶ 33-35 of the Settlement Agreement.

### 5.    Provisional Opt-Out Reduction

The Settlement Agreement provides a limited refund to China Air with respect to Settlement Class members who opt out and then are paid by China Air to resolve any of the Released Claims (the "Provisional Opt-Out Reduction"). *Id.* ¶ 46.  To the extent that any member of the Settlement Class elects to opt out of the Settlement Class (an "Opt-Out Plaintiff"), funds comprising a percentage of the opt-out's share of the Settlement Fund (applied to each of the three payments), plus any net income attributable to that amount, will be transferred to a separate escrow account (the "Opt-Out Escrow Account").[4]  *Id.*

If China Air reaches an agreement with an opt-out plaintiff to resolve its claim before the date agreed to by the parties (the "Opt-Out Retention Period"),[5] then China Air will receive from the Opt-Out Escrow Account a transfer of funds equal to the lesser of either (i) the amount China Air has agreed to pay to the Opt-Out Plaintiff as shown in a proof of payment, or (ii) such Opt-Out Plaintiff's pro rata share of the Opt-Out Sales (plus any net income as may have accrued with respect to such pro rata share), less any attorneys' fees percentage awarded by the Court not to exceed twenty (20%) percent.  *Id.* ¶ 46(g).  All funds remaining in the Opt-Out Escrow Account after the Opt-Out Retention Period will revert to the Settlement Class.  *Id.* ¶ 46(i).

---

[4]   The amount to be transferred to the Opt-Out Escrow Account is set forth in a separate confidential letter between the parties (*see* Settlement Agreement, ¶ 46(e)) and can be made available to the Court if requested.  This information is not relevant to Class members' decisions as to whether to remain in or exclude themselves from the Settlement Class.  What is relevant is the settlement amount, the cooperation terms, the release terms, and the fact that the sales by China Air remain in the case with respect to the remaining defendants.

[5]   The Opt-Out Retention Period is defined in a confidential letter between the parties and can be made available to the Court if requested.   This information is not relevant to Class members' decisions as to whether to remain in or exclude themselves from the Settlement Class, as discussed *supra*, n.4.

## III.   ARGUMENT

### A.   The Settlement of Complex Litigation Is Favored

Plaintiffs and China Air have reached an agreement that maximizes Plaintiffs' recovery and provides cooperation from China Air in the prosecution of Plaintiffs' claims against the non-settling Defendants.  Having negotiated for a cash payment from China Air that – as measured on a percentage basis – is substantial, as well as significant other benefits, Plaintiffs have avoided the potential risks inherent in complex antitrust class action litigation and secured a substantial settlement for the Settlement Class.  Reaching such a positive result at this stage in the litigation only enhances the attractiveness of this settlement.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("[F]ederal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.").  While reviewing this proposed settlement, the Court should be mindful of the "general public policy favoring settlement."  *In re Air Cargo Shipping Servs. Antitrust Litig*., No. 06-md-1775, 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (approving the Lufthansa settlement); *see also In re Air Cargo Shipping Servs. Antitrust Litig*., No. 06-md-01775, 2011 WL 2909162, at *3 (E.D.N.Y. July 15, 2011); Report & Recommendation (ECF No. 625) (the "Lufthansa Prel. App. R&R"), at 14; *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 354-55 (E.D.N.Y. 2006) (noting that class actions are amenable to settlement "because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation"); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001).

### B.   The Proposed Settlement Exceeds the Standards for Preliminary Approval

When parties to a class action seek to settle, they must proceed before the court in two steps – first, they must seek preliminary approval of the proposed settlement as well as certification of the proposed settlement class and then, should such preliminary approval and

settlement class certification be granted, they must provide notice to the settlement class and appear at a fairness hearing after which the court may grant final approval to the settlement.  *See Manual for Complex Litigation* (Fourth) § 21.63 (2004); *NASDAQ I*, 176 F.R.D. at 102.  Because the first step of this process is only "preliminary," the standards for preliminary approval are less exacting than those applied for final approval.  "[A] court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig*., No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005).  Preliminary approval of a proposed settlement is granted so long as the settlement was arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval."  *NASDAQ I*, 176 F.R.D. at 102 (emphasis added).

