# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br><br>AIR CARGO SHIPPING SERVICES<br>ANTITRUST LITIGATION<br><br>MDL No. 1775 | Master File 06-MD-1775 (JG) (VVP)<br><br>THIS DOCUMENT RELATES TO:<br>All Actions |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ON THE NOERR-PENNINGTON DEFENSE

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      BACKGROUND ................................................................................................2

II.     ARGUMENT .....................................................................................................2

III.    CONCLUSION ..................................................................................................6

i

# TABLE OF AUTHORITIES

Cases                                                                           Page(s)

*Agreements Adopted by the Tariff Coordinating Conferences of the Int'l Air Transp. Ass'n Relating to Cargo Rate Matters,* Docket OST-2000-6837, 2000 DOT Av. LEXIS 141 (DOT Av. Mar. 14, 2000) ...... 2

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492 (1988) ...... 2-3, 4

*Associated Container Transp. (Australia), Ltd. v. United States,* 705 F.2d 53 (2d Cir. 1983) ...... 4

*Australia/E. U.S.A. Shipping Conference v. United States,* 537 F. Supp. 807 (D.D.C. 1982) ...... 5

*BE&K Constr. Co. v. NLRB,* 536 U.S. 516 (2002) ...... 4

*Block v. First Blood Assocs.,* 988 F.2d 344 (2d Cir. 1993) ...... 1

*Bulkferts Inc. v. Salatin, Inc.,* 574 F. Supp. 6 (S.D.N.Y. 1983) ...... 5

*Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508 (1972) ...... 4

*Cantwell v. Conn.,* 310 U.S. 296 (1940) ...... 5

*Carpet Group Int'l v. Oriental Rug Imps. Ass'n,* 256 F. Supp. 2d 249 (D.N.J. 2003) ...... 5

*City of Kirkwood v. Union Elec. Co.,* 671 F.2d 1173 (8th Cir. 1982) ...... 3

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau Inc.,* 690 F.2d 1240 (9th Cir. 1982) ...... 3

*Coastal States Mktg. Inc. v. Hunt,* 694 F.2d 1358 (5th Cir. 1983) ...... 5

*Coca Cola Co. v. Omni Pac. Co.,* No. C 08-0784-S1, 1998 U.S. Dist LEXIS 23277 (N.D. Cal. Dec. 9, 1998) ...... 5

*Columbia Steel Casting Co. v. Portland GE,*
    111 F.3d 1427 (9th Cir. 1997) ............................................................................ 3

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
    370 U.S. 690 (1962) .......................................................................................... 4

*Dominicus Americana Bohio v. Gulf & W. Indus.,*
    473 F. Supp. 680 (S.D.N.Y. 1979) .................................................................... 5

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
    365 U.S. 127 (1961) .......................................................................................... 1

*Evans v. Syracuse City Sch. Dist.,*
    704 F.2d 44 (2d Cir. 1983) ................................................................................ 1

*FTC v. Superior Court Trial Lawyers Ass'n,*
    493 U.S. 411 (1990) .......................................................................................... 3

*Grand Light & Supply Co. v. Honeywell, Inc.,*
    771 F.2d 672 (2d Cir. 1985) .............................................................................. 1

*Holleman v. Art Crating Inc.,*
    2014 U.S. Dist. LEXIS 139916 (E.D.N.Y. Sept. 30, 2014) .............................. 4

*Indian Head Inc. v. Allied Tube & Conduit Corp.,*
    817 F.2d 938 (2d Cir. 1987), *aff'd*, 486 U.S. 492 (1988) .................................. 4

*In re Transpacific Passenger Air Transp. Antitrust Litig.,*
    No. C07-05634 CRB, 2011 U.S. Dist. LEXIS 49853 (N.D. Cal. May 9, 2011) ............... 3

*Laker Airways Ltd. v. Pan Am. World Airways Inc.,*
    604 F. Supp. 280 (D.D.C. 1984) ....................................................................... 5

