# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION<br><br>MDL No. 1775 | Master File 06-MD-1775 (JG) (VVP)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS ARISING FROM ACTS REGULATED BY FOREIGN GOVERNMENTS** |

## TABLE OF CONTENTS

**Page**

**A.** THE PRINCIPLES UNDERLYING THE FILED RATE DOCTRINE ARE APPLICABLE TO DEFENDANTS' IMPOSITION OF SURCHARGES IN HONG KONG, NEW ZEALAND, AND JAPAN. ........................................................................... 2

**B.** THE FOREIGN SOVEREIGN COMPULSION DEFENSE APPLIES TO SHIPMENTS FROM JAPAN AND HONG KONG TO THE UNITED STATES................ 5

   1. Japan .................................................................................................................6

   2. Hong Kong........................................................................................................9

**C.** THE ACT OF STATE DOCTRINE IMMUNIZES DEFENDANTS' ACTIONS IN HONG KONG, JAPAN, NEW ZEALAND AND INDIA.................................................... 13

   1. Hong Kong......................................................................................................14

   2. Japan ...............................................................................................................15

   3. India ................................................................................................................17

   4. New Zealand ...................................................................................................17

**D.** THE *NOERR-PENNINGTON* DOCTRINE MUST APPLY TO PETITIONING OF FOREIGN GOVERNMENTS IN ORDER TO AVOID DISPARATE RESULTS. ............ 19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## FEDERAL CASES

Abbott v. Abbott,
  560 U.S. 1 (2010)................................................................................................................12

AD/SAT, Div. of Skylight, Inc. v. Associated Press,
  188 F.3d 216 (2d Cir. 1999)...............................................................................................7

In re Air Disaster at Lockerbie, Scotland,
37 F.3d 804, 826–27 (2d Cir.1994)........................................................................................2

Alfred Dunhill of London, Inc. v. Republic of Cuba,
  425 U.S. 682 (1976)......................................................................................................14, 15

Allied Tube & Conduit Corp. v. Indian Head, Inc.,
  486 U.S. 492 (1988)............................................................................................................19

Animal Sci. Prods v. China Nat'l Metals & Minerals Import & Export Corp.,
  702 F. Supp. 2d 320 (D. N.J. 2010), rev'd on other grounds, 654 F.3d 462 (3d
  Cir. 2011) .........................................................................................................................10

Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan, Inc.,
  203 F.3d 1028 (8th Cir. 2000) ............................................................................................7

Cheung v. United States,
  213 F.3d 82 (2d Cir. 2000)...................................................................................................5

In re Citric Acid Litig.,
  191 F.3d 1090 (9th Cir. 1999) ............................................................................................7

In re Hawaiian & Guamanian Cabotage Antitrust Litig.,
  647 F. Supp. 2d 1250 (W.D. Wash. 2009)..........................................................................6

In re Initial Pub. Offering Sec. Litig.,
174 F. Supp. 2d 61, 68 (S.D.N.Y. 2001) ...............................................................................2

Itar-Tass Russian News Agency v. Russian Kurier, Inc.,
  153 F.3d 82 (2d Cir. 1998)................................................................................................13

Marcus v. AT&T Corp.,
  138 F.3d 46 (2d Cir. 1998)...............................................................................................3, 4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986)...................................................................................................6, 8, 16

O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.,
   830 F.2d 449 (2d Cir. 1987) cert denied, 488 U.S. 923, 109 S.Ct. 303 (1988) ......................15

Precision Assocs. Inc. v. Panalpina World Transport Ltd.,
   08-CV-42 JG VVP, 2011 WL 7053807 (E.D.N.Y. Jan 4, 2011) .............................................9

Primetime 24 Venture v. Nat'l Broad., Co.,
   219 F.3d 92 (2d. Cir. 2000) ...................................................................................................19

In re Processed Egg Prods. Antitrust Litig.,
   821 F.Supp.2d 709 (E.D.Pa. 2011) .........................................................................................7

Rein v. Socialist People's Libyan Arab Jamahiriya,
   162 F.3d 748 (2d Cir. 1998), cert. denied, 525 U.S. 1003, 119 S.Ct. 2337
   (1999) ......................................................................................................................................6

Sosa v. Alvarez-Machain,
   542 U.S. 692, 124 S. Ct. 2739 (2004) ..................................................................................15

Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,
   476 U.S. 409 (1986) ................................................................................................................5

Ssangyong Corp. v. Vida Shoes Int'l, Inc.,
   No. 03 Civ. 5014, 2004 WL 1125629 (S.D.N.Y. May 20, 2004) ............................................6

Trugman-Nash, Inc. v. New Zealand Dairy Bd.,
   954 F. Supp. 733 (S.D.N.Y. 1997) ......................................................................................10

United States v. Pink,
315 U.S. 315 U.S. 203 (1942) ....................................................................................12, 13, 14

Villegas Duran v. Arribada Beaumont,
   534 F. 3d 142 (2d Cir. 2008) ................................................................................................12

In re Vitamin C,
   810 F. Supp. 2d 522 (E.D.N.Y. 2011) ..........................................................................10, 13

Wegoland Ltd. v. NYNEX Corp.,
   27 F.3d 17 (2d Cir. 1994) ....................................................................................................3, 4

Williams v. Suffolk Ins. Co.,
   38 U.S. 415 (1839) ..................................................................................................................6

In re Zyprexa Prods. Liab. Litig.,
489 F.Supp.2d 230 (E.D.N.Y.2007) ............................................................................................2

## FEDERAL STATUTES

22 U.S.C. §§ 5701-5732 ..............................................................................................................6

## FEDERAL RULES

Fed. R. Civ. P. 44.1 ................................................................................................................7, 13

Fed R. Civ. P. 56 .......................................................................................................................8, 11

Fed. R. Evid. 403 ............................................................................................................................11

Fed. R. Evid. 404(b) ...................................................................................................................10, 11

Fed. R. Evid. 702 ..............................................................................................................................2

Fed. R. Evid. 1006 ............................................................................................................................8

Plaintiffs have attempted to bury the Court under a mountain of footnotes and bullet points in an attempt to obscure the fact that Plaintiffs cannot seek damages arising from transactions that were either compelled or explicitly approved by the governments of Japan, Hong Kong, the People's Republic of China, New Zealand and India. Decades of jurisprudence grounded in the notion that domestic courts should decline jurisdiction over claims which primarily concern the laws and interests of other sovereign states guide the application of the defenses of the filed rate doctrine, foreign sovereign compulsion, act of state, and *Noerr-Pennington*. Rather than present admissible evidence as to why these defenses are not applicable to Defendants' conduct with respect to inbound-U.S. cargo, Plaintiffs' opposition rests on narrow and self-serving views of the law and the unfounded conclusions of supposed foreign law experts, neither of which satisfy their burden on summary judgment.

