UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IN RE

                             06-MD-1775

AIR CARGO SHIPPING SERVICES
ANTITRUST LITIGATION               **ALL CASES**

M.D.L. No. 1775
--------------------------------------------------------x

## OPINION AND ORDER

       The defendants Air China Ltd., Air China Cargo Company Ltd., Air India, Air New

Zealand Ltd., Atlas Air Worldwide Holdings, Inc. Nippon Cargo Airlines Company Ltd.,

Polar Air Cargo, Inc., Polar Air Cargo LLC, and Atlas Air Worldwide Holdings, Inc. ("the

defendants" or "the movants") have moved to disqualify the law firm of Kaplan Fox &

Kilsheimer ("Kaplan Fox") from representing the plaintiffs in this action. Kaplan Fox is one

of four firms actively providing counsel to the plaintiffs pursuant to the court's order

appointing a member of the firm, Robert Kaplan, Esq., as Co-Lead Counsel along with three

other attorneys for the now-certified class of plaintiffs. Order Adopting Report and

Recommendation, July 10, 2015 [Doc. No. 2282]. The motion rests on the fact that George

F. Hritz, Esq., an attorney who at one time represented a former co-defendant in this

litigation, has joined Kaplan Fox as Of Counsel. The movants contend that his association

with Kaplan Fox has created a conflict of interest that bars Kaplan Fox from continuing to

represent the plaintiffs. For the reasons below, the motion is denied.

## BACKGROUND

       This matter was opened in this court as a multi-district litigation in 2006 upon the

entry of a transfer order from the Multi-District Litigation Panel ("MDLP"). In December

2006, the court entered Practice and Procedure Order Number 2, which appointed Robert

Kaplan, Esq. of Kaplan Fox and three other attorneys as interim co-lead counsel for the

putative class. [Doc. No. 232.] Kaplan has continued in that role throughout the life of this

matter, becoming permanent co-lead counsel when the class was certified, and he and others

from his firm have provided substantial services to the class in all phases of the litigation.

In October 2006, George F. Hritz, Esq., then a member of the law firm of Hogan & Hartson, entered a notice of appearance on behalf of Air Canada and AC Cargo LP (collectively "Air Canada") both of whom were named as defendants in one or more of the various actions before the court pursuant to the MDLP's transfer order.[1]  He served as lead counsel for Air Canada for the next four years until he left the firm.[2]  Although he has no specific memory of doing so, he does not dispute that in 2007 he signed onto a joint defense agreement (the "JDA") with counsel for various of the other defendants, pursuant to which the signatories agreed to share documents and information and to maintain in confidence any shared material.  Hritz thereafter participated from time to time in various meetings, telephone conferences and e-mail communications with other signatories to the JDA, although again he has no specific recollection of the substance of any of those communications.  After he left the firm in 2010, he ceased to play any role in the litigation, and took no files or other materials relating to the case with him.

About three and a half years later, in late March of 2014, Hritz joined Kaplan Fox as Of Counsel in the firm's New York office.  In the interim, Air Canada was dismissed as a defendant in August 2012 following the court's approval of a settlement that they reached with the plaintiffs, and they have had no further involvement in the case.  In his Of Counsel relationship with Kaplan Fox, Hritz works primarily on matters that he originates and is compensated only on those matters on which he works.  He has performed no work of any kind on this case, has had no discussions with anyone at Kaplan Fox regarding the case, and has not otherwise been exposed to or shared any information concerning the matter with anyone there.

---

[1]Hritz's Notice of Appearance also included an appearance on behalf of Ace Aviation Holdings, Inc.  Although it was named as a defendant in a number of the actions that were initially transferred to the court by the MDLP, Ace Aviation was not named as a defendant in the Consolidated Amended Class Action Complaint that was subsequently filed and which now sets forth the class action claims that remain to be resolved here.  Ace Aviation did not thereafter participate in the litigation, and has now been terminated from the docket.  Dkt. Ent. 02/19/2016.

