UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
:
: **<ins>CORRECTED MEMORANDUM</ins>**
: **<ins>DECISION AND ORDER</ins>**
In Re : **<ins>AUTHORIZING THE</ins>**
: **<ins>DISTRIBUTION OF THE AIR</ins>**
AIR CARGO SHIPPING SERVICES : **<ins>CARGO 4 SETTLEMENT FUND</ins>**
ANTITRUST LITIGATION :
: 06-MD-1775 (BMC)
MDL No. 1775 :
: THIS DOCUMENT RELATES TO:
:   All Actions
:
-------------------------------------------------------- X

**COGAN**, District Judge.

Before me is plaintiffs' motion for disbursement of funds for the settlements between plaintiffs and defendants Korean Air Lines Co., Ltd., Singapore Airlines Limited and Singapore Airlines Cargo Pte Ltd., Cathay Pacific Airways Ltd., and China Airlines Ltd. (collectively, the "Settling Defendants"). As discussed herein, the Court finds that the disputed claims are invalid under the terms of the settlement agreements and grants plaintiffs' motion for disbursement of funds.

## BACKGROUND

The settlement agreements with the Settling Defendants comprise the fourth installment of settlements that have received final approval in the above-captioned action ("Air Cargo 4 Settlements" or "Settlement Agreements"). The Court preliminarily approved the Air Cargo 4 Settlements, certified the settlement classes, appointed Settlement Class counsel, and directed Settlement Class counsel to issue notice of the proposed settlements to potential class members. Publication and mailing notice were issued to potential class members, and a fairness hearing for the Air Cargo 4 Settlements was held on January 16, 2015; no one objected to the Settlement Agreements at the hearing and no written objections were filed. On October 9, 2015, the Court

granted final approval to the Air Cargo 4 Settlements, approved the plan of allocation, and awarded attorneys' fees and expenses, incentive awards, administrative expenses, taxes and tax expenses relating to the income earned by the settlement fund, any exclusions for opt-outs, and any other necessary adjustments under the Court's orders of the settlement agreements.

The Garden City Group ("GCG"), serving as the Court-approved Claims Administrator, has since engaged in the administration process by evaluating and auditing claim forms from potential claimants, and calculating the appropriate amount to be allocated to each qualified claimant. As part of the plan for disbursement, both GCG and Settlement Class Counsel recommend rejecting claims made by 66 claimants represented by Crowell & Moring LLP ("Claimants") on the basis that the purchases at issue were made from freight forwarders, rather than directly from the Settling Defendants.

Claimants oppose plaintiffs' motion for disbursement, arguing that their claims are valid because they are direct purchasers from the Settling Defendants despite using freight forwarders in the claimed transactions.

## DISCUSSION

The parties do not dispute that Claimants used freight forwarders to purchase the air cargo shipping services from the Settling Defendants. The parties do dispute the substantive nature of the freight forwarders' involvement – plaintiffs argue that the freight forwarders provide various additional services, while Claimants argue that, in the claimed purchases, the freight forwarders were brokers and acting as mere agents – but plaintiffs assert that the Settlement Agreements carve out purchases made through freight forwarders, regardless of their role in the transaction. In addition to the language of the Settlement Agreements, plaintiffs argue that the Claimants would not be direct purchasers under the antitrust laws. Claimants

2

argue, by contrast, that they are considered direct purchasers under the Air Cargo 4 Settlements because they are considered direct purchasers under controlling antitrust authority.

The Air Cargo 4 Settlements, each of which has a New York choice of law provision, must be construed according to the general principles of New York contract law. See Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law."). Under New York law, "[w]hen the intent of the parties can fairly be gleaned from the face of the instrument, the plain words of the contract govern, and matters extrinsic to the agreement may not be considered." RJE Corp. v. Northville Indus. Corp., 198 F. Supp. 2d 249, 262 (E.D.N.Y. 2002); see also In re Holocaust Victim Assets Litig., 256 F. Supp. 2d 150, 153 (E.D.N.Y. 2003) (quoting RJE). Contract language is plain and unambiguous if it is not "reasonably susceptible of more than one interpretation." RJE, 198 F. Supp. 2d at 262.