In conducting this inquiry, a court considers both the negotiating process leading up to the settlement and the settlement's substantive terms.  *Global Crossing*, 225 F.R.D. at 455.  A court determines whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *NASDAQ I,* 176 F.R.D. at 102 (citations omitted).  Preliminary approval should be granted "if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys' fees."  *In re Med. X-Ray Film Antitrust Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) (citing *NASDAQ I*, 176 F.R.D. 99, and *Manual for Complex Litigation* (Third) § 30.14 (1995)).  In considering preliminary approval, the sole issue is whether

11

the proposed settlement falls within the range of possible approval.  *NASDAQ I,* 176 F.R.D. at

102.

The negotiations here were conducted at arm's length by experienced counsel on both

sides.  *See* Kaplan Decl. ¶¶ 2-4.  Plaintiffs' counsel were well-informed of the material facts, and

the negotiations were non-collusive.  *Id*. ¶ 5.  Furthermore, the cooperation to be provided in

addition to the substantial cash payment makes this settlement fall well within the range of

possible approval.  Based upon these facts, preliminary approval is warranted, and, as will be

demonstrated in detail at the final fairness hearing, this settlement is a "fair, reasonable, and

adequate" settlement of the class claims.  *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448,

463 (2d Cir. 1974).[6]

### 1.     The Proposed Settlement Is the Result of Arm's Length Negotiations Conducted by Highly Experienced Counsel.

The process that led to this proposed settlement was fairly conducted by highly-qualified

counsel who sought to obtain the best possible result for their clients and the Settlement Class.

When counsel engages in an arm's-length negotiation that results in a settlement, courts find that

the settlement is entitled to a presumption of fairness.  *See In re Air Cargo Shipping Servs.*

*Antitrust Litig*., 2009 WL 3077396, at *7 (finding Lufthansa settlement "procedurally fair

because it was the product of arm's length negotiations between experienced and capable

---

[6] There are nine relevant factors that courts consider in evaluating a settlement's substantive terms at the time of final approval: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Grinnell,* 495 F.2d at 463.  As the Court has recognized, there is little to be gained by applying the *Grinnell* factors at the preliminary approval stage.  *See Bourlas,* 237 F.R.D. at 355 n.7 ("[I]t is apparent that several of the *Grinnell* factors themselves were designed for application at a later stage in the class settlement approval process.").  As a result, they are discussed herein only when they provide a useful guide to assess the settlement's fairness at this stage.

counsel"); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2011 WL 2909162, at *4;  *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ II*") ("So long as the integrity of the arm's length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement."); *In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.,* 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.,* 878 F. Supp. 473, 567 (E.D.N.Y. 1995).  Furthermore, when the settlement that results from such negotiations is being championed by experienced and informed counsel, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself.  *See Joint E.,* 878 F. Supp. at 567 ("A substantial factor in determining the fairness of a settlement is the opinion of counsel involved in the settlement."  (citations omitted)); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating that "great weight" is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation).  The process that led to this settlement confirms that the initial presumption of fairness is correct.

The Court has found that counsel are highly capable and have the requisite qualifications and experience to handle this litigation.  *See* Lufthansa Prel. App. R&R, at 8-9; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2012 WL 3138596, at *4 (E.D.N.Y. Aug. 2, 2012) (incorporating the reasoning and conclusions set forth in the Court's previous opinions approving settlements in this litigation); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2011 WL 2909162, at *6;  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *7. In this case, this settlement was negotiated over several years in a process that involved in-person

13

meetings and many telephone conferences and emails. *See* Kaplan Decl. ¶¶ 2-3. The discussions were meaningful and informed as Co-Lead Counsel took steps to ensure that they had all of the necessary information to advocate for a fair settlement that served the best interests of the Settlement Class. *Id.* ¶ 2-5. Counsel analyzed and evaluated many contested legal and factual issues posed by the litigation so that adequate demands and accurate evaluation of China Air's positions could be made. *See id.*; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *7 (discussing negotiation process arriving at Lufthansa settlement). Thus, Co-Lead Counsel were well-informed of the facts of the case and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated. *See Global Crossing*, 225 F.R.D. at 458.