*Landmarks Holding Corp. v. Bermant,*
    664 F.2d 891 (2d Cir. 1981) .............................................................................. 4

*Litton Sys., Inc. v. AT&T Co.,*
    700 F.2d 785 (2d Cir. 1983) .............................................................................. 3

*Luxpro Corp. v. Apple Inc.,*
    No. C 10-03058 JSW, 2011 U.S. Dist. LEXIS 35008 (N.D. Cal. Mar. 24, 2011) ............. 5

*Minuteman Press Int'l, Inc. v. Matthews,*
    232 F. Supp. 2d 11 (E.D.N.Y. 2002) ................................................................ 1

*Miracle Mile Assocs. v. Rochester,*
  617 F.2d 18 (2d Cir. 1980)...................................................................................... 4

*Monahan v. New York City Dep't of Corr.,*
  214 F.3d 275 (2d Cir. 2000)................................................................................... 1

*Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.,*
  711 F.3d 1136 (9th Cir. 2013) .............................................................................. 4

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,*
  331 F. Supp. 92 (C.D. Cal. 1971),
  *aff'd on other grounds*, 461 F.2d 1261 (9th Cir. 1971) ...................................... 5

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
  134 S. Ct. 1749 (2014)........................................................................................... 4

*Primetime 24 Joint Venture v. NBC Inc.,*
  219 F.3d 92 (2d Cir. 2000).................................................................................... 4

*Prof''l Real Estate Investors Inc. v. Columbia Pictures Indus. Inc.,*
  508 U.S. 49 (1993)................................................................................................ 4

*Sexual Minorities Uganda v. Lively,*
  960 F. Supp. 2d 304 (D. Mass. 2013) ................................................................. 4

*Sudul v. Computer Outsourcing Servs., Inc.,*
  917 F. Supp. 1033 (S.D.N.Y. 1996)..................................................................... 1

*Ticor Title Ins. Co. v. FTC,*
  998 F.2d 1129 (3d Cir. 1993)............................................................................... 3

*Travellers Int'l, AG v. Trans World Airlines Inc.,*
  41 F.3d 1570 (2d Cir. 1994)................................................................................. 1

*U.S. Power, Inc. v. Siemens Power Transmission & Dist. LLC,*
  Civil No. 05-525 (JRT-FLN), 2006 U.S. Dist. LEXIS 45919 (D. Minn. July 5, 2006) ..... 5

*United Mine Workers of Am. v. Pennington,*
  381 U.S. 657 (1965)............................................................................................... 1

*United States v. So. Motor Carriers Rate Conference, Inc.,*
  702 F.2d 532, 542 (5th Cir. 1983),
  *rev'd on other grounds,* 471 U.S. 48 (1985) ...................................................... 3

## Constitution, Statutes and Rules

United States Constitution
        First Amendment ..........................................................................................4, 5, 6
        Fourteenth Amendment ...............................................................................5

Sherman Act ..................................................................................... 1, 2, 3, 4, 5

49 U.S.C. § 41308................................................................................................ 2
49 U.S.C. § 41309................................................................................................ 2

Federal Rule of Civil Procedure 8(c) ............................................................. 1

Plaintiffs are entitled to summary judgment in their favor on certain defendants'[1] Noerr-Pennington defense[2] on three grounds:

(1) Private, commercial, horizontal price-fixing conduct of the type demonstrated in the record here is not legitimate petitioning activity entitled to Noerr-Pennington protection.

(2) Petitioning United States governmental authorities to adopt, approve, or ratify prices reached through a horizontal price-fixing conspiracy does not immunize the antecedent price-fixing conduct under Noerr-Pennington.