Moreover, Defendants' request for a limited bifurcation process to present evidence "from additional countries from which they did not ship cargo" is equitable and fair. Defendants should not be held liable for the acts of other airlines in countries from which they did not ship cargo and where gathering evidence is hampered by the settlement of other Defendants. In Taiwan, for example, the regulation of EVA Airway's surcharges was similar to that of Hong Kong, but EVA's settlement days before Opening briefs were due prevented Defendants' from presenting that defense. Likewise, Air New Zealand ("ANZ") does not have cargo operations in Korea, yet Plaintiffs argue that ANZ is jointly and severally liable for any damages from Korea without a process in place allowing ANZ to raise possible defenses in a time and cost efficient manner. This is particularly true given Plaintiffs have failed to show that the remaining Defendants entered into an illegal agreement to fix surcharges. Defendants have proposed a reasonable process in light of the circumstances which the Court should consider. Plaintiffs

1

failing to raise a triable issue of fact or a persuasive argument as to why the defenses do not apply as a matter of law, this Court should grant partial summary judgment as to Defendants' inbound-U.S. cargo shipments which are immune from liability under the filed rate doctrine, the act of state doctrine, foreign sovereign compulsion and *Noerr-Pennington*.[1]

### A.   THE PRINCIPLES UNDERLYING THE FILED RATE DOCTRINE ARE APPLICABLE TO DEFENDANTS' IMPOSITION OF SURCHARGES IN HONG KONG, NEW ZEALAND, AND JAPAN.[2]

Plaintiffs' Opposition regarding the applicability of the filed rate defense is utterly silent on the facts and simply incorrect on the law.[3]   Plaintiffs do not contest that Defendants filed and received approval for their purportedly "anticompetitive" fuel and security surcharges in Hong Kong, New Zealand, and several other countries.   Nor do they dispute that Defendants never

---

[1] Alternatively, the Court should not preclude the remaining Defendants from raising the affirmative defenses discussed herein at trial.

[2] Defendants object to certain portions of Plaintiffs' alleged foreign experts' declarations.  To be admissible, expert testimony must, *inter alia*, "help the trier of fact to understand the evidence or to determine a fact in issue" beyond inferences that can be drawn by a layperson.  *See* Fed. R. Evid. 702(a); *see also In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 283 (E.D.N.Y.2007); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 68 (S.D.N.Y. 2001).  Accordingly, portions of Plaintiffs' experts' declarations should be stricken as conclusory and/or irrelevant. Expert testimony must be carefully circumscribed in a manner to ensure it "does not usurp either the role of" the trier of fact. *Ausa Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200, 1202 (S.D.N.Y. 1995) (internal quotation omitted). Although expert legal opinion is allowed in interpreting foreign law, it may not opine the ultimate legal conclusion.  *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 65 citing *In re Air Disaster at Lockerbie, Scotland*, 37 F.3d 804, 826–27 (2d Cir.1994).  Plaintiffs' briefs never analyze their expert statements in their Opposition papers and merely cite the conclusory, thus fail to assist the trier of fact under Fed. R. Evid. 702.  As such, the paragraphs outlined in the attached Exhibit D, should be stricken.

[3] As a threshold matter, Plaintiffs have failed to show how they are *actually* prejudiced by the assertions of these defenses by ANZ and Air China.  Plaintiffs disingenuously claim that "discovery from another … party on a defense is no substitute for discovery from a litigating party" raising the same defense when their own oppositions to Defendants' summary judgment motions are wrought with evidence from other, unconnected parties.  ECF No. 2254 at 4.  Failing to present any concrete evidence of prejudice for this Court to consider is fatal to Plaintiffs argument of wavier.  Moreover, while Plaintiffs' Opposition maintains that ANZ cannot assert the defenses raised herein (ECF No. 2554 ) because ANZ did not raise any of these specific defenses in its Answer, Plaintiffs have not disputed that ANZ reserved the right to raise such defenses as stated in its "Tenth Separate and Complete Affirmative Defense."  *See* ECF No. 2554 at 43 (Pls Resp. to Defs' Statement No. 67).  Accordingly, this Court should find that ANZ did not waive its right to assert the defenses herein and consider ANZ's substantive arguments.

charged a surcharge on freight into or out of these countries without first obtaining regulatory approval. These facts are sufficient to mandate that claims based on Defendants' surcharges in these regions be dismissed from the case. *See, e.g.*, ECF No. 2174-2 ¶¶ 5-66; ECF No. 2285-4, at ¶¶ 1-20.

Plaintiffs' only response turns on the incorrect assertion that the filed rate doctrine is restricted to rates set by U.S. federal or state regulatory agencies. Pls. Resp. Memo at 24.[4] That argument is contrary to the Second Circuit's broad holding that "any 'filed rate'" is "per se reasonable and unassailable in judicial proceedings." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994) (emphasis added). Plaintiffs claim that the "primary purpose of the filed-rate doctrine is to preserve the authority of legislatively created U.S. regulatory agencies," Pls. Resp. Memo at 24, but they cite no authority to support that narrow construction, because there is none. Rather, abstention is mandated "whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated." *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 59 (2d Cir. 1998) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485 (8th Cir. 1992) ("[T]he focus for determining whether the filed rate doctrine applies is the impact the court's decision will have on agency procedures and rate determinations.")).

Here, both the non-justiciability and non-discrimination rationales are applicable to the surcharges filed in foreign jurisdictions. *See* ECF 2174-1, at 12-22. This Court should not question whether a foreign government agency regulated its own commerce according to a

---

[4] Plaintiffs cite a single district court in another jurisdiction suggesting, in dicta in a footnote, that the filed rate doctrine should not extend to rates filed in foreign jurisdictions. Pls. Resp. Memo at 23. But for the reasons previously explained, *Transpacific Passenger* is neither binding on this court nor persuasive given the quite different approaches to the filed rate doctrine taken by the Second and Ninth Circuits. Defs.' Br. at 20 n.49. It is undisputed that the Second Circuit, like the Third, Fifth, Eighth, and Eleventh Circuits, takes a broad view of the filed rate doctrine, and Plaintiffs identify no case in any of those circuits indicating that the doctrine is limited to U.S. state or federal agencies. *See Wegoland Ltd.*, 27 F.3d at 19.