[2]At some point, as a result of a merger, the firm name changed to Hogan Lovells US LLP.

Hritz's association with Kaplan Fox came to the attention of the defendants on March 31, 2014 when Harvey J. Wolkoff, Esq., the lead attorney for three related defendants – Atlas Air, Polar Air Cargo, and Polar Air Cargo Worldwide – received an online communication through Linked In, a business information-sharing website. Wolkoff immediately relayed the information to counsel for other defendants involved in the case, and they collectively set about trying to determine the scope of Hritz's involvement in joint defense discussions. Some five weeks later, the defendants sent a letter to Kaplan, which he received on May 6, 2014, advising him of Hritz's involvement in the joint defense group and of the defendants' belief that, as a result, Hritz had received confidential information belonging to other defendants.

Kaplan and his partner Gregory Arenson, Esq. immediately contacted the firm's professional responsibility counsel to assist in determining whether Hritz had shared confidential information with anyone at the firm and to implement so-called screening procedures to prevent information about the case from being shared in the future. The following day, Kaplan dictated and circulated a memorandum to the firm's personnel which, among other things, directed that no one was to have any discussions with Hritz about the case and described other screening procedures that were being instituted to insure that Hritz neither shared nor obtained any information about the case in any manner. The memorandum also stated that no discussions had occurred to that point with Hritz concerning the case except to inform him that he would be screened from any communications about the case and that he was not to communicate or share information about the case with anyone at the firm.

In late June 2014, the defendants apprised the court of their intention to make the instant disqualification motion, and sought pre-motion discovery in an effort to develop evidence in support of the motion. [Doc. Nos. 2035, 2039]. After receiving briefing concerning the discovery issue, I declined to permit discovery and directed the parties to confer in an effort to agree upon a schedule for making the motion. [Doc. No. 2044]. In accordance with that schedule the defendants have made the instant motion, in which their

argument proceeds in two steps. First, they argue that by virtue of his involvement in joint defense efforts pursuant to the JDA, Hritz obtained confidential information belonging to the movants which creates a conflict of interest that would prevent him from serving as counsel for the plaintiffs in this action. Second, they argue that Hritz's conflict of interest must be imputed to Kaplan Fox, thus preventing them from serving as counsel for the plaintiffs.

## DISCUSSION

The court's consideration of the motion is framed by the well-established proposition that "[d]isqualification is viewed 'with disfavor in this circuit.' " *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 302 (E.D.N.Y. 2010) (quoting *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991); *accord, e.g., Brown v. City of Syracuse*, No. 5:11-CV-668, 2013 WL 2445050, at *2 (N.D.N.Y. June 4, 2013); *My First Shades v. Baby Blanket Suncare*, No. 08-CV-4599, 2012 WL 517539, at *4 (E.D.N.Y. Feb. 16, 2012); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011). This antipathy stems from the recognition that disqualification motions "are often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 792 (2d Cir. 1983) (quoting *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal quotation marks omitted); *Bennett Silvershein Assocs.*, 776 F. Supp. at 802. As a result, a party must meet a "high standard of proof" to prevail on a disqualification motion. *E.g., Evans*, 715 F.2d at 791; *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936, 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011); *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010); *see Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178-79 (2nd Cir. 2009). Moreover, disqualification "is only appropriate where allowing the representation to continue would pose a 'significant risk of trial taint.' " *Filippi*, 722 F. Supp. 2d at 303 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981); *accord, e.g., Decker*, 716 F. Supp. 2d at 231 ("Disqualification is only warranted in the rare circumstance where an attorney's conduct poses a significant risk of trial taint.").

Measured by these standards, the defendants' motion fails because they simply have not provided proof that Hritz's recent association with Kaplan Fox raises any risk of trial taint, much less trial taint significant enough to warrant disqualification of the firm at this stage of the litigation.