First, the plain language of the Settlement Agreements is not reasonably susceptible to more than one interpretation. The Settlement Agreements define the Settlement Class as "All persons or entities . . . who purchased Airfreight Shipping Services for shipments to, from, or within the United States **directly** from [a] Settling Defendant, [or other specified parties]" (emphasis added). The agreements also carve out purchases made indirectly, stating that "nothing [t]herein shall release any claims. . . (b) made with respect to any indirect purchase of Airfreight Shipping Services." The meaning of "directly" and "indirect purchases" in these Settlement Agreements is plain and unambiguous when viewed in the context of the complete contract: the Air Cargo 4 Settlements are to cover only those purchases entered into with the Settling Defendants without the use of an intermediary. The fact that the Settling Defendants may, following an agreement entered into through an intermediary freight forwarder, render

3

services to the Claimants does not transform their purchases into ones made "directly" with those parties. It is certain that the claims of Claimants, or claims by any purchaser who bought the Settling Defendants services through a freight forwarder of any kind, are not covered by the terms of the Settlement Agreements.

Even if the terms "directly" and "indirect purchases" were not clear from the Settlement Agreements themselves, the acts and conduct of the parties during the course of this litigation conclusively establish that the parties intended that purchases made through freight forwarders were to be excluded from the agreement. See RJE, 198 F.Supp.2d at 263 ("Where contract language is ambiguous, extrinsic evidence is relevant to the extent it bears on the parties' objective manifestations of intent.") (internal quotation marks omitted). The behavior of all parties is consistent with the understanding that purchases made through freight forwarders were made indirectly for the purposes of the Settlement Agreements. The Claim Form Instructions for these Settlement Agreements,[1] which were approved by the Court, inform claimants that the claim "covers only direct purchases" and, if a claimant "made purchases directly from a listed Defendant and . . . **also made purchases indirectly through a freight forwarder or other entity**" (emphasis added), the claimant should only list "direct purchases" and not list "indirect purchases." The instructions are clear that indirect purchases are those made through a freight forwarder without any further distinction.

What is more, the Air Cargo 4 Settlements were not negotiated in a vacuum; plaintiffs and the Settling Defendants negotiated in the context of the entire history of this litigation, with knowledge of previous settlements, a dismissal of indirect purchaser claims, and an affirmance of that dismissal by the Second Circuit. The Lufthansa settlement agreement, which was entered

---

[1] These instructions are part of the "transaction" of the Settlement Agreements, and should therefore be reviewed as part of the contract, see RJE, 198 F. Supp. 2d at 263.

4

into before the dismissal of state claims brought on behalf of an indirect purchaser class, explicitly included in its settlement "[a]ll persons and entities that purchased airfreight cargo shipping services . . . including those persons and entities that purchased Airfreight Shipping Services through freight forwarders." Its claim form instructed purchasers to "[r]eport all purchases of air cargo shipping services . . . including those purchases made through freight forwarders." The express inclusion of purchases made through freight forwarders indicates that the parties understood that freight forwarders would not be included in the Settlement Agreement by default.

The Court dismissed the state law claims brought by indirect purchasers and, on appeal, the Second Circuit's affirmance of this dismissal defined the plaintiffs as "**indirect purchasers** of air freight shipping, [who] dealt with the defendant airlines through intermediaries, **such as freight forwarders**." In re Air Cargo Shipping Servs. Antitrust Litig., 697 F.3d 154, 157 (2d Cir. 2012) (emphasis added).[2] Following the dismissal of these claims, the definition of the settlement classes began to include only those who purchased services from the defendant airlines "directly." The settlement agreements that were signed subsequent to the dismissal, and for which notice and claim forms were distributed, used language substantially similar or identical to the language in the Settlement Agreements and Claim Form Instructions here, which do not expressly include language pertaining to purchases by freight forwarders.[3]

---

[2] The Second Circuit opinion noted that indirect purchasers, which it had already defined as noted above, had brought state law claims because indirect purchasers could not bring their claims under federal law. While there are certainly limited circumstances where the purchaser who does not buy directly is considered a "direct purchaser" under the antitrust laws, discussed further below, the general principle that indirect purchasers do not have standing under the federal antitrust laws further underlines the assumption by all parties involved that purchasers obtaining services through freight forwarders were indirect purchasers and therefore not included in the settlements unless done so expressly.