### 2. The Proposed Settlement Falls Within the Range of Possible Approval.

To preliminarily approve this settlement, the court must decide that the proposed settlement falls within the range of settlement that could *possibly* be approved as "fair, adequate and reasonable." *NASDAQ I*, 176 F.R.D. at 102. The settlement here contains both a cash payment and non-cash benefits that will ultimately enhance Plaintiffs' chances of recovery from the remaining non-settling Defendants. In addition, the agreement takes into consideration China Air's financial condition and ability to pay. Indeed, the settlement was only agreed to after an extensive analysis was conducted by co-lead counsel and their financial consultant regarding China Air's ability to pay. *See supra* pp. 5-6; Kaplan Decl. ¶ 2-3. As discussed above, China Air's counsel and its CFO and in-house counsel attended multiple in-person meetings with co-lead counsel and their financial consultant where the parties discussed China Air's financial condition in depth. *See supra* pp. 5; Kaplan Decl. ¶ 2 China Air also provided co-lead counsel with detailed financial information concerning its ability to pay, which was carefully vetted by

14

co-lead counsel and their financial consultant.  *Id.*  Only after co-lead counsel were thoroughly

informed of China Air's financial condition and ability to pay was an agreement in principle

reached.  *See supra* pp. 6; Kaplan Decl. ¶ 3.  Under these circumstances and considering these

benefits, as well as China Air's financial condition, the proposed settlement not only falls well

within the range of possible approval but also represents an excellent result for members of the

Settlement Class.

      Continuing this litigation against China Air would entail a lengthy and highly expensive

legal battle, involving complex legal and factual issues where motions would be vigorously

contested.  At trial, China Air would have asserted defenses making the ultimate outcome

uncertain for both parties because it would turn on questions of proof, many of which would be

the subject of complicated expert opinions, particularly with regard to damages.[7]  *See NASDAQ*

*II*, 187 F.R.D. at 475-76.  Given this uncertainty, "[a] very large bird in the hand in this litigation

is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec.*

*Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).  Furthermore, because liability under the Sherman

Act is joint and several and China Air's sales remain in the case, this settlement in no way

prejudices the Class's ability to recover its full treble damages caused by the alleged conspiracy.

      Based upon the foregoing, the Settlement Agreement is well within the *possible* range of

approval as a "fair, reasonable, and adequate" settlement of the Settlement Class's claims.  *See*

*Grinnell,* 495 F.2d at 463.

### C.    The Proposed Settlement Class Should Be Certified Pursuant to Rule 23

      The Second Circuit has long acknowledged the propriety of certifying a class solely for

purposes of settlement.  *See* Lufthansa Prel. App. R&R, at 2-3; *see also Weinberger v. Kendrick*,

---

[7] Because Co-Lead Counsel will likely have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a full discussion of their potential litigation risks.

15

698 F.2d 61, 73 (2d Cir. 1982); *Global Crossing*, 225 F.R.D. at 451.  A court may grant

certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule

23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three

subsections of Rule 23(b).  *See* Lufthansa Prel. App. R&R, at 3; *see also Weinberger*, 698 F.2d

at 73*; Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F. Supp.

1131, 1140 (E.D.N.Y. 1996).[8]  Here, Plaintiffs seek certification of the following Settlement

Class:

> All persons or entities (but excluding Defendants, their parents,
> predecessors, successors, subsidiaries, affiliates, as well as
> government entities) who purchased Airfreight Shipping Services
> for shipments to, from or within the United States directly from
> Settling Defendant, any other Defendant, or from any of their
> parents, predecessors, successors, subsidiaries, or affiliates, at any
> time during the period from January 1, 2000, up to and including
> September 11, 2006.

Settlement Agreement, ¶ 25.  This Court previously certified a broader Settlement Class that also

included indirect purchasers when it preliminarily and then finally approved the Lufthansa

settlement.  *See* Lufthansa Prel. App. R&R, at 3-13.[9]

---

[8] China Air reserves the right to challenge class certification in the event the Settlement Agreement is not finally approved by this Court.  Settlement Agreement, ¶ 45.  In addition, the Court's certification of this Settlement Class would be without prejudice to the rights of the non-settling Defendants to contest class certification of the claims asserted against them.