---

[1] This defense has been asserted by Polar Air Cargo LLC, Polar Air Cargo Worldwide Inc., Atlas Air Worldwide Holdings Inc. (ECF No. 1002 at 28 and Docket Order of April 13, 2011 (Declaration of Gary L. Specks in Support of Plaintiffs' Summary Judgment Motions, dated April 24, 2015 ("Specks Dec."), Exs. 1, 2)), and Air India Ltd. (1:10-cv-00639-JG-VVP, ECF No. 77 at 6-7 (Specks Dec. Ex. 3)). Defendants Air New Zealand Ltd., Air China Ltd. and Air China Cargo Co. Ltd. (together "Air China") have not asserted this affirmative defense in their respective answers to plaintiffs' complaint (ECF Nos. 1008, 1001 (Specks Dec. Exs. 4, 5)). Rule 8(c), Fed. R. Civ. P., provides that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." As a general rule, failure to plead an affirmative defense results in a waiver of that defense. *See Travellers Int'l, AG v. Trans World Airlines Inc.,* 41 F.3d 1570, 1580-81 (2d Cir. 1994); *Minuteman Press Int'l, Inc. v. Matthews,* 232 F. Supp. 2d 11, 17 (E.D.N.Y. 2002). While a district court has discretion to treat a defendant's motion for summary judgment raising an affirmative defense not pleaded in its answer as a motion to amend its answer, such an amendment is not permissible where the amendment would prejudice the plaintiff. *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 283-84 (2d Cir. 2000). Here, Air New Zealand and Air China, which answered plaintiffs' complaint in October 2009, have delayed more than five years before asserting this affirmative defense long after the Court-ordered fact discovery cut-off had passed. As a result, plaintiffs have been deprived of a full and fair opportunity to elicit testimony and documents from these defendants directly bearing upon the affirmative defense they now would be asserting for the first time. *See Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993) (quoting *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir. 1983)) ("the longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice"); *Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 680 (2d Cir. 1985) ("[s]ubstantial prejudice may exist where it is not clear that the opposing party had the opportunity to defend against the new claim and where that party might have offered additional evidence had it known of the claim"); *Sudul v. Computer Outsourcing Servs., Inc.,* 917 F. Supp. 1033, 1042-43 (S.D.N.Y. 1996) (leave to amend denied where defendant offered no explanation for delaying its motion to amend). In the event this Court finds that Air New Zealand or Air China have not waived this affirmative defense, plaintiffs request that the Court consider this motion as addressed to those defendants as well.

[2] A Noerr-Pennington defense is based on *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 136 (1961) (the Sherman Act does not prohibit competitors from "associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly"); and *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 670 (1965).

(3) The Noerr-Pennington doctrine does not immunize from the Sherman Act extra-territorial petitioning of foreign governments.

## I.      BACKGROUND

Defendants never obtained an antitrust exemption from the United States Department of Transportation ("DOT") for any of the surcharge agreements that are the subject of this litigation,[3] and the DOT in March 2000 explicitly disapproved an agreement among International Air Transport Association air cargo carriers imposing fuel surcharges on air cargo shipments to and from the United States.[4] Nevertheless, defendants claim their price-fixing activities were exempt from United States antitrust laws under the Noerr-Pennington doctrine, because some of the prices they agreed to impose on shipments to the United States were submitted to foreign governmental bodies either for notification purposes or for adoption, approval, or ratification.

## II.     ARGUMENT

In determining whether conduct falls within the bounds of Noerr-Pennington protection, and thus outside the scope of the Sherman Act, the Supreme Court has distinguished the legal submission of group petitions or group recommendations to the United States government from a group's illegal antecedent private commercial conduct that restrains competition and forms the basis for the petition or recommendation. In *Allied Tube & Conduit Corp. v. Indian Head, Inc.*,

_____

[3] Title 49 U.S.C. § 41309 provides that the United States Secretary of Transportation shall approve an agreement between or among air carriers when he or she finds that the agreement is not adverse to the public interest, but the Secretary shall disapprove an agreement that substantially reduces or eliminates competition, unless the Secretary finds that the agreement is necessary to meet a serious transportation need or to achieve important public benefits and that the transportation need cannot be met or those benefits cannot be achieved by reasonably available alternatives that are materially less anticompetitive. Title 49 U.S.C. § 41308 provides that an order approving an agreement under § 41309 shall exempt a person affected by the order from the United States antitrust laws to the extent necessary to allow the person to proceed with the transaction approved and with any transaction necessarily contemplated by the order.