Court's liking.  Government agencies like the Hong Kong CAD and Japanese MLITT have expertise and familiarity in regulating airlines in their respective countries according to distinct market concerns, which is not the province of the U.S. judiciary.  *See Marcus*, 138 F.3d at 58, 61 ("[R]egulatory agencies are deeply familiar with the working of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates.").  Principles of non-justiciability are therefore squarely implicated by this action and counsel abstention here.  *Cf. Wegoland*, 806 F. Supp. at 1115 (counseling courts to avoid becoming "unnecessarily enmesh[ed] . . . in the rate-making process.").

Plaintiffs' allegations also raise concerns about price-discrimination.  Plaintiffs seek damages based on airline surcharges that were filed with and approved by foreign governments, but any customer who is not part of the class is disadvantaged if they do not or cannot recover damages.  *Id.* at 19.  The fact that this case is a class action does not answer these concerns:  the Second Circuit has recognized that "use of the class action to attack the rate-making process tends to frustrate these legitimate interests and might end up costing the consumers even more in litigation expenses." *Wegoland*, 27 F.3d at 22 (quoting *Taffett v. Southern Co.*, 967 F.2d 1483 (1992) (observing that "strike suits that would be brought [by?] eager lawyers, using the class action vehicle, circumvent the states' rate-making mechanisms—all at the expense of the consumer.")).  Both rationales of the filed rate doctrine thus apply to the surcharges at issue in this case.

Plaintiffs also fail to recognize that underlying principles of international comity mandate that this Court respect the sovereignty of foreign states.  *See In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1053 (2d Cir. 1996) (principles of comity counseled against application of U.S. law where "promoting a friendly intercourse between the sovereignties—also

furthers American self-interest, especially where the workings of international trade and commerce are concerned") (internal quotations and citation omitted). Plaintiffs never explain why a New York jury has a greater interest or expertise in reviewing surcharges approved by a foreign regulator compared to a domestic regulator. Indeed, the difficulty with reviewing such surcharge approvals weighs more in favor of abstention here than it would if the regulator was domestic.

Plaintiffs' dire warning that application of the filed rate doctrine here would "impliedly repeal Section 4 of the Clayton Act" finds no support in the case law. Pls. Resp. Memo at 25. Courts have long recognized that the filed rate doctrine precludes private antitrust actions for alleged price-fixing where the challenged rates were reviewed and approved by a regulator. *See, e.g.*, *Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986) (filed rate doctrine applied to alleged price fixing by trucking rate bureau). This suit threatens to force Courts to sit in judgment of the actions of foreign regulatory agencies and supplant their sovereign authority to regulate commerce in their own jurisdiction with the Court's opinion. The filed rate doctrine is built on avoiding such interference and Plaintiffs have not articulated why that doctrine should be ignored here. Because the filed rate doctrine bars Plaintiffs' claims, this Court should grant summary judgment to Defendants as to all cargo shipments in-bound to the United States.

### B.    THE FOREIGN SOVEREIGN COMPULSION DEFENSE APPLIES TO SHIPMENTS FROM JAPAN AND HONG KONG TO THE UNITED STATES. [5]

---

[5] Plaintiffs state that Hong Kong is not an independent foreign sovereign, therefore the defense is inapplicable. Pls. Resp. Memo at 7. This argument cannot be entertained as the Executive Branch of the United States Government recognizes the autonomy of Hong Kong, particularly in regards to its economic activity. *See* U.S. State Department Fact Sheet on Hong Kong, also available at http://www.state.gov/r/pa/ei/bgn/2747.htm (last accessed on July 19, 2015) attached here to as Exhibit A; *see also Cheung v. United States,* 213 F.3d 82, 84-5 (2d Cir. 2000)

1.     Japan

Plaintiffs do not contest that the remaining Defendants sought and received approval to implement surcharges on cargo freight from Japan. [6]     ECF No. 2554 at 7-14.  Nor do Plaintiffs contest that failure to comply with the regulations of the MLITT by Defendants would result in severe penalties.  *Id.*  Rather, Plaintiffs claim that Defendants were neither compelled to charge surcharges nor were they compelled to reach agreement on the timing or level of surcharges. ECF No. 2554 at 6.  However, mere attendance at local Board of Airline Representative meetings is not anticompetitive and Defendants presented proof of individual filing and approval to implement fuel surcharges in Japan.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986) (the nonmoving party must present evidence which creates a

---

(stating that the Executive Branch has recognized Hong Kong as a valid foreign government and discussing The Hong Kong Policy Act, 22 U.S.C. §§ 5701-5732 and a Joint Declaration expressing the support of both the President and Congress for the development of expanded relations and bilateral agreements with the HKSAR). Moreover, this Court must defer to the Executive branch which has the sole authority under the Constitution to recognize a foreign government. *See Williams v. Suffolk Ins. Co.*, 38 U.S. 415, 420 (1839)("[W]hen the executive branch of the government, which is charged with our foreign relations, shall … assume a fact in regard to the sovereignty of any island or country, it is conclusive on the judicial department[.] … [I]t is not material to inquire, nor is it the province of the Court to determine, whether the executive be right or wrong."); *see also Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748, 764 (2d Cir. 1998) ("Our court held that recognizing foreign states and governments is a function of the executive branch …"), *cert. denied*, 525 U.S. 1003, 119 S.Ct. 2337 (1999); *see also Ssangyong Corp. v. Vida Shoes Int'l, Inc.,* No. 03 Civ. 5014, 2004 WL 1125629, *6 (S.D.N.Y. May 20, 2004)(recognizing Hong Kong as a sovereign nation).