The analysis begins with an examination of the relationship between Hritz and the movants. None of the movants were ever clients of Hritz. Indeed the JDA upon which they rest their entire conflict-of-interest argument specifically provides that nothing in the JDA is to be "deemed to create an attorney-client relationship between any Counsel and anyone other than the Client of that Counsel." Joint Defense Agreement ¶ 9 (attached as Ex. B to Affidavit of Roscoe C. Howard) [Doc. No. 2059-4]. His only attorney-client relationship in this case was with other defendants that have long since settled with the plaintiffs and are no longer involved in this case. That relationship with those former defendants thus furnishes no basis for finding a conflict of interest, and they have not joined this motion. Rather, Hritz's only relationship with any of the movants here arose solely as a result of whatever participation he may have had in efforts undertaken pursuant to the JDA.

The risk of trial taint upon which the movants rest their motion is the possibility that Kaplan Fox will use confidential information that Hritz learned as a result of his involvement with them under the JDA. Although the JDA contemplated that confidential information might be shared, and contained a provision that any such information was not to be disclosed, the movants provide precious little proof that Hritz in fact obtained any of their clients' confidences during the time that he was involved in the case. As an initial matter, three of the movants – Air China Ltd., Air China Cargo Company Ltd., and Air India – did not even participate in the JDA during the time Hritz was involved so there is no basis to believe that Hritz obtained any confidential information from them.

The only proof any of the movants offer in this regard are affidavits by Roscoe Howard, Esq., counsel for Air New Zealand, and by his associate Meena Sinfelt, Esq. Howard attached to his affidavit a list of dates when the defendants met as a joint defense group during the time when Hritz was involved in the case, and a list of topics discussed by

the participants in those meetings. But Howard does not assert that he himself participated in any of the meetings, nor does he assert which of the meetings Hritz attended. Sinfelt's affidavit provides no details whatsoever about any of the joint defense meetings in which she participated. Nor does she identify any meetings attended by Hritz, or any client confidences that she shared with him. The list of topics appended to Howard's affidavit is too general to indicate that any client confidences were necessarily disclosed in the meetings, and there is no effort to articulate how any such confidences would carry a risk of trial taint. None of the other movants submitted an affidavit to establish that any of their confidential information was ever disclosed to Hritz. In short, no one has offered any specific evidence, of their own personal knowledge, that Hritz ever obtained any of their clients' confidences. The proof in this regard is decidedly lacking.

Such proof should not have been difficult to provide. The JDA carries specific provisions for identifying and labeling any documents or other information that the signatories exchanged with one another, including a procedure for limiting disclosure of information to counsel only. Yet the movants have not provided a single document, even in redacted form, to indicate that any of them shared any of their confidential information with any of their codefendants, much less with any of the defendants represented by Hritz. Howard states in his affidavit, although not based on his personal knowledge, that Hritz played a substantial role in coordinating discovery responses, but again provides no detail as to what that role entailed and what types of client confidences were shared with him in that endeavor.

Thus, the movants have offered precious little evidence to convince the court that Hritz ever obtained confidential information from any of the movants that raises a risk of trial taint. They seek instead to rely on a presumption that client confidences were shared with him. But as the court in *Ritchie v. Gano*, No. 07 CIV. 7269, 2008 WL 4178152, at *8 (S.D.N.Y. Sept. 8, 2008) pointed out, such a presumption is inapplicable in the absence of an attorney-client relationship, *accord, Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977), and the movants concede that Hritz had no such relationship

with any of them.  The movants' failure to better substantiate that Hritz actually obtained client confidences from any of the movants constitutes a serious shortfall in the high standard of proof they need to prevail on this motion.