[3] In fact, the same law firm that now represents Claimants had previously represented former defendant SAS in this action at the time SAS settled with plaintiffs. The SAS settlement agreement used the terms "directly" and "indirect purchase" just as they are used here. The fact that no Claimants had previously opposed disbursement on the

5

If the parties wanted to include air cargo shipping services purchased through freight forwarders in the terms of the Settlement Agreements, they knew how to do so. There is no doubt that that the parties, subsequent to the Lufthansa settlement agreement and subsequent to the Second Circuit's characterization of freight forwarders, chose language to exclude purchases made through freight forwarders from those settlement agreements. The Settling Defendants here made the same choice to exclude those purchases.

Finally, Claimants' own behavior demonstrates that they, too, believed they were indirect purchasers. In addition to failing to file claims under the previous settlement agreements that used similar or identical language, Claimants filed claims pursuant to approved settlements in a case brought by purchasers against freight forwarders.[4] Indeed, the one Claimant who filed a claim in the above-captioned action under a previous settlement agreement received settlement funds for a purchase made through a freight forwarder and, when this was discovered, the claimant returned the funds. The actions in this case point to the understanding by all parties that "directly" purchasing services from the Settling Defendants or the enumerated parties does not include services purchased through freight forwarders.

Claimants' reliance on the antitrust laws as a final backstop is misplaced. Even were the Settlement Agreements to be read as incorporating all of the antitrust laws, the facts presented to the Court also necessitate finding that Claimants are indirect purchasers and therefore excluded under the antitrust laws. Claimants have shown no contract they have signed with the Settling

---

grounds asserted here indicates that not only the parties, but the same lawyers arguing to the contrary here, understood the agreements to exclude purchases made through freight forwarders.

[4] The class in this action comprises freight forwarders and other entities that directly purchased services from defendants at supracompetitive prices. The related action, Precision Associates, Inc. et al. v. Panalpina World Transport (Holding) LTD. et al., 08 Civ. 42, is brought by plaintiffs against freight forwarders, alleging that the freight forwarders, including many that are absent class members in this action, conspired separately to impose supracompetitive surcharges, fees, and prices on their own customers on both air and ocean shipments. The claim forms to collect funds from settlements in this action and in the Panalpina action require signature under penalty of perjury that the claimant is a member of the settlement class.

Defendants or with freight forwarders, or signed between the freight forwarders and the Settling Defendants, that would indicate the freight forwarders at issue do not constitute a "distinct link in the chain of distribution." In re NASDAQ Mkt.-Makers Antitrust Litig., 169 F.R.D. 493, 506 (S.D.N.Y. 1996) (securities broker statutorily defined as being "in the business of effecting transactions 'for the account of others,' [and does] not constitute a distinct link in the chain of distribution"); see also Diskin v. Daily Racing Form, Inc., No. 92 CIV. 6347 (MBM), 1994 WL 330229, at *5 (S.D.N.Y. July 7, 1994) (finding newspaper "distributors had the right to return unsold papers [back] at cost favors the conclusion that the distributors do not function as independent entrepreneurs").

Claimants argue, without evidentiary support, that the purchases at issue here were made through freight forwarder-brokers, rather than freight forwarder-shippers; the freight forwarders did not provide services separate from the Settling Defendants, and therefore were merely acting as the Settling Defendants' agents rather than an intermediary. Yet Claimants conceded in oral argument that they use freight forwarders, rather than purchasing directly through the Settling Defendants, only for "special shipments" – where "something was late and has got to be there in the nick of time." That freight forwarders offered a service that the Settling Defendants do not, i.e., faster service than offered by the Settling Defendants, undermines Claimants' argument that freight forwarders are merely agents and not an intermediate link in the chain of distribution.

## CONCLUSION

Claimants are not members of the Settlement Class and their claims under the Settlement Agreements are invalid. Having rejected those claims, the Court further GRANTS plaintiffs' motion [2395] for disbursements of funds from the Air Cargo 4 Settlements. GCG shall be paid a total of $530,349.09 in notice and administration costs by certain defendants through the notice

7

and administration fund.  The Net Settlement Fund shall be distributed to the Settlement Class members who have submitted valid claims, as determined by GCG, and in the amounts that GCG recommends, as set forth in Exhibit A to the Declaration of Lori L. Castaneda Re: Air Cargo 4 Settlement Distribution, dated February 11, 2016.

**SO ORDERED.**

                                                                       _____
                                                                       U.S.D.J.

Dated: Brooklyn, New York
           April 6, 2016