[9] Moreover, the Court has granted final approval of the Air France/KLM, JAL, AA, SAS, Cargolux, ANA, Thai, Qantas, LAN/ABSA, BA, Malaysia, SAA, Saudia, Emirates, El Al, Air Canada and Sanfilippo settlements, all of which have Settlement Classes identical to the China Air Settlement Class. The factual and legal support for certification of the Lufthansa settlement class and the settlement classes for the other settlements apply equally here, as set forth below.  *See* Air France/KLM Prel. App. Order ¶ 4 (ECF No. 1254) (same settlement class certified); JAL Prel. App. Order, ¶ 4 (ECF No. 1255) (same); AA Prel. App. Order, ¶ 4 (ECF No. 1256) (same); SAS Prel. App. Order, ¶ 4 (ECF No. 1291) (same); Cargolux Prel. App. Order, ¶ 4 (ECF No. 1362) (same); ANA Prel. App. Order, ¶ 4 (ECF No. 1363) (same); Qantas Prel. App. Order, ¶ 4 (ECF No. 1381) (same); Thai Prel. App. Order, ¶ 4 (ECF No. 1418) (same); LAN/ABSA Prel. App. Order, ¶ 4 (ECF No. 1568) (same); BA Prel. App. Order, ¶ 4 (ECF No. 1569) (same); Malaysia Prel. App. Order, ¶ 4 (ECF No. 1570) (same); SAA Prel. App. Order, ¶ 4 (ECF No. 1571) (same); Saudia Prel. App. Order, ¶ 4 (ECF No. 1572) (same); Emirates Prel. App. Order, ¶ 4 (ECF No. 1622) (same); El Al Prel. App. Order, ¶ 4 (ECF No. 1630) (same); Air Canada Prel. App. Order, ¶ 4 (ECF No. 1652) (same); Sanfilippo Prel. App. Order, ¶ 4 (ECF No. 1657) (same); Korean Air

1.     **The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

a.     *The Settlement Class Is So Numerous That It Is Impracticable to Bring All Class Members Before the Court*

First, Rule 23(a) requires that the class be so numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001).  While no magic number exists for satisfying the numerosity requirement, and Plaintiffs are not required to allege the exact number or identity of class members, "[c]ourts in this circuit generally 'find a class sufficiently numerous when it comprises forty or more members.'"  Lufthansa Prel. App. R&R, at 5 (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002)); *see also Gross v. Wash. Mut. Bank, F.A.*, 02 CV 4135, 2006 WL 318814, at \*2 (E.D.N.Y. Feb. 9, 2006) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

Here, the proposed Settlement Class consists of persons and entities who directly purchased Airfreight Shipping Services to, from, or within the United States from the Defendants during the period from January 1, 2000 to September 11, 2006.  Based on the thousands of persons and entities that fall within the Settlement Class definition and the fact that joinder of these persons is impracticable, the numerosity requirement is satisfied here.[10]

Prel. App. Order, ¶ 4 (ECF No. 1979) (same); Singapore Prel. App. Order, ¶ 4 (ECF No. 1980) (same); and Cathay Prel. App. Order, ¶ 4 (ECF No. 1992) (same).

[10] *See generally* Lufthansa Prel. App. R&R, at 6; Air France/KLM Prel. App. Order, ¶ 4 (same class certified); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same); SAS Prel. App. Order, ¶ 4 (same); Cargolux Prel. App. Order, ¶ 4 (same); ANA Prel. App. Order, ¶ 4 (same); Qantas Prel. App. Order, ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order, ¶ 4 (same); Singapore Prel. App. Order, ¶ 4 (same); and Cathay Prel. App. Order, ¶ 4 (same).

**b.**   ***Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.***

Second, Rule 23(a) requires the existence of questions of law or fact common to the

class.  Fed. R. Civ. P. 23(a)(2); *see also* Lufthansa Prel. App. R&R, at 6; *Reade-Alvarez v.*

*Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).  Questions are common to

the class if class members' claims "depend upon a common contention" that is "of such a nature

that it is capable of class wide resolution – which means that determination of its truth or falsity

will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The commonality element "may

be found when 'injuries derive from a unitary course of conduct by a single system.'"  Lufthansa

Prel. App. R&R, at 6 (quoting *Reade-Alvarez*, 237 F.R.D. at 32).  The commonality element

"'does not require an identity of claims or facts among class members; instead, [t]he

commonality requirement will be satisfied if the named plaintiffs share at least one question of

fact or law with the grievances of the prospective class.'"  *Global Crossing*, 225 F.R.D. at 451

(quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)).