[4] Order, *Agreements Adopted by the Tariff Coordinating Conferences of the Int'l Air Transp. Assoc. Relating to Cargo Rate Matters*, Docket OST-2000-6837, 2000 DOT Av. LEXIS 141 (DOT Av. Mar. 14, 2000).

486 U.S. 492, 502-03 (1988) ("*Indian Head"*), the Court explained that horizontal price-fixing

agreements, such as in this case, are not immunized from the Sherman Act under Noerr-

Pennington because the price levels the conspirators agree upon are subsequently submitted to

government authorities for adoption, approval, or ratification.

> We cannot agree with petitioner's absolutist position that the *Noerr* doctrine
> immunizes every concerted effort that is genuinely intended to influence
> governmental action. If all such conduct were immunized then, for example,
> competitors would be free to enter into horizontal price agreements as long as
> they [intended] to propose that price as an appropriate level for government rate[]
> making or price supports. . . . Horizontal conspiracies or boycotts designed to
> exact higher prices or other economic advantages from the government would be
> immunized on the ground that they are genuinely intended to influence the
> government to agree to the conspirators' terms.[5]

*Id.* at 503. As explained in *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C07-

05634 CRB, 2011 U.S. Dist. LEXIS 49853, at *103 (N.D. Cal. May 9, 2011), "[Under *Indian*

*Head*] . . . petitioning the government to adopt a price reached through a price-fixing conspiracy

is not protected activity [under Noerr-Pennington]."[6] *See also FTC v. Superior Court Trial*

*Lawyers Ass'n,* 493 U.S. 411, 424-28 (1990) (holding that an attorney boycott intended to

---

[5] *Accord Columbia Steel Casting Co. v. Portland GE,* 111 F.3d 1427, 1446 (9th Cir. 1997) (Noerr-Pennington did not protect an anticompetitive contract dividing territories between competitors even though the contract in question was subsequently submitted to a government administrative agency for approval); *Ticor Title Ins. Co. v. FTC,* 998 F.2d 1129, 1138 (3d Cir. 1993) (Noerr-Pennington did not protect insurance companies' collective rate-setting efforts, even where rates agreed upon were, as required by the regulatory regime, filed with and approved by the state); *United States v. So. Motor Carriers Rate Conference, Inc.,* 702 F.2d 532, 542 (5th Cir. 1983), *rev'd on other grounds,* 471 U.S. 48 (1985) (Noerr-Pennington protection denied to collective action to establish anticompetitive rates that were subsequently submitted to regulatory commissions); *Litton Sys., Inc. v. AT&T Co.,* 700 F.2d 785, 807-08 (2d Cir. 1983) (Noerr-Pennington protection denied to conspiracy to establish anticompetitive tariffs subsequently filed with the FCC); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau Inc.,* 690 F.2d 1240, 1263-65 (9th Cir. 1982) (when otherwise legal petitioning is used to further an unlawful antitrust conspiracy, Noerr-Pennington immunity does not apply); *City of Kirkwood v. Union Elec. Co.,* 671 F.2d 1173, 1181 (8th Cir. 1982) (that defendant's rates were submitted to and approved by government agencies did not immunize under Noerr-Pennington defendant's antecedent anticompetitive conduct setting the rates submitted).