[6] Defendant Air New Zealand advances the following compulsion argument but still maintains that this Court lacks subject matter jurisdiction to hear any evidence about ANZ's actions in Japan given that ANZ only had *seven* freight shipments from Japan to the U.S. during the alleged conspiracy period – *none* of which were charged a fuel or insurance surcharge.  *See* ECF No. 1008 at ¶ 6; *see also* Young Decl., Ex. F (ECF No. 2232-6).  Moreover, as a matter of law, and regardless of the settlement in New Zealand, Plaintiffs cannot bootstrap ANZ's actions in relation to routes not touching the U.S.  and confined to routes between New Zealand and Japan in an attempt to prove ANZ's participation in a global conspiracy.  *See In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1258-59 (W.D. Wash. 2009) (rejecting "if there then here" argument based on pleas relating to different shipping routes).  Plaintiffs have tried to show that a settlement of civil charges in New Zealand is related to their theory of a global conspiracy in the instant matter without any showing of connectivity between the two actions.  Simply stating that there was a settlement in New Zealand is not probative of actions outside of the limited routes at issue in the settlement.

reasonable inference of collusion and "tends to exclude the possibility of independent action" to survive summary judgment)(emphasis added)).  In opposition, it was Plaintiffs' burden to present admissible evidence showing that the remaining Defendants explicitly agreed to fix surcharges from Japan to the United States and that to the extent such agreement was made, it was not compelled by the Japanese government.  *In re Processed Egg Prods. Antitrust Litig.*, 821 F.Supp. 2d 709, 733 (E.D.Pa. 2011)("[A]llegations of mere membership and attendance at meeting are insufficient to suggest agreement to a conspiracy."); *see also Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan, Inc.*, 203 F.3d 1028, 1033 (8th Cir. 2000) (noting that "[T]he evidence of interfirm communications does not tend to exclude the possibility of independent action"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (refusing to infer a conspiracy from evidence of competitor communications).  However, Plaintiffs have failed to meet this necessary showing of an agreement in Japan involving Polar, Air China, Air India, and Air New Zealand. *See AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 188 F.3d 216, 234 (2d Cir. 1999) (evidence demonstrating that each defendant "in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective" must be presented).

Further, to the extent that Plaintiffs' maintain that ANZ's attendance at TC3 meetings in Japan are proof of its involvement in a global conspiracy, Plaintiffs ignore the testimony of their own foreign law expert.[7]  It is undisputed that: 1) ANZ did not fly directly from Japan to the

---

[7] Plaintiffs' argument that Defendants' foreign law declarations should be afforded little weight undermines the breadth of Rule 44.1.  *See* Fed. R. Civ. P. 44.1, Advisory Comm. Notes (1966) ("The new rule permits consideration by the court of any relevant material, including testimony, without regard to its admissibility under Rule 42.").  None of the formalities raised by Plaintiffs (ECF No. 2254 at 5, n.9.) are required under Rule 44.1. *Id.*  Nor does the failure to recite the phrase "under penalty of perjury of the laws of the United States" render Mr. Macilree's statements less relevant or authentic, particularly given that he is a New Zealand government official.

U.S.[8] and 2) ANZ imposed *no* surcharges on the *seven* cargo shipments sent from Japan to the U.S.[9]  Plaintiffs' Opposition carefully words its argument regarding ANZ, stating that the Air Services Agreement between Japan and New Zealand ("Japan-NZ ASA") did not compel ANZ to agree upon surcharges on shipments from Japan *to the U.S.*  ECF No. 2254 at 15; Second Mehra Decl. at ¶¶ 6-8 (emphasis added).  And, indeed, the declaration submitted by Mr. Ishida, on behalf of Defendants, concedes that the Japan-NZ ASA only applies to the routes specified in the agreement, which does not include the U.S.  *See* Sinfelt Decl. Ex. 5, Ishida Decl. at ¶ 17 (ECF No. 2173-20).

Nevertheless, Ms. Mehra does not refute and indeed agrees that ANZ was not only *required* but also *compelled* by the Japan-NZ ASA to agree with the Japanese designated carrier as to the level and timing of any surcharge charged on routes covered by the ASA.  *See* Second Mehra Decl. at ¶¶ 9-10 (ECF No. 2544, Ex. 2).  Plaintiffs' only evidence of alleged collusion regarding ANZ in Japan, is its attendance at some TC3 meetings.  However, according to

---

[8] *See* Sinfelt Decl. at Ex. A (ECF No. 2232-2); *see also* Second Mehra Decl at ¶ 6-8 (ECF No. 2544, Ex. 2). Plaintiffs also object to the form of some of Defendants' evidence. *See e.g.*, ECF. No. 2302 at 16-19 (claiming ANZ did not submit admissible evidence in support of its motion for summary judgment). However, Plaintiffs objection is not proper.  *See* Fed. R. Civ. P 56(c)(2).  Defendants have met their burden by presenting evidence which is capable of being admitted into evidence at trial.  Accordingly, Mr. Young's testimony (under Fed. R. Evid. Rule 1006) is proper and the basic, background facts verified by Mr. Blair (Sinfelt Decl. Ex. A (ECF No. 2232-2), are admissible through witness testimony at trial.

[9] Plaintiffs state that ANZ's offer of proof cannot be considered by the Court due to a technical deficiency (sworn under penalty of perjury in New Zealand where the declarant resides, as opposed to the U.S.).  ECF No. 2288-1 at 36-7, Pls. Resp. to Defs. Statement No. 57.  As mentioned above, Mr. Young's Declaration is a summary statement under Fed. R. Evid. 1006 because the air waybill records of ANZ are voluminous as Plaintiffs well know.  Fed. R. Evid. 1006.  In addition, the air waybills are business records of ANZ and are, therefore, properly admissible at trial.  After the initial objection is disposed of, Plaintiffs *do not* refute that no surcharges were paid on the shipments from Japan to the U.S.  ECF No. 2288-1 at 37.  Plaintiffs attempt to refute the fact that no surcharges were paid on these air waybills by stating that these air waybills *might have* occurred during a time "when [ANZ's] co-conspirators were including such charges on shipments from Japan." *Id.*  But Plaintiffs offer documents from other carriers in Japan, not ANZ, and offer no linkage to ANZ.  Hypothetical doubt or mere assertions that something *might* have happened is insufficient to survive summary judgment. *Matsushita*, 475 U.S. at 586.

Plaintiffs' very own statements, even if an agreement were reached at such meetings, ANZ was *compelled* by the Japan-NZ ASA to enter into such agreement. *Id.* And, equally as important, any such agreement would have been in respect to only the route between Japan and New Zealand (pursuant to the terms of the Japan-NZ ASA), not any routes to the U.S. since cargo shipments to North America were only discussed at TC1 meetings, which were not attended by ANZ.[10] *See* Pls. Resp. to ANZ's 56.1 Statement at ¶ 122, (ECF No. 2262) ("ANZ may not have attended meetings of other IACJ tariff conferences (TC1 involving shipments to North and South America and TC2 involving shipments to Europe)").

Accordingly, this Court should find, to the extent that it still retains subject matter jurisdiction, that ANZ was compelled to discuss and come to agreement on its surcharges pursuant to the relevant provisions of the Japan-NZ ASA. This Court should further find that ANZ's conduct in Japan did not affect U.S. commerce, so Plaintiffs are prohibited from boot-strapping ANZ's actions in Japan in an attempt to prove ANZ's agreement in a global price fixing conspiracy. Therefore, the Court should enter partial summary judgment in favor of Defendants as to Plaintiffs' claims (shipments inbound to the US) arising from Defendants' compulsory actions in Japan.