Even if the movants were able to establish sufficiently that Hritz possessed their clients' confidences, they would still have to establish that Hritz's conflict of interest should be imputed to Kaplan Fox.  It is certainly true that where an attorney has a conflict of interest because of his prior representation of a party, there is a presumption that the attorney's entire firm also has a conflict of interest based on the notion that the attorney has likely shared that party's confidences with others in the firm.  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).  This presumption is stronger within a small firm than in a larger one.  *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 307-08 (E.D.N.Y. 2010).  The Second Circuit has made it clear, however, that the presumption is rebuttable, *Hempstead Video*, 409 F.3d at 133, and in this case it has been amply rebutted.

As an initial matter, the presumption that Hritz has shared confidences with others at Kaplan Fox is attenuated because of the three-and-a-half year gap between the latest time when he might have obtained any confidences and the time when he joined Kaplan Fox. The presumption that confidences are shared among attorneys who are members of the same firm stems from the notion that attorneys who are working together in the same space are likely to discuss with one another the issues that arise and the information they may obtain in the matters they are handling for their respective clients.  *See, e.g., Reilly v. Computer Associates Long-Term Disability Plan*, 423 F. Supp. 2d 5, 10-11 (E.D.N.Y. 2006) ("When an attorney associated with a firm is disqualified from representing a party due to a prior representation a presumption is created that the full firm was privy to the disqualified attorney's privileged information and that the full firm's continued representation would taint the trial process.") But this notion loses some force if an attorney's prior representation occurred at a time when the attorney was not associated with the firm, because the opportunity to contemporaneously share the confidences obtained through that representation with other firm members, even in

a casual manner, simply did not exist.  The notion is further weakened with the passage of time and the attorney's lack of involvement with either the client or the matter in which confidences were obtained.  *E.g., Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936, 2011 WL 672254, at *7 (S.D.N.Y. Feb. 22, 2011); *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 346 (S.D.N.Y. 2011).

That the presumption should not obtain in this case is confirmed by the affidavit submitted by Hritz.  He attests, not only that he has never shared any information concerning this case with anyone at Kaplan Fox, but also that he does not even recall ever obtaining any confidential information related to the movants whatsoever.  If he does not remember anything of a confidential nature concerning the movants, his association with Kaplan Fox carries no risk of trial taint – there is no danger that he will communicate to the trial team at Kaplan Fox what he does not remember.

Whatever residual concern may exist concerning the risk of trial taint is eliminated by the affidavits that have been submitted by every attorney at Kaplan Fox who has had any role in this case and by the screening procedures that have been put into place by the firm to insure that no communications will occur between Hritz and Kaplan Fox concerning this case.  Every attorney at Kaplan Fox who has worked on the matter avers that he or she has had no communications whatsoever with Hritz about the case, and the Second Circuit has endorsed the submission of such affidavits to rebut any presumption of improper information sharing.  *Hempstead Video*, 409 F.3d at 137.  The Second Circuit has also endorsed screening mechanisms of the type that Kaplan Fox has instituted.  *Id.*  Immediately upon learning from the defendants of the possibility that Hritz possessed confidential information about them, Robert Kaplan circulated a memorandum to all attorneys at the firm reminding them of their obligation not to have any communications with Hritz about the case.  In addition, steps were taken to block Hritz from any access to computer files relating to the case as well as any physical access to the paper files located at the firm.  Moreover, as a practical matter Hritz is further screened from the attorneys working on this case because his office is physically distant in a different wing of the office from that of the

attorneys working on this case. The affidavits and the screening procedures adopted by Kaplan Fox convince the court that there is little risk that any confidential information relating to the movants will ever be used to their disadvantage here and taint the trial.

The movants argue that Kaplan Fox was tardy in implementing the screening procedures they have adopted, and that in any event screening procedures are ineffective because of the relatively small size of the firm. The six-week delay between the arrival of Hritz on March 24 and the implementation of screening procedures is explained by the fact that, given Air Canada's dismissal from the action more than a year before his arrival, no conflict of interest requiring screening was immediately evident. It was not until May 6, 2014, when counsel for Polar contacted Kaplan, that the potential for conflict raised by Hritz's participation in the JDA was brought to the attention of Kaplan Fox. Screening procedures were then promptly implemented within less than two days. In these circumstances, there is no basis to find that the screening procedures adopted by Kaplan Fox were tardy in any way. *See Hempstead Video*, 409 F.3d at 138 (approving screening procedures adopted when firm became aware of potential conflict); *see also Am. Int'l Group, Inc.*, 827 F. Supp. 2d. at 346.