Here, Plaintiffs' allegations raise questions of law and fact common to the proposed

Class, including, for example:

(i)      Whether Defendants engaged in a combination or conspiracy to fix, raise,

maintain, or stabilize prices of Airfreight Shipping Services for shipments to,

from, or within the United States;

(ii)     The duration of the conspiracy and the nature and character of the acts performed

by Defendants in furtherance of the conspiracy;

(iii)     The effect of Defendants' alleged conspiracy on the price of Airfreight Shipping

Services, and whether the alleged conspiracy caused injury to the business or

property of Plaintiffs and the other members of the Class; and

(iv)     Whether the alleged conspiracy violated the antitrust laws.

The overarching allegation in the First Consolidated Amended Complaint and the China Air

Complaint is that Defendants have engaged in an illegal cartel designed and intended to fix the

prices of Airfreight Shipping Services.  Proof of this unlawful cartel is common to all members

of the Class.  *See* Lufthansa Prel. App. R&R, at 6, 7 (finding commonality element met because

of allegations regarding massive, global conspiracy to fix prices).[11]

### c.     *Plaintiffs' Claims Are Typical of the Claims of the Members of the Settlement Class.*

Third, Rule 23(a) requires typicality of the class representatives' claims.  *See*  Fed. R.

Civ. P. 23(a)(3).  The typicality requirement is satisfied where, as here, the claims of the

representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the

other Settlement Class members, and the claims are based on the same legal theories.  *See*

*Reade-Alvarez,* 237 F.R.D. at 32; *see also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231,

241 (E.D.N.Y. 1998); *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).

"Indeed, when 'the same [alleged] unlawful conduct was directed at or affected both the named

plaintiffs and the class sought to be represented, the typicality requirement is usually met

---

[11]*See also* Air France/KLM Prel. App. Order, ¶ 4 (commonality satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same); SAS Prel. App. Order ¶ 4 (same); Cargolux Prel. App. Order, ¶ 4 (same); ANA Prel. App. Order, ¶ 4 (same); Qantas Prel. App. Order, ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order, ¶ 4 (same); Singapore Prel. App. Order, ¶ 4 (same); and Cathay Prel. App. Order, ¶ 4 (same).

irrespective of minor variations in the fact patterns underlying individual claims.'" *Global Crossing,* 225 F.R.D. at 452 (citation omitted).

Here, the claims of the representative Plaintiffs are typical when compared to those held by the other members of the Settlement Class.  Plaintiffs have alleged that the Defendants created and maintained an illegal cartel in the Airfreight Shipping Services industry, which artificially raised the prices of Airfreight Shipping Services.  Such claims of the representative Plaintiffs, like those of the other members of the Settlement Class, arise out of the same alleged illegal anticompetitive conduct by the same Defendants and are based on the same legal theories.[12]

### d.   Settlement Class Counsel and Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Fourth, Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(a)(4).  As the Second Circuit has stated, "adequacy of representation is measured by two standards.  First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation.  Second, the class members must not have interests that are 'antagonistic' to one another."  *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001); *In re MetLife Demutualization Litig.,* 229 F.R.D. 369, 376 (E.D.N.Y. 2005) (citing *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 130 (E.D.N.Y. 2003)).  Both

---

[12] *See* Lufthansa Prel. App. R&R, at 8 (finding typicality element met); *see also* Air France/KLM Prel. App. Order, ¶ 4 (finding typicality element satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same); SAS Prel. App. Order, ¶ 4 (same); Cargolux Prel. App. Order, ¶ 4 (same); ANA Prel. App. Order, ¶ 4 (same); Qantas Prel. App. Order, ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same) ; Korean Air Prel. App. Order, ¶ 4 (same); Singapore Prel. App. Order, ¶ 4 (same); and Cathay Prel. App. Order, ¶ 4 (same).

20

requirements are satisfied here.  As this Court has already found, Settlement Class Counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.  *See* Lufthansa Prel. App. R&R, at 8-9; *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. at 57; *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at \*7. Moreover, in reaching this Settlement Agreement, the interests of the Class members were adequately protected and were not in conflict.  *See Kapps v. Wing*, 283 F. Supp. 2d 866, 873 (E.D.N.Y. 2003), *aff'd in part vacated in part on other grounds,* 404 F.3d 105 (2d Cir. 2005).