[6] If, as the Supreme Court has stated, proposing conspiratorially set prices to a United States regulatory agency does not confer Noerr-Pennington immunity from the Sherman Act, neither can the extraterritorial act of proposing such prices to a foreign regulatory agency.

influence the District of Columbia to adopt legislation authorizing payment of a higher hourly

rate for representing indigent clients was not protected conduct under Noerr-Pennington);

*Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 707-08 (1962) (private

commercial conduct, otherwise violative of the United States antitrust laws, not protected by

Noerr-Pennington, even though the defendant was influencing decisions of the Canadian

government); *Primetime 24 Joint Venture v. NBC Inc.,* 219 F.3d 92, 100 (2d Cir. 2000)

(horizontal price-fixing agreement not immunized simply because the prices agreed upon were

subsequently proposed to a governmental authority as the basis for ratemaking).

      The Noerr-Pennington doctrine does not immunize from the Sherman Act extraterritorial

petitioning of foreign governments. The Supreme Court and the Second Circuit have explained

that the Noerr-Pennington doctrine is based upon the constitutionally protected right of the

American people to petition the United States government for redress of grievances under the

First Amendment.[7]

      The First Amendment does not, however, establish a constitutional right to engage in

extraterritorial petitioning of foreign governments.[8] It provides that "Congress shall make no law

---

[7] *See, e.g., Octane Fitness, LLC v. Icon Health & Fitness, Inc.,* 134 S. Ct. 1749, 1757 (2014) ("[w]e crafted the Noerr-Pennington doctrine . . . to avoid chilling the exercise of the First Amendment right to petition the government for the redress of grievances"); *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510-11 (1972); *Prof'l Real Estate Investors Inc. v. Columbia Pictures Indus. Inc.,* 508 U.S. 49, 56 (1993); *BE&K Constr. Co. v. NLRB,* 536 U.S. 516, 524-25 (2002); *Indian Head Inc. v. Allied Tube & Conduit Corp.,* 817 F.2d 938, 942 (2d Cir. 1987), *aff'd,* 486 U.S. 492 (1988) ("*California Motor Transport* made clear that the *Noerr-Pennington* doctrine rested squarely upon the *first amendment* right of petition and association"(emphasis in original)); *Associated Container Transp. (Australia), Ltd. v. United States,* 705 F.2d 53, 58-59 (2d Cir. 1983); *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 895-96 (2d Cir. 1981); *Miracle Mile Assocs. v. Rochester,* 617 F.2d 18, 20 (2d Cir. 1980); *Holleman v. Art Crating Inc.,* 2014 U.S. Dist. LEXIS 139916, *160 (E.D.N.Y. Sept. 30, 2014). *See also Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.,* 711 F.3d 1136, 1138-39 (9th Cir. 2013) (Noerr-Pennington doctrine protects the constitutional right of the people to petition the United States government in the context of statutory schemes other than the Sherman Act).

[8] *See Sexual Minorities Uganda v. Lively,* 960 F. Supp. 2d 304, 329-30 (D. Mass. 2013) ("It is well-established, however, that the *Petition Clause* does not immunize a defendant's interactions with foreign

. . . abridging . . . the right of the people . . . to petition the government for a redress of grievances."[9] By its express terms the amendment protects the right of the American people to petition their *own government*—not the governments of foreign nations. Nor is there any evidence that Congress, in adopting or amending the Sherman Act, intended to exempt extraterritorial petitioning of foreign governments from the Sherman Act. Neither the Supreme Court nor the Second Circuit have ever extended the reach of Noerr-Pennington immunity to extraterritorial petitioning of foreign governments. *See Bulkferts Inc. v. Salatin, Inc.,* 574 F. Supp. 6, 9 (S.D.N.Y. 1983) ("questionable" whether Noerr-Pennington applies to petitioning of foreign governments); *Dominicus Americana Bohio v. Gulf & W. Indus.,* 473 F. Supp. 680, 690 n.3 (S.D.N.Y. 1979) ("open question" as to whether Noerr-Pennington applies to petitioning of foreign governments).[10]

---

governments. . . . In other words, the *Petition Clause* protects the right of Americans to seek legislation by the United States government, not by governments of foreign countries.").