2.     Hong Kong[11]

The parties do not disagree that the Hong Kong Civil Aviation Department ("HK-CAD")

---

[10] Plaintiffs' acknowledgment that some surcharges were set in accordance with local, foreign regulations is also fatal because their theory of a *global conspiracy* is no longer plausible. *See Precision Assocs. Inc. v. Panalpina World Transport Ltd.,* 08-CV-42 JG VVP, 2011 WL 7053807, at *27 (E.D.N.Y. Jan 4, 2011) *report and recommendation adopted*, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) (Gleeson, J) (noting that "the alleged local conspiracies are logically, temporally, and geographically distinct" because they involve different routes, only some overlap of defendants, and countries in which surcharges were fixed pursuant to "regulatory conditions.").

[11] Defendant Polar has also submitted a response to certain paragraphs in Plaintiffs' Additional Statement of Facts (ECF No. 2288-1) which is attached hereto as Exhibit E.

9

required Defendants to receive approval for any surcharges.[12]  ECF No. 2544, Pls. Resp. to Defs. 56.1 Statement at 9-10.  In order to successfully raise foreign compulsion as a defense, Defendants must show that they were compelled by the HK government to make collective surcharge applications and that failure to abide by HK law could result in sanctions. *See Trugman-Nash, Inc. v. New Zealand Dairy Bd.*, 954 F. Supp. 733, 736 (S.D.N.Y. 1997) (the compulsion need "not [be] cast in terms of a Biblical commandment, 'Thou shalt not.'"); *see also In re Vitamin C*, 810 F. Supp. 2d 522, 544-45 (E.D.N.Y. 2011) citing *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1293 (3d Cir. 1979); *Animal Sci. Prods v. China Nat'l Metals & Minerals Import & Export Corp.*, 702 F. Supp. 2d 320, 450 (D. N.J. 2010), *rev'd on other grounds*, 654 F.3d 462 (3d Cir. 2011) (finding that even the threat of penalty through constant government monitoring will establish compulsion).  Defendants have met their initial burden (ECF No. 2229), and Plaintiffs have failed to present admissible evidence to contradict Defendants' evidence, creating a triable issue of fact which can only be resolved at trial.

First, Defendants presented letters from the HK-CAD stating that it compelled carriers to jointly apply for surcharge approval.  *See* ECF Nos. 2229-7, 2229-8, Exs. 4-C, 4-D.  Plaintiffs' attempts to refute such evidence are unavailing:

- Plaintiffs cite the European Commission's ("EC") attempt to draw non-existent distinctions between different types of "compulsion," (Pls. Ex. 47 at ¶981 (c)), but fail to inform the Court that the EC never addressed the September 3, 2009 letter from the HK-CAD to the EC wherein the HK-CAD states that its position on HK law is clear and unambiguous, collective applications were required.[13] ECF No.

---

[12] Plaintiffs' argument that Defendants were not *required* to charge surcharges is irrelevant.  Indeed, it could be said that the Defendants were not required to operate in Hong Kong but that distinction is equally irrelevant for the purposes of determining foreign compulsion.  The fact that airlines could avoid the *requirement* of collective surcharge applications in HK by avoiding the imposition of surcharges altogether, does not make the collective application any less a requirement in the true sense of the word.

[13] Defendants object to Plaintiffs' use and reliance upon the EC decision for various reasons (404(b) etc.), not the least of which is that it has been so heavily redacted that it is impossible to interpret and draw inferences from the

2229-8, Ex. 4-D.

- Plaintiffs' reliance on the testimony of Kersti Krepp is unavailing since it states only that an airline did not have to impose any surcharge at all.  It does not contradict the HK-CAD's position.[14]

- Plaintiffs' reliance DOJ's prosecution of and plea agreement with Cathay Pacific is equally unavailing because it contains no factual basis on which an independent reader or trier of fact could conclude that Cathay entered into a collusive agreement with any of the remaining Defendants.  The entire factual predicate supporting their plea is a simple conclusory statement.  The absence of facts in the plea agreement prevents even an inference that foreign sovereign compulsion was even raised as a defense.  Pls. Resp. Memo at 8; Pls. Exs. 13-14.[15]

Finally, Plaintiffs' attempt to contradict the HK-CAD's position by citing the testimony of Christine Liu, former Chair of the HK BAR CSC only highlights Plaintiffs' basic misunderstanding of aviation regulation and the aviation industry.  Pls. Resp. Memo at 11.  Ms.

---

text that remains.  *See* ECF No. 2229-8, Ex. 4-D at ¶2 ("The Commission should be absolutely clear that, in respect of the cargo fuel surcharge index mechanism, we required that the BAR-CSC and the participating carriers agree on the details of the collective applications, including the amount of the surcharge for which approval was sought, the evidence to be provided to CAD/supporting the applications and the single mechanism to be used for determining the surcharge.")

[14] Additionally, Plaintiffs attempts to use Ms. Krepp's testimony in their favor (p. 10, n.15) and then discredit her testimony as contradictory, inadmissible hearsay (p. 12-13, n. 22-23) in the same argument is confusing and self-defeating.  Plaintiffs cannot credit Ms. Krepp then discredit based on their selective interpretation of her testimony.  Their objections to Ms. Krepp's testimony should be ignored.  This is more evident given the clarity Ms. Liu's testimony, discussed *infra*, gives to Plaintiffs' position (that individual applications were allowed) and the HK-CAD's position.

[15] Paragraph 5 of the Cathay plea agreement is an admission by Cathay and the government that rates and surcharges for air freight were determined by origin and/or destination. This is an admission that no one market exists for air freight, much less that there was a global market.  The Criminal Information that accompanies Cathay's plea agreement states that "the base rate, surcharges and fees charged to customers by [Cathay] are collectively referred to as 'cargo rates.'" Pls. Ex. 13.  However, without any citation to a fact, the information says Cathay conspired to fix "cargo rates." Without a factual predicate, the final criminal charge could be over inclusive or under inclusive of those components of the "cargo rates," depending on Cathay's actual conduct.  Nevertheless, Plaintiffs in the instant matter are claiming a conspiracy to fix only fuel and security surcharges.  These are different components than those found in Cathay's Information and to which Cathay pled guilty.  As a result, Cathay's plea is irrelevant to the instant matter and would be inadmissible at any trial.  Defendants also object to this evidence under Rule 56(c)(3) because Plaintiffs cannot make such document admissible at trial.  It is hearsay (as the conspiracy was over), under Rule 403 the risk of substantial prejudice to Defendants outweighs its probative value, Rule 404(b) would also apply.