Kaplan Fox was apparently aware of the JDA, and therefore perhaps should have inquired of Hritz at the outset about the terms of the JDA and tried to determine whether he had obtained confidential information as a result of his involvement with other defendants' counsel pursuant to that agreement. But since Hritz did not even recall signing the JDA and does not recall ever receiving any confidential information from other codefendants, those inquiries would not have revealed any need for formal screening procedures. In any event, consistent with what he believed to be his ethical obligations, Hritz as a practical matter screened himself from anything related to this case once he joined Kaplan Fox by not communicating with anyone there about the case. And he confirms that no one at Kaplan Fox ever attempted to speak with him about the case. Thus the delay in adopting screening procedures has had no practical effect in creating a risk of trial taint. *Cf. Arista Records*, 2011

WL 6722254, at *8 (even sub-standard screening procedures held not fatal to continued representation in the absence of any showing of disclosures of confidential information).

Nor does the relatively small size of the Kaplan Fox firm prevent the court from finding that screening procedures will be effective in removing any possibility of trial taint. As noted above, Hritz has had no communications with anyone at Kaplan Fox concerning the instant case, and there is no basis to believe that any such communications will occur in the future given the express prohibition that has been circulated within the firm. Moreover, because Hritz does not recall obtaining any confidences relating to any of the defendants now in the case, there is no risk that even inadvertent disclosures may occur. The other measures adopted by the firm – isolation of physical files, blockage from computerized files, and the physical separation of Hritz from the trial team in the firm's office space – provide additional barriers to disclosures of information that would taint the trial.

The one case cited by the movants in which disqualification was ordered because of an attorney's participation in a joint defense agreement is distinguishable both factually and legally. In *In re Gabapentin Patent Litigation*, 407 F. Supp. 2d 607 (D.N.J. 2005), the court granted a motion to disqualify a firm as counsel for the plaintiffs in a multidistrict litigation after two attorneys who had previously represented one of the defendants in the action joined the firm. The defendant whom the two attorneys had previously represented agreed to waive the conflict upon the establishment of effective screening procedures, but other codefendants sought to disqualify the firm because the attorneys had obtained confidential work-product and privileged information relating to them pursuant to a joint defense agreement. Although the court agreed that disqualification was warranted, central to the court's decision was an undisputed finding that the two attorneys had actually obtained privileged and confidential information relating to the codefendants. 407 F. Supp. 2d at 613. There is no clear proof of that in this case. More importantly, the court in *In re Gabapentin* held that, under New Jersey law, disqualification was required regardless of whether screening procedures could effectively prevent confidences from being shared. *Id.* at 615-16. That is not the law in this Circuit. Rather, in *Hempstead Video* the Second Circuit clearly

announced that "in appropriate cases and on convincing facts, isolation – whether it results from the intentional construction of a "Chinese Wall," or from de facto separation that effectively protects against any sharing of confidential information" is adequate to protect against trial taint.  409 F.3d at 138; *accord, e.g., Amer. Int'l Grp. Inc.*, 827 F. Supp 2d. at 346-47; *Arista Records LLC*, 2011 WL 672254 at *7.  The court is convinced that the screening procedures in place here are more than adequate to protect against the sharing of any confidential information Hritz may somehow recall.

## CONCLUSION

For the foregoing reasons, the motion to disqualify Kaplan Fox from further representation of the plaintiffs in this action is denied.

**SO ORDERED:**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:    Brooklyn, New York
          February 23, 2016