All Settlement Class members share an overriding interest in obtaining the largest monetary recovery possible from China Air.  *See* Lufthansa Prel. App. R&R, at 9-10 (finding class members not antagonistic when discussing preliminary approval of Lufthansa settlement); *see also Global Crossing*, 225 F.R.D. at 453.  The Settlement Class members also share a common interest in obtaining China Air's cooperation in prosecuting the claims against the non-settling Defendants.[13]

**2.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).**

Once the four prerequisites of Rule 23(a) are met, as in this case, Plaintiffs must also show that the proposed Settlement Class satisfies one of the requirements of Rule 23(b), in this case Rule 23(b)(3).  *See, e.g., Larsen v. JBC Legal Group, P.C.,* 235 F.R.D. 191, 196 (E.D.N.Y. 2006).  Under Rule 23(b)(3), Plaintiffs must first demonstrate that "questions of law or fact common to the class predominate over questions affecting individual members."  *Barone v.*

---

[13] *See* Air France/KLM Prel. App. Order, ¶ 4 (adequacy satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same); SAS Prel. App. Order, ¶ 4 (same); Cargolux Prel. App. Order, ¶ 4 (same); ANA Prel. App. Order, ¶ 4 (same); Qantas Prel. App. Order, ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order, ¶ 4 (same); Singapore Prel. App. Order, ¶ 4 (same); and Cathay Prel. App. Order, ¶ 4 (same).

*Safway Steel Prods., Inc.*, No. CV-03-4258, 2005 WL 2009882 at *15 (E.D.N.Y. Aug. 23, 2005)

(quoting Rule 23(b)(3)).  Second, Plaintiffs must show that a "class action is superior to other

available methods for the fair and efficient adjudication of the controversy."  *Id.*  With respect to

both requirements, the Court need not inquire whether the "case, if tried, would present

intractable management problems, for the proposal is that there be no trial."  *Amchem Prods.*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted).

### a.       Common Questions of Law and Fact Predominate.

"'[I]n cases involving allegations of a pure price-fixing conspiracy, common questions of

law and fact generally predominate on all issues.'"  Lufthansa Prel. App. R&R, at 11 (quoting

*Cont'l Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater N.Y.*, 198 F.R.D. 41, 46

(E.D.N.Y. 2000)).  Because Plaintiffs' claims allege a single global conspiracy from which all

Plaintiffs' injuries arise, issues common to the class members—for example, the existence and

scope of the alleged price-fixing conspiracy among Defendants, the impact of Defendants'

conspiracy, and the amount of damage suffered by the class as a result of an alleged violation of

Section 1 of the Sherman Act—predominate over any individual questions, and therefore class

treatment of the claims is appropriate for purposes of this settlement.  *See Amchem,* 521 U.S. at

625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or

violations of the antitrust laws."); *Playmobil*, 35 F. Supp. 2d at 247 (finding predominance where

case involved allegations of "pricing structure to regulate prices . . . , to maintain prices at

artificially high levels, and to hinder price competition"); *In re Buspirone Patent Litig.,* 210

F.R.D. 43, 58 (S.D.N.Y. 2002) (finding predominance requirement satisfied where "[p]roof of

the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is

common to the claims of all the plaintiffs" (citing *Amchem*, 521 U.S. at 625)).  Here, the predominance prong is easily satisfied.[14]

   **b.**  ***A Class Action Is the Superior Method to Adjudicate These Claims.***

   The Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *In re Nig. Charter Flights Contract Litig.,* 233 F.R.D. 297, 301 (E.D.N.Y. 2006).  *See* Fed. R. Civ. P. 23(b)(3) (listing four considerations relevant to this determination).  The Court needs to consider "'the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications.'"  Lufthansa Prel. App. R&R, at 12 (quoting *D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D.N.Y. 1996).  Here, the interests of Class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Thousands of persons and entities purchased Airfreight Shipping Services during the Class Period and settling their claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery.  *See Fox,* 213 F.R.D. at 130 (stating that "the larger the class, the more judicial resources would be saved by proceeding as a class action");  *Playmobil*, 35 F. Supp. 2d at 249 (certifying a class because "proceeding forward as a class