[9] *See also Cantwell v. Conn.*, 310 U.S. 296, 303 (1940) (the Fourteenth Amendment embraces liberties granted by the First Amendment and protects them from infringement by the governments of the states of the United States).

[10] There is some disagreement among other United States courts as to whether Noerr-Pennington extends to extraterritorial petitioning of foreign governments. *Compare Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F. Supp. 92, 108 (C.D. Cal. 1971), *aff'd on other grounds,* 461 F.2d 1261 (9th Cir. 1971) (Noerr-Pennington does not apply to petitioning of foreign governments); *Australia/E. U.S.A. Shipping Conference v. United States,* 537 F. Supp. 807, 812 (D.D.C. 1982) ("Of course, the first amendment was not intended to protect the right to petition foreign governments. Nor does the corollary interest in having government receive information from citizens have application to foreign governments."); *U.S. Power, Inc. v. Siemens Power Transmission & Dist. LLC*, Civil No. 05-525 (JRT-FLN), 2006 U.S. Dist. LEXIS 45919, at *5 n.1 (D. Minn. July 5, 2006) ("the parties have not offered, and the Court has not discovered, any reported case law on the issue of whether Noerr-Pennington applies where, as here, an alien is petitioning a foreign government"); *Laker Airways Ltd. v. Pan Am. World Airways Inc.,* 604 F. Supp. 280, 287 (D.D.C. 1984) ("[N]o decision has been cited to this Court, and the Court has found none—that a United States tribunal is compelled by the First Amendment to protect an alien's desire to speak in a foreign country or to petition the governmental authorities of a foreign nation. More significantly perhaps, there is no law or precedent supporting the proposition that, when a United States court proposes to take what would clearly be lawful action, it is required to refrain from doing so because the action will deprive an alien of speech and petitioning rights vis-à-vis a foreign government.") *with Coastal States Mktg. Inc. v. Hunt,* 694 F.2d 1358, 1366 (5th Cir. 1983); *Carpet Group Int'l v. Oriental Rug Imps. Ass'n,* 256 F. Supp. 2d 249, 266 (D.N.J. 2003); *Coca Cola Co. v. Omni Pac. Co.*, No. C 08-0784-S1, 1998 U.S. Dist LEXIS 23277, at *29 (N.D. Cal. Dec. 9, 1998); and *Luxpro Corp. v. Apple Inc.*, No. C 10-03058 JSW, 2011 U.S. Dist. LEXIS 35008, at *1 (N.D. Cal. Mar. 24, 2011) (applying Noerr-Pennington protection to

Moreover, there are good policy reasons why the First Amendment, and thus the Noerr-Pennington doctrine, should not be extended to immunize the extraterritorial petitioning of foreign sovereigns. When United States and state lawmakers respond to lobbying by acting to suppress competition, they presumably do so to advance the interests of the United States. However, foreign governments, which are isolated from and generally non-responsive to American public opinion, may respond to lobbying efforts with competition-suppressing actions that are adverse to American interests and actually injure the United States.

## III.   CONCLUSION

For the foregoing reasons, plaintiffs are entitled to summary judgment in their favor on the Noerr-Pennington affirmative defense as a matter of law.

Dated:  April 24, 2015

Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(212) 687-1980
Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585

By:   */s/ Robert N. Kaplan*

Respectfully Submitted,

Hollis L. Salzman
Meegan F. Hollywood
ROBINS KAPLAN LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022
(212) 980-7400

By:   */s/ Hollis L. Salzman*

---

petitioning of foreign governments). Plaintiffs submit that the cases holding the Noerr-Pennington doctrine applicable to extraterritorial petitioning of foreign governments were wrongly decided.

Howard J. Sedran
Austin Cohen
Keith J. Verrier
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street
Philadelphia, PA 19106
(215) 592-1500


By: */s/ Howard J. Sedran*

Michael D. Hausfeld
Brent W. Landau
Hilary K. Scherrer
Melinda Coolidge
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
(202) 540-7200


By: */s/ Michael D. Hausfeld*