11

Liu's testimony does not contradict Mr. Lo's statement that airlines wishing to implement a fuel surcharge reflecting fluctuations in fuel prices (the index), had to collectively agree and apply for such approval. Rather, Ms. Liu states that the HK-CAD allowed individual airlines "to apply for approval to charge a static FSC."  Pls. Ex. 87 at ¶¶ 8, 10.  Not only is Ms. Liu's testimony consistent with the HK-CAD's position, but it also enlightens the Court as to the practical compulsion effectuated by the HK-CAD's mandate that any airline wishing to use a fuel index must apply collectively with others. ECF No. 2229-8, Ex. 4D.  When an airline applied individually for a static fuel charge, it took the HK-CAD 60 to 90 days to consider the application, at which point the price of fuel would have inevitably fluctuated to the point which, in and of itself, may invalidate the application. *See* Aff. of C. Liu dated May 7, 2012 at 33, ¶ 26, attached hereto as Exhibit B.  Because of the ability of the fuel index to correspond to actual changes in fuel prices in real-time, compared to the time it took the HK-CAD to respond to individual applications, the HK-CAD made individual applications for surcharges "commercially impractical" and "essentially force[d] collective applications." *Id.*  Not only have Plaintiffs failed to contradict the HK-CAD's interpretation of its own law through the use contemporaneous documents, but also, they have failed to refute the HK-CAD's position through the text of any Hong Kong law. [16]

---

[16] The Second Circuit case cited by Plaintiffs, *Villegas Duran v. Arribada Beaumont*, 534 F. 3d 142 (2d Cir. 2008) was not vacated and remanded on other grounds as Plaintiffs claim, but rather on the very issue that caused the Second Circuit to afford little deference to the Chilean government's interpretation of their own law. The Second Circuit stated that "[r]easons existed for the district court to refrain from giving the affidavit [of the Chilean government] absolute deference.  Most importantly, the Central Authority's conclusion that joint custody exists under Chilean law as a default rests almost exclusively on the *ne exeat* right" which was contrary to their interpretation of the Hague Convention.  534 F.3d at 142.  Several years later, the Supreme Court held that a father's *ne exeat* right granted under Chilean law was "right of custody," under the Hague Convention.  *Abbott v. Abbott,* 560 U.S. 1 (2010).  Therefore, *United States v. Pink* still remains valid law in the Second Circuit that absent statutory language to the contrary, a foreign sovereign's interpretation of its own laws should be afforded absolute deference.  315 U.S. 203 (1942).

Plaintiffs do not refute Mr. Wingfield's (Defendant's foreign law expert) testimony that the HK-CAD did in fact, have the authority to impose the requirement of collective applications for any airline wishing to implement a fuel surcharge tied to a fluctuating index (as opposed to a static charge). *See* Pls. Resp. Memo. Ex. 3, Decl. of Heilbronn. Accordingly, the HK-CAD's statements of the legality of Defendants' actions in Hong Kong during the alleged conspiracy period are conclusive. *See United States v. Pink*, 315 U.S. 315 U.S. 203, 220 (1942); *see also In re Vitamin C*, 810 F.Supp. 2d at 541 (finding a departure from the conclusive standard set in *Pink* is only warranted where there is a conflict between the sovereign's interpretation of the law and the plain meaning of the law.). Because interpretation of foreign law is an issue of law for the court[17] and because Plaintiffs have not raised a genuine issue of fact, this court should grant partial summary judgment in favor of Defendants for all cargo shipments from Hong Kong to the United States during the alleged conspiracy period under the foreign sovereign compulsion defense.

### C.    THE ACT OF STATE DOCTRINE IMMUNIZES DEFENDANTS' ACTIONS IN HONG KONG, JAPAN, NEW ZEALAND AND INDIA.

Taking no issue with Defendants' recitation of the basic elements required to raise act of state as a defense, Plaintiffs instead make bald, unsupported, conclusory statements in a failed attempt to dissuade this Court of the clear facts of the instant case – that Plaintiffs *are* indeed asking this Court to rule on the official acts of a foreign government, taken within its own borders, and, for the most part, with respect to its own citizens – precisely the type of review precluded by the act of state defense. Pls. Resp. Memo. at 20. For the reasons stated below, this Court should grant partial summary judgment in favor of Defendants for all cargo shipments

---

[17] *See* Fed. R. Civ. P. 44.1; *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998).

13

from Hong Kong, Japan, India and New Zealand.

1.   <u>Hong Kong</u>[18]

Plaintiffs, without citation to any factual evidence, state that this Court will not be required to rule on the validity of an official act of a foreign government because "no governmental act of a foreign state required defendants to engage in price-fixing activities." Pls. Memo at 20.  However, just a few pages before in the very same document, Plaintiffs argued that this Court should ignore the clear, unambiguous statements of the HK-CAD when it stated that it "required collective applications" and implored any reviewing body to respect its sovereignty and its own decision that the acts of the Defendants in Hong Kong were legal under Hong Kong law.  *Id.* at 9-11; Defs.' Ex. 4D (ECF No. 2229-8).  The government of Hong Kong has made its position unambiguously clear with regard to the alleged conspiratorial activities taken within the borders of Hong Kong.  Defs.' Ex. 4D (ECF No. 2229-8).  Plaintiffs' introduction of some foreign regulators' view that airlines in Hong Kong were not *compelled* to submit collective application cannot override the Supreme Court's directive in *Pink* that absent a contradiction in the text of the law, a foreign government's interpretation of its own law is conclusive as to the matter.  315 U.S. at 220.  Furthermore, the testimony of former HK BAR Chairwoman, Ms. Liu, indicates there was indeed commercial compulsion because the HK-CAD made it impractical to apply individually. *See* Ex. B, Liu Decl. at 33, ¶ 26.

Similarly, Plaintiffs assertion that Cathay's plea agreement translates into the Executive Branch's belief that the act of state defense does not apply or would not interfere with U.S. foreign relations, is an unfounded and unreasonable inferenced to make a on a plea agreement

---

[18] Hong Kong is a foreign sovereign as recognized by the United States.  *See* n.5 *supra*.  Moreover, the act of state defense applies not only to foreign sovereigns but instrumentalities of a foreign government, acting in its official capacity.  *See Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 694 & n.10 (1976).