---

[14] *See* Lufthansa Prel. App. R&R, at 12; *see also* Air France/KLM Prel. App. Order, ¶ 4 (predominance satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same); SAS Prel. App. Order, ¶ 4 (same); Cargolux Prel. App. Order, ¶ 4 (same); ANA Prel. App. Order, ¶ 4 (same); Qantas Prel. App. Order, ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order, ¶ 4 (same); Singapore Prel. App. Order, ¶ 4 (same); and Cathay Prel. App. Order, ¶ 4 (same).

action for liability is superior and would avoid duplication, unnecessary costs and a wasting of judicial resources"). The superiority requirement is therefore satisfied.[15]

### D. Notice to the Class

The Court recently granted preliminary approval of three settlements. Plaintiffs will propose combining notice of the China Air settlement with the other recent settlements. For this reason, Plaintiffs have not submitted a form of notice at this time, but they will submit at an appropriate time a proposed form of notice that will include all of the information required by Rule 23 and due process. *See* Settlement Agreement, ¶ 28.

## IV.   PRELIMINARY APPROVAL ORDER

Plaintiffs respectfully submit that the proposed Settlement Agreement with China Air falls well within the range of possible approval and that certification of the Settlement Class is appropriate. Plaintiffs therefore request that the Court:

1.   Preliminarily approve the Settlement Agreement and find that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class as defined in the Settlement Agreement;

2.   Certify the Settlement Class, for purposes of settlement only pursuant to Federal Rule of Civil Procedure 23(c), and authorize Plaintiffs to represent the Settlement Class;

---

[15] *See* Lufthansa Prel. App. R&R, at 13; *see also* Air France/KLM Prel. App. Order, ¶ 4 (superiority satisfied); JAL Prel. App. Order, ¶ 4 (same); AA Prel. App. Order, ¶ 4 (same); SAS Prel. App. Order, ¶ 4 (same); Cargolux Prel. App. Order, ¶ 4 (same); ANA Prel. App. Order, ¶ 4 (same); Qantas Prel. App. Order, ¶ 4 (same); Thai Prel. App. Order, ¶ 4 (same); LAN/ABSA Prel. App. Order, ¶ 4 (same); BA Prel. App. Order, ¶ 4 (same); Malaysia Prel. App. Order, ¶ 4 (same); SAA Prel. App. Order, ¶ 4 (same); Saudia Prel. App. Order, ¶ 4 (same); Emirates Prel. App. Order, ¶ 4 (same); El Al Prel. App. Order, ¶ 4 (same); Air Canada Prel. App. Order, ¶ 4 (same); Sanfilippo Prel. App. Order, ¶ 4 (same); Korean Air Prel. App. Order, ¶ 4 (same); Singapore Prel. App. Order, ¶ 4 (same); and Cathay Prel. App. Order, ¶ 4 (same).

3.      Order Settlement Class Counsel to disseminate notice to the Settlement Class,

upon submission of proposed notices and approval by the Court of the form of

notice and the notice plan; and

4.      Approve The Garden City Group as Administrator of the Settlement, and

Citibank, N.A. as escrow agent.

## V.      **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary

Approval and certify the Settlement Class.


Dated:  May 8, 2014                                    Respectfully Submitted,

Robert N. Kaplan                                      Hollis Salzman
Gregory K. Arenson                                    Meegan Hollywood
KAPLAN FOX & KILSHEIMER LLP                           ROBINS, KAPLAN, MILLER & CIRESI LLP
850 Third Avenue, 14th Floor                          601 Lexington Avenue, Suite 3400
New York, NY 10022                                    New York, NY 10022
(212) 687-1980                                        (212) 980-7400


Gary L. Specks                                        By:      */s/ Hollis Salzman*
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585


By:   */s/ Robert N. Kaplan*


Howard J. Sedran                                      Michael D. Hausfeld
Austin Cohen                                          Brent W. Landau
Keith J. Verrier                                      Hilary K. Scherrer
LEVIN, FISHBEIN, SEDRAN & BERMAN                      Melinda Coolidge
510 Walnut Street                                     HAUSFELD LLP
Philadelphia, PA 19106                                1700 K Street, N.W., Suite 650
(215) 592-1500                                        Washington, DC 20006
                                                      (202) 540-7200


By:   */s/ Howard J. Sedran*                          By:   */s/ Michael D. Hausfeld*

25