14

lacking any specific facts or indication that such defense was considered.[19]  Even if the HK-CAD's "compulsion" of collective applications cannot be deemed "compulsion" under the foreign sovereign compulsion defense, it certainly is a valid act of a foreign sovereign that Plaintiffs want this Court to declare invalid.  For this Court to now review the actions of Defendants (collective surcharge applications) as proof of collusive behavior when that very same behavior was induced by the HK government, would be precisely the type of review that the act of state doctrine prohibits.  *See O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 453 (2d Cir. 1987) (applying the act of state doctrine as a defense where private actors were induced by the official acts of a foreign government) *cert denied,* 488 U.S. 923, 109 S.Ct. 303 (1988); *see also Sosa v. Alvarez-Machain,* 542 U.S. 692, 727, 124 S. Ct. 2739 (2004) ("It is one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens …").

       2.   <u>Japan</u>

     Once again, Plaintiffs summarily state that Defendants' "commercial conduct" is not protected by the act of state doctrine because the Court is not required to rule on any official act of the Japanese government.  Pls. Memo. at 20.  Not only do Plaintiffs omit any explanation as to what actions in Japan constitute "commercial conduct" but also they confuse the holding in *Alfred Dunhill,* where the court discussed that the act of the foreign sovereign must be in its official capacity as opposed to purely "commercial conduct." 425 U.S. at 694 & n.10.  Defendants' presented a conclusive argument, along with citation to relevant law, as to how the

---

[19] In plea agreement situations, defendants are able to waive defenses in order to take advantage of plea offers from the government.  *See e.g.,* Pls. Ex. 14 at ¶¶ 3-4.  Again, the lack of factual information in Cathay's plea agreement prevents any analysis of its decision.

acts of the Japanese government, through the MLITT, were official acts of a foreign government, not commercial.  Defs. Memo at 35 (ECF No. 2229).  In response, Plaintiffs have raised *no* triable issue of fact showing that Defendants cannot meet their burden of proof on any essential element of this defense.[20]  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) (to defeat summary judgment, "the nonmoving party *must* come forward with specific facts showing that there is a *genuine issue for trial.*")(internal citations omitted, emphasis in original).

Defendants have presented evidence of the regulatory approval system in Japan and that each Defendant filed for approval to implement surcharges with the MLITT individually.  *See* ECF No. 2228, Defs' 56.1 Statement.  Moreover, Defendants have presented evidence that under Japanese law, carriers were allowed to tentatively agree upon surcharges with other airlines, as long as approval from the MLITT was obtained.  Ishida Decl. at ¶19 (ECF No. 2229-20, Ex. 5).[21] Were this Court to review Defendants actions, taken solely in Japan (regarding flights outbound from Japan to the United States), exercising their rights under Japanese law, and on transactions completed entirely within Japanese borders (by foreign purchasers), it would not only be required to invalidate an official act of the Japanese government but also severely undermine the MLITT's ability to regulate its air space within its own borders.

---

[20] Indeed, even in the 78 paragraphs of "additional material facts" submitted by Plaintiffs, they do not address their allegation of "commercial conduct."  *See* Pls. Resp. to Defs. 56.1 Statement.

[21] Plaintiffs' expert, Mehra, claims that approval from the MLITT of an application and antitrust immunity from the MLITT is not sufficient to immunize any tentative agreement between airlines under the Japan Antimonopoly Act. ECF No. 2288-1 at 28, Pls. Resp. to Defs. Statement No. 45.  However, the principle of "administrative guidance" under the Japan Administrative Procedure Act (APA), which Mehra relies upon, is irrelevant to the express statutory immunity from the Anti-Monopoly Act of Japan under the CAA. Ishida Decl. at ¶16 (ECF No. ,2229-20, Ex. 5).  Under Article 2(vi) of the APA, "administrative guidance" does not include formal orders made by an agency on applications.

3.    India

The Act of State defense prohibits imposing liability upon Air India for its actions and discussions at BAR Cargo meetings held in India concerning surcharges imposed in India. Plaintiffs do not dispute, nor could they, that Air India is wholly owned by the government of India.  Air India, as an instrumentality of a sovereign nation, has the right to conduct its affairs within its own country without interference,  Further, as fully set forth in the Reply Memorandum of Law in Support of Air India's Motion for Summary Judgment, plaintiffs have come forward with no evidence demonstrating that Air India's actions within its own country, including Air India's conduct through BAR Cargo India concerning fuel and security surcharges, related to surcharges imposed on flights into the United States.  As a result, Air India's conduct within India cannot be the basis of a Sherman Act claim.

4.    New Zealand

The act of state defense shields the Defendants from any liability arising from freight shipments from New Zealand to the United States because a contrary finding by a U.S. court would undermine the New Zealand Court's ruling in *The Commerce Commission v. Air New Zealand Ltd.*.[22] As Plaintiffs have presented, the New Zealand government, through the New Zealand Commerce Commission ("NZCC"), has already considered the alleged cargo cartel with respect to flights to and from New Zealand, including flights from New Zealand to the United States.  Plaintiffs argue that the settlement in New Zealand between the NZCC and Air New Zealand is evidence of ANZ's participation in a surcharge fixing conspiracy in Japan.  If this is accepted, then it must also be regarded as evidence that ANZ did *not* participate in any collusive behavior with regard to freight shipments from New Zealand to the U.S. Such claims were

---

[22] Pls. Ex. 9 (ECF No. 2261).

alleged but no but no findings were supporting such allegations. [23]   As is the case of many corporations, ANZ made the decision to settle its case with the NZCC for business reasons. [24] Based on the NZCC/ANZ agreed statement of facts, if ANZ had simply filed its fuel surcharges for the Japan-New Zealand routes with the New Zealand Ministry of Transport "for approval, rather than for information," it would not have breached competition laws.[25]  If this Court were to consider Plaintiffs claims with respect to freight from New Zealand to the United States and find that ANZ did reach collusive agreements through acts in New Zealand pertaining to that route, it would invalidate the decision of a foreign court which was limited to liability on in Japan and Malaysia.[26]   Moreover, if this Court were to hold that ANZ participated in a global conspiracy to fix surcharges (inclusive of the route from New Zealand to the U.S.), using the theory of estoppel, such a ruling would, effectively, enable foreign purchasers to successfully assert claims in New Zealand that would not otherwise be successful.  By denying Defendants' the availability of the act of state defense in New Zealand, Plaintiffs are asking this Court to substitute its judgment for that of the New Zealand court which has already ruled.

Accordingly, under principles of international comity and respecting the actions of foreign sovereigns within their own borders, this Court should find that the act of state doctrine shields Defendants' from liability arising from freight shipments to the United States from Japan, Hong Kong, India, and New Zealand.

---

[23] Declaration of David Cooper at ¶15, dated July 23, 2015, attached hereto as Exhibit C.

[24] Pls. Ex. 9 at ¶12 (ECF No. 2302-2).

[25] Pls. Ex. 9 at ¶12 (ECF No. 2302-2); *see also* Macilree ¶¶ 18-19.

[26] Pls. Ex. 9 (ECF No. 2261); Ex. C, Cooper Decl. at ¶12.

D. **THE *NOERR-PENNINGTON* DOCTRINE MUST APPLY TO PETITIONING OF FOREIGN GOVERNMENTS IN ORDER TO AVOID DISPARATE RESULTS.**

Plaintiffs' assertion that *Noerr-Pennington* immunity does not extend to the petitioning of foreign governments goes against various court decisions (ECF No. 2229 at 29) and would create incoherent and disparate legal decisions. In a now common refrain, Plaintiffs offer the plea agreements made by carriers based in Hong Kong and Japan to claim that, contrary to DOJ's written enforcement manual, Defendants' collective petitioning at the mandate of the HK government would not be protected by *Noerr-Pennington* immunity. Pls. Memo at 22. But again, Plaintiffs cannot defeat summary judgment by making conclusory statements about plea agreements which, on their face, include no specific facts regarding *any other airline*, much less the current Defendants. Pls. Exs. 13-14, 48-53. Moreover, there is no indication, whatsoever, that DOJ's criminal prosecutions ever considered *Noerr-Pennington* in the context of the collective petitioning of the HK-CAD in Hong Kong.

In respect to Hong Kong, it is undisputed that Defendants collectively applied to the HK-CAD for permission to implement certain surcharges on cargo shipments ex-Hong Kong. Therefore, to the extent that Defendants met and discussed "future pricing intentions," this behavior was incidental and necessary to make a collective application as required by the HK-CAD.[27]   *See generally, Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 502 (1988); *Primetime 24 Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 100 (2d. Cir. 2000). As observed by the Supreme Court, Defendants actions in Hong Kong were not the result of

---

[27] Defendants do not concede that they expressed their future pricing intentions at HK BAR meetings. Pls. Memo. at 22. Moreover, Plaintiffs have not presented any evidence of the remaining Defendants giving competitors their profit information, information on specific transactions, or information on their base rates which would preclude the application of *Noerr-Pennington* immunity. *Id.* citing DOJ Manual.

Defendants independent willingness to give up their trade freedom. *E. R.R. Presidents Conference v. Noerr Motor Freight*, Inc., 365 U.S. 127, 139, 821 S.Ct. 523 (1961). Rather, Defendants were specifically instructed that they had to make collective applications to the HK-CAD in order to implement a flexible fuel surcharge that was reactive to real-time, market prices. ECF No. 2229-8, Ex. 4D. Moreover, Plaintiffs have failed to find any references to the record or cite any other evidence to distinguish the instant matter from the cases cited by Defendants showing that other courts have applied *Noerr-Pennington* immunity to the petitioning of foreign governments. Indeed, Plaintiffs' only response to the multitude of cases cited by Defendants, is to say they "were decided incorrectly." ECF No. 2160-2 at 5-6, n.10 ("Plaintiffs submit that cases holding the *Noerr-Pennington* doctrine applicable to extraterritorial petitioning of foreign governments were wrongly decided"). Accordingly, Plaintiffs have simply failed to present any argument, persuasive or otherwise, as to why this Court should not follow the precedent set by a myriad of federal courts finding that the *Noerr-Pennington* doctrine applies outside the U.S., and that the doctrine shields Defendants from any liability under the Sherman Act arising from surcharges charged on shipments from Hong Kong to the U.S.

For the foregoing reasons, this Court should grant partial summary judgment in favor of Defendants for cargo shipments into the U.S. from Japan, Hong Kong, China, New Zealand, and India.

Dated: July 27, 2015.

Respectfully submitted,

*/s/ Roscoe C. Howard, Jr.*
Roscoe C. Howard, Jr.
Meena T. Sinfelt
BARNES & THORNBURG
1717 Pennsylvania Ave, N.W.
Suite 500
Washington, D.C. 20006-4623
Telephone: (202) 371-6378

*Counsel for Air New Zealand, Ltd.*

George N. Tompkins III
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
150 East 42nd Street
New York, NY 10017
212 490 3000 (telephone)
212 490 3038 (fax)

*Counsel for Air China Limited and Air China Cargo Company Limited*

Harvey J. Wolkoff
ROPES & GRAY, LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000 (telephone)
(617) 951-7050 (facsimile)

*Counsel for Atlas Air Worldwide Holdings, Inc. and Polar Air Cargo, Inc.*

E. Christopher Murray
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, NY 11556
Telephone: (516) 663-6600
Facsimile: (516) 663-6601

*Counsel for Air India*

## CERTIFICATE OF SERVICE

I, Roscoe C. Howard, Jr., hereby certify that on July 27, 2015, a true and correct copy of *Defendants' Reply in Support of Defendants' Joint Motion for Partial Summary Judgment as to Plaintiffs' Claims Arising From Acts Regulated by Foreign Governments* was served on the following via email:

Robert N. Kaplan, Esq. (RK-3100)
Gregory K. Arenson, Esq. (GA-2426)
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 14th Floor
New York, NY 10022
Telephone No. (212) 687-1980
Fax No. (212) 687-7714

*Co-Lead Counsel for Plaintiffs*

Howard J. Sedran, Esq.
Austin Cohen, Esq.
Keith J. Verrier, Esq.
LEVIN, FISHBEIN, SEDRAN &BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone No. (215) 592-1500
Fax No. (215) 592-4663

*Co-Lead Counsel for Plaintiffs*

Michael D. Hausfeld
Brent W. Landau
Hilary K. Scherrer
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, D.C. 20006
(202) 540-7200

*Co-Lead Counsel for Plaintiffs*

Hollis L. Salzman
ROBINS, KAPLAN, MILLER & CIRESI LLP
601 Lexington Avenue, Suite 3400
New York, New York 10022-4611
(212) 980-7400

*Co-Lead Counsel for Plaintiffs*

Gary L. Specks
KAPLAN FOX & KILSHEIMER LLP
423 Sumac Road
Highland Park, IL 60035
(847) 831-1585

*Co-Lead Counsel for Plaintiffs*

_____/s/_____
Roscoe C. Howard, Jr.

22